**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **OCTEVIA WAGNER; GABRIELLE SMITH; DWANNA JOHNSON, as Next Friend of A.J., A Minor; JACILET GRIFFIN-LEE; TIMOTHY LEE; TAMMY PETERSON; PHILLIP VALLAIRE; ANNETTE JAMES; SHANNON PIRO; DOLORES SMITH, as Next Friend of B.H., L.H., and J.H., Minors; JAQUEZ MOORE; AMANDA HARRIS; TAYLOR EUELL; CHRISTOPHER YOUNG; JOHN COOTE; HARRELL VEAL; RYAN TWEDT; JEREMIAH ANGLIN; KENNETH RICHARD; ZACHARY ZEPEDA; DYLAN PERIO; DIANNE BAILEY RIJSENBURG; ZACHERY JOHNSON; ANTONIO RADCLIFFE; JEREMY GARRISON TRACY WOODSON-SMITH; JUDITH JONES; DEBORAH SMITH, individually And as Next Friend of K.S. and K.W., Minors; TRAMELL MORELLE; BERNARD LOCKHART; JACKIE LUNA, Individually And as Next Friend of J.L. and A.L., Minors; and KEVIN SMITH, SR.** | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO. 4:23-cv-02886** |
| *Plaintiffs*, | § § | |
| vs. | § § § | |
| **HARRIS COUNTY, TEXAS,** | § § § | |
| *Defendant*. | § § | |

**DEFENDANT HARRIS COUNTY'S MOTION TO DISMISS
<u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

I.      **SUMMARY OF THE ARGUMENT** .................................................................1

II.     **NATURE AND STAGE OF THE PROCEEDING** .......................................2

III.    **STATEMENT OF THE ISSUES**..................................................................3

IV.    **STANDARD OF REVIEW** ..........................................................................3

V.     **ARGUMENT** ................................................................................................4

        A.     **PLAINTIFFS' § 1983 *MONELL* CLAIMS MUST BE DISMISSED.**...............4

                 1.     Plaintiffs Have Not Adequately Alleged an Underlying Constitutional Violation. ..........................................................................................5

                 2.     Plaintiffs Have Not Adequately Alleged a Policy or Custom......................8

                 3.     Plaintiffs Have Not Adequately Alleged a Failure to Train or Supervise Claim. ...........................................................................................15

        B.     **PLAINTIFFS' ADA/RA CLAIMS MUST BE DISMISSED.** ...........................18

                 1.     Denial of Medical Care is Not Actionable Under the ADA/RA. ..............19

                 2.     Plaintiffs Have Not Adequately Pled the Elements of their ADA/RA Claim.........................................................................................................23

VI.    **CONCLUSION** .........................................................................................25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Estate of A.R. v. Muzyka*,
543 Fed. App'x. 363 (5th Cir. 2013) ...................................................................19

*Anderson v. Dallas Cty. Tex.*,
286 F. App'x 850 (5th Cir. 2008) .........................................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..............................................................................................3

*Austin v. City of Pasadena, Tex.*,
74 F.4th 312 (5th Cir. 2023) ...............................................................................25

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................4

*Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*,
871 F. Supp. 2d 581 (S.D. Tex. 2012) (Ellison, J.) ...........................................24

*Bryant v. Madigan*,
84 F.3d 246 (7th Cir. 1996) ..........................................................................19, 20

*Buchanan v. Maine*,
469 F.3d 158 (1st Cir. 2006) ...............................................................................20

*Cano v. Faust*,
No. CV H-19-0317, 2022 WL 980276 (S.D. Tex. Mar. 31, 2022) (Ellison, J.),
*aff'd*, No. 22-20189, 2023 WL 2521869 (5th Cir. Mar. 14, 2023) .........................18

*City of Canton, Ohio v. Harris*,
489 U.S. 378 (1989) ........................................................................................15, 17

*Conner v. Travis Cnty.*,
209 F.3d 794 (5th Cir. 2000) ................................................................................4

*Connick v. Thompson*,
563 U.S. 51 (2011) ...............................................................................................16

*Darden v. City of Fort Worth, Tex.*,
880 F.3d 722 (5th Cir. 2018) ................................................................................7

*Delano-Pyle v. Victoria Cnty., Tex.*,
302 F.3d 567 (5th Cir. 2002) ........................................................................19, 24

*Doe v. Harris Cnty., Tex.*,
  No. CV H-16-2133, 2017 WL 4402590 (S.D. Tex. Sept. 29, 2017) .......................................22

*Flores v. Cnty. of Hardeman, Tex.*,
  124 F.3d 736 (5th Cir. 1997) ...................................................................................................6

*Garza v. City of Donna*,
  922 F.3d 626 (5th Cir. 2019) ...................................................................................................5

*Groark v. Timek*,
  989 F. Supp. 2d 378 (D.N.J. 2013) ........................................................................................12

*Hale v. Harrison Cnty. Bd. of Supervisors*,
  8 F.4th 399 (5th Cir. 2021) ..............................................................................................20, 21

*Hale v. King*,
  642 F.3d 492 (5th Cir. 2011) .................................................................................................23

*Harvey v. Montgomery Cnty.*,
  Tex., 881 F. Supp. 2d 785 (S.D. Tex. 2012)..........................................................................18

*Henderson v. Harris Cnty.*,
  No. 4:18-CV-413, 2021 WL 1112400 (S.D. Tex. Feb. 24, 2021) ..........................................10

*Inaimi v. Harris Cnty., Tex.*,
  No. 4:21-CV-01832, 2022 WL 901556 (S.D. Tex. Mar. 25, 2022) (Ellison, J.)............. *passim*

*Johnson v. Harris Cnty.*,
  No. 4:16-CV-1623, 2018 WL 6505857 (S.D. Tex. July 31, 2018)..........................................10

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*,
  406 F.3d 375 (5th Cir. 2005) ............................................................................................. *passim*

*Nottingham v. Richardson*,
  499 Fed. App'x. 368 (5th Cir. 2012) .....................................................................................19

*Olabisiomotosho v. City of Houston*,
  185 F.3d 521 (5th Cir. 1999) ..............................................................................................6, 7

*Olmstead v. L.C. ex rel. Zimring*,
  527 U.S. 581 (1999)...............................................................................................................20

*Oswalt v. Sara Lee Corp.*,
  74 F.3d 91 (5th Cir. 1996) .....................................................................................................24

*Pena v. City of Rio Grande City*,
  879 F.3d 613 (5th Cir. 2018) .................................................................................4, 9, 12, 15

*Peterson v. City of Fort Worth,*
   588 F.3d 838 (5th Cir. 2009) ........................................................................4, 5, 8, 14

*Pineda v. City of Houston,*
   291 F.3d 325 (5th Cir. 2002) .................................................................................5, 14

*Piotrowski v. City of Houston,*
   237 F.3d 567 (5th Cir. 2001) .................................................................................9, 14

*Roberts v. City of Shreveport,*
   397 F.3d 287 (5th Cir. 2005) ...............................................................................15, 17

*Salcido v. Harris Cnty., Tex.,*
   No. CV H-15-2155, 2018 WL 4690276 (S.D. Tex. Sept. 28, 2018) .................22, 24

*Sanders-Burns v. City of Plano,*
   594 F.3d 366 (5th Cir. 2010) .....................................................................................15

*Scott v. Moore,*
   114 F.3d 51 (5th Cir. 1997) ...............................................................................5, 6, 7

*Smith Estate of Hawkins v. Harris Cnty.,*
   No. CV H-15-2226, 2019 WL 12117217 (S.D. Tex. Feb. 25, 2019), *aff'd*
   *Smith v. Harris Cnty., Tex.*, 956 F.3d 311 (5th Cir. 2020) ......................................21

*Smith v. Harris Cnty., Tex.,*
   956 F.3d 311 (5th Cir. 2020) ...................................................................19, 24, 25

*Spiller v. City of Tex. City, Police Dep't,*
   130 F.3d 162 (5th Cir. 1997) ......................................................................................4

*Taylor v. Hartley,*
   488 F. Supp. 3d 517 (S.D. Tex. 2020) .....................................................................25

*Thomas v. Anciso,*
   No. 2:22-CV-00254, 2023 WL 4666629 (S.D. Tex. July 20, 2023) ........................21

*Thomas v. Nino,*
   No. 2:22-CV-00252, 2023 WL 4444974 (S.D. Tex. Jan. 25, 2023).........................20

*Thomas v. Samuel,*
   No. 2:22-CV-00158, 2022 WL 19001964 (S.D. Tex. Dec. 7, 2022)........................21

*Wade v. Montgomery Cnty.,*
   No. 4:17-CV-1040, 2018 WL 580642 (S.D. Tex. Jan. 25, 2018)............................24

*Wade v. Montgomery Cnty., Tex.,*
   No. 4:17-CV-1040, 2017 WL 7058237 (S.D. Tex. Dec. 6, 2017)............................24

iv

*Walls v. Tex. Dep't of Criminal Justice*,
  270 Fed. App'x. 358 (5th Cir. 2008) ..........................................................8, 20, 21

*Washington v. Smith*,
  639 F. Supp. 3d 625 (E.D. La. 2022) ...................................................................12

*Webb v. City of Waterloo*,
  No. 17-CV-2001-CJW-MAR, 2019 WL 6736219 (N.D. Iowa Dec. 11, 2019).....................14

*Zarnow v. City of Wichita Falls, Tex.*,
  614 F.3d 161 (5th Cir. 2010) ...............................................................................18

**Statutes**

29 U.S.C. § 794(1) ....................................................................................................19

42 U.S.C. § 1983.................................................................................................. *passim*

42 U.S.C. § 12102(1) ................................................................................................23

42 U.S.C. § 12132 ....................................................................................................19

Americans with Disabilities Act of 1990 Title II, 42 U.S.C. § 12131, et seq....................... *passim*

Rehabilitation Act of 1973 Section 504, 29 U.S.C. §794, et seq.....................................18, 19, 22

**Rules**

Fed. R. Evid. 201 ....................................................................................................14

Fed. R. Evid. 408 ....................................................................................................14

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 3

Defendant Harris County, Texas ("Harris County") files this Motion to Dismiss Plaintiffs' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    SUMMARY OF THE ARGUMENT

In this case, 32 Plaintiffs have brought claims against Harris County based on 27 distinct, separate, and unrelated incidents that allegedly occurred at the Harris County Jail between July 23, 2021 and July 30, 2023. Harris County moves to dismiss all of Plaintiffs' claims because they are not sufficiently pled. Plaintiffs' § 1983 *Monell* claims must be dismissed because Plaintiffs have not sufficiently alleged an underlying constitutional violation or a policy or custom for municipal liability. Plaintiffs also have not pled a pattern of similar, specific, and numerous prior incidents required to state a *Monell* claim for municipal liability. Plaintiffs instead try to manufacture a pattern by citing to materials, allegations and other incidents that do not involve similar factual scenarios and are entirely irrelevant to the claims and incidents at issue in this case.

Relatedly, Plaintiffs also fail to state a § 1983 *Monell* claim based on failure to train or supervise. This claim must be dismissed because (1) Plaintiffs have not alleged any facts that would show Harris County's training program is constitutionally defective or that any particular deficiency with the training program is causally connected to each Plaintiff's alleged injuries; (2) Plaintiffs have failed to demonstrate a pattern of similar and specific violations, and (3) Plaintiffs have only made conclusory allegations as to whether the inadequate training or supervision is obvious and obviously likely to result in a constitutional violation.

Finally, Plaintiffs' ADA/RA claims must be dismissed because they are based entirely on allegations that Harris County failed to provide adequate medical care to 17 of the detainees, which is insufficient to state a claim under the ADA/RA. Additionally, Plaintiffs' ADA/RA claims fail because Plaintiffs do not allege sufficient facts to show that they are qualified individuals with a disability or that Harris County intentionally discriminated against the 17 detainees based on their

1

alleged disabilities. The Court, therefore, should dismiss all of Plaintiffs' claims.

## II.   NATURE AND STAGE OF THE PROCEEDING

On August 7, 2023, 27 Plaintiffs filed this action against Harris County based on allegations of 22 distinct, separate, and unrelated incidents that allegedly occurred at the Harris County Jail between July 23, 2021 and July 30, 2023. D.E. 1, ¶¶45-261 (Complaint). On November 3, 2023, Harris County filed a Motion to Dismiss (D.E. 8) and a Motion to Sever Plaintiffs' Claims (D.E. 9). On November 21, 2023, Plaintiffs amended the Complaint and added five Plaintiffs. D.E. 20 (Amended Complaint). But the Amended Complaint remains deficient and fails to state a claim.

There are now 32 Plaintiffs in this case, based on separate incidents involving 27 individuals who were detained at the Harris County Jail. Fifteen Plaintiffs are current or former detainees at the Jail who are suing based on individual and separate incidents that allegedly occurred to each of them personally. *Id.* at ¶¶22, 24-31, 34, 36-38, 42-43, 160-303. The remaining seventeen Plaintiffs are family members, including parents, children, and siblings, who are bringing claims on behalf of twelve deceased individuals who were detained at the Jail. *Id.* at ¶¶12-21, 23, 32-33, 35, 39-41, 50-159. Each of the 27 incidents involve its own unique facts and alleged wrongdoing. Critically, no two incidents occurred on the same day or in the same way. Nor are there any allegations that the incidents involved the same officers, medical personnel, or detainees. The alleged incidents also occurred at different locations within the Harris County Jail and even at different addresses. Some of the incidents occurred at 1200 Baker, while others occurred at 701 N. San Jacinto. *Id.* at ¶¶54, 62, 64, 71, 102-03, 129, 202, 210, 215-18, 237-38. Some of the incidents involve allegations of officer force; other incidents involve allegations of altercations with other detainees; others involve allegations of inadequate medical care; and one incident involves suicide. But even within these categories, the facts of each incident differ significantly and are based on separate incidents with their own unique facts. The only "common" link is that

the incidents occurred at the Harris County Jail.

Despite the lack of factual similarity between the incidents, Plaintiffs try to trace these incidents to an alleged policy or custom promulgated by Harris County, and assert three counts:

Count I      *Monell* Claim; Violation of the Fourteenth Amendment; Pursuant to 42 U.S.C. § 1983; Conditions of Confinement.

Count II     *Monell* Claim; Violation of the Fourteenth Amendment; Pursuant to 42 U.S.C. § 1983; Failure to Train or Supervise.

Count III    Violation of Title II of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("RA").

Counts I and II are being asserted on behalf of all 27 detainees, but Count III is being asserted on behalf of only 17 of the detainees. Harris County is now moving to dismiss Plaintiffs' entire Amended Complaint for failure to state a claim. Harris County also is concurrently filing an Amended Motion to Sever Plaintiffs' Claims into 27 individual lawsuits, pursuant to Rules 20, 21, and 42(b) of the Federal Rules of Civil Procedure, because the 27 distinct and unrelated incidents are improperly joined and cannot be maintained in one lawsuit.

## III.    STATEMENT OF THE ISSUES

1.    Whether Plaintiffs have failed to state a § 1983 *Monell* claim (Counts I & II).

2.    Whether Plaintiffs have failed to state a claim under the ADA/RA (Count III).

## IV.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of complaints when they fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The complaint must plead "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## V.   ARGUMENT

### A.   PLAINTIFFS' § 1983 *MONELL* CLAIMS MUST BE DISMISSED.

It is well-established that a municipality is not liable under § 1983 on the theory of respondeat superior. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Counties therefore are not liable for constitutional violations committed by county employees unless those violations result directly from a municipal custom or policy. *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000). To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson*, 588 F.3d at 847. An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id.* "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation... cannot be conclusory; it must contain specific facts.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). The alleged policy also must be causally connected to the plaintiff's claim and injuries. *Id.* (affirming dismissal of *Monell* claim and ruling that "[b]ecause the written policy that [plaintiff] identifies is causally irrelevant, it cannot demonstrate the persistent practice she alleges").

The Fifth Circuit has emphasized that a custom can be inferred only from a pattern displaying "similarity and specificity." *Peterson*, 588 F.3d at 851; *Inaimi v. Harris Cnty., Tex.*, No. 4:21-CV-01832, 2022 WL 901556, at *2 (S.D. Tex. Mar. 25, 2022) (Ellison, J.). In other words, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis ex*

4

*rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). Thus, "the prior acts [must] be fairly similar to what ultimately transpired." *Estate of Davis*, 406 F.3d at 383. A pattern also requires "sufficiently numerous prior incidents, as opposed to isolated instances." *Peterson*, 588 F.3d at 851; *Inaimi*, 2022 WL 901556, at *2. This is a high bar. *See, e.g.*, *Peterson*, 588 F.3d at 852 ("27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct."); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (11 incidents did not support pattern of unconstitutional warrantless entry in the City of Houston which is "one of the Nation's largest cities and police forces").

Plaintiffs attempt to establish municipal liability under § 1983 under two theories: (1) conditions of confinement, and (2) the failure to train or supervise. These claims must be dismissed because they do not sufficiently allege an underlying constitutional violation or municipal liability.

1.     Plaintiffs Have Not Adequately Alleged an Underlying Constitutional Violation.

In Count I, Plaintiffs assert a *Monell* claim based on a conditions of confinement theory under the Fourteenth Amendment. D.E. 20, ¶¶915-1077. However, Plaintiffs' claims actually allege episodic acts or omissions. Constitutional claims by pretrial detainees can take two forms: (1) conditions of confinement or (2) episodic acts or omissions. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). A condition of confinement case is a "constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement," including complaints such as "the number of bunks in a cell or his television or mail privileges." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). "In contrast, where the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an 'episodic act or omission' case." *Id.* "In an 'episodic act or omission' case, an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the

actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id.* The proper classification of a detainee's claim is important because different standards apply to the two theories. *See id.*; *Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997).

Although Plaintiffs label their claim as a conditions of confinement claim, in reality Plaintiffs' claims are based on episodic acts or omissions because all of their alleged incidents are based on specific acts and omissions of County officers and medical providers, rather than the general conditions of their confinement. Specifically, Plaintiffs' claims are based on allegations of officer force; altercations with other detainees; specific officers' failure to observe, monitor, or intervene; and the adequacy of medical treatment provided to certain detainees. D.E. 20, ¶¶50-303. In other words, Plaintiffs' claims are based on alleged acts and omissions by County actors interposed between each of the 27 detainees and Harris County. Plaintiffs' attempt to fit their allegations in a condition of confinement claim by pointing to county policies or customs is ineffective because their claims are still unequivocally based on alleged acts and omissions by individuals. Accordingly, Plaintiffs' claims are properly analyzed in the episodic act or omission context, not a condition of confinement claim. *See*, *e.g.*, *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (ruling plaintiff raised episodic claim because her complaint turned on the officers' alleged failure to take better care of her, medically screen her, and secure treatment for her); *Flores*, 124 F.3d at 738 (holding in jail suicide case that plaintiff alleged an episodic claim, despite allegations that the county had a policy or practice of inadequate training and staffing and inadequate suicide detection, intervention, and prevention); *Scott*, 114 F.3d at 53 (holding that even though the plaintiff asserted that understaffing caused her injury, her actual complained-of harm was sexual assault, an episodic act); *Anderson v. Dallas Cty. Tex.*, 286 F.

App'x 850, 859 (5th Cir. 2008) ("Because the plaintiffs cannot prove that [detainee] was subjected to cruel and unusual punishment without first proving that a state actor deprived him of his constitutional rights, the plaintiffs' case is an episodic-act-or-omission case.").

When addressing municipal liability for an episodic claim, the Fifth Circuit has ruled that courts must "separate the inquiry pertinent to the episodic act or omission ('the existence of a constitutional violation simpliciter') from that pertinent to the custom, rule, or policy that is alleged to have permitted the act ('a municipality's liability for that violation')." *Scott*, 114 F.3d at 54. Plaintiffs therefore must first prove an underlying constitutional violation by showing that "an official acted with *subjective* deliberate indifference" to that detainee's constitutional rights. *Id.* Subjective deliberate indifference means "the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Olabisiomotosho*, 185 F.3d at 526. For excessive force cases, a plaintiff must show an injury that resulted directly and only from a use of force that was clearly excessive and that the excessiveness of the force was clearly unreasonable. *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727 (5th Cir. 2018). Then, to hold a municipality liable for that constitutional violation, "the detainee must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with *objective* deliberate indifference to the detainee's constitutional rights." *Id.*

Plaintiffs have failed to plead sufficient facts showing an underlying constitutional violation. For example, for the detainees who allege inadequate medical care, Plaintiffs have not alleged sufficient facts to show that any of the unidentified officers or medical providers involved in each incident (1) acted with subjective deliberate indifference, (2) had subjective knowledge of a substantial risk of serious harm, or (3) responded with deliberate indifference to that risk. At most, those Plaintiffs allege disagreement with their medical treatment, which does not give rise

to a constitutional violation. *Walls v. Tex. Dep't of Criminal Justice*, 270 Fed. App'x. 358, 358 (5th Cir. 2008) (affirming dismissal of prisoner's § 1983 claim because his "disagreement with the [medical] treatment he received does not give rise to a constitutional violation"). For the detainees who allege that they were involved in an altercation with another detainee, Plaintiffs generally allege that officers were not properly monitoring or observing the detainees to prevent the altercations, but there are no facts to suggest that any of those officers had subjective knowledge of a substantial risk of serious harm, responded with deliberate indifference to that risk, or otherwise acted with subjective deliberate indifference. For the detainees who allege excessive force, they have not sufficiently alleged that the use of force was clearly excessive or clearly unreasonable. Plaintiffs therefore have not sufficiently pled an underlying constitutional violation, which warrants dismissal of Plaintiffs' *Monell* claims.

2. <u>Plaintiffs Have Not Adequately Alleged a Policy or Custom.</u>

Plaintiffs also have not adequately pled a municipal policy or custom adopted with objective deliberate indifference to the detainee's constitutional rights. Plaintiffs do not identify any particular written policies, so Plaintiffs claims must proceed under the theory of a widespread practice, which requires a pattern displaying "similarity and specificity" and involving "sufficiently numerous prior incidents." *Peterson*, 588 F.3d at 851; *Inaimi*, 2022 WL 901556, at *2. Plaintiffs' § 1983 claims must be dismissed because they (1) have not sufficiently alleged a policy or custom, and (2) have not sufficiently alleged a pattern displaying similarity and specificity and involving sufficiently numerous prior incidents.

On the first issue, Plaintiffs have not sufficiently identified the alleged policies at issue. Plaintiffs allege that Harris County has the following policies: (1) failure to observe and monitor, (2) failure to provide medical care, (3) institutionalized force by jail employees on detainees, (4) promulgated a culture of violence amongst detainees, and (5) systemic understaffing and

overcrowding. D.E. 20, ¶912. But these alleged policies are too vague, generalized, and conclusory to state a *Monell* claim and Plaintiffs do not allege sufficient facts tying each incident to these alleged policies. *See Pena*, 879 F.3d at 622 ("[A] complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation... cannot be conclusory; it must contain specific facts.'"). Additionally, not all of the alleged policies apply to each of the Plaintiffs' claims. *Id.* (ruling that the alleged policy must be causally connected to the plaintiff's claim and injuries). For example, not all of the incidents involve allegations of "institutionalized force" or "a culture of violence amongst detainees"—some of the incidents only allege claims based on medical care. And not all of the claims are based on the "failure to observe and monitor," the "failure to provide medical care," or "understaffing and overcrowding."

Although Plaintiffs state that the Court should consider the "interrelation" of these policies, the Fifth Circuit has ruled that courts should "disaggregate" asserted policies or customs when "they express no single municipal policy but only a series of adversarial conclusions." *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001). Disaggregation is similarly warranted when each policy or custom "concerns a discrete [municipal] program or area of decision-making, and each invokes separate aspects of the policy issue." *Id.* Thus, each policy alleged in this case should be disaggregated and viewed independently. Because Plaintiffs have only provided conclusory and generalized allegations concerning the alleged policies and their causal connection to each detainee's alleged constitutional violation, Plaintiffs have not sufficiently alleged a *Monell* claim.

Plaintiffs' *Monell* claims also should be dismissed because Plaintiffs have not sufficiently alleged a pattern displaying "similarity and specificity" and involving "sufficiently numerous prior incidents" for each of the policies identified by Plaintiffs. Notably, Plaintiffs have not cited a single lawsuit where Harris County was found liable for a constitutional violation under a *Monell* claim,

let alone a lawsuit where Harris County was found liable under any factual scenarios similar to any of the incidents alleged in this case. Instead, Plaintiffs try to manufacture a pattern by citing to entirely irrelevant materials, allegations and incidents that do not involve similar factual scenarios, including: (1) a fourteen-year-old DOJ Report based on incidents that involved different factual scenarios; (2) Texas Commission on Jail Standard ("TCJS") reports that are based on incidents involving different factual scenarios; (3) generalized statistics with no underlying factual context for each incident; (4) other lawsuits filed against Harris County involving entirely different factual allegations even though no finding of liability was found in any of those cases; and (5) other alleged incidents that involved different factual scenarios. None of this is sufficient to "establish a pattern of 'similarity and specificity' and involving 'sufficiently numerous prior incidents, as opposed to isolated instances.'" *Inaimi*, 2022 WL 901556, at *3.

**2009 DOJ Report.** Plaintiffs first rely on a fourteen-year-old DOJ report from 2009 regarding the Harris County Jail. D.E. 20, ¶¶316-40. However, this Court and others have deemed that reliance on that same report is insufficient to allege a § 1983 claim. *Inaimi*, 2022 WL 901556, at *3; *Henderson v. Harris Cnty.*, No. 4:18-CV-413, 2021 WL 1112400, at *4 (S.D. Tex. Feb. 24, 2021), *report adopted*, No. 4:18-CV-00413, 2021 WL 1111104 (S.D. Tex. Mar. 23, 2021); *Johnson v. Harris Cnty.*, No. 4:16-CV-1623, 2018 WL 6505857, at *10 (S.D. Tex. July 31, 2018) ("Because the DOJ report only discussed violations occurring before 2009, it is largely irrelevant to whether Harris County Jail employees in 2015 received sufficient training and supervision.").

In *Inaimi v. Harris County*, this Court ruled that the 2009 DOJ report "fails to establish a pattern displaying 'similarity and specificity' and involving 'sufficiently numerous prior incidents, as opposed to isolated instances.'" *Inaimi*, 2022 WL 901556, at *3. The Court reasoned that the "examples listed occurred fourteen years ago and were based on incidents that involved different

factual scenarios" and dismissed the plaintiff's § 1983 claim against Harris County because the plaintiff failed to sufficiently allege a "custom that fairly represents municipal policy." *Id.*

The same reasoning applies here. The 2009 DOJ report concerns incidents that occurred fourteen years ago and were based on incidents that involved different factual scenarios from the 27 incidents alleged in the Complaint. For example, Plaintiffs cite examples from the DOJ report where (1) a detainee went to the clinic complaining of swelling in his legs, was prescribed blood pressure medication, and was sent to the hospital after his condition worsened, and (2) a diabetic detainee who complained of swelling in his legs, was prescribed pain medication, and then passed away while waiting at the clinic. D.E.20, ¶¶325-26. Neither of these examples is factually similar to any of the 27 incidents, and none of the detainees allege that they visited the clinic for swelling in their legs. While Plaintiffs claim generally that these examples are similar to Plaintiffs' claims for lack of medical care, Fifth Circuit precedent requires that the examples must be "fairly similar to what ultimately transpired." *Estate of Davis*, 406 F.3d at 383. Plaintiffs also point to a comment from the DOJ report regarding the Jail's suicide prevention policies (D.E. 20, ¶332), but only one of the 27 incidents involved an allegation of suicide. The other references from the DOJ report are similarly irrelevant, too vague and/or factually nonspecific to support a pattern under § 1983.Thus, the DOJ report fails to establish a pattern displaying similarity, specificity, and sufficiently numerous prior incidents, as opposed to isolated instances. *Inaimi*, 2022 WL 901556, at *3.

**TCJS Reports.** The Texas Commission on Jail Standard ("TCJS") reports suffer from the same problems and are based on incidents involving different factual scenarios than the 27 incidents. For instance, Plaintiffs cite to a report dated April 3, 2017 of two detainees being left in an unsupervised van, ¶¶391-395, but none of the 27 incidents involve being left unsupervised in a van. The same is true of the other TCJS reports which are not factually similar to any of the 27

incidents and do not establish a pattern displaying similarity, specificity, or numerosity.

**Statistics.** Plaintiffs' reliance on statistics concerning assaults, use of force, and deaths at the Jail also is insufficient to plead a pattern under § 1983. *See* D.E. 20, ¶¶357-77. Plaintiffs admit the assault statistics "encompass many different assaults including detainee on detainee and officer on detainee," *id.* at ¶362, but the statistics are not broken down by type of assault. The assault and use of force statistics also do not provide any insight into the factual basis of those incidents, or whether any constitutional rights were violated. *Id.* at ¶¶364-73. Similarly, the death statistics are not broken down by cause of death, which necessarily will include deaths from natural causes, and do not provide any insight into the cause or circumstances of those deaths. *Id.* at ¶¶374-75. Further, none of the statistics are connected to any particular policy or constitutional violation at issue in this case. These statistics therefore cannot be used to establish a pattern displaying the similarity, specificity, and numerosity required to plead a *Monell* claim. Indeed, not all of the detainees at issue in the lawsuit even assert claims based on use of force, assault by another detainee, or an in-custody death; thus, those statistics have no relevance and are not causally connected to the Plaintiffs whose claims are not based on those types of incidents. *See Pena*, 879 F.3d at 622.

This Court and others have rejected the use of generalized statistics to plead a *Monell* claim. *See, e.g.*, *Inaimi*, 2022 WL 901556, at *3 (allegation of "3,000 incidents of excessive force in Harris County since 2015, 'with very few findings of unjustified force or firings as result' was insufficient to state *Monell* claim); *Washington v. Smith*, 639 F. Supp. 3d 625, 655 (E.D. La. 2022) ("Courts have rejected arguments that statistics regarding citizen complaints, without more, are sufficient to state a claim for policy and practice liability."); *Groark v. Timek*, 989 F. Supp. 2d 378, 395 (D.N.J. 2013) ("[W]hen a party seeks to submit statistical evidence showing the frequency of excessive force complaints and the rate at which the complaints are sustained to support a *Monell*

claim under § 1983, he 'must show why those prior incidents were wrongly decided and how the misconduct in those cases is similar to that involved in the present action.'"). The Court should similarly reject Plaintiffs' use of generalized statistics in this case.

**Other Lawsuits and Incidents.** Plaintiffs also rely on 38 other alleged incidents involving Harris County, including 13 other lawsuits filed against the County. D.E. 20, ¶¶487-910. However, none of those alleged incidents involve similar facts at issue here. Eight of the incidents involved suicide, but have significantly different facts from one another and from the single suicide incident at issue. *Id.* at ¶¶ 488-541, 595-99, 702-10, 827-33, 846-51. Two of the incidents involved **officers** who were allegedly assaulted by a **detainee**. *Id.* at ¶¶890-899. None of the Plaintiffs are officers, and therefore, these examples are irrelevant and cannot constitute a pattern displaying "similarity and specificity." Seven incidents involved detainees who were found unresponsive, but there are no allegations of wrongdoing by Harris County other than the "failure to observe" and there was no finding of a constitutional violation. *Id.* at ¶¶542-94, 820-26. Of the remaining incidents, three involved altercations with another detainee, only nine involved allegations of officer force,[1] and only ten involved allegations of inadequate medical care.[2] Again, there was no finding of a constitutional violation in any of these cited incidents. Even within these categories, the other incidents are not similar to one another, nor are they similar to the incidents at issue in this case and therefore do not meet the "similarity and specificity" requirement. But even if they were sufficiently similar, Plaintiffs still have not alleged "sufficiently numerous prior incidents."

---

[1] Notably, Plaintiffs admit that for two of these incidents, numerous officers were suspended and fired. D.E. 20, ¶639 ("The Harris County Sheriff's office then terminated eleven officers for their involvement and their history of falsified use of force reports and suspended six others"); *id.* at ¶696 ("Three employees were suspended, and five detention officers were indicted for various felonies . . ."). Plaintiffs cannot rely on these incidents to establish that Harris County has a policy and custom of institutionalized force by jail employees on detainees and a culture of violence amongst detainees, when Plaintiffs admit that the County took corrective action against those officers. Corrective action is entirely inconsistent with Plaintiffs' theory of the case.

[2] Two of the incidents involve a combination of these allegations and so are counted twice.

*Peterson*, 588 F.3d at 851 (27 incidents insufficient); *Pineda*, 291 F.3d at 329 (11 incidents insufficient). And Plaintiffs cannot aggregate these different types of incidents or rely on "any and all bad or unwise acts" to meet the numerosity requirement. *Peterson*, 588 F.3d at 851; *Piotrowski*, 237 F.3d at 581.

Additionally, while 13 of the 38 other incidents alleged in the Complaint involved lawsuits filed against Harris County, none of those lawsuits found that Harris County was liable and none of them found a constitutional violation. The Court is able to take judicial notice of those lawsuits and their filings because they are public court records. Fed. R. Evid. 201. Attached as Appendix A is a chart detailing the status and disposition of the lawsuits cited in the Complaint. As noted in the Appendix, several of the lawsuits were dismissed in favor of the County on summary judgment or on a motion to dismiss. Some of the cases settled and were voluntarily dismissed, which does not establish liability against the County. *See* Fed. R. Evid. 408 (evidence of a settlement cannot be used to prove the validity of a claim). And a few are still ongoing but there has not been a finding of liability against the County and these incidents are factually dissimilar. Other courts have recognized that "the mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force." *Webb v. City of Waterloo*, No. 17-CV-2001-CJW-MAR, 2019 WL 6736219, at *21 (N.D. Iowa Dec. 11, 2019).

Finally, even the 27 incidents at issue in this lawsuit do not establish a pattern displaying similarity, specificity, or numerosity. Each of the 27 incidents involved different factual scenarios: some but not all involve allegations of officer force; some but not all involve alleged altercations with another detainee; and some but not all involve allegations of inadequate medical care. But again, even within these categories, the facts differ significantly. Plaintiffs have not shown similarity, specificity, or sufficiently numerous incidents to state a *Monell* claim, and Plaintiffs

cannot simply rely on allegations of other prior bad acts to state a municipal liability claim. Accordingly, Plaintiffs' *Monell* claims must be dismissed.

  3. <u>Plaintiffs Have Not Adequately Alleged a Failure to Train or Supervise Claim.</u>

  Plaintiffs also assert a *Monell* claim based on failure to train or supervise. D.E. 20, ¶¶1079-1171. To find Harris County liable on this theory, Plaintiffs must show: "1) the [county] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Pena*, 879 F.3d at 623. "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). And the particular deficiency in the training must have caused the ultimate injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). Additionally, proof that an injury or accident could have been avoided if an officer had better or more training is not sufficient; there must be proof of deliberate indifference. *Id.*

  "Deliberate indifference requires a showing of more than negligence or even gross negligence." *Estate of Davis*, 406 F.3d at 381. Plaintiffs must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Estate of Davis*, 406 F.3d at 381. "Because the standard for [municipal] fault is a stringent one, [a] pattern of similar constitutional violations by untrained employees is ordinarily required to show deliberate indifference." *Pena*, 879 F.3d at 623 (quoting

*Connick v. Thompson*, 563 U.S. 51, 62 (2011)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Importantly, "notice of a pattern of **similar violations** is required" and "the prior acts be fairly similar to what ultimately transpired." *Estate of Davis*, 406 F.3d at 383 (emphasis added); *Connick*, 563 U.S. at 62. For example, in *Connick*, the plaintiff alleged that the Orleans Parish District Attorney's Office failed to train its prosecutors adequately about their duty to produce exculpatory evidence and that the lack of training caused a *Brady* violation in the plaintiff's case. *Connick*, 563 U.S. at 54. To support his *Monell* failure to train claim, the plaintiff pointed to examples where Louisiana courts overturned convictions because of *Brady* violations by prosecutors in the same district attorney's office. *Id.* However, the United States Supreme Court ruled that the plaintiff could not rely on those other *Brady* violations because they did not involve the specific type of *Brady* violation at issue in the lawsuit. *Id.* None of the other *Brady* violations involved the failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind, so the Supreme Court determined those other *Brady* violations were not similar to the *Brady* violation at issue and could not have put the defendant on notice that specific training was necessary to avoid the plaintiff's alleged constitutional violation. *Id.* Therefore, courts narrowly construe the alleged violation and require plaintiffs to demonstrate a pattern of "similar and specific violations." *Id.*; *Inaimi*, 2022 WL 901556, at *4; *Estate of Davis*, 406 F.3d at 383.

Plaintiffs' failure to train and supervise claim should be dismissed for multiple reasons. First, Plaintiffs have not alleged any facts to show Harris County's training program is constitutionally defective or that any particular deficiency with the training program is causally connected to each detainee's alleged injuries. Plaintiffs instead merely rely on generalities and

conclusory allegations concerning Harris County's training—many of which are not even relevant to Plaintiffs' claim or injuries. For example, Plaintiffs allege that Harris County has a history of "encouraging and ratifying false reports, encouraging and ratifying summary investigations, and ultimately charging detainees with the false charges to cover up the use of force," D.E. 20, ¶1083; "falsify[ing] documentation and reports pertaining to observations and cell checks," *id.* at ¶1085; and "falsify[ing] records pertaining to the detainee's symptoms and care to make it appear as if the detainee received care," *id.* at ¶1086. Because none of the 27 incidents involve these alleged training failures, Plaintiffs cannot base their claims on them. *See Canton*, 489 U.S. at 391.

Even the allegations specific to each of the 27 detainees in Count II are too conclusory to state a claim for failure to train or supervise. For example, for the claims on behalf of detainee Gary Wayne Smith, Plaintiffs make conclusory allegations that "Harris County's inadequate training and supervision policies, practices, and procedures, pertaining to the lack of providing medical care and medication for Mr. Smith's known medical needs, and the failure to provide proper observation and monitoring of Mr. Smith to provide timely medical care was the direct cause of Mr. Smith's death." *Id.* at ¶1090. These generalities and conclusory allegations are insufficient to state a claim because they do not specifically identify what was constitutionally deficient about Harris County's training concerning the provision of medical care or observation and monitoring. *See Roberts*, 397 F.3d at 293 (plaintiff "must allege with specificity how a particular training program is defective"). The allegations regarding the other 26 detainees are similarly conclusory and insufficient to state a claim. Each of the incidents involve individual officers and there are no factual allegations that any particular officer was not properly trained or what training they should have received that they did not. In fact, each officer receives state-mandated training that is certified by the Texas Commission on Law Enforcement ("TCOLE") and

there is no allegation that the TCOLE-certified training is deficient. Even if the TCOLE training was deficient, that would be an allegation against the State of Texas, not Harris County.

Second, Plaintiffs have failed to satisfy the deliberate indifference prong because, as discussed in above, Plaintiffs have failed to demonstrate a pattern of similar and specific violations. *Inaimi*, 2022 WL 901556, at *4. Plaintiffs merely present allegations of isolated incidents, which is insufficient. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).

Further, Plaintiffs have failed to satisfy the deliberate indifference prong because Plaintiffs have only made conclusory allegations as to whether the inadequate training or supervision is obvious and obviously likely to result in a constitutional violation. *Inaimi*, 2022 WL 901556, at *4; *Cano v. Faust*, No. CV H-19-0317, 2022 WL 980276, at *6 (S.D. Tex. Mar. 31, 2022) (Ellison, J.) ("Plaintiff's conclusory allegations of deliberate indifference fail to plead factual allegations sufficient to raise a viable claim for failure to train and/or supervise."), *aff'd*, No. 22-20189, 2023 WL 2521869 (5th Cir. Mar. 14, 2023); *Harvey v. Montgomery Cnty.*, Tex., 881 F. Supp. 2d 785, 798 (S.D. Tex. 2012) (dismissing failure to train claim because plaintiff did not allege "facts that would show the municipality's training policy or procedure were inadequate, let alone facts that could state a claim that the need for more or different training is obvious"). For each of the 27 detainees, Plaintiffs merely allege in a conclusory fashion that "Harris County acted with deliberate, callous, conscious, and unreasonable indifference to [Plaintiffs'] constitutional rights by being aware of the known and obvious consequences of their training policies and practices and failing to implement new or additional training policies or procedures to correct these known deficiencies." D.E. 20, Count II. Plaintiffs do not allege any facts to support these conclusory allegations. Therefore, Plaintiffs cannot state a *Monell* claim for failure to train or supervise.

**B.**     **PLAINTIFFS' ADA/RA CLAIMS MUST BE DISMISSED.**

Plaintiffs allege that Harris County violated Title II of the ADA and § 504 of the RA with

respect to 17 of the detainees. D.E. 20, ¶¶1172-1296. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 provides that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(1). Because § 504 closely tracks the language of the ADA, the Fifth Circuit analyzes ADA and RA claims together. *Estate of A.R. v. Muzyka*, 543 Fed. App'x. 363, 364 (5th Cir. 2013).

To plead a discrimination claim under the ADA/RA, Plaintiffs must allege: (1) that he is a qualified individual within the meaning of the Act; (2) that he was excluded from participation in, or denied benefits of, services, programs, or activities for which Harris County is responsible, or was otherwise being discriminated against by Harris County; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020). A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination. *Id.*; *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002).

1.   Denial of Medical Care is Not Actionable Under the ADA/RA.

Plaintiffs' ADA/RA claims must be dismissed because they are based entirely on allegations that Harris County failed to provide adequate medical care to 17 of the detainees, which is insufficient as a matter of law to state a claim under the ADA/RA. Notably, "the ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." *Nottingham v. Richardson*, 499 Fed. App'x. 368, 377 (5th Cir. 2012) (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). Nor does the ADA/RA establish a "standard of care for medical

treatment" in prisons. *Walls*, 270 Fed. App'x. at 359; *Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 (5th Cir. 2021); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'"); *Buchanan v. Maine*, 469 F.3d 158, 175 (1st Cir. 2006) (recognizing that multiple circuits have held that the ADA does not guarantee any particular level of medical care for disabled persons). The ADA/RA also does not create a remedy for medical malpractice or medical negligence. *Bryant*, 84 F.3d at 249 (recognizing that the "ADA does not create a remedy for medical malpractice" and ruling that plaintiff failed to state a claim under the ADA because the plaintiff merely alleged incompetent treatment of his paraplegia and did not allege he was excluded from a prison service, program, or activity because of his disability).

A plaintiff therefore cannot bring an ADA/RA claim simply by restating a claim for denial of medical care. *Walls*, 270 Fed. App'x. at 359; *Hale*, 8 F.4th at 404. A plaintiff's disagreement with medical treatment likewise does not state a claim under the ADA/RA. *Walls*, 270 Fed. App'x. at 358; *Thomas v. Nino*, No. 2:22-CV-00252, 2023 WL 4444974, at *16 (S.D. Tex. Jan. 25, 2023), *report adopted*, No. 2:22-CV-00252, 2023 WL 3973610 (S.D. Tex. June 13, 2023). For example, in *Walls v. Tex. Dep't of Criminal Justice*, the Fifth Circuit affirmed dismissal of a prisoner's § 1983 and ADA/RA claims where he alleged that the prison was deliberately indifferent to his serious medical needs by refusing to surgically install a protective metal plate to cover a hole in his skull. *Walls*, 270 Fed. App'x. at 358. He also alleged ADA/RA violations claiming he was discriminated against due to his disability. *Id.* at 359. The Fifth Circuit affirmed dismissal of the § 1983 claim because his "disagreement with the treatment he received does not give rise to a constitutional violation." *Id.* at 358. The Court also affirmed dismissal of his ADA/RA claim

finding that it was not actionable because it was "simply a restatement of the denial-of-medical-care claim" and the "ADA does not set out a standard of care for medical treatment." *Id.* at 359.

Similarly, in *Hale v. Harrison Cnty. Bd. of Supervisors*, the Fifth Circuit ruled that an ADA claim was "frivolous" where the plaintiff alleged he was discriminated against based on his hepatitis-C status through the "prison's refusal to prescribe his preferred medication, crushing his medication, denial of a high-protein diet, and denial of multiple antacid pills per day." *Hale*, 8 F.4th at 404 n.1. The Court recognized that the "[t]he ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners," because "[t]he ADA does not set out a standard of care for medical treatment." *Id.* The Court found that the plaintiff "does not come close to showing that the prison's treatment of his hepatitis-C status constitutes disability discrimination." *Id.* The Fifth Circuit also determined that the plaintiff failed to show that any discrimination was intentional, because he admitted that the denial of his requested accommodations meant he was treated the same as everyone else. *Id.*

Courts in the Southern District of Texas have followed this line of cases to dismiss ADA/RA claims that are based on the denial of medical care or disagreements with medical treatment. *See, e.g., Thomas v. Anciso*, No. 2:22-CV-00254, 2023 WL 4666629, at *3 (S.D. Tex. July 20, 2023) (dismissing ADA/RA claim based on the denial of prisoner's requested medical treatment); *Thomas v. Samuel*, No. 2:22-CV-00158, 2022 WL 19001964, at *16 (S.D. Tex. Dec. 7, 2022*), report adopted*, No. 2:22-CV-00158, 2023 WL 1529544 (S.D. Tex. Feb. 2, 2023) (dismissing ADA/RA claim because prisoner's "allegations simply state a disagreement with his medical treatment"); *Smith Estate of Hawkins v. Harris Cnty.*, No. CV H-15-2226, 2019 WL 12117217, at *8 (S.D. Tex. Feb. 25, 2019) (decision not to increase detainee's monitoring for suicide or refer him to mental health unit before committing suicide were medical decisions that

are not actionable under the ADA/RA), *aff'd Smith v. Harris Cnty., Tex.*, 956 F.3d 311 (5th Cir. 2020); *Salcido v. Harris Cnty., Tex.*, No. CV H-15-2155, 2018 WL 4690276, at *54 (S.D. Tex. Sept. 28, 2018) (dismissing ADA/RA claims because plaintiffs were trying to "recast their claims for denial of adequate medical care as ADA and RA claims" and recognizing that "the ADA does not compel Harris County to provide any particular treatment in order to prevent discrimination"); *Doe v. Harris Cnty., Tex.*, No. CV H-16-2133, 2017 WL 4402590, at *29 (S.D. Tex. Sept. 29, 2017) (dismissing ADA/RA claim because allegations that she was discriminated against "by treating her as a criminal defendant who did not require mental health treatment, and by denying her services and programs that would have accommodated her disability are merely different ways of alleging that Harris County failed to provide her adequate mental health treatment").

Here, Plaintiffs' ADA/RA claims fail for the same reason because they do not involve the discriminatory denial of prison services based on the detainees' alleged disabilities. Rather, Plaintiffs' claims are based entirely on allegations of the denial of medical care and disagreements with their medical treatment, which are insufficient to state an ADA/RA claim. Specifically, Plaintiffs allege that Harris County "discriminated" against the detainees in the following ways[3]:

- "by failing and refusing to provide him his medications consistently" or "timely." D.E. 20, ¶¶1184, 1191, 1198, 1210, 1217, 1225, 1281, 1287.

- "by failing and refusing to provide him with his medications and medical care." *Id.* at ¶¶1232, 1246, 1260, 1268, 1275.

- "by failing and refusing to provide him with sufficient medical care." *Id.* at ¶¶1238, 1293.

- "by failing and refusing to provide [the detainee] with full testing and evaluation for his physical injuries." *Id.* at ¶¶1191, 1204, 1210, 1225, 1232, 1238, 1246, 1260, 1268, 1281, 1287, 1293.

- "by failing and refusing to accommodate his disabilities by providing a more comprehensive treatment program." *Id.* at ¶¶1184, 1191, 1210, 1225, 1232, 1246, 1260, 1268, 1275, 1281,

---

[3] Not all of these allegations are applicable to each detainee at issue in the lawsuit.

1287.

- "by failing to provide a thorough and proper evaluation, testing, and treatment plan for [the detainees'] ongoing physical condition and verbal complaints." *Id.* at ¶¶ 1217, 1198.

- "by refusing to provide medical care in response to requests for care." *Id.* at ¶1225.

- "by failing to conduct observations at shorter intervals to ensure that his condition did not worsen." *Id.* at ¶1184.

- "by placing him in a single cell but not placing him on suicide watch." *Id*. at ¶1251.

- by "leaving" or "placing" the detainees in the "general population." *Id.* at ¶¶1191, 1204, 1225, 1287.

- "by failing and refusing to accommodate his disabilities by modifying the Jail employees techniques of interacting and handling a detainee with his disabilities." *Id.* at ¶¶1232, 1246, 1260, 1268, 1275.

- "by failing and refusing to place [the detainee] in a dedicated facility to handle his disability" or "mental health care facility." *Id.* at ¶¶1246, 1251, 1260, 1268.

None of these allegations show that Harris County discriminated against the detainees based on their alleged disabilities. Plaintiffs are simply restating their claims for denial of medical care and disagreements with their medical treatment, which is not actionable under the ADA/RA. Consequently, Plaintiffs' ADA/RA claims must be dismissed with prejudice.

2.     Plaintiffs Have Not Adequately Pled the Elements of their ADA/RA Claim.

Plaintiffs' ADA/RA claims also must be dismissed because they are too conclusory to state a claim. First, Plaintiffs do not sufficiently allege that they are qualified individuals with a disability. "Disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). A plaintiff cannot rely on conclusory allegations that his impairment substantially limits a major life activity; instead, a plaintiff must allege sufficient facts as to how the impairment substantially limits a major life activity. *See*, *e.g.*, *Hale v. King*, 642 F.3d 492, 501 (5th Cir. 2011) (ruling that plaintiff failed to state a claim under the ADA because although he alleged he suffered from PTSD and Hepatitis C,

he did not allege how those conditions substantially limited a major life activity); *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 606 (S.D. Tex. 2012) (Ellison, J.) (dismissing ADA claim because plaintiff failed to allege that his diagnosis substantially limited a major life activity); *Wade v. Montgomery Cnty., Tex.*, No. 4:17-CV-1040, 2017 WL 7058237, at *6 (S.D. Tex. Dec. 6, 2017), *report adopted Wade v. Montgomery Cnty.*, No. 4:17-CV-1040, 2018 WL 580642 (S.D. Tex. Jan. 25, 2018) (dismissing ADA claim because although plaintiff alleged that she was diagnosed with bipolar disorder, major depression, severe anxiety, and borderline personality disorder, those allegations were not sufficient to plead that she was a qualified individual with a disability under the ADA because she did not identify any major life activity that is impacted by those impairments); *see also Salcido*, 2018 WL 4690276, at *50 ("[S]tanding alone, the diagnosis of a condition such as hypertension, obesity, and anxiety, is insufficient to trigger the protections of the ADA.") (citing *Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 91 (5th Cir. 1996)).

Although Plaintiffs allege a variety of medical conditions, including high blood pressure, depression, anxiety, and bipolar disorder, they only allege in a conclusory fashion that those conditions "limited one or more of his major life activities" such as "the ability to think, interact, and control major bodily functions." *See* D.E. 20, Count III. None of the Plaintiffs allege sufficient facts as to how his impairment substantially limits a major life activity; these vague and conclusory allegations are insufficient. Plaintiffs therefore fail to state a claim under the ADA/RA because they have not sufficiently alleged that they are qualified individuals with a disability.

Additionally, Plaintiffs do not allege sufficient facts to show that Harris County **intentionally** discriminated against the 17 detainees based on their alleged disabilities. *See Delano-Pyle*, 302 F.3d at 574; *accord Smith*, 956 F.3d at 318. Plaintiffs do not allege the identity of any particular officer who allegedly discriminated against the detainees based on their alleged

disabilities. Nor do Plaintiffs allege any specific facts to show whether those unidentified officers knew of each of the detainees' alleged disabilities. *See Smith*, 956 F.3d at 318 ("[I]ntent requires that the defendant at least have actual notice.").

Instead, Plaintiffs merely allege in a conclusory fashion that Harris County was aware of the detainees' disabilities through unspecified "paperwork," unspecified "interactions" with the detainees, unspecified "visits to the clinic," "through his prescribed medications," and unspecified "complaints made." *See* D.E. 20, ¶¶1083-1195. These allegations are too vague and conclusory to show that Harris County and the unidentified individuals involved in each incident were aware of each detainees' alleged disabilities. *See Taylor v. Hartley*, 488 F. Supp. 3d 517, 544 (S.D. Tex. 2020) (dismissing ADA/RA claim because plaintiff failed to allege sufficient facts to show that the defendant had notice of the plaintiff's disabilities). And other than conclusory allegations of "intentional discrimination," there are simply no facts to show that the unknown and unidentified individuals involved in the incidents were motivated by any of the detainee's alleged disabilities or intentionally discriminated against the detainees. Moreover, Plaintiffs cannot rely on their conclusory allegations that Harris County was "deliberately indifferent," because deliberate indifference is insufficient to meet the intentional discrimination standard under the ADA. *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 334 (5th Cir. 2023) ("Discrimination, if any, must be intentional rather than deliberately indifferent for a plaintiff to recover compensatory damages" under ADA claim). Plaintiffs' ADA/RA claims therefore must be dismissed with prejudice.

## VI.  **CONCLUSION**

Harris County respectfully requests that the Court grant its Motion to Dismiss, dismiss all of Plaintiffs' claims in this lawsuit, award Harris County all of its costs, and grant Harris County all further relief to which it is justly entitled at law or in equity.

Dated: December 5, 2023                    Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: */s/ Gregory C. Ulmer*
Gregory C. Ulmer
***Attorney-in-Charge***
Texas Bar No. 00794767
Southern District Federal ID No. 19827
gulmer@bakerlaw.com
811 Main Street, Suite 1100
Houston, Texas 77002-6111
Telephone: (713) 751-1600
Facsimile:  (713) 751-1717

**OF COUNSEL:**
**BAKER & HOSTETLER LLP**
James E. Phillips
Texas Bar No. 24060423
Southern District Federal ID No. 906115
jphillips@bakerlaw.com
Kristen H. Luck
Texas Bar No. 24104027
Southern District Federal ID No. 3111037
kluck@bakerlaw.com
Ryan A. Walton
Texas Bar No. 24105086
Southern District Federal ID No. 3278426
rwalton@bakerlaw.com
811 Main Street, Suite 1100
Houston, Texas 77002-6111
Telephone: (713) 751-1600
Facsimile:  (713) 751-1717

**ATTORNEYS FOR DEFENDANT**
**HARRIS COUNTY, TEXAS**

## <u>CERTIFICATE OF SERVICE</u>

  In accordance with the Federal Rules of Civil Procedure, I hereby certify that on December 5, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of this filing to all counsel of record.

*/s/ Gregory C. Ulmer*  
Gregory C. Ulmer
