**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **OCTEVIA WAGNER; et. al.,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO: 4:23-cv-02886** |
| | § | |
| **HARRIS COUNTY, TEXAS,** | § | |
| | § | |
| *Defendant.* | § | |

---

### PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

---

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW Plaintiffs Octevia Wagner, et al. and files this Response to Defendant Harris County's Motion to Dismiss (Dkt. No. 21), and in support thereof would respectfully show unto the Court as follows:

# TABLE OF CONTENTS

I.     SUMMARY OF THE ARGUMENT ................................................................. 1

II.    STATEMENT ON THE NATURE AND STAGE OF THE PROCEEDING ............. 2

III.   STATEMENT OF ISSUES ......................................................................... 3

IV.    STANDARD OF REVIEW .......................................................................... 3

V.     ARGUMENT AND AUTHORITIES ............................................................... 3

    A.     Plaintiffs Adequately Pled Their § 1983 *Monell* Claims Requiring the Denial of Harris County's Motion to Dismiss. ................................................................. 4

        i.     Plaintiffs Have Adequately Pled Constitutional Violations Under Both Conditions of Confinement and Episodic Acts and Omissions.......................... 5

            a.   Plaintiffs' Claims Properly Challenge a Condition of Confinement.... 5

            b.   Plaintiffs' Claims Also Properly Challenge an Episodic Act or Omission................................................................................................. 9

        ii.    Plaintiffs Have Adequately Pled Several Policies and Customs Which Were the Moving Force in the Violation of Plaintiffs' Constitutional Rights. 12

        iii.   Plaintiffs Have Adequately Pled Failure to Train and Supervise Claims........................................................................................................ 19

    B.     Plaintiffs Adequately Pled Their ADA/RA Claims Requiring the Denial of Harris County's Motion to Dismiss................................................................. 23

VI.    IN THE ALTERNATIVE, REQUEST FOR LEAVE TO AMEND .......................... 25

VII.   CONCLUSION ....................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Bartee v. Harris Cnty.*,
No. 4:16-CV-2944, 2018 U.S. Dist. LEXIS 232945 (S.D. Tex. March 5, 2018) ............ passim

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................................... 4

*Cadena v. El Paso Cnty.*,
946 F.3d 717 (5th Cir. 2020) ........................................................................................... 29

*Dawes v. City of Dallas*,
No. 3:17-CV-1424-X-BK, 2021 U.S. Dist. LEXIS 63612 (N.D. Tex. March 12, 2021) ........ 27

*Duvall v. Dallas Cnty.*,
631 F.3d 203 (5th Cir. 2011) .............................................................................................. 8

*Erickson v. Pardus*,
551 U.S. 89 (2007) ............................................................................................................ 4

*Ettinoffe v. Sheikh*,
No. 4:21-CV-02646, 2022 U.S. Dist. LEXIS 182151 (S.D. Tex. Oct. 4, 2022)............... passim

*Feliz v. El Paso Cnty.*,
441 F. Supp. 3d 488 (W.D. Tex. 2020) ............................................................................ passim

*Grabowski v. Jackson Cnty. Pub. Defenders Off.*,
47 F.3d 1386 (5th Cir. 1995) ............................................................................................. 9

*Hare v. City of Corinth, Miss.*,
74 F.3d 633 (5th Cir. 1996) ............................................................................................... 7

*Harvey v. Montgomery Cnty.*,
881 F. Supp. 2d 785 (S.D. Tex. 2012) ............................................................................. 20

*Iberiabank Corp. v. Ill. Union Ins. Co.*,
953 F.3d 339 (5th Cir. 2020) ............................................................................................. 3

*Lareau v. Manson*,
651 F.2d 96 (2d Cir. 1981) ................................................................................................ 9

*M.D. v. Abbott*,
907 F.3d 237 (5th Cir. 2018) ........................................................................................... 17

*Oporto v. City of El Paso*,
EP-10-CV-110-KC, 2010 U.S. Dist. LEXIS 91241 (W.D. Tex. Sept. 2, 2010) ...................... 27

*Palo v. Dallas Cnty.*,
No. 3:05-CV-0527-D, 2007 U.S. Dist. LEXIS 54274 (N.D. Tex. July 26, 2007) ................... 9

*Rivera v. City of San Antonio*,
No. SA-06-CA-235-XR, 2006 U.S. Dist. LEXIS 83376 (W.D. Tex. Nov. 15, 2006)............. 23

*Sabbie v. Southwestern Corr., LLC*,
No. 5:17cv113-RWS-CMC, 2019 U.S. Dist. LEXIS 214463 (E.D. Tex. March 6, 2019) passim

*Salcido v. Harris Cnty.*,
  No. H-15-2155, 2018 U.S. Dist. LEXIS 169034 (S.D. Tex. Sept. 28, 2018) ........ 10, 14, 25, 28

*Samuel v. City of Houston*,
  2023 U.S. Dist. LEXIS 175054 (S.D. Tex. Sept. 29, 2023)............................................. passim

*Shepherd v. Dallas Cnty.*,
  591 F.3d 445 (5th Cir. 2009)................................................................................. 6, 7, 8

*Thomas v. City of Galveston*,
  800 F. Supp. 2d 826 (S.D. Tex. 2011) .................................................................... 15

*Wilson v. Seiter*,
  501 U.S. 294 (1991) ................................................................................................. 8

*Wynn v. Harris Cnty.*,
  556 F. Supp. 3d 645 (S.D. Tex. 2021) .................................................................. 21

**Statutes**

42 U.S.C. § 1983 .................................................................................................. 3, 4, 9

Americans With Disabilities Act of 1990 Title II, 42 U.S.C. § 12131, et seq.............................. 4

Rehabilitation Act of 1973 Section 504, 29 U.S.C. § 794, et seq.................................................. 4

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 3

## I.        SUMMARY OF THE ARGUMENT

1.        Plaintiffs represent 27 individuals who were drastically injured or killed within the Harris County Jail in the past two years. Plaintiffs' First Amended Complaint covers 268 pages, 87 separate unconstitutional incidents within the Jail, and numerous facts pertaining to the circumstances giving rise to each Plaintiffs' claim. Plaintiffs go above and beyond in providing detail not only into each Plaintiffs' own factual circumstances, but also providing significant detail into similar related incidents which show that Harris County has an ongoing pervasive problem.

2.        First, Plaintiffs adequately allege a § 1983 claim under *Monell.* Plaintiffs specifically pled both a conditions of confinement and, in the alternative, an episodic acts and omissions claim. For each type of claim, Plaintiffs identified with great detail five separate policies, practices, and procedures of the County that were the moving force in Plaintiffs' injuries. Plaintiffs used six different categories of information which this Court has recognized as acceptable to identify numerous, similar, and specific incidents of constitutional violations evidencing the policies in place. These include government agency reports, Sheriff Gonzalez's own admissions of policies and practices, numerous statistics reported by Sheriff Gonzalez himself, 36 former detainee similar factual allegations, numerous lawsuits which also resulted in Harris County's motions to dismiss being denied, 5 prior Harris County employees' statements concerning the unconstitutional conditions, and each of the 27 individual Plaintiffs' claims which corroborate the policies themselves.

3.        Second, Plaintiffs adequately alleged an ongoing failure to train which was the cause of Plaintiffs' injuries and death. Plaintiffs alleged specific facts on numerous ways that the training policy was inadequate. Plaintiffs also provided numerous evidence of patterns of specific and similar violations and made specific allegations showing that Harris County not only knew of

the substantial risks of their inadequate training programs, but that they acted with complete deliberate indifference to this risk by continuing those programs which resulted in Plaintiffs' injuries.

4.       Third, Plaintiffs asserted specific claims under the ADA/RA that Defendant intentionally discriminated against Plaintiffs for their known disabilities by denying them access to the Jail's medical services. Plaintiffs provide sufficient details showing that they were disabled, that Harris County knew they were disabled, and that Harris County denied medical services to those that were disabled based on their disability. Plaintiffs extensive First Amended Complaint provides significant details breaking down each Plaintiffs' facts, each Plaintiffs' cause of action, and each similar incidents factual matters. These allegations are more than sufficient to state a claim for relief that is plausible on its face especially when the Court must take all allegations as true. Therefore, Defendant's Motion to Dismiss should be denied on all grounds.

## II.       STATEMENT ON THE NATURE AND STAGE OF THE PROCEEDING

5.       The Harris County Jail has a long-checkered history of violating the rights of the detainees held within the jail waiting their day in court. This case was originally filed by Plaintiffs representing 22 different detainees who were either severely injured or died within the Jail due to the Jail's unconstitutional policies, practices, conditions, and culture. On November 21, 2023, Plaintiffs filed their First Amended Complaint adding Plaintiffs representing an additional 5 detainees who were also injured or killed in the Jail.

6.       Despite the First Amended Complaint identifying over 87 separate unconstitutional incidents within the Jail, including numerous government agencies' findings of deficiencies within the jail, and the 268 pages of detailed factual allegations supporting each Plaintiffs' claim, Defendant filed the subject Motion to Dismiss claiming that Plaintiffs failed to state a claim. When

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS                                    2

taking the factual allegations as true, Defendant's motion misses the mark requiring it to be denied. No discovery or other fact gathering outside of the Complaint has occurred at this stage of the litigation.

### III.     STATEMENT OF ISSUES

7.     Defendant argues that Plaintiffs failed to state a claim under § 1983 or under the ADA or RA. The issue facing the Court is whether Plaintiffs adequately pled each of these claims.

### IV.     STANDARD OF REVIEW

8.      Rule 12(b)(6) motions to dismiss are "viewed with disfavor and [are] rarely granted." *Iberiabank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020). When considering a motion to dismiss, the Court must "accept the well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Ettinoffe v. Sheikh*, No. 4:21-CV-02646, 2022 U.S. Dist. LEXIS 182151, at *5 (S.D. Tex. Oct. 4, 2022) (Ellison, J.). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### V.     ARGUMENT AND AUTHORITIES

9.     Despite 268 pages and 1,325 paragraphs of specific factual details of each Plaintiffs' claim along with 87 similar incidents, Defendant alleges that Plaintiffs have failed to sufficiently plead their 42 U.S.C. § 1983 claims and ADA/RA claims. It is hard to see how the

First Amended Complaint fails to provide sufficient factual detail to overcome the fair notice pleading requirements at this stage of the proceedings. When taking these factual allegations as true, as the Court must, Plaintiffs have stated sufficient allegations to assert the following claims against Harris County: (1) a *Monell* Claim for Violation of Fourteenth Amendment Under Condition of Confinement and in the Alternative Episodic Acts and Omissions; (2) a *Monell* Claim for Violation of Fourteenth Amendment Under Failure to Train and Supervise; and (3) Violation of the Americans With Disabilities Act of 1990 and Section 504 of the Rehabilitation Act.

10.     Because Plaintiffs have stated a claim upon which relief can be granted, Defendant's Motion should be denied in its entirety.

### A. Plaintiffs Adequately Pled Their § 1983 *Monell* Claims Requiring the Denial of Harris County's Motion to Dismiss.

11.     To establish municipal liability under § 1983, a plaintiff must show (1) an official policy; (2) promulgated by an official policymaker; and (3) the policy was the moving force behind the constitutional violation. *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *7. Harris County does not allege that Plaintiffs did not show a policymaker or that a policy was the moving force behind the constitutional violation. *See* Dkt. No. 21 at 4–18. Thus, those elements are assumed to be met. Instead, Harris County alleges that Plaintiffs did not adequately plead a constitutional violation or an underlying policy. Additionally, Harris County alleges that Plaintiffs did not plead a failure to train or supervise claim under § 1983. Defendant's arguments are misplaced and take an overly narrow view of Plaintiffs' factual allegations which when taken as true establish well pleaded claims for each Plaintiff.

i.    **Plaintiffs Have Adequately Pled Constitutional Violations Under Both Conditions of Confinement and Episodic Acts and Omissions.**

12.    Defendant first argues that Plaintiffs claims only fall within an episodic act or omission analysis and not a condition of confinement theory. Dkt. No. 21 at 5–8. This argument, however, ignores the substance of Plaintiffs' claims and facts which show that Plaintiffs' claims are based on the general conditions and practices of the Jail as a whole. Dkt. No. 20 at ¶¶ 48–313, 915–1077. Many of the challenged policies and claims fall squarely within the holdings of several courts within the Fifth Circuit which have identified those claims as conditions of confinement. Because Defendant did not attack these claims under the condition of confinement theory, Plaintiffs have met their burden to plead a claim for condition of confinement.

13.    Harris County fails to mention that Plaintiffs in their First Amended Complaint also pled in the alternative that their claims meet the episodic acts or omissions standard. Dkt. No. 20 at ¶¶ 922–1056. Plaintiffs are permitted to bring both claims, and the Court can analyze them as such at the motion to dismiss stage. *Sabbie v. Southwestern Corr., LLC*, No. 5:17cv113-RWS-CMC, 2019 U.S. Dist. LEXIS 214463 at *107–113 (E.D. Tex. March 6, 2019). Although Plaintiffs are not in a position to know everything that Harris County has within its sole possession including the identity of each actor, Plaintiffs have shown that each actor was acting with subjective deliberate indifference to Plaintiffs' known rights and that act was a result of a municipal policy and practice adopted or maintained with objective deliberate indifference.

a.    **Plaintiffs' Claims Properly Challenge a Condition of Confinement.**

14.    Under the Fourteenth Amendment challenge by a pretrial detainee to the conditions of confinement, the detainee is challenging a general condition, practice, rule, or restriction of pretrial confinement that amounts to the level of punishment. *Id.*; *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). A condition can fall within a manifestation of an explicit policy or

restriction, but it can also be shown as an unstated or *de facto* policy "as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by jail officials, to prove an intended condition or practice.'" *Shepherd*, 591 F.3d at 452 (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644–45 (5th Cir. 1996) (en banc)). When the challenge is to the overall conditions of the confinement or policy and not merely the acts of individual officers then the claim falls within the condition of confinement. *Shepherd*, 591 F.3d at 452; *Sabbie*, 2019 U.S. Dist. LEXIS 214463 at *173.

15.     Plaintiffs' First Amended Complaint explicitly challenges specific conditions, practices, and restrictions that are pervasive throughout the Jail as exhibited by the 27 individual Plaintiffs' claims and the 60 additional incidents, evidence, and testimonies showing those conditions. Plaintiffs' claims in the first instance do not challenge specific jailer's actions as interposed between Defendant and Plaintiffs' injuries. *See Shepherd*, 591 F.3d at 453. Instead, each Plaintiffs' claims show that they were subjected to multiple conditions within the jail that on their face serve as a punishment. Dkt. No. 20 at ¶¶ 49–313, 915–1077.

16.     Specifically, Plaintiffs' claims are based, singularly and in combination, on five different policies, conditions, and practices within the Jail that caused their injuries: (1) failure to observe and monitor; (2) failure to provide medical care/refusal of medical care; (3) institutionalized excessive force by jail employees on detainees; (4) a culture of violence amongst detainees; and (5) systemic understaffing and overcrowding of the Jail. Dkt. No. 20 at ¶¶ 911–12. The Complaint breaks down each of these conditions in great detail in various sections and in relation to each Plaintiffs' claim. *See* Dkt. No. 20 at ¶¶ 48–303, 304–13, 915–1077.

17.     Courts within the Fifth Circuit have identified several of these policies as constituting condition of confinement claims as a matter of law. *See Feliz v. El Paso Cnty.*, 441 F.

Supp. 3d 488, 497–98 (W.D. Tex. 2020) (condition of confinement claims for failure to conduct regular observations; failure to provide medical care; and also mentions overcrowding); *Shepherd*, 591 F.3d 453–54 (condition of confinement claim for failure to provide medical care); *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207–08 (5th Cir. 2011) (condition of confinement for failure to provide medical care); *Sabbie*, 2019 U.S. Dist. LEXIS 214463, at *112–13, 174, 186 (analyzing plaintiffs' claims for failure to provide medical care, excessive force on detainees, and failing to properly monitor as conditions of confinement claims), at *98 (citing *Wilson v. Seiter*, 501 U.S. 294, 303 (1991) for the proposition that a condition of confinement also is part of failing to protect detainees against other detainees); *Palo v. Dallas Cnty.*, No. 3:05-CV-0527-D, 2007 U.S. Dist. LEXIS 54274 at *9–13 (N.D. Tex. July 26, 2007) (holding plaintiff had sufficiently pled condition of confinement claim for inadequate medical care since the allegations focused on the system as a whole and not specific actors); *Grabowski v. Jackson Cnty. Pub. Defenders Off.*, 47 F.3d 1386, 1398 (5th Cir. 1995) (reversing the district court's dismissal of § 1983 claim holding that the court should have analyzed the claim for detainee violence and injuries suffered by the detainee under a condition of confinement standard); *see also Lareau v. Manson*, 651 F.2d 96, 96 (2d Cir. 1981) (holding that overcrowding is a condition of confinement).

18.     Based on this precedent, Plaintiffs' claims fall well within these guidelines as challenging the general conditions of the Jail. For example, each of the Plaintiffs assert claims against Defendant for the overpopulation and understaffing of the Jail. Dkt. No. 20 at ¶¶ 915–1077. This is not an attack on the actions of individual jailers but is an attack on the overall condition of the jail which amounts to the level of a punishment. In relation to Plaintiffs, this condition of overpopulation impeded their ability to receive medical treatment, impeded the officers' ability to respond to and prevent detainee assaults as a whole, impeded the overall

observation and supervision requirements of the jail, and increased the violence by officers against detainees. Dkt. No. 20 at ¶¶ 48–1077. Plaintiffs' claims based on these policies are not based on the interposition of individual jailers but are instead based on an admitted pervasive problem within the Jail as a whole. As a matter of law this constitutes a condition of confinement.

19.     Plaintiffs have made specific allegations of the failure to observe and monitor detainees as constituting a condition of confinement and not attributed to a specific jailer. Dkt. No. 20 at ¶¶ 48–313, 915–1077. Each of the Plaintiffs were subjected to these same issues regardless of which jailers were acting on behalf of the Jail. This is the epitome of a condition of confinement. *See Feliz*, 441 F. Supp. 3d at 498 (holding that the failure to observe claim which was based on TCJS report and one other lawsuit which alleged that jailers were not conducting timely observations was sufficient to state a condition of confinement claim). The Complaint goes into detail on each Plaintiffs' claim that the jail as a whole did not conduct proper observations and monitoring which amounted to the level of a punishment. As such, these claims also meet the condition of confinement claim. Dkt. No. 20 at ¶¶ 48–313, 915–1077.

20.     Each of the other claims based on the remaining policies are similar in that they challenge the system as a whole and not specific jailer's acts or omissions. *Id.* Each of the medical care claims are based on the failure of the medical system and not individual jailers. *Id.* The excessive force and detainee violence are based on the culture within the jail as all detainees are subject to that condition when they enter the jail. *Id.* Additionally, as shown by several courts including this one, an excessive force claim is analyzed under the objective analysis akin to the condition of confinement claim which does not require the subjective indifference finding. *Sabbie*, 2019 U.S. Dist. LEXIS 214463, at *140; *Salcido v. Harris Cnty.*, No. H-15-2155, 2018 U.S. Dist. LEXIS 169034, at *78 (S.D. Tex. Sept. 28, 2018) (Lake, J.) Plaintiffs have also adequately pled

facts which at a minimum infer that the excessive force was objectively unreasonable. This Court in reference to Jerome Bartee found similarly that Mr. Bartee asserted a claim under § 1983 against Harris County for excessive force based on policies, practices, and culture. *Bartee v. Harris Cnty.*, No. 4:16-CV-2944, 2018 U.S. Dist. LEXIS 232945, at *7–14 (S.D. Tex. March 5, 2018) (Gilmore, J.).

21.     Therefore, Plaintiffs have adequately pled each of these claims under a condition of confinement claim. Because Defendant does not challenge the specific pleadings under the conditions of confinement test and because Plaintiffs' Complaint adequately pleads that test, Defendant's Motion to Dismiss can be denied on those grounds.

### b.  Plaintiffs' Claims Also Properly Challenge an Episodic Act or Omission.

22.     In the First Amended Complaint, Plaintiffs pled in the alternative a claim for episodic act or omission. Dkt. No. 20 at ¶¶ 915–1077. Defendants ignore this pleading and the extensive facts which support each element of this type of claim. As this Court has recognized, the procedural posture of this case is pertinent to an analysis under a Motion to Dismiss as no discovery has been completed which permits "more general" allegations because "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details…" prior to discovery. *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *12. In light of this standard and in conjunction with the factual allegations and the causes of action itself, Plaintiffs have met the minimum pleading requirements by showing that County officers and employees acted with subjective deliberate indifference to Plaintiffs' rights and they acted in accordance with policies, practices, and procedures which were adopted and promulgated with objective deliberate indifference by the County.

23.     As illustrated throughout the Complaint, the officers of the Jail are aware of the substantial risk of serious harm facing Plaintiffs based on the jailers' lack of observations, lack of medical care, officer excessive force, detainee violence, and overpopulation. Dkt. No. 20 at ¶¶ 48–1077. In regard to the failure to provide Plaintiffs with medical care, the jailers are subjectively aware that failing to provide medical attention to detainees in need of that medical care poses a substantial risk of serious harm and even death to that detainee. The jailers are aware of these risks through the numerous citations received by the jail from the DOJ and the TCJS along with the numerous incidents where detainees suffered severe injuries or death when the detainee did not receive proper medical care. *See* Dkt. No. 20 at 58–154. For example, Kristan Smith died as a result of being denied her diabetes medication and failing to be properly observed in her cell which is almost identical to the causes of the death of Matthew Shelton only a few months prior. Dkt. No. 20 at ¶¶ 135–142, 450–55, 737–47.

24.     In another circumstance, jailers are subjectively aware of a significant risk to detainees if the detainees are not properly observed face-to-face in accordance with minimum jail standards. For example, a detainee that becomes unresponsive can remain in his cell without any medical care at all for hours if the jailers are not properly observing the detainees. The jailers are aware of this risk through the DOJ Report, through the TCJS reports, and through the numerous similar incidents (including each individual Plaintiff) which resulted in serious injury or death when the officers failed to observe the detainee timely. *See Samuel v. City of Houston*, 2023 U.S. Dist. LEXIS 175054, at *34–36 (S.D. Tex. Sept. 29, 2023) (Ellison, J.). Ultimately, each of these incidents were nearly identical to Plaintiffs' claims showing the inevitable result of this deliberate indifference.

25.     In relation to the culture of detainee violence, the facts and similar incidents establish that the Jail has a well-known systemic culture of violence amongst detainees. Throughout these incidents, the jailers are known to watch the detainee violence and knowing that this violence will result in serious injuries or death. Dkt. No. 20 at ¶¶ 48–910. Yet, these same jailers will not interfere with the violence until after the detainee victim is severely beaten and injured. *Id.* Examples of this behavior can be seen in the cases of Michael Griego, Tramell Morelle, Antonio Radcliffe, Zachary Zepeda, Taylor Euell, and others who were beaten by detainees while officers watched and refused to intervene. The officers were acting in accordance with the County's policies, practices, and procedures of encouraging detainee violence with deliberate indifference to the constitutional rights of the detainees.

26.     Finally, Plaintiffs sufficiently alleged that the use of force by officers was unreasonable and unjustified resulting in catastrophic injuries. Dkt. No. 20 at 48–1077. Plaintiffs plausibly allege that the use of force was excessive and unreasonable through examples where more officers than necessary were involved in the altercation, officers used unreasonable force techniques of kicking, hitting, and kneeing detainees who were not resisting, officers continued to assault detainees even when they were restrained, officers resorted to force without any provocation, and officers used violence as a manner of punishment. *Id.* Additionally, the severity of the Plaintiffs' injuries and deaths at the hands of the officers exemplify the unreasonable nature of the use of force as many of the Plaintiffs were killed or suffered life altering injuries such as a broken spine, skull fractures, and traumatic brain injuries. *Id.*

27.     Officers were aware that their use of force would substantially likely lead to Plaintiffs' injuries, yet they continued with their use of force with deliberate indifference to that risk. The officers' awareness is unmistakable as each of the prior incidents, reports, and statistics

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS                                    11

provide additional notice to the officers that their use of force carried a substantial risk of serious harm. *Id.* In almost identical circumstances as many of Plaintiffs' claims, courts have held that the use of force was unreasonable. *See e.g. Sabbie*, 2019 U.S. Dist. LEXIS 214463, at *143–46; *Salcido*, 2018 U.S. Dist. LEXIS 169034, at *87–95; *Bartee*, 2018 U.S. Dist. LEXIS 232945, at *7–14. Therefore, because the First Amended Complaint provides sufficient facts for the Court to infer a plausible claim that the officers acted with subjective deliberate indifference to the Plaintiffs' rights, the Motion to Dismiss should be denied.

> ### ii. Plaintiffs Have Adequately Pled Several Policies and Customs Which Were the Moving Force in the Violation of Plaintiffs' Constitutional Rights.

28.     The main analysis when looking at municipal liability is whether the constitutional violations occurred as a result of a municipal policy. A policy can be shown either through a written policy or statement from a policymaker or through a persistent widespread practice of government officials or employees that fairly represents a municipal policy. *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *10–11. This practice can be shown by a pattern of fairly similar, specific, and numerous incidents. *Id.* The numerosity requirement has been satisfied with as little as two incidents. *See Feliz*, 441 F. Supp. 3d at 498–99 (holding that one TCJS report and one prior lawsuit were sufficient to establish a *de facto* policy).

29.     As this Court has repeatedly recognized,

> In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. Accordingly, only minimal factual allegations should be required at the motion to dismiss stage. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general.

*Samuel*, 2023 U.S. Dist. LEXIS 175054, at \*38–39 (quoting *Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011) (Ellison, J.)). To overcome a motion to dismiss, the complaint only need provide "the defendant with sufficient notice if its allegations include, for example, 'the specific topic of the challenged policy or training inadequacy.'" *Id.*

30.    Additionally, this Court along with several other courts within the Fifth Circuit have held that a plaintiff can resort to numerous methods for establishing a pattern or practice including pointing to other lawsuits where the County was a defendant, pointing to statistics, pointing to a few similar incidents, pointing to reports from governmental agencies including the DOJ and the TCJS, pointing to statements from the Sheriff himself, and pointing to statements from other employees of the County. *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at \*11–13; *Samuel*, 2023 U.S. Dist. LEXIS 175054, at \*34–36; *Feliz*, 441 F. Supp. 3d at 498–99; *Bartee*, 2018 U.S. Dist. LEXIS 232945, at \*13–14. Although the incidents should be fairly similar, the incidents do not need to be identical. *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at \*11–13.

31.    Defendant first argues that Plaintiffs did not sufficiently identify the policies at issue. Dkt. No. 21 at 8. This argument is highly misleading as the Complaint provides significant detail into each of the alleged policies at issue based on Plaintiffs' current knowledge of the policies. Dkt. No. 20 at ¶¶ 304–13, 911–13. For example, Plaintiffs identify each policy in paragraphs 911–913 and expound upon those policies within those paragraphs in more detail. In paragraphs 304–310, Plaintiffs also provide more detail about each policy by specifically showing how those policies were enacted and which Plaintiffs they impact. Then Plaintiffs identify each policy within each section of Count I and how that policy related to each Plaintiffs' claim individually. Dkt. No. 20 at ¶¶ 915–1077.

32.     None of the alleged policies are vague, generalized, or conclusory but are in fact specific policies promulgated by Defendant that were the moving force in the violation of Plaintiffs' rights. Plaintiffs' Complaint goes above and beyond what this Court has required to show a policy as it identifies numerous specific incidents and provides the "topic of the challenged policy" which gives Defendant sufficient notice of the allegations. *See Samuel*, 2023 U.S. Dist. LEXIS 175054, at *39; *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *12–15; *Feliz*, 441 F. Supp. 3d at 503.

33.     The Court is also permitted to consider these policies in the aggregate. *M.D. v. Abbott*, 907 F.3d 237, 255 (5th Cir. 2018). Defendant argues in a conclusory fashion that the policies should be disaggregated. However, the basis for disaggregation is inapplicable here because each of the policies Plaintiffs identify are interrelated and exacerbate the impact the policies have on each other. For example, the understaffing and overpopulation of the Jail directly impacts the ability of the understaffed jailers to be able to conduct proper face to face observations and monitoring. This in turn impacts the ability to provide the detainees with proper medical care and to have sufficient deterrence of detainee violence. It also exacerbates the stress on the jailers which the Sheriff, DOJ, and TCJS have recognized causes jailers to make bad decisions which leads to the use of excessive force. Dkt. No. 20 at ¶¶ 48–910. Because these policies have an inherent impact on each other, the Court should not consider the policies in a vacuum but should consider them in the aggregate. *M.D.*, 907 F.3d at 255.

34.     Next, Plaintiffs' Complaint provides sufficient similar, specific, and numerous incidents in accordance with this Court's precedence to establish a policy, pattern, and practice. Defendant tries to argue that Plaintiffs' materials are irrelevant and do not involve the same factual scenarios. Dkt. No. 21 at 10. Defendant ignores several of the categories of Plaintiffs' evidentiary

support including the specific admissions by Sheriff Hickman (the former sheriff of Harris County) and Sheriff Gonzalez. Defendant seeks to impose a heightened burden of establishing similar incidents by alleging that the incidents have to be identical. Dkt. No. 21 at 10–14. This Court has already rejected similar arguments and does not require the claims to be identical to establish sufficient similar incidents. *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *14–15.

35.     Plaintiffs do not rely upon one source of similar incidents to establish a policy, but instead rely on at least six different categories of information that more than sufficiently state a policy or practice. First, Plaintiffs identify numerous specific findings from the Department of Justice in their 2009 Report concerning the gross unconstitutional conditions of the Harris County Jail. Dkt. No. 20 at 59–64. Unlike Defendant's argument, this Report is properly considered by the Court to provide notice of the ongoing deficiencies within the Jail. Plaintiffs are not solely relying on this Report to establish similar incidents. Instead, the 2009 DOJ Report establishes one of the many cogs in the wheel of similar incidents. *See Bartee*, 2018 U.S. Dist. LEXIS 232945, at *14 (stating that reliance on the 2009 DOJ Report in conjunction with the sheriff's statements and testimony from another employee were sufficient to state a policy against the Harris County Jail).

36.     Second, Plaintiffs point to specific testimony from Sheriffs Hickman and Gonzalez who are the policymakers for Harris County. Dkt. No. 20 at ¶¶ 341–353. Specifically, Sheriff Gonzalez has admitted that the Jail contains a culture that quickly leads to physical altercations, that the Jail is understaffed and overpopulated which has led to the inability to meet detainee minimum standards, that the culture has been ongoing of deputies beating detainees and detainees beating detainees, and the failure to provide medical care. *Id.* These admissions by the County policymaker himself rarely occur in § 1983 claims, but when they do, they are evidence

establishing a policy which this Court has considered in denying Harris County's similar motion to dismiss. *Bartee*, 2018 U.S. Dist. LEXIS 232945, at *14–15.

37.     Third, Plaintiffs point to the statistics which are required to be compiled and reported by Sheriff Gonzalez himself. Dkt. No. 20 at ¶¶ 357–77. These statistics which are reported by the TCJS show the amounts of assaults and officer uses of force that result in serious bodily injury. The assaults are pertinent in showing that the County has a culture of violence both amongst detainees and with officers. Harris County accounts for over half of all assaults in the state. No other county even comes close to having the amount of assaults that occur in Harris County. The same is true of officer uses of force which result in bodily injury. Harris County has almost 54% of all incidents in the state even though three of the next highest counties may have only one incident a month combined. These statistics clearly support the inference that Harris County has a policy of violence and excessive force which is encouraged and promulgated by the County. This Court has recognized that statistics are sufficient to establish a policy, practice, or custom. *Samuel*, 2023 U.S. Dist. LEXIS 175054, at *36; *Harvey v. Montgomery Cnty.*, 881 F. Supp. 2d 785, 797–98 (S.D. Tex. 2012) (Ellison, J.) (holding that an allegation of 200 complaints of excessive force over the last 10 years without any additional facts was sufficient to overcome a motion to dismiss).

38.     Third, Plaintiffs cite thirteen TCJS non-compliance reports along with two TCJS board meetings concerning their investigations of the Harris County Jail where the Jail was found to have failed to meet minimum jail standards. Dkt. No. 20 at 73–93. These reports specifically pertain to one or more specific policies identified by Plaintiffs in the Complaint. Almost all of the reports specifically show numerous incidents where jailers were not conducting proper face to face observations or were falsifying the fact that an observation was completed. *Id.* All but three Plaintiffs make the exact same claim that Harris County failed to conduct proper face to face

observation. Dkt. No. 20 at ¶¶ 915–1077. These same reports provide strong evidence of a policy within the Jail. *See Feliz*, 441 F. Supp. 3d at 499 (holding that the Fifth Circuit has found governmental reports such as almost identical TCJS reports to be the precise piece of evidence to show a pattern, practice, or policy).

39.     Fourth, Plaintiffs identify 36 former detainees who have similar incidents as Plaintiffs. Dkt. No. 20 at ¶¶ 487–884. Many of these incidents are nearly identical to Plaintiffs' claims. For example, Matthew Shelton had diabetes and died in jail when he did not receive the medications he was required to receive and the Jail failed to conduct proper observations. Dkt. No. 20 at ¶¶ 737–47. Plaintiff Kristan Smith died only a few months later when she also did not receive her diabetes medications and was not properly observed by the Jail. *Id.* at ¶¶ 135–42. Another example is when Jacoby Pillow was beat up by several officers for no reason, suffered fatal injuries, and was left in his cell for several hours unobserved where he eventually passed away. *Id.* at ¶¶ 50–60. Identically, Jaquaree Simmons was also beat to an inch of his life for no reason, suffered fatal injuries, and was left in his cell for several hours unobserved and he eventually passed away. *Id.* at ¶¶ 610–646. In many of the similar incidents, the party was not properly observed and was found unresponsive in their cell due to the overpopulation, understaffing, and failure to observe. These are identical to multiple Plaintiffs' claims including Gary Wayne Smith, Nathan Henderson, Bryan Johnson, William Curtis Barrett, and Ramon Thomas to name a few.

40.     In addition, Plaintiffs identify several of these same incidents as having filed lawsuits naming Harris County as a defendant. In the case of Vincent Young and Jerome Bartee, this Court denied Harris County's Motions to Dismiss because Plaintiffs specifically alleged municipal liability even though they had less incidents and similarity than Plaintiffs in this matter. *Bartee*, 2018 U.S. Dist. LEXIS 232945, at *13–15; *Wynn v. Harris Cnty.*, 556 F. Supp. 3d 645,

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS                                    17

656 (S.D. Tex. 2021) (Ellison, J.) (denying Harris County's motion to dismiss for the second time because the plaintiff adequately stated a claim for municipal liability based on "inadequate monitoring and understaffing" for Vincent Young's case). Harris County has settled several of these cases for significant amounts of money. Unlike Defendant's argument, this Court has established that to show a policy the claimant need only show that the defendant has been ***named*** as a defendant in other lawsuits. *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *13–14.

41.     Fifth, Plaintiffs identify several testimonies from former employees of the Jail which establish problems with supervision, violence amongst detainees, understaffing and overpopulation. Dkt. No. 20 at ¶¶ 890–910. These are also statements which the Court can consider to establish a policy. *Bartee*, 2018 U.S. Dist. LEXIS 232945, at *13–14.

42.     Sixth, each Plaintiffs' individual claim also constitutes another separate incident which support the inference of an underlying policy. Plaintiffs have provided significant detail with each incident. Dkt. No. 20 at ¶¶ 48–313. Plaintiffs' Complaint provides more than enough details to meet the specificity, similarity, and numerosity requirements to establish a policy. This Court in *Ettinoffe* compiled numerous cases which found a policy that contained less incidents and less specificity than Plaintiffs' complaint. *See* 2022 U.S. Dist. LEXIS 182151, at *13–14 (compiling cases where courts denied motions to dismiss with allegations of 10 prior incidents, 9 prior incidents, 3 prior incidents, etc.); *see also Feliz*, 441 F. Supp. 3d at 503 (pointing to one TCJS report and one other lawsuit was sufficient to show a policy). Based on the foregoing, Plaintiffs have provided more than enough factual allegations that set forth a plausible claim for municipal liability. Therefore, Defendant's Motion to Dismiss should be denied.

###### iii.    Plaintiffs Have Adequately Pled Failure to Train and Supervise Claims.

43.    Defendant next argues that Plaintiffs did not satisfy the elements of a failure to train or supervise claim under § 1983. Dkt. No. 21 at 16–18. Defendant's argument, however, is misplaced as Plaintiffs provided more than enough particularity to establish each element of their failure to train and supervise claim.

44.    To establish a failure to train claim, Plaintiffs need to merely plead three elements: (1) the County's training policy or procedures were inadequate; (2) the inadequate training policy or procedure directly caused the constitutional violation; and (3) the County was deliberately indifferent in adopting its training policy. *Samuel*, 2023 U.S. Dist. LEXIS 175054, at *28–31. "[D]ismissal is not appropriate when evidence might be adduced showing that [an officer] has received no or inadequate training. . ." *Rivera v. City of San Antonio*, No. SA-06-CA-235-XR, 2006 U.S. Dist. LEXIS 83376, at *42 (W.D. Tex. Nov. 15, 2006).

45.    Plaintiffs have provided significant factual allegations identifying the specific topic of the challenged training policy. *See Samuel*, 2023 U.S. Dist. LEXIS 175054, at *28–31. Specifically, Plaintiffs note that Harris County has a long history of officers using excessive force, not supervising officers in the use of force, not training on proper de-escalation techniques, encouraging officers to use techniques that lead to unnecessary harm, encouraging and ratifying false reports and summary investigations hiding the use of force, and then training officers to use false charges to cover up the use of force. Dkt. No. 20 at ¶¶ 1081–83. These are some of the same inadequacies that Sheriff Gonzalez noted in 2016. *Id.*

46.    Plaintiffs also identify training failures in the way officers are trained to handle and prevent detainee violence and in how to respond to requests for aid and protection from detainees. Officers are trained not to interfere or prevent detainee assaults until after the assault is over, and

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS                                          19

are trained to encourage detainees to fight to resolve their own conflicts. Dkt. No. 20 at ¶ 1084. Officers are improperly trained on conducting proper observation and monitoring of detainees including failing to conduct face-to-face observations, failing to complete cell checks, failing to observe video monitors to determine detainee activity, and falsifying reports and documentation of observations to avoid audits and notices of non-compliance by TCJS. Dkt. No. 20 at ¶ 1085.

47.     Finally, Plaintiffs also identify significant issues with the training policy for officers providing medications and medical treatment to detainees. This includes failing to provide medications, refusing medications as a form of punishment, not providing medications timely, not conducting testing or analysis of detainees injuries, not responding to requests for medical care, falsifying detainee records to make it appear that the detainee received care, and training officers not to observe or monitor detainees with known medical issues. Dkt. No. 20 at ¶ 1086. Plaintiffs support its identification of these policies through significant factual allegations that include the prior similar acts, each of Plaintiffs' facts leading to their injury, and breaking down each Plaintiffs' claim within the cause of action. Dkt. No. 20 at ¶¶ 48–913, 1078–1171. This Court has recognized that statements with less specificity were sufficient to overcome a motion to dismiss on similar failure to train grounds. *See Samuel*, 2023 U.S. Dist. LEXIS 175054, at *28–32 (compiling cases); *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *16–18; *Bartee*, 2018 U.S. Dist. LEXIS 232945, at *17–18; *Salcido*, 2018 U.S. Dist. LEXIS 169034, at *132–134.

48.     Defendant improperly looks at the cause of action section in a bubble without analyzing the cause of action in light of all the factual allegations asserted throughout the Complaint. When taking the factual allegations of the Complaint with the cause of action, Plaintiffs have provided more than enough facts to show that the training violations caused Plaintiffs' injuries. With many if not all of the Plaintiffs, the facts describe readily apparent circumstances

that a failure to train caused Plaintiffs' injuries or death making it survive a motion to dismiss on that ground alone. *Samuel*, 2023 U.S. Dist. LEXIS 175054, at *32–33. For example, many Plaintiffs suffered injuries and death when they were not properly observed and monitored by the officers which led to them remaining in their cells unresponsive and without receiving medical care for a significant amount of time. Dkt. No. 20 at ¶¶ 48–313. Each of these Plaintiffs suffered these injuries due to the inadequate training policies and supervision relating to the conducting of proper observation and monitoring of detainees. Additionally, several Plaintiffs were exposed to the excessive use of force by inadequately trained officers who acted in accordance with the policies and training of the jail in resorting to excessive force and not using proper de-escalation techniques. *See Samuel,* 2023 U.S. Dist. LEXIS 175054, at *32–33; *Bartee*, 2018 U.S. Dist. LEXIS 232945, at *17–19.

49.     Finally, Plaintiffs have adequately alleged a pattern of similar incidents which illustrate that the County was deliberately indifferent in adopting and promulgating its constitutionally insufficient training policies. As shown above, Plaintiffs have pointed to a 2009 DOJ Report which identified some of the same exact training deficiencies still present in this case. Dkt. No. 20 at 59–64. Plaintiffs also point to 13 TCJS notices of non-compliance which also identify some of these exact same deficiencies including lack of observation, excessive force, lack of medical care, and detainee-on-detainee violence. *Id.* at 73–93. Plaintiffs also point to 2 TCJS meetings and numerous public statements by both Sheriff Hickman and Sheriff Gonzalez where they admit to the need for additional training. *Id.* at 64–93. Plaintiffs then point to 36 former detainees who have almost identical claims to Plaintiffs with many of them bringing suits against Harris County. *Id.* at 94–148. Plaintiffs also point to numerous statistics which show that the issues of violence and officer use of excessive force is growing exponentially despite the Sheriff's

awareness of the inadequate use of force training. *Id.* at 68–73. Plaintiffs point to 5 employees' statements where they in varying levels discuss the inadequate training of officers. *Id.* at 151–54. Finally, Plaintiffs point to each of their own 27 claims which also provide factual allegations of the inadequate training and the policymaker's knowledge that the inadequate training would continue to lead to constitutional violations. *Id.* at 15–53, 157–203.

50.     Each of these incidents along with the factual allegations supporting each Plaintiffs' claim illustrate that Harris County knew of the obvious consequences of their inadequate training policies and procedures but continued with those policies and procedures despite this knowledge. For example, Harris County knew that failing to train officers on proper observation reporting and techniques would lead to officers not conducting proper face-to-face observations which would lead to the death or injury of detainees and the inadequate provision of medical care. Harris County was also aware that failing to train their officers to interfere and prevent detainee violence would only encourage detainee violence and would result in significant injuries to detainees. Yet, Harris County did nothing with this knowledge resulting in a failure to train that caused several of Plaintiffs' injuries. It is also plainly obvious that failing to train on proper use of force and de-escalation techniques would continue to cause Plaintiffs' injuries when officers would use excessive force on them. Plaintiffs' 268-page Complaint provides more than enough factual allegations to overcome the motion to dismiss. *See Samuel,* 2023 U.S. Dist. LEXIS 175054, at *32–33; *Bartee*, 2018 U.S. Dist. LEXIS 232945, at *17–19; *Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *16–18; *Oporto v. City of El Paso,* EP-10-CV-110-KC, 2010 U.S. Dist. LEXIS 91241, at *19–23 (W.D. Tex. Sept. 2, 2010); *Dawes v. City of Dallas*, No. 3:17-CV-1424-X-BK, 2021 U.S. Dist. LEXIS 63612, at *14–15 (N.D. Tex. March 12, 2021) (holding that similarity is better determined after discovery).

51. Finally, Defendant's pointing to the TCOLE training is inappropriate at this stage of the proceeding since the Court is to look at the pleadings only. Additionally, this Court has rejected similar arguments at a motion for summary judgment stage because it does not prove that any training was actually conducted or that the Harris County training policies were not inadequate. *Salcido*, 2018 U.S. Dist. LEXIS 169034, at *132–34.

52. Based on the foregoing, Defendant's Motion to Dismiss should be denied.

**B. Plaintiffs Adequately Pled Their ADA/RA Claims Requiring the Denial of Harris County's Motion to Dismiss.**

53. Defendant's last argument is that Plaintiffs did not adequately plead claims under the ADA or RA. Once again, Defendant tries to place a higher burden on Plaintiffs at this initial pleading stage, as Plaintiffs need only provide general factual allegations to establish sufficient notice of the basis of their claims. *See Ettinoffe*, 2022 U.S. Dist. LEXIS 182151, at *16–18. Under both claims, Plaintiffs need only show that they are (1) a qualified individual; (2) being excluded from or being denied benefits of services from the public entity or is otherwise being discriminated against; and (3) that such discrimination is by way of their disability. *Feliz*, 441 F. Supp. 3d at 505.

54. Plaintiffs have specifically alleged a disability for each of their claims that limited one or more of their major life activities. Dkt. No. 20 at ¶¶ 1172–1296. For example, several Plaintiffs suffered injuries at the hands of detainees and officers within the Jail that caused them broken bones, brain injuries, and other injuries which impeded their mobility, and their ability to take care of themselves. *Id.* Other Plaintiffs had known medical conditions including epilepsy, diabetes, and kidney disorders which their jail documentation showed they needed medications for to function. *Id.* Plaintiffs provide specific facts on what their disability was and how it impacted each of their lives. *Id.* When taking these facts as true, these allegations provide more than enough facts to state this first element of the claim.

55.     Next, Defendant incorrectly states that Plaintiffs are simply challenging the sufficiency of the medical care. Dkt. No. 21 at 22. It is well established that the denial of medical services is covered by the ADA and RA as these are services to which detainees have equal right to access. *Feliz*, 441 F. Supp. 3d at 505–06. Thus, Defendant incorrectly construes Plaintiffs' pleadings as Plaintiffs directly plead that they were denied medical services for their known disability on account of their disability despite repeated request for medical services which is sufficient under Fifth Circuit law. *See Id.*; *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723–25 (5th Cir. 2020).

56.     Plaintiffs also provide more than enough facts to state that they were being excluded from the medical services of the Jail. Specifically, Plaintiffs point out that the Jail had knowledge of their ongoing medical disabilities, but the Jail refused to provide them medical treatment in varying degrees including failing to provide known and requested medications (i.e. insulin, antibiotics, heart medicine) and failing to provide medical treatment and sending detainees back to their cell without any treatment or medical observation effectively denying those detainees equal access to medical services. Dkt. No. 20 at ¶¶ 1172–1296.

57.     In *Feliz,* the court denied a motion to dismiss when the plaintiff alleged that the detainee was not provided his medications and that he was denied medical care after complaining of pain and vomiting. 441 F. Supp. 3d at 505–06. Plaintiffs have asserted nearly identical allegations in their Complaint making dismissal inappropriate. Dkt. No. 20 at ¶¶ 1172–1296.

58.     Finally, Plaintiffs adequately allege that Defendant intentionally discriminated against Plaintiffs because of their disability. Specifically, Plaintiffs each allege that Defendant and its officers knew of Plaintiffs' disabilities through their interaction and intake paperwork and medical records along with their visits with medical personnel and their requests for medical

treatment. Dkt. No. 20 at ¶¶ 1172–1296. Yet, despite this knowledge, Defendant and its officers refused to provide medical treatment, canceled and ignored medical requests, and in some instances even took away medically required devices such as a keep-on-person inhaler. *Id.*

59.     Plaintiffs' allegations are further corroborated through the prior lawsuits, the DOJ Report, TCJS reports, and the other plaintiffs' claims as these make it plausible that Plaintiffs were denied medical care and treatment because of their disability. In accordance with *Feliz*, this is more than sufficient to state an ADA/RA claim against the Jail at this stage of the proceedings.

60.     Because Plaintiffs provided in-depth factual allegations on each element of their ADA/RA claim, Defendant's Motion to Dismiss should be denied.

## VI.     IN THE ALTERNATIVE, REQUEST FOR LEAVE TO AMEND

61.     Plaintiffs Original and First Amended Complaint were extremely in depth with factual allegations identifying dozens of other incidents and governmental findings concerning the Jail's grossly unconstitutional conditions. If the Court determines that any part of the Complaint does not meet the well-pleaded complaint rule, Plaintiffs respectfully request the opportunity to amend to add additional facts to state their claims. Plaintiffs have amended their complaint once to add five additional Plaintiffs as a matter of right.

## VII.     CONCLUSION

62.     Based on the foregoing, Plaintiffs have stated a well-pleaded complaint making dismissal inappropriate. Therefore, Plaintiffs ask the Court to deny Defendant's Motion to Dismiss.

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS                                        25

Respectfully submitted,

**BEN CRUMP LAW, PLLC**

*/s/ Paul A. Grinke*
Paul A. Grinke
Attorney-in-Charge
State Bar No. 24032255
paul@bencrump.com
Aaron Dekle
State Bar No. 24100961
aaron@bencrump.com
5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 942-0494 Telephone

Ben Crump (*pro hac forthcoming*)
Florida Bar No. 72583
court@bencrump.com
122 South Calhoun Street
Tallahassee, Florida 32301
(800) 235-0444 Telephone

**MCCATHERN, PLLC**
Stephen Bergren
State Bar No. 24134428
sbergren@mccathernlaw.com
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219
(214) 741-2662 Telephone

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

In accordance with the Federal Rules of Civil Procedure, I hereby certify that on December 22, 2023, a true and correct copy of the foregoing and/or attached was served on each attorney of record or party via the CM/ECF system.

*/s/ Paul A. Grinke*
Paul A. Grinke

PLAINTIFFS' RESPONSE TO MOTION TO DISMISS                                                    26