**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **WAGNER et al.;** | § | |
| | § | |
| *Plaintiffs*, | § | **CIVIL ACTION NO. 4:23-cv-02886** |
| | § | |
| **and** | § | |
| | § | |
| **ANA GARCIA.** | § | |
| | § | |
| *Plaintiff-Intervenor,* | § | |
| | § | |
| **and** | § | |
| | § | |
| **CHANDRA JENKINS, as Attorney in Fact** | § | |
| **For DEQUON BUFORD** | § | |
| | § | |
| *Plaintiff-Intervenor,* | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **HARRIS COUNTY, TEXAS,** | § | |
| | § | |
| *Defendant*. | § | |

**DEFENDANT HARRIS COUNTY'S MOTION TO DISMISS**
**PLAINTIFF-INTERVENOR CHANDRA JENKINS' AS ATTORNEY IN FACT FOR**
<u>**DEQUON BUFORD ORIGINAL COMPLAINT AND JURY  DEMAND**</u>

## TABLE OF CONTENTS

I.   SUMMARY OF THE ARGUMENT ...................................................................1

II.  NATURE AND STAGE OF THE PROCEEDING ........................................2

III. STATEMENT OF THE ISSUES...................................................................3

IV.  STANDARD OF REVIEW ............................................................................3

V.   ARGUMENT...................................................................................................4

    A.   PLAINTIFF-INTERVENOR'S § 1983 *MONELL* CLAIMS MUST BE DISMISSED..................................................................................................4

        1.   Plaintiff-Intervenor Has Not Adequately Alleged an Underlying Constitutional Violation.................................................................5

        2.   Plaintiffs Have Not Adequately Alleged a Policy or Custom.....................8

    B.   PLAINTIFF-INTERVENOR'S ADA/RA CLAIMS MUST BE DISMISSED................................................................................................17

        1.   Denial of Medical Care is Not Actionable Under the ADA/RA. ..............18

        2.   Plaintiffs Have Not Adequately Pled the Elements of their ADA/RA Claim..................................................................................21

VI.  CONCLUSION ............................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Estate of A.R. v. Muzyka*,
    543 Fed. App'x. 363 (5th Cir. 2013) ......................................................................18

*Anderson v. Dallas Cty. Tex.*,
    286 F. App'x 850 (5th Cir. 2008) ...........................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................4

*Austin v. City of Pasadena, Tex.*,
    74 F.4th 312 (5th Cir. 2023) ..................................................................................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................4

*Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*,
    871 F. Supp. 2d 581 (S.D. Tex. 2012) (Ellison, J.)............................................11, 22

*Bryant v. Madigan*,
    84 F.3d 246 (7th Cir. 1996) ...............................................................................18, 19

*Buchanan v. Maine*,
    469 F.3d 158 (1st Cir. 2006)...................................................................................18

*Cano v. Faust*,
    No. CV H-19-0317, 2022 WL 980276 (S.D. Tex. Mar. 31, 2022) (Ellison, J.),
    *aff'd*, No. 22-20189, 2023 WL 2521869 (5th Cir. Mar. 14, 2023)..........................17

*City of Canton, Ohio v. Harris*,
    489 U.S. 378 (1989)...........................................................................................14, 16

*Conner v. Travis Cnty.*,
    209 F.3d 794 (5th Cir. 2000) ...................................................................................4

*Connick v. Thompson*,
    563 U.S. 51 (2011)..................................................................................................15

*Darden v. City of Fort Worth, Tex.*,
    880 F.3d 722 (5th Cir. 2018) ...................................................................................7

*Delano-Pyle v. Victoria Cnty., Tex.*,
    302 F.3d 567 (5th Cir. 2002) ..............................................................................18, 23

*Doe v. Harris Cnty., Tex.*,
  No. CV H-16-2133, 2017 WL 4402590 (S.D. Tex. Sept. 29, 2017) .......................................21

*Flores v. Cnty. of Hardeman, Tex.*,
  124 F.3d 736 (5th Cir. 1997) ..................................................................................................6, 7

*Garza v. City of Donna*,
  922 F.3d 626 (5th Cir. 2019) .......................................................................................................5

*Green v. Harris County*,
  No. H-16-893, 2019 WL 2617429 (S.D. Tex. June 26, 2019)................................................12

*Hale v. Harrison Cnty. Bd. of Supervisors*,
  8 F.4th 399 (5th Cir. 2021) ................................................................................................18, 19

*Hale v. King*,
  642 F.3d 492 (5th Cir. 2011) .....................................................................................................22

*Harvey v. Montgomery Cnty.*,
  Tex., 881 F. Supp. 2d 785 (S.D. Tex. 2012)............................................................................17

*Henderson v. Harris Cnty.*,
  No. 4:18-CV-413, 2021 WL 1112400 (S.D. Tex. Feb. 24, 2021) ...........................................12

*Hernandez v. Estelle*,
  788 F.2d 1154 (5th Cir. 1986) ...................................................................................................11

*Inaimi v. Harris Cnty., Tex.*,
  No. 4:21-CV-01832, 2022 WL 901556 (S.D. Tex. Mar. 25, 2022) (Ellison, J.)............. *passim*

*Jackson v. Cain*,
  864 F.2d 1235 (5th Cir. 1989) ...................................................................................................11

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*,
  379 F.3d 293 (5th Cir. 2004) .....................................................................................................11

*Johnson v. Harris Cnty.*,
  No. 4:16-CV-1623, 2018 WL 6505857 (S.D. Tex. July 31, 2018) ...........................................12

*Lewis v. Sec. of Pub. Safety & Corrections*,
  870 F.3d 365 (5th Cir. 2017) ...............................................................................................11, 12

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*,
  406 F.3d 375 (5th Cir. 2005) ..............................................................................5, 13, 14, 15

*Nottingham v. Richardson*,
  499 Fed. App'x. 368 (5th Cir. 2012) .......................................................................................18

iii

*Olabisiomotosho v. City of Houston,*
   185 F.3d 521 (5th Cir. 1999) ........................................................6, 7

*Olmstead v. L.C. ex rel. Zimring,*
   527 U.S. 581 (1999)......................................................................18

*Oswalt v. Sara Lee Corp.,*
   74 F.3d 91 (5th Cir. 1996) ..............................................................22

*Pena v. City of Rio Grande City,*
   879 F.3d 613 (5th Cir. 2018) ...............................................4, 9, 14, 15

*Peterson v. City of Fort Worth,*
   588 F.3d 838 (5th Cir. 2009) ...................................................4, 5, 9

*Pineda v. City of Houston,*
   291 F.3d 325 (5th Cir. 2002) ............................................................5

*Piotrowski v. City of Houston,*
   237 F.3d 567 (5th Cir. 2001) ............................................................9

*Roberts v. City of Shreveport,*
   397 F.3d 287 (5th Cir. 2005) ....................................................14, 16

*Salcido v. Harris Cnty., Tex.,*
   No. CV H-15-2155, 2018 WL 4690276 (S.D. Tex. Sept. 28, 2018) ...............20, 22

*Sanders-Burns v. City of Plano,*
   594 F.3d 366 (5th Cir. 2010) ...........................................................14

*Scott v. Moore,*
   114 F.3d 51 (5th Cir. 1997) ..........................................................6, 7

*Smith Estate of Hawkins v. Harris Cnty.,*
   No. CV H-15-2226, 2019 WL 12117217 (S.D. Tex. Feb. 25, 2019) ....................20

*Smith v. Harris Cnty., Tex.,*
   956 F.3d 311 (5th Cir. 2020) ......................................................18, 20

*Spiller v. City of Tex. City, Police Dep't,*
   130 F.3d 162 (5th Cir. 1997) ............................................................4

*Taylor v. Hartley,*
   488 F. Supp. 3d 517 (S.D. Tex. 2020) ..................................................23

*Thomas v. Anciso,*
   No. 2:22-CV-00254, 2023 WL 4666629 (S.D. Tex. July 20, 2023) ....................20

*Thomas v. Nino*,
   No. 2:22-CV-00252, 2023 WL 4444974 (S.D. Tex. Jan. 25, 2023).........................................19

*Thomas v. Samuel*,
   No. 2:22-CV-00158, 2022 WL 19001964 (S.D. Tex. Dec. 7, 2022)........................................20

*Wade v. Montgomery Cnty.*,
   No. 4:17-CV-1040, 2018 WL 580642 (S.D. Tex. Jan. 25, 2018)..........................................22

*Wade v. Montgomery Cnty., Tex.*,
   No. 4:17-CV-1040, 2017 WL 7058237 (S.D. Tex. Dec. 6, 2017)..........................................22

*Walls v. Tex. Dep't of Criminal Justice*,
   270 Fed. App'x. 358 (5th Cir. 2008) ........................................................................8, 19

*Zarnow v. City of Wichita Falls, Tex.*,
   614 F.3d 161 (5th Cir. 2010) ....................................................................................17

## Statutes

29 U.S.C. § 794(1) ......................................................................................................18

42 U.S.C. § 1983 ................................................................................................. *passim*

42 U.S.C. § 12102(1) ..................................................................................................21

42 U.S.C. § 12132 ......................................................................................................17

Americans with Disabilities Act of 1990 Title II....................................................... *passim*

Rehabilitation Act of 1973 Section 504 ............................................................................3

## Other Authorities

Fourteenth Amendment ............................................................................................3, 5

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1, 3

Texas Administrative Code § 273.5.............................................................................8, 10

Texas Administrative Code (TAC)................................................................................10

Defendant Harris County, Texas ("Harris County") files this Motion to Dismiss Plaintiff-Intervenor, Chandra Jenkins' as Attorney in Fact for Dequon Buford ("Plaintiff-Intervenor") Original Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.    SUMMARY OF THE ARGUMENT

Harris County moves to dismiss all of Plaintiff-Intervenor's claims because they are not sufficiently pled. Plaintiff-Intervenor's § 1983 *Monell* claims must be dismissed because Plaintiff-Intervenor has not sufficiently alleged an underlying constitutional violation or a policy or custom for municipal liability. Plaintiff-Intervenor also has not pled a pattern of similar, specific, and numerous prior incidents required to state a *Monell* claim for municipal liability. Plaintiff-Intervenor instead tries to manufacture a pattern by citing to materials, allegations and other incidents that do not involve similar factual scenarios and are entirely irrelevant to the claims and incidents at issue in this case.

Relatedly, Plaintiff-Intervenor also fails to state a § 1983 *Monell* claim based on failure to train or supervise. This claim must be dismissed because (1) Plaintiff-Intervenor has not alleged any facts that would show Harris County's training program is constitutionally defective or that any particular deficiency with the training program is causally connected to each Plaintiff-Intervenor's alleged injuries; (2) Plaintiff-Intervenor has failed to demonstrate a pattern of similar and specific violations, and (3) Plaintiff-Intervenor has only made conclusory allegations as to whether the inadequate training or supervision is obvious and obviously likely to result in a constitutional violation.

Finally, Plaintiff-Intervenor's ADA/RA claims must be dismissed because they are based entirely on allegations that Harris County failed to provide adequate medical care to Dequon Buford, which is insufficient to state a claim under the ADA/RA. Additionally, Plaintiff-Intervenor's ADA/RA claims fail because Plaintiff-Intervenor does not allege sufficient facts to

show that Dequon Buford is a qualified individual with a disability or that Harris County intentionally discriminated against Dequon Buford based on their alleged disabilities. The Court, therefore, should dismiss all of Plaintiff-Intervenor's claims.

## II.      NATURE AND STAGE OF THE PROCEEDING

On August 7, 2023, 27 Plaintiffs (the "Wagner Plaintiffs") filed this action against Harris County based on allegations of 22 distinct, separate, and unrelated incidents that allegedly occurred at the Harris County Jail between July 23, 2021 and July 30, 2023. D.E. 1, ¶¶45-261 (Original Wagner Complaint). On November 3, 2023, Harris County filed a Motion to Dismiss (D.E. 8) and a Motion to Sever Plaintiffs' Claims (D.E. 9). On November 21, 2023, the Wagner Plaintiffs amended its complaint and added five Plaintiffs. D.E. 20 (Amended Wagner Complaint). On December 5, 2023, Harris County filed a Motion to Dismiss the Amended Wagner Complaint (D.E. 21).

On February 16, 2024, Plaintiff-Intervenor filed its Motion to Intervene (D.E. 34). On April, 15, 2024, the Court granted Plaintiff-Intervenor's Motion to Intervene. (D.E. 40). On, April 16, 2024, Plaintiff-Intervenor filed its Original Complaint ("Plaintiff-Intervenor's Original Complaint") (D.E. 42).[1]

There are now 34 Plaintiffs in this case, based on separate incidents involving 29 individuals who were detained at the Harris County Jail. Each of the 29 incidents involve its own unique facts and alleged wrongdoing. Critically, no two incidents occurred on the same day or in the same way. Nor are there any allegations that the incidents involved the same officers, medical personnel, or detainees. The alleged incidents also occurred at different locations within the Harris County Jail and even at different addresses. Some of the incidents occurred at 1200 Baker, while

---

[1] Original Plaintiff-Intervenor Ana Garcia also filed a Motion to Intervene (D.E. 17), granted by the Court on April 15, 2024 (D.E. 40).  On April 16, Original Plaintiff-Intervenor Ana Garcia filed its Original Complaint.

others occurred at 701 N. San Jacinto. D.E. 20 at ¶¶54, 62, 64, 71, 102-03, 129, 202, 210, 215-18, 237-38. Some of the incidents involve allegations of officer force; other incidents involve allegations of altercations with other detainees; others involve allegations of inadequate medical care; and one incident involves suicide. But even within these categories, the facts of each incident differ significantly and are based on separate incidents with their own unique facts. The only "common" link is that the incidents occurred at the Harris County Jail.

Despite the lack of factual similarity between the incidents, Plaintiff-Intervenor tries to trace these incidents to an alleged policy or custom promulgated by Harris County, and asserts three counts:

Count I    *Monell* Claim; Violation of the Fourteenth Amendment; Pursuant to 42 U.S.C. § 1983; Conditions of Confinement.

Count II   *Monell* Claim; Violation of the Fourteenth Amendment; Pursuant to 42 U.S.C. § 1983; Failure to Train or Supervise.

Count III  Violation of Title II of the Americans with Disabilities Act of 1990 ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("RA").

Harris County is now moving to dismiss Plaintiff-Intervenor's entire Complaint for failure to state a claim.

## III.    STATEMENT OF THE ISSUES

1.    Whether Plaintiff-Intervenor failed to state a § 1983 *Monell* claim (Count I).

2.    Whether Plaintiff-Intervenor has failed to state a claim under failure to supervise. (Count II).

3.    Whether Plaintiff-Intervenor has failed to state a claim under failure to train (Count II).

4.    Whether Plaintiff-Intervenor failed to state a claim under the ADA/RA (Count III).

## IV.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of complaints when they fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion

to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## V.   ARGUMENT

### A.   PLAINTIFF-INTERVENOR'S § 1983 *MONELL* CLAIMS MUST BE DISMISSED.

It is well-established that a municipality is not liable under § 1983 on the theory of respondeat superior. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Counties therefore are not liable for constitutional violations committed by county employees unless those violations result directly from a municipal custom or policy. *Conner v. Travis Cnty.*, 209 F.3d 794, 796 (5th Cir. 2000). To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson*, 588 F.3d at 847. An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Id.* "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation... cannot be conclusory; it must contain specific facts.'" *Pena v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). The alleged policy also must be causally connected to the plaintiff's claim and injuries. *Id.* (affirming dismissal of *Monell* claim and ruling that "[b]ecause the written policy that [plaintiff] identifies is causally irrelevant, it cannot demonstrate the persistent practice she alleges").

The Fifth Circuit has emphasized that a custom can be inferred only from a pattern

displaying "similarity and specificity." *Peterson*, 588 F.3d at 851; *Inaimi v. Harris Cnty., Tex.*, No. 4:21-CV-01832, 2022 WL 901556, at *2 (S.D. Tex. Mar. 25, 2022) (Ellison, J.). In other words, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851 (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). Thus, "the prior acts [must] be fairly similar to what ultimately transpired." *Estate of Davis*, 406 F.3d at 383. A pattern also requires "sufficiently numerous prior incidents, as opposed to isolated instances." *Peterson*, 588 F.3d at 851; *Inaimi*, 2022 WL 901556, at *2. This is a high bar. *See, e.g.*, *Peterson*, 588 F.3d at 852 ("27 incidents of excessive force over a period of four years do not reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the City liable for the acts of its employees' unconstitutional conduct."); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (11 incidents did not support pattern of unconstitutional warrantless entry in the City of Houston which is "one of the Nation's largest cities and police forces").

Plaintiff-Intervenor's attempt to establish municipal liability under § 1983 under two theories: (1) conditions of confinement, and (2) the failure to train or supervise. These claims must be dismissed because they do not sufficiently allege an underlying constitutional violation or municipal liability.

1. <u>Plaintiff-Intervenor Has Not Adequately Alleged an Underlying Constitutional Violation</u>.

In Count I, Plaintiff-Intervenor asserts a *Monell* claim based on a conditions of confinement theory under the Fourteenth Amendment. D.E. 42, ¶¶26-138. However, Plaintiff-Intervenor's claims actually allege episodic acts or omissions. Constitutional claims by pretrial detainees can take two forms: (1) conditions of confinement, or (2) episodic acts or omissions. *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019). A condition of confinement case is a "constitutional

attack on general conditions, practices, rules, or restrictions of pretrial confinement," including complaints such as "the number of bunks in a cell, or his television or mail privileges." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). "In contrast, where the complained-of harm is a particular act or omission of one or more officials, the action is characterized properly as an 'episodic act or omission' case." *Id.* "In an 'episodic act or omission' case, an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Id.* The proper classification of a detainee's claim is important because different standards apply to the two theories. *See id.*; *Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997).

Although Plaintiff-Intervenor labels its claim as a condition of confinement claim, in reality Plaintiff-Intervenor's claims are based on episodic acts or omissions because all of their alleged incidents are based on specific acts and omissions of County officers and medical providers, rather than the general conditions of their confinement. Specifically, Plaintiff-Intervenor's claims are based on: sexual assaults by other detainees[2]; specific officers' failure to observe, monitor, or intervene; and the adequacy of medical treatment provided to Dequon Buford. D.E. 42, ¶¶13-24. Plaintiff-Intervenor's attempt to fit its allegations in a condition of confinement claim by pointing to county policies or customs is ineffective because its claims are still unequivocally based on alleged acts and omissions by individuals. Accordingly, Plaintiff-Intervenor's claims are properly analyzed in the episodic act or omission context, not a condition of confinement claim. *See, e.g., Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (ruling plaintiff raised

---

[2] Plaintiff-Intervenor acknowledges that Mr. Buford was appropriately rehoused after he reported the alleged sexual assaults, demonstrating that there was no deliberate indifference on the part of Harris County. D.E. 42, ¶23.

6

episodic claim because her complaint turned on the officers' alleged failure to take better care of her, medically screen her, and secure treatment for her); *Flores*, 124 F.3d at 738 (holding in jail suicide case that plaintiff alleged an episodic claim, despite allegations that the county had a policy or practice of inadequate training and staffing and inadequate suicide detection, intervention, and prevention); *Scott*, 114 F.3d at 53 (holding that even though the plaintiff asserted that understaffing caused her injury, her actual complained-of harm was sexual assault, an episodic act); *Anderson v. Dallas Cty. Tex.*, 286 F. App'x 850, 859 (5th Cir. 2008) ("Because the plaintiffs cannot prove that [detainee] was subjected to cruel and unusual punishment without first proving that a state actor deprived him of his constitutional rights, the plaintiffs' case is an episodic-act-or-omission case.").

When addressing municipal liability for an episodic claim, the Fifth Circuit has ruled that courts must "separate the inquiry pertinent to the episodic act or omission ('the existence of a constitutional violation simpliciter') from that pertinent to the custom, rule, or policy that is alleged to have permitted the act ('a municipality's liability for that violation')." *Scott*, 114 F.3d at 54. Plaintiff-Intervenor therefore must first prove an underlying constitutional violation by showing that "an official acted with *subjective* deliberate indifference" to that detainee's constitutional rights. *Id.* Subjective deliberate indifference means "the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Olabisiomotosho*, 185 F.3d at 526. For excessive force cases, a plaintiff must show an injury that resulted directly and only from a use of force that was clearly excessive, and that the excessiveness of the force was clearly unreasonable. *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 727 (5th Cir. 2018). Then, to hold a municipality liable for that constitutional violation, "the detainee must show that the municipal employee's act resulted from a municipal policy or custom adopted or maintained with *objective* deliberate indifference to the detainee's constitutional

7

rights." *Id.*

Plaintiff-Intervenor has failed to plead sufficient facts showing an underlying constitutional violation. Plaintiff-Intervenor has not alleged sufficient facts to show that any of the unidentified officers or medical providers involved in each incident (1) acted with subjective deliberate indifference, (2) had subjective knowledge of a substantial risk of serious harm, or (3) responded with deliberate indifference to that risk. At most, those Plaintiff-Intervenor alleges disagreement with their medical treatment, which does not give rise to a constitutional violation. *Walls v. Tex. Dep't of Criminal Justice*, 270 Fed. App'x. 358, 358 (5th Cir. 2008) (affirming dismissal of prisoner's § 1983 claim because his "disagreement with the [medical] treatment he received does not give rise to a constitutional violation"). As for Plaintiff-Intervenor's allegations that involved sexual assaults by other detainees, Plaintiff-Intervenor generally alleges that officers were not properly monitoring or observing the detainees to prevent the altercations, but there are no facts to suggest that any of those officers had subjective knowledge of a substantial risk of serious harm, responded with deliberate indifference to that risk, or otherwise acted with subjective deliberate indifference. In fact, Plaintiff-Intervenor acknowledges that Mr. Buford was appropriately rehoused after he reported the alleged sexual assaults, demonstrating that there was no deliberate indifference on the part of Harris County. D.E. 42, ¶23. Plaintiff-Intervenor therefore has not sufficiently pled an underlying constitutional violation, which warrants dismissal of Plaintiff-Intervenor's *Monell* claims.

2.   <u>Plaintiffs Have Not Adequately Alleged a Policy or Custom</u>.

Plaintiff-Intervenor also has not adequately pled a municipal policy or custom adopted with objective deliberate indifference to the detainee's constitutional rights. Plaintiff-Intervenor does not identify any particular written policies other than Texas Administrative Code § 273.5. So Plaintiff-Intervenor's claims must proceed under the theory of a widespread practice, which

8

requires a pattern displaying "similarity and specificity" and involving "sufficiently numerous prior incidents." *Peterson*, 588 F.3d at 851; *Inaimi*, 2022 WL 901556, at *2. Plaintiff-Intervenor's § 1983 claims must be dismissed because they (1) have not sufficiently alleged a policy or custom, and (2) have not sufficiently alleged a pattern displaying similarity and specificity and involving sufficiently numerous prior incidents.

On the first issue, Plaintiff-Intervenor has not sufficiently identified the alleged policies at issue. Plaintiff-Intervenor alleges that Harris County has the following policies or customs: (1) failure to observe and monitor, (2) failure to provide medical care, (3) systemic understaffing and overcrowding. D.E. 42, ¶¶34-36. But these alleged policies are too vague, generalized, and conclusory to state a *Monell* claim, and Plaintiff-Intervenor does not allege sufficient facts tying each incident to these alleged policies. *See Pena*, 879 F.3d at 622 ("[A] complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation... cannot be conclusory; it must contain specific facts.'").

Although Plaintiff-Intervenor states that the Court should consider the "interrelation" of these policies, the Fifth Circuit has ruled that courts should "disaggregate" asserted policies or customs when "they express no single municipal policy but only a series of adversarial conclusions." *Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001). Disaggregation is similarly warranted when each policy or custom "concerns a discrete [municipal] program or area of decision-making, and each invokes separate aspects of the policy issue." *Id.* Thus, each policy alleged in this case should be disaggregated and viewed independently. Because Plaintiff-Intervenor has only provided conclusory and generalized allegations concerning the alleged policies and their causal connection to Mr. Buford's alleged constitutional violation, Plaintiff-Intervenor has not sufficiently alleged a *Monell* claim.

Plaintiff-Intervenor's *Monell* claims also should be dismissed because Plaintiff-Intervenor has not sufficiently alleged a pattern displaying "similarity and specificity" and involving "sufficiently numerous prior incidents" for each of the policies identified by Plaintiff-Intervenor. Notably, Plaintiff-Intervenor has not cited a single lawsuit where Harris County was found liable for a constitutional violation under a *Monell* claim, let alone a lawsuit where Harris County was found liable under any factual scenarios similar to any of the incidents alleged in this case. Instead, Plaintiff-Intervenor attempts to manufacture a pattern by citing to entirely irrelevant materials, allegations, and incidents that do not involve similar factual scenarios, including: (1) the Texas Administrative Code without any facts to support a violation of the Code; (2) a fifteen-year-old DOJ Report based on incidents that involved different factual scenarios; (3) Texas Commission on Jail Standard ("TCJS") reports that are based on incidents involving different factual scenarios; (4) generalized statistics with no underlying factual context for each incident; and (5) public statements made by policymakers during a 2016 election debate which reference the aforementioned DOJ and TCJS reports. None of this is sufficient to "establish a pattern of 'similarity and specificity' and involving 'sufficiently numerous prior incidents, as opposed to isolated instances.'" *Inaimi*, 2022 WL 901556, at *3.

**The Texas Administrative Code.** Plaintiff-Intervenor first cites the Texas Administrative Code (TAC) set forth in § 273.5. D.E. 42, at ¶¶42-46.  Specifically,  that "Harris County knew that it was required to have an appropriate number of jailers at the facility twenty-four (24) hours each day, and shall have an established procedure for documented, face-to-face observation of all inmates by jailers no less than once every sixty (60) minutes." Plaintiff-Intervenor fails to plead any facts indicating that Harris did not comply with the TAC observation rules, or failed to provide medical care as to Mr. Buford, much less plead facts on which the Court can reasonably infer that

the Plaintiff-Intervenor's alleged circumstances, assuming *arguendo* are true, were other than an isolated incidents.

Notably, the TAC regulation that Plaintiff-Intervenor complaints does not in and of itself give rise to *Monell* liability. A failure to follow state regulations is insufficient to impose *Monell* liability. Specifically, "a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right." *Lewis v. Sec. of Pub. Safety & Corrections*, 870 F.3d 365, 369 (5th Cir. 2017) ("The LaDPSC and CCA internal rules and regulations do not alone create federally-protected rights and a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (citation omitted); *see also Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) ("The claim is that the mere failure . . . to follow their [departmental] regulations was a constitutional violation.  There is no such controlling constitutional principle."); *Jackson v. Cain*, 864 F.2d 1235, 1251-52 (5th Cir. 1989) ("A state's failure to follow its own procedural regulations does not establish a violation of due process, because 'constitutional minima may nevertheless have been met'.") (citation omitted).

For *Monell* liability, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal [policy] and the deprivation of federal rights." *Brown*, 520 U.S. at 397 (citation omitted).  For Harris County to be liable on account of its policy or custom, Plaintiff-Intervenor must allege that (1) the policy *itself* violated federal law or authorized or directed the deprivation of federal rights, or (2) the policy was adopted or maintained with deliberate indifference as to the known or obvious consequence that it would result in the violation of someone's federal rights. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (citations omitted).  Here, assuming there was a policy of not following TAC observation

procedures, the alleged policy itself does not violate Mr. Buford's constitutional rights. *Green v. Harris County*, No. H-16-893, 2019 WL 2617429, at *16 (S.D. Tex. June 26, 2019) (slip opinion) ("Even if, for sake of argument, Malloy had not conducted the twice-hourly observations as required, "a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right.") (citing *Lewis v. Sec. of Pub. Safety & Corrections*, 870 F.3d 365, 369 (5th Cir. 2017)).

Regardless, in that the policy Plaintiff-Intervenor complains requires observation every thirty (30) minutes, pleadings regarding a policy should include non-conclusory facts that Harris County did not comply with the thirty minutes observation with respect Mr. Buford, which Plaintiff-Intervenor does not and cannot do.

**2009 DOJ Report.** Plaintiff-Intervenor relies on a fifteen-year-old DOJ report from 2009 regarding the Harris County Jail. D.E. 20, ¶¶316-40. However, this Court and others have deemed that reliance on that same report is insufficient to allege a § 1983 claim. *Inaimi*, 2022 WL 901556, at *3; *Henderson v. Harris Cnty.*, No. 4:18-CV-413, 2021 WL 1112400, at *4 (S.D. Tex. Feb. 24, 2021), *report adopted*, No. 4:18-CV-00413, 2021 WL 1111104 (S.D. Tex. Mar. 23, 2021); *Johnson v. Harris Cnty.*, No. 4:16-CV-1623, 2018 WL 6505857, at *10 (S.D. Tex. July 31, 2018) ("Because the DOJ report only discussed violations occurring before 2009, it is largely irrelevant to whether Harris County Jail employees in 2015 received sufficient training and supervision.").

In *Inaimi v. Harris County*, this Court ruled that the 2009 DOJ report "fails to establish a pattern displaying 'similarity and specificity' and involving 'sufficiently numerous prior incidents, as opposed to isolated instances.'" *Inaimi*, 2022 WL 901556, at *3. The Court reasoned that the "examples listed occurred fourteen years ago and were based on incidents that involved different factual scenarios," and dismissed the plaintiff's § 1983 claim against Harris County because the

plaintiff failed to sufficiently allege a "custom that fairly represents municipal policy." *Id.*

The same reasoning applies here. The 2009 DOJ report concerns incidents that occurred fifteen years ago and were based on incidents that involved different factual scenarios from the incidents alleged in Plaintiff-Intervenor's Complaint. While Plaintiff-Intervenor claims generally that these examples are similar to its claims for lack of medical care, Fifth Circuit precedent requires that the examples must be "fairly similar to what ultimately transpired." *Estate of Davis*, 406 F.3d at 383. The references from the DOJ report are irrelevant, too vague and/or factually nonspecific to support a pattern under § 1983. Thus, the DOJ report fails to establish a pattern displaying similarity, specificity, and sufficiently numerous prior incidents, as opposed to isolated instances. *Inaimi*, 2022 WL 901556, at *3.

**TCJS Reports**. The Texas Commission on Jail Standard ("TCJS") reports suffer from the same problems discussed *infra* and are based on incidents involving different factual scenarios than Plaintiff-Intervenor's alleged incidents. For instance, Plaintiff-Intervenor cites to a report dated April 3, 2017 of two detainees being left in an unsupervised van, D.E. 42, at ¶¶71-73, but Plaintiff-Intervenor's allegations do not involve being left unsupervised in a van. The same is true of the other TCJS reports which are not factually similar and do not establish a pattern displaying similarity, specificity, or numerosity. Moreover, similar to Plaintiff-Intervenors allegations related to TAC procedures, Plaintiff-Intervenor's pleadings failed to include non-conclusory facts that Harris County did not comply TCJS regulations with respect Mr. Buford.

**Public Statements of Policymakers**. Plaintiff-Intervenor relies on statements and references made by the sheriff of Harris County during a September 7, 2016 press conference and an October 26, 2016 sheriff election debate to support its allegations of "ongoing problems, deviations, and violations of the detainees' civil rights." D.E. 42, at ¶128.  However, the references

and statements cited are irrelevant, too vague and/or factually nonspecific to support a pattern under § 1983. Intervenor's reliance on such statements fails to establish a pattern displaying similarity, specificity, and sufficiently numerous prior incidents, as opposed to isolated instances. *Inaimi*, 2022 WL 901556, at *3. Moreover, none of the statements cited establish a casual link between a municipal policy and the deprivation of Mr. Buford's federal rights.

<u>Plaintiffs Have Not Adequately Alleged a Failure to Train or Supervise Claim</u>.

Plaintiffs also assert a *Monell* claim based on failure to train or supervise. D.E. 42, ¶¶139-150. To find Harris County liable on this theory, Plaintiffs must show: "1) the [county] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Pena*, 879 F.3d at 623. "[F]or liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). And the particular deficiency in the training must have caused the ultimate injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). Additionally, proof that an injury or accident could have been avoided if an officer had better or more training is not sufficient; there must be proof of deliberate indifference. *Id.*

"Deliberate indifference requires a showing of more than negligence or even gross negligence." *Estate of Davis*, 406 F.3d at 381. Plaintiff-Intervenor must show that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do

not divest officials of qualified immunity." *Estate of Davis*, 406 F.3d at 381. "Because the standard for [municipal] fault is a stringent one, [a] pattern of similar constitutional violations by untrained employees is ordinarily required to show deliberate indifference." *Pena*, 879 F.3d at 623 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Importantly, "notice of a pattern of **similar violations** is required" and "the prior acts be fairly similar to what ultimately transpired." *Estate of Davis*, 406 F.3d at 383 (emphasis added); *Connick*, 563 U.S. at 62. For example, in *Connick*, the plaintiff alleged that the Orleans Parish District Attorney's Office failed to train its prosecutors adequately about their duty to produce exculpatory evidence and that the lack of training caused a *Brady* violation in the plaintiff's case. *Connick*, 563 U.S. at 54. To support his *Monell* failure to train claim, the plaintiff pointed to examples where Louisiana courts overturned convictions because of *Brady* violations by prosecutors in the same district attorney's office. *Id.* However, the United States Supreme Court ruled that the plaintiff could not rely on those other *Brady* violations because they did not involve the specific type of *Brady* violation at issue in the lawsuit. *Id.* None of the other *Brady* violations involved the failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind, so the Supreme Court determined those other *Brady* violations were not similar to the *Brady* violation at issue and could not have put the defendant on notice that specific training was necessary to avoid the plaintiff's alleged constitutional violation. *Id.* Therefore, courts narrowly construe the alleged violation, and require plaintiffs to demonstrate a pattern of "similar and specific violations." *Id.*; *Inaimi*, 2022 WL 901556, at *4; *Estate of Davis*, 406 F.3d at 383.

Plaintiff-Intervenor's failure to train and supervise claim should be dismissed for multiple

reasons. First, Plaintiff-Intervenor has not alleged any facts to show Harris County's training program is constitutionally defective or that any particular deficiency with the training program is causally connected to Mr. Buford's alleged injuries. Plaintiff-Intervenor instead merely relies on generalities and conclusory allegations concerning Harris County's training—stating in nonspecific terms that "Harris County and its policymaker, Sheriff Gonzales, are fully aware of Harris County jail's culture of violence, excessive use of force, lack of medical care, and lack of observation," and that "Sherrif Gonzales recognizes Harris County's jail culture was an issue." D.E. 42, ¶¶ 142-143.  These generalities and conclusory allegations are insufficient to state a claim because they do not specifically identify what was constitutionally deficient about Harris County's training concerning the provision of medical care or observation and monitoring. *See Roberts*, 397 F.3d at 293 (plaintiff "must allege with specificity how a particular training program is defective"). Moreover, there are no factual allegations that any particular officer was not properly trained or what training they should have received that they did not.  In fact, each officer receives state-mandated training that is certified by the Texas Commission on Law Enforcement ("TCOLE") and there is no allegation the TCOLE-certified training is deficient.  Even if the TCOLE training was deficient, that would be an allegation against the State of Texas, not Harris County. As such, Plaintiff-Intervenor failed to demonstrate any particular deficiency in the training that could have caused Mr. Buford's alleged injuries. *See City of Canton, Ohio* at, 391.

Second, Plaintiff-Intervenor has failed to satisfy the deliberate indifference prong because, as discussed above, Plaintiff-Intervenor has failed to demonstrate a pattern of similar and specific violations. *Inaimi*, 2022 WL 901556, at *4.  Instead, Plaintiff-Intervenor merely cites conclusory allegations that Sherriff Gonzalez and Chief Bosquez "had full knowledge of the civil rights violations…occurring in the County jail." D.E. 42, ¶146. Plaintiff-Intervenor merely present

allegations of isolated incidents, which is insufficient. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).  Further, Plaintiff-Intervenor has failed to satisfy the deliberate indifference prong because Plaintiff-Intervenor has only made conclusory allegations as to whether the inadequate training or supervision is obvious and obviously likely to result in a constitutional violation.  *Inaimi*, 2022 WL 901556, at *4; *Cano v. Faust*, No. CV H-19-0317, 2022 WL 980276, at *6 (S.D. Tex. Mar. 31, 2022) (Ellison, J.) ("Plaintiff's conclusory allegations of deliberate indifference fail to plead factual allegations sufficient to raise a viable claim for failure to train and/or supervise."), *aff'd*, No. 22-20189, 2023 WL 2521869 (5th Cir. Mar. 14, 2023); *Harvey v. Montgomery Cnty.*, Tex., 881 F. Supp. 2d 785, 798 (S.D. Tex. 2012) (dismissing failure to train claim because plaintiff did not allege "facts that would show the municipality's training policies or procedures were inadequate, let alone facts that could state a claim that the need for more or different training is obvious"). Plaintiff-Intervenor merely alleges in a conclusory fashion that "Harris County regularly fails to observe detainees within minimum standards, fails to monitor detainees, and falsifies documentation and reports pertaining to the same." D.E. 42, ¶148. Plaintiffs do not allege any facts to support these conclusory allegations. Therefore, Plaintiffs cannot state a *Monell* claim for failure to train or supervise.

**B.**     **PLAINTIFF-INTERVENOR'S ADA/RA CLAIMS MUST BE DISMISSED.**

Plaintiff-Intervenor alleges that Harris County violated Title II of the ADA and § 504 of the RA with respect to Dequon Buford. D.E. 42, ¶¶151-166. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 provides that "[n]o otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected

to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(1). Because § 504 closely tracks the language of the ADA, the Fifth Circuit analyzes ADA and RA claims together. *Estate of A.R. v. Muzyka*, 543 Fed. App'x. 363, 364 (5th Cir. 2013).

To plead a discrimination claim under the ADA/RA, Plaintiff-Intervenor must allege: (1) that he is a qualified individual within the meaning of the Act; (2) that he was excluded from participation in, or denied benefits of services, programs, or activities for which Harris County is responsible, or was otherwise being discriminated against by Harris County; and (3) that such exclusion, denial of benefits, or discrimination was by reason of his disability. *Smith v. Harris Cnty., Tex.*, 956 F.3d 311, 317 (5th Cir. 2020). A plaintiff asserting a private cause of action for violations of the ADA, or the RA may only recover compensatory damages upon a showing of intentional discrimination. *Id.*; *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002).

1.  Denial of Medical Care is Not Actionable Under the ADA/RA.

Plaintiff-Intervenor's ADA/RA claims must be dismissed because they are based entirely on allegations that Harris County failed to provide adequate medical care to Dequon Buford, which is insufficient as a matter of law to state a claim under the ADA/RA. Notably, "the ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners." *Nottingham v. Richardson*, 499 Fed. App'x. 368, 377 (5th Cir. 2012) (quoting *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)), nor does the ADA/RA establish a "standard of care for medical treatment" in prisons. *Walls*, 270 Fed. App'x. at 359; *Hale v. Harrison Cnty. Bd. Of Supervisors*, 8 F.4th 399, 404 (5th Cir. 2021); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not in this opinion hold that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'"); *Buchanan v. Maine*, 469 F.3d 158, 175 (1st Cir.

2006) (recognizing that multiple circuits have held that the ADA does not guarantee any particular level of medical care for disabled persons). The ADA/RA also does not create a remedy for medical malpractice or medical negligence. *Bryant*, 84 F.3d at 249 (recognizing that the "ADA does not create a remedy for medical malpractice" and ruling that plaintiff failed to state a claim under the ADA because the plaintiff merely alleged incompetent treatment of his paraplegia and did not allege he was excluded from a prison service, program, or activity because of his disability).

A plaintiff therefore cannot bring an ADA/RA claim simply by restating a claim for denial of medical care. *Walls*, 270 Fed. App'x. at 359; *Hale*, 8 F.4th at 404. A plaintiff's disagreement with medical treatment likewise does not state a claim under the ADA/RA. *Walls*, 270 Fed. App'x. at 358; *Thomas v. Nino*, No. 2:22-CV-00252, 2023 WL 4444974, at *16 (S.D. Tex. Jan. 25, 2023), *report adopted*, No. 2:22-CV-00252, 2023 WL 3973610 (S.D. Tex. June 13, 2023). For example, in *Walls v. Tex. Dep't of Criminal Justice*, the Fifth Circuit affirmed dismissal of a prisoner's § 1983 and ADA/RA claims where he alleged that the prison was deliberately indifferent to his serious medical needs by refusing to surgically install a protective metal plate to cover a hole in his skull. *Walls*, 270 Fed. App'x. at 358. He also alleged ADA/RA violations claiming he was discriminated against due to his disability. *Id.* at 359. The Fifth Circuit affirmed dismissal of the § 1983 claim because his "disagreement with the treatment he received does not give rise to a constitutional violation." *Id.* at 358. The Court also affirmed dismissal of his ADA/RA claim finding that it was not actionable because it was "simply a restatement of the denial-of-medical-care claim" and the "ADA does not set out a standard of care for medical treatment." *Id.* at 359.

Similarly, in *Hale v. Harrison Cnty. Bd. of Supervisors*, the Fifth Circuit ruled that an ADA claim was "frivolous" where the plaintiff alleged he was discriminated against based on his hepatitis-C status through the "prison's refusal to prescribe his preferred medication, crushing his

medication, denial of a high-protein diet, and denial of multiple antacid pills per day." *Hale*, 8 F.4th at 404 n.1. The Court recognized that the "[t]he ADA is not violated by a prison's simply failing to attend to the medical needs of its disabled prisoners," because "[t]he ADA does not set out a standard of care for medical treatment." *Id.* The Court found that the plaintiff "does not come close to showing that the prison's treatment of his hepatitis-C status constitutes disability discrimination." *Id.* The Fifth Circuit also determined that the plaintiff failed to show that any discrimination was intentional, because he admitted that the denial of his requested accommodations meant he was treated the same as everyone else. *Id.*

Courts in the Southern District of Texas have followed this line of cases to dismiss ADA/RA claims that are based on the denial of medical care or disagreements with medical treatment. *See, e.g.*, *Thomas v. Anciso*, No. 2:22-CV-00254, 2023 WL 4666629, at *3 (S.D. Tex. July 20, 2023) (dismissing ADA/RA claim based on the denial of prisoner's requested medical treatment); *Thomas v. Samuel*, No. 2:22-CV-00158, 2022 WL 19001964, at *16 (S.D. Tex. Dec. 7, 2022*), report adopted*, No. 2:22-CV-00158, 2023 WL 1529544 (S.D. Tex. Feb. 2, 2023) (dismissing ADA/RA claim because prisoner's "allegations simply state a disagreement with his medical treatment"); *Smith Estate of Hawkins v. Harris Cnty.*, No. CV H-15-2226, 2019 WL 12117217, at *8 (S.D. Tex. Feb. 25, 2019) (decision not to increase detainee's monitoring for suicide or refer him to mental health unit before committing suicide were medical decisions that are not actionable under the ADA/RA), *aff'd Smith v. Harris Cnty., Tex.*, 956 F.3d 311 (5th Cir. 2020); *Salcido v. Harris Cnty., Tex.*, No. CV H-15-2155, 2018 WL 4690276, at *54 (S.D. Tex. Sept. 28, 2018) (dismissing ADA/RA claims because plaintiffs were trying to "recast their claims for denial of adequate medical care as ADA and RA claims" and recognizing that "the ADA does not compel Harris County to provide any particular treatment in order to prevent discrimination");

*Doe v. Harris Cnty., Tex.*, No. CV H-16-2133, 2017 WL 4402590, at *29 (S.D. Tex. Sept. 29, 2017) (dismissing ADA/RA claim because allegations that she was discriminated against "by treating her as a criminal defendant who did not require mental health treatment, and by denying her services and programs that would have accommodated her disability are merely different ways of alleging that Harris County failed to provide her adequate mental health treatment").

Here, Plaintiff-Intervenor's ADA/RA claims fail for the same reason because they do not involve the discriminatory denial of prison services based on the detainees' alleged disabilities. Rather, Plaintiff-Intervenor's claims are based entirely on allegations of the denial of medical care and disagreements with their medical treatment, which are insufficient to state an ADA/RA claim. Specifically, Plaintiffs allege that Harris County "discriminated" against Mr. Buford by "failing to provide medication timely or with the correct dosage, failing to modify observation and monitoring requirements, placing Dequon Buford into general population, failing to remove Dequon Buford from general population, and failing to use proper techniques in handling Dequon Buford." D.E. 42 at ¶156.

None of these allegations show that Harris County discriminated against Mr. Buford based on his alleged disabilities. Plaintiff-Intervenor is simply restating its claims for denial of medical care and disagreements with Buford's medical treatment, which is not actionable under the ADA/RA. Consequently, Plaintiff-Intervenor's ADA/RA claims must be dismissed with prejudice.

2.   <u>Plaintiffs Have Not Adequately Pled the Elements of their ADA/RA Claim.</u>

Plaintiff-Intervenor's ADA/RA claims also must be dismissed because they are too conclusory to state a claim. First, Plaintiff-Intervenor does not sufficiently allege that Mr. Buford is a qualified individual with a disability. "Disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). A plaintiff cannot rely on conclusory allegations that his impairment substantially

limits a major life activity; instead, a plaintiff must allege sufficient facts as to how the impairment substantially limits a major life activity. *See*, *e.g.*, *Hale v. King*, 642 F.3d 492, 501 (5th Cir. 2011) (ruling that plaintiff failed to state a claim under the ADA because although he alleged he suffered from PTSD and Hepatitis C, he did not allege how those conditions substantially limited a major life activity); *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 606 (S.D. Tex. 2012) (Ellison, J.) (dismissing ADA claim because plaintiff failed to allege that his diagnosis substantially limited a major life activity); *Wade v. Montgomery Cnty., Tex.*, No. 4:17-CV-1040, 2017 WL 7058237, at *6 (S.D. Tex. Dec. 6, 2017), *report adopted Wade v. Montgomery Cnty.*, No. 4:17-CV-1040, 2018 WL 580642 (S.D. Tex. Jan. 25, 2018) (dismissing ADA claim because although plaintiff alleged that she was diagnosed with bipolar disorder, major depression, severe anxiety, and borderline personality disorder, those allegations were not sufficient to plead that she was a qualified individual with a disability under the ADA because she did not identify any major life activity that is impacted by those impairments); *see also Salcido*, 2018 WL 4690276, at *50 ("[S]tanding alone, the diagnosis of a condition such as hypertension, obesity, and anxiety, is insufficient to trigger the protections of the ADA.") (citing *Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 91 (5th Cir. 1996)).

Although Plaintiff-Intervenor alleges a variety of medical conditions, including schizophrenia, anemia, iron deficiency, anxiety, and bipolar 1 disorder, Plaintiff-Intervenor only alleges in a conclusory fashion that those conditions "limited one or more of his major life activities" such as "the ability to think, interact, and control major bodily functions." *See* D.E. 42, ¶159. Plaintiff-Intervenor does not allege sufficient facts as to how his impairment substantially limits a major life activity; these vague and conclusory allegations are insufficient. Plaintiff-Intervenor therefore fails to state a claim under the ADA/RA because they have not sufficiently

alleged that Dequon Burford is a qualified individual with a disability.

Additionally, Plaintiff-Intervenor does not allege sufficient facts to show that Harris County **intentionally** discriminated against Mr. Buford based on his alleged disabilities. *See Delano-Pyle*, 302 F.3d at 574; *accord Smith*, 956 F.3d at 318. Plaintiff-Intervenor does not allege the identity of any particular officer or medical provider who allegedly discriminated against Mr. Buford based on his alleged disabilities, nor does Plaintiff-Intervenor allege any specific facts to show whether those unidentified officers knew of Mr. Buford's disabilities or acted intentionally. *See Smith*, 956 F.3d at 318 ("[I]ntent requires that the defendant at least have actual notice.").

Instead, Plaintiffs merely allege in a conclusory fashion that Harris County was aware of Mr. Buford's disabilities through unspecified "medical records," unspecified "paperwork," unspecified "daily interactions," "prescribed medications," and Mr. Buford was observed at Harris Health System as "guarded, poorly groomed, with spontaneous speech, and reported hearing voices." *See* D.E. 42, ¶¶161-162. These allegations are too vague and conclusory to show that Harris County and the unidentified individuals involved in each incident were aware of each of Mr. Buford's alleged disabilities and acted intentionally. *See Taylor v. Hartley*, 488 F. Supp. 3d 517, 544 (S.D. Tex. 2020) (dismissing ADA/RA claim because plaintiff failed to allege sufficient facts to show that the defendant had notice of the plaintiff's disabilities). And other than conclusory allegations of "intentional discrimination," there are simply no facts to show that the unknown and unidentified individuals involved in the incidents were motivated by Mr. Buford's alleged disabilities, or intentionally discriminated against Mr. Buford. Moreover, Plaintiff-Intervenor cannot rely on its conclusory allegations that Harris County was "deliberately indifferent," because deliberate indifference is insufficient to meet the intentional discrimination standard under the ADA. *Austin v. City of Pasadena, Tex.*, 74 F.4th 312, 334 (5th Cir. 2023) ("Discrimination, if any,

must be intentional rather than deliberately indifferent for a plaintiff to recover compensatory damages" under ADA claim). Plaintiff-Intervenor's ADA/RA claims therefore, must be dismissed with prejudice.

## VI.    <u>CONCLUSION</u>

Harris County respectfully requests that the Court grant its Motion to Dismiss, dismiss all of Plaintiff-Intervenor's claims in this lawsuit, award Harris County all of its costs, and grant Harris County all further relief to which it is justly entitled, at law or in equity.

Dated: May 7, 2024                    Respectfully submitted,

                                      **BAKER & HOSTETLER LLP**

                                      By: */s/ Gregory C. Ulmer*
                                      Gregory C. Ulmer
                                      ***Attorney-in-Charge***
                                      Texas Bar No. 00794767
                                      Southern District Federal ID No. 19827
                                      gulmer@bakerlaw.com
                                      811 Main Street, Suite 1100
                                      Houston, Texas 77002-6111
                                      Telephone: (713) 751-1600
                                      Facsimile:  (713) 751-1717

                                      **OF COUNSEL:**
                                      **BAKER & HOSTETLER LLP**
                                      James E. Phillips
                                      Texas Bar No. 24060423
                                      Southern District Federal ID No. 906115
                                      jphillips@bakerlaw.com
                                      Kristen H. Luck
                                      Texas Bar No. 24104027
                                      Southern District Federal ID No. 3111037
                                      kluck@bakerlaw.com
                                      Ryan A. Walton
                                      Texas Bar No. 24105086
                                      Southern District Federal ID No. 3278426
                                      rwalton@bakerlaw.com
                                      811 Main Street, Suite 1100
                                      Houston, Texas 77002-6111
                                      Telephone: (713) 751-1600
                                      Facsimile:  (713) 751-1717

                                      **ATTORNEYS FOR DEFENDANT**
                                      **HARRIS COUNTY, TEXAS**

## <u>CERTIFICATE OF SERVICE</u>

In accordance with the Federal Rules of Civil Procedure, I hereby certify that on May 7, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of this filing to all counsel of record.

*/s/ Gregory C. Ulmer*
Gregory C. Ulmer
