IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OCTEVIA WAGNER, ET. AL.<br>　　　Plaintiffs | § § § § | |
| v. | § | Civil Action No. 4:23-CV-02886 |
| HARRIS COUNTY, TEXAS<br>　　　Defendant | § § § § § | |
| AND | § § | |
| ANA GARCIA AND CHANDRA JENKINS,<br>　　　Plaintiff – Intervenors | § § | |

**DEFENDANT HARRIS COUNTY'S RESPONSE IN OPPOSITION TO
INTERVENOR GARCIA – SANCHEZ TREJO'S MOTION TO
COMPEL RESPONSES TO WRITTEN DISCOVERY**
=================================================================

MAY IT PLEASE THE COURT:

SNOW COMES DEFENDANT HARRIS COUNTY, TEXAS, and files this Response in Opposition to Intervenor Plaintiff Ana Garcia and Kevin Sanchez Trejo's Motion to Compel Discovery Responses.

### I.　　NATURE OF SANCHEZ TREJO'S CLAIM

1.　　Kevin Sanchez Trejo was a detainee in the Harris County Jail for several months. *See ECF #41 (Original Complaint); see also ECF #88 (Answer to Intervenor Complaint).*

2.　　Intervenor's complaint contends that Decedent was denied medical care. *See ECF #41 generally.* Jail records reflect that Decedent requested and received medical care. *See A. Sanchez Trejo / A. Jail Records / Medical Records at pp. 000063 to 000384.*

3.　　Pathological findings in the Autopsy records reflect acute toxicity due to the combined effects of fentanyl and heroin. *See A. Sanchez Trejo / B. Autopsy Records at pp. AR 000006.*

4.　　The investigative report by an outside law enforcement agency, here DPS, and other investigative records reflect that Sanchez Trejo obtained illicit contraband from another inmate. *See A. Sanchez Trejo / D.1 Texas Ranger Investigative Report at pp. TXR 000013-014.*

5.  This lawsuit on behalf of Decedent Sanchez Trejo originated as a separate, stand-alone lawsuit. *See case styled and numbered Ana Garcia, v Harris County, Cause No. 4: 23-cv-04366 (S.D. Tex. Houston Div.).* The Court later allowed this case to be consolidated into the instant case. *See ECF #40 and #41 (Garcia Complaint).* DEFENDANT has filed an Answer to the Complaint. *See ECF# 88 (Answer to Intervenor Garcia Complaint).*

## II. SUMMARY OF THE RESPONSE

6.  DEFENDANT denies that Court intervention is necessary to compel production of relevant documents and things in this case. DEFENDANT admits that the counsel for Garcia and counsel for Harris County have a fundamental disagreement about the scope of relevant discovery materials, particularly with regard to the "conditions of confinement" claim. If Court intervention is needed, it would be with respect to clarification from the Court about what is the proper scope of discovery in this amalgamated case on the conditions of confinement claim.

7.  DEFENDANT admits to a delay in providing timely production of content over which there is no dispute about its discoverability. This delay is attributable to two primary causes, one being the sheer number of Plaintiffs in the case, consisting of 27 plaintiffs and 2 intervenors, 13 of those being custodial death cases. *See ECF #20 (Plaintiffs' First Amended Complaint; see also Intervenor Complaints ECF#41 (Ana Garcia) and ECF #42 (Chandra Jenkins).*

8.  Moreover, Plaintiffs First Amended Complaint lists a total of 36 comparators, as to which discovery has also been requested and is being provided. *See ECF #20 at pp. 94 to 148.*

9.  Consequently, given the vast amount of material pertaining to each plaintiff and each intervenor, documents and records pertaining to each plaintiff and intervenors have been made digitally produced on a rolling basis via a secure Sharefile portal maintained by defenses counsel. In Index to Document Production is attached as Exhibit A to this response.

10. The other reason for delay in production is more personal to me as undersigned defense counsel, and that is an unexpected and unplanned medical condition that rendered me unable to work for the entire month of December 2024 and well into January 2025. Undersigned counsel has only this month, in February been able to fully return to work. And even though work was delegated as much as possible, the seriousness of undersigned counsel's medical condition resulted in the office being short-staffed longer than expected.

11. As more fully elaborated below, since the filing of this Motion to Compel by Garcia, DEFENDANT has made significant progress in catching up with document production for all

plaintiffs – not just Garcia – as can be demonstrated below. Moreover, DEFENDANT has revisited prior objections and responses and has served amended objections and responses to Garcia's written discovery in an effort to at least narrow the issues in controversy.

### III. COUNTER-EXHIBITS

12. DEFENDANT hereby tenders in response to Intervenor's Motion the following Exhibits:

   A. INDEX TO DOCUMENTS PRODUCED TO PLAINTIFFS & INTERVENORS[1]

   B. DEFENDANT HARRIS COUNTY'S RESPONSES TO INTERVENOR GARCIA TREJO'S FIRST SET OF INTERROGATORIES;

   C. DEFENDANT HARRIS COUNTY'S RESPONSES TO INTERVENOR GARCIA TREJO'S SECOND SET OF INTERROGATORIES;

   D. DEFENDANT HARRIS COUNTY'S RESPONSES TO INTERVENOR GARCIA TREJO'S THIRD SET OF INTERROGATORIES.

   E. DEFENDANT HARRIS COUNTY'S FIRST AMENDED OBJECTIONS AND RESPONSES TO INTERVENOR GARCIA TREJO'S FIRST REQUEST FOR PRODUCTION;

   F. DEFENDANT HARRIS COUNTY'S FIRST AMENDED OBJECTIONS AND RESPONSES TO INTERVENOR GARCIA TREJO'S SECOND REQUEST FOR PRODUCTION;

   G. DEFENDANT HARRIS COUNTY'S FIRST AMENDED RESPONSES TO INTERVENOR GARCIA TREJO'S THIRD REQUEST FOR PRODUCTION;

   H. DEFENDANT HARRIS COUNTY'S FIRST AMENDED RESPONSES TO INTERVENOR GARCIA TREJO'S FOURTH REQUEST FOR PRODUCTION;

   I. NOTICE OF DEPOSITION OF JAIL GUARD DEUNDRA D. LIGHTEN;

   J. INCIDENT REPORT BY DEUNDRA D. LIGHTEN (TXR 000494).

### IV. DOCUMENT PRODUCTION METHODOLOGY

13. By way of context, the document production methodology in this case is necessarily driven by considerations pertaining to not only the number of individually named plaintiffs and intervenors in this case, but by the number of comparators pleaded in the live complaint, that is, Plaintiffs First Amended Complaint. *See ECF #20; see also Original Answer to First Amended Complaint (ECF #67).*

---

[1] The Court may directly view online the documents and digital content that has been produced to all Counsel of Record in this case via the Sharefile link embedded in Exhibit A. Access is available to the Court through the Court's Case Manager, Arturo Rivera, who is listed as an authorized use for access to these materials for the convenience of the Court. To gain initial access, Mr. Rivera must click on the link, then select "forgot password", then input a private password, and this will provide access to this folder going forward

14. As reflected in the Index to Document Production, the initial focus of production has been on the records pertaining to the individually named plaintiffs, as well as the pleaded comparators. *See Exhibit A*. The relevant material has to be assembled, digitized, curated, and bates-labeled. This is a large and ongoing task, which is organized according to the classification scheme laid out in the Index to Doc Production. It is logistically impossible to complete all relevant production at one time or even within a short time period. The Sheriff's Office legal staff, working closely with defense counsel has been steadily retrieving materials pertaining to each plaintiff, each intervenor, and to the comparators listed in the live complaint and forwarding the material to defense counsel for processing and production. The material is then made available for viewing and downloading to all counsel of record pursuant to a secure Sharefile link that provides access to the materials for authorized users.

## V. OVERVIEW OF STATUS OF WRITTEN DISCOVERY

### A. INTERROGATORIES

15. Intervenor Garcia has propounded three sets of Interrogatories, amounting to a total of eighteen (18) Interrogatories. Responses to the First, Second, and Third Set of Interrogatories are attached as Exhibit B, C, and D, respectively.

16. The Court will note that there are no objections to the Interrogatories. Hence, unless Garcia is going to complain about the adequacy of the substantive responses, there should be no discovery issues to resolve as to the Interrogatories.

17. As mentioned above, there was a delay in securing responses to these Interrogatories. The delay was primarily attributable to undersigned counsel's unexpected medical crisis in December 2024 and January 2025. This in turn delayed the task of identifying appropriate HCSO representatives at the command staff level who could speak for the organization. That task was resolved upon undersigned counsel's return to work, as the attached responses to the Interrogatories reflect.

### B. REQUESTS FOR PRODUCTION

18. Intervenor Garcia has propounded four sets of RFPs (Requests for Production), consisting of 53 RFPs. These have been propounded in waves beginning with the First Set propounded on 9/23/2024.

19. DEFENDANT filed initial Objections and Responses at a point in time when the amount of available discovery was not as developed as it is today. As explained in the opening paragraphs,

it has not been possible, given the number of plaintiffs in the case, to provide a single comprehensive production of discovery. As a matter of logistics and availability of resources, it has been necessary to intake, process, bates-label, and upload discovery materials as they the content is retrieved by HCSO legal and is then digitally transferred to defense counsel.

20. In view of the ongoing delivery and production of documents and digital content, the available content is much greater today than it was even one month ago. For this reason, DEFENDANT revisited the four sets of RFPs and provided a First Amended Set of objections and responses. A copy of this material is attached in support of this response. See Exhibits E, F, G and H, respectively (First Amended Objections and Responses to Garcia's RFPs).

21. Attached Exhibit A – the Index to Documents Produced by Harris County provides a summary of the documents that have been produced and are in the process of being produced.

22. DEFENDANT has not objected to production of any documents that pertain Decedent Sanchez Trejo. As the records reflected at III. Intervenor Jail Records / A. Kevin Alexander Sanchez Trejo [DIC] reflect, the following categories of documents have been produced to Counsel of Record:

> 1. Jail Records; 2. Autopsy Records; 3. Operational Records; 4. Docs Produced to Texas Rangers or to HPD; 5. Phone Records.

23. Within each of the foregoing categories of documents are sub-sets of documents contained in a binder that is bates-labeled and holds sub-categories of documents pertaining to the individual Plaintiff. So, for example, the Jail Records binder contains Intake Records; Medical Records, Grievances; Incident Reports; and miscellaneous notes. Phone recordings and visitation logs are also included.

24. In the case of custodial death cases [DIC cases], the Inmate folder contains autopsy reports, investigative materials, and other forensic content.

25. In the case of DIC cases, a separate folder contains cases criminal investigative packets referred to an outside law enforcement agency – usually the Texas Rangers at DPS or to the Houston Police Department (HPD). To the extent that final investigative reports are provided to the Jail, this material is also made available via production.

26. In addition, the same categories of records have been produced, or are in the process of being produced with respect to each of the other named plaintiffs and intervenor named as parties in this lawsuit. *See Exhibit A – Index to Document Production, generally.*

27.     The discovery dispute presented here is going to turn on the question of what is the proper scope of discovery in the context of the pleadings in the case and the factual matters in controversy.

28.     The discovery requests that DEFENDANT has objected to are those that go well beyond the factual matters pertaining to Decedent Sanchez Trejo. For instance:

>   RFP NO. 2:     Please produce a complete and unaltered copy of <u>each and every inmate file for inmates that stayed at the Jail from November 2021 to March 2022.</u>
>
>   RFP NO. 3:     Please produce any and <u>all records related to the medical kiosks in the Jail from November 2021 to March 2022</u>
>
>   RFP NO. 7:     Please produce <u>any and all requests for medical attention that any inmate submitted into your medical kiosk from November 2021 to March 2022 and records related to the actual dates upon which they were seen.</u>
>
>   RFP NO. 14:    Please produce the complete and unaltered copy of <u>the employment file of each of your employees that worked at the jail on February 12, 2022</u>. This request specifically includes both guards, medical professionals, and supervisors.
>
>   RFP NO. 17:    Please produce the complete <u>inmate file for each inmate that stayed in the same cell or floor as the Decedent.</u>
>
>   RFP NO. 25:    Please <u>produce the entire employment file for each individual that worked at your jail from November 2021 to March 2022.</u>
>
>   RFP NO. 29:    Please produce <u>any and all training records for each of your employees that worked at the Jail from November 2021 to March 2022</u>.
>
>   RFP NO. 30:    Please produce <u>any and all complaints made against of your employees</u> that worked at the Jail from November 2021 to March 2022
>
>   RFP NO 31:     Please produce any and all documents that show <u>any complaints about inmate care made to you</u>. This request especially includes any inmate care concerns submitted on your website.
>
>   (emphasis added).

29.     With respect to all of the foregoing RFPs, DEFENDANT objected to the request an overbroad and therefore as seeking documents that were neither relevant to the claims and defenses pertaining to the claims by Sanchez Trejo nor proportional to the needs of the case.

30. With respect to most, DEFENDANT nevertheless produced documents that fell within the zone of relevancy and proportionality in that the RFP, despite throwing an unreasonable and unreasonably broad net, necessarily included content that pertained to the claim of Decedent Sanchez Trejo.

31. For instance, with respect to RFP No. 14, has agreed to produce the HR Files and the TCOLE Training files of all the jail guards who were on duty on the night shift of 2/11/2022 and the day shift of 2/12/2022 and who responded to the discovery of Inmate Sanchez Trejo in an unresponsive state. *See Exhibit E – First Amended Response to RFP NO. 14; See Amended Response to RFP No. 29.*

### VI. PRODUCTION OF REFERENCED RFPs IS UNREASONABLE AND UNDULY BURDENSOME

32. Other than this effort to accommodate an RFP that is otherwise too broad, and therefore unreasonable on its face as stated, DEFENDANT is not reasonably or readily accessible because of undue burden and cost of recovery and production. *See Rule 11 Certification by Managing Partner Ricardo J. Navarro appended to this Response.*

33. The blanket RFPs requesting production of all employee files and all inmate files over a over a five-month period that occurred three years ago would be an expensive and burdensome task. The Jail Facility has at any given time approximately between 8,000 to 9,000 inmates. Further, the population is not static – inmates are being booked, and inmates are being released on a daily basis.

34. Similarly, the production of HR Files for all jail guards who worked at the jail for a period of five months presents a similarly burdensome task, not only for jail legal staff, but for defense counsel as well. The jail is operated on a 24 / 7 basis; and the number of employees that it takes to operate the facility runs at approximately 1800 employees. To have to produce the HR and TCOLE training records of every jail guard who worked at the facility in a five month period would also present a burdensome task, and disproportional to the needs of the Intervenor, as more fully explained below.

35. Consequently, to identify and produce all of the inmate jail records per the time period in question would present an unreasonably burdensome task that would fall initially on the paralegal staff at the Detention Command, but also on defense counsel. The County would bear large costs for production of data that has no direct connection to the claims of Sanchez Trejo. Undersigned

counsel reasonably believes that the relevancy of any such data would be marginal at best and not proportional to the needs of the case. *See Rule 11 Certification by Managing Partner Ricardo J. Navarro appended to this Response.*

36. For this reason, as a component of this Response to Intervenor's Motion to Compel, DEFENDANT hereby files its own Motion under FRCP Rule 26(b)(C)(iii) requesting that the Court clarify the line of relevancy in this discovery dispute.

### DEFENDANT'S RULE 26(b)(C)(iii) MOTION

**A. Defendant Harris County Hereby Invokes the Court's Authority Under Rule 26(b)(C)(iii) of the FRCP Requesting that the Court Find that Discovery Sought Under in the Foregoing RFP' Is Outside the Scope Permitted by Rule 26(b)(1).[2]**

37. DEFENDANT HARRIS COUNTY, as a component of its Response, hereby invokes the Court's authority under Rule 26(b)(C)(iii) requesting that the Court enter an Order establishing that the discovery sought by Intervenor herein is outside the scope of discovery permitted by Rule 26(b)(1).

38. DEFENDANT would point out that Rule 26(b)(1), which provides "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable".

39. Of necessity, the scope of relevant discovery is further tethered to the nature of the claims and causes of action urged by the plaintiff in the live complaint. Here, Inmate Sanchez Trejo was a pretrial detainee who died while in custodial status. The claims are pursuant to Section 1983.

40. Constitutional challenges by pretrial detainees may be brought under two theories of liability under Section 1983: either an attack on a "condition of confinement" or alternatively, as an "episodic act or omission.". *See Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996) (en banc); *see also Scott v Moore,* 114 F.3d 51 (1997)(en banc).

---

[2] References to FRCP 26 are taken from the Legal Information Institute website (Cornell Law School).

41. This claim, otherwise referred to as an "episodic acts or omissions claim". Episodic acts claims are typically governed by a standard of "deliberate indifference to a serious medical need." *See Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 402-404 (1997). In the Fifth Circuit, deliberate indifference cannot be inferred from a negligent or even a grossly negligent response to a substantial risk of harm. *Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996) (en banc).

42. On the other hand, a "condition of conferment" claim is a constitutional attack on general conditions, practices, rules, or restrictions of pretrial confinement." *Scott v Moore, 114 F.3d at 53*. Under a conditions of confinement claim, a constitutional violation exists only if the court finds that the condition of confinement is not reasonably related to a legitimate non-punitive governmental objective. *114 F.3d at 53.* The "reasonable relation test" as it relates to conditions of confinement, has its genesis in *Bell v Wolfish, 441 U.S. 520 (1979); see also 114 F3d at 53 n. 2 (citing conditions of confinement cases).*

43. However, where the complained of harm is a particular act or omission of one or more officials, the action is more properly characterized as an claim based on an episodic act or omission and is not amenable to review under *Bell v Wolfish. See Scott, 114 F.3d at 53.*

44. In an episodic actor or omission case, an actor is interposed between the detainee and the local government entity such that the detainee (here Decedent0 complains first of a particular act of, or omission by, and actor and then points derivatively to a policy, custom or rule (or lack thereof) that permitted the caused the act or omissions. *Scott, 114 F.3d at 53-54.*

45. In *Scott*, which involved a pretrial detainee who alleged sexual assault by a correctional officer, attempted to pursue conditions claim based on inadequate staffing. The Fifth Circuit rejected this attempt, noting that the inadequate staffing claim was nevertheless preceded by the alleged specific action of an individual correctional officer. *Scott, 114 F.3d at 53-54.*

46. A very analogous situation is involved here, albeit in a discovery context. Sanchez Trejo contends that one or more correctional officers failed miserably at their job in various respect: 1) failure to supervise and monitor Sanchez Trejo; 2) failure to provide Sanchez Trejo with access to medical care; 3) failure to prevent Sanchez Trejo from gaining possession of illicit drugs. *See ECF #41 – Intervenor's Complaint.*

47. Yet, it is abundantly clear from the Interrogatories propounded to DEFENDANT that Decedent's claim depends on claims that one or more correctional officers failed to perform the duties of their positions. *See Exhibits B, C, and D (Interrogatory Responses).*

48. Moreover, next month, Intervenor has asked to depose one of the guards on duty on the day that Sanchez Trejo expired. *See Exhibit I – Notice of Deposition of Jail Guard Deundra Lighten; see also Exhibit J – Incident Report of Deundra Lighten.*

49. Consequently, circling back to the discovery dispute, DEFENDANT requests that the Court find that broad based discovery requests noted above, specifically RFP Nos. 2, 3, 7, 14, 17, 25, 29, 30, and 31 be denied as outside the scope of relevant discovery.

50. Further, DEFENDANT requests that a similar finding be made with respect to any other document production request that does not directly pertain to Intervenor Sanchez Trejo.

51. Finally, DEFENDANT requests that under the authority of *Scott v Moore, 114 F.3d 51 (1997)(en banc),* that the Court enter a finding that the only appropriate Section 1983 cause of action as it pertains to Decedent Sanchez Trejo is an episodic act or omission claim, not a conditions of confinement claim.

## CONCLUSION & PRAYER

Therefore, for the foregoing reasons, DEFENDANT requests and prays that the Court enter a finding that the document production requests still in controversy are outside the scope of permissible discovery, given the nature of the claims and causes of action.

DEFENDANT further requests that the Court designate under the authority of *Scott v Moore, 114 F.3d 51 (1997)(en banc),* the claims by and on behalf of Intervenor Sanchez Trejo to be, as a matter of law, episodic acts claims, and not conditions of confinement claims. DEFENDANT request such further and additional relief to which it may be entitled.

SIGNED on the 18th day of FEBRUARY 2025.

Respectfully submitted,

**DENTON NAVARRO RODRIGUEZ**
**BERNAL SANTEE & ZECH, P.C.**
549 N. Egret Bay Blvd., Suite 200
League City, Texas 77573
Telephone: (832) 632-2102
Facsimile: (832) 632-2132

By: *Ricardo J. Navarro*
RICARDO J. NAVARRO
State Bar No. 14829100
So. Dist. ID No. 5953

rjnavarro@rampagelaw.com

KELLY R. ALBIN  
State Bar No. 24086079  
So. Dist. ID No. 3792304  
kralbin@rampagelaw.com

**ATTORNEYS FOR DEFENDANT**  
**HARRIS COUNTY, TEXAS**

## RULE 11 CERTIFICATION

I, Ricardo J. Navarro, as an attorney of record in this case, and as an Officer of the Court, hereby certify that the factual averments contained in this response pertaining to my unanticipated medical leave in December 2024 and January 2025 are within my personal knowledge and are true and correct.

I further certify, as an Officer of the Court, that I have been primarily responsible for managing the volume of document production in this case. As such, I have had a regular and close working relationship with Detention Command Staff as well as with Paralegal Staff in the Legal Department. I am responsible for managing the discovery process within my law firm. Factual averments contained in paragraphs 32 – 35 above accurately represent both the burden and costs of the County having to produce the large volume of materials referenced in the aforementioned RFPs.

*Ricardo J. Navarro*  
_____  
Ricardo J. Navarro  
State Bar No. 14829100  
So. Dist. ID No. 5953

# CERTIFICATE OF SERVICE

  I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process referenced in the Federal Rules of Civil Procedure on all attorneys of record in this case on the 18th day of FEBRUARY 2025, to wit:

| | |
|---|---|
| Benjamin L. Crump | Email: court@bencrump.com |
| Paul Ashley Grinke | Email: paul@bencrump.com |
| Aaron Dekle | Email: aaron@bencrump.com |
| ATTORNEYS FOR PLAINTIFFS | |

Carl Lenford Evans, Jr.    Email: cevans@mccathernlaw.com
Noah L. Cathern
Jordan A. Carter
Alizabeth A. Guillot
McCathern Law Firm
ATTORNEYS FOR PLAINTIFFS

| | |
|---|---|
| Mohammed Obaid Shariff | Email: mshariff@shariflawfirm.com; |
| Kevin M. Acevedo-Carlson | Email: kacevedo@shariflawfirm.com |
| Russell Ross | Email: rross@shariflawfirm.com |
| Shariff Law Firm | Email: eservice@sharifflwfirm.com |

SHARIFF LAW FIRM
ATTORNEY FOR INTERVENOR ANA GARCIA
 & KEVIN SANCHEZ TREJO

| | |
|---|---|
| Taylor McCray Hunter | Email: taylor@thehunterlaw.com |
| Kevin Green | Email: kevin@consumerjusticecenter.com |
| Thomas Lyons Jr. | Email: tommy@consumerjusticecenter.com |
| Andi Weber | Email: andi@consumerjusticecenter.com |

ATTORNEY FOR INTERVENOR CHANDRA JENKINS
 & DEQON BUFORD

*Ricardo J. Navarro*
_____
RICARDO J. NAVARRO
KELLY R. ALBIN