```
 1              IN THE UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF TEXAS
 2                     HOUSTON DIVISION
    _____
 3  OCTEVIA WAGNER, et al.,          )
                                     )
 4          Plaintiffs,              ) CIVIL ACTION NO.
                                     ) 4:23-cv-02886
 5  VS.                              )
                                     )
 6  HARRIS COUNTY, TEXAS,            )
                                     )
 7          Defendant.               )
                                     )
 8  VS.                              )
                                     )
 9  ANA GARCIA and CHANDRA JENKINS,  )
                                     )
10          Plaintiff-Intervenors,   ) 2:00 P.M.
    _____)
11
12                    MOTION HEARING
           BEFORE THE HONORABLE KEITH P. ELLISON
13              UNITED STATES DISTRICT JUDGE
                     APRIL 9, 2025
14
15  APPEARANCES:
16  FOR THE PLAINTIFFS:
    PAUL A. GRINKE.
17  Ben Crump Law, PLLC
    5 Cowboys Way
18  Suite 300
    Frisco, Texas 75034
19  (972)942-0494
20  FOR THE PLAINTIFF-INTERVENOR ANA GARCIA:
    MOHAMMED O. SHARIFF
21  Shariff Law Firm, PLLC
    4734 W Alabama Street
22  Suite 201
    Houston, Texas 77027
23  (713)448-0505
24
25
```

1    Appearances Continued:

2    **FOR THE DEFENDANT**
     RICARDO J. NAVARRO
3    Denton Navarro Rodriguez Bernal Santee & Zech, PC
     549 N. Egret Bay Boulevard
4    Suite 200
     League City, Texas 77573
5    (956)341-6552

6    **COURT REPORTER:**
     MONICA WALKER-BAILEY, MS, RPR, CSR
7    Official Court Reporter
     515 Rusk Street
8    Suite 8004
     Houston, Texas 77002
9    (713)250-5087

10

11

12

13    Proceedings recorded by mechanical stenography, transcript
      produced by computer-aided transcription.

14

15

16

17

18

19

20

21

22

23

24

25

**PROCEEDINGS**

1          **THE COURT:**  Good afternoon, and welcome to all.

2          **MR. GRINKE:**  Good afternoon.

3          **THE COURT:**  We'll take appearances first on the phone

4     and then in the courtroom.

5          **MR. SHARIFF:**  Good afternoon, Your Honor.  This is

6     attorney Mohammed Shariff on behalf of the Plaintiff Intervenor

7     Ana Garcia.

8          **THE COURT:**  Thank you very much.

9          Why don't you come up to the microphone or to the

10    rostrum, that way people on the phone can hear you better.

11         **MR. GRINKE:**  Paul Grinke for Octevia Wagner and other

12    original plaintiffs.

13         **THE COURT:**  Welcome.

14         **MR. NAVARRO:**  Good afternoon, Your Honor.  Ricardo J.

15    Navarro for the Defendant Harris County, Texas.

16         **THE COURT:**  Thank you.  Welcome to you too.

17         **MR. NAVARRO:**  And this is my paralegal Kristin Getty.

18         **THE COURT:**  Good afternoon to you and welcome.

19         **MS. GETTY:**  Good afternoon, sir.

20         **THE COURT:**  Okay.  We're here on the motion to compel.

21    You can assume I've read the papers.

22         Does Ms. Garcia wish to add anything other than what's

23    in the papers?

24         **MR. GRINKE:**  He's on the phone.

25         **MR. SHARIFF:**  So, Your Honor, I would like to, on

PROCEEDINGS

1  behalf of the Plaintiff, maybe provide or outline what's in the

2  papers.  I know you've already reviewed them, but just highlight

3  them.

4          **THE COURT:**  Wait.  Wait.  Whoa, whoa, whoa, you're

5  going too fast.  I'm not getting a good connection.  Try one

6  more time, please.

7          **MR. SHARIFF:**  Yes, Your Honor.  So on behalf of the

8  Plaintiff, I would like to sort of highlight some of the key

9  points in the pleadings and maybe add some more context, if the

10  Court needs it.

11          **THE COURT:**  That's fine.

12          **MR. SHARIFF:**  Thank you, Your Honor.  May I proceed?

13          **THE COURT:**  You may proceed.

14          **MR. SHARIFF:**  Thank you.  So, Your Honor, I'm here

15  today on behalf of the Plaintiff-Intervenor Ana Garcia.  She's

16  the mother of Kevin Sanchez-Trejo, a pretrial detainee who died

17  in the Harris County jail in February of 2022.  She asserts 1983

18  claims, including conditions of confinement, pattern or practice

19  Monell claims, failure to train or supervise, and deliberate

20  indifference to serious medical needs.

21          We are here today on the motion to compel in regards

22  to interrogatories and request for production.  The Plaintiff

23  showed the interrogatories in dispute are two sets of

24  interrogatories and four sets of RFPs.  And after prolonged

25  delays and evasive objections, Plaintiff was forced to file this

PROCEEDINGS

1  motion to compel.  The Defendants, they filed their -- the first

2  time they ever responded to the interrogatories was after we

3  filed this motion to compel; didn't oppose the motion.  But even

4  in their responses, which they've entered interrogatories, which

5  they served after this motion was filed, was still insufficient,

6  incomplete, and did not address the core issues in their

7  responses.

8          The main legal framework of the arguments in our

9  pleadings is that a court -- under Texas Rule of Civil Procedure

10  37(a), a Court may compel a party where answers are incomplete

11  or evasive.  This pertains to both the incomplete interrogatory

12  responses as well as the request for productions.  Under Federal

13  Rules of Civil Procedure 33(b)(4), untimely objections are

14  waived unless excused.  And that pertains to both

15  interrogatories and request for productions.  Under Federal

16  Rules of Civil Procedure 34(b)(2)(c), a party must state whether

17  any responsive material that are being withheld.  This relates

18  to the deficient request for productions, in which they have

19  made general objections related to privilege, without disclosing

20  if anything is being withheld.  And under *Cole v. Collier*, and

21  it is well established by this Court itself and the precedent,

22  making objections are inherently improper.  And those are the

23  only objections that they have -- the Defendant has made through

24  the request for productions.  They made no objections to the

25  interrogatories.

PROCEEDINGS

1          **THE COURT:**  Thank you.

2          **MR. SHARIFF:**  The main issue in this case, or in

3  regards to the subject matter motion, is that the defense

4  mischaracterizes the scope of Plaintiff's claims.  The Defendant

5  argues that the Plaintiff's claims are limited to a narrow

6  episodic denial of medical care.  To the contrary, the Court has

7  already ruled that the Plaintiff's live claims include

8  conditions of confinement, pattern or practice Monell claims,

9  failure to train and failure to supervise.  And so this is

10 not -- it is not limited to just one episode or one instance of

11 denial of medical care.  And as a result, discovery must extend

12 to pattern or practice evidence, such as staffing, prior

13 incidents, training failures, system logs.  And our requests are

14 limited -- strictly limited to a time frame that the decedent

15 was actually incarcerated there, which is only from

16 November 2021 to March 2022, when he died, which is four or five

17 months.  And so we're not asking for records for years or two

18 years, three years, five years, we're asking for records

19 pertaining to the time frame that the decedent was incarcerated

20 in their jail.

21          To go over more specifically the interrogatories that

22 are deficient, interrogatories and responses that are deficient.

23 Interrogatory No. 1 asks for, you know, the Defendant to detail

24 and describe any and all medical care, including diagnosis or

25 emergent treatment provided to the decedent on or around

**PROCEEDINGS**

1   February 1st, 2022, at 2:23 p.m.  And this is where he had

2   reported blood urine and painful urination.

3        **THE COURT:**  I didn't hear the last part.

4        **MR. SHARIFF:**  So this relates to the blood urine and

5   painful urination that is not reflected in the medical records,

6   and the names and contact information of the medical

7   professionals who provided it.  Their response basically says

8   that the Harris County Sheriff's Detention Command does not have

9   the medical background or training to answer this request.  This

10  lawsuit isn't against Harris County Sheriff's Detention Command;

11  it's against Harris County in its entirety.  So just because

12  someone in that department doesn't have the answers -- doesn't

13  have the information, that doesn't mean Harris County as a

14  whole, no one within Harris County has that information or

15  knowledge or training to be able to answer or respond to that

16  interrogatory entirely.  And so that's our issue with their

17  response to Interrogatory No. 1.

18       And it's the same thing for Interrogatory No. 2, where

19  we ask for them to explain in their own words why the decedent

20  was released from the clinic on or around February 1st, 2022, at

21  8:40 p.m., even though he was, you know, urinating blood and

22  complained of painful urination.  Again, they responded by

23  saying no one in the Sheriff's Detention Command has that

24  information or the training for it.  That doesn't mean no one in

25  Harris County as a whole has that information.  And so we are

PROCEEDINGS

1    asking the Court to enter an order compelling the Defendant to

2    respond to these, Interrogatory No. 1 and 2, with information

3    that anyone within the County has available.

4              As far as Interrogatory No. 4 and Interrogatory No. 8,

5    which are similar in nature as far as the issues, we ask them to

6    please detail and describe what the security guards who went to

7    go check on the decedent at around 8:00 on February 12th, 2022,

8    Bates No. 14, saw and provide their names and contact

9    information.  The Defendant essentially tries to avoid answering

10   this response, the question, by saying that the reference to

11   Bates No. 14 appears to be incorrect; however, Bates No. 14 was

12   correct at the time we sent this interrogatory.  After we sent

13   this interrogatory, the Defendant sent -- produced other

14   documents, which had the same Bates number, but had other

15   reference letters to it, such as Bates No. 14-JR.  And what

16   they're trying to say is that the reference -- the Bates number

17   referenced in our question is incorrect when in reality it was

18   correct, especially at the time when that question was asked.

19   And so they're trying to create confusion by focusing on the

20   Bates number.  And even if the Bates number was correct, which

21   it was not, even if their Bates number was incorrect, which it

22   was not, the question is still very, point-blank, clear.  The

23   Bates number is only there to help them with reference purposes.

24   The question still says, describe what the security guards, who

25   went to go check on the decedent, at around 8 p.m., on February

**PROCEEDINGS**

1  2022, saw, and provide their names or contact information.  They

2  don't need any Bates number.  They don't need to look at any

3  documents to be able to answer that.  That's a very specific and

4  detailed question that they should be able to answer without --

5  even if the Bates number was incorrect.  And so we're asking the

6  Court to compel the Defendant to properly respond to

7  interrogatories 4 and 8 with a response to the actual question.

8  And it's the same issue with Interrogatory No. 8, where they say

9  maybe the -- where they essentially argue that the Bates number

10  is not correct.  One, it's not incorrect.  Two, the question is

11  still very clear-cut.  They could still answer it without the

12  Bates number on the document.

13         **THE COURT:**  Okay.  Why don't you try to wind up and

14  let me hear from the other side.  Why don't you try to wind it

15  up.

16         **MR. SHARIFF:**  Yes, Your Honor.  Okay.

17         **THE COURT:**  Go ahead.

18         **MR. SHARIFF:**  Yes, Your Honor.  So I'm going to

19  quickly go through this real quick.  Interrogatory No. 5, same

20  thing.  They're trying to -- they keep -- they say that the

21  Bates number was incorrect, which it was not incorrect.  And the

22  question is still very clear-cut.  And the Question No. 5 asks

23  for why did the guards wait until 8:00 on February 12th to check

24  on the decedent.  Their response says the guards did their --

25  completed their rounds.  When in reality the only document that

**PROCEEDINGS**

1  they referenced, when the guard said, that I failed to make

2  clear visual contact with the decedent.  So they didn't actually

3  check on him.  They just completed rounds, but they didn't

4  actually check on the decedent.  So they have an obligation to

5  correct their interrogatory response if they know it's

6  incorrect.  They know, based on their own guard's report, that

7  they didn't actually check on him when they did that round.  And

8  so we're asking the Court to have them correct their prior

9  conflicting interrogatory response.

10           Interrogatory No. 6, same thing.  They say that Bates

11  No. 14 is incorrect; it's not incorrect.  Even if it is

12  incorrect, there is sufficient specificity in the request itself

13  for them to respond to that interrogatory.  And then

14  Interrogatory No. 7, we ask for them to describe any and all

15  deficiencies that the Texas Commissioner on jail standards

16  communicated to them regarding the decedent's death, and they

17  simply respond by saying, the TCJS report, if any, speaks for

18  itself.  But we're not only asking for the reports, we're asking

19  for any communication.  That includes emails, letters, notices

20  that was provided to them.  The Defendant hasn't produced any of

21  it.

22           **THE COURT:**  Thank you very much.  Thank you.

23           Okay.  Let me hear from the County.

24           **MR. NAVARRO:**  Thank you, Your Honor.

25           **THE COURT:**  Yes, sir.

PROCEEDINGS

1              **MR. NAVARRO:**  I'm going to take these off --

2              **THE COURT:**  Okay.

3              **MR. NAVARRO:**  -- because they're kind of loud.  They

work but they're kind of loud.

5              Your Honor, this is -- Intervenor claim is one of like

29 Plaintiff claims involving pretrial detainees in the jail.

7              **THE COURT:**  Right.

8              **MR. NAVARRO:**  This is a custodial death involving

Kevin Sanchez-Trejo.  That death occurred sometime between

midnight on February 11th, and the early morning hours of

February 12th.  He was discovered in the admin segregation cell

by the incoming morning shift.  The shifts are 12-hour shifts.

There are two a day, starting and ending at 6:00 a.m. and 6:00

12 hours later.  So we know that he was alive almost up to

midnight because he had come out of the cell on like a leave

period, where they can circulate.  We know he was discovered to

be deceased in the morning hours by the incoming staff.  We

don't know exactly when he died.  So terms of this particular

inmate, the most serious incident pertaining to him is, of

course, his death in custody.

21              **THE COURT:**  Yeah.

22              **MR. NAVARRO:**  So when we are responding to the

interrogatory requests, and we tried to provide all information

that pertains to this particular inmate.  And I think we've done

that.  Because there are so many plaintiffs, we are getting

**PROCEEDINGS**

1  our -- we work with the legal department at the Sheriff's

2  Office, and we rely on paralegal staff there, and under the

3  leadership of their director. And we send them this request,

4  and we get back information. They upload it to a portal, and my

5  firm, we review it, process it, Bates stamp it, and produce it

6  through a portal. And that's what we've been doing with all of

7  the lawyers in this case. My Exhibit 1 to my response is

8  basically an index of what we're producing, and Kevin

9  Sanchez-Trejo is in there. And that's how we had been providing

10 them the information.

11         We had an attorney conference in this case on Friday

12 to go over these issues, not only with the regular plaintiffs,

13 but with Sanchez-Trejo as well as with the other Intervenor,

14 Dequon Buford's lawyer, and to go over discovery. And basically

15 counsel directed me -- what I did when I got the motion to

16 compel is I went back through all of the written discovery, and

17 revisited all of it, and filed, served with him, a first amended

18 set of discovery. I withdrew a lot the objections. As the

19 Court, I think, knows, I had a very unexpected pretty serious

20 allergic reaction to some medication in December.

21         **THE COURT:** Yeah, I'm sorry.

22         **MR. NAVARRO:** That put me out for quite a while, but,

23 you know, we tried to keep up as best we could. I didn't, you

24 know, go around publishing that. But when I got this, I went

25 back through. I met with my spokespersons at the SO and went

**PROCEEDINGS**

1   through the interrogatory, and we filed amended responses.  Now,

2   let me address one issue with the Court right away, which is, it

3   is correct that we have medical records in our possession,

4   meaning at the Sheriff's Office, but the medical care is handled

5   by a separate entity called Harris Health.  I have no access to

6   Harris Health.  I'm retained as Special Counsel by the County

7   Attorney's Office to represent the Sheriff's Office in this jail

8   litigation.  So when I was talking to my spokes -- two

9   upper-management Majors, about responding to that question, they

10  said, "We can produce the medical records, but anything having

11  to do with interpreting the records, explaining the records,

12  certainly providing any kind of medical analysis, that's out of

13  our scope.  We don't have the authority to respond to that."  I

14  checked with my contacts at the CAO; they said that's correct.

15  That's a separate entity; it's a separate board.  They have

16  their own lawyers.  You don't have authority to go over there

17  and neither does the HSO.

18          **THE COURT:**  Did you communicate that to counsel for

19  the Intervenors?

20          **MR. NAVARRO:**  I have conferred with my supervisors on

21  this and basically, you know, they're saying that's the

22  position.  They want information, medical information in terms

23  of the staff -- the identity of the nurses and the staff that

24  saw him is in the records.

25          **THE COURT:**  My question is:  Did you communicate that

**PROCEEDINGS**

1  to your adversary, the intervenors' counsel?

2      **MR. NAVARRO:**  Yes, it's in the interrogatory response.

3  All the lawyers -- I talked to all the other lawyers and I

4  explained this situation to them.  I said, "I don't have

5  authority to get materials from Harris Health."

6      **THE COURT:**  How do you suggest they proceed then?

7      **MR. NAVARRO:**  I'm sorry.

8      **THE COURT:**  How do you suggest they proceed if they

9  want this information?

10     **MR. NAVARRO:**  It's just like any other third party.

11 And, in fact, Buford's lawyers have just issued a DWQ for the

12 medical information, and I'm assuming they're going to pursue

13 third-party discovery against that entity.  And so -- I mean,

14 that's basically -- my hands are somewhat tied here because, I

15 mean, my retention is for the Sheriff's Office and the Sheriff's

16 Office is telling me we can produce medical records, but we

17 cannot interpret them for you, okay.  So that's the response.

18 And -- I mean, that's what I'm dealing with.  That's the

19 circumstance that I have.  So, yes, that is correct.  I have

20 produced, through all counsel, a copy of the Interlocal

21 Agreement between the Sheriff's Office and the Harris Health

22 that provides certain medical care, medical services, for the

23 jail.  There is an agreement that became effective originally in

24 I think in 2022 that basically segregated -- I don't know how it

25 was being done before, but basically outlines what medical care

PROCEEDINGS

1  services will be provided to the jail through Harris Health.

2  And that document has been uploaded to the portal.  It was just

3  recently renewed.  And they all have it.  So that's the dilemma

4  I have as far as the medical.  They're asking for medical

5  records.

6        Now, as far as the specific complaint that -- so they

7  have the medical records, so I'm getting follow-up

8  interrogatories saying, "Well, what does this mean in here?  And

9  what does this mean in here?"  And we're basically -- No. 1, I

10  could not find the reference, okay, never mind the page number.

11  I went to the Bates number that they referenced.  It doesn't

12  contain the phrase that they're saying.  I had my paralegal

13  staff OCR the document.  All these documents are OCR.  They can

14  be searched.  And I said, "See if you could find that clause.  I

15  don't care what page it's on, just see if you could find it."

16  We couldn't get a hit on the clause.  So I don't know what

17  they're talking about there.  And I don't know where they got

18  it. But regardless, even if we had found it, I don't have a

19  spokesperson within the jail facility that can interpret it for

20  them.  So, I mean, I have the problem at two levels, okay.  So I

21  mean, that's the dilemma I have there.

22        When we conferred on Friday, I mean I basically asked

23  the attorney who seems to be handling the discovery, Mr. --

24  attorney Russell Ross, you know, tell me -- I mean, tell me what

25  I haven't cured yet, you know?  I filed amended responses to

**PROCEEDINGS**

1  your motion.  I was hoping that we had cured most of this.  And

2  he referred me to his reply to my response.  And so I, you know,

3  went to the reply and I see here that in the reply,

4  Interrogatory, you know, 1, 2, 4, and 8, and 5.  And so No. 1

5  has to do with this -- that Harris Health is a separate entity.

6  And I don't have anybody in the SO that can speak to that.

7        **THE COURT:**  You explained that.

8        **MR. NAVARRO:**  So then Interrogatory 8 has to do with

9  security cameras.  I mean as best I know, we've produced all of

10  this.  Your Honor, I -- because this is a custodial death, the

11  jail was required to send a criminal investigative packet to an

12  outside law agency.  And there's a packet that they have.  In

13  this case it went -- it goes to either Houston PD or it goes to

14  the Texas Rangers.  This one went to the Rangers.  I think they

15  tried to subpoena the material from the Rangers.  We did object

16  to that because we wanted -- we didn't know what the Rangers

17  had; however, I got permission to make an interlocal request to

18  the Rangers.  And we made an interlocal request for their

19  criminal investigative file.  It turns out that that file was

20  now closed.  The DA had rendered a non-prosecute ruling, and had

21  closed the file.  And as to that file, they produced what we

22  had, which contained a lot of video.  I think it duplicated what

23  we had already produced, but possibly not.  It's quite a bit,

24  and it's very thorough.  And we produced that.

25        **THE COURT:**  Your answer on that, you think you

PROCEEDINGS

1    produced everything?

2            MR. NAVARRO:   We produced everything we have.  I don't

3    know what else there is.  We do have an issue that we're trying

4    to research and work out now, not in this case, but with the

5    others, where we're finding that some videos have -- there's two

6    issues with the videos.  We're finding some videos have audio

7    and some don't, and we can't figure out why.  And we're working

8    with Mr. Grinke's firm about that.  But then, you know, the

9    other issue is they're also asking for video that's in Harris

10   Health.  And, again, we don't have access -- I don't know if

11   there's video in Harris Health.  Any content that is in Harris

12   Health, there are highlighted HIPAA issues surrounding that.  I

13   mean, I don't know have -- I don't know if they do video of

14   those consults.  I don't know -- we know who the nursing and the

15   medical staff is, but we don't have access to them.  We don't

16   have access to their schedules.  But -- so, you know, again,

17   that would have to be discovered as through -- from Harris

18   Health as a third party.  And so that's the issue surrounding

19   the videos.

20            And then I would also point out to the Court that, you

21   know, because they got the packet of materials that went to the

22   Rangers, they have all of the reports of the guards, the jail

23   guards, that were working on that night.  And we were asked to

24   produce all of their HR files, which we did.  We also were asked

25   to produce their training files, which we did.  And they have

**PROCEEDINGS**

1   gone -- one guard who worked that night, Guard Lighten, was

2   disciplined, and he had a disciplinary suspension, and he has

3   been produced and he has been deposed.  So, I mean, now I'm

4   hearing, well, we need materials from all the other guards.  Now

5   they're saying that the original request was, we need the HR

6   files of all the guards from, you know, 2020 through 2024

7   throughout the whole facility.  I was like, I'm not going to do

8   that, okay.  You tell me any guards that are identified in these

9   reports that have to do with these people, I will give you their

10  HR file.  I will give you their -- whatever disciplinary file

11  they have.  I will give you their training file.  I mean, have

12  at it.  And we've produced quite a bit around that.  But I am

13  going to draw the line on producing material of guards that have

14  no connection to this incident or event.  I mean, this is a

15  facility with 9,000 inmates in it, okay.  And the staff is

16  several thousand.  So to request that -- now on Friday they did

17  say no, no, we don't really mean all the guards; we just mean

18  certain ones.  So we have an issue still about what is the scope

19  here.  I don't agree with their understanding of Monell.  I

20  think they have a misunderstanding about Monell.  I will tell

21  you right now that I don't think this is a conditions of

22  confinement issue in this case at all.  It's an episodic act.

23          **THE COURT:**  Haven't we already discussed that and

24  haven't I ruled against you on that?

25          **MR. NAVARRO:**  I'm sorry, your Honor.

### PROCEEDINGS

1          **THE COURT:**  Haven't we already discussed that and

2     haven't I ruled against you on that?

3          **MR. NAVARRO:**  I'm sorry, Judge, but I'm having trouble

4     hearing you.

5          **THE COURT:**  I asked, haven't we already discussed that

6     and haven't I ruled against the County on that?

7          **MR. NAVARRO:**  On the pleadings you have, yes, you

8     have, on the pleadings.  But what I'm saying is we're getting

9     now into the facts, okay.  We now have material that has been

10    produced.  We can now start to, in context of discovery, we can

11    start now to just talk about the facts of the case.  You know

12    for a long time I thought this was a medical care case.  It's

13    not a medical care case.  Mr. Sanchez-Trejo was in the facility.

14    His -- you know, he's a little high maintenance kind of guy,

15    which is why he ended up in admin sec, but they're not

16    complaining about that.  But, you know, he doesn't have any real

17    constitutional injuries prior to that.  He died in custody.

18    That raises a concern.  We know that the guard actually saw him

19    sitting on that toilet and thought he was fine, and it turned

20    out he had OD'd and was sitting there for a long time.  So does

21    that give you a 1983 claim?  I think that's what we're here for,

22    just to figure that out, okay.  But I'm telling you right now we

23    know the guard who was on duty.  We know the guard who was

24    making the rounds.  He's already said, you know, I -- he wasn't

25    ignored.  This is not a case of conscious and deliberate

**PROCEEDINGS**

1  indifference to the inmate.  This is a case where they saw him,

2  didn't realize that he -- they thought he was sitting on the

3  toilet.  And, of course, the toilet seat is kind of blocked for

4  privacy purposes, and they didn't realize it until the new shift

5  came in and found the man deceased.  I mean, that's what this

6  case is about.

7          **THE COURT:**  And you produced all those records?

8          **MR. NAVARRO:**  All those records are produced, Your

9  Honor.  And -- all those records are produced.

10          **THE COURT:**  I'm having a hard time understanding the

11  issues on which y'all are still in disagreement.

12          **MR. SHARIFF:**  So, Your Honor, may I provide some

13  context in response?

14          **THE COURT:**  Briefly, please.  Briefly.

15          **MR. SHARIFF:**  Yes.  So the issue is, you know, counsel

16  emphasized that we have provided everything, right, but then he

17  goes on to narrow his understanding of what everything is to the

18  specific death, right, not -- and, Your Honor, you just stated

19  you've already ruled against them on their Monell claim, you

20  know, arguments.  In order for us to be able to establish custom

21  practice, right, in order for us to be able to establish the

22  facts related to, you know, the conditions in the facility, we

23  have to be able to conduct discovery on things that go beyond

24  just the one event of the Plaintiff's death.

25          **THE COURT:**  Tell me where you disagree?  I'm still not

PROCEEDINGS

1   hearing that.

2         MR. SHARIFF:  So they disagree that we should be

3   entitled to conduct discovery on things relating to outside the

4   day that he died.  We are asking in order for us to establish a

5   custom of how things were operating in the jail, we're asking

6   for things -- for a time period that he was there, which is

7   about five months.

8         THE COURT:  Thank you.  Okay.  Let's go back.

9         MR. SHARIFF:  And so --

10        THE COURT:  Okay.  Thank you.  That's enough.  That's

11  enough.  Thank you.

12        MR. NAVARRO:  Your Honor, I would point out also,

13  Judge, that -- I mean, they're in a case with 27 other

14  plaintiffs.

15        THE COURT:  I understand that.

16        MR. NAVARRO:  13 of which are decedents.  So they had

17  the benefit of all that discovery.  All the discovery that the

18  Crump Law Firm has with their clients, this counsel has.  So --

19  and, again, if their understanding of Monell is, well, we just

20  need to find everybody else who was involved in a custodial

21  death, and then we just sort of pile that off, and that's how

22  you establish Monell.  They have to establish a constitutional

23  tort with this individual inmate on a specific incident that

24  arguably is a tort.  We get a jury trial on that question.

25  Certainly they get to depose everybody that worked that night.

**PROCEEDINGS**

 1  And they get to, you know, explore whether the performance

 2  issues from the guards that night were some part of a larger

 3  problem.  But they only deposed one person.  They've asked for

 4  all their files.  They have them.  And they deposed the one

 5  person that, you know, admittedly got disciplined.  He didn't

 6  get fired, but got disciplined.  Got some pretty good days

 7  without pay on this, and we tendered them.  But I would submit

 8  to the Court our position is, yeah, that guy messed up.  It's

 9  certainly negligence.  It certainly was a policy violation.

10  They have the IA file on him.  I gave it to them, okay.  But it

11  ain't a constitutional tort, Your Honor.  There's no conscious

12  and deliberate indifference there on the part of Mr. Lighten,

13  okay.  But we get to defend on that.  And they have everything

14  they need now, you know.  I'm not -- just, again, I think the

15  only serious issues here really have to do with whether the

16  Court is going to impose an obligation on us and probably my --

17  the people I report to on this Harris Health thing, but, again,

18  they were already -- other lawyers in the case have already

19  issued DWQs for that material.

20          **THE COURT:**  You say the issue is just access to Harris

21  Health.

22          **MR. NAVARRO:**  Access to the medical.

23          **THE COURT:**  That's the issue.

24          **MR. NAVARRO:**  Yeah, the nurses and the staff.

25          **THE COURT:**  What does the Intervenor say the issue is?

**PROCEEDINGS**

1        **MR. SHARIFF:**  Right.  And so I understand if Harris

2    Health is a separate entity.  I don't disagree with that.  The

3    disagreement is that their response narrowly say that the

4    Sheriff's Command Center does not have it.  It's Harris County

5    because this lawsuit is against Harris County, not Harris

6    County's Sheriff's Office.

7        **THE COURT:**  Okay.

8        **MR. SHARIFF:**  If no one at Harris County has this

9    information, they just need to amend their response and say no

10   one at Harris County has this information.

11       **THE COURT:**  I don't know if that's going to solve the

12   question, is it?  You can't designate an entity that doesn't

13   exist or an entity that's not responsible for potential

14   documents, can you, and expect to get an answer?

15       **MR. SHARIFF:**  So it's unclear, or I'm personally

16   unaware, of what the numerous departments that Harris County, in

17   its entirety has, and each individual or department handles

18   different things.  I don't know if Harris Sheriff's Office or

19   Command Center doesn't have this information, if there's another

20   department within Harris County that would have this

21   information.  And so that's where -- that's sort of where the

22   conundrum is, is it's unclear as to whether someone else in

23   Harris County would have this information or not.

24       **THE COURT:**  Have you discussed that with your

25   adversary?

PROCEEDINGS

1  MR. SHARIFF:  I believe that's what the discussion

2  was.  And that's the point that's made in the reply is the

3  response is limited to the Sheriff's Department not having it,

4  not -- but not clearly saying like the Defendant, which is the

5  County, not having access to those records or having access to

6  that information.

7  THE COURT:  Have you communicated fully with one

8  another?  It sounds like you were talking about issues that

9  y'all ought to be able to work out.

10  MR. SHARIFF:  I can confer with opposing counsel.

11  MR. NAVARRO:  Your Honor, I have told them, I've told

12  them exactly this.  I told this to the Ben Crump lawyers, you

13  know, my friends over there.  I work with two or three of them.

14  I said, "I'm not going to be able to help you."  Dequon Buford's

15  lawyer, I told them I'm not going to be able to help with you

16  Harris Health.  You need to treat them as third party.  They

17  said, "Okay," we get it."  We talked about this on Friday with

18  counsel for Sanchez-Trejo, and, you know, we're still here

19  today.

20  THE COURT:  People who work for Harris Health.

21  MR. NAVARRO:  And --

22  THE COURT:  Just a second, let me finish.  People who

23  work for Harris Health get paid by Harris County or Harris

24  Health?

25  MR. NAVARRO:  They are paid -- it's a separate

**PROCEEDINGS**

1   corporate entity that is organized under, my understanding, a

2   statute that can be -- needs to be adopted by the Commissioner's

3   Court.  But it's a separate entity with its own board and its

4   own medical, so...  And then it provides medical -- it's like a

5   public health care agency for Harris County.  And one client, if

6   you will, of that Harris Health is the jail.

7        **THE COURT:**  What is the difference between Harris

8   County and units of Harris County?  Is it a really separate

9   legal entity?  A separate legal person?  Or is it simply boxes

10   on an organization chart.

11        **MR. NAVARRO:**  It's a separate legal entity, is my

12   understanding, Your Honor.  It's a separate corporate entity.

13        **THE COURT:**  I had a lot of cases against Harris

14   County.  I never had this issue come up before.

15        **MR. NAVARRO:**  Well, Your Honor, you know, I've been

16   doing County representation for 40 years, and admittedly

17   understanding how counties are put together and how they work is

18   somewhat confusing.  It's not nice and clean top-down like

19   cities are.  Counties are more complicated because of the way

20   they're structured under the Constitution.  But, you know, you

21   really can't say every entity is part of Harris County.  I mean,

22   all of the elected officials that run the different divisions of

23   Harris County, they don't respond to each other.  They work

24   independent.  And somehow they are, quote, part of the County,

25   the District Clerk, the County Clerk, the CAO, even the DAs.

**PROCEEDINGS**

1              **THE COURT:**  And all of those are separate?

2              **MR. NAVARRO:**  All the DAs or DA himself or herself is

3     elected and has like --

4              **THE COURT:**  I understand that.  Are they all separate

5     legal entities though?

6              **MR. NAVARRO:**  No, those aren't.  Those aren't.  That's

7     a funding question.  But Harris Health in the contract -- that's

8     why I produced the contract.  I went to my bosses, I said, "I

9     need the contract that exists between who provides the medical

10    care for the Sheriff's Office.  Somebody does," you know.  Most

11    of the clients I work with, which are a lot smaller than this,

12    you know, that's subsumed into the facility.  More and more of

13    them are now contracting out with medical care providers for the

14    medical care.  They're using private sector medical care

15    providers.  So when I see that Harris Health is a separate

16    entity, I'm not surprised by that.  That's what I see all over

17    the State, more and more the medical care is contracted out.  So

18    they can get what they need from --

19              **MR. SHARIFF:**  Your Honor --

20              **THE COURT:**  One second.

21              Please don't interrupt.

22              Go ahead.

23              **MR. NAVARRO:**  They could get what they need.

24              **MR. SHARIFF:**  Your Honor --

25              **THE COURT:**  Please stop interrupting, please.

**PROCEEDINGS**

1        Go ahead.

2        **MR. NAVARRO:**  They just need to treat them as a

3  separate entity.  If they go to the website, they'll see it's a

4  separate entity.  They just do discovery against them.  Do what

5  the other lawyer did, issue DWQs, and then notice them for

6  deposition if you want.  I mean, that's how you do third-party

7  discovery.  That would solve the problem.  They're not

8  foreclosed from it.  But, you know, I just don't have a

9  spokesperson that runs Detention Command.  Really, I'm not even

10  the lawyer for the whole Sheriff's Office, okay.  I'm not

11  engaged to do the law enforcement.  I'm engaged to do the

12  Detention Command, the jail, all right.  So that's who I'm

13  working with.  And I have taken the time to find the right

14  spokespersons who are at the top of the chain of command, or

15  pretty close, who know how it works to respond to the

16  interrogatories.  And, yes, we responded the way that they're

17  saying.  They said, "We can't help you with interpreting the

18  medical records.  We could give them to you, but we can't

19  interpret them for you."  And that's the honest to God truth,

20  Your Honor.

21        **THE COURT:**  Okay.  Back to the Intervenor.

22        **MR. SHARIFF:**  Yes, Your Honor.  So I have no issues --

23  or we don't have any issues with conducting third-party

24  discovery with Harris Health, even if it is a third independent

25  entity.  That's not the issue.  The issue was that the response

**PROCEEDINGS**

1    limits the response to the Sheriff's Command Center, right.

2    Counsel is -- made an appearance in this case as the counsel for

3    Defendant Harris County, Texas.  Right.  And so we have asked

4    them to tell us if Harris County has this information.  And so

5    if Harris County does not have this information, they just need

6    to update their response and say Harris County doesn't have this

7    information.  Harris Health has it.  And then we will conduct

8    everything with Harris Health knowing that there is nothing more

9    we could get from Harris County.

10            **THE COURT:**  He said that today.  I think he said that

11    today.  You need to go find your information from Harris

12    County -- Harris Health.

13            **MR. SHARIFF:**  And if that is -- if it's your position

14    that Harris County doesn't have any more information, then

15    I'll -- I'm not going to doubt it.  I just wanted it to be an

16    updated response.

17            **THE COURT:**  Well, don't you have a response as of this

18    hearing?

19            **MR. SHARIFF:**  Yes, Your Honor.

20            **MR. NAVARRO:**  Your Honor, if he asks for the medical

21    records from Harris Health, we're going to ask for them too.

22    And, you know, if he wants me to get that information, then I

23    will go back --

24            **THE COURT:**  Good.  This is different.  You're willing

25    to go get that information then?

PROCEEDINGS

1              **MR. NAVARRO:**  I'm sorry.

2              **THE COURT:**  You're willing to get that information

3    from Harris Health?

4              **MR. NAVARRO:**  Well, I can't.  No, I mean, he needs to

5    get it through a DWQ as third-party discovery.  But I just don't

6    have any medical people in the jail that can be a spokesperson

7    on interpreting the medical records.  All I can do is provide

8    what we have.  And really I think what we have is sort of left

9    over from this transition that occurred.  But if he will take

10   the time -- you know, here's another thing I'm noticing with

11   counsel.  There's a lot of records being produced in this case,

12   a lot, okay.  And I'm noticing that on some of the complaints

13   that I'm getting about deficiencies, they haven't taken the time

14   to download the records and go through them, okay.  They're

15   telling me I haven't given them material on what we sent to

16   TCJS.  I mean, it's in the packet, okay.  We report it, but like

17   we're supposed to, to TCJS.  So they're just not taking the time

18   to download the material and work through it.  And so I'm

19   finding myself having to respond by showing them, look, it's

20   here.  We gave it to you.  This is where it is.  Here's the page

21   number.  And if you look at my responses, Your Honor, that's a

22   lot of what we're doing now.  I mean, heck, right now, we're

23   going so far as to giving them the links to the actual folder

24   that has the material that they want because they're acting as

25   if we haven't given them anything and really they just haven't

PROCEEDINGS

1  taken the time to look at it.

2        MR. SHARIFF:  Just to respond to that, Your Honor,

3  real quick.  When they're responding to certain requests, they

4  need to identify the specific Bates numbers so that way we don't

5  have to dig through hundreds and thousands of documents looking

6  for the specific requests.  And as far as a specific example

7  that he gave us for the records that they sent to the jail

8  entity, we were asking for communication that they received from

9  them, not information that they sent to them.  And so that's the

10  request for production that is one of the requests of production

11  that we think is deficient in asking us what communication did

12  you receive from TCJS.

13        MR. NAVARRO:  We have the materials we're required to

14  produce to TCJS.  We'll have them produced, which are required

15  by law.

16        THE COURT:  Okay.

17        MR. NAVARRO:  And then what we heard back now --

18        THE COURT:  Plaintiff's counsel want to say something.

19  Please come to the rostrum.

20        MR. GRINKE:  Thank you, Your Honor.  I'll be very

21  brief.  This is not my motion, but I do represent most of the

22  Plaintiffs in this case.

23        THE COURT:  Yeah, I know.

24        MR. GRINKE:  And just for the -- as I listen to this,

25  number one, Harris County is the Defendant.  I'm not sure, I

PROCEEDINGS

1    haven't studied it or briefed it, on whether or not Harris

2    Health, I believe they're a public entity only controlled by

3    Harris County, but as to whether or not they're a separate legal

4    entity, such that third-party discovery is necessary, maybe that

5    bears, and I hate to create more work for my colleagues, but

6    maybe more briefing on that.  The reason I wanted to speak very

7    quickly, Your Honor, was my colleague's comments about an

8    episodic event versus a condition of a confinement.  These

9    issues will overlap into our discovery.  Our position is that

10   for discovery's purposes the Court has already ruled that we

11   have adequately pled a conditions of confinement claim.  And I

12   just don't -- I fear that the Court might set a precedent in

13   this early discovery ruling that limits, now I'm not talking

14   about Harris Health, I'm talking about production of security

15   guard activities, checking in on --

16        THE COURT:  Yeah, I understand the issue.  How am I

17   going to help though?  Harris County didn't want to produce

18   9,000 personnel files.  How do we narrow it?

19        MR. SHARIFF:  Well --

20        THE COURT:  The question was to Plaintiff's counsel,

21   please.

22        MR. GRINKE:  Yeah, I don't know.  And, again, I've

23   not requested 9,000 personnel files or anything of that nature.

24        THE COURT:  What do you need?

25        MR. GRINKE:  So I don't have a motion before the Court

**PROCEEDINGS**

1    today, so I don't want to waste your time.  I think this is an

2    issue that might be revisited again when we get into our

3    discovery.  It's just that I believe that the County wants to

4    say this was an episodic event.  I don't care what anybody else

5    says, so you are not entitled any other security guards'

6    activities for this three months.  And I do think in order for

7    us to prove a policy in this case --

8                 THE COURT:  Yeah, I ruled on that already.

9                 MR. GRINKE:  You did.  You did.  So I just wanted to

10   mention I don't have a suggestion on the 9,000 personnel files.

11   I haven't asked for that, but I just --

12                THE COURT:  What do you need in terms of personnel

13   files?  What do you need in terms of personnel files?

14                MR. GRINKE:  If I may defer to the Intervenor.  It's

15   their motion.  I have not asked for personnel files of 9,000.

16                MR. SHARIFF:  So, Your Honor --

17                THE COURT:  Yes.

18                MR. NAVARRO:  I don't think that issue is squarely

19   before you today.

20                THE COURT:  No.  You raised it yourself.  You raised

21   it.

22                MR. NAVARRO:  Yeah, but I'm happy to address it.  I am

23   happy to address it.  We are in conversation with counsel about

24   that very issue.

25                THE COURT:  Okay.  Let me hear first from the

**PROCEEDINGS**

1    Intervenor and then from you on this issue.

2           **MR. SHARIFF:**  Yes, Your Honor.  So the Request for

3    Production 25 and 30, which is at issue in this motion, we ask

4    for the identity and the employee files for the individuals that

5    were the guards and the individuals that were working on the

6    unit or floor where the decedent was confined.  We're not asking

7    for all 1800 employees that the Department employs.  We're

8    asking for specifically the floor or the unit in which the

9    decedent was confined during the period of his confinement,

10   which is, like we said, three, four months.

11          **THE COURT:**  Okay.  Your turn.

12          **MR. NAVARRO:**  Well, Your Honor, this individual was in

13   there several months.  We do have, and we have produced, an

14   inmate movement report as well as an inmate housing report,

15   which tracks where in the facility the inmate is at any

16   particular time.  This inmate did get moved around from floor to

17   floor.  The files that we produced were the ones that they asked

18   for, which were who were the guards that were working the night

19   that he was discovered.  So that would include two shifts, Your

20   Honor, the evening shift of the 11th and then the day shift of

21   the 12th.  And we produced those files, okay, the HR file as

22   well as the training files because they have this claim about

23   that they're not sufficiently well-trained.  So we produced the

24   training files, okay.

25          On Friday, you know, when we conferred, you know, I

PROCEEDINGS

1   was told for the first time, well, no, that's fine that you gave

2   us that, but what we're really looking for is any jail guard

3   that got fired for not -- for use of force or for assaults or

4   for whatever.  I mean, that's a different request, okay.  It's

5   not here today, but it's coming, okay.

6           THE COURT:  Well, that's the problem.  You keep

7   telling me my questions go to things that are not before the

8   Court, but I don't know -- you also say we're going to have

9   ripple effects whatever we decide today.  So I'm trying to

10  understand what we're doing.  Are we ruling on individual files?

11  Are we ruling on the scope we could reasonably expect for the

12  totality of the case?

13          MR. NAVARRO:  Well, I think, like I said, the main

14  issues here were, what do we do about Harris Health?  And I

15  think the answer to that is treat them as a third party and

16  get --

17          THE COURT:  Okay.  I have your answer on that.

18          MR. NAVARRO:  And I think that's the similar answer to

19  that question.

20          THE COURT:  How do we limit the number of personnel

21  files or other files that were due produced in this case?

22          MR. NAVARRO:  Well, I'm happy to give him the files of

23  the guards that were responsible for the pod that this inmate

24  was in on the night that -- and he has gotten those.  And he has

25  been given the opportunity to depose those people, you know.

PROCEEDINGS

1          **THE COURT:**  Okay.  I have a telephonic hearing now.

2    I'm going to leave the Court temporarily.  I hope you guys will

3    step outside.  You can't interfere with the court reporter's

4    work.  Step outside and see if you can at least tell me what the

5    issues are today.  I'm getting very confused.  You can use

6    another cell phone to -- another phone to hook in Plaintiffs --

7    intervenor's counsel.  I'll be back as soon as I can.

8          **MR. NAVARRO:**  May we use the attorney room to confer?

9          **THE COURT:**  You can use whatever room you want.

10         (A pause was held in the proceedings at 3:00 p.m.)

11         **THE COURT:**  Please be seated.

12         Okay.  One thing that's been brought up in this

13   hearing is whether this is an episodic act case or custodial

14   care case.  And I ruled previously it's custodial care.  And

15   that's not going to change in the course of this hearing.

16   That's my ruling.

17         **MR. NAVARRO:**  No, we're not asking you to change your

18   ruling on that point today, Judge.

19         **THE COURT:**  Okay.  Tell me what agreement you reached

20   in your discussions.

21         **MR. NAVARRO:**  Here's my understanding of the agreement

22   that we've reached.  That on the content that's with Harris

23   Health --

24         **THE COURT:**  Yeah.

25         **MR. NAVARRO:**  -- we'll treat them as a third party.

PROCEEDINGS

1   And they'll do discovery against Harris Health as a third party.

2          **THE COURT:**  Okay.

3          **MR. SHARIFF:**  And we're fine with that, Your Honor.  I

4   can agree to that.

5          **THE COURT:**  What did you say?

6          **MR. SHARIFF:**  Your Honor, the Intervenor, we can agree

7   to that, to treat Harris Health as a third party and conduct

8   discovery through them.

9          **MR. NAVARRO:**  I think that we have that one resolved,

10  Judge.

11         **THE COURT:**  Okay.

12         **MR. NAVARRO:**  Now, on the scope of discovery, I have

13  pointed out to counsel and -- I mean, I'm having -- I've shown

14  counsel how to interpret the records that we produced, okay.

15         **THE COURT:**  Say that again.

16         **MR. NAVARRO:**  I have shown counsel how he should

17  interpret the jail records that we have produced.

18         **THE COURT:**  Okay.  Good.

19         **MR. NAVARRO:**  Because I think part of the problem is

20  that he, you know -- he's not reading them correctly.  So here's

21  what we've done.  I said, "Look, we know that he died in custody

22  on the night of the 11th or the morning of the 12th."

23         **THE COURT:**  Okay.

24         **MR. NAVARRO:**  We have an inmate housing history report

25  that tracks where this inmate is at any given time.  Every

**PROCEEDINGS**

1    inmate has this.  And that's he been produced as Operational

2    Record 4 pertaining to Kevin Sanchez-Trejo.  We know that he was

3    in JA-7, Pod C, Cell-1, starting on February 2nd, okay, through

4    the 12th, which is when he was deceased.  And by

5    cross-referencing that with the daily watch schedules, the DWS

6    reports, we will see who the staffing was on that floor --

7         **THE COURT:**  Okay.

8         **MR. NAVARRO:**  -- at that time.

9         **THE COURT:**  Okay.

10        **MR. NAVARRO:**  And I told counsel I have produced the

11   DWS reports for all of the Plaintiffs.  So there's a lot of

12   consecutive material there.  They're in chronological order.  If

13   the DWS reports from the 2nd through the 12th for that floor,

14   and the guards in charge of that area, if they're not there, I

15   will get those for him.  That will show the staffing.

16        **THE COURT:**  Okay.

17        **MR. NAVARRO:**  Then we can have -- we can go through

18   there and we can have a discussion about whether he wants to

19   interview those guards or what it is that he wants from these

20   other guards on that floor.  These are people that likely would

21   have had contact with this inmate because they were in charge of

22   that floor for this time period.  And I think that's a

23   reasonable place to start.

24        **THE COURT:**  Okay.  Y'all agreed on that then?

25        **MR. NAVARRO:**  I think we are.

**PROCEEDINGS**

1      Are we agreed on that, counsel?

2          **MR. SHARIFF:**  We agree to the extent that we will try

3      and identify -- I don't know what the time range for those

4      records are that he's referencing, so -- but we'll confer

5      further and figure out exactly which records, like Bates number

6      wise, he's referring to.  I think, Your Honor --

7          **MR. NAVARRO:**  February 2nd, Counsel, February 2nd,

8      like I just said.

9          **THE COURT:**  Wait a minute now.  You keep talking over

10     each other.

11         Go ahead and finish what you were saying on the phone.

12         **MR. SHARIFF:**  I think the fundamental difference

13     between our interpretation or the issue at the hearing today is

14     counsel -- defense counsel believes that our discovery should be

15     limited to only that which directly relates to the decedent's

16     death as in, hence, the dates of his death.  As the Court has

17     already established, we have valid live Monell claims and we

18     need to be able to establish a pattern for our claims.  And so

19     the pattern isn't multiple incidents of similar nature related

20     to our client, rather it's similar events and incidents related

21     to other inmates, other conditions related to, you know,

22     multiple events that occurred that were similar that led up to

23     and included the decedent's death.  That's the fundamental

24     difference.  He is trying to limit our discovery to only that

25     which is directly relevant to only our decedent's death.  We are

**PROCEEDINGS**

1   requesting records related to other medical requests made by

2   other inmates so that we can conduct discovery on whether other

3   inmates were neglected for the medical conditions, right.  That

4   discovery does not have to relate to the decedent's neglect of

5   medical treatment.  But in order for us to show a pattern of

6   neglect of medical treatment, we have to be able to conduct

7   discovery on other inmates whose medical treatment was

8   neglected.  Similarly, if there were other events where guards

9   were rushed due to understaffing where they didn't actually put

10  their eyes on the inmates when they're doing their rounds, we

11  need to be able to conduct discovery on that to show that was a

12  pattern that these guards were rushed routinely because of short

13  staffing or understaffing.  And that discovery shouldn't be

14  limited to just the decedent's death, rather if there were other

15  dates and days leading up to it.  What we've done is we've

16  limited the scope of time frame of what we're trying to get on

17  discovery on the three, four months that he was in jail.  Our

18  position is that it would be fair for us to request records

19  dating beyond before the client was even incarcerated to see if

20  there's an ongoing pattern beyond that, but we are only asking

21  for those three, four months, and for us to be able to show

22  whether these events, such as, you know, the neglect of medical

23  care the, you know, short staffing, all that stuff was ongoing

24  during an incarceration, even if it wasn't related to his death

25  specifically.  That's the fundamental difference.

**PROCEEDINGS**

1      **MR. NAVARRO:**  Your Honor, I'm not conceding that he

2  even has a constitutional tort here.  We know from the

3  investigative file by the Rangers that this individual got some

4  contraband, got some fentanyl, got some heroin, and killed

5  himself in the jail, okay.  The question is whether there was

6  some kind of knowledge of that, whether there was a conscious or

7  deliberate indifference to him to give rise to a Section 1983

8  claim.  So what I'm offering in saying if you want to do

9  discovery around the jail guards that were on that floor that

10  night, fine, I've given you that.  If you want to know who was

11  staffing that cell during the whole period he was in it, which

12  started on February 2nd, 2022 -- so, what?  About nine days.

13  Before that he was in a different cell, okay.  I don't think --

14  I don't see any issues regarding this inmate prior to his death.

15  There are no -- there's no Section 1983 claims prior to his

16  death.  So if he wants to do that, I'll get him the daily watch

17  schedules for those prior dates.  And if he wants to, you know,

18  depose those guards, then fine.

19      **THE COURT:**  We agree then?

20      **MR. SHARIFF:**  Your Honor, I don't agree with counsel's

21  limitation of it being limited to my client's death.  If they

22  have records related to other inmates suffering similar

23  conditions and issues, we need to be able to obtain those to

24  establish a pattern.

25      **THE COURT:**  Well, are you in agreement or you're not?

PROCEEDINGS

1  I'm confused now.

2      **MR. SHARIFF:**  I'm not in agreement with the limitation

3  that counsel is putting in his statement.

4      **THE COURT:**  Say it again.

5      **MR. SHARIFF:**  I am not in agreement with the

6  limitations that defense counsel put in his statement.

7      **MR. NAVARRO:**  I would offer, Your Honor, that it's not

8  that he's not in agreement with it, I don't think he has a

9  problem with what I'm suggesting as a next step approach; he

10  just thinks that I haven't gone far enough.  And he's correct

11  about that.  I'm not going to go look for other people that got

12  contraband and killed themselves while in the jail.  I don't

13  even know where I would start with something like that.  I am

14  willing to give him access to the other guards that had contact

15  with this individual, and we start there.  Now if he thinks that

16  that's not enough, and he wants to come back, why don't we just

17  pick it up from there?  I don't think he's in disagreement with

18  what I'm saying; he's just saying I haven't agreed far enough.

19  And he's correct about that.  I'm not going to agree to his

20  broad-based discovery search on this because I'm not convinced

21  that his client has a constitutional violation to begin with.

22      **THE COURT:**  Yeah.

23      **MR. SHARIFF:**  So, Your Honor, what counsel is saying

24  that Plaintiffs should do or the Intervenor should do is what

25  we've already done.  We've conducted narrow discovery related to

**PROCEEDINGS**

1   the specific incident, or the date of his death, which we were

2   able to discover that the guard admitted that due to --

3   essentially due to short staffing, he had to run through the

4   rounds and did not have time to check and see if my client was

5   still breathing or alive.  And based on this information that we

6   have discovered, we are now broadening our follow-up discovery

7   requests to try and find other events that are similar to be

8   able to establish a custom, pattern, or a policy.  We've already

9   done what counsel is saying we should do.

10          And this isn't about contraband or killing himself.

11   This is about my client, or a decedent, complaining of extreme

12   excruciating pain, urinating blood, and not receiving proper

13   medical care.  And then when he, as a result, has to resort to

14   pain relief, you know, contraband, he's laying there slouched

15   down for hours and hours and hours.  And they're doing rounds

16   running through not actually looking at the inmates and as a

17   result the inmate actually dies and can't be resuscitated or be

18   saved, right.  We need to be able to establish a pattern of such

19   events and such conditions.

20          **THE COURT:**  Okay.  Here's what we're going to do.

21   Here's what we're going to do.  I want the County to make the

22   production it's willing to make.  We'll come back here in two

23   weeks and see where that leaves us.  I hope in the meantime

24   you'll talk among yourselves and try to reach a consensus about

25   this.  This is not rocket science.  This is discovery in a case

**PROCEEDINGS**

1   that's become, unfortunately, kind of common.  I think you can

2   work it out.  You're closer to the records than I am.  You're

3   closer to the facts than I am.  I think you can work it out.  If

4   not, we'll already have our hearing set.

5            Let's find a date for them towards the end of the

6   month, Art.

7            **CASE MANAGER:**  The 23rd at 2:30 p.m.

8            **THE COURT:**  April 23rd at 2:30, does that work?

9            **MR. NAVARRO:**  What date, Your Honor?

10           **THE COURT:**  It's two weeks from today.

11           **MR. NAVARRO:**  Let me check real quick, Judge.

12           **MR. SHARIFF:**  April 23rd at 2:30 p.m?

13           **THE COURT:**  That's what we're trying to work out.

14           **MR. SHARIFF:**  And that should be fine, Your Honor.

15           **THE COURT:**  Is Plaintiff okay on that date?

16           **MR. GRINKE:**  Yes, Your Honor.

17           **MR. NAVARRO:**  I have a conflict at that time.

18           **THE COURT:**  You have a conflict.

19           **MR. NAVARRO:**  That day I have another hearing.

20           **THE COURT:**  Can you do it later on the same day?

21           **MR. NAVARRO:**  Yes, Your Honor, I could do it later on

22   the same day.

23           **THE COURT:**  How about 4:00?

24           **MR. NAVARRO:**  My hearing is at 2:00.  4:00 would be

25   fine.

**PROCEEDINGS**

1      **THE COURT:**  Can you do 4:00 then?

2      **MR. SHARIFF:**  That works for the Intervenor, Your

3  Honor.

4      **THE COURT:**  Okay.

5      **MR. NAVARRO:**  Thank you, Your Honor.

6      **THE COURT:**  Okay.  We'll see you then.  Thank y'all

7  very much.

8      **MR. SHARIFF:**  Thank you.

9      **MR. NAVARRO:**  Thank you, Judge.  May we be excused?

10      **MR. GRINKE:**  Thank you, Judge.

11      (Court adjourned at 3:47 p.m.)

12                          *  *  *  *

13      I certify that the foregoing is a correct transcript

14  from the record of proceedings in the above matter.

15  Date:  May 2, 2025

16                  /S/ Monica Walker-Bailey, MS, RPR, CSR
                      Signature of Court Reporter

17

18

19

20

21

22

23

24

25

**CASE MANAGER: [1]**
43/7
**MR. GRINKE: [11]** 3/2
3/11 3/24 30/20 30/24 31/22
31/25 32/9 32/14 43/16
44/10
**MR. NAVARRO: [66]**
**MR. SHARIFF: [39]** 3/5
3/25 4/7 4/12 4/14 6/2 7/4
9/16 9/18 20/12 20/15 21/2
21/9 23/1 23/8 23/15 24/1
24/10 26/19 26/24 27/22
28/13 28/19 30/2 31/19
32/16 33/2 36/3 36/6 38/2
38/12 40/20 41/2 41/5 41/23
43/12 43/14 44/2 44/8
**MS. GETTY: [1]** 3/19
**THE COURT: [102]**

**/**
**/S [1]** 44/16

**0**
**02886 [1]** 1/4
**0494 [1]** 1/19
**0505 [1]** 1/23

**1**
**11th [3]** 11/10 33/20 36/22
**12 [1]** 11/14
**12-hour [1]** 11/12
**12th [7]** 8/7 9/23 11/11
33/21 36/22 37/4 37/13
**13 [1]** 21/16
**14 [4]** 8/8 8/11 8/11 10/11
**14-JR [1]** 8/15
**1800 [1]** 33/7
**1983 [4]** 4/17 19/21 40/7
40/15
**1st [2]** 7/1 7/20

**2**
**200 [1]** 2/4
**201 [1]** 1/22

**2020 [1]** 18/6
**2021 [1]** 6/16
**2022 [8]** 4/17 6/16 7/1 7/20
8/7 9/1 14/24 40/12
**2024 [1]** 18/6
**2025 [2]** 1/13 44/15
**23rd [3]** 43/7 43/8 43/12
**25 [1]** 33/3
**250-5087 [1]** 2/9
**27 [1]** 21/13
**29 [1]** 11/6
**2:00 [2]** 1/10 43/24
**2:23 p.m [1]** 7/1
**2:30 [1]** 43/8
**2:30 p.m [2]** 43/7 43/12
**2nd [5]** 37/3 37/13 38/7
38/7 40/12

**3**
**30 [1]** 33/3
**300 [1]** 1/18
**33 [1]** 5/13
**34 [1]** 5/16
**341-6552 [1]** 2/5
**37 [1]** 5/10
**3:00 p.m [1]** 35/10
**3:47 p.m [1]** 44/11

**4**
**40 [1]** 25/16
**448-0505 [1]** 1/23
**4734 [1]** 1/21
**4:00 [2]** 43/23 44/1
**4:00 would [1]** 43/24
**4:23-cv-02886 [1]** 1/4

**5**
**5087 [1]** 2/9
**515 [1]** 2/7
**549 [1]** 2/3

**6**
**6552 [1]** 2/5
**6:00 [2]** 11/13 11/13

**713 [2]** 1/23 2/9
**75034 [1]** 1/18
**77002 [1]** 2/8
**77027 [1]** 1/22
**77573 [1]** 2/4

**8**
**8004 [1]** 2/8
**8:00 [2]** 8/7 9/23
**8:40 p.m [1]** 7/21

**9**
**9,000 [5]** 18/15 31/18 31/23
32/10 32/15
**942-0494 [1]** 1/19
**956 [1]** 2/5
**972 [1]** 1/19

**A**
**a.m [1]** 11/13
**able [17]** 7/15 9/3 9/4 20/20
20/21 20/23 24/9 24/14
24/15 38/18 39/6 39/11
39/21 40/23 42/2 42/8 42/18
**above [1]** 44/14
**access [9]** 13/5 17/10 17/15
17/16 22/20 22/22 24/5 24/5
41/14
**act [2]** 18/22 35/13
**acting [1]** 29/24
**ACTION [1]** 1/4
**activities [2]** 31/15 32/6
**actual [2]** 9/7 29/23
**actually [8]** 6/15 10/2 10/4
10/7 19/18 39/9 42/16 42/17
**add [2]** 3/22 4/9
**address [4]** 5/6 13/2 32/22
32/23
**adequately [1]** 31/11
**adjourned [1]** 44/11
**admin [2]** 11/11 19/15
**admitted [1]** 42/2
**admittedly [2]** 22/5 25/16
**adopted [1]** 25/2

**A**

**adversary [2]** 14/1 23/25
**after [4]** 4/24 5/2 5/5 8/12
**afternoon [6]** 3/1 3/2 3/5 3/14 3/18 3/19
**again [10]** 7/22 17/10 17/16 21/19 22/14 22/17 31/22 32/2 36/15 41/4
**against [11]** 7/10 7/11 14/13 18/24 19/2 19/6 20/19 23/5 25/13 27/4 36/1
**agency [2]** 16/12 25/5
**agree [7]** 18/19 36/4 36/6 38/2 40/19 40/20 41/19
**agreed [3]** 37/24 38/1 41/18
**agreement [8]** 14/21 14/23 35/19 35/21 40/25 41/2 41/5 41/8
**ahead [4]** 9/17 26/22 27/1 38/11
**aided [1]** 2/13
**ain't [1]** 22/11
**al [1]** 1/3
**Alabama [1]** 1/21
**alive [2]** 11/14 42/5
**allergic [1]** 12/20
**already [16]** 4/2 6/7 16/23 18/23 19/1 19/5 19/24 20/19 22/18 22/18 31/10 32/8 38/17 41/25 42/8 43/4
**amend [1]** 23/9
**amended [3]** 12/17 13/1 15/25
**among [1]** 42/24
**ANA [4]** 1/9 1/20 3/7 4/15
**analysis [1]** 13/12
**another [6]** 23/19 24/8 29/10 35/6 35/6 43/19
**answer [10]** 7/9 7/15 9/3 9/4 9/11 16/25 23/14 34/15 34/17 34/18
**answering [1]** 8/9
**answers [2]** 5/10 7/12
**anybody [2]** 16/6 32/4

**anyone [1]** 8/3
**anything [5]** 3/22 5/20 13/10 29/25 31/23
**appearance [1]** 28/2
**appearances [3]** 1/15 1/24 3/3
**appears [1]** 8/11
**approach [1]** 41/9
**APRIL [3]** 1/13 43/8 43/12
**April 23rd [2]** 43/8 43/12
**area [1]** 37/14
**aren't [2]** 26/6 26/6
**arguably [1]** 21/24
**argue [1]** 9/9
**argues [1]** 6/5
**arguments [2]** 5/8 20/20
**around [8]** 6/25 7/20 8/7 8/25 12/24 18/12 33/16 40/9
**Art [1]** 43/6
**ask [5]** 7/19 8/5 10/14 28/21 33/3
**asked [10]** 8/18 15/22 17/23 17/24 19/5 22/3 28/3 32/11 32/15 33/17
**asking [17]** 6/17 6/18 8/1 9/5 10/8 10/18 10/18 15/4 17/9 21/4 21/5 30/8 30/11 33/6 33/8 35/17 39/20
**asks [3]** 6/23 9/22 28/20
**assaults [1]** 34/3
**asserts [1]** 4/17
**assume [1]** 3/21
**assuming [1]** 14/12
**attorney [5]** 3/6 12/11 15/23 15/24 35/8
**Attorney's [1]** 13/7
**audio [1]** 17/6
**authority [3]** 13/13 13/16 14/5
**available [1]** 8/3
**avoid [1]** 8/9
**away [1]** 13/2

**B**

**back [10]** 12/4 12/16 12/25

21/8 27/21 28/23 30/17 35/7 41/16 42/22
**background [1]** 7/9
**BAILEY [2]** 2/6 44/16
**based [3]** 10/6 41/20 42/5
**basically [9]** 7/7 12/8 12/14 13/21 14/14 14/24 14/25 15/9 15/22
**Bates [20]** 8/8 8/11 8/11 8/14 8/15 8/16 8/20 8/20 8/21 8/23 9/2 9/5 9/9 9/12 9/21 10/10 12/5 15/11 30/4 38/5
**Bay [1]** 2/3
**bears [1]** 31/5
**became [1]** 14/23
**become [1]** 43/1
**been [10]** 12/6 12/9 15/2 18/3 18/3 19/9 25/15 34/25 35/12 37/1
**before [8]** 1/12 14/25 25/14 31/25 32/19 34/7 39/19 40/13
**begin [1]** 41/21
**behalf [4]** 3/6 4/1 4/7 4/15
**being [5]** 5/17 5/20 14/25 29/11 40/21
**believe [3]** 24/1 31/2 32/3
**believes [1]** 38/14
**Ben [2]** 1/17 24/12
**benefit [1]** 21/17
**Bernal [1]** 2/3
**best [2]** 12/23 16/9
**better [1]** 3/10
**between [5]** 11/9 14/21 25/7 26/9 38/13
**beyond [3]** 20/23 39/19 39/20
**bit [2]** 16/23 18/12
**blank [1]** 8/22
**blocked [1]** 20/3
**blood [4]** 7/2 7/4 7/21 42/12
**board [2]** 13/15 25/3
**bosses [1]** 26/8

**B**

**both [2]** 5/11 5/14
**Boulevard [1]** 2/3
**boxes [1]** 25/9
**breathing [1]** 42/5
**brief [1]** 30/21
**briefed [1]** 31/1
**briefing [1]** 31/6
**Briefly [2]** 20/14 20/14
**broad [1]** 41/20
**broad-based [1]** 41/20
**broadening [1]** 42/6
**brought [1]** 35/12
**Buford's [3]** 12/14 14/11
 24/14

**C**

**called [1]** 13/5
**came [1]** 20/5
**cameras [1]** 16/9
**can't [8]** 17/7 23/12 25/21
 27/17 27/18 29/4 35/3 42/17
**cannot [1]** 14/17
**CAO [2]** 13/14 25/25
**care [20]** 6/6 6/11 6/24 13/4
 14/22 14/25 15/15 19/12
 19/13 25/5 26/10 26/13
 26/14 26/14 26/17 32/4
 35/14 35/14 39/23 42/13
**case [23]** 6/2 12/7 12/11
 16/13 17/4 18/22 19/11
 19/12 19/13 19/25 20/1 20/6
 21/13 22/18 28/2 29/11
 30/22 32/7 34/12 34/21
 35/13 35/14 42/25
**cases [1]** 25/13
**cell [6]** 11/11 11/15 35/6
 37/3 40/11 40/13
**Cell-1 [1]** 37/3
**Center [3]** 23/4 23/19 28/1
**certain [3]** 14/22 18/18 30/3
**certainly [4]** 13/12 21/25
 22/9 22/9
**certify [1]** 44/13

**chain [2]** 27/14
**CHANDRA [1]** 1/9
**change [2]** 35/15 35/17
**charge [2]** 37/14 37/21
**chart [1]** 25/10
**check [8]** 8/7 8/25 9/23 10/3
 10/4 10/7 42/4 43/11
**checked [1]** 13/14
**checking [1]** 31/15
**chronological [1]** 37/12
**circulate [1]** 11/16
**circumstance [1]** 14/19
**cities [1]** 25/19
**City [1]** 2/4
**CIVIL [4]** 1/4 5/9 5/13 5/16
**claim [6]** 11/5 19/21 20/19
 31/11 33/22 40/8
**claims [10]** 4/18 4/19 6/4
 6/5 6/7 6/8 11/6 38/17 38/18
 40/15
**clause [2]** 15/14 15/16
**clean [1]** 25/18
**clear [4]** 8/22 9/11 9/22
 10/2
**clear-cut [2]** 9/11 9/22
**clearly [1]** 24/4
**Clerk [2]** 25/25 25/25
**client [6]** 25/5 38/20 39/19
 41/21 42/4 42/11
**client's [1]** 40/21
**clients [2]** 21/18 26/11
**clinic [1]** 7/20
**close [1]** 27/15
**closed [2]** 16/20 16/21
**closer [2]** 43/2 43/3
**Cole [1]** 5/20
**colleague's [1]** 31/7
**colleagues [1]** 31/5
**Collier [1]** 5/20
**come [6]** 3/9 11/15 25/14
 30/19 41/16 42/22
**coming [1]** 34/5
**command [9]** 7/8 7/10 7/23
 23/4 23/19 27/9 27/12 27/14

**comments [1]** 31/7
**Commissioner [1]** 10/15
**Commissioner's [1]** 25/2
**common [1]** 43/1
**communicate [2]** 13/18
 13/25
**communicated [2]** 10/16
 24/7
**communication [3]** 10/19
 30/8 30/11
**compel [7]** 3/20 4/21 5/1
 5/3 5/10 9/6 12/16
**compelling [1]** 8/1
**complained [1]** 7/22
**complaining [2]** 19/16
 42/11
**complaint [1]** 15/6
**complaints [1]** 29/12
**completed [2]** 9/25 10/3
**complicated [1]** 25/19
**computer [1]** 2/13
**computer-aided [1]** 2/13
**conceding [1]** 40/1
**concern [1]** 19/18
**condition [1]** 31/8
**conditions [9]** 4/18 6/8
 18/21 20/22 31/11 38/21
 39/3 40/23 42/19
**conduct [7]** 20/23 21/3 28/7
 36/7 39/2 39/6 39/11
**conducted [1]** 41/25
**conducting [1]** 27/23
**confer [3]** 24/10 35/8 38/4
**conference [1]** 12/11
**conferred [3]** 13/20 15/22
 33/25
**confined [2]** 33/6 33/9
**confinement [6]** 4/18 6/8
 18/22 31/8 31/11 33/9
**conflict [2]** 43/17 43/18
**conflicting [1]** 10/9
**confused [2]** 35/5 41/1
**confusing [1]** 25/18

# C

**confusion [1]** 8/19
**connection [2]** 4/5 18/14
**conscious [3]** 19/25 22/11 40/6
**consecutive [1]** 37/12
**consensus [1]** 42/24
**Constitution [1]** 25/20
**constitutional [5]** 19/17 21/22 22/11 40/2 41/21
**consults [1]** 17/14
**contact [6]** 7/6 8/8 9/1 10/2 37/21 41/14
**contacts [1]** 13/14
**contain [1]** 15/12
**contained [1]** 16/22
**content [2]** 17/11 35/22
**context [3]** 4/9 19/10 20/13
**Continued [1]** 2/1
**contraband [4]** 40/4 41/12 42/10 42/14
**contract [3]** 26/7 26/8 26/9
**contracted [1]** 26/17
**contracting [1]** 26/13
**contrary [1]** 6/6
**controlled [1]** 31/2
**conundrum [1]** 23/22
**conversation [1]** 32/23
**convinced [1]** 41/20
**copy [1]** 14/20
**core [1]** 5/6
**corporate [2]** 25/1 25/12
**correct [12]** 8/12 8/18 8/20 9/10 10/5 10/8 13/3 13/14 14/19 41/10 41/19 44/13
**correctly [1]** 36/20
**could [10]** 9/11 12/23 15/10 15/14 15/15 26/23 27/18 28/9 34/11 43/21
**couldn't [1]** 15/16
**counsel [28]** 12/15 13/6 13/18 14/1 14/20 20/15 21/18 24/10 24/18 28/2 28/2 29/11 30/18 31/20 32/23

35/7 36/13 36/14 36/16 37/10 38/1 38/7 38/14 38/14 41/3 41/6 41/23 42/9
**counsel's [1]** 40/20
**counties [2]** 25/17 25/19
**COUNTY [43]** 1/6 3/15 4/17 7/8 7/10 7/11 7/13 7/14 7/25 8/3 10/23 13/6 19/6 23/4 23/5 23/8 23/10 23/16 23/20 23/23 24/5 24/23 25/5 25/8 25/8 25/14 25/16 25/21 25/23 25/24 25/25 28/3 28/4 28/5 28/6 28/9 28/12 28/14 30/25 31/3 31/17 32/3 42/21
**County's [1]** 23/6
**course [3]** 11/20 20/3 35/15
**court [26]** 1/1 2/6 2/7 4/10 5/9 5/10 5/21 6/6 8/1 9/6 10/8 12/19 13/2 17/20 22/8 22/16 25/3 31/10 31/12 31/25 34/8 35/2 35/3 38/16 44/11 44/16
**courtroom [1]** 3/4
**Cowboys [1]** 1/17
**create [2]** 8/19 31/5
**criminal [2]** 16/11 16/19
**cross [1]** 37/5
**cross-referencing [1]** 37/5
**Crump [3]** 1/17 21/18 24/12
**CSR [2]** 2/6 44/16
**cured [2]** 15/25 16/1
**custodial [5]** 11/8 16/10 21/20 35/13 35/14
**custody [3]** 11/20 19/17 36/21
**custom [3]** 20/20 21/5 42/8
**cut [2]** 9/11 9/22
**cv [1]** 1/4

# D

**DA [2]** 16/20 26/2
**daily [2]** 37/5 40/16
**DAs [2]** 25/25 26/2
**date [5]** 42/1 43/5 43/9

**dates [3]** 38/16 39/15 40/17
**dating [1]** 39/19
**day [6]** 11/13 21/4 33/20 43/19 43/20 43/22
**days [3]** 22/6 39/15 40/12
**dealing [1]** 14/18
**death [18]** 10/16 11/8 11/9 11/20 16/10 20/18 20/24 21/21 38/16 38/16 38/23 38/25 39/14 39/24 40/14 40/16 40/21 42/1
**deceased [3]** 11/17 20/5 37/4
**decedent [12]** 6/14 6/19 6/25 7/19 8/7 8/25 9/24 10/2 10/4 33/6 33/9 42/11
**decedent's [6]** 10/16 38/15 38/23 38/25 39/4 39/14
**decedents [1]** 21/16
**December [1]** 12/20
**decide [1]** 34/9
**defend [1]** 22/13
**Defendant [14]** 1/7 2/2 3/15 5/23 6/4 6/23 8/1 8/9 8/13 9/6 10/20 24/4 28/3 30/25
**Defendants [1]** 5/1
**defense [3]** 6/3 38/14 41/6
**defer [1]** 32/14
**deficiencies [2]** 10/15 29/13
**deficient [4]** 5/18 6/22 6/22 30/11
**delays [1]** 4/25
**deliberate [4]** 4/19 19/25 22/12 40/7
**denial [2]** 6/6 6/11
**Denton [1]** 2/3
**department [6]** 7/12 12/1 23/17 23/20 24/3 33/7
**departments [1]** 23/16
**depose [3]** 21/25 34/25 40/18
**deposed [3]** 18/3 22/3 22/4
**deposition [1]** 27/6

**Dequon [2]** 12/14 24/14
**describe [4]** 6/24 8/6 8/24
  10/14
**designate [1]** 23/12
**detail [2]** 6/23 8/6
**detailed [1]** 9/4
**detainee [1]** 4/16
**detainees [1]** 11/6
**Detention [5]** 7/8 7/10 7/23
  27/9 27/12
**diagnosis [1]** 6/24
**didn't [12]** 5/3 7/3 10/2 10/3
  10/7 12/23 16/16 20/2 20/4
  22/5 31/17 39/9
**died [6]** 4/16 6/16 11/18
  19/17 21/4 36/21
**dies [1]** 42/17
**difference [4]** 25/7 38/12
  38/24 39/25
**different [5]** 23/18 25/22
  28/24 34/4 40/13
**dig [1]** 30/5
**dilemma [2]** 15/3 15/21
**directed [1]** 12/15
**directly [2]** 38/15 38/25
**director [1]** 12/3
**disagree [3]** 20/25 21/2 23/2
**disagreement [3]** 20/11
  23/3 41/17
**disciplinary [2]** 18/2 18/10
**disciplined [3]** 18/2 22/5
  22/6
**disclosing [1]** 5/19
**discover [1]** 42/2
**discovered [5]** 11/11 11/16
  17/17 33/19 42/6
**discovery [35]** 6/11 12/14
  12/16 12/18 14/13 15/23
  19/10 20/23 21/3 21/17
  21/17 27/4 27/7 27/24 29/5
  31/4 31/9 31/13 32/3 36/1
  36/8 36/12 38/14 38/24 39/2
  39/4 39/7 39/11 39/13 39/17

**discovery's [1]** 31/10
**discussed [4]** 18/23 19/1
  19/5 23/24
**discussion [2]** 24/1 37/18
**discussions [1]** 35/20
**dispute [1]** 4/23
**DISTRICT [4]** 1/1 1/1 1/13
  25/25
**DIVISION [1]** 1/2
**divisions [1]** 25/22
**document [4]** 9/12 9/25
  15/2 15/13
**documents [5]** 8/14 9/3
  15/13 23/14 30/5
**does [12]** 3/22 7/8 13/17
  15/8 15/9 19/20 22/25 23/4
  26/10 28/5 39/4 43/8
**doesn't [10]** 7/12 7/12 7/13
  7/24 15/11 19/16 23/12
  23/19 28/6 28/14
**doing [6]** 12/6 25/16 29/22
  34/10 39/10 42/15
**done [6]** 11/24 14/25 36/21
  39/15 41/25 42/9
**doubt [1]** 28/15
**down [2]** 25/18 42/15
**download [2]** 29/14 29/18
**draw [1]** 18/13
**due [4]** 34/21 39/9 42/2 42/3
**duplicated [1]** 16/22
**during [3]** 33/9 39/24 40/11
**duty [1]** 19/23
**DWQ [2]** 14/11 29/5
**DWQs [2]** 22/19 27/5
**DWS [3]** 37/5 37/11 37/13

**E**

**each [3]** 23/17 25/23 38/10
**early [2]** 11/10 31/13
**effective [1]** 14/23
**effects [1]** 34/9
**Egret [1]** 2/3
**either [1]** 16/13
**elected [2]** 25/22 26/3

**else [4]** 17/3 21/20 23/22
  32/4
**emails [1]** 10/19
**emergent [1]** 6/25
**emphasized [1]** 20/16
**employee [1]** 33/4
**employees [1]** 33/7
**employs [1]** 33/7
**end [1]** 43/5
**ended [1]** 19/15
**ending [1]** 11/13
**enforcement [1]** 27/11
**engaged [2]** 27/11 27/11
**enough [5]** 21/10 21/11
  41/10 41/16 41/18
**enter [1]** 8/1
**entered [1]** 5/4
**entirely [1]** 7/16
**entirety [2]** 7/11 23/17
**entities [1]** 26/5
**entitled [2]** 21/3 32/5
**entity [20]** 13/5 13/15 14/13
  16/5 23/2 23/12 23/13 25/1
  25/3 25/9 25/11 25/12 25/21
  26/16 27/3 27/4 27/25 30/8
  31/2 31/4
**episode [1]** 6/10
**episodic [5]** 6/6 18/22 31/8
  32/4 35/13
**especially [1]** 8/18
**essentially [3]** 8/9 9/9 42/3
**establish [9]** 20/20 20/21
  21/4 21/22 21/22 38/18
  40/24 42/8 42/18
**established [2]** 5/21 38/17
**et [1]** 1/3
**evasive [2]** 4/25 5/11
**even [14]** 5/3 7/21 8/20 8/21
  9/5 10/11 15/18 25/25 27/9
  27/24 39/19 39/24 40/2
  41/13
**evening [1]** 33/20
**event [4]** 18/14 20/24 31/8

**E**

**event... [1]** 32/4
**events [6]** 38/20 38/22 39/8 39/22 42/7 42/19
**ever [1]** 5/2
**every [2]** 25/21 36/25
**everybody [2]** 21/20 21/25
**everything [6]** 17/1 17/2 20/16 20/17 22/13 28/8
**evidence [1]** 6/12
**exactly [3]** 11/18 24/12 38/5
**example [1]** 30/6
**excruciating [1]** 42/12
**excused [2]** 5/14 44/9
**Exhibit [1]** 12/7
**exist [1]** 23/13
**exists [1]** 26/9
**expect [2]** 23/14 34/11
**explain [1]** 7/19
**explained [2]** 14/4 16/7
**explaining [1]** 13/11
**explore [1]** 22/1
**extend [1]** 6/11
**extent [1]** 38/2
**extreme [1]** 42/11
**eyes [1]** 39/10

**F**

**facility [7]** 15/19 18/7 18/15 19/13 20/22 26/12 33/15
**fact [1]** 14/11
**facts [4]** 19/9 19/11 20/22 43/3
**failed [1]** 10/1
**failure [3]** 4/19 6/9 6/9
**failures [1]** 6/13
**fair [1]** 39/18
**far [8]** 8/4 8/5 15/4 15/6 29/23 30/6 41/10 41/18
**fast [1]** 4/5
**fear [1]** 31/12
**February [12]** 4/17 7/1 7/20 8/7 8/25 9/23 11/10 11/11 37/3 38/7 38/7 40/12

**February 11th [1]** 11/10
**February 12th [3]** 8/7 9/23 11/11
**February 1st [2]** 7/1 7/20
**February 2nd [3]** 37/3 38/7 40/12
**Federal [2]** 5/12 5/15
**fentanyl [1]** 40/4
**figure [3]** 17/7 19/22 38/5
**file [11]** 4/25 16/19 16/19 16/21 16/21 18/10 18/10 18/11 22/10 33/21 40/3
**filed [6]** 5/1 5/3 5/5 12/17 13/1 15/25
**files [19]** 17/24 17/25 18/6 22/4 31/18 31/23 32/10 32/13 32/13 32/15 33/4 33/17 33/21 33/24 34/10 34/21 34/21 34/22
**find [8]** 15/10 15/14 15/15 21/20 27/13 28/11 42/7 43/5
**finding [3]** 17/5 17/6 29/19
**fine [8]** 4/11 19/19 34/1 36/3 40/10 40/18 43/14 43/25
**finish [2]** 24/22 38/11
**fired [2]** 22/6 34/3
**firm [4]** 1/21 12/5 17/8 21/18
**first [5]** 3/3 5/1 12/17 32/25 34/1
**five [3]** 6/16 6/18 21/7
**floor [9]** 33/6 33/8 33/16 33/17 37/6 37/13 37/20 37/22 40/9
**focusing [1]** 8/19
**folder [1]** 29/23
**follow [2]** 15/7 42/6
**follow-up [2]** 15/7 42/6
**force [1]** 34/3
**forced [1]** 4/25
**foreclosed [1]** 27/8
**foregoing [1]** 44/13
**found [2]** 15/18 20/5

**four [5]** 4/24 6/16 33/10 39/17 39/21
**frame [3]** 6/14 6/19 39/16
**framework [1]** 5/8
**Friday [5]** 12/11 15/22 18/16 24/17 33/25
**friends [1]** 24/13
**Frisco [1]** 1/18
**fully [1]** 24/7
**fundamental [3]** 38/12 38/23 39/25
**funding [1]** 26/7
**further [1]** 38/5

**G**

**GARCIA [5]** 1/9 1/20 3/7 3/22 4/15
**gave [4]** 22/10 29/20 30/7 34/1
**general [1]** 5/19
**getting [6]** 4/5 11/25 15/7 19/8 29/13 35/5
**Getty [1]** 3/17
**give [8]** 18/9 18/10 18/11 19/21 27/18 34/22 40/7 41/14
**given [5]** 29/15 29/25 34/25 36/25 40/10
**giving [1]** 29/23
**God [1]** 27/19
**goes [3]** 16/13 16/13 20/17
**going [21]** 4/5 9/18 11/1 14/12 18/7 18/13 22/16 23/11 24/14 24/15 28/15 28/21 29/23 31/17 34/8 35/2 35/15 41/11 41/19 42/20 42/21
**gone [2]** 18/1 41/10
**good [10]** 2/15 3/2 3/5 3/14 3/18 3/19 4/5 22/6 28/24 36/18
**got [13]** 12/15 12/24 15/17 16/17 17/21 22/5 22/6 22/6 34/3 40/3 40/4 40/4 41/11
**gotten [1]** 34/24

**G**

**GRINKE [2]**  1/16 3/11
**Grinke's [1]**  17/8
**guard [9]**  10/1 18/1 18/1
  19/18 19/23 19/23 31/15
  34/2 42/2
**guard's [1]**  10/6
**guards [23]**  8/6 8/24 9/23
  9/24 17/22 17/23 18/4 18/6
  18/8 18/13 18/17 22/2 33/5
  33/18 34/23 37/14 37/19
  37/20 39/8 39/12 40/9 40/18
  41/14
**guards' [1]**  32/5
**guy [2]**  19/14 22/8
**guys [1]**  35/2

**H**

**handled [1]**  13/4
**handles [1]**  23/17
**handling [1]**  15/23
**hands [1]**  14/14
**happy [3]**  32/22 32/23
  34/22
**hard [1]**  20/10
**HARRIS [67]**
**hasn't [1]**  10/20
**hate [1]**  31/5
**have [105]**
**haven't [15]**  15/25 18/23
  18/24 19/1 19/2 19/5 19/6
  29/13 29/15 29/25 29/25
  31/1 32/11 41/10 41/18
**having [8]**  13/10 19/3 20/10
  24/3 24/5 24/5 29/19 36/13
**he [55]**
**he's [12]**  3/24 19/14 19/24
  36/20 38/4 38/6 41/8 41/10
  41/17 41/18 41/19 42/14
**health [33]**  13/5 13/6 14/5
  14/21 15/1 16/5 17/10 17/11
  17/12 17/18 22/17 22/21
  23/2 24/16 24/20 24/23
  24/24 25/5 25/6 26/7 26/15

27/24 28/7 28/8 28/12 28/21
  29/3 31/2 31/14 34/14 35/23
  36/1 36/7
**hear [5]**  3/10 7/3 9/14 10/23
  32/25
**heard [1]**  30/17
**hearing [12]**  1/12 18/4 19/4
  21/1 28/18 35/1 35/13 35/15
  38/13 43/4 43/19 43/24
**heck [1]**  29/22
**held [1]**  35/10
**help [5]**  8/23 24/14 24/15
  27/17 31/17
**hence [1]**  38/16
**here [16]**  3/20 4/14 4/21
  14/14 15/8 15/9 16/3 18/19
  19/21 22/15 24/18 29/20
  34/5 34/14 40/2 42/22
**here's [6]**  29/10 29/20 35/21
  36/20 42/20 42/21
**heroin [1]**  40/4
**herself [1]**  26/2
**high [1]**  19/14
**highlight [2]**  4/2 4/8
**highlighted [1]**  17/12
**him [13]**  10/3 10/7 11/19
  12/17 13/24 19/18 20/1
  22/10 34/22 37/15 40/7
  40/16 41/14
**himself [3]**  26/2 40/5 42/10
**HIPAA [1]**  17/12
**his [14]**  11/20 16/2 19/14
  20/17 33/9 38/16 39/24
  40/14 40/15 41/3 41/6 41/19
  41/21 42/1
**history [1]**  36/24
**hit [1]**  15/16
**honest [1]**  27/19
**Honor [47]**
**HONORABLE [1]**  1/12
**hook [1]**  35/6
**hope [2]**  35/2 42/23
**hoping [1]**  16/1
**hour [1]**  11/12

hours [6]  11/10 11/14 11/17
  42/15 42/15 42/15
**housing [2]**  33/14 36/24
**HOUSTON [4]**  1/2 1/22 2/8
  16/13
**however [2]**  8/11 16/17
**HR [4]**  17/24 18/5 18/10
  33/21
**HSO [1]**  13/17
**hundreds [1]**  30/5

**I**

**I'll [4]**  28/15 30/20 35/7
  40/16
**I'm [52]**
**I've [6]**  3/21 24/11 25/15
  31/22 36/13 40/10
**IA [1]**  22/10
**identified [1]**  18/8
**identify [2]**  30/4 38/3
**identity [2]**  13/23 33/4
**ignored [1]**  19/25
**impose [1]**  22/16
**improper [1]**  5/22
**incarcerated [3]**  6/15 6/19
  39/19
**incarceration [1]**  39/24
**incident [4]**  11/19 18/14
  21/23 42/1
**incidents [3]**  6/13 38/19
  38/20
**include [2]**  6/7 33/19
**included [1]**  38/23
**includes [1]**  10/19
**including [2]**  4/18 6/24
**incoming [2]**  11/12 11/17
**incomplete [3]**  5/6 5/10
  5/11
**incorrect [11]**  8/11 8/17
  8/21 9/5 9/10 9/21 9/21 10/6
  10/11 10/11 10/12
**independent [2]**  25/24
  27/24
**index [1]**  12/8
**indifference [4]**  4/20 20/1

# I

**indifference... [2]** 22/12 40/7
**individual [6]** 21/23 23/17 33/12 34/10 40/3 41/15
**individuals [2]** 33/4 33/5
**information [31]** 7/6 7/13 7/14 7/24 7/25 8/2 8/9 9/1 11/23 12/4 12/10 13/22 13/22 14/9 14/12 23/9 23/10 23/19 23/21 23/23 24/6 28/4 28/5 28/7 28/11 28/14 28/22 28/25 29/2 30/9 42/5
**inherently [1]** 5/22
**injuries [1]** 19/17
**inmate [15]** 11/19 11/24 20/1 21/23 33/14 33/14 33/15 33/16 34/23 36/24 36/25 37/1 37/21 40/14 42/17
**inmates [8]** 18/15 38/21 39/2 39/3 39/7 39/10 40/22 42/16
**instance [1]** 6/10
**insufficient [1]** 5/5
**interfere [1]** 35/3
**interlocal [3]** 14/20 16/17 16/18
**interpret [5]** 14/17 15/19 27/19 36/14 36/17
**interpretation [1]** 38/13
**interpreting [3]** 13/11 27/17 29/7
**interrogatories [12]** 4/22 4/23 4/24 5/2 5/4 5/15 5/25 6/21 6/22 9/7 15/8 27/16
**interrogatory [22]** 5/11 6/23 7/16 7/17 7/18 8/2 8/4 8/4 8/12 8/13 9/8 9/19 10/5 10/9 10/10 10/13 10/14 11/23 13/1 14/2 16/4 16/8
**interrupt [1]** 26/21
**interrupting [1]** 26/25
**INTERVENOR [12]** 1/20

27/21 32/14 33/1 36/6 41/24 44/2
**intervenor's [1]** 35/7
**Intervenors [2]** 1/10 13/19
**intervenors' [1]** 14/1
**interview [1]** 37/19
**investigative [3]** 16/11 16/19 40/3
**involved [1]** 21/20
**involving [2]** 11/6 11/8
**isn't [3]** 7/10 38/19 42/10
**issue [24]** 6/2 7/16 9/8 13/2 17/3 17/9 17/18 18/18 18/22 20/15 22/20 22/23 22/25 25/14 27/5 27/25 27/25 31/16 32/2 32/18 32/24 33/1 33/3 38/13
**issued [2]** 14/11 22/19
**issues [16]** 5/6 8/5 12/12 17/6 17/12 20/11 22/2 22/15 24/8 27/22 27/23 31/9 34/14 35/5 40/14 40/23
**its [4]** 7/11 23/17 25/3 25/3
**itself [3]** 5/21 10/12 10/18

# J

**JA [1]** 37/3
**JA-7 [1]** 37/3
**jail [21]** 4/17 6/20 10/15 11/6 13/7 14/23 15/1 15/19 16/11 17/22 21/5 25/6 27/12 29/6 30/7 34/2 36/17 39/17 40/5 40/9 41/12
**JENKINS [1]** 1/9
**JR [1]** 8/15
**JUDGE [8]** 1/13 19/3 21/13 35/18 36/10 43/11 44/9 44/10
**jury [1]** 21/24
**just [38]** 4/2 6/10 7/11 10/3 14/10 14/11 15/2 15/15 18/17 19/11 19/22 20/18 20/24 21/19 21/21 22/14 22/20 23/9 24/22 27/2 27/4

27/8 28/5 28/15 29/5 29/17 29/25 30/2 30/24 31/12 32/3 32/9 32/11 38/8 39/14 41/10 41/16 41/18

# K

**keep [4]** 9/20 12/23 34/6 38/9
**KEITH [1]** 1/12
**Kevin [4]** 4/16 11/9 12/8 37/2
**key [1]** 4/8
**killed [2]** 40/4 41/12
**killing [1]** 42/10
**kind [7]** 11/3 11/4 13/12 19/14 20/3 40/6 43/1
**know [73]**
**knowing [1]** 28/8
**knowledge [2]** 7/15 40/6
**knows [1]** 12/19
**Kristin [1]** 3/17

# L

**larger [1]** 22/2
**last [1]** 7/3
**later [3]** 11/14 43/20 43/21
**law [6]** 1/17 1/21 16/12 21/18 27/11 30/15
**lawsuit [2]** 7/10 23/5
**lawyer [4]** 12/14 24/15 27/5 27/10
**lawyers [7]** 12/7 13/16 14/3 14/3 14/11 22/18 24/12
**laying [1]** 42/14
**leadership [1]** 12/3
**leading [1]** 39/15
**League [1]** 2/4
**least [1]** 35/4
**leave [2]** 11/15 35/2
**leaves [1]** 42/23
**led [1]** 38/22
**left [1]** 29/8
**legal [7]** 5/8 12/1 25/9 25/9 25/11 26/5 31/3
**let [6]** 9/14 10/23 13/2 24/22

**L**

**let...** [2]  32/25 43/11
**Let's** [2]  21/8 43/5
**letters** [2]  8/15 10/19
**levels** [1]  15/20
**Lighten** [2]  18/1 22/12
**like** [17]  3/25 4/8 11/5 11/15
  14/10 18/7 24/4 24/8 25/4
  25/18 26/3 29/16 33/10
  34/13 38/5 38/8 41/13
**likely** [1]  37/20
**limit** [2]  34/20 38/24
**limitation** [2]  40/21 41/2
**limitations** [1]  41/6
**limited** [9]  6/5 6/10 6/14
  6/14 24/3 38/15 39/14 39/16
  40/21
**limits** [2]  28/1 31/13
**line** [1]  18/13
**links** [1]  29/23
**listen** [1]  30/24
**litigation** [1]  13/8
**little** [1]  19/14
**live** [2]  6/7 38/17
**logs** [1]  6/13
**long** [2]  19/12 19/20
**look** [6]  9/2 29/19 29/21
  30/1 36/21 41/11
**looking** [3]  30/5 34/2 42/16
**lot** [8]  12/18 16/22 25/13
  26/11 29/11 29/12 29/22
  37/11
**loud** [2]  11/3 11/4

**M**

**made** [7]  5/19 5/23 5/24
  16/18 24/2 28/2 39/1
**main** [3]  5/8 6/2 34/13
**maintenance** [1]  19/14
**Majors** [1]  13/9
**make** [4]  10/1 16/17 42/21
  42/22
**making** [2]  5/22 19/24
**man** [1]  20/5

**management** [1]  3/9
**many** [1]  11/25
**March** [1]  6/16
**March 2022** [1]  6/16
**material** [9]  5/17 16/15
  18/13 19/9 22/19 29/15
  29/18 29/24 37/12
**materials** [4]  14/5 17/21
  18/4 30/13
**matter** [2]  6/3 44/14
**may** [8]  4/12 4/13 5/10
  20/12 32/14 35/8 44/9 44/15
**maybe** [5]  4/1 4/9 9/9 31/4
  31/6
**mean** [27]  7/13 7/24 14/13
  14/15 14/18 15/8 15/9 15/20
  15/21 15/22 15/24 16/9
  17/13 18/3 18/11 18/14
  18/17 18/17 20/5 21/13
  25/21 27/6 29/4 29/16 29/22
  34/4 36/13
**meaning** [1]  13/4
**meantime** [1]  42/23
**mechanical** [1]  2/13
**medical** [42]  4/20 6/6 6/11
  6/24 7/5 7/6 7/9 13/3 13/4
  13/10 13/12 13/22 14/12
  14/16 14/22 14/24 14/25
  15/4 15/4 15/7 17/15 19/12
  19/13 22/22 25/4 25/4 26/9
  26/13 26/14 26/14 26/17
  27/18 28/20 29/6 29/7 39/1
  39/3 39/5 39/6 39/7 39/22
  42/13
**medication** [1]  12/20
**mention** [1]  32/10
**messed** [1]  22/8
**met** [1]  12/25
**microphone** [1]  3/9
**midnight** [2]  11/10 11/15
**might** [2]  31/12 32/2
**mind** [1]  15/10
**minute** [1]  38/9
**mischaracterizes** [1]  6/4

**misunderstanding** [1]
  18/20
**MOHAMMED** [2]  1/20 3/6
**Monell** [8]  4/19 6/8 18/19
  18/20 20/19 21/19 21/22
  38/17
**MONICA** [2]  2/6 44/16
**month** [1]  43/6
**months** [7]  6/17 21/7 32/6
  33/10 33/13 39/17 39/21
**more** [12]  4/6 4/9 6/21
  25/19 26/12 26/12 26/17
  26/17 28/8 28/14 31/5 31/6
**morning** [4]  11/10 11/12
  11/17 36/22
**most** [4]  11/19 16/1 26/10
  30/21
**mother** [1]  4/16
**motion** [14]  1/12 3/20 4/21
  5/1 5/3 5/3 5/5 6/3 12/15
  16/1 30/21 31/25 32/15 33/3
**moved** [1]  33/16
**movement** [1]  33/14
**Mr** [2]  15/23 17/8
**Mr.** [2]  19/13 22/12
**Mr. Lighten** [1]  22/12
**Mr. Sanchez-Trejo** [1]
  19/13
**MS** [2]  2/6 44/16
**Ms.** [1]  3/22
**Ms. Garcia** [1]  3/22
**much** [3]  3/8 10/22 44/7
**multiple** [2]  38/19 38/22
**must** [2]  5/16 6/11
**my** [29]  3/17 12/4 12/7 12/7
  12/25 13/8 13/14 13/20
  13/25 14/14 14/15 15/12
  16/2 22/16 24/13 25/1 25/11
  26/8 29/21 30/21 31/5 31/7
  34/7 35/16 35/21 40/21 42/4
  42/11 43/24
**myself** [1]  29/19

**N**

**names** [3]  7/6 8/8 9/1

**N**

**narrow [4]** 6/5 20/17 31/18 41/25
**narrowly [1]** 23/3
**nature [3]** 8/5 31/23 38/19
**NAVARRO [3]** 2/2 2/3 3/15
**necessary [1]** 31/4
**need [22]** 9/2 9/2 18/4 18/5 21/20 22/14 23/9 24/16 26/9 26/18 26/23 27/2 28/5 28/11 30/4 31/24 32/12 32/13 38/18 39/11 40/23 42/18
**needs [4]** 4/10 4/20 25/2 29/4
**neglect [3]** 39/4 39/6 39/22
**neglected [2]** 39/3 39/8
**negligence [1]** 22/9
**neither [1]** 13/17
**never [2]** 15/10 25/14
**new [1]** 20/4
**next [1]** 41/9
**nice [1]** 25/18
**night [8]** 17/23 18/1 21/25 22/2 33/18 34/24 36/22 40/10
**nine [1]** 40/12
**no [38]** 1/4 5/24 6/23 7/14 7/17 7/18 7/23 7/24 8/2 8/4 8/4 8/8 8/11 8/11 8/15 9/8 9/19 9/22 10/10 10/11 10/14 13/5 15/9 16/4 18/14 18/17 18/17 22/11 23/8 23/9 26/6 27/22 29/4 32/20 34/1 35/17 40/15 40/15
**non [1]** 16/20
**non-prosecute [1]** 16/20
**not [78]**
**nothing [1]** 28/8
**notice [1]** 27/5
**notices [1]** 10/19
**noticing [2]** 29/10 29/12
**November [1]** 6/16
**November 2021 [1]** 6/16

**new [25]** 13/1 15/6 16/20 17/4 18/3 18/4 18/16 18/21 19/9 19/9 19/10 19/11 19/22 22/14 26/13 29/22 29/22 30/17 31/13 35/1 36/12 38/9 41/1 41/15 42/6
**number [17]** 8/14 8/16 8/20 8/20 8/21 8/23 9/2 9/5 9/9 9/12 9/21 15/10 15/11 29/21 30/25 34/20 38/5
**numbers [1]** 30/4
**numerous [1]** 23/16
**nurses [2]** 13/23 22/24
**nursing [1]** 17/14

## O

**object [1]** 16/15
**objections [7]** 4/25 5/13 5/19 5/22 5/23 5/24 12/18
**obligation [2]** 10/4 22/16
**obtain [1]** 40/23
**occurred [3]** 11/9 29/9 38/22
**OCR [2]** 15/13 15/13
**OCTEVIA [2]** 1/3 3/11
**OD'd [1]** 19/20
**off [2]** 11/1 21/21
**offer [1]** 41/7
**offering [1]** 40/8
**Office [11]** 12/2 13/4 13/7 13/7 14/15 14/16 14/21 23/6 23/18 26/10 27/10
**Official [1]** 2/7
**officials [1]** 25/22
**one [23]** 4/5 6/10 6/10 7/14 7/23 7/24 9/10 11/5 13/2 16/14 18/1 20/24 22/3 22/4 23/8 23/10 24/7 25/5 26/20 30/10 30/25 35/12 36/9
**ones [2]** 18/18 33/17
**ongoing [2]** 39/20 39/23
**only [13]** 5/23 6/15 8/23 9/25 10/18 12/12 22/3 22/15 31/2 38/15 38/24 38/25 39/20

**operating [1]** 21/5
**Operational [1]** 37/1
**opportunity [1]** 34/25
**oppose [1]** 5/3
**opposing [1]** 24/10
**order [7]** 8/1 20/20 20/21 21/4 22/6 37/12 39/5
**organization [1]** 25/10
**organized [1]** 25/1
**original [2]** 3/12 18/5
**originally [1]** 14/23
**other [30]** 3/11 3/22 8/13 8/14 9/14 12/13 14/3 14/10 17/9 18/4 21/13 22/18 25/23 27/5 32/5 34/21 37/20 38/10 38/21 38/21 39/1 39/2 39/2 39/7 39/8 39/14 40/22 41/11 41/14 42/7
**others [1]** 17/5
**ought [1]** 24/9
**our [20]** 5/8 6/13 7/16 8/17 12/1 13/3 13/13 22/8 31/9 31/9 32/2 38/13 38/14 38/18 38/20 38/24 38/25 39/17 42/6 43/4
**out [18]** 11/15 12/22 13/12 16/19 17/4 17/7 17/20 19/20 19/22 21/12 24/9 26/13 26/17 36/13 38/5 43/2 43/3 43/13
**outline [1]** 4/1
**outlines [1]** 14/25
**outside [4]** 16/12 21/3 35/3 35/4
**over [8]** 6/21 12/12 12/14 13/16 24/13 26/16 29/9 38/9
**overlap [1]** 31/9
**own [5]** 7/19 10/6 13/16 25/3 25/4

**P**

**p.m [8]** 1/10 7/1 7/21 8/25 35/10 43/7 43/12 44/11
**packet [4]** 16/11 16/12 17/21 29/16

**page [3]** 15/10 15/15 29/20
**paid [2]** 24/23 24/25
**pain [2]** 42/12 42/14
**painful [3]** 7/2 7/5 7/22
**papers [3]** 3/21 3/23 4/2
**paralegal [3]** 3/17 12/2 15/12
**part [6]** 7/3 22/2 22/12 25/21 25/24 36/19
**particular [3]** 11/18 11/24 33/16
**party [14]** 5/10 5/16 14/10 14/13 17/18 24/16 27/6 27/23 29/5 31/4 34/15 35/25 36/1 36/7
**pattern [11]** 4/18 6/8 6/12 38/18 38/19 39/5 39/12 39/20 40/24 42/8 42/18
**PAUL [2]** 1/16 3/11
**pause [1]** 35/10
**pay [1]** 22/7
**PC [1]** 2/3
**PD [1]** 16/13
**people [9]** 3/10 18/9 22/17 24/20 24/22 29/6 34/25 37/20 41/11
**performance [1]** 22/1
**period [5]** 11/16 21/6 33/9 37/22 40/11
**permission [1]** 16/17
**person [3]** 22/3 22/5 25/9
**personally [1]** 23/15
**personnel [7]** 31/18 31/23 32/10 32/12 32/13 32/15 34/20
**pertaining [3]** 6/19 11/19 37/2
**pertains [3]** 5/11 5/14 11/24
**phone [6]** 3/3 3/10 3/24 35/6 35/6 38/11
**phrase [1]** 15/12
**pick [1]** 41/17
**pile [1]** 21/21

**place [4]** 37/23
**Plaintiff [10]** 1/10 1/20 3/6 4/1 4/8 4/15 4/22 4/25 11/6 43/15
**Plaintiff's [6]** 6/4 6/5 6/7 20/24 30/18 31/20
**PLAINTIFF-INTERVENOR [2]** 1/20 4/15
**Plaintiff-Intervenors [1]** 1/10
**plaintiffs [10]** 1/4 1/16 3/12 11/25 12/12 21/14 30/22 35/6 37/11 41/24
**pleadings [4]** 4/9 5/9 19/7 19/8
**please [9]** 4/6 8/6 20/14 26/21 26/25 26/25 30/19 31/21 35/11
**pled [1]** 31/11
**PLLC [2]** 1/17 1/21
**pod [2]** 34/23 37/3
**point [5]** 8/22 17/20 21/12 24/2 35/18
**point-blank [1]** 8/22
**pointed [1]** 36/13
**points [1]** 4/9
**policy [3]** 22/9 32/7 42/8
**portal [3]** 12/4 12/6 15/2
**position [5]** 13/22 22/8 28/13 31/9 39/18
**possession [1]** 13/3
**possibly [1]** 16/23
**potential [1]** 23/13
**practice [4]** 4/18 6/8 6/12 20/21
**precedent [2]** 5/21 31/12
**pretrial [2]** 4/16 11/6
**pretty [3]** 12/19 22/6 27/15
**previously [1]** 35/14
**prior [6]** 6/12 10/8 19/17 40/14 40/15 40/17
**privacy [1]** 20/4
**private [1]** 26/14
**privilege [1]** 5/19

**probably [1]** 22/6
**problem [6]** 15/20 22/3 27/7 34/6 36/19 41/9
**Procedure [3]** 5/9 5/13 5/16
**proceed [4]** 4/12 4/13 14/6 14/8
**proceedings [3]** 2/13 35/10 44/14
**process [1]** 12/5
**produce [7]** 12/5 13/10 14/16 17/24 17/25 30/14 31/17
**produced [28]** 2/13 8/13 10/20 14/20 16/9 16/21 16/23 16/24 17/1 17/2 18/3 18/12 19/10 20/7 20/8 20/9 26/8 29/11 30/14 33/13 33/17 33/21 33/23 34/21 36/14 36/17 37/1 37/10
**producing [2]** 12/8 18/13
**production [6]** 4/22 30/10 30/10 31/14 33/3 42/22
**productions [4]** 5/12 5/15 5/18 5/24
**professionals [1]** 7/7
**prolonged [1]** 4/24
**proper [1]** 42/12
**properly [1]** 9/6
**prosecute [1]** 16/20
**prove [1]** 32/7
**provide [6]** 4/1 8/8 9/1 11/23 20/12 29/7
**provided [5]** 6/25 7/7 10/20 15/1 20/16
**providers [2]** 26/13 26/15
**provides [3]** 14/22 25/4 26/9
**providing [2]** 12/9 13/12
**public [2]** 25/5 31/2
**publishing [1]** 12/24
**purposes [3]** 8/23 20/4 31/10
**pursue [1]** 14/12
**put [4]** 12/22 25/17 39/9

**P**

**put... [1]** 41/6
**putting [1]** 41/3

**Q**

**question [18]** 8/10 8/17
8/18 8/22 8/24 9/4 9/7 9/10
9/22 9/22 13/9 13/25 21/24
23/12 26/7 31/20 34/19 40/5
**questions [1]** 34/7
**quick [3]** 9/19 30/3 43/11
**quickly [2]** 9/19 31/7
**quite [3]** 12/22 16/23 18/12
**quote [1]** 25/24

**R**

**raised [2]** 32/20 32/20
**raises [1]** 19/18
**range [1]** 38/3
**Rangers [7]** 16/14 16/14
16/15 16/16 16/18 17/22
40/3
**rather [2]** 38/20 39/14
**reach [1]** 42/24
**reached [2]** 35/19 35/22
**reaction [1]** 12/20
**read [1]** 3/21
**reading [1]** 36/20
**real [4]** 9/19 19/16 30/3
43/11
**reality [2]** 8/17 9/25
**realize [2]** 20/2 20/4
**really [8]** 18/17 22/15 25/8
25/21 27/9 29/8 29/25 34/2
**reason [1]** 31/6
**reasonable [1]** 37/23
**reasonably [1]** 34/11
**receive [1]** 30/12
**received [1]** 30/8
**receiving [1]** 42/12
**recently [1]** 15/3
**record [2]** 37/2 44/14
**recorded [1]** 2/13
**records [29]** 6/17 6/18 7/5
13/3 13/10 13/11 13/11

20/8 20/9 24/5 27/18 28/21
29/7 29/11 29/14 30/7 36/14
36/17 38/4 38/5 39/1 39/18
40/22 43/2
**reference [5]** 8/10 8/15 8/16
8/23 15/10
**referenced [3]** 8/17 10/1
15/11
**referencing [2]** 37/5 38/4
**referred [1]** 16/2
**referring [1]** 38/6
**reflected [1]** 7/5
**regarding [2]** 10/16 40/14
**regardless [1]** 15/18
**regards [2]** 4/21 6/3
**regular [1]** 12/12
**relate [1]** 39/4
**related [9]** 5/19 20/22 38/19
38/20 38/21 39/1 39/24
40/22 41/25
**relates [3]** 5/17 7/4 38/15
**relating [1]** 21/3
**released [1]** 7/20
**relevant [1]** 38/25
**relief [1]** 42/14
**rely [1]** 12/2
**rendered [1]** 16/20
**renewed [1]** 15/3
**reply [4]** 16/2 16/3 16/3
24/2
**report [7]** 10/6 10/17 22/17
29/16 33/14 33/14 36/24
**reported [1]** 7/2
**REPORTER [3]** 2/6 2/7
44/16
**reporter's [1]** 35/3
**reports [6]** 10/18 17/22
18/9 37/6 37/11 37/13
**represent [2]** 13/7 30/21
**representation [1]** 25/16
**request [16]** 4/22 5/12 5/15
5/18 5/24 7/9 10/12 12/3
16/17 16/18 18/5 18/16

**requested [1]** 31/23
**requesting [1]** 39/1
**requests [7]** 6/13 11/23 30/3
30/6 30/10 39/1 42/7
**required [3]** 16/11 30/13
30/14
**research [1]** 17/4
**resolved [1]** 36/9
**resort [1]** 42/13
**respond [10]** 7/15 8/2 9/6
10/13 10/17 13/13 25/23
27/15 29/19 30/2
**responded [3]** 5/2 7/22
27/16
**responding [3]** 11/22 13/9
30/3
**response [20]** 7/7 7/17 8/10
9/7 9/24 10/5 10/9 12/7 14/2
14/17 16/2 20/13 23/3 23/9
24/3 27/25 28/1 28/6 28/16
28/17
**responses [7]** 5/4 5/7 5/12
6/22 13/1 15/25 29/21
**responsible [2]** 23/13 34/23
**responsive [1]** 5/17
**result [3]** 6/11 42/13 42/17
**resuscitated [1]** 42/17
**retained [1]** 13/6
**retention [1]** 14/15
**review [1]** 12/5
**reviewed [1]** 4/2
**revisited [2]** 12/17 32/2
**RFPs [1]** 4/24
**RICARDO [2]** 2/2 3/14
**right [15]** 11/7 13/2 18/21
19/22 20/16 20/18 20/21
23/1 27/12 27/13 28/1 28/3
29/22 39/3 42/18
**ripple [1]** 34/9
**rise [1]** 40/7
**rocket [1]** 42/25
**Rodriguez [1]** 2/3
**room [2]** 35/8 35/9

**Ross [1]** 15/24
**rostrum [2]** 3/10 30/19
**round [1]** 10/7
**rounds [6]** 9/25 10/3 19/24
  39/10 42/4 42/15
**routinely [1]** 39/12
**RPR [2]** 2/6 44/16
**Rule [1]** 5/9
**ruled [8]** 6/7 18/24 19/2
  19/6 20/19 31/10 32/8 35/14
**Rules [2]** 5/13 5/16
**ruling [6]** 16/20 31/13
  34/10 34/11 35/16 35/18
**run [2]** 25/22 42/3
**running [1]** 42/16
**runs [1]** 27/9
**rushed [2]** 39/9 39/12
**Rusk [1]** 2/7
**Russell [1]** 15/24

**S**

**said [16]** 10/1 13/10 13/14
  14/4 15/14 19/24 24/14
  24/17 26/8 27/17 28/10
  28/10 33/10 34/13 36/21
  38/8
**same [7]** 7/18 8/14 9/8 9/19
  10/10 43/20 43/22
**Sanchez [7]** 4/16 11/9 12/9
  12/13 19/13 24/18 37/2
**Sanchez-Trejo [6]** 4/16
  11/9 12/9 12/13 24/18 37/2
**Santee [1]** 2/3
**saved [1]** 42/18
**saw [5]** 8/8 9/1 13/24 19/18
  20/1
**say [17]** 8/16 9/8 9/20 10/10
  18/17 22/20 22/25 23/3 23/9
  25/21 28/6 30/18 32/4 34/8
  36/5 36/15 41/4
**saying [16]** 7/23 8/10 10/17
  13/21 15/8 15/12 18/5 19/8
  24/4 27/17 38/11 40/8 41/18

**says [4]** 7/7 8/24 9/24 32/5
**schedules [3]** 17/16 37/5
  40/17
**science [1]** 42/25
**scope [6]** 6/4 13/13 18/18
  34/11 36/12 39/19
**search [1]** 41/20
**searched [1]** 15/14
**seat [1]** 20/3
**seated [1]** 35/11
**sec [1]** 19/15
**second [2]** 24/22 26/20
**Section [2]** 40/7 40/15
**sector [1]** 26/14
**security [5]** 8/6 8/24 16/9
  31/14 32/5
**see [13]** 15/14 15/15 16/3
  26/15 26/16 27/3 35/4 37/6
  39/19 40/14 42/4 42/23 44/6
**seems [1]** 15/23
**segregated [1]** 14/24
**segregation [1]** 11/11
**send [2]** 12/3 16/11
**sent [6]** 8/12 8/12 8/13
  29/15 30/7 30/9
**separate [17]** 13/5 13/15
  13/15 16/5 23/2 24/25 25/3
  25/8 25/9 25/11 25/12 26/1
  26/4 26/15 27/3 27/4 31/3
**serious [4]** 4/20 11/19 12/19
  22/15
**served [2]** 5/5 12/17
**services [2]** 14/22 15/1
**set [3]** 12/18 31/12 43/4
**sets [2]** 4/23 4/24
**several [2]** 18/16 33/13
**SHARIFF [3]** 1/20 1/21 3/6
**She [1]** 4/17
**She's [1]** 4/15
**Sheriff's [16]** 7/8 7/10 7/23
  12/1 13/4 13/7 14/15 14/15
  14/21 23/4 23/6 23/18 24/3
  26/10 27/10 28/1

**shift [4]** 11/12 11/20 33/20
  33/20
**shifts [3]** 11/12 11/12 33/19
**short [3]** 39/12 39/23 42/3
**should [8]** 9/4 21/2 36/16
  38/14 41/24 41/24 42/9
  43/14
**shouldn't [1]** 39/13
**show [4]** 37/15 39/5 39/11
  39/21
**showed [1]** 4/23
**showing [1]** 29/19
**shown [2]** 36/13 36/16
**side [1]** 9/14
**Signature [1]** 44/16
**similar [7]** 8/5 34/18 38/19
  38/20 38/22 40/22 42/7
**Similarly [1]** 39/8
**simply [2]** 10/17 25/9
**sir [2]** 3/19 10/25
**sitting [3]** 19/19 19/20 20/2
**situation [1]** 14/4
**slouched [1]** 42/14
**smaller [1]** 26/11
**solve [2]** 23/11 27/7
**some [14]** 4/8 4/9 12/20
  17/5 17/6 17/7 20/12 22/2
  22/6 29/12 40/3 40/4 40/4
  40/6
**Somebody [1]** 26/10
**somehow [1]** 25/24
**someone [2]** 7/12 23/22
**something [2]** 30/18 41/13
**sometime [1]** 11/9
**somewhat [2]** 14/14 25/18
**soon [1]** 35/7
**sorry [5]** 12/21 14/7 18/25
  19/3 29/1
**sort [4]** 4/8 21/21 23/21
  29/8
**sounds [1]** 24/8
**SOUTHERN [1]** 1/1
**speak [2]** 16/6 31/6
**speaks [1]** 10/17

## S

**Special [1]** 13/6
**specific [8]** 9/3 15/6 20/18 21/23 30/4 30/6 30/6 42/1
**specifically [3]** 6/21 33/8 39/25
**specificity [1]** 10/12
**spokes [1]** 13/8
**spokesperson [3]** 15/19 27/9 29/6
**spokespersons [2]** 12/25 27/14
**squarely [1]** 32/18
**staff [8]** 11/17 12/2 13/23 13/23 15/13 17/15 18/15 22/24
**staffing [7]** 6/12 37/6 37/15 39/13 39/23 40/11 42/3
**stamp [1]** 12/5
**standards [1]** 10/15
**start [5]** 19/10 19/11 37/23 41/13 41/15
**started [1]** 40/12
**starting [2]** 11/13 37/3
**state [2]** 5/16 26/17
**stated [1]** 20/18
**statement [2]** 41/3 41/6
**STATES [2]** 1/1 1/13
**statute [1]** 25/2
**stenography [1]** 2/13
**step [3]** 35/3 35/4 41/9
**still [11]** 5/5 8/22 8/24 9/11 9/11 9/22 18/18 20/11 20/25 24/18 42/5
**stop [1]** 26/25
**Street [2]** 1/21 2/7
**strictly [1]** 6/14
**structured [1]** 25/20
**studied [1]** 31/1
**stuff [1]** 39/23
**subject [1]** 6/3
**submit [1]** 22/7
**subpoena [1]** 16/15
**subsumed [1]** 26/12

**such [6]** 6/13 8/15 34/4 39/22 42/18 42/19
**suffering [1]** 40/22
**sufficient [1]** 10/12
**sufficiently [1]** 33/23
**suggest [2]** 14/6 14/8
**suggesting [1]** 41/9
**suggestion [1]** 32/10
**Suite [4]** 1/18 1/22 2/4 2/8
**supervise [2]** 4/19 6/9
**supervisors [1]** 13/20
**supposed [1]** 29/17
**sure [1]** 30/25
**surprised [1]** 26/16
**surrounding [2]** 17/12 17/18
**suspension [1]** 18/2
**system [1]** 6/13

## T

**take [3]** 3/3 11/1 29/9
**taken [3]** 27/13 29/13 30/1
**taking [1]** 29/17
**talk [2]** 19/11 42/24
**talked [2]** 14/3 24/17
**talking [6]** 13/8 15/17 24/8 31/13 31/14 38/9
**TCJS [5]** 10/17 29/16 29/17 30/12 30/14
**telephonic [1]** 35/1
**tell [8]** 15/24 15/24 18/8 18/20 20/25 28/4 35/4 35/19
**telling [4]** 14/16 19/22 29/15 34/7
**temporarily [1]** 35/2
**tendered [1]** 22/7
**terms [4]** 11/18 13/22 32/12 32/13
**TEXAS [11]** 1/1 1/6 1/18 1/22 2/4 2/8 3/15 5/9 10/15 16/14 28/3
**than [4]** 3/22 26/11 43/2 43/3
**Thank [17]** 3/8 3/16 4/12 4/14 6/1 10/22 10/22 10/24

**such [6]** 6/13 8/15 34/4 21/8 21/10 21/11 30/20 44/5 44/6 44/8 44/9 44/10
**that [287]**
**that's [55]**
**their [36]** 5/1 5/4 5/6 6/20 7/7 7/16 7/19 8/8 8/21 9/1 9/24 9/24 9/25 10/5 10/6 10/8 12/3 13/16 16/18 17/16 17/24 17/25 18/9 18/10 18/11 18/19 20/19 21/18 21/19 22/4 23/3 23/9 28/6 32/15 39/10 39/10
**them [46]**
**themselves [1]** 41/12
**then [24]** 3/4 10/13 14/6 16/8 17/8 17/20 20/16 21/21 25/4 27/5 28/7 28/14 28/22 28/25 30/17 33/1 33/20 37/17 37/24 40/18 40/19 42/13 44/1 44/6
**there's [9]** 16/12 17/5 17/11 22/11 23/19 29/11 37/11 39/20 40/15
**these [11]** 8/2 11/1 12/12 15/13 18/8 18/9 31/8 37/19 37/20 39/12 39/22
**they [95]**
**they'll [2]** 27/3 36/1
**they're [29]** 8/16 8/19 9/20 11/3 11/4 13/21 14/12 15/4 15/12 15/17 17/9 18/5 19/15 21/13 25/20 26/14 27/7 27/16 29/14 29/17 29/24 30/3 31/2 31/3 33/23 37/12 37/14 39/10 42/15
**they've [2]** 5/4 22/3
**thing [6]** 7/18 9/20 10/10 22/17 29/10 35/12
**things [6]** 20/23 21/3 21/5 21/6 23/18 34/7
**think [30]** 11/24 12/19 14/24 16/14 16/22 16/25 18/20 18/21 19/21 22/14 28/10 29/9 30/11 32/1 32/6

**think...** [15] 32/18 34/13
34/15 34/18 36/9 36/19
37/22 37/25 38/6 38/12
40/13 41/8 41/17 43/1 43/3
**thinks** [2] 41/10 41/15
**third** [13] 14/10 14/13
17/18 24/16 27/6 27/23
27/24 29/5 31/4 34/15 35/25
36/1 36/7
**third-party** [5] 14/13 27/6
27/23 29/5 31/4
**this** [103]
**thorough** [1] 16/24
**those** [19] 5/22 17/14 20/7
20/8 20/9 24/5 26/1 26/6
26/6 33/21 34/24 34/25
37/15 37/19 38/3 39/21
40/17 40/18 40/23
**though** [3] 7/21 26/5 31/17
**thought** [3] 19/12 19/19
20/2
**thousand** [1] 18/16
**thousands** [1] 30/5
**three** [6] 6/18 24/13 32/6
33/10 39/17 39/21
**through** [20] 5/23 9/19 12/6
12/16 12/25 13/1 14/20 15/1
17/17 18/6 29/5 29/14 29/18
30/5 36/8 37/3 37/13 37/17
42/3 42/16
**throughout** [1] 18/7
**tied** [1] 14/14
**time** [25] 4/6 5/2 6/14 6/19
8/12 8/18 19/12 19/20 20/10
21/6 27/13 29/10 29/13
29/17 30/1 32/1 33/16 34/1
36/25 37/8 37/22 38/3 39/16
42/4 43/17
**today** [13] 4/15 4/21 24/19
28/10 28/11 32/1 32/19 34/5
34/9 35/5 35/18 38/13 43/10
**together** [1] 25/17
**toilet** [3] 19/19 20/3 20/3

**told** [6] 24/11 24/12 24/12
24/15 34/1 37/10
**too** [3] 3/16 4/5 28/21
**top** [2] 25/18 27/14
**top-down** [1] 25/18
**tort** [4] 21/23 21/24 22/11
40/2
**totality** [1] 34/12
**towards** [1] 43/5
**tracks** [2] 33/15 36/25
**train** [2] 4/19 6/9
**trained** [1] 33/23
**training** [8] 6/13 7/9 7/15
7/24 17/25 18/11 33/22
33/24
**transcript** [2] 2/13 44/13
**transcription** [1] 2/13
**transition** [1] 29/9
**treat** [5] 24/16 27/2 34/15
35/25 36/7
**treatment** [4] 6/25 39/5
39/6 39/7
**Trejo** [7] 4/16 11/9 12/9
12/13 19/13 24/18 37/2
**trial** [1] 21/24
**tried** [3] 11/23 12/23 16/15
**tries** [1] 8/9
**trouble** [1] 19/3
**truth** [1] 27/19
**try** [6] 4/5 9/13 9/14 38/2
42/7 42/24
**trying** [8] 8/16 8/19 9/20
17/3 34/9 38/24 39/16 43/13
**turn** [1] 33/11
**turned** [1] 19/19
**turns** [1] 16/19
**two** [11] 4/23 6/17 9/10
11/13 13/8 15/20 17/5 24/13
33/19 42/22 43/10

## U

**unaware** [1] 23/16
**unclear** [2] 23/15 23/22
**under** [7] 5/9 5/12 5/15 5/20
12/2 25/1 25/20

**understaffing** [2] 39/9
39/13
**understand** [5] 21/15 23/1
26/4 31/16 34/10
**understanding** [8] 18/19
20/10 20/17 21/19 25/1
25/12 25/17 35/21
**unexpected** [1] 12/19
**unfortunately** [1] 43/1
**unit** [2] 33/6 33/8
**UNITED** [2] 1/1 1/13
**units** [1] 25/8
**unless** [1] 5/14
**until** [2] 9/23 20/4
**untimely** [1] 5/13
**up** [14] 3/9 9/13 9/15 11/14
12/23 15/7 19/15 22/8 25/14
35/12 38/22 39/15 41/17
42/6
**update** [1] 28/6
**updated** [1] 28/16
**upload** [1] 12/4
**uploaded** [1] 15/2
**upper** [1] 13/9
**upper-management** [1]
13/9
**urinating** [2] 7/21 42/12
**urination** [3] 7/2 7/5 7/22
**urine** [2] 7/2 7/4
**us** [13] 20/20 20/21 21/4
22/16 28/4 30/7 30/11 32/7
34/2 39/5 39/18 39/21 42/23
**use** [4] 34/3 35/5 35/8 35/9
**using** [1] 26/14

## V

**valid** [1] 38/17
**versus** [1] 31/8
**very** [13] 3/8 8/22 9/3 9/11
9/22 10/22 12/19 16/24
30/20 31/6 32/24 35/5 44/7
**video** [4] 16/22 17/9 17/11
17/13
**videos** [4] 17/5 17/6 17/6
17/19

**V**

**violation [2]** 22/9 41/21
**visual [1]** 10/2
**VS [2]** 1/5 1/8

**W**

**WAGNER [2]** 1/3 3/11
**wait [4]** 4/4 4/4 9/23 38/9
**waived [1]** 5/14
**WALKER [2]** 2/6 44/16
**WALKER-BAILEY [2]**
2/6 44/16
**want [11]** 13/22 14/9 27/6
29/24 30/18 31/17 32/1 35/9
40/8 40/10 42/21
**wanted [4]** 16/16 28/15
31/6 32/9
**wants [7]** 28/22 32/3 37/18
37/19 40/16 40/17 41/16
**wasn't [2]** 19/24 39/24
**waste [1]** 32/1
**watch [2]** 37/5 40/16
**way [5]** 1/17 3/10 25/19
27/16 30/4
**we [148]**
**we'll [7]** 3/3 30/14 35/25
38/4 42/22 43/4 44/6
**we're [33]** 3/20 6/17 6/18
9/5 10/8 10/18 10/18 12/8
15/9 17/3 17/5 17/6 17/7
19/8 19/21 21/5 24/18 28/21
29/17 29/22 29/22 30/13
33/6 33/7 34/2 34/8 34/10
35/17 36/3 39/16 42/20
42/21 43/13
**we've [11]** 11/24 12/6 16/9
18/12 35/22 36/21 39/15
39/15 41/25 41/25 42/8
**website [1]** 27/3
**weeks [2]** 42/23 43/10
**welcome [4]** 3/1 3/13 3/16
3/18
**well [19]** 5/12 5/21 12/13
15/8 18/4 21/19 25/15 28/17
33/22 33/23 34/1 34/6 34/13
34/22 40/25
**well-trained [1]** 33/23
**went [11]** 8/6 8/25 12/16
12/24 12/25 15/11 16/3
16/13 16/14 17/21 26/8
**were [27]** 17/23 17/23 17/24
21/5 22/2 22/18 24/8 30/8
33/5 33/5 33/17 33/18 33/18
33/18 34/14 34/21 34/23
37/21 38/11 38/22 39/3 39/8
39/9 39/12 39/14 40/9 42/1
**what's [2]** 3/22 4/1
**whatever [4]** 18/10 34/4
34/9 35/9
**whether [12]** 5/16 22/1
22/15 23/22 31/1 31/3 35/13
37/18 39/2 39/22 40/5 40/6
**which [32]** 5/4 5/4 5/18
6/15 6/18 8/5 8/14 8/20 8/21
9/21 13/2 16/22 17/24 17/25
19/15 20/11 21/6 21/16 24/4
26/11 30/14 33/3 33/8 33/10
33/15 33/18 37/4 38/5 38/15
38/25 40/11 42/1
**while [2]** 12/22 41/12
**who [19]** 4/16 7/7 8/6 8/24
15/23 17/14 18/1 19/23
19/23 21/20 24/20 24/22
26/9 27/12 27/14 27/15
33/18 37/6 40/10
**whoa [3]** 4/4 4/4 4/4
**whole [5]** 7/14 7/25 18/7
27/10 40/11
**whose [1]** 39/7
**why [9]** 3/9 7/19 9/13 9/14
9/23 17/7 19/15 26/8 41/16
**will [15]** 15/1 18/9 18/10
18/11 18/20 25/6 28/7 28/23
29/9 31/9 35/2 37/6 37/15
37/15 38/2
**willing [4]** 28/24 29/2 41/14
42/22

**wind [2]** 9/13 9/14
**wise [1]** 38/6
**wish [1]** 3/22
**withdrew [1]** 12/18
**withheld [2]** 5/17 5/20
**within [4]** 7/14 8/3 15/19
23/20
**without [4]** 5/19 9/4 9/11
22/7
**words [1]** 7/19
**work [17]** 11/4 12/1 17/4
24/9 24/13 24/20 24/23
25/17 25/23 26/11 29/18
31/5 35/4 43/2 43/3 43/8
43/13
**worked [2]** 18/1 21/25
**working [5]** 17/7 17/23
27/13 33/5 33/18
**works [2]** 27/15 44/2
**would [15]** 3/25 4/8 17/17
17/20 21/12 22/7 23/20
23/23 27/7 33/19 37/20
39/18 41/7 41/13 43/24
**written [1]** 12/16

**Y**

**y'all [4]** 20/11 24/9 37/24
44/6
**yeah [11]** 11/21 12/21 22/8
22/24 30/23 31/16 31/22
32/8 32/22 35/24 41/22
**years [5]** 6/17 6/18 6/18
6/18 25/16
**yes [15]** 4/7 9/16 9/18 10/25
14/2 14/19 19/7 20/15 27/16
27/22 28/19 32/17 33/2
43/16 43/21
**yet [1]** 15/25
**you [147]**
**you'll [1]** 42/24
**you're [6]** 4/4 28/24 29/2
40/25 43/2 43/2
**you've [2]** 4/2 20/19
**your [58]**
**yourself [1]** 32/20

**Y**

yourselves [1]  42/24

**Z**

Zech [1]  2/3