**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **OCTEVIA WAGNER, ET. AL.** | § | |
| **Plaintiffs** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-CV-02886** |
| | § | |
| **HARRIS COUNTY, TEXAS** | § | |
| **Defendant** | § | |
| | § | |
| **AND** | § | |
| | § | |
| **ANA GARCIA AND CHANDRA JENKINS,** | § | |
| **Plaintiff – Intervenors** | § | |

**DEFENDANT HARRIS COUNTY'S RULE 56 NO EVIDENCE**
**MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEVER**
**CLAIMS BY INMATE KST [SPN 02966503]**
===============================================================

MAY IT PLEASE THE COURT:

NOW COMES DEFENDANT, HARRIS COUNTY, TEXAS, and files this Rule 56 No Evidence Motion for Summary Judgment against the claims brought by Plaintiff Intervenor KEVIN SANCHEZ TREJO (hereafter "KST").

## I. TABLE OF CONTENTS

I. TABLE OF CONTENTS ......................................................................................................... 1

II. NATURE OF THE CASE.................................................................................................... 2

III. NO EVIDENCE MSJ ......................................................................................................... 2

IV. INDEX TO MSJ EXHIBITS ............................................................................................. 3

V. CHRONOLOGY OF MATERIAL EVENTS.......................................................................... 4

VI. SUMMARY OF THE ARGUMENT .................................................................................. 8

VII. SUMMARY OF FACTS AND ARGUMENT ................................................................... 8

A.    Material Factual Background Pertaining to KST's Jail Stay in 2023................................. 8

B.    A Review Of The Key Material Facts Constituting KST's Stay In The
Harris County Jail Does Not Reveal The Existence Of A Constitutional
Injury.......................................................................................................................... 9

VIII. ARGUMENTS AND AUTHORITIES...................................................................... 12

A.    KST Was At All Times In The Lawful Custody Of The Harris County Jail
      Facility. ............................................................................................................ 12

B.    There Is No Evidence That The County Jail Administration Failed To
      Protect Inmate KST From Harm...................................................................... 13

C.    There Is No Evidence The KST Was Denied Medical Care During His
      2021 Stay In The Harris County Jail............................................................... 13

D.    The Policy Violations by Detention Officer Deundra Lighten Do Not State
      a Claim for Relief Under Section 1983........................................................... 14

E.    KST Does Not State A Claim For Relief Under Section 1983, Under
      Either A Conditions Of Confinement Theory Or An Episodic Acts Theory
      Because There Are No Facts That Support Either Theory. .............................. 15

F.    The Legal Standard for a Conditions of Confinement Claim Generally. ........ 16

G.    The Legal Standard for Episodic Acts or Omissions Claim Generally ........... 17

IX. MOTION TO SEVER ............................................................................................ 19

X. CONCLUSION & PRAYER .................................................................................... 19

======================================

## II. NATURE OF THE CASE

1.    This is a Section 1983 civil rights case brought by and on behalf of former Harris County Jail inmate, KST [SPN 02966503].

2.    The real party in interest is Jail Inmate KST, who was a pretrial detainee in the Harris County Jail in 2023. The statutory beneficiary is Ana Garcia, KST's mother.

## III. NO EVIDENCE MSJ

3.    The dispositive motion is brought as a Rule 56 no evidence Motion for Summary Judgement. Such a dispositive motion can be sustained with conclusory assertions. Nevertheless, when a  moving party who does not bear the burden of proof, a movant who does not bear the burden of proof at trial may move for summary judgment by pointing out that there is "no evidence" to support one or more elements of the non-movant's claim. *See FRCP Rule 56(a); see also Austin v Kroger Texas, L.P.,* 864 F.3d 326, 335 & n.10 (5th Cir. 2017)*; followed in Nieto v State Farm,* 722 F.Supp. 653 (S.D. Tex. – Brownsville Div. 2024).

4.      To demonstrate the lack of evidence, the moving party without the burden of proof may demonstrate the lack of proof by submitting evidentiary proof in the form of documents, affidavits, deposition testimony in support of the Rule 56(a) argument that the plaintiff (i.e., the nonmoving party with the burden of proof) cannot, as a matter of law, provide evidence to satisfy each element of the claims asserted. *Nieto*, 722 F.Supp. at 657. The burden of production then shifts to the non-moving party, the party with the burden of proof, that there is sufficient evidence as to each element of an alleged claim to, at a minimum, create a material issue of fact for a jury. *Id.; see also Celotex Corp. v Catrett,* 477 U.S. 317, 322-323 (1986)(failure of non-movant to establish any essential element of a claim defeats the claim as a matter of law).

### IV. INDEX TO MSJ EXHIBITS

5.      In support of this Rule 56(a) Motion, DEFENDANT HARRIS COUNTY tenders the following Exhibits in support of this Motion:

EXH. I - DECLARATION AUTHENTICATING LIST OF EXHIBITS TENDERED IN SUPPORT OF RULE 56 MOTION:

#### 1. JAIL RECORDS

Exhibit 1.A – Intake Records [JR 000394 - 000431]

Exhibit 1.B – Medical Screening [JR 000415 – JR 000418]

Exhibit 1.C – Initial Custody Assessment [TXR 000048 – 000051]

Exhibit 1.D – Housing History for KST [OR 000004]

Exhibit 1.E – Incident Reports [TXR 000462 – 000488][highlights added]

Exhibit 1.F – Memo by Lt. John Martin reporting Death in Custody

#### 2. MEDICAL RECORDS

Exhibit 2.A – Medical Records [JR 000072 – JR 000384]

Exhibit 2.B – Autopsy Report [AR 000003 – AR  000015]

#### 3. INVESTIGATIVE RECORDS

Exhibit 3.A – ICD Notification [TXR 000002 – 000004]

Exhibit 3.B – HCSO Internal Investigation Case No. 2202-04468  [TXR 000506 – 000513]

Exhibit 3.C – Incident Reports 2/12/2022 [TXR 000489 – 000505]

Exhibit 3.D –Timeline Produced w Video Content

Exhibit 3.E – Investigative Summary by Texas Rangers [TXR 000001 - 000017]

Exhibit 3.F – File Closure Notice by Harris County DA's Office [TXR 000017

4. IA INVESTIGATION; IA 2022- 001116 [DO LIGHTEN]

Exhibit 4.A – Notice of Misconduct Charges to DO Lighten [IA 000024 – 000029]

Exhibit 4.B – OMS Summary by Supervisor Tunello [IA 000009]

Exhibit 4.C – OMS Report by Deundra Lighten [IA 000007]

Exhibit 4.D – IA Statements by Deundra Lighten [IA 000018 - 000021]

Exhibit 4.E – IA Statement by Jazmin Stewart [IA 000033 - 000035]

Exhibit 4.F - Rounds Activity Report 2/11/2022 – 2/12/2022 [OR 000022]

Exhibit 4.G - Out-Time Log 2/11/2022 [OR 000027]

Exhibit 4.H – Discipline Findings re Lighten [IA 000055 - 000063]

Exhibit 4.I – IA Statement of Inmate Isias Saenz [IA 000047 – 000049]

5. MOST RELEVENT DETENTION COMMAND SOPs

Exhibit 5.A - CJC 219 – Separation Policy

Exhibit 5.B - CJC 220 – Inmate Supervision Policies

EXH. II        TIMELINE SUMMARY FOR KST [BY MAJOR LYNETTE ANDERSON]

EXH. III       MEDICAL RECORDS SUMMARY FOR KST [BY JOHN G. MILLS, D.O. MS, MPH]

6.      The foregoing documentary exhibits are all documents produced in disclosures and in written discovery requests and are bates labeled and numbered to identify which Plaintiff Inmate to which they pertain.

7.      Further, because the Exhibits were all produced under a Confidentiality Order previously entered by the Court. *See ECF #80 – Confidentiality & Protective Order.* The Exhibits listed have all been designated as "Confidential" and are therefore filed under restriction, thereby limiting access to these filings to the attorneys of record in this case.

## V. CHRONOLOGY OF MATERIAL EVENTS

**A.    Chronology of Events and Record References by Major Lynette Anderson [Exh. I]**

11/21/2021    KST booked into the Harris County Jail on 11/21/2021 on the charge of Burglary of a Habitation. [Exh. 1.A at p. JR 000394]

11/21/2021    KST undergoes Medical Screening. [Exh. 1.B at p. JR 000415]

11/24/2021    KST underwent an Initial Custody Assessment Scale. [Exh. 1.C at pp. TXR 000048 to 000051]

--/--/----     The Inmate Housing History Report reflects all of the housing locations that KST was in from the time he was booked on 11/21/2021 until his date of death on 2/2/2022. [Exh. 1.D – KST Housing History Report at p. OR 000004]

| | |
|---|---|
| --/--/---- | Between 11/21/2021 and 1/5/2022, the OMS Incident Reports reflect a series of incidents in which KST was involved, some of which led to misconduct violations. [Exh. 1.E – OMS Incident Reports at pp. TXR 000462 – 000488] |
| __/__/2021 | KST's medical records reflect that KST was referred for a psych evaluation on or about this date. [Exh. III – Mills Summary at p.2; see also Exh 1.A – Medical Screening [JR 000394 – 000397; Exh. 1.C – Initial Custody Assessment [TXR 000048 – 000051] |
| --/--/---- | The incidents documents on 1/29/2021 and 1/30/2021 in which inmates, including KST are accusing each other of threatening and violent behavior is why KST, and other inmates, were moved to different housing locations as per Separation Policy CJC 219. [Exh. 1.E – OMS Incident Reports at p. TXR 000462 – 000488; see also [Exh. 1.D – KST Housing History Report at p. OR 000004; see also Exh. 5.A – CJC 219 – Separation Policy at p. 000162 - 000166] |
| 2/12/2022 | OMS Incident Report records reflect that on the morning of 2/12/2022, at 7:35, as the Day Watch staff was beginning their shift, DO Roland Reyes and Sgt. D. Tunello discovered KST unresponsive in his cell. [Exh. 3.C – Incident Reports at p. TXR 000495 - 000496] |
| 2/12/2022 | The scene was immediately treated as a crime scene. An ICD Notification was issued the TCJS and an outside law enforcement agency – Texas Rangers, assigned Ranger Wesley Doolittle to the case. [Exh. 3.A – ICD Notifications at pp. TXR 000002 – 000004] |
| 03/31/2022 | The subsequent autopsy report, which was completed by the Medical Examiner [HCIFS] listed the Cause of Death as "Acute toxicity due to the combined effects of fentanyl and heroin, the Manner of Death as "Accident" and the Date of Death as February 12, 2022. [Exh. 2.B – ML22-0755, pp. AR 000001 – 000029] |
| --/--/---- | As required by law, a complete investigative packet was sent to the Texas Rangers, who conducted a criminal investigation. [Exhs 3.A – 3.E – Documents Provided to Texas Ranger for criminal investigation (extracts)] |
| --/--/---- | Included in the package to the Texas Rangers was a HCSO Death Investigation, Case No. 2202-04468, that contains an investigative narrative by Deputy R. Shockley, Unit 11E40 who prepared a detailed outline of events beginning with the discovery of KST by Sgt. Tunello at approximately 0735 on 2/12/2022. [Exh. 3.B – HCSO Investigation at pp. TXR 000506 – 000513] |
| 6/22/2023 | The Texas Rangers submitted their investigation to the Harris County District Attorney's Office for review. After reviewing the file, the Harris County District Attorney's Office decided to administratively close the investigation. [Exh. 3.E – Supplemental Report at pp. TXR 000015; see also Exh. 3.F – Letter from Jules Johnson, Division Chief, Civil Rights Division, Harris County DA's Office at pp. TXR 000017] |
| --/--/---- | Independent of the criminal investigation by the HCSO and the Texas Rangers, the HCSO also conducted a performance investigation of the jail guards on duty on the night shift of 2/11/2022 and the morning shift of 2/12/2022. [Exhs. 4.A through 4.H – IA Investigation 2022-001116; TXR 000024 through 000063 (extracts)] |

| 3/1/2022 | The IA Investigation begins on or about 3/1/2022 into the performance of DO Deundra Lighten and others and concludes on 1/19/2023 with a disciplinary suspension against DO Lighten. [Exhs. 4.A through 4.H – IA Investigation 2022-001116; TXR 000024 through 000063 (extracts)] |
| --/--/---- | The Rounds Activity Report for the shifts in question reflects that DO Jazmin Stewart was the guard making the rounds, but the OMS Incident Reports and later the IA Statements by DO Jazmin Stewart and by DO Lighten show that DO Lighten took responsibility for conducting some of the rounds in the early morning hours of 2/11/2022. [See Exhs. 4.B through 4.G Incident Reports, IA Statements, and supporting Exhibits 4.F and 4.G; p. IA 000024 – 000063 (extracts)] |
| --/--/---- | The IA evidence reflects that DO Lighten violated policy by 1) not conducting a face-to-face observation of the inmate; 2) did not conduct the round under his own account tracking device, resulting in a rounds activity record that does not reflect the correct identity of the jail guard conducting the round. [See Exhibit 4.A; p. IA 000024 – 000029] |
| 3/2/2022 | DO Lighten was found to be in violation of Rule 12, Section 12.02 of the Harris Couty Civil Service Regulations; of CJC 305, Subsection 3.1 and Policy 220, III., Subsections C.4(a) and (b) and E.1 and 2. [See Exh. 4.H – Disciplinary Action (120 Hours suspension without Pay and 180 – Day Probation; IA000055- 000063] |

8.     The disposition of the criminal investigation by the Texas Rangers, in conjunction with the review and actions of the Harris County District Attorney's Office brought the criminal investigation to a close. [Exh. II – Timeline by Major Anderson]

9.     The disposition of the internal performance evaluation of the jail guards on watch over Inmate KST on the evening of 2/11/2022 through the morning of 2/12/2022 brought the administration performance and disciplinary case to an administrative close. [Exh. II – Timeline by Major Anderson]

10.     Medically, the two relevant events are KST psych evaluation upon intake and the follow up psych evaluation after the series of conflicts with other inmates that occurred on 1/29/2021 and 1/30/2021.

11.     The conflicts between and among inmates that occurred on these dates resulted in KST and others being administratively separated from each other. [Exh. III – KST Medical Summary by Dr. Mills; see also Exh. 2.A – KST Medical Records (JR 000062 to 000384].

12.     Generally, KST's medical records reflect that KST received medical care and attention. [Exh. III – KST Medical Summary by Dr. Mills]

**B.    Medical Summary and Record References by Dr. John G Mills**

13.    The following medical summary focuses on the medical care received by KST while in custody of the Jail from 11/21/2021 through date of death on 2/12/2022:

11/21/2021    Patient received medical screening at the Haris County Jail. During his screening it was noted that he had a history of adjustment disorder and injuries from an altercation. These injuries included bruising around his right eye, foot abrasion and superficial lacerations to his hands. It was noted that the patient was "Not Currently" using drugs (Page 1,7, 9) [Exh. 2.A - JR 000063, JR 000069, JR 000071].

11/22/2021    Patient sent to Radiology for a chest x-ray to screen for TB (Pages 26 & 27). [Exh. 2.A - JR 000088 – JR 000089]

11/22/2021    No show (Page 9) [Exh. 2.A - JR 000071].

11/22/2021    Patient seen in clinic by nurse and problem list (Page 1) [Exh. 2.A - JR 000063].

11/23/2021    Patient seen for a capacity assessment; Patient was normal (Page 61, 68) [Exh. 2.A - JR 000123 – JR 000132].

12/10/2021    Patient seen by Nurse Practitioner for a History / Physical and evaluation of right 5th toe pain. Patient was given Ibuprofen for pain and right foot x-ray was ordered (Pages 30 & 31) [Exh. 2.A - JR 000092 – JR 000093].

12/11/2021    Patient sent to Radiology for x-ray of right foot pain. X-ray showed a nondisplaced right 5th toe fracture (Page 23) [Exh. 2.A - JR 000085].

12/12/2021    Patient seen in primary care for review of foot x-ray (Page 21) [Exh. 2.A - JR 000083].

12/15/2021    Patient was a "No Show" for Primary Care (Page 20) [Exh. 2.A - JR 000082].

12/16/2021    Patient signed a refusal of care form right 5th toe pain. (Page 321) [Exh. 2.A – JR 000383].

12/27/2021    Patient seen in Behavioral Health Clinic and it was noted that the patient threatened to "hang himself" (Page 17) [Exh. 2.A - JR 000079].

12/28/2021    Patient was briefly seen by mental health for follow up and for suicide assessment (Page 17, 68-70) [Exh. 2.A - JR 000079, 000130-132]

1/06/2022    Patient was a "No Show" for Orthopedic clinic appointment (Page 15) [Exh. 2.A - JR 000077].

1/07/2022    Patient was a "No Show" for a follow up appointment (Page 14) [Exh. 2.A - JR 000076].

1/28/2022    Patient was a "No Show" for his clinic appointment (Page 12) [Exh. 2.A - JR 00074].

2/01/2022    Patient assessed and treated for possible sexually transmitted infection (Page 11, 36) [Exh. 2.A - JR 000073, JR 000098].

2/12/2022    Patient in clinic as an emergency with resuscitation in progress after being found

unresponsive in his cell. Patient was pronounced dead at 8:19 AM (Page 32) [Exh. 2.A - JR 000094].

*See Exh. III – Medical Summary with Record References by Dr. John G. Mills.*

## VI. SUMMARY OF THE ARGUMENT

14.     DEFENDANT HARRIS COUNTY contends that the evidentiary record does not, and cannot, support a factual or legal finding that KST suffered a constitutional injury during his stay in the Harris County Jail. The evidentiary record does not support the pleadings, which are grossly over-stated.

15.     HARRIS COUNTY hereby provides a detailed factual record of KST's stay while in the custody of the Sheriff's at the Harris County Jail, supported by record references to documents pertaining to KST.

16.     Many of the arguments previously urged in the context of a Rule 12 Motion to Dismiss are re-urged here again, only this time backed up by documentary evidence.

17.     Not addressed in this MSJ is the ADA  and Rehab Act causes of action, which the Court has already dismissed in a prior ruling in this Cause. See ECF #51 – Memorandum & Order at pp. 31 – 34 (dismissing ADA claims).

## VII. SUMMARY OF FACTS AND ARGUMENT

**A.     Material Factual Background Pertaining to KST's Jail Stay in 2023.**

18.     The attached Declaration by Detention Command Major Lynette Anderson provides the Court with a more detailed and chronological overview of KST's jail stay in 2021-2022. *See Exhibit 1 – Declaration by Major Anderson.*

19.     References to specific factual incidents shall be discussed with reference to Exhibit 1, the Declaration by Major McClanahan and by reference to the underlying government records referenced by her. Additional information provided by other Declarants identified in the MSJ Exhibits list will also be referenced as well.

20.     A review of the pleadings, the motions, and the Orders as they pertain to KST addresses can be summarized for purposes of this dispositive motion as pertaining to the following subject matter areas: 1) Intake and Classification; 2) Duty to Protect; and 3) Denial of Medical Care.

21.     KST also makes a broader claim that his specific underlying claims are part of a larger, vaguely stated, "conditions of confinement" and *Monell* based liability claims claim that allege systemic denial of medical care and also allege vague claims of systemic "failure to train" claims.

22.     DEFENDANT contends that KST cannot have viable constitutional claim under Section 1983 without first demonstrating he himself has personally suffered a constitutional injury. *See City of Los Angeles v Lyons, 461 U.S. 95, 101 (1983) (federal court jurisdiction requires "actual case or controversy" to establish jurisdiction).*

23.     A bare-faced claim that that one's constitutional rights have been violated is not sufficient by itself to confer standing. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982). Rather, a plaintiff must establish a violation of his own personal rights. 454 U.S. at 474-75; *see also Barber v. Bryant*, 860 F.3d 345, 352–53 (5th Cir. 2017).

**B.     A Review Of The Key Material Facts Constituting KST's Stay In The Harris County Jail Does Not Reveal The Existence Of A Constitutional Injury.**

24.     A review of the timeline pertaining to KST's stay in the Harris County Jail does not support a claim that he suffered an actionable constitutional injury. *See Exhs. I, II & III, and record references stated therein.*

25.     KST's stay in the Harris County Jail that is the basis of his claim began on 11/21/2021, when he was booked in to the Jail on a burglary of a habitation criminal charge. *See Exh. 1.A [JR 000394].*

26.     KST's Inmate Housing History Report reflects the Facility, Floor, Pod, and Bed where KST was housed on any given date. [*Exh. 1.D  Housing History at p. OR 000004]*

27.     KST completed JPC Medical Intake Screening on 11/21/2021 [Exh. 1.A at p. JR 000396]. KST was initially housed in JA09 1A1. [Exh. 1.D – Housing History at p. OR 000004].

28.     Later, as a result of conflicts with other inmates, KST was moved to JA09 to different floors and Pods. [Exh. 1.D – Housing History at p. OR 000004].

29.     The last housing area for KST was JA07, Floor 7, Pod C on 2/2/2022, which is the housing location where he later expired on 2/12/2022. [Exh. 1.D – Housing History at p. OR 000004].

30.    During KST's stay in the jail from November 2021 until February 2022, at no time was KST beaten by other inmates, sexually assaulted by other inmates, subjected to Use of Force by the jail guards.

31.    KST's conflicts with other inmates, which the records reflect he himself was likely as much an instigator in this conflicts rather than a victim of them, do not support a claim for failure to protect. [See Exh. 1.E – Incident Reports [TXR 000462 – 000488]

32.    Moreover, jail staff responded to concerns by separating the inmates involved in the conflicts, including KST. [See Exh. 1.E – Incident Reports TXR 000462 – 000488]

33.    Also, KST received appropriate medical and psychological screening upon intake. [See Exh. 1.B – Medical Screening JR 000415 – 000418].

34.    KST was also referred for follow up psychological screening at the same time he was separated from the inmates with which he was conflict. [Exh. III – Medical Summary by Mills at 12/27/2021 and 12/28/2021 and record references stated therein].

35.    On the evening of 2/11/2021, the "Out-Time" logs reflect that received out time from his single cell to wander in the Pod. [Exh. 4.G – Out-Time Log, Line #1 at p. OR 000027]. His activities were notes as #17 (Out-Time), #25 (Visit w/ Inmate), and #23 (Telephone).

36.    On the morning of 2/12/2022, a Supervisor with the Day Watch shift that began at 6:00 A.M. found KST to be unresponsive. [Exhs. 3.B, 3.C, 3.D – Investigative Records, generally]

37.    The subsequent HCIFS Autopsy Report [ML22-0755], stated the Cause of Death as "Acute toxicity due to the combined effect of fentanyl and heroin", the Manner of Death as "Accident" and the Date of Death as "February 12, 2022. [Exh. 2.B – Autopsy Report]

38.    The mandatory criminal investigation, which was conducted by the Texas Rangers, investigated the source of the illicit drugs acquired by KST, but did not find evidence of criminal conduct by any third person against KST. [See Exhs. 3.B, 3.C, 3.D and 3.E. Investigative Records]

39.    The Rangers referred their investigative file to the Office of the District Attorney for review, but after conducting a review, the District Attorney's Office administratively closed the file. [Exh. 3.E and 3.F – Investigative Summary and DA's File Closure Notice]

40.    Independent of the criminal investigation by the Texas Rangers, the HCSO Detention Command conducted an Internal Affairs Investigation into the performance of the Detention Officers on duty on the evening of 2/11/2022 and the morning of 2/12/202. [Exh. 4.A to 4.I – IA File 2022-00116 at p. IA 000024 – IA 000063 (excerpts)]

41.    The IA Investigation revealed that the Rounds Activity Report for the early morning hours of 2/12/2022 were timely conducted by DO Jazmin Stewart [Exh. 4.F – Rounds Activity Report].

42.    However, the IA Statements of DO Stewart and DO Deundra Lighten revealed that DO Lighten had agreed to cover some of DO Stewart's rounds because her leg was hurting, which Lighten agreed to do. [Exh. 4.E – Stewart IA Statement at p. IA 00034]. DO Stewart did not know at the time that DO Lighten had not signed out of the Corretrack device from her name and into his. On the rounds she did conduct, she stated that she saw KST's silhouette in the cell, on the toilet, "multiple times throughout the night" but that he was not "slumped over." [Exh. 4.E – Stewart IA Statement at p. IA 00034].

43.    DO Lighten, like DO Stewart, on the rounds he conducted, in the early morning hours of 2/12/2022 also say KST sitting on the toilet but states, "I didn't think anything of it, but I assumed that he was just using the restroom." [Exh. 4.D – IA Statement by Lighten at pp. IA 000019 – 000020].

44.    DO Lighten had seen KST earlier in the shift, when KST was on his Out-Time, but did not notice anything peculiar about his behavior. When told that is Out-Time period was up, KST was instructed to return to his cell, which he did without incident. [Exh. 4.D – IA Statement by Lighten at pp. IA 000019 – 000020.]

45.    DO Lighten suffered a disciplinary penalty for two policy violations. First, failing to log in to the Corretrak device with his own name so that the Rounds Activity Report would accurately reflect who conducted the Rounds. And second, failing to conduct a face-to-face inmate check as required by TCJS regulations and by Jail Policy. [Exh. 4.H – Discipline of DO Lighten]

46.    The IA Investigation also resulted in a Statement by an Inmate who was on the same floor as KST on the evening in question – Isaias Saenz. [Exh. 4.I – Saenz IA Statement at IA 00047 000048]

47.    Inmate Saenz, whose Statement is dated 1/6/2023, indicates that he had befriended KST and that while he was "out for his hour" KST had asked him (Saenz) if he wanted any drugs, which Saenz declined. Saenz indicates that KST showed him a plastic bag that "contained a clear substance" but he did not know what it was. Saenz also states that KST had told him that he (KST) had gotten the drugs from another inmate in the cell – who Saenz identified to the IA Investigators as Sandy Bernstein. [Exh. 4.I – Saenz IA Statement at IA 00047].

48.    Saenz states that Bernstein has also asked him if he wanted any drugs, which Saenz declined. [Exh. 4.I – Saenz IA Statement at IA 00047]. Saenz indicates that "Inmate Sanchez went back and forth to his cell while he was out for his hour" and that he told Saenz that he had snorted the drugs he was given while he was in his cell. [Exh. 4.I – Saenz IA Statement at IA 00047]

49.    Saenz indicates that he did not see KST again after KST's hour ["out-time hour"] was up until later, when he was wheeled out of the cell on a stretcher at 5:00 a.m. [Exh. 4.I – Saenz IA Statement at IA 00047].

50.    The Texas Ranger Report of Investigation reflects that Texas Ranger Wesley Doolittle, assigned to the criminal case, and HCSO Investigator Shockley, had difficulty getting statements from inmates in the cell block, but that Isaias Saenz did provide a Statement. [Exh. 3.E – Ranger Investigative Summary at p. TXR 000004].

51.    Ranger Doolittle indicates that according to Saenz, KST "may have traded some food for drugs when he was in his hour out of the cell." Ranger Doolittle also referenced an Inmate Bernstein as the possible source of the illicit substance that KST ingested. [Exh. 3.E – Ranger Investigative Summary at p. TXR 000004].

52.    Consequently, based on the investigative evidence generated in the criminal investigation by the Texas Rangers, and the investigative evidence generated in the Internal Affairs Case No. IA2022-00116, the person mainly responsible for the illicit substances that KST managed to acquire and to ingest was himself.

## VIII. ARGUMENTS AND AUTHORITIES

**A.    KST Was At All Times In The Lawful Custody Of The Harris County Jail Facility.**

53.    KST was at all time in the lawful custody of the Harris County Jail Facility. He was charged with burglary of a building, and he was remanded to jail with a bail setting.

54.     KST does not contest the lawfulness of his arrest or of his custodial status. So the issue presented is whether the DEFENDANT COUNTY Detention Command breached a constitutionally recognized duty of care as to this individual detainee.

55.     As reflected in the timeline, KST was in custody for a period of about three (3 months) from 11/21/2021 through 2/12/2022. *See Exh. 1 – Timeline Summary.*

**B.     There Is No Evidence That The County Jail Administration Failed To Protect Inmate KST From Harm.**

56.     HARRIS COUNTY does not contest that detainees in the custody of the Detention Command have a duty to protect against harm to persons in confinement. *See Farmer v Brennan,* 511 U.S. 825, 837 (1994)*; see also Hare v Corinth,* 74 F.3d 633, 639 (1996; *and Brown v Harris County,* 409 Fed.Appx. 728 (2010)*.* The standard is deliberate indifference to a known or excessive risk of harm to an inmate's health or safety. *Id.*

57.     However, under the facts of the claim by KST, the evidentiary record hardly support the claim of deliberate indifference to a claim of assault urged by KST in September 2023. If anything, the record demonstrates that when the concern was brought to the attention of detention personnel, immediate steps were taken to move KST for his safety and to investigate the allegations. [Exh. 1.E & Exh. 3. C – OMS Incident Reports at p. TXR 000462 – 000505]

**C.     There Is No Evidence The KST Was Denied Medical Care During His 2021 Stay In The Harris County Jail.**

58.     DEFENDANT does not dispute that under Section 1983, a person in jail custody has a constitutional right of access to reasonable medical care. *See Ford v Anderson County, 102 F.4th 292, 307 (5th Cir. 2024) (discussing scope of constitutional right to medical care under both 8th and 14th Amendments).*

59.     A review of the records reveals that KST received medical care when asked for and that the Jail Administration responded promptly to his inmate care needs. *[Exh. III. Mills Medical Summary; Exh. 2. A – Medical Records JR 000062 – 000384]*

60.     The underlying documentation does not reflect or give rise to a viable claim that the Jail Command and Staff were indifferent to KST's medical needs. There is insufficient evidence to even put this question to a jury.

**D.    The Policy Violations by Detention Officer Deundra Lighten Do Not State a Claim for Relief Under Section 1983.**

61.    Plaintiffs will undoubtedly want to contend that the performance policy violations by DO Lighten are sufficient to state a claim for relief under Section 1983. This is not correct either legally or factually. The policy violations by Detention Officer Deundra Lighten do not state a claim for relief under Section 1983.

62.    The first question in this analysis is whether KST suffered a constitutional injury. *See Baker v McCollan,* 443 U.S. 137, 140 (1979)(first inquiry in a Section 1983 case is always whether the plaintiff was deprived of a right secured by the Constitution).

63.    Although it is true that prison official must take reasonable measure to assure the safety of inmates – *see Farmer v Brennan*, 511 U.S. 825, 838 (1994) – a necessary element of that duty request that the risk of harm to an inmate must be reasonably foreseeable.

64.    Moreover, to establish *Monell* liability, a plaintiff must show that the prison official was deliberately indifferent to the risk of serious harm. 511 U.S. at 832.

65.    Here, the jail guards on duty on the night watch of 2/11/2022 (6:00 pm to 6:00 am) and the day watch of 2/12/2022 (6:00 am to 6:00 pm) had no reason to believe – that KST was going to put himself of risk of harm. By all accounts, KST was safe in his cell – he was safe during his Out-Time – and he had been removed from the conflictual environment he had previously been involved in before being moved to JA07, Floor 7, Pod C, Cell 1 since 2/12/2022. [Exh. 1.D – Housing History Report]

66.    Moreover, the circumstances under which KST ingested contraband narcotics do not implicate a failure of policy. Both jail guards – Jazmin Stewart and Deundra Lighten – were aware of the policy that requires regular rounds and face to face inspection. [Exh. 5.B - CJC 220 Inmate Observation] [Exh. 4.D and 4.E – IA Statements of Lighten and Stewart, respectively].

67.    At worst, the jail guards were negligent in the performance of their duties, and as the Court well knows, negligence is not actionable under Section 1983. *See Daniels v Williams,* 474 U.S. 327 (1986); *see also Davidson v Cannon*, 474 U.S. 344 (1986)(negligence not actionable under Section 1983).

68.    Plaintiff will undoubtedly urge a "failure to train" claim under *City of Canton v Harris*, 489 U.S. 378 388 (1989). In *Burns v Galveston, Texas*, 905 F.2d 100 (5th Cir. 1990), the Court addresses a situation where a detainee committed suicide within an hour of confinement. *Burns* held that alleged non-compliance with visual inspection rules did not support a Section 1983 claim. 905 F2d 103 (essentially holding no causal connection between alleged policy violation and suicidal act).

69.    Similarly, although Burns addresses the topic of failure to train with respect to detection of trainees with suicidal tendencies, *Burns* recognizes that while some level of training for officers to recognize known, demonstrable, and serious mental disorder may rise to the level of a constitutional duty, *Burns* does not find that the constitutional duty to "unerringly detect suicidal tendencies." 905 F.2d at 104.

70.    Finally, regardless of the level expertise a court would impose on law enforcement personnel, in the case of a failure to train claim, there would still need to be a showing of conscious and deliberate indifference to the serious medical need. *Burns*, 905 F2d at 104.

71.    This is not a suicide case. It is an accidental death case, as the medical examiner determined [Exh. 2.B – HCIFS Autopsy Report]. Moreover, this is not a conditions of confinement claim, it is an episodic acts claim at best, as in *Burns*, 905 F2d at 104, and as is more fully developed below.

**E.    KST Does Not State A Claim For Relief Under Section 1983, Under Either A Conditions Of Confinement Theory Or An Episodic Acts Theory Because There Are No Facts That Support Either Theory.**

72.    The COUNTY's premise in this dispositive motion is that while KST may be able to "artfully plead" a Section 1983 claim that the Court is bound to accept, there comes a time when he has to demonstrate to the Court that he has suffered a constitutional violation.

73.    It is an unfortunate reality of federal pleading and proof of practice that even though a Section 1983 plaintiff has the ultimate burden of proof on a Section 1983 claim, it nevertheless falls on the local government defendant, has the burden of production to produce records to ground the pleaded claims against the reality of the evidence. DEFENDANT does not eschew this responsibility.

74.     In the case of KST, the record and testimonial evidence does not support that Inmate KST states a claim for relief. To state a claim for relief under Section 1983, an inmate in custody must plead and prove that he suffered a constitutional injury while in custody occasioned by one or more jail guards or, that his conditions of confinement amounted to punishment.

75.     As the Court noted in its earlier ruling, Intervenor KST takes issue with 1) the Jail's overcrowding and understaffing; 2) failure to properly observe and monitor detained; and 3) denial of medical care. *See ECF #84 at p. 3.*

**F.     The Legal Standard for a Conditions of Confinement Claim Generally.**

76.     DEFENDANT acknowledges that a pretrial detainee who has not been convicted of a crime has a right under the Fourteenth Amendment to the United States Constitution to be protected from impermissible punishment while in custody such as systematic denial of medical care, systematic use of force, systematic failure to protect from harm, to name the most common Section 1983 claims in a custodial context.

77.     To establish liability under a conditions of confinement claim, theory of liability, a plaintiff musts plead and prove:

> 1.     the existence of an identifiable intended condition, policy, or practice of the jail facility that results in one or more of the recognized individualized causes of action under Section 1983; and,
>
> 2.     that the unconstitutional condition, policy, or practice was not reasonably related to a legitimate governmental objective.
>
> *See Bell v. Wolfish,* 441 U.S. 520 (1979)*; Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996) (en banc)*; see also Scott v Moore,* 114 F.3d 51 (1997)(en banc)*.*

78.     As to the first element, a condition usually results from an explicit policy or restriction. But a pattern may demonstrate an unstated or de facto policy. To show such a policy, Plaintiff KST must show more than isolated instances of inadequate or even negligent medical care. It is likewise not enough to show that a plaintiff suffered from episodic acts or omissions of jail officials. Instead, a plaintiff must show that the underlying deprivations reflects a system-wide problem that is pervasive.

79.     In other words, if a plaintiff urges an act or omission of a particular jail officer/official to prove that the defendant jail facility intended the condition or practice to occur systematically, the act or omission must be the result of an established policy or practice allowing the unconstitutional deprivation to occur with systematic regularity. Individualized examples of illness, injury, or even death, standing alone, cannot prove that an alleged conditions of confinement is constitutionally inadequate. A pre-trial detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs. Any lesser showing cannot prove that the inmate is being punished in violation of the individuals' 14th Amendment due process rights. *See Shepherd v. Dallas County*, 591 F.3d 445, 454 (5th Cir. 2009).

80.     To establish the second element and prove that a condition of confinement constituted impermissible punishment, a plaintiff must plead and prove a pervasive pattern of serious deficiencies negatively affecting the individual which is not reasonably related to a legitimate governmental objective.

81.     For instance, not every denial or delay of medical care imposed during pretrial detention amounts to "punishment" in the constitutional sense. The effective management of a detention facility is a valid objective that may justify imposing conditions and restrictions. Pretrial detainees are not entitled to the best medical care available or to the level of medical care that may be available to persons who are not detained. But a facility must provide for a detainee's basic human needs.

82.     To sustain a claim for unconstitutional "punishment" a detained plaintiff must plead and prove for instance that the level of medical care provided generally at the jail was so inadequate that it resulted in a serious deprivation of his basic human needs, and that the level of care provided was not reasonably related to a legitimate governmental objective. *See Bell v. Wolfish,* 441 U.S. 520 (1979)*; Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996) (en banc)*; see also Scott v Moore,* 114 F.3d 51 (1997)(en banc)*.

### G.    The Legal Standard for Episodic Acts or Omissions Claim Generally

83.     To establish liability under an episodic act or omission claim, a custodial plaintiff must prove by a preponderance of the evidence that:

> 1.    the custodial plaintiff was suffered an injury of constitutional magnitude
>
> 2.    that a custodial officer or employee of the jail facility was subjectively aware that

the plaintiff inmate was exposed to a substantial risk of harm and nevertheless acted with deliberate indifference to the risk of harm; and,

3.    the harm suffered was proximately caused by the deliberate indifference of one or more custodial employees.

*Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996) (en banc)*; see also Scott v Moore,* 114 F.3d 51 (1997)(en banc)*.*

84.    The first element asks whether a reasonable person would view a plaintiff's risk of harm (likely suicide, likely assault by others, likely need for medical care, etc. ) as sufficiently serious based on all of the circumstances that existed. This inquiry asks what a reasonable person would conclude and does not specifically rely upon or consider a custodial employees state of mind. *Hare,* 74 F.3d at 649*; see also Scott v Moore,* 114 F.3d at 53 (hdn 3) (en banc)*.*

85.    The second element—deliberate indifference—requires proof of egregious conduct. For example, a custodial plaintiff must prove that a custodial employee or employees knew of and nonetheless disregarded an excessive risk to the plaintiff inmate's health or safety. A custodial plaintiff must plead and prove by a preponderance of the evidence that: 1) a custodial employee was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; and 2) the custodial employee actually drew that inference. An inmate's mere disagreement with the type, amount, or timing of the treatment he receives is not enough to meet this test.

86.    A person acts with subjective deliberate indifference if (1) "he knows that an inmate faces a substantial risk of serious bodily harm," and (2) "he disregards that risk by failing to take reasonable measures to abate it." *See Anderson v. Dallas Cty., Tex.*, 286 Fed.Appx 850, 860 (5th Cir. 2008) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)); *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

87.    The "deliberate indifference" standard is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Board of the County Commissioners of Bryan County, OK v. Brown*, 520 U.S. 397 (1997). Deliberate indifference cannot be inferred from a negligent or grossly negligent response to a substantial risk of harm. *Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996) (en banc).

88.     A custodial county employee must have been aware of a risk of harm and disregarded that risk by failing to take reasonable steps to prevent it. *Hare*, 74 F.3d at 648-49. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference. *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).

89.     The relevant inquiry is not the ultimate efficacy of the actions that were taken, nor the number of steps that were taken. *Doe v. Taylor ISD*, 15 F.3d 443, 458 (5th Cir. 1994); *Leffall v. Dallas ISD*, 28 F.3d 521, 531-32 (5th Cir. 1994). Instead, all that is required are good faith measures, any measures, to avert the anticipated harm . *Hare*, 74 F.3d at 649; *Lefall*, 28 F.3d at 531-32; *Taylor ISD*, 15 F.3d at 458.

90.     If a plaintiff proves each of the three elements listed above by a preponderance of the evidence, then and only then can a jury verdict sustain a finding that a plaintiff's Fourteenth Amendment rights were violated. If no such showing is made, then the episodic acts claims fail. *See Hare v. City of Corinth*, 74 F.3d 633, 648-50 (5th Cir. 1996) (en banc); and other cases cited.

91.     With these legal standards in view, and the actual evidence that exists to prove the allegations pleaded in the live Complaint, it becomes obvious that there is no constitutional tort that has been committed by DEFENDANT HARRIS COUNTY.

## IX. MOTION TO SEVER

92.     Given that the claims brought by Plaintiff Intervenor KST were not originally part of this case, and were added later, with KST represented by his own counsel and separate from Counsel for the other Plaintiffs, should the Court determine that this Motion has merit and should be dismissed, then DEFENDANT HARRIS COUNTY would further request that this claim be severed from the cause of action to which it was joined earlier in this litigation so that the Court's Order becomes final and appealable.

## X. CONCLUSION & PRAYER

WHEREFORE, in view of the foregoing evidence, arguments, and authorities, DEFENDANT HARRIS COUNTY requests and prays that the Court, after duly considering the content of this dispositive motion, including attached exhibits, and any responses, replies, or supplements thereto, grant this Motion for DEFENDANT HARRIS COUNTY against the claims

and causes of action brought by Plaintiff Intervenor KST and Ana Garcia and DISMISS Plaintiff Intervenor Kevin Sanchez Trejo's claims and causes of action with prejudice.

DEFENDANT further requests and prays that the Court sever this claim from the remainder of the case, thereby rendering its Order on this dispositive Motion to be a final and appealable Order and Judgment of the Court as to this lawsuit by Plaintiff Intervenor KST and his Attorney in Fact Chandra Jenkins.

SIGNED on the 13th day of JUNE 2025.

Respectfully submitted,

By:     _Ricardo J. Navarro_

RICARDO J. NAVARRO
Attorney In Charge
State Bar No. 14829100
So. Dist. Id No. 5953
rjnavarro@rampagelaw.com

Kelly R. Albin
State Bar No. 24086079
So. Dist. ID No. 3792304

**DENTON NAVARRO RODRIGUEZ
  BERNAL SANTEE & ZECH**
A Professional Corporation
549 N. Egret Bay, Suite 200
League City, Texas 77573
Tel. 832.632.2102
Fax 832-632-2132

**COUNSEL FOR DEFENDANT
HARRIS COUNTY, TEXAS**

## CERTIFICATE OF SERVICE

I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process referenced in the Federal Rules of Civil Procedure on all attorneys of record in this case on the 13th day of JUNE 2025, to wit:

Benjamin L. Crump                    Email: court@bencrump.com
Paul Ashley Grinke                   Email: paul@bencrump.com
Aaron Dekle                          Email: aaron@bencrump.com
BEN CRUMP LAW FIRM
ATTORNEYS FOR PLAINTIFFS

Carl Lenford Evans, Jr.              Email: cevans@mccathernlaw.com
Noah L. McCathern                    Email: nmccathern@mccathernlaw.com
Jordan A. Carter                     Email: jcarter@mccathernlaw.com
Alizabeth A. Guillot                 Email: aguillot@mccathernlaw.com
McCathern Law Firm
ATTORNEYS FOR PLAINTIFFS

Mohammed Obaid Shariff               Email: mshariff@sharifflawfirm.com;
Kevin M. Acevedo-Carlson             Email: kacevedo@sharifflawfirm.com
Russell Ross                         Email: rross@sharifflawfirm.com
Shariff Law Firm                     Email: eservice@shariflwfirm.com
SHARIFF LAW FIRM
ATTORNEY FOR INTERVENOR ANA GARCIA
   & KEVIN KST

Taylor McCray Hunter                 Email: taylor@thehunterlaw.com
Kevin Green                          Email: kevin@consumerjusticecenter.com
Thomas Lyons Jr.                     Email: tommy@consumerjusticecenter.com
Andi Weber                           Email: andi@consumerjusticecenter.com
ATTORNEY FOR INTERVENOR
CHANDRA JENKINS & KST

_Ricardo J. Navarro_
RICARDO J. NAVARRO
KELLY R. ALBIN