# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **OCTEVIA WAGNER; et. al.,** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | **CIVIL ACTION NO: 4:23-cv-02886** |
| | § | |
| **HARRIS COUNTY, TEXAS,** | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| v. | § | |
| | § | |
| **ANA GARCIA AND CHANDRA JENKINS,** | § | |
| | § | |
| *Plaintiff-Intervenors,* | § | |

---

## PLAINTIFFS' MOTION TO DE-DESIGNATE DEFENDANT'S "CONFIDENTIAL" PRODUCTION

---

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW Plaintiffs Octevia Wagner, et al. and file this Motion to De-Designate Defendant's document production labeled as "Confidential" pursuant to the Court's Protective Order, and in support thereof would respectfully show unto the Court as follows:

# TABLE OF CONTENTS

I.    SUMMARY OF THE ARGUMENT ......................................................... 1

II.   STATEMENT ON THE NATURE AND STAGE OF THE PROCEEDING ............. 3

III.  STANDARD OF REVIEW ................................................................ 4

IV.   EXHIBITS IN SUPPORT OF MOTION ................................................ 5

V.    ARGUMENT AND AUTHORITIES ..................................................... 7

      A.    Defendant's Blanket Designation of Their Production is an Abuse of the
            Protective Order ............................................................... 7

      B.    Defendant Refuses to Comply with the Redaction Requirement of the
            Protective Order ............................................................. 11

      C.    Defendant's Production Does not Constitute "Confidential" Information
            Worthy of Protection. ....................................................... 12

            i.     Videos of Incidents and Observations Are Not Confidential. ................ 12

            ii.    Incident Reports Are Not Confidential. ................................... 15

            iii.   Serious Incident Reports Compiled for TCJS Standards Are Not
                   Confidential. ........................................................... 16

            iv.    KHOU Use of Force Reports Are Not Confidential. .......................... 17

            v.     Closed Investigation Files Are Not Confidential. ......................... 18

            vi.    Autopsy Records of Plaintiffs and Comparators Are Not Confidential. 19

            vii.   Internal Affairs Files Are Not Confidential. ............................ 19

            viii.  Observation Records, Staffing Records, Inmate Death Reports, and
                   Operation Records Are Not Confidential. .................................. 20

            ix.    Disciplinary Records and Personnel Files of Officers Are Not
                   Confidential. ........................................................... 21

            x.     Policies and Standard Operation Procedures Are Not Confidential. .... 22

            xi.    Detainee Jail Records of Plaintiffs and Comparators Are Not
                   Confidential. ........................................................... 23

            xii.   Training Records Are Not Confidential. ................................... 23

VI.   CONCLUSION ......................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Ambler v. Nissen,*
 No. 1:20-cv-1068-LY, 2023 U.S. Dist. LEXIS 115628 (W.D. Tex. July 6, 2023) ................. 19

*Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.,*
 2011 U.S. Dist. LEXIS 166555 (W.D. Tex. Dec. 9, 2011).................................................... 19

*Barnett v. City of Laurel,*
 No. 2:18-cv-00092-KS-MTP, 2018 U.S. Dist. LEXIS 235139 (S.D. Miss. Aug. 10, 2018)..... 8

*Harris v. Amoco Prod. Co.,*
 768 F.2d 669 (5th Cir. 1985).................................................................................................... 7

*Idar v. Cooper Tire & Rubber Co.,*
 No. C-10-217, 2011 U.S. Dist. LEXIS 26013, at *3 (S.D. Tex. Feb. 17, 2011)................ 14, 22

*June Med. Servs., L.L.C. v. Phillips,*
 22 F.4th 512 (5th Cir. 2022)........................................................................................ 8, 15, 17

*Morrow v. City of Tenaha Deputy City Marshal Barry Wash.,*
 No. 2-08-cv-288-TJW, 2010 U.S. Dist. LEXIS 106541 (E.D. Tex. Oct. 5, 2010)... 8, 14, 18, 19

*Patterson v. Ford Motor Co.,*
 85 F.R.D. 152 (W.D. Tex. 1980)................................................................................... 8, 13, 22

*PPD Enters. v. Stryker Corp.,*
 No. H-16-0507, 2017 U.S. Dist. LEXIS 154534 (S.D. Tex. June 13, 2017) ..................... passim

*Roque v. Harvel,*
 No. 1:17-cv-932-LY-SH, 2019 U.S. Dist. LEXIS 179730 (W.D. Tex. Oct. 16, 2019) 19, 20, 21

*Ryder v. Union Pac. R.R. Co.,*
 315 F.R.D. 186 (M.D. La. 2016)......................................................................................... 8, 14

*Salcido v. Harris Cnty.,*
 No. H-15-2155, 2018 U.S. Dist. LEXIS 169034 (S.D. Tex. Sept. 28, 2018) ................... passim

*Sanchez v. Property & Cas., Ins. Co. of Hartford,*
 No. H-09-1736, 2010 U.S. Dist. LEXIS 1006 (S.D. Tex. Jan. 7, 2010) ............................ 4, 5, 8

*Taylor v. Acad. P'ship, LLC,*
 No. 3:19-cv-1764-K-BN, 2020 U.S. Dist. LEXIS 268609 (N.D. Tex. April 24, 2020) .......... 18

*Terry v. Harris County,*
 No. 4:24-cv-03068 (S.D. Tex. filed Aug. 16, 2024) ........................................................ passim

*United States ex rel. Univ. Loft Co. v. AGS Enters.,*
 No. SA-14-CA-528-OLG, 2016 U.S. Dist. LEXIS 200134 (W.D. Tex. Aug. 4, 2016) ... 5, 9, 10

*United States v. Planned Parenthood Fed'n of Am., Inc.,*
 No. 2:21-cv-022-Z, 2022 U.S. Dist. LEXIS 239975 (N.D. Tex. Oct. 11, 2022) ......... 5, 8, 9, 10

*Vantage Health Plan v. Willis-Knighton Med. Ctr.,*
 913 F.3d 443 (5th Cir. 2019)................................................................................................ 7, 8

**Statutes**

Tex. Code Crim. Proc. 49.25(11)...................................................................................................... 22

**Rules**

Fed. R. Civ. P. 26.............................................................................................................. 1, 4, 10

# I.     SUMMARY OF THE ARGUMENT

1.      Litigation against public entities for the violation of citizens' constitutional rights is to be litigated in the light and not in the dark outside the view of the public and with increased litigation costs and hurdles to the Plaintiffs. This case involves serious constitutional violations to 27 individuals who were injured or killed in the Harris County Jail. Dkt. No. 122. The Court is already aware of the significant discovery disputes that have arisen especially in light of the stringent hurdles facing plaintiffs in *Monell* claims. This Motion relates to Defendant's abuse of the Court's Protective Order in wholesale designation of over 95% of the documents produced being designated as "Confidential." As articulated in longstanding case law and the Federal Rules of Civil Procedure, hiding information behind "confidentiality" monikers is to be used sparingly and only in drastic circumstances. The designating party has the burden of establishing with particularity the basis for why the information falls within proprietary information and that disclosure would cause significant harm. Defendant cannot establish this basis to overcome the strong presumption in favor of public disclosure and the public's interest in discovery especially since this case has strong concerns of public policy relating to police and official misconduct.

2.      As will be shown below, Defendant indiscriminately designated multiple categories of information as "confidential" even when the documents had already been produced to the public, did not meet any definition of confidential, and failed to meet the requirements of the Court's Protective Order and Federal Rule of Civil Procedure 26(c). These categories of information constitute over 95% of the document production in this case which constitutes *prima facie* evidence of bad faith designations and justifies removal of the designations as a whole. These categories include:

   a.   Videos of Incidents and Observations Pertaining to Plaintiffs and Comparators;

b.   Incident Reports;

c.   Serious Incident Reports Compiled for TCJS;

d.   KHOU Use of Force Reports;

e.   Investigation Files That Are Closed;

f.   Autopsy Records of Plaintiffs and Comparators;

g.   Internal Affairs Files;

h.   Observation Records, Staffing Records, Inmate Death Reports, and Operation Records;

i.   Disciplinary Records and Personnel Files of Officers;

j.   Policies and Standard Operating Procedures;

k.   Detainee Jail Records of Plaintiffs and Comparators;

l.   TCOLE Training Records

m.   Health Service Reports and Summaries for Transition of Prison Healthcare from Harris County Sheriff's Office to Harris Health.

3.   When Plaintiffs' counsel conferred on these designations as required by the Court's Protective Order (Dkt. No. 80 at ¶ 5), Defendant's counsel responded that they designated all the documents as confidential so they would not have to go through and redact the documents and that they believed everything fell within the confidentiality order without any other basis for the designation. This position does not meet the requirements of the Protective Order and fails to carry Defendant's burden of establishing with particularity the basis for designating these documents as confidential. In light of the clear abuse of the discovery process and the Court's Protective Order and the lack of any confidential reason to hide this information from the public, Plaintiffs ask the

Court to enter an order finding that these categories of documents are not confidential and ordering Defendant to produce versions without a confidentiality designation.

## II.       STATEMENT ON THE NATURE AND STAGE OF THE PROCEEDING

4.       Plaintiffs filed their Original Complaint on August 7, 2023. Dkt. No. 1. After the Court denied the majority of Defendant's Motions to Dismiss, the Parties began discussing the need for a protective order. Plaintiffs were worried that Defendant would over-designate documents as confidential and requested that a "sharing provision" be included. At the hearing on the Motion for Protective Order, Defendant's counsel singularly argued that the need for a protective order was to protect personal identifying information and medical records of detainees not including the Plaintiffs. The Court entered the Protective Order on September 12, 2024. Dkt. No. 80.

5.       As Plaintiffs' counsel worried, Defendant has produced thousands of documents with almost all of them designated as "Confidential." These designations far exceed just personal identifying information and medical records. Instead, all jail records, incident reports, videos, investigation files, standard operating procedures, autopsy records, etc. have been designated as "Confidential." Despite the Protective Order expressly stating that "[f]or every document identified as CONFIDENTIAL where the Confidential Information is able to be redacted, the designating party shall produce a redacted version of the document that is not designated as CONFIDENTIAL," Defendant has not produced a single redacted, non-confidential version of their discovery production. Dkt. No. 80 at ¶ 2. Instead, when Plaintiff conferred on de-designating this discovery as contemplated by the Protective Order, Defendant simply responded that they designated everything as confidential so they would not have to go through the documents and

redact and that all of the categories fall within the Protective Order. Ex. 1. This reasoning is insufficient and illustrates Defendant's bad faith abuse of the Protective Order.

6.     Significant discovery is still needed in this case with responses to various motions that will require the use of the discovery as exhibits. Many depositions are still to be taken by both parties that will include the use of the discovery as exhibits. With Defendant's over-designation, multiple motions for seal and to unseal records will have to be filed and litigated which will cost both time and resources for the Parties and the Court. Their designation also results in hiding this highly important litigation from the public and to have Defendant be able to escape transparency and public accountability. To avoid these issues in the future and in light of Defendant's refusal to meet the requirements of the Protective Order, Plaintiffs are filing this Motion asking the Court to de-designate the documents as Confidential.

### III.      STANDARD OF REVIEW

7.     Protective orders for discovery fall within Federal Rule of Civil Procedure 26(c). Under this rule, the Court for "good cause" may issue a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense in discovery. Fed. R. Civ. P. 26(c)(1). Specifically in relation to confidential information, a protective order can cover information that constitutes a "trade secret or other confidential research, development, or commercial information." *Id.* at 26(c)(1)(G). Confidential information usually only arises in commercial settings and business disputes where protection is needed from disclosing competitive information. *Id.* The Party seeking protection or designating information as confidential has the burden to establish good cause. *PPD Enters. v. Stryker Corp.*, No. H-16-0507, 2017 U.S. Dist. LEXIS 154534, at *3–4 (S.D. Tex. June 13, 2017) (Smith, MJ); *Sanchez v. Property & Cas., Ins. Co. of Hartford*, No. H-09-1736, 2010 U.S. Dist. LEXIS 1006, at *3 (S.D. Tex. Jan. 7, 2010)

(Atlas, J); *see also Salcido v. Harris Cnty.*, No. H-15-2155, 2018 U.S. Dist. LEXIS 169034, at *158–59 (S.D. Tex. Sept. 28, 2018) (Lake, J.) Good cause requires a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements… and then demonstrate that its disclosure would cause an identifiable, significant harm." *Sanchez*, 2010 U.S. Dist. LEXIS 1006, at *3.

8.    A party designating documents under a protective order can be sanctioned and can waive their designations when they have not made those designations in good faith. *PPD Enters.*, 2017 U.S. Dist. LEXIS 154534, at *2–5; *United States v. Planned Parenthood Fed'n of Am., Inc.*, No. 2:21-cv-022-Z, 2022 U.S. Dist. LEXIS 239975, at *12–14 (N.D. Tex. Oct. 11, 2022); *United States ex rel. Univ. Loft Co. v. AGS Enters.*, No. SA-14-CA-528-OLG, 2016 U.S. Dist. LEXIS 200134, at *6–7 (W.D. Tex. Aug. 4, 2016). The dominating factor in determining the lack of good faith by the designating party is the proportion of documents designated. *Planned Parenthood*, 2022 U.S. Dist. LEXIS 239975, at *12. When the production is over 80% designated as confidential, then this production is *prima facie* evidence of bad faith in designating documents. *Id.*; *PPD Enters.*, 2017 U.S. Dist. LEXIS 154534, at *2–5.

## IV.    EXHIBITS IN SUPPORT OF MOTION

9.    The following exhibits are attached in support of this motion.

Exhibit 1: Email Conferral Between Counsel

Exhibit 2: Sample of Videos Designated as Confidential

Exhibit 3: Sample of Incident Reports Designated as Confidential

Exhibit 4: Sample of Serious Incident Reports for Assaults and Uses of Force Designated as Confidential

Exhibit 5: Sample of KHOU Use of Force Reports Produced as Non-Confidential

Exhibit 6: Sample of KHOU Use of Force Reports Designated as Confidential

Exhibit 7: Sample of Investigation Files Designated as Confidential

Exhibit 8: Sample of Investigation Files Produced as Non-Confidential

Exhibit 9: Sample of Autopsy Reports Designated as Confidential

Exhibit 10: Sample of Autopsy Reports Produced as Non-Confidential

Exhibit 11: Sample of Internal Affairs Files Designated as Confidential

Exhibit 12: Sample of Operation Records Designated as Confidential

Exhibit 13: TCJS Reports, Remedial Orders, and DOJ Report

Exhibit 14: Sample of Operation Records Produced as Non-Confidential

Exhibit 15: Sample of Disciplinary Records and Personnel Files Designated as Confidential

Exhibit 16: Sample of Disciplinary Records and Personnel Files Produced as Non-Confidential

Exhibit 17: Sample of Standard Operating Procedures Designated as Confidential

Exhibit 18: Harris County Standard Operating Procedure on Jail Observations Produced as Non-Confidential

Exhibit 19: Sample of Jail Records Designated as Confidential

Exhibit 20: Sample of Jail Records Produced as Non-Confidential

Exhibit 21: Sample of Training Records Designated as Confidential

Exhibit 22: Sample of Similar Records Produced in *Terry v. Harris County* as Non-Confidential

## V.     ARGUMENT AND AUTHORITIES

10.     When analyzing the scope and use of protective orders to prevent the disclosure and free use of discovery in litigation, the Court must apply the presumption in favor of the public's access to litigation documents and the presumption against restricting the use of discovery documentation. *Vantage Health Plan v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019). "No rule of federal procedure entitles a party to litigate in secret. . . . "'[a] party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal.'" *PPD Enters.*, 2017 U.S. Dist. LEXIS 154534, at *3 (quoting *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985)). Defendant has abused the Protective Order and the discovery process in an attempt to hide their actions from the public. Defendant's designation of over 95% of all the documents regardless of their status or form as confidential constitutes an abuse of the Protective Order waiving these designations. Defendant has refused to even comply with the Protective Order by producing non-confidential redacted versions of the documents. Further, the categories of information that have been designated as confidential do not constitute confidential information that is subject to protection or public disclosure. In fact, many of the categories of information sought below have been produced or provided to the public in one shape or form.

### A. Defendant's Blanket Designation of Their Production is an Abuse of the Protective Order.

11.     This case is not a trade secret or other business case that poses risks of disclosure of competitive information. Instead, this case centers around the long-standing and very public abuses of citizens' constitutional rights by the Harris County Sheriff's Office and their officers in the Harris County Jail. This makes this case a matter of grave public concern which automatically weighs against any use of a protective order. *Morrow v. City of Tenaha Deputy City Marshal Barry*

*Wash.*, No. 2-08-cv-288-TJW, 2010 U.S. Dist. LEXIS 106541, at *9–12 (E.D. Tex. Oct. 5, 2010) ("the public has a strong interest in police misconduct and in official corruption and violations of civil rights by public officials."); *Salcido*, 2018 U.S. Dist. LEXIS 169034, at *159; *Barnett v. City of Laurel*, No. 2:18-cv-00092-KS-MTP, 2018 U.S. Dist. LEXIS 235139, at *4 (S.D. Miss. Aug. 10, 2018) ("Body cam footage of an alleged excessive force incident is highly public in nature, and allowing public dissemination of the video outweighs any particularized harm to the Defendants."). As stated by the Fifth Circuit, "The rationale for public access is even greater where, as here, the case involves matters of particularly public interest." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 520 (5th Cir. 2022) (internal quotations and citations omitted).

12.     In light of these presumptions against the use of confidential designations and protective orders, Defendant has the burden to show the necessity of the use of a protective order which requires a "particular and specific demonstration of fact…that the information sought is a trade secret or other confidential information and then demonstrate that its disclosure would cause an identifiable, significant harm." *Sanchez*, 2010 U.S. Dist. LEXIS 1006, at *3. This harm must be more than just embarrassment, public accountability, or litigation losses based on the merits of the information produced. *See Id.*; *Morrow*, 2010 U.S. Dist. LEXIS 106541, at *9–11; *Planned Parenthood*, 2022 U.S. Dist. LEXIS 239975, at *17–18; *Vantage Health*, 913 F.3d at 449–51; *Patterson v. Ford Motor Co.*, 85 F.R.D. 152, 153–54 (W.D. Tex. 1980); *Ryder v. Union Pac. R.R. Co.*, 315 F.R.D. 186, 190–91 (M.D. La. 2016). "Courts are especially unwilling to issue a protective order merely to spare the defendant embarrassment where, as here, the defendants are public officials and the issues in the case are matters of public concern." *Morrow*, 2010 U.S. Dist. LEXIS 106541, at *10.

13.     Here, the public policy against the use of the confidentiality designation is even more pronounced as this case centers on significant abuses by law enforcement and public officials spanning multiple years including directly with 27 Plaintiffs. *See supra*. Because this case does not have any concerns for proprietary or trade secret information, the potential harms that have supported protective orders typically does not exist in this case. Defendant's counsel at the hearing on the protective order argued that the main items they were concerned about disclosure were personal identifying information and medical records of non-Plaintiffs. Under the protective order, this information is redactable and is only a small fraction of the entire production. However, as Plaintiffs feared, Defendant designated over 95% of their production as confidential which far exceeded just redacting personal identifying information and medical information as at least 70% of the documents in the case have nothing to do with medical records or personal identifying information. Instead, as established under long-standing law, Defendant's over-designation constitutes prima facie evidence of bad faith designation.

14.     "The compulsion to designate as confidential every document produced in discovery is not only misguided, but also misapprehends the role of courts in an open society." *PPD Enters.*, 2017 U.S. Dist. LEXIS 154534, at *3. When a party makes blanket designations of their production as confidential, the Court can find that the party acted in bad faith and can de-designate the documents and find that the designations are waived. *See Id.; Planned Parenthood*, 2022 U.S. Dist. LEXIS 239975, at *12-14; *Univ. Loft Co.*, 2016 U.S. Dist. LEXIS 200134, at *6– 7. The burden of reviewing the confidentiality designation cannot be shifted to the responding party. *Univ. Loft Co.*, 2016 U.S. Dist. LEXIS 200134, at *6–7. Courts routinely find that when the designating party designates over 80% of their production as confidential that this is prima facie

evidence of bad faith. *See Id.; Planned Parenthood*, 2022 U.S. Dist. LEXIS 239975, at *12-14 (collecting cases of over 80%); *PPD Enters.*, 2017 U.S. Dist. LEXIS 154534, at *3.

15. Defendant designated over 95% of their document production as "confidential." Despite most of the information alleged to be confidential is redactable, Defendant did not produce a single redacted non-confidential document. When Plaintiffs' counsel conferred with Defendant on de-designating certain categories of information and providing redacted non-confidential versions, Defendant's counsel essentially responded that they designated it all as confidential so they would not have to spend the time to evaluate the documents to redact. Ex. 1. Further, Defendant did not provide any particularized set of facts or explanation on why the categories of information were confidential other than a statement that they believe it fit within the definitions of the protective order. Ex. 1. As the party with the burden of establishing that the information is in fact confidential, Defendant's explanation is severely lacking. These responses further exhibit their bad faith as simply not wanting to take the time to analyze the documents for confidentiality is a direct violation of the Protective Order and for the good cause analysis under Rule 26(c). Fed. R. Civ. P. 26(c); *PPD Enters.*, 2017 U.S. Dist. LEXIS 154534, at *2–4; *Planned Parenthood*, 2022 U.S. Dist. LEXIS 239975, at *12-14; *Univ. Loft Co.*, 2016 U.S. Dist. LEXIS 200134, at *6–7; *Salcido*, 2018 U.S. Dist. LEXIS 169034, at *159–60 (rejecting Harris County's conclusory argument that the information is confidential under the protective order as this fails to establish good cause for confidentiality). Accordingly, Plaintiffs ask the Court to find that Defendant's designations were done in bad faith and that they have waived their designations requiring Defendant to produce all of their documents in the categories identified below as non-confidential.

**B. Defendant Refuses to Comply with the Redaction Requirement of the Protective Order.**

16.    As stated several times above, the Protective Order requires: "For every document identified as CONFIDENTIAL where the Confidential Information is able to be redacted, the designating party shall produce a redacted version of the document that is not designated as CONFIDENTIAL." Dkt. No. 80 at ¶ 2. This requirement makes sense in light of the information that Defendant claimed they would be confidential in the hearing on the protective order. The main item that Defendant's counsel argued at the hearing would be the confidentiality of personal identifying information of detainees and officers. This information does not make entire documents confidential; instead, this information can be easily redacted from the documents. However, as stated above, Defendant has not produced a single redacted non-confidential document. Defendant has refused to evaluate the documents to redact this information or any other allegedly confidential information stating that it would take too long.

Hi Aaron. Good morning.
        I guess I am not really understanding what obstacles you are facing by virtue of the Confidentiality tagging on the documents we are producing. From our perspective, the use of the confidentiality tagging, coupled with the ability to file exhibits as restricted (meaning viewable by attorneys of record and the court only) has relieved us of the burden of having to go throught and redacted the materials we are producing in this case. This arrangement has worked for us – and it should work for you as well.
        Why do you want take this content out from under the Confidentiality Order.?

Ric J. Navarro
**DNRBS&Z, P.C.**
rjnavarro@rampagelaw.com

Ex. 1.

17.    Defendant's personal preference for producing information is not a valid basis to ignore the Court's Order and instead illustrates their bad faith. Defendant's "arrangement" is an abuse of the discovery process by impeding the information available for Plaintiffs' to be able to coordinate and collaborate with additional parties, other Plaintiffs' attorneys who have similar

claims, and impedes the use of these documents in filings, hearings, and depositions and cuts against the whole purpose of the public nature of federal claims. Instead, Defendant is attempting to hide this information from the public and even other litigants because they know that this will expose their longstanding constitutional violations and will permit claims to be decided based on the merits and not jurisdictional or procedural arguments that Harris County has relied on to oppose these claims. At a minimum, Plaintiffs ask the Court to order Defendant to produce all Confidential documents with the confidential information redacted and without the confidential documentation. Notably, the videos as discussed below do not contain any confidential information as they simply depict the incidents in the lawsuit which are not confidential and they do not have a redaction issue.

### C. Defendant's Production Does not Constitute "Confidential" Information Worthy of Protection.

18.     Each of the categories of information below do not constitute "confidential" information. Because this is not a business dispute or trade secret case and because Defendant cannot articulate with specificity the confidential basis for this information or any particularized harm, Plaintiffs asks the Court to enter an Order finding that each of the following categories of information are not confidential requiring them to be produced without any confidential designation.

### i.     Videos of Incidents and Observations Are Not Confidential.

19.     Defendant has designated every single video they have produced in this case as Confidential. These videos constitute depictions of the incidents and the factual matters leading up to and following the incidents themselves. For example, many of the videos show the officers conducting "observations" around the Plaintiffs' cells leading up to and during medical emergencies. Ex. 2. Other examples include depictions of the use of force incidents against

Plaintiffs leading to their injuries or events leading to detainee assaults. Ex. 2. Nothing within these videos show anything confidential as they do not show trade secrets or any business matter that would cause harm to Defendant. Instead, the benefit of these videos to Plaintiffs and the public as a whole is essential as it sheds a light on what actually occurred during an incident instead of relying solely on Defendant's unilateral description of the incident.

20.     In a similar case against Harris County, the Court held that Harris County failed to carry its burden to keep confidential the video of the incident in the Jail and other documents which Plaintiffs are seeking here. *Salcido*, 2018 U.S. Dist. LEXIS 169034, at *155, 159 (case brought on behalf of Kenneth Lucas who is a comparator for Plaintiffs' claims due to his death caused by the excessive force and lack of medical care by Harris County in the Jail). Videos of law enforcement use of force and official actions or inactions is essential for promoting transparency and public awareness of police activity and cuts against any argument of confidentiality. *See Barnett,* 2018 U.S. Dist. LEXIS 235139, at *4 ("Body cam footage of an alleged excessive force incident is highly public in nature, and allowing public dissemination of the video outweighs any particularized harm to the Defendants."); *Ryder,* 315 F.R.D. at 190–91; *Morrow*, 2010 U.S. Dist. LEXIS 106541, at *10–15.

21.     If Defendant is worried that the videos and information will be used against them in other litigation or will cause them embarrassment in the media, this worry is actually one of the whole points against protection and shows that they are using the Protective Order as a shield against public transparency and to not be held accountable for their actions. The Fifth Circuit permits the parties to use the discovery for any legal purpose and corroborating with other plaintiffs or counsel to strategize on the existence of evidence or completeness of the document production is perfectly legal. *See Patterson*, 85 F.R.D. at 153–54 ("Such collaboration among plaintiff's

attorneys would come squarely within the aims of the Federal Rules of Civil Procedure to secure just, speedy, and inexpensive determination of every action."); *Idar v. Cooper Tire & Rubber Co.*, No. C-10-217, 2011 U.S. Dist. LEXIS 26013, at *3, 9–10 (S.D. Tex. Feb. 17, 2011) (Jack, J); *Ryder,* 315 F.R.D. at 190–91 (holding that the "Plaintiff's admitted desire to use the information learned in this specific case in future cases" is insufficient for the Defendant to establish good cause to support a protective order.); *Morrow*, 2010 U.S. Dist. LEXIS 106541, at *10–15.

> Plaintiffs correctly argue that the public has a strong interest in police misconduct and in official corruption and violations of civil rights by public officials. Accordingly, the Court finds that Defendants' unsubstantiated allegations that release of the [confidential documents and videos] in this case will result in embarrassment to the Defendants [is] not enough to demonstrate good cause for a protective order, especially in light of the strong public interest in the conduct of public officials.

*Morrow*, 2010 U.S. Dist. LEXIS 106541, at *12–13.

22.     This sharing and allowing cases to make sure that all evidence is being produced ensures that justice prevails on the merits and not on discovery tricks and promotes judicial efficiency and saves on discovery costs which Defendant's have complained about at length in this and other cases. *See* cases cited *supra*.

23.     Same or similar videos from inside the Jail have been published by the public and the media for years.[1] In fact, Harris County has produced many of these videos to the public themselves cutting against any argument that the videos are confidential.[2] Harris County has never argued to prevent the disclosure of those videos that they are confidential as they have routinely become available through the criminal process or through inspections of the Jail itself. As

---

[1] https://www.youtube.com/watch?v=f5JP6SJkF0A; https://www.youtube.com/watch?v=t4viAQcAp8k; https://www.houstonpublicmedia.org/articles/news/criminal-justice/2024/01/26/475687/leaked-videos-appear-to-show-excessive-violence-abuse-in-the-harris-county-jail/. https://abc13.com/post/new-houston-police-officer-investigation-use-force-incident-detention/15653589/

[2] [2] https://www.youtube.com/watch?v=f5JP6SJkF0A; https://abc13.com/post/raw-video-last-moments-of-jail-inmate-kenneth-lucas/515300/

illustrated by the Protective Order, information that is available to the public is no longer confidential. Dkt. No. 80 at ¶ 2; *See June Med.*, 22 F.4th at 520 (public information cannot be made private). This specifically cuts against any argument that the videos pose a security risk as the videos do not show the layout of the Jail as a whole or any image that detainees, officers, and visitors do not already see themselves. These videos definitely do not show any personal identifying information or medical records which was the main purpose for the Protective Order as argued by Defendant. Defendant cannot provide any justification for keeping these videos confidential. The de-designation of these videos helps promote transparency and to prevent official and law enforcement misconduct. Accordingly, the public interest in favor of de-designation outweighs any potential harm.

### ii. Incident Reports Are Not Confidential.

24.     Similar to the Videos, Defendant has designated every incident report as confidential.[3] These reports at a minimum constitute witness statements about incidents both involving Plaintiffs and Comparators and do not depict any confidential information. Ex. 3. These reports are summaries of the incident that provide key factual information about the incident including the identity of the participants, a summary of how the incident occurred, any comments by the witnesses about the incident, and the location and date of the incident. *Id.* Similar to the videos, these incident reports are routinely made available to the public through media reports, investigations, as the result of a criminal proceeding, or through Harris County's own production.[4] For example, Defendant designated the incident report for the use of force against Plaintiff Jeremy

---

[3] The one exception to this production was the sample KHOU incident report production where Defendant did not designate them as confidential. However, when Defendant produced all of the reports, they designated all of them together as confidential despite the fact that these had already been produced to the public.
[4] https://www.khou.com/video/syndication/ott/khou-11-specials/struck-harris-county-jail-excessive-force-inmates-punched/285-f80afe18-5221-4e55-9664-8eae77aac250;

Garrison that resulted in his broken neck. Ex. 3 at Garrison 9. However, this same incident report was already made public and has been produced by Defendant to KHOU as a result of a public record's request.[5] Additionally, Harris County in the nearly identical Jail death case, *Terry v. Harris County*, No. 4:24-cv-03068 (S.D. Tex. filed Aug. 16, 2024), has produced the same incident reports without a confidentiality designation. Ex. 22. Because Harris County has produced this same information to the public, they cannot argue that the incident reports constitute confidential information, yet they have still designated them as confidential despite their contradictory position in *Terry*. This provides a great example of the abuse of the confidential designation, and Plaintiffs request that the Court order these documents to be de-designated.

### iii. Serious Incident Reports Compiled for TCJS Standards Are Not Confidential.

25.     Another category of incident reports are the reports compiled in accordance with the categories defined by the Texas Commission on Jail Standards (TCJS). As stated in the Motions to Compel, Harris County by and through Sheriff Gonzalez is required to analyze all of the incidents in the Jail each month and provide statistics to TCJS for each serious incident as defined by TCJS. These reports were the subject of the Motion to Compel and the Order requiring their production. *See* Dkt. No. 130 at 7; Dkt. No. 213. Defendant is still in the process of producing these documents, but to date, Defendant has designated each report as confidential. Ex. 4. As stated above with the other incident reports, these incident reports do not contain any confidential information. The documents do not contain the identity of a confidential informant, are not the investigation files for an ongoing criminal investigation, and do not contain private medical information. Defendant has no basis for designating these documents as confidential.

---

[5] https://www.khou.com/article/news/investigations/harris-county-detention-officers-charged-inmate-assault/285-8a93d47b-64d2-4c16-9053-74def3f91ebd; .

### iv. KHOU Use of Force Reports Are Not Confidential.

26. Another category of documents that were the subject of the Motion to Compel are the use of force reports that Harris County provided to KHOU in response to a public information request that were the subject of KHOU's *Struck* documentary. *See* Dkt. No. 130 at 8-9; Dkt. No. 213. These reports exemplify Defendant's bad faith use of the Protective Order. Because each of these reports were produced to a public entity, these documents are by definition not confidential as they have been made public. Dkt. No. 80, *June Med.*, 22 F.4[th] at 520. Defendant originally seemed to understand this when they provided a sample of these documents ahead of the Motion to Compel hearing without a confidential designation. Ex. 5. However, after the Court entered the Order requiring Defendant to produce all of the KHOU reports, Defendant then designated every one of them as confidential. Ex. 6. Even after designating them as confidential, Defendant also redacted information from those documents which is inappropriate. Ex. 6. Even though some of the incident reports were produced without a confidential designation in the sample production, Defendant designated these same documents as confidential in the second production. Compare Ex. 5 with Ex. 6 at KHOU 2022 Vol. 1 at 149, 152, 408, 419, 487; KHOU 2023 Vol. 2 at 1688; KHOU 2023 Vol. 3 at 2258, 2376, 2598. Notably, Harris County's counsel in the *Terry* case produced all of the KHOU reports without the confidential designation which exemplifies the public nature of these documents. *See e.g.* Ex. 22 at 155–174.

27. None of these reports contain any confidential information. They do not contain any HIPAA medical information (names of hospitals are not HIPAA protected). The reports also do not contain any confidential identifying information such as home addresses, telephone numbers, dates of birth, or social security numbers. In conferring on these issues, Defendant stated that Plaintiffs could just get the reports from KHOU, however, Defendant as the party to the case

has the obligation of producing the information in their custody and control and it is not Plaintiffs' obligation to get it from a third party. *Taylor v. Acad. P'ship, LLC*, No. 3:19-cv-1764-K-BN, 2020 U.S. Dist. LEXIS 268609, at *2 (N.D. Tex. April 24, 2020). Because these documents do not contain confidential information and have already been made public, Defendant's confidential designation is baseless and the documents should be de-designated.

### v.    Closed Investigation Files Are Not Confidential.

28.    Defendant has produced for Plaintiffs and some comparators investigation files into the incidents and deaths of the detainees from Houston Police Department and the Texas Rangers. Ex. 7. None of these investigations pertain to ongoing criminal investigations; therefore, they do not contain any confidential information under the Protective Order. Dkt. No. 80. However, Defendant designated every investigation file as confidential. None of the Plaintiffs or Comparators are the subject of criminal investigations relating to their incidents. Even if some of the individuals involved "may" be under an investigation, this potential possibility is insufficient to establish the basis for good cause under a protective order. *Morrow*, 2010 U.S. Dist. LEXIS 106541, at *14–15. These investigation files contain witness statements, causation opinions, videos, and photographs of the scene and incidents. In fact, as an example, Plaintiffs have already produced the Texas Rangers' Investigation report for the death of Evan Lee, yet, Defendant when they produced it later in the case designated it as confidential. Compare Ex. 7 at 740 with Ex. 8 at 1. Harris County also produced investigation records as non-confidential in the *Terry* case clearly showing that Defendant is acting in bad faith in designating these same documents as confidential here. *See e.g.* Ex. 22 at 122–27, 151–54. Again, these files do not contain anything that would be deemed confidential and are subject to public disclosure even outside the litigation context. Accordingly, Plaintiffs ask the Court to de-designate each of these documents.

### vi.  Autopsy Records of Plaintiffs and Comparators Are Not Confidential.

29.    For the Plaintiffs and Comparators that are deceased, Defendant has produced the autopsy files for some of these individuals. Again, Defendant designated all of these autopsy records as confidential. Ex. 9. Although Texas law does not apply to this case, autopsy reports and files are considered public records under Texas law showing that they are not confidential. Tex. Code Crim. Proc. 49.25(11). In fact several of the autopsy reports were already produced through public records requests exemplifying the lack of confidentiality. Compare Ex. 9 with Ex. 10. Harris County in *Terry* also produced this information without a confidential designation. Ex. 22 at 135–50. Nothing contained in these records are confidential as many of them are also included in the detainee's jail records which are also not confidential. Defendant cannot carry its burden that this information is confidential.

### vii.  Internal Affairs Files Are Not Confidential.

30.    Similar to the other investigation files, Defendant produced for some of the Plaintiffs and Comparators' incidents the Internal Affairs files. Defendant designated all Internal Affairs files as confidential. Ex. 11. Because this case centers on key interests of public policy under federal law, the investigation into police conduct and the governance of that conduct by its own internal organization weighs heavily in favor of the presumption of public access to the documents. *See Roque v. Harvel,* No. 1:17-cv-932-LY-SH, 2019 U.S. Dist. LEXIS 179730, at *22–24 (W.D. Tex. Oct. 16, 2019); *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 2011 U.S. Dist. LEXIS 166555, at *9–10 (W.D. Tex. Dec. 9, 2011) (denying a motion for protective order to keep confidential of prior complaints and investigations by the Texas Medical Board holding that the federal and public interest of information directly pertinent to the § 1983 claims outweighed any potential interest in keeping this information confidential); *Morrow*, 2010

U.S. Dist. LEXIS 106541, at *12; *Ambler v. Nissen*, No. 1:20-cv-1068-LY, 2023 U.S. Dist. LEXIS 115628, at *5 (W.D. Tex. July 6, 2023) (holding that the internal affairs files that were not related to ongoing criminal proceedings could not support a basis for confidentiality). In a similar case against Harris County for a death in the Jail, this Court held that Internal Affairs files were not subject to protection from public disclosure. *Salcido*, 2018 U.S. Dist. LEXIS 169034, at *154–56, 59–60. Notably, these Internal Affairs files do not contain any confidential information and are not criminal investigations. Instead, Harris County uses these files and investigations in multiple non-confidential purposes including to track officer practices and the condition of the jail. *Roque*, 2019 U.S. Dist. LEXIS 179730, at *23. Accordingly, Defendant cannot carry its burden to keep this information confidential.

### viii. Observation Records, Staffing Records, Inmate Death Reports, and Operation Records Are Not Confidential.

31.     Defendant has produced several records within the various files that pertain to operation and reporting of the Jail. These files include the staffing levels of specific floors of the Jail, observation records, and inmate death reports. Ex. 12. These records are some of the same records that have been the subject of public reports including the 2009 DOJ report and the TCJS reports and are the subject of the public Remedial Orders. Ex. 13. For example, for the case of Kevin Smith, the observation records state that officers conducted multiple observation rounds during the hours leading up to his death. Ex. 12. Notably, the video footage shows that no officer actually entered the cell and conducted a face-to-face observation round during that time. Ex. 2. These records are simple statements of fact which do not contain any confidential information. Instead, these records help provide public accountability for the conditions and issues facing the jail for the past decade. In accordance with their standard protocol, Defendant designated all of these records as Confidential, yet Defendant cannot provide any specified basis for why this

information is confidential or why they would be harmed if it was produced. In fact, these records routinely get produced without confidentiality designations and are available to the public including the observation rounds records, and the population reports which are included in the TCJS notices. *See* Ex. 14. Similar to the other categories of information, Harris County in the *Terry* case produced these same categories of information without a confidential designation. Ex. 22 at 107–21. Defendant cannot argue that this information is confidential or that they will be harmed by its production. Accordingly, Plaintiffs ask the Court to enter an Order de-designating these documents.

### ix. Disciplinary Records and Personnel Files of Officers Are Not Confidential.

32.     Defendant has produced some disciplinary records for some of the officers who were involved in Plaintiffs' incidents. These disciplinary records and personnel files include Personnel Early Warning System reports and incident history reports which track the disciplinary history and uses of force of officers. Ex. 15. These documents are not confidential as the public has a strong interest in the discipline of officers and holding them accountable. Additionally, because the documents are used to "track officer practices," the documents are not confidential. *Roque*, 2019 U.S. Dist. LEXIS 179730, at *23. Again, Defendant designated all of these documents indiscriminately as confidential. Even if some of the pages of the files are confidential, Defendant has made no attempt to parse out confidential from non-confidential documents or provide redacted versions of those documents. Furthermore, these records are subject to public records requests under Texas law making them not confidential. Ex. 16. Because the documents are not confidential, Defendant cannot carry its burden to establish good cause for a protective order.

### x. Policies and Standard Operation Procedures Are Not Confidential.

33.     Defendant produced several of the written policies and standard operating procedures for the Jail and the Sheriff's Department. Defendant designated all of the standard operating procedures, both current and old versions, as confidential. Ex. 17. These policies and procedures contain nothing confidential and are typically a matter of public record. In fact, Harris County has many of these policies published online which renders them public.[6] One purpose against protective orders is to allow litigants to compare responses from the same party across several cases to ensure that they are producing consistent information and not hiding evidence as well as reducing litigation costs and times that the responding party has to produce the same information. *Idar*, 2011 U.S. Dist. LEXIS 26013, at *2–3; *Patterson*, 85 F.R.D. at 154.

34.     This is exemplified in Harris County's production in this case compared to Harris County's production in *Terry*. In this case, Harris County designated all standard operating procedures as confidential including their Observation policy. Ex. 17. But in *Terry*, Harris County's counsel produced this same observation policy without a confidentiality designation. Compare Ex. 17 at 167-181 with Ex. 18. This same observation document was accessible through online portals and Plaintiffs have already produced it in this case as Wagner 62–74. This supports the basis for permitting sharing between litigants as well as finding that these policies are public making the confidential designation improper. Harris County also attempted to keep their policies confidential in *Salcido* which this Court rejected. *Salcido*, 2018 U.S. Dist. LEXIS 169034, at *154–56, 59–60. Therefore, the Court should require Defendant to de-designate each of the policies and procedures produced in this case.

---

[6] https://hcsopolicy.com/

### xi. Detainee Jail Records of Plaintiffs and Comparators Are Not Confidential.

35. For each of the Plaintiffs and most of the Comparators, the Jail maintains and possesses their jail records. These jail records include any discipline received in the Jail, complaints made to the officers or staff, incident reports, medical requests, intake documentation, classification documents, and other records from the individual's time in Jail. Ex. 19. These records do not contain anything that is inherently confidential especially for the Plaintiffs who are the individuals bringing the claims. However, per usual, Defendant designated all of the jail records produced in this case as confidential to prevent any accountability for their actions both now and in the future. *Id*. These documents are not kept confidentially by the Jail for all purposes as this information is routinely provided in response to public record's requests. Ex. 20. In fact, in *Terry,* Harris County produced these same documents without a confidential designation. Compare Ex. 19 at 2 with Ex. 22 at 1. This Court in *Salcido* also found that Harris County could not articulate any justification for keeping detainee jail records as confidential and out of the public eye. 2018 U.S. Dist. LEXIS 169034, at *154–56, 59–60. Accordingly, Plaintiffs ask the Court to Order Defendant to produce de-designated versions of each of the jail records for the Plaintiffs and Comparators.

### xii. Training Records Are Not Confidential.

36. Each detention officer and jail staff member are supposed to receive training prior to working in the Jail. Plaintiffs have requested and received some of the officers' training records who were involved in the various incidents. Ex. 21. Defendant designated all of the training records as confidential. *Id.* Training records are not confidential in themselves and are kept in the public police personnel files that are subject to Texas public records' requests. Ex. 16. The only arguably confidential information is the personal identifying information of the officers which can be easily

redacted without the need to produce the entire file as confidential. Again in *Salcido,* Harris County's argument that the officer training records were confidential and should be kept out of the public record was rejected. 2018 U.S. Dist. LEXIS 169034, at *154–60. Defendant cannot carry its burden to establish that these documents are confidential or that their production would cause any specific and substantial harm.

## VI. CONCLUSION

37.     Based on the foregoing, Plaintiffs ask for an Order from the Court overruling the "confidential" designation of each of the categories of information listed above and requiring Defendant to produce clean copies of all documents and videos within 21 days of the Order. Plaintiffs also request attorneys fees for having to seek this order as permitted under Rule 26(c). Plaintiffs request such other and further relief as the Court deems just.

Respectfully submitted,

**BEN CRUMP LAW, PLLC**

*/s/ Paul A. Grinke*
Paul A. Grinke
State Bar No. 24032255
paul@bencrump.com
Aaron Dekle
State Bar No. 24100961
aaron@bencrump.com
5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 942-0494 Telephone

**MCCATHERN, PLLC**
Carl L. Evans
State Bar No. 24056989
cevans@mccathernlaw.com
Jordan A. Carter
State Bar No. 24116174
jcarter@mccathernlaw.com

Alizabeth A. Guillot
State Bar No. 24138578
aguillot@mccathernlaw.com
Regency Plaza
3710 Rawlins, Suite 1600
Dallas, Texas 75219
Telephone: (214) 741-2662
Facsimile: (214) 741-4717

**COUNSEL FOR PLAINTIFFS**


**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of this filing to all counsel of record.


*/s/ Aaron Dekle*
Aaron Dekle


**CERTIFICATE OF CONFERENCE**

The undersigned conferred with Defendant's counsel through email on October 10, 13, and 17, 2025, for the relief requested herein. Ex. 1. Defendant's counsel indicated that they would not de-designate or produce redacted versions of any of the documents and are opposed to the relief requested herein.

*/s/ Aaron Dekle*
Aaron Dekle


**UNSWORN DECLARATION UNDER 28 U.S.C. § 1746**

I, Aaron Dekle, was the counsel involved in each of the conferences and discussions concerning the deficiencies raised within this Motion. I have personal knowledge of the factual averments pertaining to the conversations amongst counsel as well as documentation and discovery responses produced by Harris County in this matter and in the *Terry* matter. I verify under penalty of perjury under the laws of the United States of America as an officer of the Court that the factual averments are true and correct and within my personal knowledge.


*/s/ Aaron Dekle*
Aaron Dekle