

# Texas Commission on Jail Standards

Harris County Jail

Houston, Texas

December 19, 2022

_____
Date(s) of Inspection

**SUBJECT:**    **SPECIAL INSPECTION REPORT**

State Law requires periodic inspections of county jail facilities (VTCA, Local Government Code, Chapter 351, VTCA, Government Code, Chapter 511; Chapter 297.8, Texas Commission on Jail Standards).

☑ The facility was inspected on the date(s) indicated above, and it was determined that deficiencies exist. You are urged: (1) to give these areas of noncompliance your serious and immediate consideration; and (2) to promptly initiate and complete appropriate corrective measures. The Commission is available to discuss or assist you with the appropriate corrective measures required.

Failure to initiate and complete corrective measures following receipt of the Notice of Noncompliance may result in the issuance of a Remedial Order (Chapter 297.8, et seq.).

☐ This facility was inspected on the date(s) indicated above. There were no deficiencies noted and upon review of this report by the Executive Director of the Texas Commission on Jail Standards, a certificate of Compliance may be issued per the requirements of VTCA, Chapter 511 and Texas Minimum Jail Standards.

Authenticated:

*Wendy Wisneski* (signature)

**Wendy Wisneski, TCJS Inspector**

**RECEIVED**

DEC 19 2022

**Texas Commission On Jail Standards**

Inter-Office Use Only

| | |
|---|---|
| *Stephanie Rene* (signature) | 12/19/2022 |
| Received by: | Date |
| *Ricky Armstrong* (signature) | 12/19/2022 |
| Reviewed by: | Date |

cc:    **Judge**
       **Sheriff**

Individuals and/or entities regulated by the Texas Commission on Jail Standards shall direct all complaints regarding the commission procedures and functions to the Executive Director at: P.O. Box 12985 Austin, Texas 78711 (512) 463-5505 Fax (512) 463-3185 or at our agency website at www.tcjs.state.tx.us .

# TEXAS COMMISSION OF JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW

*um sneske*

Wendy Wisneski, TCJS Inspector

Facility N: Harris County Jail                                      Date:        December 19, 2022

| Chapter | Title | Comments |
|---------|-------|----------|
| 259 | New Construction | Not applicable. |
| 261 | Existing Construction | Not applicable. |
| 263 | Life Safety | Not applicable. |
| 265 | Admission | Not applicable. |
| 267 | Release | Not applicable. |
| 269 | Records/Procedures | Not applicable. |
| 271 | Classification | Not applicable. |
| 273 | Health Services | Deficiencies exist. Technical Assistance provided. During the review of a custodial death, it was determined that while medication was ordered by a physician and provided during intake, after the inmate went to housing, medication was not ordered by a physician or provided to the inmate. Follow up required: Jail administration along with medical personnel shall provide a plan of action within 30 days of receipt of the notice of non-compliance detailing how incidents such as this will be prevented in the future. Additionally, it is recommended an audit is conducted to ensure all inmates are receiving the medication they require. |
| 275 | Supervision | Not applicable. |
| 277 | Personal Hygiene | Not applicable. |
| 279 | Sanitation | Not applicable. |
| 281 | Food Service | Not applicable. |
| 283.1 | Discipline | Not applicable. |
| 283.3 | Grievance | Not applicable. |
| 285 | Exercise | Not applicable. |
| 287 | Education/Library | Not applicable. |
| 289 | Work Assignments | Not applicable. |
| 291.1 | Telephone | Not applicable.. |
| 291.2 | Correspondence | Not applicable.. |
| 291.3 | Commissary | Not applicable.. |
| 291.4 | Visitation | Nor applicable. |
| 291.5 | Religious Practices | Not applicable. |
| xxx | Variances | Not applicable. |
| xxx | Remedial Orders | Not applicable. |
| xxx | Complaints | Not applicable. |
| | | |

RECEIVED

DEC 19 2022

Texas Commission On
Jail Standards

WAGNER 000230

# TE:  ; COMMISSION C N JAIL STAND.  DS
## JAIL INSPECTION REPORT

**Facility Name:** Harris Co. Jail                                     **Date:**     December 19, 2022

| Item | Section | Paragraph | Comments |
|------|---------|-----------|----------|
| 1 | 273 | .2 (12) | Provide procedures that shall require that a qualified medical professional shall review as soon as possible any prescription medication an inmate is taking when the inmate is taken into custody.  These procedures shall include providing each prescription medication that a qualified medical professional or mental health professional determines is necessary for the care, treatment, or stabilization of an inmate with mental illness. |
| | | | **Documentation reviewed after a custodial death revealed that while insulin was reviewed, ordered and provided while the inmate was in intake, it was not reviewed, ordered and provided once the inmate was housed.** |
| 2 | 273 | .3 | All medical instructions of desi ɟnated physicians shall be followed. |
| | | | **Documentation reviewed after a custodial death revealed that daily orders were written for the inmate to receive KOP (Keep On Person) blood pressure medication, however, this order was not filled nor was  this medication provided once his inmate was housed.** |

Wendy Wisneski, TCJS Inspec*or

RECEIVED

DEC 1 9 2022

Texas Commission On
Jail Standards

# TEXAS COMMISSION ON JAIL STANDARDS



**EXECUTIVE DIRECTOR**
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
Agency Website: http://www.tcjs.state.tx.us
E-mail Address: info@tcjs.state.tx.us

August 28, 2023

The Honorable Lina Hidalgo
Harris County Judge
1001 Preston, Ste. 911
Houston, TX 77002-1817

and

Sheriff Ed Gonzalez
Harris County Sheriff
1200 Baker Street
Houston, TX 77002

Dear Judge Hidalgo and Sheriff Gonzalez,

Pursuant to the provisions of V.T.C.A. Government Code, Section 511.011 and Title 37, Texas Administrative Code (Chapter 297, Section 5, Texas Minimum Jail Standards), you are hereby notified that the jail in your county fails to comply with minimum standards established under V.T.C.A. Local Government Code, Chapter 351, and the rules of this Commission, and that appropriate corrective measures must be initiated. A reasonable completion date for corrective measures should be set. Failure to initiate appropriate corrective action may cause a remedial order to be issued and enforced, or other appropriate action taken. ***In accordance with Chapter 297, Section 6, Texas Minimum Jail Standards, please notify this agency in writing within thirty (30) days of receipt of this notice as to actions initiated.***

The attached page(s) indicate minimum standards violated, corrective measures required, and date by which corrective measures must be initiated. Please reference the Inspection Requirements Review and Jail Inspection Report issued on August 13-18, 2023 detailing the specific issues that resulted in the issuance of this notice of non-compliance.

Issued this 28th day of August 2023
Texas Commission on Jail Standards

By _____
            Brandon S. Wood, Executive Director

BW/VW

---

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair
Ross Reyes, Melissa

Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland

Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting programs and ideas*

Ex. 13.004

WAGNER 000252

 # Texas Commission on Jail Standards

Harris County Jail

Houston, Texas

August 13-18
_____
Date(s) of Inspection

SUBJECT:     COMPREHENSIVE INSPECTION REPORT

State Law requires periodic inspections of county jail facilities (VTCA, Local Government Code, Chapter 351, VTCA, Government Code, Chapter 511; Chapter 297.8, Texas Commission on Jail Standards).

☑ The facility was inspected on the date(s) indicated above, and it was determined that deficiencies exist. You are urged: (1) to give these areas of noncompliance your serious and immediate consideration; and (2) to promptly initiate and complete appropriate corrective measures. The Commission is available to discuss or assist you with the appropriate corrective measures required.

Failure to initiate and complete corrective measures following receipt of the Notice of Noncompliance may result in the issuance of a Remedial Order (Chapter 297.8, et seq.).

☐ This facility was inspected on the date(s) indicated above. There were no deficiencies noted and upon review of this report by the Executive Director of the Texas Commission on Jail Standards, a certificate of Compliance may be issued per the requirements of VTCA, Chapter 511 and Texas Minimum Jail Standards.

Authenticated:

_Michael Garrett, TCJS Inspector_

_Martin Arnold, TCJS Inspector_

_Courtney Elrod, Planner_

_Stephanie Reneau, TCJS Compliance M_

_Jason Jouett, TCJS Inspector_

_Ricky Armstrong, TCJS Asst. Director_

Inter-Office Use Only

Received by: _____   Date: 8/28/2023

Reviewed by: _____   Date: 8/28/2023

RECEIVED
AUG 2 8 2023
TEXAS COMMISSION
ON JAIL STANDARDS

cc:     Judge
        Sheriff

**Individuals and/or entities regulated by the Texas Commission on Jail Standards shall direct all complaints regarding the commission procedures and functions to the Executive Director at: P.O. Box 12985 Austin, Texas 78711 (512) 463-5505 Fax (512) 463-3185 or at our agency website at www.tcjs.state.tx.us .**

Ex. 13 005

WAGNER 000253

## TEXAS COMMISSION ON JAIL STANDARDS REINSPECTION REQUIREMENTS REVIEW

Stephanie Reneau, TCJS Compliance Monitor

Mike Garrett, TCJS Inspector

Courtney Elrod, TCJSPlanner

**Facility Name: Harris County Jail**

Date:          **August 13-17,2023**

| Chapter | Title | Comments |
|---------|-------|----------|
| 259 | New Construction | Not applicable. |
| 261 | Existing Construction | Not applicable. |
| 263 | Life Safety | Not applicable. |
| 265 | Admission | Not applicable. |
| 267 | Release | Not applicable. |
| 269 | Records/Procedures | Not applicable. |
| 271 | Classification | Not applicable. |
| 273 | Health Services | Reviewed a random selection of 40 files. Interviews were conducted with staff and inmates. Reviewed training records. Reviewed the policy. **Deficiencies corrected - 1.)** A review of documentation by the inspection team revealed inmates are now being tended by medical staff within 48 hours, as required by the facility's operation plan. **2.)** A review of Medication Administration Records revealed physician's orders are now being followed and medication is now being provided to inmates as directed. |
| 275 | Supervision | Not applicable. |
| 277 | Personal Hygiene | Not applicable. |
| 279 | Sanitation | Not applicable. |
| 281 | Food Service | Not applicable. |
| 283.1 | Discipline | Not applicable. |
| 283.3 | Grievance | Not applicable. |
| 285 | Exercise | Not applicable. |
| 287 | Education/Library | Not applicable. |
| 289 | Work Assignments | Not applicable. |
| 291.1 | Telephone | Not applicable. |
| 291.2 | Correspondence | Not applicable. |
| 291.3 | Commissary | Not applicable. |
| 291.4 | Visitation | Not applicable. |
| 291.5 | Religious Practices | Not applicable. |
| xxx | Variances | Not applicable. |
| xxx | Remedial Orders | Not applicable. |
| xxx | Complaints | Not applicable. |
| xxx | CCQ | Not applicable. |

Ricky Armstrong, TCJS, Asst. Director

Jason Jouett, TCJS Inspector

Martin Arnold, TCJS Inspector

RECEIVED

AUG 2 8 2023

TEXAS COMMISSION
ON JAIL STANDARDS

**Ex. 13 006**

**TEXAS COMMISSION ON JAIL STANDARDS REINSPECTION REQUIREMENTS REVIEW**

Stephanie Reneau, TCJS Compliance Monitor

**Mike Garrett, TCJS Inspector**

**Courtney Elrod, TCJSPlanner**

**Facility Name: Harris County Jail**

Date: **August 13-17,2023**

| Chapter | Title | Comments |
|---|---|---|
| 259 | New Construction | Not applicable. |
| 261 | Existing Construction | Not applicable. |
| 263 | Life Safety | Not applicable. |
| 265 | Admission | Not applicable. |
| 267 | Release | Not applicable. |
| 269 | Records/Procedures | Not applicable. |
| 271 | Classification | Not applicable. |
| 273 | Health Services | Reviewed a random selection of 40 files. Interviews were conducted with staff and inmates. Reviewed training records. Reviewed the policy. **Deficiencies corrected - 1.)** A review of documentation by the inspection team revealed inmates are now being tended by medical staff within 48 hours, as required by the facility's operation plan. **2.)** A review of Medication Administration Records revealed physician's orders are now being followed and medication is now being provided to inmates as directed. |
| 275 | Supervision | Not applicable. |
| 277 | Personal Hygiene | Not applicable. |
| 279 | Sanitation | Not applicable. |
| 281 | Food Service | Not applicable. |
| 283.1 | Discipline | Not applicable. |
| 283.3 | Grievance | Not applicable. |
| 285 | Exercise | Not applicable. |
| 287 | Education/Library | Not applicable. |
| 289 | Work Assignments | Not applicable. |
| 291.1 | Telephone | Not applicable. |
| 291.2 | Correspondence | Not applicable. |
| 291.3 | Commissary | Not applicable. |
| 291.4 | Visitation | Not applicable. |
| 291.5 | Religious Practices | Not applicable. |
| xxx | Variances | Not applicable. |
| xxx | Remedial Orders | Not applicable. |
| xxx | Complaints | Not applicable. |
| xxx | CCQ | Not applicable. |

**Ricky Armstrong, TCJS, Asst. Director**

**Jason Jouett, TCJS Inspector**

**Martin Arnold, TCJS Inspector**

RECEIVED AUG 2 8 2023 TEXAS COMMISSION ON JAIL STANDARDS

Ex. 13 007

WAGNER 000255

**TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW**

nanie Reneau, TCJS Compliance Mc

**Facility** Harris County Jail

Michael Garrett, TCJS Inspector

**Date:**

Courtney Elrod, Planner

**August 13-18,2023**

| Chapter | Title | Comments |
|---------|-------|----------|
| 259 | New Construction | Reviewed a random sample of 40 inmate files. Interviewed staff. Reviewed policy. Conducted a walk-through inspection of the system. **Deficiency continued, see report** - **Technical assistance provided** – During the inspection of the Harris County Jail it was determined by the inspection team that 10 of the 40 inmate files reviewed were held in booking longer than 48 hours. The time inmates were held over ranged from less than 1 hour up to 2 days. **Note**: This was listed as a deficiency during the February 2023 Comprehensive Inspection. **Follow-up required** - The Harris County Jail will submit a new plan of action within 30 days detailing how inmates will be processed, classified, and housed within 48 hours to the lead inspector. Upon submission and approval of the corrective action plan, unannounced on-site reviews will be conducted to ensure the plan is being adhered to. |
| 261 | Existing | Not applicable. |
| 263 | Life Safety | Inspected life safety equipment and conducted and observed emergency drill. Reviewed documentation. Conducted staff interviews. |
| 265 | Admission | Not applicable. |
| 267 | Release | Reviewed a random sample of inmate files. Interviewed staff. |
| 269 | Records/Procedures | Reviewed policy and documentation. Interviewed staff and reviewed ADA compliance evaluation. |
| 271 | Classification | Reviewed a random selection of 40 inmate files. Reviewed staff training records. Reviewed internal classification audits. Reviewed policy. Interviewed staff. **Technical assistance provided - 1.)** During the review of classification files, it was determined that 2 inmates were classified incorrectly. One inmate was classified as Medium Custody due to having a detainer, and was housed with Maximum Custody inmates. Review of the inmate file revealed the detainer did not exist; a check box on the point additive classification screen was inadvertently selected by the classification officer. The inmate should have been classified as minimum. The inmate was housed incorrectly for 9 days before a classification review was conducted due to a disciplinary issue. The re-classification determined that the initial classification was incorrect. The inmate is now classified and housed correctly. The second inmate was incorrectly classified on the point additive system because the classification officer failed to note the inmate had 2 or more felony convictions within 5 years. This error resulted in the inmate being classified as Medium Custody instead of Maximum Custody. The inmate was housed correctly. **Follow-up required -** Staff will submit a plan of action within 30 days, outlining how they will complete objective classification training for all classification staff. **2.)** The TCJS inspection team found that the one hour of dayroom time was not documented correctly for inmates housed in 2-P-1 at 1200 Baker. The inspectors were unable to determine if inmates housed in this area were given their allotted hour of day room each day or if they had access to a shower. **Follow-up-required** - The Harris County Jail Administration shall send a copy of the day room log for 2-P-1 to the lead inspector every Friday until further notice. |
| 273 | Health Services | Reviewed a random selection of 40 files. Interviews were conducted with staff and inmates. Reviewed training records. Reviewed the policy. **Deficiencies corrected - 1.)** A review of documentation by the inspection team revealed inmates are now being tended by medical staff within 48 hours, as required by the facility's operational plan. **2.)** A review of Medication Administration Records revealed physician's orders are now being followed and medication is now being provided to inmates as directed. |



RECEIVED
AUG 2 8 2023
TEXAS COMMISSION
ON JAIL STANDARDS

Ex. 13 008

**TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW**

| 275 | Supervision | Reviewed 159 TCOLE certification records. Reviewed officer documentation. Interviewed staff. **Deficiency continued, see report - Technical assistance provided – 1.)** Observation records reviewed during the Comprehensive Inspection demonstrated that the required 60 minute observation of inmates was exceeded by staff on a routine basis, by 1 minute up to 1 hour 18 minutes. Additionally, observation records for areas where inmates who are known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined were exceeded by staff on a routine basis by 1 minute up to 2 hours 38 minutes. **Follow-up required -** The Harris County Jail will submit a plan of action on how they will be addressing this matter and it shall include training staff. The training roster documenting this training shall be sent to the lead inspector. Additionally, until further notice, weekly random observation checks shall be sent to the lead inspector. **2.)** After reviewing staffing rosters and during the walkthrough Inspectors determined that staffing did not meet the minimum requirement of 1 officer to every 48 inmates at both 710 San Jacinto and 1200 Baker. . **Follow-up required -** The Harris County Jail shall submit a plan of action to the lead inspector within 30 days detailing how they will be addressing this deficient area moving forward. Additionally, until further notice on a weekly basis the Harris County Jail will send the lead inspector random staffing rosters from its various facilities. **3.)** Through review of facility paperwork and staff observations, it was determined that staffing was still not sufficient to perform required functions. Required functions including transporting of inmates, medication passes, face to face observations and feeding are not being performed within minimum jail standards due to inadequate staffing within the housing units. Staff were observed conducting face-to-face observations from the control stations due to the insufficient availability of rovers. Reasons given for late face-to-face observation logs were listed as no available rovers, short rovers, insufficient staff, and rounds late due to no staff. Other comments noted on the observation logs for late rounds show that staff were tending to other duties, such as medication passes, feeding, laundry pass and coretrak malfunction or coretrack not syncing. Staff interviews confirmed that Harris County staff still supervise feeding from the control room when they are short staffed leaving facility trusties to pass out trays. **Follow-up required -** In order to ensure proper face-to-face observations are occurring on a routine basis, the Harris County Jail will submit a plan of action within 30 days to the lead inspector. |
| --- | --- | --- |
| 275 | Supervision (cont.) | **Technical assistance provided -** During the walk through of the facility the inspection team observed jailers documenting the required visual observation of inmates by scanning QR codes that were located within the housing control station. While the housing control station allows for viewing of the inmate housing area, the jailer never left the housing control station and inspection staff does not believe that the officer is able to visually observe every inmate, face-to-face, that is assigned to the housing area. Officers were also observed scanning QR codes located within the control station without conducting a face-to-face observation of the inmates assigned to that housing areas. Facilities shall have an established procedure for documented face-to-face observation of all inmates by jailers no less than once every 60 minutes according to minimum jail standards. **Follow-up required -** Staff shall develop and submit to the lead inspector by September 30, 2023, a plan of action which shall include training for all jailers on how to properly conduct a face-to-face observation of each inmate. A separate plan of action shall be submitted to the lead inspector within 30 days for the removal of all QR codes from the housing control station. |
| 277 | Personal Hygiene | Conducted a facility walk through. Reviewed facility schedule. |
| 279 | Sanitation | Conducted a facility walk through. Interviewed staff and inmates. Reviewed policy. |
| 281 | Food Service | Conducted walk through inspection in kitchen area. Interviewed staff. Reviewed documentation. **Technical assistance provided - 1.)** During the walk through of the kitchen in Building 1200, the inspection team determined several loaves of bread were expired by 8 days. This bread was prepped to be served to the inmate population. Kitchen staff were advised to remove the expired items immediately. In addition, there were a container of tortillas that had expired on 8/13/2023. 2). During the walk through of the kitchen in Building 1200, the inspection team discovered 3 pallets of bread that were not properly wrapped in plastic wrap. This resulted in the bread being stale and staff throwing out 8 trays of bread. **No follow-up required.** |
| 283.1 | Discipline | Reviewed 50 inmate disciplinary reports. Reviewed policy. Interviewed staff and inmates. . |
| 283.3 | Grievances. | Reviewed 50 inmate grievance/complaints. Reviewed policy. Interviewed staff and inmates. |

## TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW

| 285 | Exercise | Walk through of exercise area conducted. Reviewed documentation. Interviewed staff and inmates. **Technical assistance provided - 1.)** Harris County was unable to provide documentation from the medical provider that inmates in the medical unit and in the mental health unit were not allowed to go to recreation per the physician's orders. **Follow-up required** - Harris County will submit a plan of action to the Commission within 30 days explaining how they will accommodate the inmates in the areas affected with recreation, or they will provide documentation from the provider detailing why the inmate is unable to participate in recreation, and the inmate's recreation status shall be reviewed every 30 days. **2.)** During the review of recreation documentation, the inspection team was unable to determine if inmates housed at 1307 Baker Street were provided the required one hour of recreational time shown on the recreation logs provided. Jail staff had multiple entries showing inmates out in recreation for less than the one hour without documented justification to why the allotted hour was shortened. **Follow-up required** – Until further notice, staff members shall submit weekly logs at the end of each week, comments describing why inmates' recreation hour was not fully completed, to their inspector. Any issues noted during the review of documentation may result in an additional notice of noncompliance being issued. |
|---|---|---|
| 287 | Education/Library | Reviewed policy and schedule. Interviewed staff and inmates. |
| 289 | Work Assignments | Reviewed policy and schedule. Interviewed staff and inmates.. |
| 291.1 | Telephone | Reviewed policy and schedule. Interviewed staff and inmates.. |
| 291.2 | Correspondence | Reviewed policy and schedule. Interviewed staff and inmates... |
| 291.3 | Commissary | Reviewed policy and schedule. Interviewed staff and inmates.. |
| 291.4 | Visitation | Reviewed policy and schedule. Interviewed staff and inmates.. |
| 291.5 | Religious Practices | Reviewed policy and schedule. Interviewed staff and inmates.. |
| xxx | Variances | Reviewed facility variances. . |
| xxx | Remedial Orders | Not applicable. |
| xxx | Complaints | Interviewed staff and inmates. Reviewed complaints regarding temperature of the facility, found the facilities to be in compliance with minimum standards. |

Jason Jouett, TCJS Inspector     Ricky Armstrong, TCJS, Asst. Director     Martin Arnold, TCJS inspector



RECEIVED
AUG 2 8 2023
TEXAS COMMISSION
ON JAIL STANDARDS

## TEXAS COMMISSION ON JAIL STANDARDS
## JAIL INSPECTION REPORT

**Facility Name:**   Harris Co. Jail                                    **Date:**        August 13-17,2023

| Item | Section | Paragraph | Comments |
|------|---------|-----------|----------|
| 1 | 259 | .138(a) | Holding Cells - One or more holding cells shall be provided to hold inmates pending intake, processing, release, or other reason for temporary holding. Inmates shall not be held for more than 48 hours. |
| | | | **During the inspection of the Harris County Jail, it was determined by the inspection team that 10 of 40 inmates reviewed were held in booking longer than 48 hours. The time inmates were held over ranged from less than 1 hour up 2 days.** |
| 2 | 275 | .1 | Regular Observation by Corrections Officers - Every facility shall have the appropriate number of jailers at the facility 24 hours each day. Facilities shall have an established procedure for documented, face-to-face observation of all inmates by jailers no less than once every 60 minutes. Observation shall be performed at least every 30 minutes in areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined. |
| | | | **60-minute observations of inmates were routinely exceeded by staff anywhere from 1 minute to 1 hour 18 minutes. Additionally, observation records for areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined were routinely exceeded by staff anywhere from 1 minute to 2 hours 38 minutes.** |
| 3 | 275 | .4 | Staff - Inmates shall be supervised by an adequate number of jailers to comply with state law and this chapter. One jailer shall be provided on each floor of the facility where 10 or more inmates are housed, with no less than 1 jailer per 48 inmates or increment thereof on each floor for direct inmate supervision. This jailer shall provide documented visual inmate supervision not less than once every 60 minutes. Sufficient staff to include supervisors, jailers and other essential personnel as accepted by the Commission shall be provided to perform required functions. |
| | | | **After reviewing staffing rosters and during the walkthrough Inspectors determined that staffing did not meet the minimum requirement of 1 officer to every 48 inmates at both 710 San Jacinto and 1200 Baker** |

Michael Garrett, TCJS Inspector

Martin Arnold, TCJS Inspector

Courtney Elrod, Planner

Stephanie Reneau, TCJS Compliance

Jason Jouett, TCJS Inspector

Ricky Armstrong, TCJS Asst. Director



RECEIVED

AUG 2 8 2023

TEXAS COMMISSION
ON JAIL STANDARDS

WAGNER 000259

# TEXAS COMMISSION ON JAIL STANDARDS



**EXECUTIVE DIRECTOR**
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

## NOTICE OF NON-COMPLIANCE

## HARRIS COUNTY JAIL

### August 28, 2023

**Please reference the Inspection Requirements Review and Jail Inspection Report issued on August 13-18, 2023, detailing the specific issues that resulted in the issuance of this notice of non-compliance.**

| Minimum Standards Violated: | Corrective Measure Required | Date Corrective Action Must Be Completed |
|---|---|---|
| 259 .138(a) | Holding Cells - One or more holding cells shall be provided to hold inmates pending intake, processing, release, or other reasons for temporary holding. Inmates shall not be held for more than 48 hours. **During the inspection of the Harris County Jail, it was determined by the inspection team that 10 of 40 inmates reviewed were held in booking longer than 48 hours. The time inmates were held over ranged from less than 1 hour up 2 days.** | Upon receipt of this notice. |
| 275.1 | Regular Observation by Corrections Officers - Every facility shall have the appropriate number of jailers at the facility 24 hours each day. Facilities shall have an established procedure for documented, face-to-face observation of all inmates by jailers no less than once every 60 minutes. Observation shall be performed at least every 30 minutes in areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined. **60-minute observations of inmates were routinely exceeded by staff anywhere from 1 minute to 1 hour 18 minutes. Additionally, observation records for areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined were routinely exceeded by staff anywhere from 1 minute to 2 hours 38 minutes.** | Upon receipt of this notice. |

Judge Bill Stoudt, Longview, Chair          Sheriff Kelly Rowe, Lubbock          Commissioner Ben Perry, Waco
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair     Sheriff Raul "Pinky" Gonzales, Refugio          Duane Lock, Southlake
Ross Reyes, Melissa               Patricia M. Anthony, Garland          Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

| 275.4 | Staff - Inmates shall be supervised by an adequate number of jailers to comply with state law and this chapter. One jailer shall be provided on each floor of the facility where 10 or more inmates are housed, with no less than 1 jailer per 48 inmates or increment thereof on each floor for direct inmate supervision. This jailer shall provide documented visual inmate supervision not less than once every 60 minutes. Sufficient staff to include supervisors, jailers and other essential personnel as accepted by the Commission shall be provided to perform required functions. **After reviewing staffing rosters and during the walkthrough Inspectors determined that staffing did not meet the minimum requirement of 1 officer to every 48 inmates at both 710 San Jacinto and 1200 Baker.** | **Upon receipt of this notice.** |

WAGNER 000261

# TEXAS COMMISSION ON JAIL STANDARDS

**EXECUTIVE DIRECTOR**
Brandon S. Wood



P.O. Box 12985
Austin, Texas 78711
**Voice: (512) 463-5505**
**Fax: (512) 463-3185**
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

## NOTICE OF NON-COMPLIANCE

## HARRIS COUNTY JAIL

### February 20, 2024

**Please reference the Inspection Requirements Review and Jail Inspection Report issued on February 12-16, 2024, detailing the specific issues that resulted in the issuance of this notice of non-compliance.**

| Minimum Standards Violated: | Corrective Measure Required | Date Corrective Action Must Be Completed |
|---|---|---|
| 273.7(7) | Provide procedures for the distribution of prescriptions in accordance with written instructions from a physician by an appropriate person designated by the sheriff/operator; Records reviewed failed to show that inmates housed at the **1307 Baker St Facility are provided medication in accordance with written instructions from a physician.** | **Upon receipt of this notice.** |
| 275.(1) | Every facility shall have the appropriate number of jailers at the facility 24 hours each day. Facilities shall have an established procedure for documented face-to-face observation of all inmates by jailers no less than once every 60 minutes. Observation shall be performed at least every 30 minutes in areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined. **60-minute observations of inmates were exceeded by staff in January approximately 1400 times by 2 minutes to 115 minutes. Additionally, observation records for areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined exceeded the 30-minute observation by 2 minutes to 195 minutes.  This deficiency is continued from the August 28, 2023, inspection.** | **Upon receipt of this notice.** |

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair
Ross Reyes, Melissa

Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland

Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

EX. 13.0.4

WAGNER 000270

275.(4)

Inmates shall be supervised by an adequate number of jailers to comply with state law and this chapter. One jailer shall be provided on each floor of the facility where 10 or more inmates are housed, with no less than 1 jailer per 48 inmates or increment thereof on each floor for direct inmate supervision.

**On more than one occasion, Harris County failed to meet the 1:48 as required by standards. This deficiency is continued from the August 28, 2023, inspection.**

**Upon receipt of this notice.**

WAGNER 000271

## TEXAS COMMISSION ON JAIL STANDARDS

**EXECUTIVE DIRECTOR**
Brandon S. Wood



P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

## AGREED SECOND AMENDED REMEDIAL ORDER FOR IMPLEMENTING A COMPREHENSIVE COMPLIANCE PLAN AT HARRIS COUNTY JAIL

**FROM:**     Texas Commission on Jail Standards

**TO:**       Lina Hidalgo
             Harris County Judge
             1001 Preston, Ste. 911
             Houston, TX 77002-1817

             And

             Sheriff Ed Gonzalez
             Harris County Sheriff's Office
             1200 Baker Street,
             Houston, Texas 77002.

**DATE:**     August 7, 2025

This matter of Harris County Jail was brought before the Texas Commission on Jail Standards (TCJS) for consideration of an Agreed Second Amended Remedial Order for Implementing a Comprehensive Compliance Plan at Harris County Jail. After considering facts, applicable laws, and presentations of the parties, TCJS issues this Agreed Second Amended Remedial Order.

## I.  PARTIES, BACKGROUND, AND PURPOSE

   The parties to this Agreed Second Amended Remedial Order for Implementing a Comprehensive Compliance Plan at Harris County Jail (Agreed Remedial Order) are the Honorable Lina Hidalgo, County Judge, and Sheriff Ed Gonzalez, collectively representing the Harris County Jail, and the Texas Commission of Jail Standards (TCJS), represented by their Executive Director, Brandon Wood.

   This Agreed Remedial Order addresses multiple violations of the Texas Minimum Jail Standards as outlined in Section 511.011 of the Texas Government Code and Title 37, Chapter 297 of the Texas Administrative Code. Specifically, 37 Texas Administrative Code Section 297.7 requires responsible officials to initiate corrective actions within a prescribed time, not exceeding 30 days after receiving a Notice of Non-Compliance. Officials shall also report these corrective measures to the TCJS within the same period. Additionally, 37 Texas Administrative Code Section

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

Ex. 13 016                                              WAGNER 004453

297 outlines the procedures for the TCJS to review a facility's compliance status and take enforcement actions if deficiencies remain unaddressed.

Furthermore, Chapter 351 of the Texas Local Government Code details the responsibilities of counties regarding the establishment, maintenance, and operation of county jails and law enforcement agencies.

Given these statutory obligations, this Agreed Remedial Order establishes the terms and necessary conditions to bring Harris County Jail back into compliance with Texas Minimum Jail Standards and to ensure the facility operates safely, lawfully, and following governing law.

## II. PRIOR INSPECTIONS, FINDINGS OF VIOLATIONS, VARIANCE LETTER, AND REMEDIAL ORDERS

### A. September 2022 Inspection and Non-Compliance Findings

On September 7, 2022, TCJS conducted a special inspection of Harris County Jail according to Chapter 351 of the Texas Local Government Code and 37 Administrative Code Sections 297.1-297.17 in response to a formal complaint. The inspection revealed the following violations:

1) **Holding Cell Overstay**: TCJS determined that 64 inmates remained in holding cells for more than 48 hours, in violation of 37 Texas Administrative Code § 259.138, which prohibits holding inmates in these cells beyond that time limit.

2) **Extended Time in Booking**: TCJS investigators found that one inmate remained in holding, including the open booking area, for a total of 99 hours before being moved to housing, violating 37 Administrative Code Section 265.4, which sets standards for timely housing assignments.

3) **Personal Hygiene Deficiency**: Harris County Jail staff reported that personal hygiene items were provided either at dress-in or upon request. However, staff failed to maintain a log verifying the consistent distribution of those items. Under 37 Texas Administrative Code Section 277.4, inmates held longer than 48 hours and unable to provide for themselves due to indigency shall receive a toothbrush, toothpaste or tooth powder, soap, a comb, and shaving implements.

A full summary of these violations is documented in the Inspection Requirements Review and Jail Inspection Report issued on September 7, 2022 (Attachment 1), which led to the issuance of a Notice of Non-Compliance to Harris County Jail on the same date (Attachment 2). Attachments 1 and 2 are attached hereto for reference.

### B. December 2022 Special Inspection and Additional Non-Compliance Findings

On December 19, 2022, TCJS conducted a second special inspection of Harris County Jail in response to the custodial death of an inmate. The inspection confirmed continued non-compliance and identified the following violations involving the same inmate:

1) **Failure to Provide Prescribed Insulin**: TCJS found that although a physician reviewed, ordered, and provided insulin during the inmate's intake, jail staff failed to ensure continuity of care once the inmate was housed. After the transfer to housing, no physician reviewed, ordered, or provided the insulin. This violated 37 Texas Administrative Code Section 273.2 (12), which requires a qualified medical professional to promptly review any prescription medication an inmate is taking at intake. The rule further requires the facility to provide all prescription medications deemed necessary by a qualified medical or mental health professional for the care, treatment, or stabilization of an inmate with mental illness.

2) **Failure to Administer Blood Pressure Medication**: TCJS also discovered that, although a physician issued daily orders for the same inmate to receive Keep on Person (KOP) blood pressure medication, the medication was never dispensed once the inmate was housed. This violated 37 Texas Administrative Code Section 273.3, which mandates that all medical instructions issued by designated physicians shall be followed.

These violations are documented in the Inspection Requirement Review and Jail Inspection Report issued on December 19, 2022 (Attachment 3), leading to the issuance of a Notice of Non-Compliance to Harris County on the same date (Attachment 4). Attachments 3 and 4 are attached hereto for reference.

**C. February 2023 Reinspection at Harris County Jail's Request**

At the request of Harris County Jail, TCJS conducted a reinspection from February 13 to February 17, 2023. The inspection revealed that previously identified areas of non-compliance persisted, necessitating immediate corrective measures. Additionally, new areas of non-compliance were identified in the Inspection Requirements Review and Jail Inspection Report issued on February 13-17, 2023 (Attachment 5), which is attached hereto for reference. On March 8, 2023, TCJS issued a Notice of Non-Compliance to Harris County Jail (Attachment 6), which is attached hereto for reference, detailing the following specific issues requiring correction:

1) **Continued Holding Cell Overstays:** Inmates continued to be held in holding areas for periods ranging from 63 to 70 hours, with an additional seven inmates held between 48.5 to 66 hours before housing. These durations violate 37 Tex. Admin. Code § 259.138(a), which prohibits holding inmates in holding cells for more than 48 hours.

2) **Delayed Medical Assessments**: Inmates were not seen by medical staff within 48 hours, as mandated by the facility's Health Services Plan approved by TCJS. 37 Tex. Admin. Code § 273.2 requires each facility to implement a written plan for inmate medical, mental, and dental services, including procedures for regularly scheduled sick calls.

3) **Non-Compliance with Physician Orders**: Harris County Jail continued to fail in adhering to physician orders, a recurring issue previously noted in the December 2022

inspection. This violates 37 Tex. Admin. Code § 273.3, which mandates that all medical instructions issued by designated physicians shall be followed.

4) **Inadequate Inmate Observations:** Staff routinely exceeded the required 60-minute observation intervals for all housing inmates, with lapses ranging from 1 minute to 1 hour and 13 minutes. In areas housing inmates known to be assaultive, potentially suicidal, mentally ill, or exhibiting bizarre behavior, observation lapses ranged from 1 minute to 2 hours and 9 minutes. These lapses constitute violations of 37 Tex. Admin. Code § 275.1, which requires documented face-to-face observations of all inmates by jailers at least once every 60 minutes and at least once every 30 minutes for inmates in the aforementioned categories.

5) **Insufficient Staffing Levels**: The facility failed to maintain the required staffing ratios. On the 3rd floor, 13 officers were present when 14 were required to supervise 659 inmates. On the 4th floor, 13 officers were present when 15 were required for 684 inmates. Commission rule mandates that inmates shall be supervised by an adequate number of jailers. 37 Tex. Admin. Code § 275.4.

### D. April 2023 Special Inspection and Non-Compliance Findings

On April 17, 2023, TCJS conducted another special inspection following a custodial death and issued an Inspection Requirements Review and Jail Inspection Report (Attachment 7). A Notice of Non-Compliance was issued to Harris County Jail on the same date (Attachment 8). Attachments 7 and 8 are attached hereto for reference. TCJS reviewed a video related to the custodial death, which was submitted by Harris County Jail Inspector Staff, and made the following determinations.  followed a custodial death provided by Harris County Jail Inspector Staff and determined the following:

1) **Observation Lapse**: An inmate entered a restroom and remained unobserved for 88 minutes, violating 37 Texas Administrative Code § 275.1, which requires face-to-face observation at least once every 60 minutes or every 30 minutes for high-risk inmates.

At its May 11, 2023, meeting, TCJS received an update from Executive Director Brandon Wood and public comments from county officials. TCJS voted to authorize the Executive Director to issue a Remedial Order (Attachment 9), which is attached hereto for reference, requiring Harris County Jail to:

1) Adhere to staffing standards outlined in 37 Texas Administrative Code § 275.4, and

2) Submit a staffing plan for TCJS review and approval within 90 days.

### E. November 2023 Variance Letter and Continued Non-Compliance

During the November 2023 regular TCJS meeting, Harris County Jail officials reported continued noncompliance with the 1:48 officer-to-inmate staffing ratio. Officials noted that staffing shortages had worsened despite prior efforts.

1) The staffing deficiency, first cited in February 2023, contributed directly to other ongoing violations.

2) Although Harris County contracted with outside facilities to reduce the population, additional contracts were still pending review.

3) TCJS had previously approved Harris County Jail's use of 580 variance beds at the 1200 Baker Street and 701 San Jacinto facilities. As a condition of that variance, the county was required to remain in full compliance with all minimum jail standards.

Due to the ongoing failure to meet minimum jail standards, specifically staffing requirements, the Executive Director requested, and TCJS approved, a phased reduction in the number of approved variance beds. Beginning December 1, 2023, TCJS initiated monthly reductions of 144 beds. These reductions will continue until Harris County Jail achieves and maintains compliance with minimum staffing standards relative to its inmate population, as outlined in the Variance Letter issued on November 2, 2023 (Attachment 10), which is attached hereto for reference.

**F.  February 2024 Reinspection and Continued Non-Compliance**

On February 12-16, 2024, TCJS conducted a comprehensive inspection of Harris County Jail. The inspection confirmed that previously identified areas of non-compliance persisted and revealed additional violations of the Texas Minimum Jail Standards in the Inspection Requirements Review and Jail Inspection Report issued on February 12-16, 2024 (Attachment 11), which is attached hereto for reference. On February 20, 2024, TCJS issued a Notice of Non-Compliance (Attachment 12), which is attached hereto for reference, detailing the following deficiencies:

1) **Failure to Administer Medication as Prescribed:** TCJS reviewed medical records and found that inmates housed at the 1307 Baker Street Facility did not consistently receive prescribed medication under written physician instructions. Harris County Jail failed to follow proper procedures for distributing prescriptions through the appropriate personnel designated by the sheriff or operator. This violated 37 Tex. Admin. Code § 273.7(7), which requires the administration of prescribed medications per written orders issued by a physician.

2) **Inmate Observation Deficiencies:** Harris County Jail continued to exceed required observation intervals. During January 2024, staff exceeded the 60-minute observation requirements approximately 1,400 times, with delays ranging from 2 minutes to 115 minutes. In high-risk areas, where inmates were known to be assaultive, potentially suicidal, mentally ill, or exhibiting bizarre behavior, staff exceeded the required 30-minute observation window by 2 minutes to 195 minutes. These deficiencies repeated findings from the August 28, 2023, inspection and violated 37 Tex. Admin. Code § 275.1, which requires continuous, documented, face-to-face observation of all inmates within prescribed intervals.

3) **Continued Failure to Meet Minimum Staffing Ratios:** Harris County Jail again failed to meet the 1:48 jailer-to-inmate ratio, continuing a violation first identified during the August 28, 2023, inspection. Commission rule requires that each facility provide at least one jailer on each floor where ten or more inmates are housed, with no fewer than one jailer per 48 inmates (or any increment thereof) to maintain direct supervision. 37 Tex. Admin. Code § 275.4.

## G. April 2024 Special Inspection and Non-Compliance Findings

On April 8, 2024, TCJS conducted a special inspection of Harris County Jail in response to a formal complaint (Attachment 13). As part of the inspection, TCJS reviewed video footage from January 26 and January 29, 2024, which showed Harris County Jail staff entering housing unit 4D1-1, removing mattresses from inmates, and escorting them from the unit without disciplinary due process. Harris County Jail staff did not attempt any contraband search or perform any other authorized activity in connection with the removal. A Notice of Non-Compliance was issued to Harris County Jail on April 10, 2024 (Attachment 14). Attachments 13 and 14 are attached hereto for reference.

TCJS determined that this conduct violated 37 Tex. Admin. Code § 283.1(4)(D), which prohibits the deprivation of clothing or bedding except when an inmate destroys such items. Even in those cases, the jail shall review and document the deprivation every 24 hours.

At its regularly scheduled meeting on May 2, 2024, TCJS received an update from its Executive Director, Brandon Wood. County officials also provided comments. By motion and second, TCJS voted to authorize the Executive Director to amend the Remedial Order issued on May 11, 2023. The First Amended Remedial Order requires Harris County Jail to limit its inmate population based on the number of staff available. The Second Amended Remedial Order for Harris County issued on May 2, 2024 (Attachment 15), is attached hereto for reference.

## H. February 2025 Board Review and Referral to the OAG

On February 6, 2025, during its regularly scheduled board meeting, TCJS reviewed the ongoing non-compliance issues at Harris County Jail. TCJS confirmed that serious deficiencies remained unresolved and noted the following operational conditions:

1) Harris County Jail currently has 38 staff vacancies.

2) Harris County Jail is outsourcing 1,538 inmates to other facilities.

3) The average length of stay in Harris County Jail is 185 days.

4) 340 inmates are awaiting transfer to the Texas Department of Criminal Justice.

5) 350 inmates are on the waitlist for admission to state hospitals.

6) Over 1,300 beds remain unused inside Harris County's jail system.

Ex. 13 021     WAGNER 004458

Harris County Jail reported that it had reduced the number of inmates being transferred to Mississippi facilities by 60 and would continue to lower that number as staffing improved. However, TCJS expressed concern about Texas county jail inmates being housed out of state, citing the inconsistent or absent minimum jail standards in those jurisdictions.

TCJS discussed Harris County Jail's efforts to retain outsourced inmates within the state and reviewed information from jail officials regarding the contracting process for in-state housing.

After deliberation, TCJS authorized Commission staff to engage with the OAG to initiate enforcement of the First Amended Remedial Order, which the Commission issued on May 2, 2024 (Attachment 15). Attachment 15 is attached hereto for reference.

## III.    AGREED SECOND AMENDED REMEDIAL ORDER FOR IMPLEMENTING A COMPREHENSIVE COMPLIANCE PLAN AT HARRIS COUNTY JAIL

Under Title 37, Part 9, Chapter 297, Section 297.1 of the Texas Administrative Code, the Texas Commission on Jail Standards (TCJS) issues this Second Amended Remedial Order for Implementing a Comprehensive Plan at Harris County Jail to address ongoing and unresolved violations of the Texas Minimum Jail Standards at Harris County Jail. This Agreed Remedial Order sets forth mandatory corrective actions that jail officials, staff, and administrators shall implement to achieve and maintain compliance.

Harris County Jail shall comply with all provisions outlined in this Agreed Remedial Order, including but not limited to Part III and Part IV. These sections mandate the rectification of all identified violations, and the necessary corrective actions required to achieve full compliance.

The Texas Commission of Jail Standards (TCJS) and Harris County Jail acknowledge and agree that failure of Harris County Jail to carry out the obligations outlined in this Agreed Remedial Order shall constitute a violation subject to enforcement action as outlined in Part IV (Notice of Violation) and Part V (Enforcement Actions for Non-Compliance) of this Agreed Remedial Order.

### A.  Structured Compliance Plan and Mandatory Conditions for Compliance

This Structured Compliance Plan outlines the specific actions Harris County Jail shall take to correct non-compliance and meet the minimum standards established under Texas law. Each condition is mandatory and includes the assigned responsible party, required timeline, and governing statutory authority.

#### 1. Assign and Maintain Minimum Staffing Levels according to 37 Texas Administrative Code § 275.4

**Purpose:** To ensure adequate supervision and safety, the Jail Administrator or Equivalent Staff shall assign and maintain the required jailer-to-inmate staffing ratio.

a) The Harris County Jail Administrator or Equivalent Staff shall assign no fewer than one jailer per 48 inmates on each floor where 10 or more inmates are housed.

b) The Harris County Jail Administrator or Equivalent Staff shall ensure that staffing coverage is maintained on all shifts, including nights and weekends. The Staffing Compliance Officer or Equivalent Staff shall prepare and submit staffing rosters to TCJS on the 1st and 15th of each month. These rosters shall include staff names, assignments, vacancies, and overtime.

c) The Harris County Jail Sheriff or Equivalent staff shall immediately notify TCJS if staffing falls below the required ratio and shall implement contingency plans to restore compliance.

**2. Conduct and Document Inmate Observations under 37 Texas Administrative Code § 275.1:**

**Purpose:** To ensure inmate health and safety, Harris County Jail shall implement the following measures to conduct and document timely face-to-face observations:

a) **Staffing requirements**: An appropriate number of jailers shall be on-site 24 hours a day to ensure continuous supervision and inmate safety.

b) **Regular Observations**: Jailers shall conduct documented, face-to-face observations of all inmates at intervals not exceeding 60 minutes.

c) **Enhanced Observation for High-Risk Inmates**: Jailers shall perform face-to-face observations at least every 30 minutes of all inmates who are identified as assaultive, potentially suicidal, mentally ill, or exhibiting bizarre behavior. In addition, Harris County Jail shall implement specialized surveillance strategies, such as high-resolution camera monitoring in designated cells, live monitoring of video feeds by trained staff personnel, and increasing physical presence in high-risk areas to ensure the safety of inmates with identified mental health needs. These improved measures aim to support early identification of suicidal behaviors and guarantee quick intervention.

d) **Communication Capabilities**: Harris County Jail shall maintain a two-way voice communication system between inmates and jailers, licensed peace officers, bailiffs, and designated staff at all times to ensure immediate response capabilities.

e) **Use of Surveillance Equipment**: Harris County Jail shall install and maintain operational electronic sensors and high-definition cameras capable of recording mandated personal observations of inmates housed in high-risk cells or designated areas. Cameras in high-risk areas shall enable real-time monitoring by trained staff and store recordings for at least 90 days. The system should include coverage of suicide-resistant housing and be subject to regular reviews for compliance. Closed-

Ex. 13 023                    WAGNER 004460

circuit television may supplement, but not replace, required personal observations.

f) **Staff training**: Harris County Jail shall continue to provide comprehensive and mandatory training on updated observation protocols, suicide prevention techniques, and recognition of mental health warning signs to all staff members. Harris County Jail shall monitor training compliance and maintain a record of its employees who complete the training.

g) **Use of an observation alert system to alert staff**: The Jail Administrator or Equivalent Staff shall install a system that alerts staff to missed or overdue observations.

h) **Observation Compliance Reports:** The Compliance Coordinator or Designated Staff shall submit weekly observation compliance reports to TCJS, beginning 15 days after this order becomes effective.

**3. Provide Medical Screenings and Medication according to 37 Texas Administrative Code §§ 273.2, 273.3, 273.7**

**Purpose:** To ensure timely and appropriate medical and mental health care, including suicide prevention and intervention, Harris County Jail shall implement the following measures to provide access to treatment.

a) Medical staff shall provide all inmates with access to prescribed medications.

b) Medical staff shall review and screen all inmates for mental health conditions and suicide risks, including inspecting all inmate prescription medications during intake, using evidence-based screening tools as required by 37 Tex. Admin. Code § 273.2(12).

    i.    Suicide assessment results shall be clearly documented and shared with supervisory staff for placement decisions and observation planning.

    ii.    Any positive screening results or observed warning signs related to suicide, self-harm, or psychiatric instability shall be immediately referred to qualified health professionals.

c) Medical and mental health personnel shall ensure that all inmates have access to prescribed medications and mental health services without delay.

    i.    Inmates identified as needing mental health care shall be evaluated by a qualified mental health professional within a clinically appropriate timeframe, not to exceed 24 hours for those with emergent needs.

Ex. 13 024                                        WAGNER 004461

d) Medical personnel shall administer medications as ordered by a licensed physician under 37 Tex. Admin. Code §§ 273.3 and 273.7(7).

e) The Health Services Administrator shall maintain and review medication logs daily to ensure continuity of care and accuracy.

f) The Jail Administrator or Designated Staff shall ensure that all medical and mental health care complies with the approved Health Services Plan. The Harris County Jail Compliance Coordinator shall submit monthly medical compliance summaries to TCJS, including:

    i. Number of inmates screened for mental illness or suicide risk,

    ii. Number of positive CCQ matches for and magistrate notifications sent,

    iii. Timeliness of medication administration, and

    iv. Staffing and training related to medical and mental health protocols.

**4. Medication Administration under 37 Texas Administrative Code §273.2**

**Purpose**: To ensure timely and appropriate medical prescription administration Harris County Jail shall implement a comprehensive medication administration system to:

a) Document the prescribing authority for all medications, ensuring that only licensed medical professionals, such as physicians, physician assistants, or advanced practice registered nurses acting under delegated authority, are authorized to prescribe medications to inmates.

b) Establish clear procedures for verifying prescriptions, recording medication administration, and maintaining accurate and up-to-date Medication Administration Records for each inmate.

    i. Include safeguards to avoid missed doses of critical medications, especially those used to manage mental health and psychiatric conditions.

c) Ensure compliance with continuity of care requirements under 37 Texas Administrative Code § 273.5, confirming that all prescribed medications are administered on time and that medical staff reviews an inmate's medication history upon intake.

d) This system shall be fully operational and in compliance with Commission requirements within 30 days after the effective date of this Agreed Remedial Order.

**5. Monitor Holding Cell Confinement according to 37 Texas Administrative Code §259.138 (a)**

**Purpose:** To ensure compliance with the 48-hour maximum limit, Harris County Jail shall monitor and limit holding cell confinement.

    a) The Jail Administrator or Equivalent Staff shall:

        i. Revise existing policies no later than 15 days of this Agreed Remedial Order to ensure compliance with the 48-hour limit.

        ii. Prioritize the processing, classification housing of inmates who reach 36 hours after intake.

        iii. Ensure all correctional staff members receive training on the updated holding cell duration policies within 15 days after policy revision, under 37 Texas Administrative Code § 275.2.

        iv. Require each correctional staff member to sign a statement acknowledging the staff member's commitment to implement and comply with these policies.

        v. Maintain all records and reporting requirements to ensure compliance with 37 Texas Administrative Code § 269.1.

        vi. Submit weekly holding cell reports to TCJS, beginning 15 days after this order becomes effective, until compliance is maintained.

    b) Compliance Officer or Equivalent Staff shall:

        i. Audit holding weekly to verify adherence to the 48-hour limit.

        ii. Report any violations immediately to the Jail Administrator or Equivalent Staff person for corrective action.

**6. Document and Review Property Deprivations under 37 Texas Administrative Code §283.1 (4)(D)**

**Purpose:** To ensure the protection of inmate rights, Harris County Jail shall document and review all instances of property deprivation.

    a) Jailers may not remove an inmate's bedding or clothing unless the inmate has destroyed the item.

    b) Supervisors shall complete a Deprivation Review Form and reassess the

deprivation every 24 hours. The 24-hour reassessment period begins immediately following the initial deprivation.

c)   The Jail Administrator shall retain all documentation in the inmate's file and train all staff on the facility's due process policy within 30 days. The 30-day staff training period begins immediately upon this order becoming effective.

## 7. Reduce Variance Beds and End Out-of-State Housing - TCJS Oversight Authority

**Purpose:** To ensure inmates are housed in facilities that meet Texas minimum jail standards, the Harris County Jail should reduce reliance on out-of-state housing. Under no circumstances should inmates identified during intake or thereafter as having mental health conditions, serious mental illness, or elevated suicide risks be transferred to an out-state-facility. Inmates currently housed out-of-state who are known or documented to have such conditions must be prioritized for return to Texas, with a preference for placement in the Harris County Jail or another suitable in-state facility equipped to address their needs. These individuals require continuity of care and access to appropriate mental health services that are often unavailable or insufficiently regulated in out-of-state facilities.

a)   The Sheriff or Designated Staff shall prioritize in-state housing options and work to eliminate the use of out-of-state contracts, particularly for medically vulnerable or mentally ill inmates.

b)   A structured transition plan shall be developed and implemented to facilitate the safe and timely return of all inmates currently housed out-of-state back to Texas.

c)   The Jail Administrator or Designated Staff shall prepare and submit a monthly report to TCJS that includes:

   i.    The number of inmates housed out-of-state.

   ii.   Verification of those facilities' compliance with equivalent standards.

   iii.  Efforts made to return or transfer all inmates, particularly vulnerable populations, back to Texas facilities.

   iv.   An updated schedule of anticipated inmate transfers for the upcoming month, including projected timelines and capacity assessments of in-state facilities.

   v.    A breakdown of any logistical or contractual obstacles impeding transfer efforts and steps taken to resolve them. This involves coordinating with other Texas jails and regional detention facilities to identify available in-state bed space, ensuring all transitions comply with inmate classification, medical and mental health needs, and certifying monthly progress in writing to TCJS.

**8. Staff Training Programs:**

**Purpose:** To achieve full compliance with Texas Minimum Jail Standards and address the deficiencies identified in this Structured Compliance Plan, Harris County Jail shall develop and execute a thorough training program for all personnel, focusing on updated procedures and standards to prevent future infractions. The training curriculum shall be submitted for TCJS approval within 30 days after the effective date of this Agreed Remedial Order, with all staff completing the program and signing a statement of completion within 90 days post-approval. Harris County Jail shall develop and implement a comprehensive staff training program to address all areas of noncompliance identified in previous inspections. This program shall align with applicable standards under 37 Texas Administrative Code and shall cover all identified deficiencies, including but not limited to:

    a) **Minimum Staffing Levels (37 Tex. Admin. Code § 275.4):**

        i.    Train all supervisory and scheduling staff on maintaining the required jailer-to-inmate ratio of 1:48 on each floor housing ten or more inmates.

        ii.    Emphasize the need for continuous coverage across all shifts, including weekends and nights.

        iii.    Reinforce the requirement to submit accurate staffing rosters to TCJS on the 1st and 15th of each month and to immediately notify TCJS if staffing falls below the required minimum.

    b) **Inmate Observation Requirements (37 Tex. Admin. Code § 275.1)**

        i.    Train all jailers and shift supervisors on conducting face-to-face observations of inmates at intervals not exceeding 60 minutes and every 30 minutes for high-risk inmates.

        ii.    Provide enhanced training on recognizing and responding to indicators of suicidal ideation, mental health crises, and behavioral distress.

        iii.    Train jail staff on the new alert system that signals missed or overdue observations and the process for submitting weekly observation compliance reports to TCJS.

    c) **Medical Screening and Medication Administration (37 Tex. Admin. Code §§ 273.2, 273.3, 273.7)**

        i.    Instruct all medical personnel on the intake review of prescription medications, the administration of medications as ordered by licensed professionals, and the proper maintenance of daily medication logs.

      ii.     Train Jail staff to follow the approved Health Services Plan and ensure compliance with reporting obligations under this Agreed Remedial Order.

      iii.    Specific training on mental health medication protocols and coordination with community providers for continuity of psychiatric care.

**d)   Continuity of Medical Care (37 Tex. Admin. Code §§ 273.2, 273.5, 273.7)**

      i.      Train medical and intake staff on the procedures for verifying inmate prescriptions, documenting Medication Administration Records, and ensuring continuity of care, including reviewing inmates' medication histories upon intake and administering prescribed medications on time.

      ii.     Adopt protocols for follow-up with mental health professionals and suicide prevention coordinators for inmates at elevated risk.

**e)   Holding Cell Confinement (37 Tex. Admin. Code §§ 259.138(a), 275.2, 269.1)**

      i.      Train all correctional officers and supervisors on the 48-hour confinement limit in holding cells.

      ii.     Reinforce procedures for prioritizing housing for inmates held over 36 hours and ensure that staff understand their obligation to report and document all holding durations.

      iii.    All Jail staff shall acknowledge updated policies in writing and receive training on how to respond to holding cell limit violations.

      iv.    Incorporate guidance on monitoring and documenting the condition of inmates with known or suspected mental illness during confinement.

**f)   Property Deprivation Due Process (37 Tex. Admin. Code § 283.1(4)(D))**

      i.      Train all correctional staff on the facility's policy regarding the deprivation of inmate property, including the requirement that items may only be removed when destroyed by the inmate.

      ii.     Provide instruction on completing the Deprivation Review Form, conducting 24-hour reassessments, and retaining documentation in inmate files.

**g)   Variance Bed Reduction and Out-of-State Housing Oversight (TCJS Authority)**

      i.      Train administrative and compliance staff on the phased reduction of variance beds and the process for attempting to end out-of-state housing.

     ii.    Emphasize the monthly reporting requirements to TCJS, including efforts to return inmates to Texas-based facilities and verification of compliance at out-of-state locations.

     iii.   Provide training on coordination protocols with other in-state jails and contract facilities to ensure the lawful and timely return of out-of-state inmates. Include instruction on prioritizing inmate transfers based on mental health needs, legal access requirements, and proximity to support systems.

**h)** **Submitting the training program to TCJS for approval within 30 days after the effective date of this order**

**i)** **Ensuring that all staff members complete the required training program and sign a statement of completion within** 90 **days after program approval.**

**j)** **Requiring ongoing refresher training to reinforce compliance with TCJS regulations to prevent future violations.**

**k)** **Harris County Jail shall maintain detailed records of all completed training certifications and shall submit compliance reports to TCJS upon request.**

## IV. VIOLATION OF THIS ORDER

### A. Issuance of Notice of Violation

If Harris County Jail fails to comply with the terms of this Agreed Remedial Order or violates applicable Texas Minimum Jail Standards, TCJS may issue a Notice of Violation (NOV), identifying the specific provisions violated and providing factual findings supporting the determination of non-compliance.

### B. Corrective Actions Requirements

Upon receipt of the NOV, Harris County Jail shall:

1) Submit a Corrective Action Plan within 30 days after receiving the NOV: The Plan shall detail the specific steps the Jail will take to remedy the violations and prevent future incidents and shall include a timeline for completion of each step.

2) Provide Documentation of Compliance: Upon completion of each step in the Corrective Action Plan, provide verifiable records demonstrating corrective measures, including updated policies, training certifications, and relevant reports.

3) Implement Staff Training: Ensuring all affected personnel complete remedial training under 37 Administrative Code §275.2, with documentation submitted to TCJS.

**C. Submit Reports and Cooperate with Enforcement under Texas Government Code § 511.009.**

**Purpose:** To ensure accountability and transparency, the Compliance Coordinator shall submit regular reports and fully cooperate with the Texas Commission on Jail Standards (TCJS) oversight.

1) The Compliance Coordinator shall submit monthly updates to TCJS summarizing: Completed actions

2) The Jail Administrator shall ensure full cooperation with all TCJS inspections, audits, and requests

3) If compliance is not achieved within 6 months from the issuance of this plan, the Executive Director may refer Harris County Jail to the Office of the Attorney General for enforcement under § 511.009.

4) Monthly reporting and cooperation requirements take effect immediately upon issuance of this plan and continue until full compliance is achieved. The facility shall achieve full compliance within 6 months to avoid potential enforcement actions.

## V. ENFORCEMENT ACTIONS FOR NON-COMPLIANCE

### A. Non-compliance with Notice of Violations

If Harris County Jail fails to correct the violations within the specified timeframe, TCJS may initiate enforcement action, including but not limited to:

1) Mandatory Compliance Audits: TCJS may conduct additional audits to assess Harris County Jail's overall compliance with this Agreed Remedial Order and Texas Minimum Jail Standards.

2) Administrative Penalties: TCJS may impose penalties or other corrective sanctions for failure to comply with the requirements of this Agreed Remedial Order or applicable Texas Minimum Jail Standards.

3) Order of Injunction: TCJS may pursue injunctive relief against Harris County Jail as authorized by Section 511.014 of the Texas Government Code for continued non-compliance with this Agreed Remedial Order or for violations of the Texas Minimum Jail Standards.

4) Suspension or Revocation of Jail Operations: Initiating legal proceedings that may result in the suspension or revocation of Harris County Jail's operational authority.

### B. Immediate Actions for Severe Violations

1) TCJS reserves the right to take immediate enforcement action, including seeking an injunction under Section 511.014 of the Texas Government Code if conditions at Harris County Jail violate statute, board rule, or TCJS order, or if conditions present a risk to inmate safety.

## VI. GENERAL PROVISIONS

### A. Venue

According to 37 Tex. Admin. Code § 297.12, any legal action or proceeding arising under this Agreed Remedial Order, including enforcement or injunctions related to violations of TCJS orders, rules, procedures, or relevant provisions of the Local Government Code, shall be brought in a district court of Travis County, Texas. Such actions shall receive preferential settings and shall be tried by the court without a jury, notwithstanding the provisions of Chapter 351 of the Local Government Code.

### B.    Acknowledgment and Execution Authority

The County Judge and the Sheriff are authorized to execute this Agreed Remedial Order on behalf of the Jail. They also have the authority to take all necessary administrative actions to implement the terms of this Order, including corrective measures to bring the Harris County Jail into compliance with the Texas Minimum Jail Standards and to ensure the facility operates safely, lawfully, and in accordance with governing law.

This Agreed Remedial Order is effective upon execution.

### C. Waiver of Contested Case Hearing and Judicial Review

The Harris County Jail and its officials, including County Judge Lina Hidalgo and Sheriff Ed Gonzalez, acknowledge and agree as follows:

1) Waiver of Contested Case Hearing: Harris County Jail and its officials voluntarily waive the right to a contested case afforded by Section 511.013(a) of the Texas Government Code, which provides a right to request a contested case hearing within 30 days of receiving a remedial order. This waiver applies to all matters addressed in this Agreed Remedial Order.

2) Waiver of Judicial Review: Harris County Jail and its officials waive any right to judicial review afforded by Section 511.013(c) of the Texas Government Code, which allows for judicial review of a final Commission decision following a contested case hearing. This waiver applies to all matters addressed in this Agreed Remedial Order.

By consenting to this Agreed Remedial Order, the Harris County Jail and its officials accept the terms without seeking further administrative or judicial remedies, ensuring prompt compliance with Texas Minimum Jail Standards.

### D.  Authorized Representative Signatures

The Parties agree, and the undersigned representatives of each Party certify that the undersigned representatives are duly authorized to execute this Agreed Remedial Order on behalf of their respective entities.

**For the Texas Commission on Jail Standards:**

Executive Director
Name: Brandon Wood


**For Harris County Jail:**

County Judge
Name: Honorable Lina Hidalgo

Sheriff
Name: Sheriff Ed Gonzalez

### E.  Notice to Parties

All notices, requests, or communications required under this Agreed Remedial Order shall be in writing and delivered to the following addresses:

**Texas Commission on Jail Standards (TCJS):**

Attn: Executive Director Brandon Wood

300 W. 15 St. Suite 503

Austin, Texas 78711-2985

512-463-5055

Brandon.wood@tcjs.state.tx.us

**For Harris County Jail:**

Attn: County Judge Honorable Lina Hidalgo

Address: 1001 Preston, Ste. 911

Houston, Texas 77002

713-274-7000

Judge.hidalgo@harriscountytx.gov

Sheriff Ed Gonzalez

1200 Baker Street

Houston, Texas 77002

832-470-4458

ed.gonzalez@sheriff.hctx.net

Notices shall be delivered by certified mail, return receipt requested, and notice shall be deemed received on the date reflected in the return receipt. In the absence of a return receipt or if the date received cannot be determined from the receipt, the notice will be presumed to have been received five (5) calendar days after mailing.

**F.  Entire Agreement**

This Agreed Remedial Order constitutes the entire agreement between the Parties concerning the subject matter herein and supersedes all prior discussions, agreements, or understandings of any kind.

Effective Date:  this __ day of _____, 2025.

**Attachments:**

1.  Inspection Requirements Review and Jail Inspection Report issued on September 7, 2022.
2.  Notice of Non-Compliance to Harris County Jail issued on September 7, 2022.
3.  Inspection Requirements Review and Jail Inspection Report issued on December 19, 2022.
4.  Notice of Non-Compliance to Harris County Jail issued on December 19, 2022.
5.  Inspection Requirements Review and Jail Inspection Report issued on February 13-17, 2023.
6.  Notice of Non-Compliance to Harris County issued on March 8, 2023.
7.  Inspection Requirements Review and Jail Inspection Report issued on April 17, 2023.
8.  Notice of Non-Compliance to Harris County issued on April 17, 2023.
9.  Remedial Order issued on May 11, 2023.
10.  Variance Letter issued on November 2, 2023.
11.  Inspection Requirements Review and Jail Inspection Report issued on February 12-16, 2024.
12.  Notice of Non-Compliance to Harris County issued February 20, 2024.
13.  Inspection Requirements Review and Jail Inspection Report issued on April 8, 2024.
14.  Notice of Non-Compliance to Harris County issued on April 10, 2024.
15.  Second Amended Remedial Order for Harris County issued on May 2, 2024.
16.  Certified excerpt of meeting minutes of TCJS meeting on February 6, 2025.

**Signatures:**

**Texas Commission on Jail Standards**

Brandon Wood, Executive Director

Date: 8/7/25

**Harris County Jail Representatives**

County Judge
Lina Hidalgo

Date: _____

Sheriff
Ed Gonzalez

Date: _____

cc:   Governor Greg Abbott
      Governor, State of Texas

Ex. 13 035                                           WAGNER 004472

# ATTACHMENT 1

Inspection Requirements Review and
Jail Inspection Report issued on
September 7, 2022

Ex. 13 036    WAGNER 004473

*File*

# TEXAS COMMISSION ON JAIL STANDARDS



**EXECUTIVE DIRECTOR**
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
Agency Website: http://www.tcjs.state.tx.us
E-mail Address: info@tcjs.state.tx.us

*HARRIS*

September 7, 2022

The Honorable Lina Hidalgo
Harris County Judge
1001 Preston, Ste. 911
Houston, TX 77002-1817

and

Sheriff Ed Gonzalez
Harris County Sheriff
1200 Baker Street
Houston, TX 77002

Dear Judge Hidalgo and Sheriff Gonzalez,

Pursuant to the provisions of V.T.C.A. Government Code, Section 511.011 and Title 37, Texas
Administrative Code (Chapter 297, Section 5, Texas Minimum Jail Standards), you are hereby notified that
the jail in your county fails to comply with minimum standards established under V.T.C.A. Local
Government Code, Chapter 351, and the rules of this Commission, and that appropriate corrective measures
must be initiated. A reasonable completion date for corrective measures should be set. Failure to initiate
appropriate corrective action may cause a remedial order to be issued and enforced, or other appropriate
action taken. ***In accordance with Chapter 297, Section 6, Texas Minimum Jail Standards, please notify
this agency in writing within thirty (30) days of receipt of this notice as to actions initiated.***

The attached page(s) indicate minimum standards violated, corrective measures required, and date by which
corrective measures must be initiated. Please reference the Special Inspection Requirements Review and
Jail Special Inspection Report issued on September 7, 2022, detailing the specific issues that resulted in the
issuance of this notice of non-compliance.

Issued this 7th day of September 2022
Texas Commission on Jail Standards

By _____

    Brandon S. Wood, Executive Director

BW/cw

---

Judge Bill Stoudt, Longview, Chair                    Sheriff Kelly Rowe, Lubbock                    Commissioner Ben Perry, Waco
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair        Sheriff Raul "Pinky" Gonzales, Refugio        Duane Lock, Southlake
Ross Reyes, Melissa                                Patricia M. Anthony, Garland                  Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*
**Ex. 13 037**                                                                                      WAGNER 004474

# TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW

*Zachary Aguirre*

Zachary Aguirre, TCJS Complaint Inspector

Facility | Harris County Jail

Date:     September 7, 2022

| Chapter | Title | Comments |
|---|---|---|
| 259 | New Construction | **Deficiency:** During the investigation of complaint regarding inmate Helen Subeka it was determined that 64 inmates remained in holding cells in excess of 48 hours. **Technical assistance provided: Harris County administration will develop and submit a plan of action to correct and prevent holding for longer than 48 hours within 30 days of receipt of this notice to Byron Shelton and Cathi Williamson.** |
| 261 | Existing Construction | Not applicable. |
| 263 | Life Safety | Not applicable. |
| 265 | Admission | Technical Assistance: During the investigation of complaint regarding inmate Helen Subeka it was determined that an inmate had been kept in holding for longer than 48 hours. This includes the "open" areas of booking and the holding cells. This inmate was in holding from 8/13/2022 at 1828 hours until 8/17/2022 at 2131 hours. Totaling 99 hours before being housed. **Technical Assistance provided: Harris County will submit a plan demonstrating how inmates will be processed, classified and assigned to appropriate housing within 48 hours within 14 days of receipt of this notice to Byron Shelton and Cathi Williamson.** |
| 267 | Release | Not applicable. |
| 269 | Records/Procedures | Not applicable. |
| 271 | Classification | Not applicable. |
| 273 | Health Services | Not applicable. |
| 275 | Supervision | Not applicable. |
| 277 | Personal Hygiene | Technical Assistance: During the investigation of complaint regarding inmate Helen Subeka and other inmates being kept in holding for longer than 48 hours, staff provided information that personal hygiene was either provided at dress in or upon request, but a log specifically addressing provision of personal hygiene needs to be included. **Technical assistance provided: Harris County administration will develop a corrective plan of action that ensures inmates held over 48 hours are provided the opportunity to purchase personal hygiene supplies or provided personal hygiene supplies if unable to supply due to indigent.** |
| 279 | Sanitation | Not applicable. |
| 281 | Food Service | Not applicable. |
| 283.1 | Discipline | Not applicable. |
| 283.3 | Grievance | Not applicable. |
| 285 | Exercise | Not applicable. |
| 287 | Education/Library | Not applicable. |
| 289 | Work Assignments | Not applicable. |
| 291.1 | Telephone | Not applicable. |
| 291.2 | Correspondence | Not applicable. |
| 291.3 | Commissary | Not applicable. |
| 291.4 | Visitation | Not applicable. |

RECEIVED

SEP 0 7 2022

Texas Commission On
Jail Standards

**TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW**

| 291.5 | Religious Practices | Not applicable. | |
|---|---|---|---|
| xxx | Variances | Not applicable. | |
| xxx | Remedial Orders | Not applicable. | |
| xxx | Complaints | Not applicable. | |
| xxx | CCQ | Not applicable. | |

RECEIVED

SEP 0 7 2022

Texas Commission On
Jail Standards

# ATTACHMENT 2

Notice of Non-Compliance to
Harris County Jail issued on
September 7, 2022

Ex. 13 040

# TEXAS COMMISSION ON JAIL STANDARDS



EXECUTIVE DIRECTOR
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

## NOTICE OF NON-COMPLIANCE
## HARRIS COUNTY JAIL

### September 7, 2022

Please reference the Inspection Requirements Review and Jail Inspection Report issued on September 7, 2022, detailing the specific issues that resulted in the issuance of this notice of non-compliance.

| Minimum Standards Violated: | Corrective Measure Required | Date Corrective Action Must Be Completed |
|---|---|---|
| 259.138 | (a)One or more holding cells shall be provided to hold inmates pending intake, processing, release, or other reason for temporary holding. Inmates shall not be held for more than 48 hours and the cell shall include the following features. **During the investigation of a complaint regarding inmate Helen Subeka, it was determined that 64 inmates remained in holding cells in excess of 48 hours: Priscilla Garcia, Manuel Gutierrez, Rodney Bowers, Alfonzo Gonzalez, James Chaplin, Zamari Wright, Oscar Comeaux, Tayshawn Allen, Gabrielle Dean, Pascual Gomez-Gonzales, Venustiano Pena, Jasmine Saco, Martin Rangel, Jarvis Jackson, Christina Villanueva, Martin Rollins, Keangelia McDowell, Arpan Goraya, Crystal Commander, Lizette Lopez, Bridgett Clark, Leomaritza Medrano, Shunnard Broussard, Carlos Calamaco, Brittany Lynch, Destinyque Kennedy, Nubiyah Freeman, April Kuehne, Gary Freeman, Preston Allen, Shaquana Lampley, Johnny Buckley, Kimoshita Edwards, Christopher Akeju, Hakeem Adouro, Shimica Hammond, Gerardo Rodriguez, Edward Bracey, Timotyh White, Timothy Landers, Randy Sheheane, Rodney Bowers, Chester Collins, Marelin Rubio, Julios Castro, Denzel Perkins, Tatyana Henderson, Richard Turner, Laquana Moore, Wilbur Briscoe, Tra Miller, Brandon Mayweather, Karisma Harrison, April** | Upon receipt of this notice. |

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair
Ross Reyes, Melissa
Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland
Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview"
To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative ideas

Ex. 13-041    WAGNER 004478

**Garcia, Shameka Young, Raymond Lincoln, Dontray Pittman, Jenifer Antonescu, Sharon Rrubins, Samatha Wilborn, Jennifer Roy, Douglas Nichols, Robert Gibson, and Frank Smith.**

# ATTACHMENT 3

# Inspection Requirements Review and Jail Inspection Report issued on December 19, 2022

# TEXAS COMMISSION ON JAIL STANDARDS 



**EXECUTIVE DIRECTOR**
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
Agency Website: http://www.tcjs.state.tx.us
E-mail Address: info@tcjs.state.tx.us

December 19, 2022

The Honorable Lina Hidalgo
Harris County Judge
1001 Preston, Ste. 911
Houston, TX 77002-1817

and

Sheriff Ed Gonzalez
Harris County Sheriff
1200 Baker Street
Houston, TX 77002

Dear Judge Hidalgo and Sheriff Gonzalez,

Pursuant to the provisions of V.T.C.A. Government Code, Section 511.011 and Title 37, Texas Administrative Code (Chapter 297, Section 5, Texas Minimum Jail Standards), you are hereby notified that the jail in your county fails to comply with minimum standards established under V.T.C.A. Local Government Code, Chapter 351, and the rules of this Commission, and that appropriate corrective measures must be initiated. A reasonable completion date for corrective measures should be set. Failure to initiate appropriate corrective action may cause a remedial order to be issued and enforced, or other appropriate action taken. _**In accordance with Chapter 297, Section 6, Texas Minimum Jail Standards, please notify this agency in writing within thirty (30) days of receipt of this notice as to actions initiated.**_

The attached page(s) indicate minimum standards violated, corrective measures required, and date by which corrective measures must be initiated. Please reference the Inspection Requirements Review and Jail Inspection Report issued on December 19, 2022 detailing the specific issues that resulted in the issuance of this notice of non-compliance.

Issued this 19th day of January 2021
Texas Commission on Jail Standards

By _____
      Brandon S. Wood, Executive Director

BW/sr

Judge Bill Stoudt, Longview, Chair                          Sheriff Kelly Rowe, Lubbock                          Commissioner Ben Perry, Waco
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair          Sheriff Raul "Pinky" Gonzales, Refugio                    Duane Lock, Southlake
Ross Reyes, Melissa                                              Patricia M. Anthony, Garland                          Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas



# Texas Commission on Jail Standards

Harris County Jail

Houston, Texas

_____
December 19, 2022
Date(s) of Inspection

SUBJECT:     SPECIAL INSPECTION REPORT

State Law requires periodic inspections of county jail facilities (VTCA, Local Government Code, Chapter 351, VTCA, Government Code, Chapter 511; Chapter 297.8, Texas Commission on Jail Standards).

☑   The facility was inspected on the date(s) indicated above, and it was determined that deficiencies exist. You are urged: (1) to give these areas of noncompliance your serious and immediate consideration; and (2) to promptly initiate and complete appropriate corrective measures. The Commission is available to discuss or assist you with the appropriate corrective measures required.

Failure to initiate and complete corrective measures following receipt of the Notice of Noncompliance may result in the issuance of a Remedial Order (Chapter 297.8, et seq.).

☐   This facility was inspected on the date(s) indicated above. There were no deficiencies noted and upon review of this report by the Executive Director of the Texas Commission on Jail Standards, a certificate of Compliance may be issued per the requirements of VTCA, Chapter 511 and Texas Minimum Jail Standards.

Authenticated:                                          Inter-Office Use Only

_Wendy Wisneski, TCJS Inspector_

| | |
|---|---|
| Received by: | 12/19/2022<br>Date |
| Reviewed by: | 12/19/2022<br>Date |

RECEIVED

Texas Commission On
Jail Standards

cc:     Judge
        Sheriff

**Individuals and/or entities regulated by the Texas Commission on Jail Standards shall direct all complaints regarding the commission procedures and functions to the Executive Director at: P.O. Box 12985 Austin, Texas 78711 (512) 463-5505 Fax (512) 463-3185 or at our agency website at www.tcjs.state.tx.us .**

**TEXAS COMMISSION O    JAIL STANDARDS - INSPECTIO    EQUIREMENTS REVIEW**

*uu snek*

Wendy Wisneski, TCJS Inspector

Facility N: Harris County Jail                    Date:        December 19, 2022

| Chapter | Title | Comments |
|---|---|---|
| 259 | New Construction | Not applicable. |
| 261 | Existing Construction | Not applicable. |
| 263 | Life Safety | Not applicable. |
| 265 | Admission | Not applicable. |
| 267 | Release | Not applicable. |
| 269 | Records/Procedures | Not applicable. |
| 271 | Classification | Not applicable. |
| 273 | Health Services | **Deficiencies exist. Technical Assistance provided.** During the review of a custodial death, it was determined that while medication was ordered by a physician and provided during intake, after the inmate went to housing, medication was not ordered by a physician or provided to the inmate. **Follow up required:** Jail administration along with medical personnel shall provide a plan of action within 30 days of receipt of the notice of non-compliance detailing how incidents such as this will be prevented in the future. **Additionally, it is recommended an audit is conducted to ensure all inmates are receiving the medication they require.** |
| 275 | Supervision | Not applicable. |
| 277 | Personal Hygiene | Not applicable. |
| 279 | Sanitation | Not applicable. |
| 281 | Food Service | Not applicable. |
| 283.1 | Discipline | Not applicable. |
| 283.3 | Grievance | Not applicable. |
| 285 | Exercise | Not applicable. |
| 287 | Education/Library | Not applicable. |
| 289 | Work Assignments | Not applicable. |
| 291.1 | Telephone | Not applicable.. |
| 291.2 | Correspondence | Not applicable.. |
| 291.3 | Commissary | Not applicable.. |
| 291.4 | Visitation | Nor applicable. |
| 291.5 | Religious Practices | Not applicable. |
| xxx | Variances | Not applicable. |
| xxx | Remedial Orders | Not applicable. |
| xxx | Complaints | Not applicable. |
| | | |

RECEIVED

Texas Commission On
Jail Standards

TE___ ; COMMISSION ( N JAIL STAND___ DS
**JAIL INSPECTION REPORT**

**Facility Name:**    Harris Co. Jail                                    **Date:**    December 19, 2022

| Item | Section | Paragraph | Comments |
|---|---|---|---|
| 1 | 273 | .2 (12) | Provide procedures that shall require that a qualified medical professional shall review as soon as possible any prescription medication an inmate is taking when the inmate is taken into custody.  These procedures shall include providing each prescription medication that a qualified medical professional or mental health professional determines is necessary for the care, treatment, or stabilization of an inmate with mental illness. |
| | | | **Documentation reviewed after a custodial death revealed that while insulin was reviewed, ordered and provided while the inmate was in intake, it was not reviewed, ordered and provided once the inmate was housed.** |
| 2 | 273 | .3 | All medical instructions of desi_nated physicians shall be followed. |
| | | | **Documentation reviewed after a custodial death revealed that daily orders were written for the inmate to receive KOP (Keep On Person) blood pressure medication, however, this order was not filled nor was  this medication provided once his inmate was housed.** |

*Wendy Wisneski, TCJS Inspector*

RECEIVED

DEC ___ ___ 2022

Texas Commission On
Jail Standards

# ATTACHMENT 4

Notice of Non-Compliance to
Harris County Jail issued on
December 19, 2022

WAGNER 004485

# TEXAS COMMISSION ON JAIL STANDARDS



EXECUTIVE DIRECTOR
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

## NOTICE OF NON-COMPLIANCE

### HARRIS JAIL

#### December 19, 2022

**Please reference the Inspection Requirements Review and Jail Inspection Report issued on December 19, 2022, detailing the specific issues that resulted in the issuance of this notice of non-compliance.**

| Minimum Standards Violated: | Corrective Measure Required | Date Corrective Action Must Be Completed |
|---|---|---|
| 273.2 (12) | Provide procedures that shall require that a qualified medical professional shall review as soon as possible any prescription medication an inmate is taking when the inmate is taken into custody. These procedures shall include providing each prescription medication that a qualified medical professional or mental health professional determines is necessary for the care, treatment, or stabilization of an inmate with mental illness. **Documentation reviewed after a custodial death revealed that while insulin was reviewed, ordered and provided while the inmate was in intake, it was not reviewed, ordered and provided once the inmate was housed.** | Upon receipt of this notice. |
| 273.3 | All medical instructions of designated physicians shall be followed. **Documentation reviewed after a custodial death revealed that daily orders were written for the inmate to receive KOP (Keep On Person) blood pressure medication, however, this order was not filled nor was this medication provided once this inmate was housed.** | Upon receipt of this notice. |

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair
Ross Reyes, Melissa

Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland

Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while exercising reasonable flexibility and ideas*

# ATTACHMENT 5

Inspection Requirements Review
and Jail Inspection Report Issued on
February 13-17, 2023

# TEXAS COMMISSION ON JAIL STANDARDS



EXECUTIVE DIRECTOR
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
Agency Website: http://www.tcjs.state.tx.us
E-mail Address: info@tcjs.state.tx.us

March 8, 2023

The Honorable Lina Hidalgo
Harris County Judge
1001 Preston, Ste. 911
Houston, TX 77002-1817

and

Sheriff Ed Gonzalez
Harris County Sheriff
1200 Baker Street
Houston, TX 77002

Dear Judge Hidalgo and Sheriff Gonzalez,

Pursuant to the provisions of V.T.C.A. Government Code, Section 511.011 and Title 37, Texas Administrative Code (Chapter 297, Section 5, Texas Minimum Jail Standards), you are hereby notified that the jail in your county fails to comply with minimum standards established under V.T.C.A. Local Government Code, Chapter 351, and the rules of this Commission, and that appropriate corrective measures must be initiated. A reasonable completion date for corrective measures should be set. Failure to initiate appropriate corrective action may cause a remedial order to be issued and enforced, or other appropriate action taken. ***In accordance with Chapter 297, Section 6, Texas Minimum Jail Standards, please notify this agency in writing within thirty (30) days of receipt of this notice as to actions initiated.***

The attached page(s) indicate minimum standards violated, corrective measures required, and date by which corrective measures must be initiated. Please reference the Inspection Requirements Review and Jail Inspection Report issued on February 13-17, 2023, detailing the specific issues that resulted in the issuance of this notice of non-compliance.

Issued this 8th day of March 2023
Texas Commission on Jail Standards

By _____
        Brandon S. Wood, Executive Director

BW/sr

Judge Bill Stoudt, Longview, Chair                          Sheriff Kelly Rowe, Lubbock                          Commissioner Ben Perry, Waco
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair          Sheriff Raul "Pinky" Gonzales, Refugio                  Duane Lock, Southlake
Ross Reyes, Melissa                                            Patricia M. Anthony, Garland                          Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview"
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

Ex. 13 051                                                        WAGNER 004488



# Texas Commission on Jail Standards

Harris County Jail

Houston, Texas

February 13-17, 2023

Date(s) of Inspection

SUBJECT:     SPECIAL INSPECTION REPORT

State Law requires periodic inspections of county jail facilities (VTCA, Local Government Code, Chapter 351, VTCA, Government Code, Chapter 511; Chapter 297.8, Texas Commission on Jail Standards).

☑ The facility was inspected on the date(s) indicated above, and it was determined that deficiencies exist. You are urged: (1) to give these areas of noncompliance your serious and immediate consideration; and (2) to promptly initiate and complete appropriate corrective measures. The Commission is available to discuss or assist you with the appropriate corrective measures required.

Failure to initiate and complete corrective measures following receipt of the Notice of Noncompliance may result in the issuance of a Remedial Order (Chapter 297.8, et seq.).

☐ This facility was inspected on the date(s) indicated above. There were no deficiencies noted and upon review of this report by the Executive Director of the Texas Commission on Jail Standards, a certificate of Compliance may be issued per the requirements of VTCA, Chapter 511 and Texas Minimum Jail Standards.

Authenticated:

Byron Shelton, TCJS Inspector

Martin Arnold, TCJS Inspector

Michael Gravitt, TCJS Inspector

Stephanie Reneau, TCJS Compliance

Jason Jouett, TCJS Inspector

Ricky Armstrong, TCJS Asst. Director

cc:     Judge
        Sheriff

Inter-Office Use Only

Received by:                          3/8/2023
                                      Date

Reviewed by:                          3/8/2023
                                      Date

RECEIVED

MAR 0 8 2023

Texas Commission On
Jail Standards

Individuals and/or entities regulated by the Texas Commission on Jail Standards shall direct all complaints regarding the commission procedures and functions to the Executive Director at: P.O. Box 12985 Austin, Texas 78711 (512) 463-5505 Fax (512) 463-3185 or at our agency website at www.tcjs.state.tx.us

Ex. 13 052                                    WAGNER 004489

## ...AS COMMISSION ON JAIL STANDAR...
### ANNUAL JAIL REPORT

| | |
|---|---|
| County: | **Harris** |

| | | | |
|---|---|---|---|
| Sheriff: | **Ed Gonzalez** | Judge: | **Lina Hidalgo** |
| email | ed.gonzalez@sheriff.hctx.net | email | lina.hidalgo@cjo.hctx.net |
| Jail Administrator: | **Phillip Bosquez** | Inspector: | **Byron Shelton** |
| email | phillip.bosquez@sheriff.hctx.net | | Jason Jouett, Michael Gravitt, Stephanie Reneau, Ricky Armstrong, Marty Arnold |

Last Inspection **January 10-14, 2022**   Compliant **No**   Inspection Date(s) **February 13-17, 2023**

Remedial Order **N/A**   Effect:

**Reportable Incidents** (Previous 12 month History)
Fires **35**   Escapes **1**
Deaths **26**   Walkaway **1**
Suicides **3**   Secured **0**

Contract Inmates Housed
AT Lasalle (Louisana) **533**
AT Dalby **400**

Date Plans Approved **July 1, 2017**

**1. Facility Name**   **Harris County Jail**
Address 1200 Baker St. Houston, Tx   Zip Code 77002
Phone # (713) 755-8411   Fax # (713) 755-7541
Built 2002   Renovated N/A   Addition N/A
Type Max   Number of Variances 1

Drill Time **2m 21s**
Facility Capacity 4,253
Average Daily Population 4207.00
Housing Total this Date 4,073
Holding Total this Date 25

**2. Facility Name**   **Harris County Jail**
Address 701 N. San Jacinto Houston, Tx   Zip Code 77002
Phone # (713) 755-6067   Fax # (713) 755-7541
Built 1991   Renovated N/A   Addition N/A
Type Max   Number of Variances 1

Drill Time **1m 38s**
Facility Capacity 4,235
Average Daily Population 4023.00
Housing Total this Date 3,870
Holding Total this Date 0

**3. Facility Name**   **Harris County Jail**   (Depopulated as of 10/4/2019)
Address 1307 Baker St. Houston, Tx   Zip Code 77002
Phone # (713) 755-2400   Fax # (713) 755-2298
Built 1998   Renovated N/A   Addition 2001
Type Min   Number of Variances 1

Drill Time **N/A**
Facility Capacity 1,072
Average Daily Population 0.00
Housing Total this Date 0
Holding Total this Date 0

| Housing Capacity | 10,566 | | | Holding Capacity | 1,324 | | Females | 1,023 |
|---|---|---|---|---|---|---|---|---|
| | Cells | Capacity | | | Cells | Capacity | (Female Population Today) | |
| Sep Cells | 106 | 106 | | Holding Cells | 131 | 1,278 | # of Cells | 36 |
| Single Cells | 999 | 999 | | Detoxification Cells | 6 | 28 | # of Bunks | 1,074 |
| M.O. Cells | 60 | 2,743 | | Violent Cells | 18 | 18 | | |
| Dorms | 212 | 6,718 | | | | | | |
| Neg Press Cells | 27 | 27 | | **Construction Security Level** | | | **Contract Inmates** | |
| Medical Cells | 8 | 94 | | Minimum Capacity | 1,216 | | 100 + Capacity (30% + Non - TX) | |
| | | | | Medium Capacity | 0 | | ☐ Yes   ☑ No | |

Notes: The 27 Negative Pressure cells are in the above separation cell count. The 94 Medical cells are in the above M.O. cell count. There are 100 variance beds in the count above that.

Maximum Capacity 9,350

**Population:** (During Inspection)  Housing **8,573**   Hold/Detox/Violent **333**   **Total System Population** **8,906**

Total Inspection Time **50.25** hours   (Five Inspectors)   **Total Average Daily Population** **9,850**

RECEIVED
MAR 0 8 2023
Texas Commission On Jail Standards

Sheriff
Jail Administrator

☑ Yes   ☐ No

Briefed by phone.
Commissioners Court Representative

Rev. 1/05/2011   **Ex. 13 053**   **WAGNER 004490**

Inspection Date(s): _____ **February 13-17, 2023** _____

**4.** *Facility Name*    Harris County Jail

| | |
|---|---|
| Address 711 N. San Jancito Houston, Tx | Zip Code __77002__ |
| Phone # __(713) 755-8420__    Fax # __(713) 755-4867__ | |
| Built __1991__    Renovated __N/A__    Addition __1998__ | |
| Type __Min__    Number of Variances __0__ | |

Drill Time __N/A__
Facility Capacity __144__
Average Daily Population __133__
Housing Total this Date __141__
Holding Total this Date __0__

**5.** *Facility Name*    Inmate Processing Center

Address 1201 Commerce Houston, Tx    Zip Code __77002__
Phone # __(713) 755-8050__    Fax # __(713) 755-4867__
Built __1991__    Renovated __2011__    Addition __N/A__
Type __Max__    Number of Variances __0__

Drill Time __Test Only__
Facility Capacity __400__
Average Daily Population __0__
Housing Total this Date __0__
Holding Total this Date __0__

**6.** *Facility Name*    Court Holding

Address 1201 Franklin, Houston, Tx    Zip Code __77002__
Phone # __(713) 755-6386__    Fax # __(713) 369-9368__
Built __2001__    Renovated __2002__    Addition __N/A__
Type __Remote Court Holding__    Number of Variances __0__

Drill Time __Test Only__
Facility Capacity __263__
Average Daily Population __varies__
Housing Total this Date __0__
Holding Total this Date __0__

**7.** *Facility Name*    Humble Lock-Up

Address 7900 Will Clayton Parkway Humble, Tx    Zip Code __77338__
Phone # __(281) 446-3252__    Fax # __(281) 446-7256__
Built __2003__    Renovated __N/A__    Addition __N/A__
Type __Lock-Up__    Number of Variances __0__

Drill Time __Test Only__
Facility Capacity __19__
Average Daily Population __0__
Housing Total this Date __0__
Holding Total this Date __0__

**8.** *Facility Name*    Clay Road Lock-up

Address 16715 Clay Rd. Houston, Tx    Zip Code __77084__
Phone # __(281) 463-4179__    Fax # __(281) 463-2846__
Built __1979__    Renovated __N/A__    Addition __N/A__
Type __Lock-Up__    Number of Variances __0__

Drill Time __Test Only__
Facility Capacity __6__
Average Daily Population __0__
Housing Total this Date __0__
Holding Total this Date __0__

**9.** *Facility Name*    Cypresswood Lock-up - Approved for Occupancy on 11/27/2018 by Inspector Sowell

Address 6831 Cypresswood Dr. Spring, Tx    Zip Code __77379__
Phone # __(281) 376-9047__    Fax # __(281) 379-6153__
Built __1977__    Renovated __N/A__    Addition __N/A__
Type __Lock-Up__    Number of Variances __0__

Drill Time __Test Only__
Facility Capacity __9__
Average Daily Population __0__
Housing Total this Date __0__
Holding Total this Date __0__

**10.** *Facility Name*    Wallisville Lock Up

Address 14350 Wallisville Rd. Houston, Tx    Zip Code __77049__
Phone # __(713) 455-8071__    Fax # __(713) 451-8802__
Built __1988__    Renovated __N/A__    Addition __N/A__
Type __Lock-Up__    Number of Variances __0__

Drill Time __Test Only__
Facility Capacity __12__
Average Daily Population __0__
Housing Total this Date __0__
Holding Total this Date __0__

**11.** *Facility Name*    Joint Processing Center

Address 700 N San Jacinto St, Houston, TX    Zip Code __77002__
Phone # __(346) 286-1428__    Fax # __(832) 927-0278__
Built __2018__    Renovated __N/A__    Addition __N/A__
Type __Max__    Number of Variances __0__

Drill Time __1:15__
Facility Capacity __552__
Average Daily Population __511__
Housing Total this Date __489__
Holding Total this Date __308__

RECEIVED MAR 08 2023 Texas Commission On Jail Standards

**TEXAS COMMISSION O.   JAIL STANDARDS - INSPECTION. .EQUIREMENTS REVIEW**

_[signature]_  
tephanie Reneau, TCJS Compliance Monito

_[signature]_  
Byron Shelton, TCJS Inspector

_[signature]_  
Michael Gravitt, TCJS Inspector

Facility Name: Harris County Jail

Date:     February 13-17, 2023

| Chapter | Title | Comments |
|---|---|---|
| 259 | New Construction | Reviewed a random sample of 60 inmate files. Interviewed staff. Reviewed policy. Conducted a walk-through inspection of the system. **Deficiency noted, see report - Technical assistance provided** – During the walkthrough of the 1200 Baker Street Facility on Monday, February 13, 2023, five inmates were in the medical holding cell waiting to be seen by mental health staff. The five inmates were interviewed, and their records reviewed. Three of the five inmates were hooked into the Harris County Jail on Saturday, February 11, 2023, between 1048 and 1735. Harris County records demonstrate that the inmates were transferred from the Joint Processing Center to medical holding for further evaluation by mental health staff between 1130-1151 on February 13th. The inmates were not seen by mental health staff until the morning of February 14, 2023. It was determined that these three inmates were not assigned and transferred to inmate housing until 63 hours to 70 hours after acceptance at the facility. During the review of inmate files, it was determined that an additional seven (7) inmates were not assigned and transferred to inmate housing from 48.5 hours to 66 hours after acceptance at the facility. **Note**: Technical Assistance was previously provided regarding this issue after a complaint investigation in September of 2022 and the intent and requirement to have all inmates processed and assigned to housing within 48 hours, reference Texas Register 25TexReg1259. **Follow-up required** - The Harris County Jail will submit a plan of action within 30 days detailing how inmates will be processed, classified, and housed within 48 hours to the lead inspector. Upon submission and approval of the corrective action plan, unannounced on-site reviews will be conducted to ensure the plan is being adhered to. |
| 261 | Existing | Not applicable. |
| 263 | Life Safety | Inspected life safety equipment and conducted and observed emergency drill. Reviewed documentation. Conducted staff interviews. |
| 265 | Admission | Not applicable. |
| 267 | Release | .Reviewed a random sample of inmate files. Interviewed staff. |
| 269 | Records/Procedures | Reviewed policy and documentation. Interviewed staff and reviewed ADA compliance evaluation. **\*\*\*Inspector's Note** - While reviewing the Harris County Jail operational plans it was determined that most of them had not been reviewed and updated since July 2017. Only the Commissary, Mental Disability/Suicide Prevention, Visitation, and the Inmate Handbook are current and again all other plans are due for review. The inspection team recommended that operational plans are reviewed and updated every 5 years and/ or when there is a change in administration. |
| 271 | Classification | Reviewed a random selection of 60 inmate files. Reviewed staff training records. Reviewed internal classification audits. Reviewed policy. Interviewed staff. |
| 273 | Health Services | Reviewed a random selection of 60 files. Interviews were conducted with staff and inmates. Reviewed training records. Reviewed the policy. **Deficiencie. noted. Technical assistance provided. 1.)** During the inspection team's review of medical requests submitted by inmates through the kiosk system, two inmates were not attended by medical staff within 48 hours, as required by the facility's operation plan. A prisoner submitted a medical request through the kiosk on 10-20-2022 for a large growth protruding from his gum line and was not seen by medical staff until 33 days later on 11-22-2022. Despite being referred to dental, the inmate was not seen by dental for 38 days. On 10-4-2022, a second inmate submitted a medical request for a bullet lodged in his neck. The inmate's medical documentation indicates that he was a "no show" for his appointment on 10-7-22. There was no documentation to explain the no-show. The inmate submitted a second request to the medical staff on 10-28-22. However, he was not seen by the medical staff until 10 days later, on 11-7-22. **2.)** In December 2022 the Harris County Jail was placed in non-compliance for failing to follow a physician's orders and provide medication to an inmate as directed. During the Comprehensive Re-Inspection, this was determined to be a continuing issue by the inspection team. **Follow up is required** - HCSO jail staff and the medical provider (Harris Health) shall coordinate to provide a plan of action to the lead inspector within 30 days, to ensure these issues do not occur in the future. |

RECEIVED

MAR 0 8 2023

Texas Commission On
Jail Standards

TEXAS COMMISSION C. JAIL STANDARDS - INSPECTIO. .EQUIREMENTS REVIEW

| 273 | Health Services (Continued) | **Technical assistance provided** - During the review of suicide prevention training, it was determined that 6 staff members assigned duties that were required to receive supplemental training in accordance with the approved Mental Disabilities/Suicide Prevention Plan for Harris County (last approved 19 November 2019) and minimum standards had not received the supplemental training. |
|---|---|---|
| 275 | Supervision | Reviewed 729 jailer TCOLE certification records. Reviewed officer documentation. Interviewed staff. **Deficiency noted, see report - Technical assistance provided** – **1.)** Observation records reviewed during the Comprehensive Re-Inspection demonstrated that the required 60 minute observation of inmates was exceeded by staff on a routine basis, by 1 minute up to 1 hour 13 minutes. Additionally, observation records for areas where inmates who are known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined were exceeded by staff on a routine basis by 1 minute up to 2 hours 9 minutes. **Follow-up required -** The Harris County Jail will submit a plan of action on how they will be addressing this matter and it shall include training staff. The training roster documenting this training shall be sent to the lead inspector. Additionally, until further notice, weekly random observation checks shall be sent to the lead inspector. **2.)** Documentation sent to the lead inspector for supervision indicated that the Harris County staffing was sufficient. However, floor rosters reviewed during the walkthrough of the 3rd floor at 701 Baker verified staffing shortage on the day of inspection.  It was determined that there are only 13 officers currently working the floor when 14 are needed. This is for a total population of 659 inmates. The 4th floor staffing was also reviewed, and it was noted that 13 officers were present when 15 officers were required to supervise 684 inmates. **Follow-up required -** The Harris County Jail shall submit a plan of action to the lead inspector within 30 days detailing how they will be addressing this deficient area moving forward. Additionally, until further notice on a weekly basis the Harris County Jail will send the lead inspector random staffing rosters from its various facilities. **3.)** Through review of facility paperwork and staff observations, it was determined that staffing was not sufficient to perform required functions. Required functions including transporting of inmates, medication passes, face to face observations and feeding are not being performed within minimum jail standards due to inadequate staffing within the housing units. Staff were observed conducting face-to-face observations from the control stations due to insufficient availability of rovers. Reasons given for late face-to-face observation logs were listed as no available rovers, short rovers, insufficient staff, and rounds late due to no staff. Other comments noted on the observation logs for late rounds show that staff were tending to other duties, such as medication passes and feeding. Staff interviews confirmed that Harris County staff supervise feeding from the control room leaving facility trusties to pass out trays. In order to ensure proper face-to-face observations are occurring on a routine basis, the Harris County Jail will submit a plan of action within 30 days to the lead inspector. |
| 275 | Supervision (cont.) | **Technical assistance provided** - During the walk through of the facility the inspection team observed jailers documenting the required visual observation of inmates by scanning QR codes that were located within the housing control station. While the housing control station allows for viewing of the inmate housing area, the jailer never left the housing control station and inspection staff does not believe that the officer is able to visually observe every inmate, face-to-face, that is assigned to the housing area. Officers were also observed scanning QR codes located within inmate housing areas without conducting a face-to-face observation of the inmates assigned to that housing areas.  Facilities shall have an established procedure for documented face-to-face observation of all inmates by jailers no less than once every 60 minutes according to minimum jail standards. Follow-up required - Staff shall develop and submit to the lead inspector by March 31, 2023, a plan of action which shall include training for all jailers on how to properly conduct a face-to-face observation of each inmate.  A separate plan of action shall be submitted to the lead inspector within 30 days  for the removal of all QR codes from the housing control station. |
| 277 | Personal Hygiene | .Conducted a facility walk through. Reviewed facility schedule. |

RECEIVED

MAR 0 8 2023

Texas Commission On
Jail Standards

## TEXAS COMMISSION C   JAIL STANDARDS - INSPECTIO   REQUIREMENTS REVIEW

| 279 | Sanitation | Conducted a facility walk through. Interviewed staff and inmates. Reviewed policy. **Technical assistance provided** - While there were areas identified during the inspection that required attention, the inspection team noted that the overall condition of the jail system in regards to sanitation was markedly improved and the facilities as a whole were considered clean when compared to the last inspection. **Follow-up required -** The Harris County Jail will submit a plan of action within 30 days. Staff shall submit to the lead inspector the daily sanitation logs each Friday for the next 30-90 days. |
|---|---|---|
| 281 | Food Service | Conducted walk through inspection in kitchen area. Interviewed staff. Reviewed documentation. |
| 283.1 | Discipline | Reviewed 50 inmate disciplinary reports. Reviewed policy. Interviewed staff and inmates. . |
| 283.3 | Grievances. | Reviewed 60 inmate grievance/complaints. Reviewed policy. Interviewed staff and inmates. |
| 285 | Exercise | Walk through of exercise area conducted. Reviewed documentation. Interviewed staff and inmates. **Technical assistance provided -** During the walk through of the facility, the inspection team interviewed an inmate housed in 4J2, who claimed she had not been to the gym in 2 years. After further investigation, it was determined that inmates housed in administrative separation are not given their allotted hour for dayroom and a separate hour for recreation. Dayroom and video recreation occur at the same time. Through staff interviews it was determined that the facility is currently in the process of returning to the pre-pandemic recreation schedule. Follow-up required - Staff shall submit to the lead inspector recreation documentation for the next 30-90 days. Any issues noted during the review of documentation may result in an additional notice of non-compliance being issued. |
| 287 | Education/Library | Reviewed policy and schedule. Interviewed staff and inmates. |
| 289 | Work Assignments | Reviewed policy and schedule. Interviewed staff and inmates.. |
| 291.1 | Telephone | Reviewed policy and schedule. Interviewed staff and inmates.. |
| 291.2 | Correspondence | Reviewed policy and schedule. Interviewed staff and inmates... |
| 291.3 | Commissary | Reviewed policy and schedule. Interviewed staff and inmates.. |
| 291.4 | Visitation | Reviewed policy and schedule. Interviewed staff and inmates.. |
| 291.5 | Religious Practices | Reviewed policy and schedule. Interviewed staff and inmates.. |
| xxx | Variances | Reviewed facility variances. . |
| xxx | Remedial Orders | Not applicable. |
| xxx | Complaints | Interviewed staff and inmates. Reviewed documentation for 140 complaints. 132 of these complaints were able to be answered and closed. |

Jason Jouett, TCJS Inspector

Ricky Armstrong, TCJS, Asst. Director

Martin Arnold, TCJS inspector

RECEIVED

MAR 0 9 2023

Texas Commission On
Jail Standards

# ATTACHMENT 6

Notice of Non-Compliance to
Harris County Jail issued on
March 8, 2023

Ex. 13 058                    WAGNER 004495

# TEXAS COMMISSION ON JAIL STANDARDS

EXECUTIVE DIRECTOR
Brandon S. Wood



P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

## NOTICE OF NON-COMPLIANCE

## HARRIS COUNTY JAIL

### March 8, 2023

Please reference the Inspection Requirements Review and Jail Inspection Report issued on February 13-17, 2023, detailing the specific issues that resulted in the issuance of this notice of non-compliance.

| Minimum Standards Violated: | Corrective Measure Required | Date Corrective Action Must Be Completed |
| --- | --- | --- |
| 259 .138(a) | Holding Cells - One or more holding cells shall be provided to hold inmates pending intake, processing, release, or other reason for temporary holding. Inmates shall not be held for more than 48 hours. **Inmates were in holding anywhere from 63 hours to 70 hours. Additionally, during the review of inmate files, seven (7) additional inmates were found to be in holding from 48.5 hours to 66 hours prior to housing** | **Upon receipt of this notice.** |
| 273.2 | Health Services Plan - Each facility shall have and implement a written plan, approved by the Commission, for inmate medical, mental, and dental services. The plan shall provide procedures for regularly scheduled sick calls. **Inmates were not seen by medical within 48 hours, as required by facility operation plan.** | **Upon receipt of this notice.** |
| 273.3 | Health Instructions: All medical instructions of designated physicians shall be followed. **In December 2022 the Harris County Jail was placed in non-compliance for failing to follow a physician's orders and provide medication to an inmate as directed. During the Comprehensive Re-Inspection, this was determined to be continuing issue by the inspection team.** | **Upon receipt of this notice.** |

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair
Ross Reyes, Melissa

Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland

Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview"
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

| | | |
|---|---|---|
| 275.1 | Regular Observation by Corrections Officers - Every facility shall have the appropriate number of jailers at the facility 24 hours each day. Facilities shall have an established procedure for documented face-to-face observation of all inmates by jailers no less than once every 60 minutes. Observation shall be performed at least every 30 minutes in areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined. | **Upon receipt of this notice.** |

**60 minute observations of inmates were routinely exceeded by staff on a routine basis by 1 minute to 1 hour 13 minutes. Additionally, observation records for areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined were routinely exceeded by staff on a routine basis by 1 minute to 2 hours 9 minutes.**

| | | |
|---|---|---|
| 275.4 | Staff - Inmates shall be supervised by an adequate number of jailers to comply with state law and this chapter. One jailer shall be provided on each floor of the facility where 10 or more inmates are housed, with no less than 1 jailer per 48 inmates or increment thereof on each floor for direct inmate supervision. This jailer shall provide documented visual inmate supervision not less than once every 60 minutes. Sufficient staff to include supervisors, jailers and other essential personnel as accepted by the Commission shall be provided to perform required functions. | **Upon receipt of this notice.** |

**Documentation sent to the lead inspector for supervision indicated that the Harris County staffing was sufficient. However, floor rosters reviewed during the walkthrough of the 3rd floor at 701 Baker verified staffing shortage on the day of inspection.     It was determined that there are only 13 officers currently working the floor when 14 are needed. This is for a total population of 659 inmates. The 4th floor staffing was also reviewed, and it was noted that 13 officers were present when 15 officers were required to supervise 684 inmates.**

# ATTACHMENT 7

Inspection Requirements Review
and Jail Inspection Report
issued on April 17, 2023

Ex. 13 061                    WAGNER 004498

# TEXAS COMMISSION ON JAIL STANDARDS    *File*



**EXECUTIVE DIRECTOR**
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
Agency Website: http://www.tcjs.state.tx.us
E-mail Address: info@tcjs.state.tx.us

April 17, 2023

The Honorable Lina Hidalgo
Harris County Judge
1001 Preston, Ste. 911
Houston, TX 77002-1817

and

Sheriff Ed Gonzalez
Harris County Sheriff
1200 Baker Street
Houston, TX 77002

Dear Judge Hidalgo and Sheriff Gonzalez,

Pursuant to the provisions of V.T.C.A. Government Code, Section 511.011 and Title 37, Texas Administrative Code (Chapter 297, Section 5, Texas Minimum Jail Standards), you are hereby notified that the jail in your county fails to comply with minimum standards established under V.T.C.A. Local Government Code, Chapter 351, and the rules of this Commission, and that appropriate corrective measures must be initiated. A reasonable completion date for corrective measures should be set. Failure to initiate appropriate corrective action may cause a remedial order to be issued and enforced, or other appropriate action taken. ***In accordance with Chapter 297, Section 6, Texas Minimum Jail Standards, please notify this agency in writing within thirty (30) days of receipt of this notice as to actions initiated.***

The attached page(s) indicate minimum standards violated, corrective measures required, and date by which corrective measures must be initiated. Please reference the Inspection Requirements Review and Jail Inspection Report issued on April 17, 2023 detailing the specific issues that resulted in the issuance of this notice of non-compliance.

Issued this 17th day of April 2023
Texas Commission on Jail Standards

By _____
    Brandon S. Wood, Executive Director

BW/SR

---

| | | |
|---|---|---|
| Judge Bill Stoudt, Longview, Chair | Sheriff Kelly Rowe, Lubbock | Commissioner Ben Perry, Waco |
| Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair | Sheriff Raul "Pinky" Gonzales, Refugio | Duane Lock, Southlake |
| Ross Reyes, Melissa | Patricia M. Anthony, Garland | Monica McBride, Alpine |

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

**Ex. 13 062**    WAGNER 004499



# Texas Commission on Jail Standards

Harris County Jail

Houston, Texas

April 17, 2023
_____
Date(s) of Inspection

SUBJECT:     SPECIAL INSPECTION REPORT

State Law requires periodic inspections of county jail facilities (VTCA, Local Government Code, Chapter 351, VTCA, Government Code, Chapter 511; Chapter 297.8, Texas Commission on Jail Standards).

☒ The facility was inspected on the date(s) indicated above, and it was determined that deficiencies exist. You are urged: (1) to give these areas of noncompliance your serious and immediate consideration; and (2) to promptly initiate and complete appropriate corrective measures. The Commission is available to discuss or assist you with the appropriate corrective measures required.

Failure to initiate and complete corrective measures following receipt of the Notice of Noncompliance may result in the issuance of a Remedial Order (Chapter 297.8, et seq.).

☐ This facility was inspected on the date(s) indicated above. There were no deficiencies noted and upon review of this report by the Executive Director of the Texas Commission on Jail Standards, a certificate of Compliance may be issued per the requirements of VTCA, Chapter 511 and Texas Minimum Jail Standards.

Authenticated:                                        Inter-Office Use Only

_Wendy Wisneski, TCJS Inspector_

| | |
|---|---|
| _Stephanie Reneau_ | 4/17/2023 |
| Received by: | Date |
| _Ricky Armstrong_ | 4/17/2023 |
| Reviewed by: | Date |

**RECEIVED**
By Stephanie Reneau at 1:29 pm, Apr 17, 2023

cc:     Judge
        Sheriff

Individuals and/or entities regulated by the Texas Commission on Jail Standards shall direct all complaints regarding the commission procedures and functions to the Executive Director at: P.O. Box 12985 Austin, Texas 78711 (512) 463-5505 Fax (512) 463-3185 or at our agency website at www.tcjs.state.tx.us

Ex. 13 063                                        WAGNER 004500

# TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW

*Wendy Wisneski, TCJS Inspector*

**Facility Name: Harris County Jail**

**Date:**        **April 17, 2023**

| Chapter | Title | Comments |
|---------|-------|----------|
| 259 | New Construction | Not applicable. |
| 261 | Existing Construction | Not applicable. |
| 263 | Life Safety | Not applicable. |
| 265 | Admission | Not applicable. |
| 267 | Release | Not applicable. |
| 269 | Records/Procedures | Not applicable. |
| 271 | Classification | Not applicable. |
| 273 | Health Services | Not applicable. |
| 275 | Supervision | **Deficiency noted. Technical assistance provided.** - A review of video submitted after a custodial death revealed that the inmate was able to enter a restroom area and remain unobserved for at least 88 minutes before being discovered. **Follow-up required.** - Jail administration shall submit a corrective action plan to this inspector as well as to Inspector Shelton, within 30 days, which shall establish the procedure for documenting face-to-face observations of all inmates while in JPC during the receiving/intake process or release process will occur. Once this procedure is developed, all Harris County jail personnel assigned to JPC will receive training. |
| 277 | Personal Hygiene | Not applicable. |
| 279 | Sanitation | Not applicable. |
| 281 | Food Service | Not applicable. |
| 283.1 | Discipline | Not applicable. |
| 283.3 | Grievance | Not applicable. |
| 285 | Exercise | Not applicable. |
| 287 | Education/Library | Not applicable. |
| 289 | Work Assignments | Not applicable. |
| 291.1 | Telephone | Not applicable.. |
| 291.2 | Correspondence | Not applicable.. |
| 291.3 | Commissary | Not applicable.. |
| 291.4 | Visitation | Nor applicable. |
| 291.5 | Religious Practices | Not applicable. |
| xxx | Variances | Not applicable. |
| xxx | Remedial Orders | Not applicable. |
| xxx | Complaints | Not applicable. |
|  |  |  |

**RECEIVED**
By Stephanie Reneau at 1:30 pm, Apr 17, 2023

## TEXAS COMMISSION ON JAIL STANDARDS
## JAIL INSPECTION REPORT

**Facility Name:**    Harris Co. Jail                                    **Date:**        April 17, 2023

| Item | Section | Paragraph | Comments |
|------|---------|-----------|----------|
| 1 | 275 | .1 | Every facility shall have the appropriate number of jailers at the facility 24 hours each day. Facilities shall have an established procedure for documented, face-to-face observation of all inmates by jailers no less than every 60 minutes. |

**A review of video submitted after a custodial death revealed an inmate was able to enter a restroom and remain unobserved for 88 minutes before being discovered.**

*wwsnek*

Wendy Wisneski, TCJS Inspector

**RECEIVED**
*By Stephanie Reneau at 1:30 pm, Apr 17, 2023*

# ATTACHMENT 8

Notice of Non-Compliance to
Harris County issued on
April 17, 2023

     WAGNER 004503

# TEXAS COMMISSION ON JAIL STANDARDS



EXECUTIVE DIRECTOR
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

## NOTICE OF NON-COMPLIANCE

## HARRIS COUNTY JAIL

### April 17, 2023

Please reference the Inspection Requirements Review and Jail Inspection Report issued on April 17, 2023, detailing the specific issues that resulted in the issuance of this notice of non-compliance.

| Minimum Standards Violated: | Corrective Measure Required | Date Corrective Action Must Be Completed |
|---|---|---|
| 275.1 | Every facility shall have the appropriate number of jailers at the facility 24 hours each day. Facilities shall have an established procedure for documented face-to-face observation of all inmates by jailers no less than every 60 minutes. | Upon receipt of this notice. |
| | **A review of video submitted after a custodial death revealed an inmate was able to enter a restroom and remain unobserved for 88 minutes before being discovered.** | |

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair
Ross Reyes, Melissa

Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland

Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas

# ATTACHMENT 9

# Remedial Order issued on May 11, 2023

WAGNER 004505

# TEXAS COMMISSION ON JAIL STANDARDS

EXECUTIVE DIRECTOR
Brandon S. Wood



P.O. Box 12985
Austin, Texas 78711
Voice:  (512) 463-5505
Fax:  (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

## REMEDIAL ORDER

**FROM:**    Texas Commission on Jail Standards

**TO:**    Lina Hidalgo County Judge
Harris County, Texas
Houston, Tx 77002

Sheriff Ed Gonzalez
Harris County
Houston, TX 77002

A special inspection of the Harris County Jail was conducted on September 7, 2022, in response to a complaint. After it was determined inmates had remained in holding cells longer than 48 hours, the facility was found to be non-compliant with minimum jail standards.

A special inspection was conducted on December 12, 2022, as a result of a death in custody. The investigation determined that the Harris County Jail was not following doctor's orders and not following their approved procedures contained within their Health Services Plan regarding the review and provision of prescription medications to inmates, and the facility was found to be non-compliant with minimum jail standards.

Harris County requested a reinspection in response to the notice of non-compliance dated September 7, 2022, on December 16, 2022.

Harris County requested a reinspection in response to the notice of non-compliance dated December 12, 2022, on January 20, 2023.

A comprehensive reinspection of Harris County Jail was conducted February 13th-17th, 2023. The inspectors determined that previously identified areas of non-compliance remained and additional areas of non-compliance were identified.  A Notice of Non-Compliance was issued to the Harris County Jail. Below are the details.

Inmates continue to be held in holding areas for more than 48 hours.
Inmates were not seen by medical staff within 48 hours, as required by the facility operation plan.
Continuing not to follow the Doctor's orders.
60-minute observations of inmates were routinely exceeded by staff on a routine basis

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Houston, Vice-Chair
Ross Reyes, Melissa

Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Goniales, Refugio
Patricia M. Anthony, Garland

Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview"
To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative and cost effective ideas

Ex. 13-069    WAGNER 004506

# TEXAS COMMISSION ON JAIL STANDARDS



EXECUTIVE DIRECTOR
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.t..u
info@tcjs.state.tx.us

Harris County failed to provide at least one jailer on each floor of the facility where 10 or more inmates are housed with no less than 1 jailer per 48 inmates or an increment thereof on each floor.

A special inspection was conducted on April 24, 2023, as a result of a death in custody. The investigation determined that the Harris County Jail had not observed the inmate no less than once every 60 minutes as required, and the Harris County Jail was found to be in non-compliance with minimum jail standards.

At its regularly scheduled meeting on May 11, 2023, the Texas Commission on Jail Standards received an update from Executive Director Wood. In addition, county officials provided comments. The commission, by appropriate motion and second, voted to grant the executive director the authority to issue a Remedial Order requiring Harris County to comply with minimum jail standards in regards to staffing, and for Harris County officials to provide the Commission with a staffing plan within 90 days for review and approval.

ISSUED this 11th day of May 2023

**TEXAS COMMISSION ON JAIL STANDARDS**

Brandon Wood, Executive Director

cc:    Governor Gregg Abbott
       Governor, State of Texas

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Houston, Vice-Chair
Ross Reyes, Jr-lissa

Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland

Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica IlcBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview"
To empower local governmen/ to provide safe. secure and suitable local jail facilities through proper rules and procedures while p...

Ex. 13.070          WAGNER 004507

# ATTACHMENT 10

Variance Letter issued on
November 2, 2023

WAGNER 004508

# TEXAS COMMISSION ON JAIL STANDARDS

**EXECUTIVE DIRECTOR**
Brandon S. Wood



P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

November 2, 2023

The Honorable Lina Hidalgo
1001 Preston, Ste. 911
Houston, Tx 77002

and

Sheriff Ed Gonzalez
1200 Baker Street
Houston, Tx 77002

Dear Judge Hidalgo and Sheriff Gonzalez,

On November 2, 2023, Harris County was an agenda item at the regularly scheduled meeting of the Texas Commission on Jail Standards. An update on the county's efforts to regain compliance with minimum jail standards was provided by Executive Director Wood and testimony was received from Sheriff Ed Gonzales and Commissioner Adrian Garcia.

Comments received from Harris County representatives confirmed that the county remains unable to meet the 1 to 48, officer to inmate ratio at all times which has been verified by commission staff. Further comments from Harris County representatives indicate that the number of vacancies has actually *increased* since the August 4, 2023 meeting of the Commission on Jail Standards. This issue has been listed as an area of non-compliance since February 13, 2023, and directly contributes to other deficiencies noted in the last comprehensive inspection. While the county has contracted with other facilities to house inmates, testimony provided indicates that additional contracts, which would allow the county to meet minimum staffing requirements are still under review.

Harris County had previously requested and was approved to install and utilize 580 variance beds at the 1200 Baker Street and 701 San Jacinto facilities. A condition of the variance was that all other minimum jail standards would be met. Due to the fact that the county has not been able to attain compliance with minimum jail standards, specifically staffing, Executive Director Wood requested and was granted the authority to begin reducing the number of variance beds Harris County is authorized to utilize. This reduction, in increments of 144 beds, will begin December 1, 2023, and will continue each month until minimum staffing is met and maintained at all times.

In order to accomplish this in the most efficient and effective manner, I am requesting a meeting prior to December 1 be scheduled. Please contact my office at your earliest convenience.

---

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview"
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative ideas*

EXHIBIT 13-072                                                                      PARTNER-00-45009

# TEXAS COMMISSION ON JAIL STANDARDS



**EXECUTIVE DIRECTOR**
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

In addition, we are requesting that you coordinate with commission staff for the submission of a post staffing plan for each facility and each floor of the facility that Harris County currently operates. This will allow commission staff to review assignment of staff in conjunction with the number of inmates per housing unit and floor to ensure compliance with minimum jail standards.

At the previous commission meeting, several questions were posed by commission members that were deferred to the county's Criminal Justice Coordinating Council (CJCC). At this time, we have not received a response and request that the liaison for that entity contact commission staff in order to provide the requested information.

Respectfully,

Brandon S. Wood
Executive Director

| Judge Bill Stoudt, Longview, Chair | Sheriff Kelly Rowe, Lubbock | Commissioner Ben Perry, Waco |
| Dr. Esmaeil Porsa, M.D., Houston, Vice-Chair | Sheriff Raul "Pinky" Gonzales, Refugio | Duane Lock, Southlake |
| Ross Reyes, Melissa | Patricia M. Anthony, Garland | Monica McBride, Alpine |

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

Ex. 13 073        WAGNER 004510

# ATTACHMENT 11

Inspection Requirements Review and
Jail Inspection Report issued on
February 12-16, 2024

# TEXAS COMMISSION ON JAIL STANDARDS





EXECUTIVE DIRECTOR
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
Agency Website: http://www.tcjs.state.tx.us
E-mail Address: info@tcjs.state.tx.us

February 20, 2024

The Honorable Lina Hidalgo
Harris County Judge
1001 Preston, Ste. 911
Houston, TX 77002-1817

and

Sheriff Ed Gonzalez
Harris County Sheriff
1200 Baker Street
Houston, TX 77002

Dear Judge Hidalgo and Sheriff Gonzalez,

Pursuant to the provisions of V.T.C.A. Government Code, Section 511.011 and Title 37, Texas Administrative Code (Chapter 297, Section 5, Texas Minimum Jail Standards), you are hereby notified that the jail in your county fails to comply with minimum standards established under V.T.C.A. Local Government Code, Chapter 351, and the rules of this Commission, and that appropriate corrective measures must be initiated. A reasonable completion date for corrective measures should be set. Failure to initiate appropriate corrective action may cause a remedial order to be issued and enforced, or other appropriate action taken. ***In accordance with Chapter 297, Section 6, Texas Minimum Jail Standards, please notify this agency in writing within thirty (30) days of receipt of this notice as to actions initiated.***

The attached page(s) indicate minimum standards violated, corrective measures required, and date by which corrective measures must be initiated. Please reference the Inspection Requirements Review and Jail Inspection Report issued on February 12-16, 2024 detailing the specific issues that resulted in the issuance of this notice of non-compliance.

Issued this 20th day of February 2024
Texas Commission on Jail Standards

By _____
Brandon S. Wood, Executive Director

BW/SR

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair
Ross Reyes, Melissa
Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland
Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview"
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

Ex. 13 075                    WAGNER 004512

## TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW



Michael Gravitt, TCJS Inspector
Michael Garrett, TCJS Inspector
Jason Jouett, TCJS Inspector

Facility **Harris County Jail**

Date: **February 12-16, 2024**

| Chapter | Title | Comments |
|---|---|---|
| 259 | New Construction | Interviewed staff. Reviewed policy. Conducted a walk-through inspection of the system. |
| 261 | Existing | Not applicable. |
| 263 | Life Safety | Inspected life safety equipment and conducted and observed emergency drill. Reviewed documentation. Conducted staff interviews. |
| 265 | Admission | Not applicable. |
| 267 | Release | Reviewed a random sample of inmate files. Interviewed staff. |
| 269 | Records/Procedure | Reviewed policy and documentation. Interviewed staff and reviewed ADA compliance evaluation. |
| 271 | Classification | Reviewed staff training records. Reviewed internal classification audits. Reviewed policy. Interviewed staff. The inspection team reviewed 40 files. |
| 273 | Health Services | Reviewed 40 inmate medical files. Reviewed operational plans. **(1.)** Deficiency noted, see report. Technical assistance provided – **During the investigation of an inmate complaint received while on site, it was learned that out of 173 inmates going to Court in the last 30 days, 32 inmates housed at 1307 Baker St Facility did not receive prescribed medications. Medical medication administration records reviewed, reveal that inmates who are taken to court are counted as no-shows during medication call in the mornings.** Follow-up action required **– Within the next 30 days, administration will develop a plan of action outlining procedures to be followed that ensures inmates are being provided medications before being taken to court. The administration will provide a weekly list of inmates' prescribed a.m. medications, a weekly court docket, and medication administration records for inmates taken to court at the 1307 Baker St Facility. All required documents will be provided to Lead Inspector Garrett for 30 to 45 days.** |
| 275 | Supervision | Reviewed officer documentation. Interviewed staff. The inspection team reviewed 74 supervisor licenses and 168 Jailers licenses, for a total of licenses reviewed being 242. Deficiencies Continues Technical Assistance Provided: **(1.) 60-minute observations of inmates were exceeded by staff in January approximately 1400 times by 2 minutes to 115 minutes. Additionally, observation records for areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined exceeded the 30-minute observation by 2 minutes to 195 minutes. The previous deficiency continues. (2.) After reviewing staffing rosters, inspectors determined that staffing did not meet the minimum requirement of 1 officer to every 48 inmates at 710 San Jacinto and 1200 Baker. The previous deficiency continues.** Follow up Required: **Harris County will continue to send Inspector staffing records for all inmate housing facilities weekly.** |
| 277 | Personal Hygiene | Conducted a facility walk through. Reviewed facility schedule. |
| 279 | Sanitation | Conducted a facility walk through. Interviewed staff and inmates. Reviewed policy. |
| 281 | Food Service | Conducted walk through inspection in kitchen area. Interviewed staff. Reviewed documentation. |
| 283 | Discipline | Reviewed 50 inmate disciplinary reports. Reviewed policy. They interviewed staff and inmates. |
| 283 | Discipline Cont | While reviewing disciplainry reports the inspection team reviewed a disiplinary appeal that was on file. Inspection team reviewed 40 files. |
| 283.3 | Grievances. | Reviewed 40 files. Interviewed staff and inmates. Reviewed policy. |
| 285 | Exercise | Walk through of exercise area conducted. Reviewed documentation. Interviewed staff and inmates. |
| 287 | Education/Library | Reviewed policy and schedule. Interviewed staff and inmates. |
| 289 | Work Assignments | Reviewed policy and schedule. Interviewed staff and inmates.. |
| 291.2 | Telephone | Reviewed policy and schedule. Interviewed staff and inmates.. |

## TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW

| | | |
|---|---|---|
| 291.3 | Correspondence | Reviewed policy and schedule. Interviewed staff and inmates... |
| 291.4 | Commissary | Reviewed policy and schedule. Interviewed staff and inmates.. |
| 291.5 | Visitation | Reviewed policy and schedule. Interviewed staff and inmates.. |
| xxx | Religious Practices | Reviewed policy and schedule. Interviewed staff and inmates.. |
| xxx | Variances | Reviewed facility variances. . |
| xxx | Remedial Orders | Not applicable. |
| | Complaints | Interviewed staff and inmates. Reviewed complaints regarding temperature of the facility, found the facilities to be in compliance with minimum standards. |

Ricky Armstrong, TCJS, Asst. Director

Martin Arnold, TCJS inspector

RECEIVED
By Gabriel Farley at 8:24 am, Feb 20, 2024

**Facility Name:** Harris Co. Jail                                    **Date:**    February 12-16, 2024

| Item | Section | Paragraph | Comments |
|------|---------|-----------|----------|
| 1 | 273.7 | (7) | Provide procedures for the distribution of prescriptions in accordance with written instructions from a physician by an appropriate person designated by the sheriff/operator; **Records reviewed failed to show that inmates housed at the 1307 Baker St Facility are provided medication in accordance with written instructions from a physician.** |
| 2 | 275 | (1) | Every facility shall have the appropriate number of jailers at the facility 24 hours each day. Facilities shall have an established procedure for documented, face-to-face observation of all inmates by jailers no less than once every 60 minutes. Observation shall be performed at least every 30 minutes in areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined. **60-minute observations of inmates were exceeded by staff on a routine basis by 1 minute to 1 hour 55 minutes.** |
| 3 | 275 | (4) | Inmates shall be supervised by an adequate number of jailers to comply with state law and this chapter. One jailer shall be provided on each floor of the facility where 10 or more inmates are housed, with no less than 1 jailer per 48 inmates or increment thereof on each floor for direct inmate supervision. **On more than one occasion, Harris County failed to meet the 1:48 as required by standards.** |

RECEIVED
By Gabriel Farley at 8:24 am, Feb 20, 2024

<u>Technical Assistance</u>

**Facility Name:** Harris Co. Jail                                        **Date:**     February 12-16, 2024

| Item | Section | Paragraph | Comments |
|------|---------|-----------|----------|
| 1 | 273.7 | (7) | Provide procedures for the distribution of prescriptions in accordance with written instructions from a physician by an appropriate person designated by the sheriff/operator. **Records reviewed failed to show that inmates housed at the 1307 Baker St Facility are provided medication in accordance with written instructions from a physician.** |
| 2 | 275 | (1) | Every facility shall have the appropriate number of jailers at the facility 24 hours each day. Facilities shall have an established procedure for documented, face-to-face observation of all inmates by jailers no less than once every 60 minutes. Observation shall be performed at least every 30 minutes in areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined. **60-minute observations of inmates were exceeded by staff on a routine basis by 1 minute to 1 hour 55 minutes.** |
| 3 | 275 | (4) | Inmates shall be supervised by an adequate number of jailers to comply with state law and this chapter. One jailer shall be provided on each floor of the facility where 10 or more inmates are housed, with no less than 1 jailer per 48 inmates or increment thereof on each floor for direct inmate supervision. **On more than one occasion, Harris County failed to meet the 1:48 as required by standards.** |

RECEIVED
By Gabriel Farley at 9:27 am, Feb 20, 2024

# ATTACHMENT 12

# Notice of Non-Compliance to Harris County Jail issued on February 20, 2024

WAGNER 004517

# TEXAS COMMISSION ON JAIL STANDARDS

**EXECUTIVE DIRECTOR**
Brandon S. Wood



P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

## NOTICE OF NON-COMPLIANCE
## HARRIS COUNTY JAIL

### February 20, 2024

**Please reference the Inspection Requirements Review and Jail Inspection Report issued on February 12-16, 2024, detailing the specific issues that resulted in the issuance of this notice of non-compliance.**

| Minimum Standards Violated: | Corrective Measure Required | Date Corrective Action Must Be Completed |
|---|---|---|
| 273.7(7) | Provide procedures for the distribution of prescriptions in accordance with written instructions from a physician by an appropriate person designated by the sheriff/operator; Records reviewed failed to show that inmates housed at the **1307 Baker St Facility are provided medication in accordance with written instructions from a physician.** | **Upon receipt of this notice.** |
| 275.(1) | Every facility shall have the appropriate number of jailers at the facility 24 hours each day. Facilities shall have an established procedure for documented face-to-face observation of all inmates by jailers no less than once every 60 minutes. Observation shall be performed at least every 30 minutes in areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined. **60-minute observations of inmates were exceeded by staff in January approximately 1400 times by 2 minutes to 115 minutes. Additionally, observation records for areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined exceeded the 30-minute observation by 2 minutes to 195 minutes. This deficiency is continued from the August 28, 2023, inspection.** | **Upon receipt of this notice.** |

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair
Ross Reyes, Melissa

Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland

Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview"
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

275.(4)

Inmates shall be supervised by an adequate number of jailers to comply with state law and this chapter. One jailer shall be provided on each floor of the facility where 10 or more inmates are housed, with no less than 1 jailer per 48 inmates or increment thereof on each floor for direct inmate supervision.

**On more than one occasion, Harris County failed to meet the 1:48 as required by standards. This deficiency is continued from the August 28, 2023, inspection.**

**Upon receipt of this notice.**

# ATTACHMENT 13

Inspection Requirements Review and
Jail Inspection Report issued
on April 8, 2024

# TEXAS COMMISSION ON JAIL STANDARDS



EXECUTIVE DIRECTOR
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
Agency Website: http://www.tcjs.state.tx.us
E-mail Address: info@tcjs.state.tx.us

April 16, 2024

The Honorable Lina Hidalgo
Harris County Judge
1001 Preston, Ste. 911
Houston, TX 77002-1817

and

Sheriff Ed Gonzalez
Harris County Sheriff
1200 Baker Street
Houston, TX 77002

Dear Judge Hidalgo and Sheriff Gonzalez,

Pursuant to the provisions of V.T.C.A. Government Code, Section 511.011 and Title 37, Texas Administrative Code (Chapter 297, Section 5, Texas Minimum Jail Standards), you are hereby notified that the jail in your county fails to comply with minimum standards established under V.T.C.A. Local Government Code, Chapter 351, and the rules of this Commission, and that appropriate corrective measures must be initiated. A reasonable completion date for corrective measures should be set. Failure to initiate appropriate corrective action may cause a remedial order to be issued and enforced, or other appropriate action taken. ***In accordance with Chapter 297, Section 6, Texas Minimum Jail Standards, please notify this agency in writing within thirty (30) days of receipt of this notice as to actions initiated.***

The attached page(s) indicate minimum standards violated, corrective measures required, and date by which corrective measures must be initiated. Please reference the Inspection Requirements Review and Jail Inspection Report issued on April 8, 2024, detailing the specific issues that resulted in the issuance of this notice of non-compliance.

Issued this 15th day of April 2024
Texas Commission on Jail Standards

By _____
    Brandon S. Wood, Executive Director

BW/cw

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair
Ross Reyes, Melissa
Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland
Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities within its purview"
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

Ex. 13 084                                                          WAGNER 004521



# Texas Commission on Jail Standards

Harris County Jail

Houston, Texas

_____
April 8, 2024
Date(s) of Inspection

SUBJECT:    SPECIAL INSPECTION REPORT

State Law requires periodic inspections of county jail facilities (VTCA, Local Government Code, Chapter 351, VTCA, Government Code, Chapter 511; Chapter 297.8, Texas Commission on Jail Standards).

☑    The facility was inspected on the date(s) indicated above, and it was determined that deficiencies exist.  You are urged:  (1) to give these areas of noncompliance your serious and immediate consideration; and (2) to promptly initiate and complete appropriate corrective measures.  The Commission is available to discuss or assist you with the appropriate corrective measures required.

   Failure to initiate and complete corrective measures following receipt of the Notice of Noncompliance may result in the issuance of a Remedial Order (Chapter 297.8, et seq.).

☐    This facility was inspected on the date(s) indicated above. There were no deficiencies noted and upon review of this report by the Executive Director of the Texas Commission on Jail Standards, a certificate of Compliance may be issued per the requirements of VTCA, Chapter 511 and Texas Minimum Jail Standards.

Authenticated:                                   Inter-Office Use Only

Michael Gravitt, TCJS Inspector

**RECEIVED**
By Cathi Williamson at 6:06 am, Apr 15, 2024

_____
Received by:          4/8/2024
                      Date

_____
Reviewed by:          4/8/2024
                      Date

cc:    **Judge**
       **Sheriff**

**Individuals and/or entities regulated by the Texas Commission on Jail Standards shall direct all complaints regarding the commission procedures and functions to the Executive Director at: P.O. Box 12985 Austin, Texas 78711 (512) 463-5505 Fax (512) 463-3185  or at our agency website at www.tcjs.state.tx.us .**

**TEXAS COMMISSION ON JAIL STANDARDS - INSPECTION REQUIREMENTS REVIEW**

Michael Gravitt, TCJS Inspector

Facility Name: Harris County Jail                                    Date:        April 8, 2024

| Chapter | Title | Comments |
|---|---|---|
| 259 | New Construction | Not applicable. |
| 261 | Existing Construction | Not applicable. |
| 263 | Life Safety | Not applicable. |
| 265 | Admission | Not applicable. |
| 267 | Release | Not applicable. |
| 269 | Records/Procedures | Not applicable. |
| 271 | Classification | Not applicable. |
| 273 | Health Services | Not applicable. |
| 275 | Supervision | Not applicable. |
| 277 | Personal Hygiene | Not applicable. |
| 279 | Sanitation | Not applicable. |
| 281 | Food Service | Not applicable. |
| 283.1 | Discipline | Deficiency noted, see report. Technical assistance provided -Video reviewed during the investigation of a complaint shows that Harris Co staff entered housing unit 4D1-1 on January 26, 2024, at approximately 0006 hrs. and took mattresses away from the inmates in the housing unit and removed them from the housing unit. Video shows that the mattresses were not returned to the inmates until approximately 0530 hrs. Video shows that during the time the mattresses were removed, there was no attempt made by staff to conduct any other activity or contraband search. Inmates interviewed stated that this practice is common occurance and they are often left to sleep on the metal bunks without a mattress. Facility trustys interviewed acknowledged that they are asked to assist in the removal of the mattresses from housing units. Addtional video was requested and reviewed for housing unit 4D1-1. Video shows that on January 29, 2024 at approximately 2258 hrs. staff entered the housing unit and took mattresses away from the inmates and removed them from the housing unit. The mattresses were not returned until approximately 0135 hrs. Again, there was no attempt made by staff to conduct any other activity or contraband search. Follow-up action required - Administration will provide documented training with staff on the requirements of disciplinary due process for inmates. Administration will also provide a plan of action on steps taken to cease the practice of removing mattresses from housing units without disciplinary due process and only if inmates are destroying the mattresses. The plan of action is to be provided to Lead Inspector Garrett within the next 30 days. Documentation of training for staff is to be completed and provided to Lead Inspector Garrett within the next 30 to 60 days. Further occurrences of this practice may result in the issuance of additional notice of non-compliance. |
| 283.3 | Grievance | Not applicable. |
| 285 | Exercise | Not applicable. |
| 287 | Education/Library | Not applicable. |
| 289 | Work Assignments | Not applicable. |
| 291.1 | Telephone | Not applicable.. |
| 291.2 | Correspondence | Not applicable.. |
| 291.3 | Commissary | Not applicable.. |
| 291.4 | Visitation | Nor applicable. |
| 291.5 | Religious Practices | Not applicable. |
| xxx | Variances | Not applicable. |
| xxx | Remedial Orders | Not applicable. |
| xxx | Complaints | Not applicable. |

RECEIVED
By Cathi Williamson at 6:06 am, Apr 15, 2024

Ex. 13 086                                    WAGNER 004523

**Facility Name:** Harris Co. Jail                                    **Date:**           April 8, 2024

Technical Assistance

| Item | Section | Paragraph | Comments |
|------|---------|-----------|----------|
| 1 | 283 | .1(4)(D) | deprivation of clothing or bedding; inmates who destroy bedding or clothing may be deprived of such items. This shall be reviewed and documented every |

**Video documentation reviewed during the investigation of a submitted complaint shows that Harris Co. staff entered housing unit 4D1-1 and took mattresses away from the inmates and removed them from the housing unit without disciplinary due process.**

Michael Gravitt, TCJS Inspector

**RECEIVED**
**By Cathi Williamson at 6:06 am, Apr 15, 2024**

**TEXAS COMMISSION ON JAIL STANDARDS**
**JAIL INSPECTION REPORT**

**Facility Name:**    Harris Co. Jail                                    **Date:**        April 8, 2024

| Item | Section | Paragraph | Comments |
|------|---------|-----------|----------|
| 1 | 283 | .1(4)(D) | deprivation of clothing or bedding; inmates who destroy bedding or clothing may be deprived of such items. This shall be reviewed and documented every twenty-four hours; |

**Video documentation reviewed during the investigation of a submitted complaint shows that Harris Co. staff entered housing unit 4D1-1 and took mattresses away from the inmates and removed them from the housing unit without disciplinary due process.**

Michael Gravitt, TCJS Inspector

RECEIVED
By Cathi Williamson at 6:06 am, Apr 15, 2024

# ATTACHMENT 14

Notice of Non-Compliance
to Harris County issued no
April 10, 2024

     WAGNER 004526

# TEXAS COMMISSION ON JAIL STANDARDS

EXECUTIVE DIRECTOR
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us



## NOTICE OF NON-COMPLIANCE

## HARRIS COUNTY JAIL

### April 10, 2024

Please reference the Inspection Requirements Review and Jail Inspection Report issued on April 8, 2024, detailing the specific issues that resulted in the issuance of this notice of non-compliance.

| Minimum Standards Violated: | Corrective Measure Required | Date Corrective Action Must Be Completed |
|---|---|---|
| 283.1 (4)(D) | deprivation of clothing or bedding; inmates who destroy bedding or clothing may be deprived of such items. This shall be reviewed and documented every twenty-four hours. **Video documentation reviewed during the investigation of a submitted complaint shows that Harris Co. staff entered housing unit 4D1-1 and took mattresses away from the inmates and removed them from the housing unit without disciplinary due process.** | Upon receipt of this notice. |

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Parker, Vice-Chair
Ross Reyes, Melissa

Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland

Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview"
To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas

# ATTACHMENT 15

# Second Amended Remedial Order for Harris County issued on May 2, 2024

   WAGNER 004528

# TEXAS COMMISSION ON JAIL STANDARDS



**EXECUTIVE DIRECTOR**
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

## REMEDIAL ORDER

**FROM:** Texas Commission on Jail Standards

**TO:** Lina Hidalgo County Judge
Harris County, Texas
Houston, TX 77002

Sheriff Ed Gonzalez
Harris County
Houston, TX 77002

A special inspection of the Harris County Jail was conducted on September 7, 2022, in response to a complaint. After it was determined inmates had remained in holding cells in excess of 48 hours, Harris County was issued a notice of non-compliance.

A special inspection was conducted on December 12, 2022, as a result of a death in custody. The investigation determined that the Harris County Jail was not following doctor's orders and not following their approved procedures contained within their Health Services Plan regarding the review and provision of prescription medications to inmates and Harris County was issued a notice of non-compliance.

Harris County requested a reinspection in response to the notice of non-compliance dated September 7, 2022, on December 16, 2022.

Harris County requested a reinspection in response to the notice of non-compliance dated December 12, 2022, on January 20, 2023.

A comprehensive reinspection of Harris County Jail was conducted on February 17th, 2023. The inspectors determined that previously identified areas of non-compliance remained and additional areas of non-compliance were identified. A Notice of Non-Compliance was issued to the Harris County Jail. Below are the details.

- Inmates continue to be held in holding areas for more than 48 hours.

- Inmates were not seen by medical staff within 48 hours, as required by the facility operation plan.

- Doctor's orders continued to not be followed

- 60-minute observations of inmates were routinely exceeded by staff on a routine basis

- Harris County failed to provide at least one jailer on each floor of the facility where 10 or more inmates are housed with no less than 1 jailer per 48 inmates or an increment thereof on each floor.

Judge Bill Stoudt, Longview, Chair
Dr. Esmaeil Porsa, M.D., Houston, Vice-Chair
Ross Reyes, Melissa

Sheriff Kelly Rowe, Lubbock
Sheriff Raul "Pinky" Gonzales, Refugio
Patricia M. Anthony, Garland

Commissioner Ben Perry, Waco
Duane Lock, Southlake
Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

Ex. 13 092                                                        WAGNER 004529

# TEXAS COMMISSION ON JAIL STANDARDS



**EXECUTIVE DIRECTOR**
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

A special inspection was conducted on April 24, 2023, as a result of a death in custody. The investigation determined that the Harris County Jail had not observed the inmate no less than once every 60 minutes as required, and the Harris County Jail was issued a notice of non-compliance with minimum jail standards.

At its regularly scheduled meeting on May 11, 2023, the Texas Commission on Jail Standards received an update from Executive Director Wood. In addition, county officials provided comments. The commission, by appropriate motion and second, voted to grant the executive director the authority to issue a Remedial Order requiring Harris County to comply with minimum jail standards in regards to staffing, and for Harris County officials to provide the Commission with a staffing plan within 90 days for review and approval.

At its regularly scheduled meeting on November 2, 2023, the Texas Commission on Jail Standards received an update from Executive Director Wood. In addition, county officials provided comments. The commission, by appropriate motion and second, voted to grant the executive director the authority to reduce the number of variance beds Harris County was authorized to utilize. The reduction, in increments of 144 beds, began December 1, 2023, and continued each month until minimum staffing could be met and maintained at all times.

A comprehensive reinspection of Harris County Jail was conducted on February 20th, 2024. The inspectors determined that previously identified areas of non-compliance remained and additional areas of non-compliance were identified. A Notice of Non-Compliance was issued to the Harris County Jail. Below are the details.

- Records reviewed failed to demonstrate that inmates housed at the 1307 Baker St Facility are provided medication in accordance with written instructions from a physician.

- 60-minute observations of inmates were exceeded by staff in January approximately 1400 times by 2 minutes to 115 minutes. Additionally, observation records for areas where inmates known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre behavior are confined exceeded the 30-minute observation by 2 minutes to 195 minutes. This deficiency is continued from the August 28, 2023 inspection.

- On more than one occasion, Harris County failed to meet the 1:48 officer to inmate staffing ratio as required by standards. This deficiency is continued from the August 28, 2023 inspection.

A special inspection of the Harris County Jail was conducted on April 8, 2024, in response to a complaint. After it was determined Harris County Jail staff entered housing unit 4D1-1 and removed all inmate mattresses from the housing unit without disciplinary due process, a notice of non-compliance with minimum jail standards was issued.

At its regularly scheduled meeting on May 2nd, 2024, the Texas Commission on Jail Standards received an update from Executive Director Wood. In addition, county officials provided comments. The commission, by appropriate

Judge Bill Stoudt, Longview, Chair     Sheriff Kelly Rowe, Lubbock     Commissioner Ben Perry, Waco
Dr. Esmaeil Porsa, M.D., Houston, Vice-Chair     Sheriff Raul "Pinky" Gonzales, Refugio     Duane Lock, Southlake
Ross Reyes, Melissa     Patricia M. Anthony, Garland     Monica McBride, Alpine

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
*To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas*

Ex. 13 093      WAGNER 004530

# TEXAS COMMISSION ON JAIL STANDARDS



**EXECUTIVE DIRECTOR**
Brandon S. Wood

P.O. Box 12985
Austin, Texas 78711
Voice: (512) 463-5505
Fax: (512) 463-3185
http://www.tcjs.state.tx.us
info@tcjs.state.tx.us

motion and second, voted to grant the executive director the authority to amend the Remedial Order requiring Harris County to limit the inmate population of the Harris County Jail System to the amount of staff available.

ISSUED this 2nd day of May 2024

**TEXAS COMMISSION ON JAIL STANDARDS**

_____

Brandon Wood, Executive Director

cc:   Governor Gregg Abbott
      Governor, State of Texas

"The Commission on Jail Standards welcomes all suggestions and will promptly respond to all complaints directed against the agency or any facilities under its purview".
_To empower local government to provide safe, secure and suitable local jail facilities through proper rules and procedures while promoting innovative programs and ideas_

Ex. 13 094                                                WAGNER 004531

# ATTACHMENT 16

Certified excerpt of
meeting minutes of TCJS meeting
on February 6, 2025

Ex. 13 095                                    WAGNER 004532

MINUTES

**Meeting:** Commission on Jail Standards

**Place:** William P Clements Building
Room 103
300 W 15th Street
Austin, TX 78711

To obtain a recording of the meeting February 6, 2025, contact Richard Morgan, at Richard.morgan@tcjs.state.tx.us.

**Time:** 9:00 a.m.

**Date:** February 6, 2025

**This is a certified excerpt of the minutes of the meeting of the Texas Commission on Jail Standards conducted February 6, 2025, regarding the Old Business item:
Harris County – Notice of Non-Compliance and Remedial Order**

V. **Old Business**
    A. **Harris County – Notice of Non-Compliance and Remedial Order**
    Dr. Porsa recused himself from this agenda item.

    Director Wood advised that Harris County is on the agenda due to previously issued notices of non-compliance and a remedial order and are subject to enhanced enforcement. Director Wood discussed the two notices of non-compliance issued since the previous meeting in November 2024, and the specific issues within them including failure to perform visual observation of inmates and not meeting the required staffing to inmate ratio.

    Testimony was provided by Harris County Chief Philip Bosquez, and Tonya Mills, regarding the efforts that Harris County has made in efforts to regain compliance. Chief Bosquez reported improved staffing numbers. Chief Bosquez and Tonya Mills both discussed the expected impact of the newly opened felony courts in Harris County on the jail population. Chief Bosquez reported that the Harris County Jail has 38 openings at the jail now. He also reported 1,538 inmates being outsourced to other facilities, an average length of stay in the Harris County Jail at 185 days, 340 inmates awaiting transport to the Texas Department of Criminal Justice, 350 inmates on the state hospital waitlist, and over 1,300 beds unused.

Director Mills discussed the impact of the new courts on the Harris County Jail population. She advised that during 2024 the Harris County courts observed a 1715 increase in admissions to the Harris County jail. Director Mills discussed working with the District Attorney and bureau chiefs to develop a strategic approach to reduce the average length of stay.

Commissioner Lock asked for clarification on the number of inmates that Harris County has outsourced, specifically regarding those inmates housed out of state. Chief Bosquez reported that the Harris County Jail has reduced the number of inmates housed in Mississippi by 60, and will continue to reduce this number as their staffing allows. Commissioner Lock clarified that his concerns regarding Texas county jail inmates housed out of state is due to the quality of, or lack thereof, equivalent minimum jail standards in those states. Commissioner Lock discussed Harris County's efforts to keep outsourced inmates within Texas, and Chief Bosquez provided information regarding the contracting process.

Director Wood recommended/requested permission for staff to engage with the Office of The Attorney General to enforce the in-place remedial order. Commissioner Lock made a motion to approve, seconded by Commissioner Anthony. The motion passed unanimously.


**Brandon Wood, Executive Director**
Date: _10 FEB 25_

**Leslie Speir, Chief Financial Officer**
Date: _2-10-2025_

Leslie Michelle Speir
My Commission Expires
11/9/2027
Notary ID 134640450



**U.S. Department of Justice**

Civil Rights Division

*Assistant Attorney General*
*950 Pennsylvania Avenue, NW - RFK*
*Washington, DC 20530*

June 4, 2009

The Honorable Ed Emmett
County Judge
1001 Preston
Suite 911
Houston, TX  77002

RE:  <u>Investigation of the Harris County Jail</u>

Dear Judge Emmett:

On March 7, 2008, we notified your office of our intention to investigate conditions at the Harris County Jail (Jail) pursuant to the Civil Rights of Institutionalized Persons Act ("CRIPA"), 42 U.S.C. § 1997.  Consistent with statutory requirements, we write to report the findings of our investigation and to recommend remedial measures needed to ensure that conditions at the Jail meet federal constitutional requirements.  <u>See</u> 42 U.S.C. § 1997b.

During our investigation, correctional experts in the fields of penology, medicine, psychiatry, and life safety, assisted us in reviewing records, interviewing staff, interviewing detainees, and inspecting facility living conditions.  Before, during, and after our on-site inspections, we received and reviewed a large number of documents, including policies and procedures, incident reports, medical and mental health records, and other materials. Consistent with our commitment to provide technical assistance and conduct a transparent investigation, we provided debriefings at the conclusion of two on-site inspections conducted in July and August 2008.  During the debriefings, our consultants provided their initial impressions and tentative concerns.

Throughout this process, County and Jail officials cooperated fully with our review.  We appreciate the assistance that they provided us and the candor of their response.  Indeed, we were impressed by the level of professionalism exhibited by staff at all levels and with the sophistication of many Jail systems.  While we use individual incidents throughout this letter to illustrate systemic deficiencies, we are aware that this facility has a very difficult task handling large numbers of

- 2 -

detainees, many of whom have serious medical and mental health problems.  The examples we cite should not necessarily be construed as a criticism of particular staff.  In many cases, such incidents may be more reflective of inherent systemic problems with Jail procedures or resources than the professionalism or dedication of staff and administrators.

We are pleased to advise you that Harris County Jail complies with constitutional requirements in a number of significant respects.  The Jail's operational infrastructure includes the existence of written policies and procedures, clearly designated security and medical supervisors, training programs, a booking and intake assessment process, infection control programs, and fire safety precautions.  At the same time, however, we also conclude that certain conditions at the Jail violate the constitutional rights of detainees.  Indeed, the number of inmates deaths related to inadequate medical care, described below, is alarming.  As detailed below, we find that the Jail fails to provide detainees with adequate:  (1) medical care; (2) mental health care; (3) protection from serious physical harm; and (4) protection from life safety hazards.

## I.    DESCRIPTION OF THE JAIL

Harris County Jail includes four major jail facilities constructed between the 1980s and the 1990s.  At the time of our site visit, the Jail housed over 9400 detainees.[1]  The Jail's design capacity is reportedly 9800 detainees.  The Harris County Sheriff's Department also places detainees at various satellite locations.  If those detainees are also counted, the Sheriff's Department is responsible for a total of nearly 11,000 detainees. In 2007, the Jail processed over 130,000 admissions.

## II.    LEGAL FRAMEWORK

CRIPA authorizes the Attorney General to investigate and take appropriate action to enforce the constitutional rights of jail detainees and detainees subject to a pattern or practice of unconstitutional conduct or conditions.  42 U.S.C. § 1997.  The rights of pre-trial detainees are protected under the Fourteenth Amendment which ensures that these detainees "retain at least those constitutional rights . . . enjoyed by convicted prisoners."  Bell v. Wolfish, 441 U.S. 520, 545 (1979).  Under

---

[1]    The Jail houses mainly pre-trial detainees, but also houses some post-adjudication inmates.  For the purpose of this letter, both groups will be referred to as detainees.

WAGNER 000080

- 3 -

the Eighth Amendment, prison officials have an affirmative duty
to ensure that detainees receive adequate food, clothing,
shelter, and medical care.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 832
(1994).  The Eighth Amendment protects prisoners not only from
present and continuing harm, but also from future harm.
<u>Helling v. McKinney</u>, 509 U.S. 25, 33 (1993).

    Detainees have a constitutional right to adequate medical
and mental health care, including psychological and psychiatric
services.  <u>Farmer</u>, 511 U.S. at 832.  Detainees' constitutional
rights are violated when prison officials exhibit deliberate
indifference to their serious medical needs.  <u>See</u>
<u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976).  Detainee living
conditions must be "reasonably sanitary and safe."  <u>Farmer</u> 511
U.S. at 832.

## III.  CONSTITUTIONAL DEFICIENCIES

    As a large urban detention facility, Harris County Jail
faces a number of significant problems including a high detainee
census and complex funding and logistical challenges.  In many
ways, the Jail actually performs quite well.  Jail policies and
procedures provide for a comprehensive detainee housing
assignment process, medical sick call procedures, and regular
facility maintenance.  Staff receive broad training on Jail
operations, supervision of detainees, and detainee rights.
Unfortunately, in a number of critical areas, the Jail lacks
necessary systems to ensure compliance with constitutional
standards.

A.  <u>Medical Care</u>

    The Jail has functional systems in place to provide medical
care and treatment to a large population of detainees.  These
systems include an initial screening process, a more
comprehensive health assessment for longer-term detainees, a sick
call process, a modern clinic, qualified medical staff, a
professional management structure, and mechanisms to obtain
outside specialty care.  Despite the general quality of such
systems, the Jail fails to provide consistent and adequate care
for detainees with serious chronic medical conditions.  We found
specific deficiencies in the Jail's provision of chronic care and
follow-up treatment.  These deficiencies, in themselves and when
combined with the problems in medical record-keeping and quality
assurance discussed below, are serious enough to place detainees
at an unacceptable risk of death or injury.

WAGNER 000081

- 4 -

1.  <u>Inadequate Chronic Care</u>

Detainees who suffer from chronic medical conditions require assessment and ongoing treatment to prevent the progression of their illnesses.  As part of the treatment process, detainees with chronic medical conditions require routine follow up to monitor the progression of their illness and the potentially hazardous effects of medication.  Because of crowding, administrative weaknesses, and resource limits, the Jail does not provide constitutionally adequate care to meet the serious medical needs of detainees with chronic illness.

Generally accepted standards of correctional medical care require that medical staff identify detainees with chronic conditions such as - diabetes, tuberculosis, and heart disease - and provide timely treatment for such conditions.  Unfortunately, the Jail does not have an assessment process to adequately identify detainees with serious chronic medical conditions.  In particular, we found that the Jail has delegated screening to nurses who are in need of additional training and more administrative oversight by physicians.  For instance, we found assessment forms completed by nursing staff who had not actually completed the assessments.  We also found that physicians do not routinely see detainees with chronic conditions to assess the status of their health.  Moreover, Jail staff do not conduct periodic surveys of the housing units to identify detainees who may have chronic medical conditions, but who may not necessarily be identified by the normal sick call process or the screening procedures conducted during detainee booking.  Such deficiencies result in gaps in the system for identifying detainees with serious chronic medical conditions.  For instance, staff may miss some detainees who are degenerating mentally or physically, but who are unable or unwilling to utilize the normal sick call process.

Problems with chronic care assessments are particularly pronounced in the assessment of detainees receiving medications. Generally accepted correctional medical standards require that once medical staff identify a medical condition, they need to order appropriate medications and then periodically re-assess those medications to determine their effectiveness and to monitor side effects.  The Jail medical staff are not adequately

WAGNER 000082

- 5 -

conducting such periodic assessments.  Examples from 2007-2008 include:

- Detainee AA had a history of hypothyroidism and seizures.[2]  Medical staff administered two medications, each of which could have had potentially toxic side effects.  After the initial medication order, dosages and blood levels of these medications were not monitored.

- Detainee BB suffered from a deep venous thrombosis (blood clot) in his lower extremity.  Medical staff administered an unsafe dosage of blood thinning medication, placing the detainee at an increased risk of clot formation.  Such clots can cause serious medical complications including sudden death.  Staff conducted lab tests which showed that the dosage might be unsafe, but then failed to follow up on the test results.

- Detainee CC had a history of heart failure.  Medical staff administered two medications with potentially toxic side effects.  Our record review suggests that medical staff did not check CC's blood levels for several months.

2.  <u>Inadequate Continuity of Medical Care</u>

Chronic and some acute medical conditions require appropriate ongoing treatment and continuity of care.  Failure to address detainee medical conditions over time can lead to an increased risk in morbidity and mortality.  Systems and practices, such as adequate record-keeping and follow-up exams by qualified staff, must be in place to manage the serious medical conditions of detainees during the length of their incarceration.  The Jail does not have a system in place to provide such continuity of care for some of the detainees with the most serious medical conditions.

The Jail's medical clinic serves as a makeshift emergency room, stabilizing detainees with acute conditions.  This model, however, is problematic in a large urban detention facility with

---

[2]     To protect the identity of detainees, the initials used in this letter are not the actual detainees' initials.

WAGNER 000083

- 6 -

hundreds of sick detainees.  Many of the detainees with serious
medical conditions cannot be adequately identified or treated
solely through an acute care process.

    In the absence of a chronic care program or other systems
for ensuring follow-up care, the sick call process serves as the
primary mechanism for the Jail to provide continuity of care.
This system is not capable of providing such continuity of care.
The sick call process itself is seriously strained due to
crowding, staffing limits, and some problematic practices.  For
instance, we received a number of complaints about delays in care
at the Jail's 1200 Baker facility.  Because of the way care is
organized at the Jail, the 1200 Baker housing units seem to be
particularly affected by any bottlenecks in access to the main
intake clinic, despite the fact that the clinic is also located
at 1200 Baker.  Because the main clinic also serves as the main
intake facility and emergency treatment center, the 1200 Baker
detainees must effectively share the same clinic resources as
newly admitted detainees, emergency cases, and detainee transfers
from other units who require additional medical supervision.
This puts a heavy strain on 1200 Baker medical staff and impedes
detainee access to care.

    More generally, the Jail's administrative procedures allow
delays in care to be easily overlooked.  Jail procedures require
that detainees complete forms to request medical care.  The Jail
disposes of these forms, however, just after they are processed.
Once the forms are destroyed, the Jail apparently cannot track
detainee requests for medical care in order to determine whether
they have been fulfilled.  Another peculiar Jail practice
involves the process for responding to requests for specialty
care.  As a matter of routine practice, Jail detainees submit
requests for specialty care to a clerk.  This process has
apparently little or no physician oversight, which means that
access to specialty care is not initially reviewed by qualified
personnel.  This lack of oversight means that individuals who may
need more intensive or immediate care receive the same level of
attention as those with relatively low priority needs.

    These problems would be troublesome enough for a clinic
dealing only with detainees who have acute medical complaints.
For detainees with chronic conditions, barriers to care can cause
them more difficulties than experienced by those inmates with
more typical medical complaints.  Detainees with chronic illness
may need care to be much more timely and routine than some
detainees with acute conditions.  At present, however, the
detainees have a difficult time first accessing the clinic, and
then receiving continuity of care.  Detainees with mental illness

WAGNER 000084

- 7 -

are an especially high risk group.  Other detainees with chronic
conditions may at least have the capacity to seek care.
Detainees with mental illness, especially those who are acutely
psychotic or suicidal, may not even try to use the sick call
process to obtain continuing treatment of their conditions.  Such
detainees may need regular follow-up visits and more consistent
access to medical staff.

Examples of the Jail's failure to provide appropriate
follow-up treatment and continuity of care include the following
examples from 2007-2008:

- DD was a 74-year-old detainee with a history of open
heart surgery.  When DD visited the clinic presenting
complaints of incontinence, medical staff failed to
give DD a physical exam or take his vital signs.  Staff
sent DD back to DD's unit.  The following day, DD
returned to the clinic with incontinence and elevated
blood pressure.  Clinic staff sent DD to the hospital,
where he died shortly thereafter.

- EE had a documented history of diabetes that received
inadequate medical attention.  When EE complained of
symptoms, staff merely prescribed pain medication.
Initially, EE complained of leg pain and knee swelling.
In response, staff provided EE with pain medication.
EE complained again 5 days later about her symptoms.
The medical notes were essentially illegible, but
apparently staff again just provided pain medication.
The detainee complained of her symptoms once more that
same day.  While waiting to be seen in the clinic, EE
collapsed and died shortly afterwards.  The
documentation suggests that after EE collapsed, staff
failed to provide an appropriate emergency response.
For instance, the records show that EE had a low blood
sugar level at the time of her collapse, but staff
failed to respond to the symptoms.  Medical records
also suggest that the staff did not try to use an
automatic emergency defibrillator during the incident.

- FF had a history of cirrhosis. Over several weeks, FF's
liver condition worsened, but staff repeatedly failed
to respond in a manner consistent with generally
accepted correctional medical standards.  FF initially
presented to the clinic with a complaint of swelling to
his legs.  Jail staff prescribed blood pressure
medication, even though FF's blood pressure was normal.
FF complained of chest pain and other conditions over

- 8 -

the next several weeks.  Jail staff repeatedly sent FF
to the hospital but repeatedly failed to change his
medications, treatment plan, or conduct other
appropriate follow-up.  For instance, on one of these
occasions, a deputy reported that FF was having trouble
walking.  The staff sent FF to the hospital, and an
undated medical note indicates that FF needed fluid
removed from his stomach.  Again, however, staff did
not alter FF's treatment plan; nor was there any
apparent documentation of vital signs.  Approximately
one month after his initial complaint, FF died during
his last hospital stay.  One troubling additional note
about this case is that during the period in question,
FF apparently spent much of his time at the Jail in a
housing unit instead of the infirmary.  Given the
seriousness of FF's medical condition, he needed to be
in an infirmary in order to receive the level of care
required by generally accepted correctional medical
standards.  The discontinuity of care and a lack of
follow-up by staff are of serious concern in this case.

3.    <u>Inadequate Medical Documentation and Quality Assurance</u>

Medical record-keeping and quality assurance are basic
components of a clinical practice that is consistent with
generally accepted correctional medical standards.  These systems
help identify and correct potential problems with patient care.
Harris County has deficiencies in both areas, and these
deficiencies contribute to problems with chronic care and
continuity of care.

A complete and adequate medical records system is critical
to ensuring that medical staff are able to provide adequate care.
The Jail's process for maintaining medical records and processing
medical orders often leaves medical records unavailable to nurses
and doctors.  Medical staff have little or no access to the
records when the pharmacy staff are filling out medication
orders, because the pharmacy staff have custody of the records
when completing those orders.  During our fact-gathering, we also
found various record-keeping problems such as a lack of
compliance with professional record-keeping formats, illegible
physician notes, and factually inaccurate documentation.  These
deficiencies affect the quality of care and the medical staff's
ability to meet Constitutional requirements.

As a matter of technical assistance, we should note that
correctional facilities often benefit from having an adequate
quality assurance process.  Such a process can help

WAGNER 000086

- 9 -

administrators self-identify and correct any deficiencies.  A
large facility may have particular difficulty addressing systemic
constitutional deficiencies without such a process.  The Jail
does engage in some effective quality improvement activities in
order to track and trend medical-related incidents at the
facility.  The activities do not, however, include adequate
mechanisms to review and evaluate Jail physicians; nor does the
process include mechanisms that could help ensure more consistent
and adequate record-keeping.  The mortality review process does
not include feedback to appropriate physician staff.

B.  Mental Health Care

     Many of the Jail detainees require mental health care.
Approximately 2000 Jail detainees reportedly receive psychotropic
medications each day.  Of the detainees receiving psychotropic
medications, approximately 200 are considered by the Jail to be
part of the mental health program.  These detainees often cannot
be housed in general population because of their mental health
condition.  The Jail needs a range of housing options to handle
such detainees, because detainees with mental illness have very
different needs depending on their circumstances.  Instead, the
Jail only has a limited number of on-site housing options for
detainees with mental illness.  These basically consist of some
single cells and specialized dormitories.

     Housing practices for detainees with mental illness are
problematic.  For example, even though the ratio of male to
female mental health patients is about 2:1, the number of male
single cells to female single cells appears to be 32:1.  Thus,
female detainees with mental illness are much more likely to be
left in inappropriate housing conditions while awaiting care.  As
with medical care generally, the clinic in the 1200 Baker
building serves as the primary mental health resource.  As noted
previously, the 1200 Baker clinic is overwhelmed.  The Jail also
has access to some other treatment facilities, such as the Harris
County Psychiatric Center (Center), but these facilities have
limited resources.  For example, the Center can house only 24
Jail detainees.

     Many of the problems noted previously regarding chronic care
and medical care generally also apply to detainees with mental
illness.  For example, the Jail's process for assessing and
treating detainees is focused on acute symptoms and does not
adequately identify detainees with serious mental health needs.
The mental health clinic functions like a hectic emergency room,

WAGNER 000087

- 10 -

and detainees with serious mental health conditions often cannot
obtain timely and appropriate care.  These deficiencies violate
generally accepted correctional mental health standards.

As a practical matter, while the general medical clinics can
meet the serious acute care needs of many detainees, the mental
health system does not adequately address the serious mental
health care needs of detainees.  Mental health policies designed
to cover a range of conditions exist, but overwhelmed staff often
do not implement them as written.  A host of serious mental
health conditions cannot be adequately handled at the Jail
because of significant housing and treatment limitations.  While
the Jail devotes additional resources to dealing with the most
acutely suicidal, even the basic care and supervision of the most
seriously mentally ill appears inadequate.

1.  <u>Inadequate Access to Mental Health Treatment</u>

The Jail's written policies include a process for screening
and prioritizing detainees with serious mental illness, but in
practice, the Jail does not adequately treat detainees based on
the seriousness of their condition.  The Jail staff classify
requests for mental health care into four basic categories.
Category 1 includes detainees who are acutely suicidal or have
expressed homicidal complaints.  Category 2 includes detainees
who have expressed some suicidal ideation but have not indicated
imminent action.  Category 3 includes detainees with medication
issues.  Category 4 includes detainees who need to see a case
manager.  Because of limitations on facility housing, staffing,
and treatment options, the Jail can only address detainees in
Category 1.  Other detainees must wait for treatment, often for
significant periods of time, if they receive mental health
treatment at all.

Given that mental health staff received about 17,000
requests in 2007, the existing system for allocating mental
health resources is inadequate.  The Jail does not provide access
to mental health care for many inmates with serious needs.
Examples from 2007-2008 include:

- GG entered the facility with a mental health history.
  At the time, GG apparently was withdrawing from
  alcohol, but staff failed to provide appropriate
  medication and initial intervention.  Five days later,
  someone observed GG in his cell, with blood seeping out
  under the door.  Security arrived, and they discovered
  that GG had lacerated his hand and appeared to be
  hallucinating.  Staff transferred GG to the infirmary,

WAGNER 000088

- 11 -

but they did not complete an initial psychiatric assessment until five days later.  Staff discharged GG two days later.

- HH's medical record suggested that he had a history of not eating, but staff did not initially refer him to a psychiatrist for assessment.  After six months in the Jail, HH complained of depression, and staff finally referred HH to a psychiatrist.  Mental health staff, however, did not conduct an initial psychiatric evaluation until three weeks after HH complained of depression.  Mental health staff noted that HH appeared to be depressed.  During the next two months, HH received medication but did not see a psychiatrist. HH ended up in an altercation and had to be placed in isolation.  Two days later, he began vomiting blood. At the time of our tour, HH had been housed in administrative separation for more than 18 months and had been involved in various altercations with staff. Given the nature of HH's mental health condition, the Jail's delays in providing mental health treatment and evaluation likely contributed to HH's continuing mental decline and behavioral disturbances.

- II entered the Jail with a history of seizures, but apparently did not receive seizure medications at intake.  II experienced a seizure 19 days after arrival at the Jail.  II also had a history of cutting.  There was no follow-up on this psychiatric issue at all.

- JJ served time in the Jail on multiple occasions. Staff medicated JJ without following generally accepted correctional medication standards.  Without an initial screening, the Jail staff involuntarily medicated JJ and housed him in the mental health department's acute treatment cellblock.  Staff then repeatedly treated JJ with both anti-psychotic and mood-stabilizing medications without adequate laboratory studies or proper monitoring, placing the detainee at risk of sudden death.

- KK was identified as bipolar upon admission. Psychiatry did not see KK for nearly a month, and KK received no medication for his illness until about six weeks after his admission.  In the interim, KK was involved in altercations on four occasions, resulting in the fracture of his arm.  Staff renewed KK's medication order over this period without further

WAGNER 000089

- 12 -

patient examination by a psychiatrist.  Even after KK's altercations, there appears to have been little follow-up by staff to deal with KK's mental health symptoms.

- During intake, LL reported a mental health history that included risk factors for suicide.  The Jail staff did not refer LL to mental health services.  Approximately 3 weeks later, LL lacerated his neck.

2. <u>Inadequate Treatment and Psychotropic Medication Practices</u>

In a large urban detention center with a heavy mental health caseload, staff need to have access to a variety of treatment resources.  Such resources include an array of different types of therapy, medication, and intensive supervision in order to address different types of mental illness, and varying levels of patient acuity.

Jail mental health staff have access to some mental health resources, but those resources are not sufficient given the size of the mental health caseload.  The Jail has few treatment program options available for detainees with mental illness.  The Jail uses medications, additional staff monitoring, and some structured housing for detainees with mental illness.  For most mental health conditions, the primary intervention is a medication order, often with inadequate follow-up even for the most seriously ill.  Indeed, once medical staff prescribe medications, they often cannot or do not routinely follow-up on those detainees unless the detainees themselves request care.  This is a substantial departure from generally accepted correctional standards.  Notably, detainees also reported that there are significant delays when they request care.

In our document review, some of the treatment orders appeared to depart significantly from generally accepted professional mental health standards.  Some of these orders suggest that staff may be utilizing medications in a clinically inappropriate or unsafe manner.  Examples of improper chemical restraints and unsafe medication practices during the period from 2006-2008 include the following:

- MM was in an acute psychotic state for nearly two weeks before he died.  At intake, staff prescribed medications but they were never dispensed.  As MM became increasingly uncooperative, staff injected MM with an intramuscular drug.  Medical records suggest significant problems with basic medication

WAGNER 000090

- 13 -

documentation and staff approaches to medication non-compliance.  Soon after MM was injected, MM's breathing grew shallow, and he became unresponsive.  MM died shortly afterwards.

- NN spent the better part of a year in a State Hospital. NN was found not competent and not restorable.  For some reason, he was sent back to the Jail.  Despite his competency status, Jail staff nevertheless placed the detainee in general housing and allowed him to keep various medications on his person.  NN was not a good candidate for self-medication.  NN appeared to suffer a seizure and he was sent to the clinic.  The clinic staff suspected the detainee was "sleepy" due to his psychotropic medications.  They released the detainee from the clinic, and he died shortly afterwards.

- A Jail psychiatrist diagnosed OO with schizoaffective disorder (a situation where both mood and schizophrenic symptoms exist).  OO also had a history of mental illness.  OO's mental health deteriorated, and staff repeatedly renewed his medications without having him seen again by a psychiatrist.  OO ended up in two altercations, including one in which he struck a deputy.

- PP reported a history of seizures.  PP suffered at least one seizure in the Jail, but according to the Jail's medical records, there was no proper follow-up. Medical staff placed PP on four benzodiazepines, but not a long-term anti-convulsant.[3]  This suggests that the purpose of the medications prescribed was more likely to sedate the inmate, rather than to treat his seizures.

- QQ required treatment for seizures.  QQ experienced a series of seizures, but on at least two clinic visits, documentation suggests that QQ's chart was unavailable

---

[3]    If used at all for seizure disorder, benzodiazepines are typically prescribed for short-term treatment.  They are more commonly used for acute detoxification.  In the context of this individual's history and record, the use of four medications of the same class to sedate a detainee appears to be a misuse of the medications.

WAGNER 000091

- 14 -

to the staff during the exams.  This resulted in a
number of delays in care despite QQ's repeated
seizures.

3.    Inadequate Suicide Prevention

In general, a comprehensive system for providing adequate
mental health care should also include policies, procedures and
practices to prevent detainee suicides.  Because suicide
prevention is itself an important legal concern, we note
specifically that the Jail has a number of conditions that are
dangerous for suicidal detainees.

First, the Jail lacks adequate video surveillance and
supervision in various holding areas.  Some of the cells used for
housing newly arrested detainees include unsafe physical fixtures
(e.g., exposed bars) that can be used to facilitate suicide.
While the Sheriff's Department was in the process of retrofitting
these cells during our tour, such efforts need to be broadened.
Many of the mental health holding areas throughout the Jail
appear to be clinically inappropriate.  For instance, padded
rooms in administrative separation and maximum security units are
difficult to supervise and the conditions are so stark, they can
cause a detainee with mental illness to degenerate.

Second, the detainees' generally limited access to mental
health care can be especially dangerous for suicidal detainees,
since suicidal detainees may not be particularly inclined to seek
care on their own.  Thus, adequate screening and pro-active
efforts to identify and treat suicidal detainees are necessary to
ensure compliance with minimum standards of care.

C.    Protection from Harm

We evaluated the Jail's detainee supervision procedures,
security classification process, housing practices, grievance
procedures, disciplinary process, and training program.  We found
that many Jail policies and practices are consistent with minimum
correctional standards.  Yet, at the same time, we also found
some significant and often glaring operational deficiencies.  For
security matters in particular, the Jail lacks:  (1) a minimally
adequate system for deterring excessive use of force, and (2) an
adequate plan for managing a large and sometimes violent detainee
population.

WAGNER 000092

- 15 -

1.  Excessive Use of Force

We have serious concerns about the use of force at the Jail. The Jail's use of force policy is flawed in several regards. First, neither written policy nor training provide staff with clear guidance on prohibited use of force practices.  For example, Harris County Jail does not train staff that hogtying and choke holds are dangerous, prohibited practices.  Indeed, we found a significant number of incidents where staff used inappropriate force techniques, often without subsequent documented investigation or correction by supervisors.  Second, use of force policies fail to distinguish between planned use of force (e.g., for extracting an detainee from a cell) and unplanned use of force (e.g., when responding to a fight).  In many planned use of force situations, staff should be consulting with supervisors, and possibly medical staff, before using force. Third, Jail policies do not provide for routine videotaping of use of force.  Fourth, the Jail does not have an appropriate administrative process for reviewing use of force.  Jail policy does not clearly require the individual using force to file a use of force report; nor does Jail policy provide for routine, systematic collection of witness statements.  When supervisors review use of force incidents, they do not have ready access to important evidence.  Instead, they appear to rely excessively on officer statements to determine what happened during an incident. While Jail staff were helpful and willing to assemble use of force documents requested by our review team, we found it troubling that the Jail did not collect such documents as a matter of course.  In other words, use of force occurs at the Jail without adequate review, and Jail data regarding use of force levels cannot be considered reliable.  We believe that the incidents noted during our review may only reflect part of what is really occurring within the facility.

As a result of systemic deficiencies including a lack of appropriate policies and training, the Jail exposes detainees to harm or risk of harm from excessive use of force.  In a particularly troubling January 2008 case, staff applied a choke hold to a detainee, who subsequently died.  The autopsy report identified the manner of death as homicide.  Our review of the Jail's records suggests that such improper force technique is being used with troubling frequency.  For instance, our consultant found a pattern of such incidents when reviewing use of force reports dated from January through June 2008.  These incidents included the following:

- An officer reported that he "grabbed inmate RR by the front of his jumpsuit top and the back of his neck and

WAGNER 000093

- 16 -

> forcibly placed inmate RR on the ground.  Once on the
> ground, I continued to apply pressure to inmate RR's
> neck and placed my right knee in the small of his
> back."

- An officer used both a headlock and multiple strikes to SS's rib cage.

- Officers "grab[bed] the front of [TT's] shirt and place[d] him on the wall to gain control of the incident."

- Officers used force on UU that resulted in a laceration requiring eleven staples to the scalp.  Yet, the use of force incident was not reported by either of the officers who applied the force.  Instead, another officer initiated the "inmate offense report."

These and other similar incidents suggest that staff use hazardous restraint and force techniques without appropriate guidance or sanction.  In some cases, medical records confirm that detainees may have suffered notable injuries, such as lacerations to the scalp or eye.  Notably, when force was investigated by supervisors, it appears that the supervisors often determined that staff's use of force was appropriate without obtaining independent medical review or multiple witness statements.

At the time of our inspection, the Jail was already making some effort to improve use of force reviews.  At the time of our tour, the Office of the Inspector General was in the early stages of developing a use of force review process.  We also understand that the Jail continues expanding this process in ways that may address some of the concerns noted in this letter.  Nevertheless, work must continue in this area before we can conclude that the Jail meets minimum constitutional standards.

2. Overcrowding

With a population approaching 10,000 detainees, the Jail is one of the largest detention facilities in the country.  The Texas Jail Commission's decision to grant the County waivers to house approximately 2000 detainees more than the Jail's original design capacity is concerning on its face.  At the same time, however, a large detainee population, even if over design capacity, does not itself necessarily violate minimum legal standards.  Moreover, the Sheriff's Department has adopted a number of measures to alleviate crowding issues, such as

WAGNER 000094

- 17 -

transferring detainees to outside facilities and providing
"portable bunks." Conditions would likely be much worse if the
detainees at outside contract facilities had to be housed in the
Houston Jail complex. The Sheriff's Department is clearly trying
to manage its population, and we acknowledge its efforts. While
crowded conditions may not, in and of themselves, violate the
Constitution, we are compelled to raise our concerns here because
(1) the Jail's crowded conditions currently exacerbate many of
the constitutional deficiencies identified in this letter; and
(2) the Jail needs a more comprehensive, systemic approach to
dealing with a large and growing Jail population.

Jail crowding affects multiple Jail systems. For instance,
it impedes detainee access to medical care, indirectly affects
detainee hygiene, and reduces the staff's ability to supervise
detainees in a safe manner. How the Jail handles inmate
supervision and violence illustrates some of the complexities
associated with overcrowding. The Jail has already adopted a
number of useful strategies for dealing with detainees who are
dangerous to themselves or others. These strategies include an
objective classification process for deciding where to house
detainees and contracts with outside facilities to handle
crowding pressure. Despite such strategies, the Jail is so
large, violence still breaks out frequently. In one recent ten
month period, the Jail reported over 3000 fights, and 17 reported
sexual assaults. Also, as discussed above in the mental health
section of this letter, the Jail has had particular difficulty
managing violent detainees with behavioral and mental health
issues. Because crowding makes it difficult to supervise
detainees and prevent violence, additional Jail staffing or more
jail diversion programs could reduce the risk of detainees coming
to harm in the facility.

Managing a large population is a complex problem, and
requires both short-term administrative approaches and long-term
strategies. For instance, changes to administrative processes
and better technology can help alleviate violence and supervision
problems associated with crowding. The Jail staff have limited
options to address violence and other serious incidents through
internal administrative and supervisory mechanisms. At the time
of our tour, the Jail did not have the ability to routinely
investigate violent incidents. Instead, the Jail staff had to
rely heavily on more cumbersome criminal prosecutions to deal
with such incidents. In such a large facility, criminal
prosecutions may not be a sufficient deterrent to violence. More
structured administrative procedures for reviewing incidents,
identifying dangerous inmates, and correcting hazardous
situations are needed. The Jail also did not have procedures in

- 18 -

place that could more appropriately distinguish between
disturbances caused by detainees with mental illness and other
detainees.  The response to the former often needs to be more
nuanced in order to avoid exacerbating the detainees' mental
illnesses and to ensure fairness.  Instead of referring detainees
for structured treatment, the Jail staff instead often have to
rely on placing detainees with mental illness in isolation.
Isolation can actually make a detainee with mental illness worse
and is not as therapeutic as a properly designed, dedicated
treatment unit.  Other administrative deficiencies include a lack
of staff control over hazardous contraband (e.g., detainee
razors), and a disciplinary process that lacks safeguards to
protect witness confidentiality.  Similarly, physical plant and
technology issues affect the Jail staff's ability to supervise
housing areas.  The four main facilities do not have video
surveillance in critical areas.  The satellite facilities also
lack adequate video surveillance.

More generally, while clearly the use of outside facilities
and other tactics have helped to alleviate some of the population
pressures at the Jail, it is less clear whether the Jail actually
has a workable long-term plan for dealing with the types of
systemic problems noted in this letter, especially in light of
potential population growth.  The County is reportedly working to
address many of the specific issues raised in this letter, but at
this early remedial stage, it is difficult to determine how much
progress will eventually be made.  For instance, if the Jail
increases staff, but then the Jail population simultaneously
increases, those staff could quickly become overwhelmed.  In
other words, when dealing with crowding and its effects on
security, medical care, and various Jail operations, the
Sheriff's Department should evaluate issues and remedies in a
systemic manner.  Otherwise, it may be much more difficult to
resolve deficiencies in a complete and long-term manner.

D.   Sanitation and Life Safety

The Jail buildings are generally modern and adequately
maintained.  Staff receive training on a variety of emergency
procedures.  The Jail lacks, however, certain necessary
structured maintenance, sanitation, and fire safety programs.
Given stresses upon Jail infrastructure crowding, the lack of
such programs raises concerns about sanitation and fire safety in
the Jail.

WAGNER 000096

- 19 -

1. <u>Sanitation and Hygiene</u>

While the Jail generally appeared to be clean and many systems seemed to be well-maintained, certain deficiencies in the Jail's hygiene practices and maintenance programs expose detainees to an unacceptable risk of injury, disease, or other harm. Jail crowding contributes to these deficiencies.

First, the Jail does not have systems in place to ensure adequate detainee personal hygiene. For example, the facility's laundry facilities and procedures are currently inadequate given the size of the Jail population. As a general matter, the Jail does not even have a "par level" of clothing or linen available for detainees. In other words, the Jail does not maintain enough accessible clothing or linen on-hand for the number of detainees housed at the facility. Moreover, the laundry operation does not meet minimum sanitary standards. The laundry operation does not properly wash and sanitize clothing. The laundry has only a few machines, and a number of those were inoperative during our tour. The staff also use a variety of inconsistent, and often inadequate, schedules and procedures for handling and cleaning laundry. As a result, we found a significant amount of unsanitary bedding, clothing, and mattresses throughout the facility. Such unsanitary conditions can expose detainees to a serious risk from infectious disease.

Another example of poor hygiene practices involves detainee grooming and shaving equipment. The Jail's barbers practice their trade in an unhygienic manner. Clipper blades, guards, and supply boxes appeared to be dirty and had not been cleaned between uses. Detainee barbers did not keep their equipment in disinfectant solutions. As discussed previously in this letter's section on protection from harm, razor blades are not well controlled in the facility. The availability and use of dirty, shared razors and blades is a serious risk, both in terms of disease transmission and as a security matter.

Finally, the Jail's plumbing and mechanical systems require improved maintenance in order to ensure hygienic conditions in certain housing units. While most of the Jail is properly maintained, the Jail's population size and gaps in the Jail's maintenance program result in unsanitary conditions in the intake and mental health units, where the Jail utilizes archaic flush-able floor drains, essentially holes in the floor, instead of toilets. Using such grossly inadequate facilities for long periods of time is itself problematic because they are

WAGNER 000097

- 20 -

unhygienic.  Moreover, when we tested some of the drains, they
back-flushed into the cells.  Elsewhere throughout the Jail, we
found drains clogged with significant accumulations of debris.

    2.  <u>Fire Safety</u>

The Jail is a modern facility with a number of fire safety
features, such as alarm systems and fire suppression equipment.
The main problem with the Jail's fire safety program is that
staff training and oversight appear to be inadequate.  During our
site inspection, we found inadequate numbers of personnel trained
to perform emergency tasks.  The Jail has a level of constant
staff turnover that makes it difficult to ensure that there are
fully trained staff on duty in the housing units.  As a result,
when we randomly questioned staff about emergency procedures, we
found that a number of them did not know how to use emergency
equipment or how to respond during a drill.  We also discovered
inconsistencies in safety documentation that further suggest a
lack of staff training.  Finally, we found that the Jail staff
did not have adequate access to emergency keys in the event of a
failure in the Jail's electronic door control system.
Commendably, the Sheriff's Department immediately took a number
of steps to address our fire safety concerns.  Importantly, these
efforts should be incorporated into ongoing, system-wide safety
reviews.

**IV.  RECOMMENDED REMEDIAL MEASURES**

In order to address the constitutional deficiencies
identified above and protect the constitutional rights of
detainees, the Jail should implement, at a minimum, the following
measures in accordance with generally accepted professional
standards of correctional practice:

A.  <u>Medical care</u>

1.  The Jail should develop a chronic care program consistent
    with generally accepted correctional medical standards.
    This program should include a process that will identify
    detainees who should be enrolled in a chronic care program;
    a roster of detainees enrolled in the program; a schedule of
    medical visits for each detainee enrolled in the program; a
    system for determining which diagnostic tests will be
    required for each chronic condition; and record-keeping
    which includes documentation of lab work and medical orders.

2.  The Jail should update and improve the medical and mental
    health quality assurance and training programs to ensure

WAGNER 000098

- 21 -

compliance with generally accepted correctional medical standards.  These improvements should include additional internal self-auditing to ensure that staff conduct appropriate assessments, provide timely treatment, and document care in a manner consistent with generally accepted correctional medical standards.

3.    The Jail should develop a system to monitor the effects of medications and to ensure appropriate follow-up for detainees with serious medical or mental health conditions.

4.    The Jail should develop a system to track sick call requests and identify barriers to timely access to medical or mental health care.  Sick call requests need to be triaged by appropriate personnel to ensure appropriate and timely access to medical care.

5.    The Jail should ensure that medical consultation and specialty services receive physician oversight.

6.    The Jail should employ sufficient qualified staff to ensure detainees have adequate access to medical and mental health care.

B.  Mental Health Care

1.    The Jail should create a mental health program that will allow the Jail to identify, treat, and monitor detainees with chronic mental illness.  As part of this development process, responsible Jail personnel may wish to consider evaluating mental health programs in a variety of outside institutions and adopt useful policies and procedures from appropriate models.

2.    The Jail should continue with efforts to assess the mental health caseload in the facility, and develop a variety of housing and treatment options to address the needs of the mentally ill.  This system will need to organize treatment options so that the Jail can deal with those across the entire spectrum of care.  The Jail's mental health treatment policies need to meet generally accepted standards of correctional health care.  These policies should provide for the development of individual treatment plans and timely access to levels of care appropriate to detainees' mental health needs.  Such care should address detainees who are stable and can be housed in general housing, detainees who are highly unstable and require intensive supervision, detainees who are stable but may require step-down services

WAGNER 000099

- 22 -

before returning to general population, detainees who are actively suicidal, and detainees who are at risk of suicide but may not have expressed an immediate intent to commit suicide.

3.   Restraints should not be used as punishment, for the convenience of staff, or in lieu of treatment.  The Jail should provide a variety of psycho-therapeutic treatment options and adopt appropriate safeguards to avoid the inappropriate use of chemical sedation.

4.   The Jail should implement policies for monitoring detainees at risk of suicide that meet generally accepted correctional mental health standards.  The Jail should retrofit cells used for suicidal detainees or detainees requiring intensive supervision.  The Jail should eliminate fixtures that can be used to facilitate suicide (e.g., exposed bars or bath fixtures) while at the same time avoid creating a non-therapeutic environment (e.g. bare cells or extensive use of isolation for psychotic detainees).

5.   The Jail should include mental health staff and administrators as part of medical quality assurance and other administrative management processes.

C.   Protection from Harm

1.   The Jail should ensure that there are a sufficient number of adequately trained staff on duty to supervise detainees and to respond to serious incidents.

2.   The Jail should prohibit the use of chokeholds and hogtying.

3.   The Jail should increase video surveillance in critical housing areas and alter staffing patterns to provide additional direct supervision of housing units.

4.   The Jail should develop and implement policies and procedures to improve control over razors or other dangerous items.

5.   The Jail should develop and implement additional policies and procedures for the investigation of serious incidents, including excessive use of force and detainee-on-detainee violence.  These policies and procedures should include administrative responses to violence and a detainee disciplinary process conducted in a confidential manner. They should also include routine interview and document

WAGNER 000100

- 23 -

collection procedures that will allow investigators to complete their inquiries in an objective manner consistent with generally accepted correctional standards.

6.   The Jail should alter its procedures for cell extractions and other use of force situations to ensure that staff are utilizing appropriate force techniques.  Such alterations should include routine videotaping of planned use of force.

D.   <u>Sanitation and Life Safety</u>

1.   The Jail should develop and implement a long-term plan for addressing Jail crowding and population growth.

2.   The Jail should develop and implement policies and procedures to improve detainee hygiene to a level consistent with generally accepted health standards.  The Jail should specifically improve laundry practices and facilities to ensure that the Jail can adequately wash and sanitize detainee laundry.  The Jail should also maintain, at all times, a sufficient supply of sanitary bedding, linen, clothing, razors, and other hygiene materials.

3.   The Jail should increase staff training to ensure that staff is prepared to implement emergency procedures and operate emergency equipment the event of an emergency.  Jail supervisors shall periodically test and drill staff on their knowledge of emergency procedures, and provide corrective instruction as part of a Jail-wide safety program.  The Jail should continue with its ongoing effort to develop a qualified Jail safety team to help conduct staff training and oversee facility safety programs.

*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

Please note that this findings letter is a public document. It will be posted on the Civil Rights Division's website.  While we will provide a copy of this letter to any individual or entity upon request, as a matter of courtesy, we will not post this letter on the Civil Rights Division's website until ten calendar days from the date of this letter.

We hope to continue working with the County in an amicable and cooperative fashion to resolve our outstanding concerns regarding the Jail.  Since we toured, the County has reported that it has adopted a number of improvements, many of which appear to be designed to address issues raised during our exit interviews.  We appreciate the County's pro-active efforts.

- 24 -

Assuming there is continued cooperation from the County and the Jail, we would be willing to send our consultants' reports under separate cover.  These reports are not public documents.  Although the consultants' evaluations and work do not necessarily reflect the official conclusions of the Department of Justice, their observations, analysis, and recommendations provide further elaboration of the issues discussed in this letter and offer practical technical assistance in addressing them.

We are obligated to advise you that, in the event that we are unable to reach a resolution regarding our concerns, the Attorney General may initiate a lawsuit pursuant to CRIPA to correct deficiencies of the kind identified in this letter 49 days after appropriate officials have been notified of them.  42 U.S.C. § 1997b(a)(1).

We would prefer, however, to resolve this matter by working cooperatively with you and are confident that we will be able to do so in this case.  The lawyers assigned to this investigation will be contacting the County's attorney to discuss this matter in further detail.  If you have any questions regarding this letter, please contact Shanetta Y. Cutlar, Chief of the Civil Rights Division's Special Litigation Section, at (202) 514-0195.

Sincerely,


/s/ Loretta King

Loretta King
Acting Assistant Attorney General

cc:  Vince Ryan, Esq.
     Harris County Attorney

     Adrian Garcia
     Sheriff
     Harris County

     The Honorable Tim Johnson, Esq.
     United States Attorney
     Southern District of Texas

WAGNER 000102