IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OCTEVIA WAGNER, ET. AL.<br>　　　Plaintiffs | §<br>§<br>§<br>§ | |
| v. | §<br>§ | |
| HARRIS COUNTY, TEXAS<br>　　　Defendant | §<br>§<br>§ | Civil Action No. 4:23-CV-02886 |
| AND | §<br>§ | |
| ANA GARCIA AND CHANDRA JENKINS,<br>　　　Plaintiff – Intervenors | §<br>§ | |

**DEFENDANT HARRIS COUNTY'S RULE 56 CELOTEX
MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEVER
CLAIMS BY KRISTAN NICOLE SMITH [SPN 01897814]
INCLUDING DERIVATIVE CLAIMS BY STATUTORY BENEFICIARIES**

=====================================================================

MAY IT PLEASE THE COURT:

　　NOW COMES DEFENDANT, HARRIS COUNTY, TEXAS, and files this Rule 56 Motion for Summary Judgment against the claims brought by the Estate of Plaintiff KRISTAN NICOLE SMITH (hereafter "KNS") by Deborah Smith, Individually and as next friend of K.S. and K.W. minors, heirs, and representative of the Estate of Kristan Nicole Smith.

## I. TABLE OF CONTENTS

I. TABLE OF CONTENTS ................................................................................................. 1

II. NATURE OF THE CASE ............................................................................................... 2

III. DISPOSITIVE MSJ AS PER CELOTEX ....................................................................... 2

IV. OVERVIEW OF MSJ EXHIBITS .................................................................................. 3

V. CHRONOLOGY OF MATERIAL EVENTS ................................................................. 4

　A.　Overview of KNS Jail Stay Generally ................................................................... 4

　B.　The Medical Emergency of January 31, 2023. ...................................................... 4

　C.　Post Mortem Reports and Investigations ............................................................... 4

VI. SUMMARY OF THE ARGUMENT* ............................................................................ 5

VII. ARGUMENTS AND AUTHORITIES ................................................................................ 5

    A.    KNS Was At All Times In The Lawful Custody Of The Harris County Jail Facility. ................................................................................................................. 5

    B.    Plaintiff Must Demonstrate the Existence of a Constitutional Injury. ................ 6

    C.    There Is No Evidence The KNS Was Denied Medical Care During Her Stay In The Harris County Jail. .......................................................................... 6

    D.    There is No Evidence of Policy Violations by Any Jail Staff. .......................... 9

    E.    KNS Does Not State A Claim For Relief Under Section 1983, Under Either A Conditions Of Confinement Theory Or An Episodic Acts Theory Because There Are No Facts That Support Either Theory. ................................ 9

    F.    The Legal Standard for a Conditions of Confinement Claim Generally. ......... 10

    G.    The Legal Standard for Episodic Acts or Omissions Claim Generally ............ 11

VIII. MOTION TO DISMISS STATUTORY BENEFICIARY CLAIMS ................................. 13

    A.    If The Claims By The Estate Fail Then The Derivative Claims By The Statutory Beneficiaries Must Also Be Dismissed. ............................................. 13

IX. MOTION TO SEVER ........................................................................................................ 14

X. CONCLUSION & PRAYER ............................................................................................... 14

=========================================

## II. NATURE OF THE CASE

1. This is a Section 1983 civil rights case brought by and on behalf of former Harris County Jail inmate, KNS [SPN 01897814].

2. This dispositive motion is directed at the claims brought on behalf of the Estate of Inmate Kristan Nicole Smith, who was a pretrial detainee in the Harris County Jail from 4/29/2022 until her death on 5/29/2022. *See Exh. 1.C – Housing History Report.*

3. The wrongful death claims by the statutory heir are derivative of any claims that the Estate of KNS may have and if the claims by the estate fail, so do the derivative claims by the statutory heir.

## III. DISPOSITIVE MSJ AS PER CELOTEX

4. The dispositive motion is brought as a "no evidence" Rule 56 Motion for Summary Judgement under the authority of *Celotex Corp. v Catrett,* 477 U.S. 317, 322-323 (1986) (failure of non-movant to establish any essential element of a claim defeats the claim as a matter of law).

5. Under *Celotex* a moving party who does not bear the burden of proof may move for summary judgment by pointing out that there is "no evidence" to support one or more elements

of the non-movant's claim. *See FRCP Rule 56(a); see also Austin v Kroger Texas, L.P.,* 864 F.3d 326, 335 & n.10 (5th Cir. 2017); *followed in Nieto v State Farm,* 722 F.Supp. 653 (S.D. Tex. – Brownsville Div. 2024).

6. To demonstrate the lack of evidence, the moving party without the burden of proof may demonstrate the lack of proof by submitting evidentiary proof in the form of documents, affidavits, deposition testimony in support of the Rule 56(a) argument that the plaintiff (i.e., the nonmoving party with the burden of proof) cannot, as a matter of law, provide evidence to satisfy each element of the claims asserted. *Nieto*, 722 F.Supp. at 657.

7. The burden of production then shifts to the non-moving party, that is, the party with the burden of proof, to demonstrate that there is sufficient evidence as to each element of an alleged claim to, at a minimum, create a material issue of fact for a jury. *Id.; Celotex Corp. v Catrett,* 477 U.S. at 322-323.

## IV. OVERVIEW OF MSJ EXHIBITS

8. For ease of reference, an extract of the relevant portions of Plaintiff's live complaint is attached as an opening exhibit. *See Exh. I – Second Amended Complaint at pp. 36-37; paras. 137 - 144*. DEFENDANT requests that the Court take judicial notice of Plaintiff's pleadings. *See also, Defendant's Original Answer to Plaintiffs' SAC, ECF #123.*

9. In support of this Rule 56(a) Motion, DEFENDANT HARRIS COUNTY tenders the following Exhibits listed in the attached Business Records Statement authenticating the Exhibits in support of this Motion, all of which are hereby incorporated by reference into this Motion. *See Exh. II – Records Authentication Statement.*

10. Next, the Statement by Retired Major Patrick Dougherty provides the Court with a timeline summary of Inmate Kristan Nicole Smith's stay at the Jail for the time period specified above, and relying on the Exhibits in support of the timeline. *See Exh. III – Timeline Summary re KNS.*

11. Next, the Statement by Dr. John G. Mills focuses on the timeline summary pertaining to KNS's medical care during her stay at the Jail. *See Exh. IV – Medical Timeline Summary re KNS.*

12. The foregoing documentary exhibits are all documents produced in disclosures and in written discovery requests and are bates labeled and numbered to identify which Plaintiff Inmate to which they pertain.

13. Further, because the Exhibits were all produced under a Confidentiality Order previously entered by the Court (*See ECF #80 – Confidentiality & Protective Order*), the Exhibits listed have all been designated as "Confidential" and are therefore filed under restriction, thereby limiting access to these filings to the attorneys of record in this case.

## V. CHRONOLOGY OF MATERIAL EVENTS

### A.  Overview of KNS Jail Stay Generally

14. An overview of KNS's jail stay reflects that she was booked into the Harris County Jail on 4/27/2022. She was found unresponsive in her cell in JA09 4E2B in the morning of 5/20/2022 and transported to the hospital on the same day. She was pronounced dead on 5/28/2022. *See Exh. III – Timeline Summary.*

15. During the brief period she was at the jail facility, KNS made a number of Inmate requests, a number of which were medically related. *See Exh. III – Timeline; see also Exh. IV – Medical Timeline; see also Exh. 2.F – Inmate Medical Requests.*

16. A detailed review and comparison of the Inmate Requests with the medical records maintained by the HCSO reflects that KNS received medical attention from nursing staff at the clinic within the Jail facility. *See Exh. IV – Medical Timeline; see also Exh. 2.E – HCSO Medical Records.*

### B.  The Medical Emergency of January 31, 2023.

17. KNS's medical emergency manifested itself on 5/20/2022. It was brought to the attention of the Jail Guards by other Inmates in the Pod. *See Exh. 1.F – OMS Reports.*

18. KNS was transported to Ben Taub Hospital by HFD EMS personnel on the same morning. *See Exh. 2.B – HFD EMS Transport Records.*

19. KNS expired at Ben Taub Hospital. Autopsy records determined the Cause of Death to be "Systemic candidiasis complicating diabetes mellitus" and the Manner of Death to be "Natural." *See Exh. 2.D – Autopsy Report ML22-2278 (5/31/2022).*

### C.  Post Mortem Reports and Investigations

20. As required by law, the HCSO filed a custodial death report with the TCJS. *See Exh. 1.G – Custodial Death Report.*

21. The custodial death was also referred out for criminal investigation by an outside law enforcement agency, here the Houston Police Department. *See Exhs. 4.A to 4.D – HPD Case No. 0711651-22 (extracts).* A complete copy of the investigative packet sent to HPD and a copy of the HPD Investigative materials were produced in discovery via defense counsel's Sharefile portal.

22. HPD conducted a criminal investigation. *See 4.C Case Synopsis; see also Exh. 4.C – HPD SIU Investigation.*

23. The Harris County DA, after receipt and review of the file, administratively closed it. *See Exh. 4.D – DA Administrative Closure Notification.*

## VI. SUMMARY OF THE ARGUMENT*

24. DEFENDANT HARRIS COUNTY contends that the evidentiary record does not, and cannot, support a factual or legal finding that KNS suffered a constitutional injury during her stay in the Harris County Jail. The evidentiary record does not support the pleadings, which are grossly over-stated.

25. A review of the Section 1983 claims typically brought by plaintiffs in a custodial setting measured against the factual backdrop presented here demonstrates that there is no viable Section 1983 claim here that presents, at a minimum, a viable jury claim. Hence, the constitutional claims fail as a matter of law, and the case should be dismissed with prejudice.

26. Not addressed in this MSJ is the ADA and Rehab Act causes of action, which the Court has already dismissed in a prior ruling in this Cause. See ECF #51 – Memorandum & Order at pp. 31 – 34 (dismissing ADA claims).

## VII. ARGUMENTS AND AUTHORITIES

**A. KNS Was At All Times In The Lawful Custody Of The Harris County Jail Facility.**

27. KNS was at all times in lawful custody of the Harris County Jail Facility.

28. KNS does not contest the lawfulness of his arrest or of her custodial status. So, the issue presented here is strictly limited to the alleged constitutionally insufficient provision of medical care.

**B.     Plaintiff Must Demonstrate the Existence of a Constitutional Injury.**

29.     The first question in this analysis is whether KNS suffered a constitutional injury. *See Baker v McCollan,* 443 U.S. 137, 140 (1979) (first inquiry in a Section 1983 case is always whether the plaintiff was deprived of a right secured by the Constitution).

30.     Although it is true that prison officials must take reasonable measures to assure the safety of inmates – *see Farmer v Brennan*, 511 U.S. 825, 838 (1994) – a necessary element of that duty request that the risk of harm to an inmate must be reasonably foreseeable.

31.     Moreover, to establish *Monell* liability, a plaintiff must show that the prison official was deliberately indifferent to the risk of serious harm. 511 U.S. at 832.

**C.     There Is "No Evidence" That KNS Was Denied Medical Care During Her Stay In The Harris County Jail.**

32.     DEFENDANT does not dispute that under Section 1983, a person in jail custody has a constitutional right of access to reasonable medical care. *See Ford v Anderson County, 102 F.4th 292, 307 (5th Cir. 2024)* (discussing scope of constitutional right to medical care under both 8th and 14th Amendments).

33.     A review of the records reveals that KNS received medical care when asked for and that the Jail Administration responded appropriately to her medical needs. *[Exh. IV. Mills Medical Summary; see also Exh. 2.C – Medical Records JR 000031 – 000297].*

34.     A more detailed review of KNS' request for medical care reflects the following comparative chronology:

| Date Time | Inmate Med Related Requests Exhibit 2.F | Medical Records Timeline [Exh. IV – Dr. Mills Summary] |
|---|---|---|
| 4/29/2022 | | Chart was reviewed by Ilomuanya, MD and GERD was added to the list of diagnoses. 14 units of long acting ordered and given now (Page 108). 6 units of short acting given. **[Exh 2.C, p. 00138]** <br><br> Patient sent to the emergency room for "HI" reading on glucose monitor and to rule out diabetic ketoacidosis (DKA) (page 179). **[Exh 2.C, p. 00209]** |

| | | |
|---|---|---|
| 4/30/2022 at 5:03 | Re COVID 19 Nasal Swab test **[Exh. 2.F, p. OR 000046]** | Patient given 14 Units of long-acting insulin and 7 Units of short acting insulin. Patient started on levothyroxine 112 mcg and atorvastatin 20 mg.<br><br>Patient seen as a Hospital return. 5 units ordered twice daily (pages 111-112). **[Exh 2.C, p. 00141 - 142]** |
| 5/4/2022 at 08.26<br><br>5/4/2022 at 8.42 | Re Medical Request re no insulin received **[Exh. 2.F, p. OR 000042]**<br><br>Re Mental Health Request. States anxiety medication not administered. **[Exh. 2.F, p. OR 000044]** | |
| 5/6/2022 at 22:33<br><br>5/6/2022 at 22:38 | Re Mental Health Request re hydroxine medication. **[Exh. 2.F, p. OR 000052]**<br><br>Re Medical. Inquiring about next doctor appt. **[Exh. 2.F, p. OR 000055]** | Patient treated for low blood sugar. Glucagon 1 mg given. 1000 ml of ns given. Dextrose 50% 25 ml given (Page 107). **[Exh 2.C, p. 00137]**<br><br>Patient sent to outside dermatology appointment. May 8, 2022 – Long-acting insulin 14 units given (page 108). **[Exh 2.C, p. 00138]** |
| 5/8/2022 At 04:06 | | Patient e-signed Refusal of Medical Treatment form at 04:06 AM (page 266). **[Exh 2.C, p. 00296]** |
| 5/9/2022 At 04:26 | | Patient e-signed Refusal of Medical Treatment form at 04:26 AM: Refused insulin lantus 14 units and regular 5 units. (page 264). **[Exh 2.C, p. 00294]** |
| 5/9/2022 At 09:00 | | Long-acting insulin 14 units ordered. Medication record reflects patient "refused" insulin (page 108). **[Exh 2.C, p. 00138]** |
| 5/10/2022 at 14:51 | Re Grievance Board. Complaint re sleeping on floor. Advises she is diabetic with neuropathy. States can hardly get up for insulin shots. Requests pod with bed. **[Exh. 2.F, p. OR 000058]** | Long-acting insulin 14 units ordered. Medication record reflects "no show" by patient. (page 108). **[Exh 2.C, p. 00138]** |

| Date | Complaint | Response |
|---|---|---|
| 5/12/2022 at 10:25 | Re Medical. Stomach hurts. Sugar is high. Has diarrhea. Requests appointment.<br>**[Exh. 2.F, p. OR 000063]** | Patient seen in Medical Clinic following return from the hospital. Patients medications reordered. Patient seen by Nurse Practitioner Onsongo. 5 units of short acting insulin given (pages 111-112)). 16 Units of long-acting insulin given (page 110). **[Exh 2.C, p. 00140]** |
| 5/13/2022 at 10:47 | Re Mental Health. Complaining about not getting anxiety medication. Requests appointment.<br>**[Exh. 2.F, p. OR 000064]** | 8 units of short acting given in AM and PM. Long-acting insulin i6 units daily ordered (page 116). **[Exh 2.C, p. 00146]** |
| 5/14/2022 at 11:37<br><br>5/14/2022 at 13:54 | Re Medical. Advises she has diarrhea for 3 days. Claims she has not received medication.<br>[Exh. 2.F, p. OR 000069]<br><br>Same complaint as above.<br>**[Exh. 2.F, p. OR 000072]** | Patient received 8 units of short acting insulin in AM and PM (page 116). **[Exh 2.C, p. 00146]** |
| 5/15/2022 at 09:25 | Re Medical. Diarrhea for 4 days. Says doctor prescribed Imodium but that she has not got it.<br>**[Exh. 2.F, p. OR 000073]** | Patient e-signed Refusal of Medical Treatment form at 03:33 AM (page 262). **[Exh 2.C, p. 00292]**<br><br>Patient received 8 units od short acting insulin in AM and PM (page 116). **[Exh 2.C, p. 00146]** |
| 5/16/2022 at 10:43 | Re Medical. Advises feet swollen and gabapentin mediation not working.<br>**[Exh. 2.F, p. OR 000075]** | Patient received 8 units of short acting insulin in AM and PM (page 116). **[Exh 2.C, p. 00146]** |
| 5/17/2022 at 09:15 | Re Medical. Escalated complaint IN CAPS re not receiving medication.<br>**[Exh. 2.F, p. OR 000076]** | Patient received 8 units of short acting insulin in AM and PM (page 116). **[Exh 2.C, p. 00146]** |
| 5/18/2022 | | Patient received 8 units of short acting insulin in AM and PM (page 115). **[Exh 2.C, p. 00145]** |
| 5/19/2022 | | Patient received 8 units of short acting insulin in AM and PM (page 115). **[Exh 2.C, p. 00145]** |
| 05/20/2022 | KNS was found unresponsive in her bunk in JA09 4E2B at approximately 0916 hrs. CPR was initiated, medical responded, HFD responded, KNS was taken to the Hospital.<br>**[Exh. 3.B, p. 000114 - 117]** | Patient received 8 units of short acting insulin in the AM, 0300 (page 115). **[Exh 2.C, p. 00145]** |

| 5/28/2022 | KNS hospitalized at Ben Taub. Declared deceased after eight days. | See Exh. 2.E – HCSO Medical Timeline; **see also Exh. 4.B – HCSO Deputy Hospital Escort Log** |
|---|---|---|

35. The underlying documentation does not reflect or give rise to a viable claim that the Jail Command and Staff were indifferent to KNS's medical needs. There is insufficient evidence to even put this question to a jury.

**D.   There is No Evidence of Policy Violations by Any Jail Staff.**

36. Here, the extant evidence reflects that the jail staff responded to KNS' requests for medical assistance. The side-by-side comparison of KNS' medically related requests and the summary of the medical records was receiving medical care for her diabetic condition.

37. The extant evidence reflects that KNS received an insulin shot in the early morning hours of 5/20/2022. *See Exh. 2.C, p. 000145.* Later that same morning, she was found unresponsive, received emergency care, and was transported to the hospital, where she had already been seen before for her diabetic condition.

38. Unfortunately, KNS' medical condition when she was admitted to the jail was already compromised. After eight days in the hospital, she was declared dead. *See Exh. IV – Mills Summary, p. 3.*

39. The Medical Examiner's report stated that the manner of death was natural, and the cause of death was systemic candidiasis complicating diabetes mellitus. *See Exh. 2.D – Autopsy Report.*

**E.   KNS Does Not State A Claim For Relief Under Section 1983, Under Either A Conditions Of Confinement Theory Or An Episodic Acts Theory Because There Are No Facts That Support Either Theory.**

40. The COUNTY's premise in this dispositive motion is that while KNS may have latitude to "artfully plead" a Section 1983 claim that the Court is bound to accept, there comes a time when a claimant has to demonstrate to the Court that he or she has suffered a constitutional violation.

41. It is an unfortunate reality of federal pleading and proof of practice that even though a Section 1983 plaintiff has the ultimate burden of proof on a Section 1983 claim, it nevertheless falls on the local government defendant, to carry the burden of production to produce records to ground the pleaded claims against the reality of the evidence.

42. In the case of KNS, the record and testimonial evidence does not support that Inmate Kristan Nicole Smith states a claim for relief. To state a claim for relief under Section 1983, an inmate in custody must plead and prove that he suffered a constitutional injury while in custody occasioned by one or more jail guards or, that his conditions of confinement amounted to punishment.

F.  **The Legal Standard for a Conditions of Confinement Claim Generally.**

43. DEFENDANT acknowledges that a pretrial detainee who has not been convicted of a crime has a right under the Fourteenth Amendment to the United States Constitution to be protected from impermissible punishment while in custody such as systematic denial of medical care, systematic use of force, systematic failure to protect from harm, to name the most common Section 1983 claims in a custodial context.

44. To establish liability under a conditions of confinement claim, theory of liability, a plaintiff must plead and prove:

   1.  the existence of an identifiable intended condition, policy, or practice of the jail facility that results in one or more of the recognized individualized causes of action under Section 1983; and,
   2.  that the unconstitutional condition, policy, or practice was not reasonably related to a legitimate governmental objective.

   *See Bell v. Wolfish,* 441 U.S. 520 (1979)*; Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996) (en banc)*; see also Scott v Moore,* 114 F.3d 51 (1997) (en banc)*.*

45. As to the first element, a condition usually results from an explicit policy or restriction. But a pattern may demonstrate an unstated or de facto policy. To show such a policy, Plaintiff KNS must show more than isolated instances of inadequate or even negligent medical care. It is likewise not enough to show that a plaintiff suffered from episodic acts or omissions of jail officials. Instead, a plaintiff must show that the underlying deprivations reflect a system-wide problem that is pervasive.

46. In other words, if a plaintiff urges an act or omission of a particular jail officer/official to prove that the defendant jail facility intended the condition or practice to occur systematically, the act or omission must be the result of an established policy or practice allowing the unconstitutional deprivation to occur with systematic regularity.

47. Individualized examples of illness, injury, or even death, standing alone, cannot prove that an alleged conditions of confinement is constitutionally inadequate. A pre-trial detainee challenging jail conditions must demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs. Any lesser showing cannot prove that the inmate is being punished in violation of the individuals' 14th Amendment due process rights. *See Shepherd v. Dallas County*, 591 F.3d 445, 454 (5th Cir. 2009).

48. To establish the second element and prove that a condition of confinement constituted impermissible punishment, a plaintiff must plead and prove a pervasive pattern of serious deficiencies negatively affecting the individual which is not reasonably related to a legitimate governmental objective.

49. For instance, not every denial or delay of medical care imposed during pretrial detention amounts to "punishment" in the constitutional sense. The effective management of a detention facility is a valid objective that may justify imposing conditions and restrictions. Pretrial detainees are not entitled to the best medical care available or to the level of medical care that may be available to persons who are not detained. But a facility must provide for a detainee's basic human needs.

50. To sustain a claim for unconstitutional "punishment" a detained plaintiff must plead and prove for instance that the level of medical care provided generally at the jail was so inadequate that it resulted in a serious deprivation of his basic human needs, and that the level of care provided was not reasonably related to a legitimate governmental objective. *See Bell v. Wolfish,* 441 U.S. 520 (1979)*; Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996) (en banc)*; see also Scott v Moore,* 114 F.3d 51 (1997) (en banc)*.*

51. Here, a review of the evidentiary record pertaining to the medical care available to KNS demonstrates that KNS had access to medical care and that she received medical care. *See Exh. IV – Medical Summary; see also Exh. 2.C – Medical Records.*

**G.     The Legal Standard for Episodic Acts or Omissions Claim Generally**

52. To establish liability under an episodic act or omission claim, a custodial plaintiff must prove by a preponderance of the evidence that:

   1. the custodial plaintiff suffered an injury of constitutional magnitude
   2. that a custodial officer or employee of the jail facility was subjectively aware that the plaintiff inmate was exposed to a substantial risk of harm and nevertheless acted

          with deliberate indifference to the risk of harm; and,

3.     the harm suffered was proximately caused by the deliberate indifference of one or more custodial employees.

    *Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996) (en banc); *see also Scott v Moore,* 114 F.3d 51 (1997) (en banc).

53.    The first element asks whether a reasonable person would view a plaintiff's risk of harm (likely suicide, likely assault by others, likely need for medical care, etc.) as sufficiently serious based on all of the circumstances that existed. This inquiry asks what a reasonable person would conclude and does not specifically rely upon or consider a custodial employee's state of mind. *Hare,* 74 F.3d at 649; *see also Scott v Moore,* 114 F.3d at 53 (hdn 3) (en banc).

54.    The second element—deliberate indifference—requires proof of egregious conduct. For example, a custodial plaintiff must prove that a custodial employee or employee(s) knew of and nonetheless disregarded an excessive risk to the plaintiff inmate's health or safety. A custodial plaintiff must plead and prove by a preponderance of the evidence that: 1) a custodial employee was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed; and 2) the custodial employee actually drew that inference. An inmate's mere disagreement with the type, amount, or timing of the treatment he receives is not enough to meet this test.

55.    A person acts with subjective deliberate indifference if (1) "he knows that an inmate faces a substantial risk of serious bodily harm," and (2) "he disregards that risk by failing to take reasonable measures to abate it." *See Anderson v. Dallas Cty., Tex.*, 286 Fed.Appx 850, 860 (5th Cir. 2008) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)); *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

56.    The "deliberate indifference" standard is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Board of the County Commissioners of Bryan County, OK v. Brown*, 520 U.S. 397 (1997). Deliberate indifference cannot be inferred from a negligent or grossly negligent response to a substantial risk of harm. *Hare v. City of Corinth,* 74 F.3d 633, 649 (5th Cir. 1996) (en banc).

57.    A custodial county employee must have been aware of a risk of harm and disregarded that risk by failing to take reasonable steps to prevent it. *Hare*, 74 F.3d at 648-49. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount

to deliberate indifference. *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).

58. The relevant inquiry is not the ultimate efficacy of the actions that were taken, nor the number of steps that were taken. *Doe v. Taylor ISD*, 15 F.3d 443, 458 (5th Cir. 1994); *Leffall v. Dallas ISD*, 28 F.3d 521, 531-32 (5th Cir. 1994). Instead, all that is required are good faith measures, any measures, to avert the anticipated harm. *Hare*, 74 F.3d at 649; *Lefall*, 28 F.3d at 531-32; *Taylor ISD*, 15 F.3d at 458.

59. If a plaintiff proves each of the three elements listed above by a preponderance of the evidence, then and only then can a jury verdict sustain a finding that a plaintiff's Fourteenth Amendment rights were violated. If no such showing is made, then the episodic acts claims fail. *See Hare v. City of Corinth*, 74 F.3d 633, 648-50 (5th Cir. 1996) (en banc); and other cases cited.

60. With these legal standards in view, and the actual evidence that exists to prove the allegations pleaded in the live Complaint, it becomes obvious that there is no constitutional tort that has been committed by DEFENDANT HARRIS COUNTY against former Inmate Kristan Nicole Smith.

## VIII. MOTION TO DISMISS STATUTORY BENEFICIARY CLAIMS

**A.   If The Claims By The Estate Fail Then The Derivative Claims By The Statutory Beneficiaries Must Also Be Dismissed.**

61. This dispositive motion is also necessarily leveled against the claims by the statutory beneficiaries in this case, that is, Deborah Smith, Individually and as next friend of K.S. and K.W. minors, heirs, and representative of the Estate of Kristan Nicole Smith.

*62.* The claims by the statutory beneficiaries are derivative of the claims by the decedent's estate, here Kristan Nicole Smith. *See Schaefer v. Gulf Coast Regional Blood Center,* 10 F.3d 327, ___ (1994); *see also Pena v Starr County, Texas,* 2025 WL 2178458 at p. ___ (5th Cir. 2025).

63. In fact, the statute itself specifically provides that an action brought under it may be brought "only if the individual injured would have been entitled to bring the action had the individual lived". *See Section 71.003, Tex. Civ. Prac. & Rem. Code.*

64. As reiterated above, a necessary premise to any claim against the government entity by either the decedent's estate under the survivor cause of action, or by the statutory beneficiary under the wrongful death statute requires a finding that 1) a constitutional violation occurred and

2) a causal connection between the actions of the defendant and the death of the decedent. S*ee Pena v Starr County, Texas,* 2025 WL 2178458 at p. ___(5th Cir. 2025).

65. In the absence of a constitutional violation by defendant against the decedent plaintiff, the claims by the derivative plaintiffs must also be dismissed. *See Estate of King v. Texas Dept of Criminal Justice,* 2023 WL 6370646 (S.D. Tex. – Houston Div. 2023) (not formally but succinctly summarizing basic legal principles).

66. Therefore, if the survival claims brought on behalf of the estate fail then the derivative wrongful death claims by the statutory beneficiaries must also be dismissed.

## IX. MOTION TO SEVER

67. Given that the claims brought by Plaintiff Kristan Nicole Smith stand on their own facts, none of which has evidentiary support for a Section 1983 claim and which are factually distinct from the claims of the remaining Plaintiffs, DEFENDANT HARRIS COUNTY hereby further request that this claim be severed from the cause of action to which it joined so that the Court's ruling with this particular claim becomes and final appealable Order.

## X. CONCLUSION & PRAYER

WHEREFORE, in view of the foregoing evidence, arguments, and authorities, DEFENDANT HARRIS COUNTY requests and prays that the Court, after duly considering the content of this dispositive motion, including attached exhibits, and any responses, replies, or supplements thereto, grant this Motion for DEFENDANT HARRIS COUNTY against the claims and causes of action brought by Plaintiff Kristan Nicole Smith, and DISMISS his claims and causes of action with prejudice.

Further, the claims brought by Plaintiff Deborah Smith, Individually and as next friend of K.S. and K.W. minors, heirs and representative of the Estate of Kristan Nicole Smith must also be dismissed with prejudice.

DEFENDANT further requests and prays that the Court sever this claim from the remainder of the case, thereby rendering its Order on this dispositive Motion to be a final and appealable Order and Judgment of the Court as to the claims by Plaintiff Kristan Nicole Smith and by those by Deborah Smith, Individually and as next friend of K.S. and K.W. minors, heirs and representative of the Estate of Kristan Nicole Smith.

SIGNED on the 29th day of DECEMBER 2025.

                        Respectfully submitted,

By: *Ricardo J. Navarro*
RICARDO J. NAVARRO
Attorney In Charge
State Bar No. 14829100
So. Dist. Id No. 5953
rjnavarro@rampagelaw.com
Kelly R. Albin
State Bar No. 24086079
So. Dist. ID No. 3792304

**DENTON NAVARRO RODRIGUEZ
  BERNAL SANTEE & ZECH**
A Professional Corporation
549 N. Egret Bay, Suite 200
League City, Texas 77573
Tel. 832.632.2102
Fax 832-632-2132

**COUNSEL FOR DEFENDANT
HARRIS COUNTY, TEXAS**

## CERTIFICATE OF SERVICE

    I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process referenced in the Federal Rules of Civil Procedure on all attorneys of record in this case on the 29th day of DECEMBER 2025, to wit:

| | |
|---|---|
| Aaron Dekle | Email: aaron@bencrump.com |
| Paul Ashley Grinke | Email: paul@bencrump.com |
| BEN CRUMP LAW FIRM | |
| ATTORNEYS FOR PLAINTIFFS | |
| | |
| Carl Lenford Evans, Jr. | Email: cevans@mccathernlaw.com |
| Noah L. McCathern | Email: nmccathern@mccathernlaw.com |
| Jordan A. Carter | Email: jcarter@mccathernlaw.com |
| MCCATHERN LAW FIRM | |
| ATTORNEYS FOR PLAINTIFFS | |
| | |
| Mohammed Obaid Shariff | Email: mshariff@sharifflawfirm.com; |
| Byron Boenig | Email: bboenig@shariffawafirm.com |
| Shariff Law Firm | Email: eservice@sharifflwfirm.com |
| SHARIFF LAW FIRM | |
| ATTORNEY FOR INTERVENOR ANA GARCIA & KEVIN SANCHEZ TREJO | |
| | |
| Taylor McCray Hunter | Email: taylor@thehunterlaw.com |
| Kevin Green | Email: kevin@consumerjusticecenter.com |
| Thomas Lyons Jr. | Email: tommy@consumerjusticecenter.com |
| Andi Weber | Email: andi@consumerjusticecenter.com |
| ATTORNEY FOR INTERVENOR CHANDRA JENKINS & KNS | |

                                              *Ricardo J. Navarro*
                                              RICARDO J. NAVARRO
                                              KELLY R. ALBIN