# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| OCTEVIA WAGNER, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:23-CV-02886 |
| | § | |
| HARRIS COUNTY, TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

---

## PLAINTIFF ZACHERY KEHJ JOHNSON'S RESPONSE TO HARRIS COUNTY'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEVER CLAIMS

---

**Paul A. Grinke**
State Bar No. 24032255
paul@bencrump.com
**Aaron Dekle**
State Bar No. 24100961
aaron@bencrump.com
BEN CRUMP LAW, PLLC
5 Cowboys Way, Ste. 300
Frisco, Texas 75034
(972) 942-0494 – Office
(800) 770-3444 – Facsimile

**Carl L. Evans**
State Bar No. 24056989
cevans@mccathernlaw.com
**Jordan A. Carter**
State Bar No. 24116174
jcarter@mccathernlaw.com
**Noah McCathern**
State Bar No.24118035
nmccathern@mccathernlaw.com
MCCATHERN PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219
(214) 532-2060 – Office

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD &
SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000 - Office
(214) 946-8433 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................... iii

Table of Exhibits ........................................................................................................... vii

I.      Introduction .......................................................................................................... 1

II.     Evidence & Exhibits ........................................................................................... 3

III.    Factual Background ............................................................................................ 3

IV.     Argument and Authorities ............................................................................... 8

        A.      Summary Judgment Standard ............................................................. 8

        B.      There is a genuine issue of material fact regarding ZKJ's
                conditional of confinement claim ................................................... 10

                1.      A genuine issue of material fact exists regarding ZKJ's
                        conditions of confinement claim as it relates to Harris
                        County's failure to protect him from other detainees ...................... 12

                2.      The use of excessive force against ZKJ by the Harris
                        County detention officers was an identifiable
                        condition of his confinement that served no
                        constitutional purpose ................................................................ 18

                3.      The failure to provide adequate medical care was an
                        identifiable condition of ZKJ's confinement that
                        served no legitimate government objective ...................................... 19

        C.      There is a genuine issue of material fact regarding Johnson's
                episodic acts claim ............................................................................. 21

        D.      The County can still be liable under *Monell* even if its
                employees are found to have not violated the Plaintiffs'
                constitutional rights ......................................................................... 23

V.      Conclusion & Prayer ....................................................................................... 25

Certificate of Service ................................................................................................. 27

Unsworn Declaration ................................................................................................. 27

## TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.,*
   699 F.3d 832 (5th Cir. 2012) ........................................................................................9

*Alberti v. Klevenhagen,*
   790 F.2d 1220 (5th Cir. 1986) ...........................................................................14, 15

*Alvarez v. City of Brownsville,*
   904 F.3d 382 (5th Cir. 2018) ......................................................................................11

*Anderson v. City of Atlanta,*
   778 F.2d 678 (11th Cir. 1985) ...................................................................................25

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ...............................................................................................8, 9

*Arrington-Bey v. City of Bedford Heights,*
   858 F.3d 988 (6th Cir. 2017), *cert. denied,* 138 S. Ct. 738 (2018) .................................23, 24

*Barrett v. Orange County Human Rights Com'n,*
   194 F.3d 341 (2d Cir. 1999) ......................................................................................24

*BB Energy LP v. Devon Energy Prod. Co. LP,*
   No. 3:07-CV-0723-O, 2008 WL 2164583 (N.D. Tex. May 23, 2008) ...................................9

*Bd. of Cnty. Com'rs of Bryan Cnty., Ok. v. Brown,*
   520 U.S. 397 (1997) ..................................................................................................23

*Bell v. Wolfish,*
   441 U.S. 520 (1976) ..................................................................................................12

*Blackmore v. Kalamazoo County,*
   390 F.3d 890 (6th Cir. 2004) .....................................................................................25

*Bolton v. City of Dallas, Tex.,*
   541 F.3d 545 (5th Cir. 2008) (per curiam) .................................................................21

*Cardner v. Home Depot U.S.A., Inc.,*
   561 F. Supp. 2d 640 (E.D. Tex. 2006) .........................................................................9

*City of Canton, Ohio v. Harris,*
   489 U.S. 378 (1989) ..................................................................................................22

# TABLE OF AUTHORITIES [cont'd]

**Cases**                                                                 **Page(s)**

*Duvall v. Dallas Cnty., Tex.*,
    631 F.3d 203 (5th Cir. 2011) ................................................................12

*Dyer v. Houston*,
    964 F.3d 374 (5th Cir. 2020) ................................................................9

*Easter v. Powell*,
    467 F.3d 459 (5th Cir. 2006) ................................................................19

*Fairley v. Luman*,
    281 F.3d 913 (9th Cir. 2002) ................................................................25

*Farmer v. Brennan*,
    511 U.S. 825 (1994) ................................................................13, 14

*Garcia v. Salt Lake County*,
    768 F.2d 303 (10th Cir. 1985) ................................................................24

*Garner v. Memphis Police Dep't*,
    8 F.3d 358 (6th Cir. 1993) ................................................................23, 24

*Garza v. City of Donna*,
    922 F.3d 626 (5th Cir. 2019) ................................................................11, 21, 22

*Gomez v. Galman*,
    18 F.4th 769 (5th Cir. 2021) (per curiam) ................................................................10

*Hare v. City of Corinth, Miss.*,
    74 F.3d 633 (5th Cir. 1996) ................................................................11, 12, 13

*Haverda v. Hays County*,
    723 F.3d 586 (5th Cir. 2013) ................................................................8

*Estate of Henson*,
    795 F.3d at 463 ................................................................21

*Hinojosa v. Livingston*,
    807 F.3d 657 (5th Cir. 2015) ................................................................14

*Horton v. Cockrell*,
    70 F.3d 397 (5th Cir. 1995) ................................................................12

## TABLE OF AUTHORITIES [cont'd]

**Cases**                                                                     **Page(s)**

*Hovis v. Wichita Cnty., Tex.,*
No. 3:23-CV-2220-L, 2024 WL 3836559 (N.D. Tex. July 31, 2024)...................................24

*James v. Harris County,*
577 F.3d 612 (5th Cir. 2009) ................................................................................21

*Longoria v. Texas,*
473 F.3d 586 (5th Cir. 2006) ................................................................................12

*Monell v. Dep't of Soc. Servs. of the City of New York,*
436 U.S. 658 (1978).......................................................................10, 11, 21, 23, 25

*Oliver v. Gusman,*
611 F. Supp. 3d 290 (E.D. La. 2020) .............................................................13, 14

*Pembaur v. City of Cincinnati,*
475 U.S. 469 (1986).......................................................................................22, 23

*Rivas v. Freeman,*
940 F.2d 1491 (11th Cir. 1991) ..........................................................................25

*Rogers v. Boatright,*
709 F.3d 403 (5th Cir. 2013) ...............................................................................19

*Royal Surplus Lines Insurance Company v. Brownsville Independent School
District,*
404 F. Supp. 2d 942 (S.D. Tex. 2005) ..................................................................9

*Scott v. Moore,*
114 F.3d 51 (5th Cir. 1997) ...........................................................................11, 12

*Shepherd v. Dallas Cnty.,*
591 F.3d 445 (5th Cir. 2009) .........................................................................11, 21

*Sims v. City of Jasper, Tex.,*
543 F. Supp. 3d 428 (E.D. Tex. 2021) .................................................................24

*Taylor v. Dolgencorp of Texas, Inc.,*
No. 6:18-CV-00179-ADA, 2020 WL 1902540 (W.D. Tex. Jan. 7, 2020)..............................9

*Thomas v. Cook Cnty. Sheriff's Dep't,*
604 F.3d 293 (7th Cir. 2010) ...............................................................................24

## TABLE OF AUTHORITIES [cont'd]

**Cases**                                                                            **Page(s)**

*Triple Tee Golf, Inc. v. Nike, Inc.,*
    485 F.3d 253 (5th Cir. 2007) ...................................................................................9

*United States v. Hinds Cnty. Bd. of Supervisors,*
    128 F.4th 616 (5th 2024) ..........................................................................6, 14, 15

*Walker v. Sears, Roebuck & Co.,*
    853 F.2d 355 (5th Cir. 1988) ...................................................................................8

*Webster v. City of Houston,*
    735 F.2d 838 (5th Cir. 1984) .................................................................................10

*West v. Atkins,*
    487 U.S. 42 (1988)...................................................................................................10

## Other Authorities

U.S. Const. amend XIV .................................................................................................10

Fed. R. Civ. P. 56(a).................................................................................3, 8, 18, 25

## TABLE OF EXHIBITS

Plaintiffs are providing an Omnibus Exhibit List due to the overlapping and intertwined nature of the claims and evidence for the various Motions for Summary Judgment. Plaintiffs incorporate each of these exhibits into the body of the Response as if fully set forth therein. Due to the exhibit size, Plaintiffs will attach an exhibit cover sheet with a link to the exhibits on a share file or similar device that will allow the Court and the parties to access the exhibits.

General

1. DOJ 2009 Report (Wagner 79-102)

2. TCJS Report May 2013-2017 (Wagner 103-183)

3. TCJS Report Dec 2017 (Wagner 184-186)

4. TCJS Report Aug 2018 (Wagner 187-189)

5. TCJS Report Dec 2020 (Wagner 201-207)

6. TCJS Report April 2021 (Wagner 208-210)

7. TCJS Report Nov 2021 (Wagner 211-217)

8. TCJS Report Sept. 2022 (Wagner 224-228)

9. TCJS Report Dec 2022 (Wagner 229-231)

10. TCJS Report April 2023 (Wagner 237-239)

11. TCJS Report Feb. 2023 (Wagner 240-248)

12. TCJS Report Aug. 23, 2023 (Wagner 249-251)

13. TCJS Report Aug 2023 (Wagner 252-261)

14. TCJS Report Feb 2024 (Wagner 263-268)

15. TCJS Report May 23 Remedial Order (Wagner 3246-3247)

16. TCJS Report May 2024 Amend Remedial Order (Wagner 3248-3250)

17. TCJS Report Jan. 2025

18. Harris County Comm. To TCJS Death In Custody (Observation)

19. TCJS Report May 6, 2025

20. TCJS Harris County Second Remedial Order

21. TCJS Report June 2025

22. Harris County's Updated 2024 UOF Policy

23. Eric Morales Personnel File and Investigation

24. KHOU Struck Documentary (Video)

25. KHOU Struck Article

26. TCJS SIR Total Count Files (Compiled)

27. KHOU UOF Incident Report Examples (Compiled)

28. SIR UOF Examples (Compiled)

29. SIR Assault Examples (Compiled)

30. KHOU Assault Examples (Compiled)

31. John Coote Assault Video

32. John Coote Assault Incident Report

33. Evan Lee Assault Texas Rangers Report

34. Zachary Zepeda Assault Video

35. Zachary Zepeda Assault Incident Report

36. Michael Griego Texas Ranger Report and Autopsy Report (Compiled)

37. Kenneth Richard Assault Incident Report

38. Jaquez Moore Assault Incident Report

39. Fred Harris Assault Video

40. Fred Harris Assault Incident Report

41. Rory Ward Assault Investigation Summary and Autopsy Report (Compiled)

42. Kareem Jefferson Assault Incident Report

43. Rory Ward Observation Round Videos Examples

44. Matthew Shelton Observation Round Videos Examples

45. Jacoby Pillow UOF Video

46. Jeremy Garrison UOF Videos and Incident Reports

47. John Coote UOF Video

48. Lenard Vare CV

49. Dr. David Mathis CV

50. Dr. Victor Weedn CV

51. Dr. Vinneth Carvalho CV

52. Officer Mark Garcia Deposition Transcript

53. Officer Mark Garcia Pews Report

54. Officer Mark Garcia Incident History Report

55. Officer Maxim Herman Deposition Transcript

56. Officer Maxim Herman Pews Report

57. Officer Maxim Herman Incident History Report

58. Officer Jin DeGuzman Deposition Transcript

59. Officer Jin DeGuzman Pews Report

60. Officer Jin DeGuzman Incident History Report

Lockhart

61. Lenard Vare Expert Report

62. Dr. David Mathis Expert Report

63. UOF Incident Report (Lockhart)

64. IAD Grievance (Lockhart)

65. Surveillance Footage Inside Pod (Lockhart)

66. Surveillance Footage Outside Pod UOF (Lockhart)

67. Surveillance Footage Entering Hallway (Lockhart)

68. Surveillance Footage Running Down Hallway (Lockhart)

69. Officer Alex Conrad Incident History Report

70. IAD Investigation Officer Alex Conrad

71. Officer Alex Conrad Observation Reprimand

72. Officer Alex Conrad PEWS and IAD Investigation

73. Officer Alex Conrad PEWS Report

74. Harris County Operational Records (Lockhart)

75. Officer Twitty IAD Investigation Report

76. Officer Twitty First Pews Report Notification

77. Officer Twitty Second Pews Report Notification

78. Officer Twitty PEWS Report

79. Officer Twitty Incident History Report

80. Officer Conrad Deposition Transcript

81. Officer Patrick Allen Deposition Transcript

82. Bernard Lockhart Medical Records

83. Officer Bruce Hayes Deposition Transcript

Radcliffe

84. Lenard Vare Expert Report

85. Dr. David Mathis Expert Report

86. Radcliffe Assault Video

87. Radcliffe Incident Report

88. Radcliffe Photo

89. Radcliffe Jail Medical Records

90. Officer Suzana Reskovic Incident Case History

91. Officer Chin Chiu Incident Case History

92. Antonio Radcliffe Deposition Transcript

93. Officer Suzana Reskovic Deposition Transcript

Morelle

94. Lenard Vare's Expert Report

95. Morelle's medical records and incident report

96. Morelle's Deposition Transcript

97. Officer Calyn Cutler Deposition Transcript

Zachery Johnson

98. Lenard Vare Expert Report

99. Dr. Carvalho Expert Report

100.    Zachery Johnson Incident Report and Jail Records

101.    Zachery Johnson Assault Video Footage

102.    Zachery Johnson Operation Records

103.    Zachery Johnson Clinic Records and medical records

Twedt

104.    Lenard Vare Expert Report

105.    Twedt UOF Incident Video Footage

106.    Twedt UOF Incident Report

107.    Twedt Deposition Transcript

108.    Officer Jimmy Poole Pews Report

109.    Officer Jimmy Poole Incident History Report

110.    Officer Andrew Pena Pews Report

111.    Officer Andrew Pena Incident History Report

112.    Officer Jon Vickers-Gilbreath Pews Report

113.    Officer Jon Vickers-Gilbreath Incident History Report

114.    Officer Tyree Simpson Pews Report

115.    Officer Tyree Simpson Incident History Report

116.    Officer Christopher Ortega Pews Report

117.    Officer Christopher Ortega Incident History Report

118.    Officer Thomas Muniz Pews Report

119.    Officer Thomas Muniz Incident History Report

120.    Twedt Medical Records

Kevin Smith

121.    Lenard Vare Expert Report

122.    Dr. Mathis Expert Report

123.    Dr. Weedn Expert Report

124.    Kevin Smith Incident Video Footage

125.    Kevin Smith Observation Rounds Video Footage

126.    Kevin Smith Autopsy Report

127.    Officer Wong Deposition Transcript

128.    Kevin Smith Investigation Summary and Incident Report

129.    Kevin Smith Medical Records

130.    Harris County Observation Records

131.    Harris County Operational Records

<u>PLAINTIFF ZACHARY KEHJ JOHNSON'S RESPONSE TO HARRIS COUNTY'S
MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEVER</u>

COMES NOW, Zachary Kehj Johnson ("ZKJ") in the above-referenced cause, and files this, his response to Defendant Harris County's Motion for Summary Judgment and Motion to Sever [Doc. 244] and would show the Court as follows:

## I.    Introduction

On May 28, 2023, ZKJ was booked into the Harris County Jail. ZKJ had a long history of mental health needs and was diagnosed with schizophrenia. ZKJ was also arrested for a crime that increased his risk of being a victim of detainee violence. Despite these risks and known mental health needs, Harris County – pursuant to their inadequate policies – classified him as general population and placed him in a cell with known violent offenders. Shortly after being placed in this housing, another detainee attacked ZKJ. ZKJ was punched, stomped on, kicked, and knocked on the ground causing severe injuries. The detainee can be seen on the video wrapping his hands with his socks which is a known indicator of a fight; however, the officers did not observe these actions and did not prevent the assault from occurring. The assault was so severe it caused him to have a seizure and loss of consciousness, despite having no prior history of seizures.

Despite these obvious injuries, the officers failed to fully inform the clinic staff and hospital of the cause of the injuries which resulted in an inadequate evaluation and lack of any follow up medical or neurological evaluations after he returned from the hospital Due to his injuries and known mental condition, ZKJ could not self-report the incident and many time reported inaccurate causes of his injuries. Shortly after, ZKJ reported a

PREA violation. However, it took the officers several days to respond and begin an investigation compromising the investigation's results while also failing to account for his mental condition which violated standard correctional policies and PREA. Instead, the officers returned ZKJ to general population, failing to properly classify him once again which resulted in additional medical issues including seizures. On June 13, 2023, ZKJ was released from the jail and taken by his family to a hospital nearby, where it was revealed he had a fractured skull, fractured neck, fractured spine, and fractured ribs, as well as blood on his brain caused by his head injuries. He was care-flighted to another hospital that could handle his severe injuries.

In its summary judgment motion, Harris County presents the Court with the following arguments: (1) ZKJ did not have a constitutional injury, (2) ZKJ did not satisfy the elements of a failure to protect claim, (3) ZKJ did not have a cause of action under PREA (though he did not allege one in the petition), (4) there is no evidence that he was denied medical care, (5) there is no evidence that detention officers used unconstitutional force against him, (6) ZKJ does not have a conditions of confinement claim, and (7) ZKJ does not have a episodic acts or omissions claim. However, the record evidence raises a genuine issue of material fact regarding each of ZKJ's claims, and therefore the Court should deny Harris County's motion for summary judgment.[1]

---

[1] Defendant makes several arguments attacking the pleadings. The Second Amended Complaint was solely to address the capacity of the parties and not to conform the pleadings with the evidence discovered at that point, which was minimum. Any inaccuracies between the facts in the complaint and the facts in the reports is irrelevant because ultimately the same policies and conditions apply regardless of whether it was one inmate with other inmates surrounding or several inmates at once. Plaintiffs are anticipating seeking leave to amend the pleadings to match up with the evidence as discovery is ongoing. At the time of many of the pleadings, Plaintiffs did not have access to all of the information now revealed during discovery. Due to

## II.     Evidence & Exhibits

As the Court is aware, this case is still in the middle of discovery. This case also contains unique circumstances with limited access to key witnesses and limited communications with specific parties and ongoing criminal and administrative investigations which have impeded discovery. Specifically, outside of an initial conversation at the beginning of the case, Plaintiffs' counsel has been unable to get ZKJ's testimony to be able to use in response to this MSJ which hinders the response specifically to the argument on the use of force claim. Plaintiffs have attached to this Response the exhibits and evidence identified in the Table of Exhibits which provide fact questions raised by Defendant's arguments. Plaintiffs anticipate receiving more supporting evidence including ZKJ's own testimony, the inspection of the jail, the deposition of Sheriff Gonzalez, additional depositions of officers, and additional Jail records which continue to trickle in. Plaintiffs' counsel's Rule 56(d) sworn declaration is attached herein in support.

## III.     Factual Background

On May 28, 2023, ZKJ was booked into the Harris County Jail with severe mental health needs and limitations. Ex. 98, 99, 100. Due to his mental health needs and limited functionality in conjunction with his criminal charges, ZKJ was an easy target for assaults from other detainees putting him at a heightened risk of serious harm. Ex. 98, 99. Due to

---

the size of the complaint and to save the Court and the Parties' resources, Plaintiffs were anticipating filing one motion for leave and amended complaint rather than filing a new one every time there is a difference to address based on new discovery. Additionally, Plaintiffs have not had a full opportunity to evaluate the use of force claims as the records are inaccurate.

his condition and risk, ZKJ should have been placed in a specialized mental health unit or solitary confinement; however, due to the understaffed and overcrowded nature of the Jail and the policies and practices of the Jail of failing to adequately classify and house detainees, ZKJ was placed in general population. Ex. 98.

On May 29, 2023, ZKJ was in his cell bundled up rocking back and forth on a bench. Ex. 98, 101. His actions indicated that he was suffering a mental health episode making him at a heighted risk of assault; however, no officer noticed despite the window to the pod control center being only a few feet from his location. *Id.* As seen on the video, a detainee sitting at the table in front of ZKJ was wrapping his hands with his socks which is a clear indicator that he is about to fight someone. *Id.* Again, the officers in the pod control center failed to observe and supervise the detainees allowing this detainee to continue preparing to fight someone. *Id.* The officer who was supposed to be watching the pod was working an overtime shift which is very common among Harris County officers. Being overworked, tired, and inattentive led to his inattentive supervision and ultimately, a failure to intervene in the assault. Ex. 102, 83 at 26:1-17, 1-20. The detainee then got off his bench and walked around to ZKJ and punched him in the face multiple times before throwing him to the ground. *Id.* The detainee continued punching and stomping ZKJ for over a minute before any officer entered the cell. *Id.* The officers that entered the cell did not exhibit any urgency, consistent with the common aspect of assaults in the Jail.

The blunt force trauma caused ZKJ's loss of consciousness and a hemorrhaged eye, but the officers failed to fully describe the incident to the clinic or hospital staff. As a

result, ZKJ received only a cursory evaluation without a full diagnosis of his neurological injuries and hindered any proper follow up care. Ex. 99, 103. In fact, when taken to the hospital, the staff only evaluated his red eye because ZKJ could not describe what happened accurately and the officers did not inform the hospital of the assault. Ex. 103. This is consistent with Harris County practices where officers fail to report the full extent of force or assaults that occur, hindering proper diagnosis and treatment and even leading to detainee's deaths, i.e. Jacoby Pillow. Ex. 99, 107 at 37:22-38:19. Despite the assault and ZKJ's mental health needs, the officers placed him back in general population. Ex. 98, 99.

Following his return from the hospital, there was no clinical oversight or monitoring despite his severe head injury and altered mental status, headaches, body aches, blurred vision, slurred speech, and becoming illogical, all of which are signs of a severe head injury. Ex. 99. This is consistent with Harris County's policies and practice of failing to fully evaluate detainee's injuries and returning them back to general housing. *Id.* As a result, ZKJ's severe injuries (broken back, neck and bones) were not properly evaluated until *after* he was released from the Jail. Ex. 103.

After the initial incident, ZKJ also made a PREA outcry. Ex. 98. However, the officers delayed conducting the investigation and hindered any proper evaluation of the allegations. *Id.* The investigators also ignored ZKJ's mental health issues which should have been considered when questioning him and conducting the investigation. *Id.* As a result, there was never a proper PREA investigation. Likewise, the evidence shows that

ZKJ was an at-risk detainee for assaults and was subjected to this rampant violence in the Jail. *Id.*

The violence ZKJ faced is not an isolated incident but is a constant threat of substantial physical harm to all detainees in the Harris County Jail constituting a condition of the Jail. This risk of violence is "longstanding, pervasive, well-documented, [and] expressly noted by prison officials." *United States v. Hinds Cnty. Bd. of Supervisors*, 128 F.4th 616, 627 (5th 2024).

As early as 2009, the Department of Justice's Report on the Jail made Harris County aware that they did not have sufficient protocols and policies in place to control a violent detainee population. Ex. 1. In 2021, TCJS informed Harris County that the overpopulation and understaffing of the Jail led to a rapid increase of detainee on detainee violence as a result of Jail policies. Ex. 7. Sheriff Gonzalez even recognized this violence. Doc. 122 at 73 n.4.

From 2018 till the present, Sheriff Gonzalez has also identified the rapid and growing violence in the Jail because he compiled monthly reports and statistics documenting detainee-on-detainee assaults. Ex. 26. Since 2018, Harris County Jail has had 56,907 detainee assaults. Ex. 26. Although Plaintiffs have only received a portion of the incident reports for those assaults, these assaults occur at an alarming rate - more than all other Texas county jails ***combined***. Ex. 26. For that time period, Harris County has accounted for 51% of all assaults in the state while only having 7.8% of the jail population. Ex. 26. For example, in January 2023, Harris County had ***665 assaults*** accounting for 52% of the assaults in Texas. Ex. 26. Dallas, Travis, and Tarrant counties, whose jails accounted

for 19% of the jail population, had only *8 assaults total* accounting for .6% of the assaults for the state. Ex. 26. This exemplifies the prolific and uncontrolled violence in the Jail that has led to detainee deaths and serious bodily injuries. Ex. 26. Yet, Harris County has done nothing to stop the violence as their only solution is to respond after the assault occurred.

ZKJ has also provided examples of specific incidents that have happened to other detainees and to other Plaintiffs. *See* Ex. 30, 31-42, 95, 100-101. For example, Fred Harris was placed in a holding cell with another detainee who was a known violent offender. Ex. 39-40. The Jail placed them in the same cell regardless. The other detainee attacked and killed Harris on video and it took the officers several minutes to respond. *Id.* John Coote was placed into a cell and was assaulted for several minutes by multiple detainees. Ex. 31-32. Again, only after Coote suffered severe injuries and was assaulted for several minutes did officers respond because they were understaffed. *Id.* Evan Lee was assaulted numerous times and was forced to engage in fighting with other detainees to protect himself from gangs. Ex. 33. Lee ended up passing away from injuries caused by an assault that officers never observed. Ex. 33. Zachery Zepeda was attacked by another detainee, knocking him out. Ex. 34-35. Similarly, Michael Griego was placed in the same mental health pod as many violent offenders who had a history of attacking other detainees when he was assaulted and killed by a known violent detainee. Ex. 36. No officer witnessed or stopped the assault. *Id.*

These are just a few of the examples of the assaults in the Jail; however, this is more than enough evidence to show that the Jail has a culture of violence that poses a substantial threat of serious harm to all detainees in the Jail.

Plaintiff's correctional expert, Lenard Vare, identified many of these issues in his report after reviewing thousands of pages of documents, reports, Sheriff Gonzalez's statements, and video footage. Ex. 84, 98. Mr. Vare expressly found that Harris County, by and through the Sheriff, has known or should have known of the violence in the Jail and has consistently failed to provide adequate supervision, safety, and security for detainees and has knowingly disregarded the known dangers of inmate assaults. Ex. 84, 98. These prolific dangers were exacerbated by the lack of supervision, training, and observation by officers as well as the understaffing and overcrowding of the jail. Ex. 84, 98. Moreover, the department has continuously failed to investigate and conduct meaningful correction to rectify the issues. Ex. 84, 98. Over the years of records reviewed, Harris County has not taken any reasonable steps to address these problems causing systemic deficiencies and an unreasonably dangerous condition for detainees. Ex. 84, 98.

## IV.    Argument and Authorities

### A.    Summary judgment standard.

Summary judgment is proper when no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013). The Court must resolve all reasonable doubts, and draw all reasonable inferences, in favor of the nonmovant—*i.e.*, Mr. Johnson. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If "reasonable minds could differ" on "the import of the evidence," the Court must deny

the summary judgment motion. *Anderson*, 477 U.S. at 250. The movant bears the burden of identifying for the Court the portions of the record the movant believes demonstrate the absence of a genuine issue of material fact. *See Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). A fact is considered material if its resolution could affect the outcome of the claims at issue. *See Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020).

There is no federal analog to Texas's no-evidence summary judgment motion. *Taylor v. Dolgencorp of Texas, Inc.*, No. 6:18-CV-00179-ADA, 2020 WL 1902540, at *2 (W.D. Tex. Jan. 7, 2020) (citing *BB Energy LP v. Devon Energy Prod. Co. LP*, No. 3:07-CV-0723-O, 2008 WL 2164583, at *12 (N.D. Tex. May 23, 2008) ("A no-evidence motion for summary judgment, however, is a pleading that may be filed in state court, but not federal court."); *Cardner v. Home Depot U.S.A., Inc.*, 561 F. Supp. 2d 640, 643 (E.D. Tex. 2006); *Royal Surplus Lines Insurance Company v. Brownsville Independent School District*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005). Thus, in seeking summary judgment on a "no evidence" basis, the burden remains with the *movant* to disprove or show that there is no evidence to support an element of the claim against the movant on which the nonmovant bears the ultimate burden of proof at trial. *Catrett*, 477 U.S. 317, 323-24. Only after the movant satisfies its burden of proof must the non-movant come forward with specific facts that, if true, establish the existence of a genuine issue for trial. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).

Because the evidence in this case establishes a genuine issue of material fact with regard to ZKJ's claims against the Harris County, summary judgment is improper.

**B.     There is a genuine issue of material fact regarding ZKJ's conditions of confinement claim.**

ZKJ claims that his Fourteenth Amendment Constitutional rights to be free from detainee violence and to receive adequate medical care while detained by a state actor was violated by the conditions of his confinement in the Harris County Jail and by Harris County's failure to properly train and supervise its detention personnel. Harris County's known, pervasive, and problematic policies allowed and fostered the circumstances leading to ZKJ's injuries. Consequently, ZKJ has asserted *Monell* claims against Harris County under § 1983.

To state a valid § 1983 claim, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). Harris County's motion for summary judgment attacks the first of these elements—*i.e.*, whether the conduct of their detention officers violated ZKJ's constitutional rights. It did.

The County is liable "if it . . . causes a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Ordinarily, official municipal policies are contained in duly promulgated policy statements, ordinances, or regulations. *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). But a policy may also be evidenced by a custom, even if such custom has not received formal approval. *Id*. This occurs when a widespread practice is so common and

well-settled as to constitute a custom that fairly represents municipal policy. *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018). Therefore, municipal liability under Section 1983 requires proof of three elements: (1) a policy; (2) promulgated by a final policymaker; (3) that is a moving force behind the violation of the constitutional right. *Monell*, 436 U.S. at 694.

In the context of *Monell* liability for constitutional violations against detainees, the cause of the constitutional violation is classified as either a condition of confinement or as an episodic act or omission. *Garza v. City of Donna,* 922 F.3d 626, 632 (5th Cir. 2019). Conditions of confinement claims involve "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644 (5th Cir. 1996). Therefore, a condition of confinement "is usually the manifestation of an explicit policy or restriction;" however, it can also be "an unstated or de facto policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 645). In contrast, for claims based on a particular act or omission of one or more officials, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

When the state incarcerates an individual, either as punishment after criminal conviction, or as a pre-trial detention, it restricts that person's ability to fend for themselves, thus entitling that person to State provision of certain basic human needs

regarding their medical care and safety. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 638–39 (5th Cir. 1996). In short, "pretrial detainees are entitled to protection from harm as well as needed medical care . . . ." *Id.* at 641. Harris County compounded its failure to protect ZKJ from his fellow inmates by also failing to provide him adequate medical care.

1.    **A genuine issue of material fact exists regarding ZKJ's conditions of confinement claim as it relates to Harris County's failure to protect him from other detainees.**

"It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). Prison officials must guard against current threats, as well as sufficiently imminent dangers that may cause harm in the future. *Horton v. Cockrell*, 70 F.3d 397, 400-01 (5th Cir. 1995).

For a conditions-of-confinement claim, the plaintiff must show that the unconstitutional conditions have no reasonable relationship to a legitimate governmental interest. *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 207 (5th Cir. 2011). This "reasonable relationship test" is the functional equivalent of the deliberate indifference standard employed in episodic-act-or-omission cases. *Id.* (citing *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997) (en banc)); *see also Bell v. Wolfish*, 441 U.S. 520, 539 (1976).

Harris County correctly states that prison officials are liable when they demonstrate subjective deliberate indifference to a substantial risk of serious harm. *See Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996). Deliberate indifference is more than mere negligence and requires that the jail official (1) be subjectively aware that the detainee faces a substantial risk of serious harm, and (2) disregards that risk by failing to

take reasonable measures to alleviate it. *See Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *Hare,* 74 F.3d at 648. To satisfy this requirement, a "claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer,* 511 U.S. at 842.

"Whether a [jail] official had the requisite knowledge of a substantial risk is **<u>a question of fact</u>** . . . ." *Id.* (emphasis added). This can be demonstrated in the usual ways, including inferences from circumstantial evidence — meaning that fact finder could conclude that a jail officer knew of a substantial risk from the very fact that the risk was obvious. *Id.* For example, if there is evidence that a substantial risk of detainee attacks is longstanding, pervasive, well-documented (as it was here), or has been expressly noted by jail officials in the past (again, as it was here), and the circumstances suggest that the jail officer has been exposed to information concerning the risk and thus must have known about it, such evidence can be sufficient to permit a trier of fact to find that the jail officer had actual knowledge of the risk. *Id.* at 842–43; *see also Oliver v. Gusman,* 611 F. Supp. 3d 290, 298-99 (E.D. La. 2020) (finding constitutional violation adequately alleged where complaint asserted that DOJ findings, letters, and Jail Monitor reports demonstrated that risk of inmate attacks were "longstanding, pervasive, [and] well-documented," risk of attack was exacerbated by officers' failure to supervise inmates and respond to requests for help, and that officers must have known of risk as they would have been exposed to documents in the course of official duties).

A jail officer also could not claim to not be deliberately indifferent by arguing that, while he may have been aware of an obvious, substantial risk to detainee safety, he did not know that the plaintiff was especially likely to be assaulted by the specific prisoner who eventually committed the assault *Farmer,* 511 U.S. at 843; *see also Hinojosa v. Livingston,* 807 F.3d 657, 668 (5th Cir. 2015); *Oliver,* 611 F. Supp. 3d at 299–300. "[I]t does not matter whether the . . . [detainee] faces an excessive risk of attack for reasons personal to him or because all [detainees] in his situation face such a risk." *Farmer,* 511 U.S. at 843. If jail officers were aware that detainee assaults were common and uncontrolled, it would be irrelevant to liability whether the jail officers could not guess beforehand precisely who would attack whom. *See id.* In short, the law does not require the specificity Harris County would impose on ZKJ's claim.

Two additional cases illustrate this principle that when the jail has a condition of rampant detainee-on-detainee violence a plaintiff need only show the extensive nature of this violence to illustrate a constitutional violation and unconstitutional condition of confinement. *Hinds Cnty.,* 128 F.4th at 626-30; *Alberti v. Klevenhagen*, 790 F.2d 1220, 1224–27 (5th Cir. 1986). In *Hinds Cnty.,* the County jail was found to have a rampant history of detainee violence in conjunction with systemic staffing issues that was sufficient to find that the County was deliberately indifferent to detainee safety. *Hinds Cnty.,* 128 F.4th at 626-30. The Court specifically found that seventy-seven assaults in a four-month period was sufficient to illustrate the "unchecked prisoner-on-prisoner violence" in violation of the Constitution. *Id.* at 628. The Court specifically noted that the jail had a failure in observation which aided the rampant violence. *Id.* at 629.

In *Alberti*, the Fifth Circuit was analyzing injunctive relief imposed by the District Court on the Harris County Jail, the same jail at issue in this case, due to its rampant violence. 790 F.2d at 1224-27. The Court specifically upheld the findings of the District Court that the Jail had a condition of rampant violence that constituted "a continuous pattern of deprivations which clearly reach constitutional dimensions." *Id.* at 1224 (quotations omitted). The Fifth Circuit specifically noted that the Jail had 1,200 acts of violence reported by inmates each year. *Id.* at 1225–26. The Court held that the violence was coupled with the lack of observation and supervision of the officers with blind spots and times where detainees were left unsupervised. *Id.*

In May 2023, the month of ZKJ's incident, Harris County Jail had 803 detainee assaults reported to TCJS. Ex. 26. Notably, Plaintiff Radcliffe's incident also occurred in the same month, just a few days prior to ZKJ's assault. Ex. 87. For 2022, Harris County Jail had 7,910 reported assaults. Ex. 26. For 2023, Harris County Jail had 8,340 reported assaults accounting for 54% of all assaults in Texas jails. *Id.* These numbers dwarf the numbers that the Fifth Circuit determined was sufficient to establish a pattern of constitutional violations in *Hinds Cnty.* and *Alberti*. *Hinds Cnty.*, 128 F.4th at 626–30 (77 assaults); *Alberti*, 790 F.2d at 1224–27 (1,200 assaults). Moreover, Plaintiffs' expert specifically opined that the jail has a prolific issue in staffing and observation which increases the violence amongst detainees. Ex. 98.

Harris County argues that ZKJ's conditions of confinement claim must fail because ZKJ's failure to protect claim does not satisfy all the elements for such a claim. Harris County references evidence showing that ZKJ was assaulted by another detainee on May

29, 2023, and that the rover appeared at the pod within a minute and a half. [Doc. 244 at ¶¶ 33-41]. However, this referenced evidence does not establish a no-evidence point on summary judgment, and does not challenge any particular element of the failure to protect claim. [Doc. 244 at ¶¶33-41].[2]

Moreover, the evidence establishes that Harris County's conditions of confinement – in particular, the (1) failure to properly observe detainees; (2) failure to adequately staff its facilities; (3) unremedied tendency to overcrowd its facilities; (4) repeatedly holding detainees in temporary accommodations for far longer than the 48-hour maximum period; and (5) the failure to properly classify and house detainees, all led to the predictable outcome of detainee-on-detainee violence. Ex. 1-21, 84, 94, 98, 99. Furthermore, such violence – especially violence in the overcrowded and understaffed cells – is a prevalent and well-documented problem in Harris County detention facilities. Ex. 1-20, 26, 29-42, 84, 94, 98.

Consequently, the fact that the directly-involved detention officers did not anticipate any specific attack on ZKJ is irrelevant because, given the conditions of the detention facility, there was an obvious risk of detainee-on-detainee violence.

Defendant makes the untenable argument that understaffing could not be a cause of the assault because their paperwork indicates that they had enough staff assigned to the floor for minimum ratio standards. Doc. 244 at 8. This argument is misplaced and would require the Court to analyze the evidence in the light most favorable to Defendant.

---

[2] Though Harris County alleges in its motion that ZKJ does not have a private cause of action under PREA, ZKJ's pleadings do not allege or seek to establish such a claim. [*Compare* Doc. 20 *with* Doc. 244 at ¶¶42-50].

First, the records only show that Harris County assigned the minimum number of staff to the floor, but provides no evidence that those staff were actually on the floor at the time. Ex. 102. TCJS noted that Harris County's paperwork was routinely false because officers would have to leave the floor often, making the floor they left fall below minimum standards. Ex. 2-20. For ZKJ, if even one officer was not on the floor at the time of ZKJ's assault then the floor would have been out of ratio. Ex. 102.

Second, simply because the paperwork shows the minimum ratio is met, that does not establish that the Jail was properly staffed because those are minimum requirements with no assurance that those staff are actually able to handle all of the tasks on the floor. Again, as noted by TCJS and by Plaintiffs' expert, many times officers would have to leave the floor, would respond in significant numbers to another incident, or would not be adequately paying attention which indicates that they could not properly staff the floor to prevent detainee assaults. Ex. 2-20, 84, 98. Likewise, officers were routinely understaffed and forced to work overtime – these tired and overworked then failed at their job of observing and protecting the detainees even if the minimum staff numbers were technically met. Ex. 2-20, 83, 84, 97, 98. The officer who was in charge of observing ZKJ's cell was working overtime, which likely delayed and hindered his ability to prevent the assaults. Ex. 100, 102. The proliferation of assaults in the Jail also illustrates the lack of staffing as the officers cannot and do not prevent detainee assaults. They can only react to fights, not prevent them. *See* Ex. 2-20, 84, 97. In light of the record evidence, a genuine issue of material fact exists regarding whether Harris County violated ZKJ's

constitutional right to be protected from harm caused by his fellow inmates. Therefore, summary judgment is improper.

2.    **The use of excessive force against ZKJ by the Harris County detention officers was an identifiable condition of his confinement that served no constitutional purpose.**

Harris County argues that ZKJ's conditions of confinement claim must fail because there is no evidence that ZKJ was assaulted by jail personnel and that there is no overriding condition of confinement claim because the jail facility was adequately staffed on May 29, 2023, the day Harris County alleges ZKJ was assaulted by another detainee. [Doc. 244 at ¶¶57-60].

Rather than challenging that allegation with contrary evidence, Harris County simply asserts that "the medical records to which *Defendant* has access do not support" the contention that ZKJ was assaulted by detention officers. Doc. 244 at 7. But, Harris County does not cite to such evidence or explain why such evidence does not support ZKJ's allegation of assault.

Plaintiffs anticipate being able to locate evidence to support this claim; however, despite Plaintiffs' counsel's diligence, Plaintiffs have been unable to acquire ZKJ's sworn testimony to provide evidence of the use of force. ZKJ has been in and out of mental health facilities and the Harris County Jail which has hindered acquiring this information. Therefore, pursuant to Rule 56(d) Plaintiffs request that the Court deny this portion of the Motion until after Plaintiffs can gather this information. Fed. R. Civ. P. 56(d). Counsel's sworn declaration is included after the certificate of service.

3.  **The failure to provide adequate medical care was an identifiable condition of ZKJ's confinement that served no legitimate government objective.**

Harris County also argues that because ZKJ received some medical care on certain dates, he could not have suffered a constitutional injury regarding his medical treatment. Doc. 244, ¶¶ 56-56. However, as a Harris County detainee, ZKJ had a right to *adequate* medical care. *Rogers v. Boatright*, 709 F.3d 403 (5th Cir. 2013) (citing *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)). Harris County seems to further contend that the fact that ZKJ received some treatment necessarily means that Harris County personnel were not indifferent to his medical needs. Doc. 244, ¶¶ 51-56. But, an inmate's right to adequate medical care is violated when prison personnel engage in conduct that "evince[s] a wanton disregard for serious medical needs." *Rogers*, 709 F.3d at 410 (quoting *Easter*, 467 F.3d at 463). Defendant's argument that ZKJ received "adequate" medical care is conclusory as they only state the dates he received care instead of identifying the quality of care actually provided. Doc. 244, ¶¶ 51-56. Under Defendant's argument, so long as the Jail documents sending a detainee to the clinic – regardless of the care received - then they are not deliberately indifferent.  This would be a gross misapplication of the law.

ZKJ received a beating so severe that he suffered multiple fractures, loss of consciousness and exhibited clear signs of a major head injury consistent with the assault he received. Ex. 99, 103. Following the incident, he exhibited seizures, slurred speech, vomiting, memory loss, and other indicators of a head injury. Ex. 98, 99, 103. Despite these indicators, the officers failed to fully report the assault leading to a lack of a proper diagnosis or evaluation as the clinic did not have a full understanding of what occurred.

Ex. 98, 99. The hospital records clearly show that ZKJ did not have the capacity to state why he was even in the hospital, let alone the extent of his injuries, so the hospital only evaluated the redness in his eye despite the officers knowledge of the assault. Ex. 103. This is not a one-time incident; rather, it is indicative of the Jail's culture. Ex. 99. This is but one example of the lack of medical care.

After he returned from the hospital and despite the known head injury, ZKJ was not properly evaluated or placed in proper housing to provide continuous monitoring of his condition and provide adequate medical care. As a result, his condition worsened and led to further pain and suffering. Ex. 98, 99. By placing him in general housing, the Jail placed him at a greater risk, as they failed to evaluate him for a suicide risk or increased risk of harm.  They instead gave a mentally unstable individual a bottle of pain pills, resulting in him accidently overdosing on the pills. Ex. 99, 103.

After he was discharged and released to his family, he had to be care flighted to a hospital that could handle the severity of his injuries. The severity of his injuries after his release belies any allegation that he received adequate medical treatment while he was detained. Combining the known assault with his clear mental health needs, the medical records indicate that only cursory evaluations were conducted that do not constitute "adequate" medical care.

Such circumstances raise a genuine issue of material fact regarding whether Harris County personnel violated ZKJ's constitutional right to adequate medical treatment. Consequently, summary judgment is improper.

C.    **There is a genuine issue of material fact regarding Johnson's episodic acts claim.**

Unlike a conditions-of-confinement claim, an episodic-acts-or-omissions claim "faults specific jail officials for their acts or omissions." *Estate of Henson*, 795 F.3d at 463 (quoting *Shepherd*, 591 F.3d at 452). For liability to attach, "the municipality must cause the constitutional tort, which occurs when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (per curiam) (quoting *Monell*, 436 U.S. at 694) (cleaned up). This requires a showing that (1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019). And while "deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 634-35. The Fifth Circuit has clarified that there is no proof requirement that officials *subjectively intend* that the harm occur. *Id.* at 636.

Harris County had an unwritten and widespread practice, *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009), of (1) failing to provide medical care and medications for medical needs and injuries incurred while in the Jail, (2) failing to provide proper observation and monitoring to provide timely medical care, (3) a culture of violence amongst detainees, and (4) the continuous overcrowding and understaffing of the Jail

which both impeded access to medical care and heightened the use of excessive force by Jail employees.

Additionally, although ZKJ has separately raised failure to train and failure to supervise claims that are not challenged by the County on summary judgment [Doc. 20 at ¶¶ 1079, 1162-1164], a failure to train can also form the basis of a policy or custom allegation in an episodic acts claim. *Garza*, 922 F.3d at 637 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–91 (1989). It can also be a decision to adopt a course of action to handle a particular situation, if made by an authorized decisionmaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986).

Defendant's only argument in relation to the episodic act claim is whether ZKJ suffered a constitutional violation at all. Doc. 244 at 9. This is the same argument and analysis under the condition of confinement analysis above. As stated therein, Defendant has a gross and longstanding history of detainee assaults which has gone unimpeded for over a decade. *See supra* §§ III; IV(B). This rampant risk of assaults subjects each detainee, including ZKJ, to an extreme risk of serious bodily harm in violation of the Constitution. *Id.* Here, ZKJ specifically ties the actions of the officers involved to Harris County's policies of (1) failing to provide medical care and medications for medical needs and injuries incurred while in the Jail, (2) failing to provide proper observation and monitoring to provide timely medical care, (3) the excessive violence in the Jail, and (4) the continuous overcrowding and understaffing of the Jail which both impeded access to medical care and heightened the risks of assaults. *Id.* Ex. 98, 99. And these policy violations go beyond a single incident, as demonstrated not only by ZKJ's pleading itself,

which details numerous similar violations against other plaintiffs to this suit, but also by the evidence demonstrating a systemic pattern of constitutional violations by detention officers both with lack of medical care and increased assaults by detainees. Ex. 1-21, 26, 29-42, 84-86, 92-94, 97-99, 101, 121-123. Accordingly, the evidence has established at a minimum a fact issue as to the existence of a constitutional violation requiring denial of summary judgment.

**D.    The County can still be liable under *Monell* even if its employees are found to have not violated the Plaintiffs' constitutional rights.**

Moreover, even if the Harris County personnel directly involved did not violate the Constitution in their treatment of ZKJ, the County is not automatically exonerated. Local governments can be held liable in at least three circumstances: (1) harm is caused by direct actions of the governmental entity itself, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); (2) harm is caused by the entity's policies or customs, *see Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)**.**; and (3) harm is caused by employees for whom the entity has failed to provide adequate training, *see Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018) **..** When the injury is a result of an action of an employee who has not been trained properly, courts apply "rigorous requirements of culpability and causation"—holding a local government liable if it has been deliberately indifferent to constitutional rights. *Arrington-Bey*, 858 F.3d at 995 **.** (quoting *Bd. of Cnty. Com'rs of Bryan Cnty., Ok. v. Brown*, 520 U.S. 397, 415 (1997)**.**).On the other end of the spectrum, when an act of the municipality itself causes the injury, "fault and causation obviously apply." *Id.* at 994. Likewise, when an injury is

caused by the straightforward carrying out of a municipal policy or custom, the determination of causation is easy. *See Garner*, 8 F.3d at 364–65 ..

The combined conduct of several local government employees acting pursuant to policy may add up to a constitutional violation even if none of the named defendants individually violated the Constitution. *See, e.g., Barrett v. Orange County Human Rights Com'n*, 194 F.3d 341, 350 (2d Cir. 1999) .; *Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985) . ("if the County had ten people working for it and following a pattern and practice of the County the jury could find all of them not guilty, and still the cumulative effect of what they did pursuant to the practice or policy of the County could be a violation of the Act by the County). After all, when multiple employees act in the same unconstitutional manner, that collective action is indicative of a de facto municipal policy. *Hovis v. Wichita Cnty., Tex.*, No. 3:23-CV-2220-L, 2024 WL 3836559 (N.D. Tex. July 31, 2024), *report and recommendation adopted*, No. 3:23-CV-2220-L, 2024 WL 3841480, at *9 (N.D. Tex. Aug. 15, 2024) *Sims v. City of Jasper, Tex.*, 543 F. Supp. 3d 428, 450 (E.D. Tex. 2021).

Likewise, a municipality's failure to provide adequate jail funding, staffing, or procedures may cause a constitutional violation even if the individual staff members involved are doing their best under untenable circumstances. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) .(finding deliberate indifference by governmental defendant, notwithstanding lack of such findings against individual defendants, where known breakdown in procedures made it impossible for medical staff to respond adequately); *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) .;

*Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985) **.** (*Monell* and its progeny do not require that a jury must first find an individual defendant liable before imposing liability on local government).

For similar reasons, a local government may be liable where the plaintiff's injury results from improper training or procedure even if the individual officer is exonerated. *See Fairley v. Luman*, 281 F.3d 913, 916–18 (9th Cir. 2002) **.**; *Rivas v. Freeman*, 940 F.2d 1491, 1495–96 (11th Cir. 1991) **..** Thus, even if this Court were to find that Plaintiff's pleadings were inadequate as to the individual jail officers, that finding alone would not also exonerate the County. Thus, despite its assertions to the contrary, Harris County cannot obtain summary judgment without addressing the existence of *Monell* evidence. [Doc. 244 at ¶¶ 69-70]. Because Harris County has failed to do so, summary judgment is improper.

## V.    Conclusion & Prayer

**WHEREFORE, PREMISES CONSIDERED**, Zachery Johnson requests this Court enter an Order **denying** Defendant Harris County's Rule 56 No Evidence Motion for Summary Judgment and Motion to Sever Claims by Inmate Zachery Kehj Johnson, and to all other relief in law or equity to which Johnson may show himself entitled.

Respectfully submitted,

By: _/s/ Paul A. Grinke_____

**Paul A. Grinke**
State Bar No. 24032255
paul@bencrump.com
**Aaron Dekle**
State Bar No. 24100961
aaron@bencrump.com
BEN CRUMP LAW, PLLC
5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 942-0494 – Office
(800) 770-3444 – Facsimile

**Carl L. Evans**
State Bar No. 24056989
cevans@mccathernlaw.com
**Jordan A. Carter**
State Bar No. 24116174
jcarter@mccathernlaw.com
**Noah McCathern**
State Bar No.24118035
nmcathern@mccathernlaw.com
MCCATHERN PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219
(214) 532-2060 – Office

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(888) 988-6688 - Office
(214) 807-1799 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on **January 16, 2026**, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to each attorney of record who have consented in writing to accept this notice as service of this document by electronic means.

/s/ Aaron Deckle
**Aaron Deckle**

## UNSWORN DECLARATION

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that Plaintiffs' counsel despite diligence has been unable to attain the sworn testimony of Zachery Johnson that would provide support of a disputed issue of fact pertaining to the use of force claim as stated above. The foregoing is true and correct.

January 16, 2026                    /s/ Aaron Dekle
                                    Aaron Dekle