**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| OCTEVIA WAGNER, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:23-CV-2886 |
| | § | |
| HARRIS COUNTY, TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

---

**PLAINTIFF BERNARD LOCKHART'S RESPONSE TO**
**HARRIS COUNTY'S RULE 56 NO EVIDENCE MOTION FOR**
**SUMMARY JUDGMENT AND MOTION TO SEVER CLAIMS**

---

**Paul A. Grinke**
State Bar No. 24032255
paul@bencrump.com
**Aaron Dekle**
State Bar No. 24100961
aaron@bencrump.com
BEN CRUMP LAW, PLLC
5 Cowboys Way, Ste. 300
Frisco, Texas 75034
(972) 942-0494 – Office
(800) 770-3444 – Facsimile

**Carl L. Evans**
State Bar No. 24056989
cevans@mccathernlaw.com
**Jordan A. Carter**
State Bar No. 24116174
jcarter@mccathernlaw.com
**Noah McCathern**
State Bar No.24118035
nmcathern@mccathernlaw.com
MCCATHERN PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219
(214) 532-2060 – Office

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD &
SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000 - Office
(214) 946-8433 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. iii

Table of Exhibits .................................................................................................... vii

I.     Introduction and Summary of the Argument ............................................. 1

II.    Evidence & Exhibits .................................................................................. 2

III.   Factual Background ................................................................................... 3

IV.    Argument and Authorities ......................................................................... 7

       A.    Summary judgment standard ........................................................... 7

       B.    There is a genuine issue of material fact regarding Lockhart's
             conditions of confinement claim ...................................................... 9

             1.    The use of excessive force against Lockart was an
                   identifiable condition of his confinement that served
                   no constitutional purpose ..................................................... 11

             2.    The failure to provide adequate medical care was an
                   identifiable condition of Lockhart's confinement that
                   served no legitimate government objective ........................... 18

       C.    There is a genuine issue of material fact regarding Lockhart's
             episodic acts claim ......................................................................... 19

       D.    The County can still be liable under *Monell* even if its
             employees are found to have not violated the Plaintiffs'
             constitutional rights ....................................................................... 23

V.     Conclusion & Prayer ................................................................................ 25

Certificate of Service ............................................................................................. 27

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.,*
    699 F.3d 832 (5th Cir. 2012) ...................................................................................9

*Alvarez v. City of Brownsville,*
    904 F.3d 382 (5th Cir. 2018) .................................................................................10

*Anderson v. City of Atlanta,*
    778 F.2d 678 (11th Cir. 1985) ...............................................................................25

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)..................................................................................................8

*Arrington-Bey v. City of Bedford Heights,*
    858 F.3d 988 (6th Cir. 2017), *cert. denied,* 138 S. Ct. 738 (2018).......................24

*Barrett v. Orange County Human Rights Com'n,*
    194 F.3d 341 (2d Cir. 1999) ..................................................................................24

*Bartee v. Harris Cnty.,*
    No. 4:16-CV-2944, 2018 U.S. Dist. LEXIS 232945 (S.D. Tex. March 5,
    2018) (Gilmore, J.)................................................................................................17

*BB Energy LP v. Devon Energy Prod. Co. LP,*
    No. 3:07-CV-0723-O, 2008 WL 2164583 (N.D. Tex. May 23, 2008) ...................8

*Bd. of Cnty. Com'rs of Bryan Cnty., Ok. v. Brown,*
    520 U.S. 397 (1997)...............................................................................................24

*Blackmore v. Kalamazoo County,*
    390 F.3d 890 (6th Cir. 2004) .................................................................................25

*Bolton v. City of Dallas, Tex.,*
    541 F.3d 545 (5th Cir. 2008) (per curiam) ...........................................................19

*Cardner v. Home Depot U.S.A., Inc.,*
    561 F. Supp. 2d 640 (E.D. Tex. 2006) ....................................................................8

*City of Canton, Ohio v. Harris,*
    489 U.S. 378 (1989)...............................................................................................21

*Duvall v. Dallas Cnty., Tex.,*
    631 F.3d 203 (5th Cir. 2011) .................................................................................11

# TABLE OF AUTHORITIES [cont'd]

**Cases**                                                                                          **Page(s)**

*Dyer v. Houston*,
  964 F.3d 374 (5th Cir. 2020) ...................................................................................8

*Easter v. Powell*,
  467 F.3d 459 (5th Cir. 2006) .................................................................................18

*Fairchild v. Coryell Cnty., Tex.*,
  40 F.4th 359 (5th Cir. 2022) ...............................................................12, 13, 14, 16

*Fairley v. Luman*,
  281 F.3d 913 (9th Cir. 2002) .................................................................................25

*Garcia v. Salt Lake County*,
  768 F.2d 303 (10th Cir. 1985) ...............................................................................24

*Garner v. Memphis Police Dep't*,
  8 F.3d 358 (6th Cir. 1993) ...............................................................................23, 24

*Garza v. City of Donna*,
  922 F.3d 626 (5th Cir. 2019) .......................................................................10, 20, 21

*Gomez v. Galman*,
  18 F.4th 769 (5th Cir. 2021) (per curiam)...............................................................9

*Haverda v. Hays County*,
  723 F.3d 586 (5th Cir. 2013) ...................................................................................8

*Estate of Henson*,
  795 F.3d at 463.......................................................................................................19

*Hovis v. Wichita Cnty., Tex.*,
  No. 3:23-CV-2220-L, 2024 WL 3836559 (N.D. Tex. July 31, 2024)...................24

*James v. Harris County*,
  577 F.3d 612 (5th Cir. 2009) .................................................................................20

*Joseph v. Bartlett*,
  981 F.3d 319 (5th Cir. 2020).................................................................................16

*Kingsley v. Hendrickson*,
  576 U.S. 389 (2015).........................................................................................12, 15

# TABLE OF AUTHORITIES [cont'd]

**Cases**                                                                            **Page(s)**

*Littell v. Houston Indep. Sch. Dist.*,
    894 F.3d 616 (5th Cir. 2018) ............................................................................. 20

*Monell v. Dep't of Soc. Servs. of the City of New York*,
    436 U.S. 658 (1978) ............................................................... 9, 10, 17, 20, 23, 25

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ................................................................................... 21, 23

*Rankin v. Klevenhagen*,
    5 F.3d 103 (5th Cir. 1993) ................................................................................ 12

*Rivas v. Freeman*,
    940 F.2d 1491 (11th Cir. 1991) ......................................................................... 25

*Rogers v. Boatright*,
    709 F.3d 403 (5th Cir. 2013) ............................................................................ 18

*Royal Surplus Lines Insurance Company v. Brownsville Independent School District*,
    404 F. Supp. 2d 942 (S.D. Tex. 2005) ................................................................. 8

*Scott v. Moore*,
    114 F.3d 51 (5th Cir. 1997) .............................................................................. 11

*Shepherd v. Dallas Cnty.*,
    591 F.3d 445 (5th Cir. 2009) ...................................................................... 11, 19

*Sims v. City of Jasper, Tex.*,
    543 F. Supp. 3d 428 (E.D. Tex. 2021) ............................................................... 24

*Taylor v. Dolgencorp of Texas, Inc.*,
    No. 6:18-CV-00179-ADA, 2020 WL 1902540 (W.D. Tex. Jan. 7, 2020) .............. 8

*Thomas v. Cook Cnty. Sheriff's Dep't*,
    604 F.3d 293 (7th Cir. 2010) ............................................................................ 25

*Triple Tee Golf, Inc. v. Nike, Inc.*,
    485 F.3d 253 (5th Cir. 2007) .............................................................................. 8

*Valencia v. Wiggins*,
    981 F.2d 1440 (5th Cir. 1993) .......................................................................... 12

## TABLE OF AUTHORITIES [cont'd]

**Cases**                                                                 **Page(s)**

*Walker v. Sears, Roebuck & Co.,*
    853 F.2d 355 (5th Cir. 1988) ......................................................................8

*Webster v. City of Houston,*
    735 F.2d 838 (5th Cir. 1984) ...................................................................10

*West v. Atkins,*
    487 U.S. 42 (1988)......................................................................................9

*Williams v. Bolin,*
    694 F. Supp. 3d 904 (S.D. Tex. 2023) (Rosenthal, J.).........................14

## Other Authorities

U.S. CONST. amend XIV ...................................................................................9

FED. R. CIV. P. 56(a)............................................................................1, 7, 25

## TABLE OF EXHIBITS

Plaintiffs are providing an Omnibus Exhibit List due to the overlapping and intertwined nature of the claims and evidence for the various Motions for Summary Judgment. Plaintiffs incorporate each of these exhibits into the body of the Response as if fully set forth therein. Due to the exhibit size, Plaintiffs will attach an exhibit cover sheet with a link to the exhibit on a share file or similar device that will allow the Court and the parties to access the exhibit.

General

1. DOJ 2009 Report (Wagner 79-102)

2. TCJS Report May 2013-2017 (Wagner 103-183)

3. TCJS Report Dec 2017 (Wagner 184-186)

4. TCJS Report Aug 2018 (Wagner 187-189)

5. TCJS Report Dec 2020 (Wagner 201-207)

6. TCJS Report April 2021 (Wagner 208-210)

7. TCJS Report Nov 2021 (Wagner 211-217)

8. TCJS Report Sept. 2022 (Wagner 224-228)

9. TCJS Report Dec 2022 (Wagner 229-231)

10. TCJS Report April 2023 (Wagner 237-239)

11. TCJS Report Feb. 2023 (Wagner 240-248)

12. TCJS Report Aug. 23, 2023 (Wagner 249-251)

13. TCJS Report Aug 2023 (Wagner 252-261)

14. TCJS Report Feb 2024 (Wagner 263-268)

15. TCJS Report May 23 Remedial Order (Wagner 3246-3247)

16. TCJS Report May 2024 Amend Remedial Order (Wagner 3248-3250)

17. TCJS Report Jan. 2025

18. Harris County Comm. To TCJS Death In Custody (Observation)

19. TCJS Report May 6, 2025

20. TCJS Harris County Second Remedial Order

21. TCJS Report June 2025

22. Harris County's Updated 2024 UOF Policy

23. Eric Morales Personnel File and Investigation

24. KHOU Struck Documentary (Video)

25. KHOU Struck Article

26. TCJS SIR Total Count Files (Compiled)

27. KHOU UOF Incident Report Examples (Compiled)

28. SIR UOF Examples (Compiled)

29. SIR Assault Examples (Compiled)

30. KHOU Assault Examples (Compiled)

31. John Coote Assault Video

32. John Coote Assault Incident Report

33. Evan Lee Assault Texas Rangers Report

34. Zachary Zepeda Assault Video

35. Zachary Zepeda Assault Incident Report

36. Michael Griego Texas Ranger Report and Autopsy Report (Compiled)

37. Kenneth Richard Assault Incident Report

38. Jaquez Moore Assault Incident Report

39. Fred Harris Assault Video

40. Fred Harris Assault Incident Report

41. Rory Ward Assault Investigation Summary and Autopsy Report (Compiled)

42. Kareem Jefferson Assault Incident Report

43. Rory Ward Observation Round Videos Examples

44. Matthew Shelton Observation Round Videos Examples

45. Jacoby Pillow UOF Video

46. Jeremy Garrison UOF Videos and Incident Reports

47. John Coote UOF Video

48. Lenard Vare CV

49. Dr. David Mathis CV

50. Dr. Victor Weedn CV

51. Dr. Vinneth Carvalho CV

52. Officer Mark Garcia Deposition Transcript

53. Officer Mark Garcia Pews Report

54. Officer Mark Garcia Incident History Report

55. Officer Maxim Herman Deposition Transcript

56. Officer Maxim Herman Pews Report

57. Officer Maxim Herman Incident History Report

58. Officer Jin DeGuzman Deposition Transcript

59. Officer Jin DeGuzman Pews Report

60. Officer Jin DeGuzman Incident History Report

Lockhart

61. Lenard Vare Expert Report

62. Dr. David Mathis Expert Report

63. UOF Incident Report (Lockhart)

64. IAD Grievance (Lockhart)

65. Surveillance Footage Inside Pod (Lockhart)

66. Surveillance Footage Outside Pod UOF (Lockhart)

67. Surveillance Footage Entering Hallway (Lockhart)

68. Surveillance Footage Running Down Hallway (Lockhart)

69. Officer Alex Conrad Incident History Report

70. IAD Investigation Officer Alex Conrad

71. Officer Alex Conrad Observation Reprimand

72. Officer Alex Conrad PEWS and IAD Investigation

73. Officer Alex Conrad PEWS Report

74. Harris County Operational Records (Lockhart)

75. Officer Twitty IAD Investigation Report

76. Officer Twitty First Pews Report Notification

77. Officer Twitty Second Pews Report Notification

78. Officer Twitty PEWS Report

79. Officer Twitty Incident History Report

80. Officer Conrad Deposition Transcript

81. Officer Patrick Allen Deposition Transcript

82. Bernard Lockhart Medical Records

83. Officer Bruce Hayes Deposition Transcript

Radcliffe

84. Lenard Vare Expert Report

85. Dr. David Mathis Expert Report

86. Radcliffe Assault Video

87. Radcliffe Incident Report

88. Radcliffe Photo

89. Radcliffe Jail Medical Records

90. Officer Suzana Reskovic Incident Case History

91. Officer Chin Chiu Incident Case History

92. Antonio Radcliffe Deposition Transcript

93. Officer Suzana Reskovic Deposition Transcript

Morelle

94. Lenard Vare's Expert Report

95. Morelle's medical records and incident report

96. Morelle's Deposition Transcript

97. Officer Calyn Cutler Deposition Transcript

Zachery Johnson

98. Lenard Vare Expert Report

99. Dr. Carvalho Expert Report

100.     Zachery Johnson Incident Report and Jail Records

101.     Zachery Johnson Assault Video Footage

102.     Zachery Johnson Operation Records

103.     Zachery Johnson Clinic Records and medical records

Twedt

104.     Lenard Vare Expert Report

105.     Twedt UOF Incident Video Footage

106.     Twedt UOF Incident Report

107.     Twedt Deposition Transcript

108.     Officer Jimmy Poole Pews Report

109.     Officer Jimmy Poole Incident History Report

110.     Officer Andrew Pena Pews Report

111.     Officer Andrew Pena Incident History Report

112.     Officer Jon Vickers-Gilbreath Pews Report

113.     Officer Jon Vickers-Gilbreath Incident History Report

114.     Officer Tyree Simpson Pews Report

115.     Officer Tyree Simpson Incident History Report

116.     Officer Christopher Ortega Pews Report

117.     Officer Christopher Ortega Incident History Report

118.     Officer Thomas Muniz Pews Report

119.     Officer Thomas Muniz Incident History Report

120.     Twedt Medical Records

Kevin Smith

121.     Lenard Vare Expert Report

122.     Dr. Mathis Expert Report

123.     Dr. Weedn Expert Report

124.     Kevin Smith Incident Video Footage

125.     Kevin Smith Observation Rounds Video Footage

126.     Kevin Smith Autopsy Report

127.     Officer Wong Deposition Transcript

128.     Kevin Smith Investigation Summary and Incident Report

129.     Kevin Smith Medical Records

130.     Harris County Observation Records

131.     Harris County Operational Records

**PLAINTIFF BERNARD LOCKHART'S RESPONSE TO HARRIS COUNTY'S
RULE 56 NO EVIDENCE MOTION FOR SUMMARY JUDGMENT
AND MOTION TO SEVER CLAIMS**

COMES NOW, Bernard Lockhart in the above-referenced cause, and files this, his response to Defendant Harris County's Rule 56 No Evidence Motion for Summary Judgment and Motion to Sever Claims [Doc. 196] and would show the Court as follows:

## I.    Introduction and Summary of the Argument

On June 28, 2022, Bernard Lockhart was subjected to excessive force at the hands of several Harris County Jail officers. Although Mr. Lockhart was not posing a threat to any officer or detainee, the officers pursuant to the rampant policies, practices, and training in the Jail escalated the situation by laying hands on Mr. Lockhart. The officers then punched him several times in the head, slammed his head into two different walls, wrenched his arms high above his back, and used improper force techniques even when he was in handcuffs. This force was unnecessary and excessive leading to a torn rotator cuff and other serious injuries. The Jail had no legitimate penological purpose for escalating the situation and assaulting Mr. Lockhart. Subsequently, Mr. Lockhart was not provided the proper treatment for these injuries causing additional damages and pain. This was not an isolated incident.

As alleged in the Complaint and as the evidence shows in conjunction with expert opinions, the Harris County Jail has a rampant condition of officers using excessive force against detainees for no justifiable reason. Likewise, the Jail has a widespread condition, policy, and practice of failing to properly report and provide medical care for detainees while in the Jail. As evidenced by Sheriff Gonzalez's own statements, officers were

improperly trained on the proper force to use against detainees resulting in officers resorting to deadly force without any legitimate justification. This epidemic provides more than enough evidence to support each of Mr. Lockhart's claims against Harris County under a conditions of confinement, episodic acts or omissions, and failure to train or supervise claim.

Although Harris County's Motion for Summary Judgment is at best conclusory and confusing, Harris County seems to present the Court with four primary arguments: (1) there is no evidence of any use of excessive force by Harris County; (2) there is no evidence of any denial of medical care to Mr. Lockhart; (3) Mr. Lockhart failed to state a § 1983 claim arising from the "conditions of [his] confinement"; and (4) Mr. Lockhart failed to state a § 1983 claim arising from Harris County's "episodic acts or omissions." These final two arguments are repeats of the arguments from Defendant's Motions to Dismiss which have been denied by this Court twice. Harris County's arguments have no merit, and the Court should deny the motion for summary judgment as to Mr. Lockhart's claims.

## II.    Evidence & Exhibits

As the Court is aware, this case is still in the middle of discovery with discovery motions outstanding. This case also contains unique circumstances with limited access to key witnesses as well as limited communications with specific parties and ongoing criminal and administrative investigations which have impeded other discovery matters. Plaintiffs have attached to this Response the exhibits and evidence identified in the Table of Exhibits which provide fact questions raised by Defendant's arguments. Plaintiffs

anticipate receiving more supporting evidence including Mr. Lockhart's deposition, the deposition of Sheriff Gonzalez, and additional Jail records which continue to trickle in. Plaintiffs incorporate the evidence above as if fully stated herein.

### III.    Factual Background

Defendant's recitation of the events glosses over the force used and attempts to focus on the post incident grievance. When the evidence is analyzed properly, a strong fact issue arises as to each argument asserted by Defendant.

On June 28, 2022, Mr. Lockhart was in his cell with multiple other detainees when it was time for count. Ex. 63. Multiple officers entered the cell. Ex. 65. Mr. Lockhart with other detainees were lined up to get their arm bands scanned so they could return to their bed or activity. Ex. 65. According to the report, Officer Twitty took exception to some of the language used by Mr. Lockhart and ordered him to the door. Ex. 63, 65. Officer Twitty had a known history of violence having beat up several detainees for no reason but was permitted to work in the jail for several years after those incidents. Exs. 61, 75-79. No matter what words used by Mr. Lockhart, verbal language is never a permitted basis to use force against a detainee especially strikes or slamming their head into a wall. Ex. 61.

While the officers were finishing count, Mr. Lockhart obeyed the officers and went to the door of the pod. Ex. 65. At no point in any of the interactions, did Mr. Lockhart ever strike or pose a physical threat to any of the officers or detainees. Ex. 65. Even though Mr. Lockhart was not turning around to face the wall, Mr. Lockhart was not causing a disturbance to the order of the cell as count was already finished. Ex. 61. The officers could have just scanned his arm band and left the cell. Instead, Officer Twitty, Officer

Conrad, and the other officers involved decided to escalate the situation by laying hands

on Mr. Lockhart, slamming him through the metal and glass door of the pod. Exs. 61, 62,

63, 65, 66. This is consistent throughout many of the examples of use of force incidents in

the jail where officers routinely use force against detainees simply for passive or verbal

resistance – which is never permitted. *See* Exs. 24, 25, 27, 28, 45, 46, 47, 61.

Once out in the hallway, with multiple officers on him, one officer punched Mr.

Lockhart in the head, while other officers slammed him into the cinderblock wall,

eventually slamming his head into the wall. Exs. 61, 66. Notably, the officers never

reported this use of force. Although Mr. Lockhart was keeping his body stiff did not want

to be moved to another cell, he still did not pose a threat and did not try to strike any

officer. *Id.* During this struggle, the officers handcuffed Mr. Lockhart and then held their

arms under his arms pulling his arms high up over his back. Ex. 62, 67.

At this point, the officers could have backed off and given Mr. Lockhart some time

to cool down. Instead, the officers holding his arms up rushed him down the hallway,

almost forcing Mr. Lockhart to run. Exs. 61, 66, 67, 68. In a normal human reaction, Mr.

Lockhart was resisting being forced to run down hallways in this position. After exiting

one of the doorways, one officer grabbed Mr. Lockhart's throat while still moving him

and then eventually the group hit Mr. Lockhart's head into another wall. Exs. 61, 62, 67.

As they moved him to a holding cell, the officers continued to wrench his arms above his

back, which caused his torn rotator cuff. Exs. 62, 68.

After they took Mr. Lockhart into the holding cell, Mr. Lockhart allegedly caused

Officer Conrad to hit his leg on the toilet. Ex. 63. Although the holding cells typically

contain video cameras, this one allegedly did not. During this struggle, Mr. Lockhart was still restrained and did not pose a risk of striking any of the officers. Ex. 61. However, in retaliation, Officer Conrad punched Mr. Lockhart in the head. Ex. 63. Although an IAD investigation was allegedly conducted, pursuant to the ratification and policies of Harris County, none of the officers were disciplined or found to have violated their policies. Ex. 64.

In December 2024, Sheriff Gonzalez, when discussing the KHOU *Struck* documentary which discussed 810 head strikes by officers over a 4 year period, admitted that Harris County had a problem with officers striking detainees in the head and that they had a problem with their training which allowed officers to use punches to the head and face – which are considered deadly force. Exs. 24-25. Harris County in December 2024, in light of the excessive use of force cases, changed their use of force policy to try to address the rampant use of punches by officers. *Id.*, Ex. 22.

None of the force used against Mr. Lockhart was justifiable and was clearly excessive as slamming heads into walls and punching detainees in the head constitute deadly force which is not justified for verbal or passive resistance where there is no threat of imminent serious bodily injury. Ex. 61. Officer Conrad's deposition testimony established that he believed all of his actions were within Harris County's policies and training and that they were never prohibited from striking an inmate in the head and that forcefully pushing them against a wall (despite the risk of their head hitting the wall) is permitted even in response to just verbal resistance. Ex. 80 at 17-18; 21-22; 25-27; 42:8-14.

The fact that no officer was disciplined or retrained showed that their actions were approved by Harris County and were within their unconstitutional policies and training.

Plaintiff's correctional expert, Lenard Vare, provides strong opinions having reviewed hundreds of incidents that were produced in this case along with the Sheriff's own statements, reports from the DOJ and TCJS, and publicly available information. Ex. 61. Mr. Vare expressly opined that the force used against Mr. Lockhart was excessive and for no penological purpose. Ex. 61. Mr. Vare further opined that no reasonable officer would find the force was reasonable. Ex. 61. Mr. Vare also opined that pursuant to the conditions and policies, the officers failed to consider the mental and physical condition of Mr. Lockhart, who had a known mental condition, when they used the force against him in violation of his rights. Ex. 61. Further, in conjunction with the hundreds of excessive force incidents and the other evidence which has been attached to this response and as can be seen by any objective observer, Mr. Vare confirms that the Harris County Jail had systemic and widespread practices and training of their officers using excessive force against detainees that placed detainees at ongoing risk of serious harm. Ex. 61. Sheriff Gonzalez knew of these issues and was deliberately indifferent to these conditions. Similarly, Mr. Vare confirmed that a contributing factor to these systemic issues is the longstanding practice of failing to supervise officers, understaffing and overcrowding of the jail and the lack of observations. Ex. 61. These opinions summarize the evidence reviewed and provide more than enough fact issues on each of the alleged claims raised in the Motion for Summary Judgment.

Although Mr. Lockhart was eventually taken to the clinic for his injuries, the clinic only conducted a cursory evaluation without fully examining all of the potential injuries caused by the officers' actions. Exs. 62, 82. The clinic did not evaluate his shoulder or conduct an evaluation for other potential injuries that could have resulted from the use of force. This is consistent as the clinic rarely receives accurate details of an incident that will help with proper evaluation. *See* Ex. 99. Despite complaining of a shoulder injury, an MRI was not ordered until months later and no surgery was ever provided for his injury. *Id.* Only after Mr. Lockhart was released from Jail did he receive shoulder surgery. Shortly after the surgery, Mr. Lockhart was back in the Harris County Jail. Despite knowing of Mr. Lockhart's surgery, the Jail failed to provide any therapy or other medical care for his shoulder that is necessary after this type of surgery. Ex. 62. This lack of care has caused long-term shoulder damage and pain. Ex. 62. Plaintiff's correctional medical expert, Dr. David Mathis, confirmed that the Jail's actions constitute a failure to render adequate medical care to Mr. Lockhart. Ex. 62.

Each of these issues are directly caused by the Jails longstanding history of understaffing and overcrowding of the Jail as identified by the DOJ as early as 2009, TCJS consistently from 2017 until present day, and as identified by their own officers. Exs. 1-21, 26, 61, 62, 80, 97.

### IV.    Argument and Authorities.

### A.    Summary judgment standard.

Summary judgment is proper when no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). A genuine

issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013). The Court must resolve all reasonable doubts, and draw all reasonable inferences, in favor of the nonmovant—*i.e.*, Mr. Lockhart. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If "reasonable minds could differ" on "the import of the evidence," the Court must deny the summary judgment motion. *Anderson*, 477 U.S. at 250. The movant bears the burden of identifying for the Court the portions of the record the movant believes demonstrate the absence of a genuine issue of material fact. *See Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). A fact is considered material if its resolution could affect the outcome of the claims at issue. *See Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020).

There is no federal analog to Texas's no-evidence summary judgment motion. *Taylor v. Dolgencorp of Texas, Inc.*, No. 6:18-CV-00179-ADA, 2020 WL 1902540, at *2 (W.D. Tex. Jan. 7, 2020) (citing *BB Energy LP v. Devon Energy Prod. Co. LP*, No. 3:07-CV-0723-O, 2008 WL 2164583, at *12 (N.D. Tex. May 23, 2008); *Cardner v. Home Depot U.S.A., Inc.*, 561 F. Supp. 2d 640, 643 (E.D. Tex. 2006); *Royal Surplus Lines Insurance Company v. Brownsville Independent School District*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005). Thus, in seeking summary judgment on a "no evidence" basis, the burden remains with the *movant* to disprove or show that there is no evidence to support an element of the claim against the movant on which the nonmovant bears the ultimate burden of proof at trial. *Catrett*, 477 U.S. 317, 323-24. Only after the movant satisfies its burden of proof must the non-movant come forward with specific facts that, if true, establish the existence of a genuine issue for

trial. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).

Because the evidence in this case establishes a genuine issue of material fact regarding Plaintiffs' claims against Harris County, summary judgment is improper.

**B.    There is a genuine issue of material fact regarding Lockhart's conditions of confinement claim.**

Lockhart claims that his Fourteenth Amendment Constitutional rights to be free from excessive force and to receive adequate medical care while detained by a state actor have been violated by the conditions of his confinement in the Harris County detention center and by Harris County's failure to properly train and supervise its detention personnel. Harris County's known, pervasive, and problematic detention center policies allowed and fostered the circumstances leading to Lockhart's injuries. Consequently, Lockhart has asserted *Monell* claims against Harris County under § 1983.

To state a valid § 1983 claim, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). Harris County's motion for summary judgment attacks the first of these elements—*i.e.*, whether the conduct of their detention officers violated Mr. Lockhart's constitutional rights. It did.

Defendant is liable "if it . . . causes a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's

officers." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Ordinarily, official policies are contained in promulgated policy statements, ordinances, or regulations. *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). But a policy may also be evidenced by a custom, even if the custom has not received formal approval. *Id*. This occurs when a widespread practice is so common and well-settled as to constitute a custom that fairly represents municipal policy. *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018). Municipal liability under Section 1983 requires proof of three elements: (1) a policy; (2) promulgated by a final policymaker; (3) that is a moving force behind the violation of the constitutional right. *Monell*, 436 U.S. at 694.

In the context of *Monell* liability for constitutional violations against detainees, the cause of the constitutional violation is classified as either a condition of confinement or as an episodic act or omission. *Garza v. City of Donna,* 922 F.3d 626, 632 (5th Cir. 2019). When the state incarcerates an individual, either as punishment after criminal conviction, or as a pre-trial detention, it restricts that person's ability to fend for themselves, thus entitling that person to state provision of certain basic human needs regarding their medical care and safety. *Hare*, 74 F.3d at 638–39. In short, "pretrial detainees are entitled to protection from harm as well as needed medical care . . . ." *Id.* at 641.

Conditions of confinement claims involve "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644 (5th Cir. 1996). Therefore, a condition of confinement "is usually the manifestation of an explicit policy or restriction," however, it can also be "an unstated or de facto policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 645). In contrast, for claims based on a particular act or omission, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997). In a conditions-of-confinement claim, a plaintiff need not show deliberate indifference on the part of the municipality and "is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish . . . ." *Duvall v. Dallas Cnty., Tex.,* 631 F.3d 203, 207 (5th Cir. 2011); *Shepherd*, 591 F.3d at 452. The plaintiff need only show that the unconstitutional conditions have no reasonable relationship to a legitimate penological purpose. *Id.*

### 1. The use of excessive force against Lockhart was an identifiable condition of his confinement that served no constitutional purpose.

Although it is not entirely clear from Harris County's No-Evidence Motion for Summary Judgment, Harris County appears to argue that Lockhart's Conditions of Confinement claim must fail because there is no evidence that Lockhart "suffered a constitutional injury . . . ." [Doc. 196, ¶ 25]. Specifically, Harris County seems to contend that the beating of Lockhart by Harris County detention officers was a reasonable use of force under the circumstances, and the fact that Harris County administered any medical care to Lockhart following the June 28, 2022, altercation necessarily means he received the constitutionally required "needed" medical care. [Doc. 196, ¶¶ 35–44]. However, the evidence raises a genuine issue of material fact regarding both of these items.

The Supreme Court case *Kingsley v. Hendrickson,* 576 U.S. 389, 396–97 (2015) guides the excessive force analysis to determine whether the use of force was reasonable. The following factors bear on the reasonableness inquiry: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (4) the threat reasonably perceived by the officer; and (5) whether the plaintiff was actively resisting.

In *Fairchild v. Coryell Cnty., Tex.*, 40 F.4th 359, 366 (5th Cir. 2022), the Fifth Circuit analyzed these factors in the context of a pretrial detainee who offered only passive resistance. In that case, the detainee continued tapping on her cell door after jailers asked her to stop. *Id. a*t 364. In response, the jailers pepper sprayed her through the door, then entered her cell, pepper sprayed her again, and then threw her to the floor. *Id.* The Fifth Circuit held that the detainee's initial passive resistance did not justify throwing her to the floor. *Id.* at 366; *see also Valencia v. Wiggins*, 981 F.2d 1440, 1443, 1447 (5th Cir. 1993) (holding that hitting detainee's head against the wall and applying chokehold was unreasonable response to detainee's passive refusal to leave his cell); *Rankin v. Klevenhagen*, 5 F.3d 103, 105, 108 (5th Cir. 1993) (finding a constitutional violation when guards "slammed" inmate to the floor, handcuffed him and "stomped" on him in response to inmate's shouting at female prisoners). Moreover, the Court held that punching the detainee when she was restrained and applying force on her body while restrained was excessive, thus prohibiting summary judgment. *Id.* at 366–67. The Fifth Circuit specifically found that the detainee refusing to comply with the officer's

command, and even turning from the officer, was merely passive resistance that did not justify any use of force supporting the position that mere verbal or passive resistance does not support any physical use of force. *Id.* at 366 n.6.

In *Bourne*, Bourne jammed his food tray slot, covered his cell windows with sheets, and turned out his cell lights. *Id.* at 487. When he did not comply with officer orders to relinquish the food tray slot, Bourne was sprayed with a chemical agent and beaten by a team of five officers. *Id.* at 488. Visual obstructions obscured video evidence of the altercation, making it impossible to tell exactly what use of force was used in Bourne's cell. *Id.* "In the use-of-force report reviewing the incident, defendants uniformly state that Bourne resisted them and fought the team." *Id.* Bourne, claimed that the team of officers used excessive force in continuing their physical assault after Bourne was shackled on his cell floor. *Id.* In the subsequent excessive force litigation, the prison-defendants moved for summary judgment on Bourne's excessive force claim, arguing their use of force was reasonable. *Id.* at 492. The defendants supported their motion with testimony from the five-officer team and the obstructed video recording. *Id.* Bourne supported his response with his own sworn declaration, medical records, and unsworn declarations of fellow inmates who witnessed his beating. *Id.* Ultimately, the Fifth Court of Appeals found that Bourne's evidence raised a fact issue sufficient to defeat summary judgment.

Here, Harris County has presented incident reports authored by the officers involved in the Lockhart altercation, portions of surveillance footage, and Lockhart's Grievance filing, and essentially asks the Court to find that such evidence conclusively shows that Harris County personnel's use of force was reasonable. Doc. 196, ¶¶ 10–24.

Harris County claims that the involved detention officers used only the force necessary to remove a belligerent Lockhart from his peers after he "mouth[ed] off" to one of the officers. Doc. 196, ¶¶ 8–16; Doc. 196-6, at IA 000004, IA 000014, IA 000016, IA 000018, IA 000021. Notably, Harris County's own evidence establishes that Lockhart never posed a physical threat, did not attempt to strike an officer, or did not pose an imminent threat of substantial bodily injury that would necessitate the use of any physical force making it excessive as a matter of law. *See e.g. Williams v. Bolin*, 694 F. Supp. 3d 904, 913–14 (S.D. Tex. 2023) (Rosenthal, J.); *Fairchild*, 40 F.4th at 365–67.

The actual evidence paints a different picture from what Harris County tries to argue. According to Lockhart's grievance filing, the detention officers slammed his face into a brick wall while cuffing and striking him, then proceeded to "dr[a]g [him] out of [his] slippers and pants" into a new cell where they slammed his face into the cell's concrete floor, continually struck him in the face, stepped on his head, and threatened to break his arm. Doc. 196-6, IA 000004. Notably, this use of force occurred after Lockhart had been restrained and was no longer resisting. The video evidence supports Lockhart's version as the video shows that the officers initiated the physical contact by slamming Lockhart through the pod door, slamming his head on the wall two different times, punching him in the face, and wrenching his arms behind his back simply for alleged "verbal" resistance. Exs. 61, 62, 63, 65–68. As established through Plaintiffs' correctional expert, Lenard Vare, each of these actions constituted excessive force that no objective officer would determine was reasonable and were in accordance with Harris County's unconstitutional conditions, policies, culture, training, and supervision. Ex. 61.

Throughout the interaction, Lockhart was not physically threatening any of the officers and was merely having verbal communications that were escalated by the actions of the officers. Ex. 61, 63, 65-68. The Jail environment is different from police circumstances in the outside world. Unlike other circumstances, detention officers have more time to make decisions, have more options to de-escalate, and can ignore verbal statements of detainees as the detainees are not going anywhere in the Jail. Ex. 61.

Each of the *Kingsley* factors weigh in favor of a finding of excessive force. At the beginning of the interaction, Lockhart was at most only causing a verbal disturbance and then passive resisting when he was standing by the door refusing to turn around. Ex. 61, 63, 65-68. This does not constitute a threat posing any need for force, especially not force slamming him through a door, against a wall, punching him, and twisting his arms around. *See Fairchild¸* 40 F.4th at 365–66. Once he was restrained, Lockhart also did not pose a threat as his resistance to getting run down the hallway is not active threatening resistance that justifies punches, slamming his head against a wall, or wrenching his arms behind his shoulders. *Id.* A jury could easily conclude that Lockhart represented a low threat at the moment that the officers laid hands on him. *Id.*

As established above, Lockhart was not actively resisting at the time that the officers used force against him and simply refusing to move when officers were pushing him down the hallway does not constitute active resistance because it did not pose a threat to the officers. *See id.* The officers could have just as easily stopped their actions and let Lockhart cool off and comply on his own rather than forcing him down the hallway. Moreover, because any alleged active resistance was after Lockhart was

restrained, this factor weighs against Defendant. *See Joseph v. Bartlett*, 981 F.3d 319, 335–36 (5th Cir. 2020).

The relationship between any need for force and the amount of force used was also disproportionate. Specifically, when Lockhart was just making verbal comments and was not posing any physical threat, no force was necessary or warranted making the force used by the officers of slamming his head into the door and wall and punching him in the head excessive. *Fairchild*, 40 F.4th at 366–67. After Lockhart was restrained, the officers' grabbing of his throat, slamming his head into the wall, wrenching his arms behind his back, and punching him in retaliation for his reluctance to be dragged at high speeds down the hall was disproportionate, as simply holding him in position was the only force justified by the circumstances. *Id*. Accordingly, this factor also weighs against Defendant.

For the remaining two factors, a torn rotator cuff and facial and head injuries are severe considering the situation began as a minor verbal altercation. Additionally, the officers did not temper or limit their force because they immediately resorted to physical force, including deadly force such as strikes to the head, when there was no need for any force. Plaintiffs' expert's analysis of these factors also concludes that the force was objectively unreasonable and excessive. Ex. 61. The fact that the Defendant's grievance system did not find any support for Plaintiff's allegation is not evidence that the force was not excessive especially in light of Plaintiff's expert's testimony that the investigation was flawed and erodes the culture of the Jail. Ex. 61.

Despite the fact that the jail setting allows Harris County personnel to take their time and ignore verbal statements from detainees, Harris County has taken a different

approach by having their officers escalate situations and respond to verbal altercations with physical force as exemplified by the KHOU documentary, Sheriff Gonzalez's own statements, and the rampant statistics of uses of force resulting in bodily injury in Harris County compared to every other county in Texas. Exs. 24-28, 45-47, 61, 104. Officer Twitty and Officer Conrad, who were both involved in the use of force, have a long history of using force against detainees and not receiving any discipline. Exs. 61, 72-73, 75-79. Harris County finally terminated Officer Twitty after he was indicted for an excessive use of force that occurred around the same time as the Lockhart incident. Exs. 75-79. Twitty's termination occurred two years after the incident occurred. Ex. 75-79. Many of these documents further support each of the elements of the *Monell* claim even though Defendant is claiming that its Motion does not attack the *Monell* elements outside the question of whether a constitutional violation occurred in the first place.

Ultimately, Harris County had no legitimate reason to escalate the situation and lay hands on Mr. Lockhart other than that is what the officers do in response to verbal altercations. Harris County's argument that their officers' actions were reasonable because they did not violate their own policies directly supports Plaintiffs' claims that Harris County has a policy of using excessive force against detainees. *See Bartee v. Harris Cnty.*, No. 4:16-CV-2944, 2018 U.S. Dist. LEXIS 232945, at *12–15 (S.D. Tex. March 5, 2018) (Gilmore, J.) (holding that evidence supported a finding of the existence of a policy when the officer stated that their actions were in accordance with the policies, practice, and training of the Harris County jail). Ultimately, these diverging tales of events raise a fact

issue regarding whether the detention officers' use of force was excessive and whether their actions were reasonable in light of a legitimate penological purpose.

### 2. The failure to provide adequate medical care was an identifiable condition of Lockhart's confinement that served no legitimate government objective.

Harris County appears to argue that because Lockhart received some medical care following the June 28, 2022, altercation, he could not have suffered a constitutional injury regarding his medical treatment. Doc. 196, ¶¶ 42–44. However, as a Harris County detainee, Lockhart had a right to *adequate* medical care. *Rogers v. Boatright*, 709 F.3d 403 (5th Cir. 2013) (citing *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)). Harris County seems to further contend that the fact that Lockhart received some treatment necessarily means that Harris County personnel were not indifferent to his medical needs. [Doc. 196, ¶¶42–44. But, an inmate's right to adequate medical care is violated when prison personnel engage in conduct that "evince[s] a wanton disregard for serious medical needs." *Id* at 410 (quoting *Easter*, 467 F.3d at 463).

Here, after being savagely beaten by multiple detention officers, Lockhart received only perfunctory medical treatment. Doc. 196-10, at 1; Doc. 196-9, at 12; Exs. 61, 62, 82. Despite Lockhart's assertions that he was in pain and his visible physical discomfort, his medical examination lasted less than an hour and he was sent off with a few pain pills and an ice pack. Doc. 196-9; Exs. 62, 82. The medical staff did not perform a full evaluation of his injuries in light of the use of force because the officers failed to inform the staff of the full extent of the force used as exhibited by their lack of reporting any of the force outside of the strike by Conrad in the holding cell. Exs. 62, 63, 82. Failing to inform

medical staff that they struck Lockhart in the head and slammed his face into two different walls hinders his medical care and is deliberately indifferent to the risk of severe injury resulting from the lack of medical care. *See* Ex. 99.

When the officers abused Lockhart, they tore his rotator cuff. Exs. 62, 82. Despite the severe pain emanating from his shoulder, Harris County waited months to conduct an MRI and despite seeing the damage they did not provide Lockhart with the reparative surgery he required. *Id.* Consequently, Lockhart was forced to wait until his release - nearly a year later - before receiving surgery for his injury. *Id.* When he returned to the Jail after the surgery, Harris County did not provide any of the therapy or follow-up medical care required for someone following shoulder surgery resulting in his injuries and pain increasing and likely hindering his shoulder use for the foreseeable future. Ex. 62. Such circumstances raise a genuine issue of material fact regarding whether Harris County personnel violated Lockhart's constitutional right to adequate medical treatment. Consequently, summary judgment is improper.

## C.    There is a genuine issue of material fact regarding Lockhart's episodic acts claim.

Unlike a conditions-of-confinement claim, an episodic-acts-or-omissions claim "faults specific jail officials for their acts or omissions." *Estate of Henson*, 795 F.3d at 463 (quoting *Shepherd*, 591 F.3d at 452). For liability to attach, "the municipality must cause the constitutional tort, which occurs when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548

(5th Cir. 2008) (per curiam) (quoting *Monell*, 436 U.S. at 694) (cleaned up). This requires a showing that (1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019). And while "deliberate indifference entails something more than mere negligence, the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 634-35. The Fifth Circuit has clarified that there is no proof requirement that officials *subjectively intend* that the harm occur. *Id.* at 636.

In its motion, Harris County alleges that it has SOPs in place regarding the use of force and a grievance and complaint protocol. This assertion is a red herring and fails to address or counter Lockhart's actual complaint: that the officers are permitted and trained to use excessive force, that officers fail to provide medical care, and that overcrowding and understaffing exacerbated these issues. *See Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) ("[W]hen a municipal entity enacts a facially valid policy but fails to train its employees to implement it in a constitutional manner, that failure constitutes 'official policy' that can support municipal liability if it 'amounts to deliberate indifference.'").

Instead, the County had an unwritten and widespread practice, *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009), of (1) failing to provide medical care and medications for medical needs and injuries incurred while in the Jail, (2) failing to provide

proper observation and monitoring to provide timely medical care, (3) the institutionalization of using excessive force by Jail employees, and (4) the continuous overcrowding and understaffing of the Jail which both impeded access to medical care and heightened the use of excessive force by Jail employees. Exs. 61, 62.

Although Lockhart has separately raised failure to train and failure to supervise claims that are not challenged by the County on summary judgment, a failure to train can also form the basis of a policy or custom allegation in an episodic acts claim. *Garza*, 922 F.3d at 637 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–91 (1989)). It can also be a decision to adopt a course of action to handle a particular situation, if made by an authorized decisionmaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986).

Here, Lockhart specifically ties the actions of the officers involved in slamming his head into the wall, wrenching his arms above his back, punching him in the head several times, failing to provide a full medical evaluation and reporting, and failing to provide him with shoulder surgery or with follow-up care for his shoulder to Harris County's policies of (1) failing to provide medical care and medications for medical needs and injuries incurred while in the Jail, (2) failing to provide proper observation and monitoring to provide timely medical care, (3) the institutionalization of using excessive force by Jail employees, and (4) the continuous overcrowding and understaffing of the Jail which both impeded access to medical care and heightened the use of excessive force by Jail employees. *See supra* Section III and II.B(1) and (2); Ex. 61, 62. And these policy violations go beyond a single incident, as demonstrated not only by Lockhart's pleading itself, which details numerous similar violations against other plaintiffs to this suit, but

also by the evidence demonstrating a systemic pattern of constitutional violations by detention officers. In fact, the DOJ, TCJS, and even the Sheriff have all recognized that these policies of using excessive force against detainees, as well as failing to provide proper medical care, would result in bodily injuries and deaths. Exs. 1-21, 24, 25, 61, 62.

For example, Harris County recognized that their policies and training on the use of force was inadequate in December 2024 after the KHOU documentary so they changed their policy to clarify that strikes to the head (what happened to Lockhart) should only be used in cases where deadly force is necessary. Exs. 22, 24-25. Nobody could reasonably argue that Lockhart's actions justified deadly force. Yet at the time of the incident, Harris County had a policy of using excessive force against detainees which led to numerous examples of officers resorting to physical force for the slightest provocation. Exs. 24, 27–28, 45–47, 61, 65–68, 104. In the video evidence for the incident of John Coote and Jeremy Garrison officers are seen resorting to tackles, punches, and slamming their heads into the ground and the walls simply because the detainees were potentially verbally resisting the officer. Exs. 46, 47. Many of the officers involved in the Lockhart – and other – incidents have long histories of use of force events, oftentimes striking detainees for talking back or for not immediately complying with their commands. *See* Exs. 23, 24, 53-54, 56-57, 61, 59-60, 69-74, 75-79, 108-119.

Most condemning to Harris County's position is their own policymaker's admission, Sheriff Gonzalez, that their training and policies relating to use of force – specifically in regard to strikes to the head, face, or neck - were inadequate resulting in officers using excessive force and requiring Harris County to change their policies after

Lockhart's incident. Exs. 24-25. Moreover, multiple officers involved in the Plaintiffs' cases have admitted that their actions are in accordance with their training and policies of the Harris County Jail even when they used excessive force. Ex. 52 at 23-25, 37-39, 49, 50, 53, 62-63, 91; Ex. 57 at 46-47, 54, 69-71, 77, 79-80, 93, 96, 106-107, 110; Ex. 58 at 18, 19, 40, 48, 72, 106-109, 99, 111; Ex. 80 at 17-18, 25:12-23. For example, Officer Jin DeGuzman agreed with Sheriff Gonzalez that the Jail needed to do a better job of training their officers on de-escalation techniques prior to using force. Ex. 58 at 48:5-13. These admissions combined with the statistical data that shows that from 2018-2024 Harris County had 2,922 uses of force resulting in serious bodily injury that far exceeded any other Texas county jail combined establishes the existence of a policy despite the alleged existence of SOPs. Ex. 26, 61.

Thus, the actual evidence demonstrates that their alleged policies are simply window dressing. Plaintiff's evidence has sufficiently established a fact issue on each element of the episodic act or omission claim requiring the denial of Defendant's Motion.

**D.    The County can still be liable under *Monell* even if its employees are found to have not violated the Plaintiffs' constitutional rights.**

Moreover, even if the Harris County personnel directly involved did not violate the constitution in their treatment of Lockhart, the County is not automatically exonerated. Local governments can be held liable in at least three circumstances: (1) harm is caused by direct actions of the governmental entity itself, *see Pembaur*, 475 U.S. at 480; (2) harm is caused by the entity's policies or customs, *see Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993).; and (3) harm is caused by employees for whom the entity

has failed to provide adequate training, *see Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018).. When the injury is a result of an action of an employee who has not been trained properly, courts apply "rigorous requirements of culpability and causation"—holding a local government liable if it has been deliberately indifferent to constitutional rights. *Arrington-Bey*, 858 F.3d at 995. (quoting *Bd. of Cnty. Com'rs of Bryan Cnty., Ok. v. Brown*, 520 U.S. 397, 415 (1997).). On the other end of the spectrum, when an act of the municipality itself causes the injury, "fault and causation obviously apply." *Id.* at 994. Likewise, when an injury is caused by the straightforward carrying out of a municipal policy or custom, the determination of causation is easy. *See Garner*, 8 F.3d at 364–65..

The combined conduct of several government employees acting pursuant to policy may add up to a constitutional violation even if none of the named defendants individually violated the Constitution. *See, e.g., Barrett v. Orange County Human Rights Com'n*, 194 F.3d 341, 350 (2d Cir. 1999).; *Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985). ("if the County had ten people working for it and following a pattern and practice of the County the jury could find all of them not guilty, and still the cumulative effect of what they did pursuant to the practice or policy of the County could be a violation of the Act by the County"). After all, when multiple employees act in the same manner, that collective action is indicative of a de facto municipal policy. *Hovis v. Wichita Cnty., Tex.*, No. 3:23-CV-2220-L, 2024 WL 3836559 (N.D. Tex. July 31, 2024), *report and recommendation adopted*, No. 3:23-CV-2220-L, 2024 WL 3841480, at *9 (N.D. Tex. Aug. 15, 2024).; *Sims v. City of Jasper, Tex.*, 543 F. Supp. 3d 428, 450 (E.D. Tex. 2021)..

Likewise, a municipality's failure to provide adequate jail funding, staffing, or procedures may cause a constitutional violation even if the individual staff members involved are doing their best under untenable circumstances. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) **.;** *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004)**.;** *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985)**.** (*Monell* and its progeny do not require that a jury must first find an individual defendant liable before imposing liability on local government).

For similar reasons, a local government may be liable where the plaintiff's injury results from improper training or procedure even if the individual officer is exonerated. *See Fairley v. Luman*, 281 F.3d 913, 916–18 (9th Cir. 2002)**.;** *Rivas v. Freeman*, 940 F.2d 1491, 1495–96 (11th Cir. 1991)**.** (county sheriff held liable for lack of policies, procedures, and training, but arresting officers were merely negligent and their acts flowed from the lack of policies). Thus, even if this Court were to find that Plaintiff's pleadings were inadequate as to the individual jail officers, that finding alone would not also exonerate the County. Thus, despite its assertions to the contrary, Harris County cannot obtain summary judgment without addressing the existence of *Monell* evidence. [Doc. 196, at ¶¶ 54–56]. Because Harris County has failed to do so, summary judgment is improper.

## V.    Conclusion & Prayer

**WHEREFORE, PREMISES CONSIDERED**, Lockhart requests this Court enter an Order **denying** Defendant Harris County's Rule 56 No Evidence Motion for Summary Judgment and Motion to Sever Claims by Inmate Bernard Lockhart [SPN 0105357], and to all other relief in law or equity to which Lockhart may show himself entitled.

Respectfully submitted,

By: _/s/ Paul A. Grinke_____

**Paul A. Grinke**
State Bar No. 24032255
paul@bencrump.com
**Aaron Dekle**
State Bar No. 24100961
aaron@bencrump.com
BEN CRUMP LAW, PLLC
5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 942-0494 – Office
(800) 770-3444 – Facsimile

**Carl L. Evans**
State Bar No. 24056989
cevans@mccathernlaw.com
**Jordan A. Carter**
State Bar No. 24116174
jcarter@mccathernlaw.com
**Noah McCathern**
State Bar No.24118035
nmcathern@mccathernlaw.com
MCCATHERN PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219
(214) 532-2060 – Office

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(888) 988-6688 - Office
(214) 807-1799 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on **January 16, 2026**, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to each attorney of record who have consented in writing to accept this notice as service of this document by electronic means.

*/s/ Aaron Dekle*
**Aaron Dekle**