**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| OCTEVIA WAGNER, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:23-CV-02886 |
| | § | |
| HARRIS COUNTY, TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

---

**PLAINTIFF TRAMELL MORELLE'S RESPONSE TO HARRIS COUNTY'S
MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

---

**Paul A. Grinke**
State Bar No. 24032255
paul@bencrump.com
**Aaron Dekle**
State Bar No. 24100961
aaron@bencrump.com
BEN CRUMP LAW, PLLC
5 Cowboys Way, Ste. 300
Frisco, Texas 75034
(972) 942-0494 – Office
(800) 770-3444 – Facsimile

**Carl L. Evans**
State Bar No. 24056989
cevans@mccathernlaw.com
**Jordan A. Carter**
State Bar No. 24116174
jcarter@mccathernlaw.com
**Noah McCathern**
State Bar No.24118035
nmccathern@mccathernlaw.com
MCCATHERN PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219
(214) 532-2060 – Office

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD &
SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000 - Office
(214) 946-8433 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................iii

TABLE OF EXHIBITS ......................................................................................................viii

I.     Introduction ...........................................................................................................1

II.    Evidence & Exhibits ..............................................................................................2

III.   Factual Background ...............................................................................................3

IV.    Argument and Authorities ....................................................................................7

       A.     Summary judgment standard ...................................................................7

       B.     There is a genuine issue of material fact regarding Morelle's
              conditions of confinement claim..............................................................7

              1.     A genuine issue of material fact exists regarding
                     Morelle's conditions of confinement claim as it relates
                     to Harris County's failure to protect him from other
                     detainees.....................................................................................11

       C.     A genuine issue of material fact exists regarding Morelle's
              failure to train and supervise claims....................................................17

              1.     Harris County's failure to train its detention officers
                     led to a violation of Morelle's constitutional right to
                     protection from detainee violence ............................................19

              2.     Harris County's failure to supervise its detention
                     officers led to a violation of Morelle's constitutional
                     right to protection from detainee violence ..............................20

       D.     Conditions of confinement and failure to train or supervise
              can establish Monell liability even if there is no independent
              constitutional violation by an employee ...............................................22

V.     Conclusion & Prayer............................................................................................24

CERTIFICATE OF SERVICE ............................................................................................26

# TABLE OF AUTHORITIES

Page(s)

*Alberti v. Klevenhagen,*
    790 F.2d 1220 (5th Cir. 1986)......................................................................13, 14

*Alvarez v. City of Brownsville,*
    904 F.3d 382 (5th Cir. 2018) ...............................................................................8

*Anderson v. City of Atlanta,*
    778 F.2d 678 (11th Cir. 1985) ...........................................................................24

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986).............................................................................................7

*Arrington-Bey v. City of Bedford Heights,*
    858 F.3d 988 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018)..................22, 23

*Barrett v. Orange County Human Rights Com'n,*
    194 F.3d 341 (2d Cir. 1999) ..............................................................................23

*Bell v. Wolfish,*
    441 U.S. 520 (1976)...........................................................................................11

*Blackmore v. Kalamazoo County,*
    390 F.3d 890 (6th Cir. 2004) .............................................................................24

*Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,*
    520 U.S. 397 (1997)...........................................................................................18

*Chew v. Gates,*
    27 F.3d 1432 (9th Cir. 1994) .............................................................................23

*City of Canton, Ohio v. Harris,*
    489 U.S. 378 (1989)..................................................................................18, 19, 21

*Cope v. Coleman Cnty.,*
    No. 23-10414, 2024 U.S. App. LEXIS 15549 (5th Cir. June 26, 2024) ...............10

*Doe v. Taylor Indep. Sch. Dist.,*
    15 F.3d 443 (5th Cir. 1994) (en banc)...............................................................21

*Duvall v. Dallas Cnty., Tex.,*
    631 F.3d 203 (5th Cir. 2011) ............................................................................9, 11

## TABLE OF AUTHORITIES

**Page(s)**

*Dyer v. Houston,*
    964 F.3d 374 (5th Cir. 2020) .................................................................................7

*Edwards v. City of Balch Springs, Tex.,*
    70 F.4th 302 (5th Cir. 2023) ................................................................................21

*Fairley v. Luman,*
    281 F.3d 913 (9th Cir. 2002) ...............................................................................24

*Farmer v. Brennan,*
    511 U.S. 825 (1994)...........................................................................12, 13, 15

*Garcia v. Salt Lake County,*
    768 F.2d 303 (10th Cir. 1985) .............................................................................23

*Garner v. Memphis Police Dep't,*
    8 F.3d 358 (6th Cir. 1993) .............................................................................22, 23

*Garza v. City of Donna,*
    922 F.3d 626 (5th Cir. 2019) ............................................................................9, 18

*Gomez v. Galman,*
    18 F.4th 769 (5th Cir. 2021) (per curiam)............................................................8

*Gros v. City of Grand Prairie, Tex.,*
    34 F. App'x. 150 (5th Cir. 2002) (per curiam) ..................................................18

*Hare v. City of Corinth, Miss.,*
    74 F.3d 633 (5th Cir. 1996) .......................................................................9, 10, 12

*Haverda v. Hays County,*
    723 F.3d 586 (5th Cir. 2013) .................................................................................7

*Hinojosa v. Livingston,*
    807 F.3d 657 (5th Cir. 2015) ...............................................................................13

*Horton v. Cockrell,*
    70 F.3d 397 (5th Cir. 1995) .................................................................................11

*Hovis v. Wichita Cnty., Tex.,*
    No. 3:23-CV-2220-L, 2024 WL 3836559 (N.D. Tex. July 31, 2024)..................23

# TABLE OF AUTHORITIES

**Page(s)**

*Longoria v. Texas*,
    473 F.3d 586 (5th Cir. 2006) ................................................................................11

*Monell v. Dep't of Soc. Servs. of the City of New York*,
    436 U.S. 658 (1978) ................................................................................ *passim*

*Morgan v. Fairfield Cty., Ohio*,
    903 F.3d 553 (6th Cir. 2019) ...............................................................................23

*Murray v. LeBlanc*,
    629 F. Supp. 3d 437 (M.D. La. 2022) ...................................................................21

*Newcomb v. City of Troy*,
    719 F. Supp. 1408 (E.D. Mich. 1989) ..................................................................23

*Oliver v. Gusman*,
    611 F. Supp. 3d 290 (E.D. La. 2020) ............................................................12, 13

*Owen v. City of Independence*,
    445 U.S. 622 (1980) ............................................................................................23

*Pembaur v. City of Cincinnati*,
    475 U.S. 469 (1986) ............................................................................................22

*Rivas v. Freeman*,
    940 F.2d 1491 (11th Cir. 1991) ..........................................................................24

*Roberts v. City of Shreveport*,
    397 F.3d 287 (5th Cir. 2005) ...............................................................................19

*Sanders– Burns v. City of Plano*,
    594 F.3d 366 (5th Cir. 2010) ...............................................................................18

*Scott v. Moore*,
    114 F.3d 51 (5th Cir. 1997) ...................................................................................9

*Shepherd v. Dallas Cnty.*,
    591 F.3d 445 (5th Cir. 2009) ...........................................................................9, 10

*Sims v. City of Jasper, Tex.*,
    543 F. Supp. 3d 428 (E.D. Tex. 2021) .................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

*Snow v. City of El Paso, Tex.,*
501 F. Supp. 2d 826 (W.D. Tex. 2006) ..............................................................18

*Thomas v. Cook Cnty. Sheriff's Dep't,*
604 F.3d 293 (7th Cir. 2010) ............................................................................24

*Triple Tee Golf, Inc. v. Nike, Inc.,*
485 F.3d 253 (5th Cir. 2007) ..............................................................................7

*United States v. Hinds Cnty. Bd. of Supervisors,*
128 F.4th 616 (5th 2024) ................................................................5, 10, 13, 14

*Walker v. Sears, Roebuck & Co.,*
853 F.2d 355 (5th Cir. 1988) ..............................................................................7

*Webster v. City of Houston,*
735 F.2d 838 (5th Cir. 1984) ..............................................................................8

*West v. Atkins,*
487 U.S. 42 (1988)................................................................................................8

*World Wide St. Preachers Fellowship v. Town of Columbia,*
591 F.3d 747 (5th Cir. 2009) ............................................................................17

*Zarnow v. City of Wichita Falls, Tex.,*
614 F.3d 161 (5th Cir. 2010) ............................................................................19

**Other Authorities**

U.S. CONST. AMEND. XIV ....................................................................................7

FED. R. CIV. P. 56(a)..............................................................................................7

## TABLE OF EXHIBITS

Plaintiffs are providing an Omnibus Exhibit List due to the overlapping and intertwined nature of the claims and evidence for the various Motions for Summary Judgment. Plaintiffs incorporate each of these exhibits into the body of the Response as if fully set forth therein. Due to the exhibit size, Plaintiffs will attach an exhibit cover sheet with a link to the exhibits on a share file or similar device that will allow the Court and the parties to access the exhibits.

General

1. DOJ 2009 Report (Wagner 79-102)

2. TCJS Report May 2013-2017 (Wagner 103-183)

3. TCJS Report Dec 2017 (Wagner 184-186)

4. TCJS Report Aug 2018 (Wagner 187-189)

5. TCJS Report Dec 2020 (Wagner 201-207)

6. TCJS Report April 2021 (Wagner 208-210)

7. TCJS Report Nov 2021 (Wagner 211-217)

8. TCJS Report Sept. 2022 (Wagner 224-228)

9. TCJS Report Dec 2022 (Wagner 229-231)

10. TCJS Report April 2023 (Wagner 237-239)

11. TCJS Report Feb. 2023 (Wagner 240-248)

12. TCJS Report Aug. 23, 2023 (Wagner 249-251)

13. TCJS Report Aug 2023 (Wagner 252-261)

14. TCJS Report Feb 2024 (Wagner 263-268)

15. TCJS Report May 23 Remedial Order (Wagner 3246-3247)

16. TCJS Report May 2024 Amend Remedial Order (Wagner 3248-3250)

17. TCJS Report Jan. 2025

18. Harris County Comm. To TCJS Death In Custody (Observation)

19. TCJS Report May 6, 2025

20. TCJS Harris County Second Remedial Order

21. TCJS Report June 2025

22. Harris County's Updated 2024 UOF Policy

23. Eric Morales Personnel File and Investigation

24. KHOU Struck Documentary (Video)

25. KHOU Struck Article

26. TCJS SIR Total Count Files (Compiled)

27. KHOU UOF Incident Report Examples (Compiled)

28. SIR UOF Examples (Compiled)

29. SIR Assault Examples (Compiled)

30. KHOU Assault Examples (Compiled)

31. John Coote Assault Video

32. John Coote Assault Incident Report

33. Evan Lee Assault Texas Rangers Report

34. Zachary Zepeda Assault Video

35. Zachary Zepeda Assault Incident Report

36. Michael Griego Texas Ranger Report and Autopsy Report (Compiled)

37. Kenneth Richard Assault Incident Report

38. Jaquez Moore Assault Incident Report

39. Fred Harris Assault Video

40. Fred Harris Assault Incident Report

41. Rory Ward Assault Investigation Summary and Autopsy Report (Compiled)

42. Kareem Jefferson Assault Incident Report

43. Rory Ward Observation Round Videos Examples

44. Matthew Shelton Observation Round Videos Examples

45. Jacoby Pillow UOF Video

46. Jeremy Garrison UOF Videos and Incident Reports

47. John Coote UOF Video

48. Lenard Vare CV

49. Dr. David Mathis CV

50. Dr. Victor Weedn CV

51. Dr. Vinneth Carvalho CV

52. Officer Mark Garcia Deposition Transcript

53. Officer Mark Garcia Pews Report

54. Officer Mark Garcia Incident History Report

55. Officer Maxim Herman Deposition Transcript

56. Officer Maxim Herman Pews Report

57. Officer Maxim Herman Incident History Report

58. Officer Jin DeGuzman Deposition Transcript

59. Officer Jin DeGuzman Pews Report

60. Officer Jin DeGuzman Incident History Report

Lockhart

61. Lenard Vare Expert Report

62. Dr. David Mathis Expert Report

63. UOF Incident Report (Lockhart)

64. IAD Grievance (Lockhart)

65. Surveillance Footage Inside Pod (Lockhart)

66. Surveillance Footage Outside Pod UOF (Lockhart)

67. Surveillance Footage Entering Hallway (Lockhart)

68. Surveillance Footage Running Down Hallway (Lockhart)

69. Officer Alex Conrad Incident History Report

70. IAD Investigation Officer Alex Conrad

71. Officer Alex Conrad Observation Reprimand

72. Officer Alex Conrad PEWS and IAD Investigation

73. Officer Alex Conrad PEWS Report

74. Harris County Operational Records (Lockhart)

75. Officer Twitty IAD Investigation Report

76. Officer Twitty First Pews Report Notification

77. Officer Twitty Second Pews Report Notification

78. Officer Twitty PEWS Report

79. Officer Twitty Incident History Report

80. Officer Conrad Deposition Transcript

81. Officer Patrick Allen Deposition Transcript

82. Bernard Lockhart Medical Records

83. Officer Bruce Hayes Deposition Transcript

Radcliffe

84. Lenard Vare Expert Report

85. Dr. David Mathis Expert Report

86. Radcliffe Assault Video

87. Radcliffe Incident Report

88. Radcliffe Photo

89. Radcliffe Jail Medical Records

90. Officer Suzana Reskovic Incident Case History

91. Officer Chin Chiu Incident Case History

92. Antonio Radcliffe Deposition Transcript

93. Officer Suzana Reskovic Deposition Transcript

Morelle

94. Lenard Vare's Expert Report

95. Morelle's medical records and incident report

96. Morelle's Deposition Transcript

97. Officer Calyn Cutler Deposition Transcript

Zachery Johnson

98. Lenard Vare Expert Report

99. Dr. Carvalho Expert Report

100.    Zachery Johnson Incident Report and Jail Records

101.    Zachery Johnson Assault Video Footage

102.    Zachery Johnson Operation Records

103.    Zachery Johnson Clinic Records and medical records

Twedt

104.    Lenard Vare Expert Report

105.    Twedt UOF Incident Video Footage

106.    Twedt UOF Incident Report

107.    Twedt Deposition Transcript

108.    Officer Jimmy Poole Pews Report

109.    Officer Jimmy Poole Incident History Report

110.    Officer Andrew Pena Pews Report

111.    Officer Andrew Pena Incident History Report

112.    Officer Jon Vickers-Gilbreath Pews Report

113.    Officer Jon Vickers-Gilbreath Incident History Report

114.    Officer Tyree Simpson Pews Report

115.    Officer Tyree Simpson Incident History Report

116.    Officer Christopher Ortega Pews Report

117.    Officer Christopher Ortega Incident History Report

118.    Officer Thomas Muniz Pews Report

119.    Officer Thomas Muniz Incident History Report

120.    Twedt Medical Records

Kevin Smith

121.    Lenard Vare Expert Report

122.    Dr. Mathis Expert Report

123.    Dr. Weedn Expert Report

124.    Kevin Smith Incident Video Footage

125.    Kevin Smith Observation Rounds Video Footage

126.    Kevin Smith Autopsy Report

127.    Officer Wong Deposition Transcript

128.    Kevin Smith Investigation Summary and Incident Report

129.    Kevin Smith Medical Records

130.    Harris County Observation Records

131.    Harris County Operational Records

**PLAINTIFF TRAMELL MORELLE'S RESPONSE TO HARRIS COUNTY'S**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

COMES NOW, Tramell Morelle in the above-referenced cause, and files this, his

response to Defendant Harris County's Motion for Summary Judgment and Brief in

Support [Doc. 205] and would show the Court as follows:

## I.    Introduction

On July 28, 2023, Tramell Morelle was booked into Harris County Jail. During his

dress out, before he went to housing, Morelle testified that he was beaten by some of the

officers and that his jaw was at least injured. However, he did not go to the medical clinic

at that time. He was then housed, at which point Inmate Molina assaulted him and he

was again hit in the face and jaw. During that fight, other inmates surrounded Molina

and "had his back" which supports his contention that he was assaulted by multiple

detainees even if only one detainee struck him. Morelle's jaw was broken requiring

surgery.[1]

Harris County's main arguments attack the pleadings rather than the evidence

which is required for summary judgment. Any pleading deficiencies can be easily

rectified to conform with the evidence precluding any summary judgment. Defendant

also twists Morelle's deposition to misstate the legal theories of the case, i.e. causation

---

[1] The use of force incident arose for the first time during Morelle's deposition as Defendant's documentation lacked any mention of that use of force. Plaintiffs are anticipating moving for leave to amend the complaint to add this claim and to conform the pleadings with the evidence. Plaintiffs are anticipating moving for leave at one time instead of moving for leave at each moment new discovery is received to save judicial resources. Plaintiffs would ask the Court for the opportunity to amend. Because Plaintiff has not pled the use of force claim at this time and it is not the subject of the summary judgment, Plaintiff will focus on the detainee assault.

between observation and his injuries. Those are opinions left best to the attorneys and experts. The evidence clearly establishes that the failure to observe and supervise detainees caused the increased violence in the Jail directly correlating to Morelle's injuries. Defendant's attempt to alter Morelle's testimony to misstate the actual legal theory of the case is insufficient to support summary judgment.

In its summary judgment motion, Harris County presents the Court with three primary arguments: (1) Morelle did not suffer a constitutional violation when Harris County detention officers failed to prevent detainee-on-detainee violence; and (2) Morelle's failure to train and supervise claims must fail because (a) he did not identify the defective training, the officers who were not supervised, or which supervisor failed to supervise, and (b) Morelle failed to connect the allegedly defective training and supervision to a constitutional violation. However, the record evidence raises a genuine issue of material fact regarding each of Morelle's claims, and therefore the Court should deny Harris County's motion for summary judgment.[2]

## II.    Evidence & Exhibits

As the Court is aware, this case is still in the middle of discovery. This case also contains unique circumstances with limited access to key witnesses and limited communications with specific parties and ongoing criminal and administrative

---

[2] Defendant makes several arguments attacking the pleadings. The Second Amended Complaint was solely to address the capacity of the parties and not to conform the pleadings with the evidence discovered at that point, which was minimum. Any inaccuracies between the facts in the complaint and the facts in the reports is irrelevant because ultimately the same policies and conditions apply regardless of whether it was one inmate with other inmates surrounding or several inmates at once. Plaintiffs anticipate seeking leave to amend the pleadings to conform with the evidence as discovery is ongoing.

investigations which have impeded discovery. Plaintiffs have attached to this Response the exhibits and evidence identified in the Table of Exhibits which provide fact questions raised by Defendant's arguments. Plaintiffs anticipate receiving more supporting evidence including the inspection of the jail, the deposition of Sheriff Gonzalez, additional depositions of officers, and additional Jail records which continue to trickle in.

### III.    Factual Background

On July 30, 2023, Tramell Morelle was in the Harris County Jail. Ex. 95, 96. While in dress out, Morelle was assaulted by several officers resulting in injuries to his body and face. Ex. 96. Morelle was never sent to the clinic and the officers did not report the use of force, resulting in no documentation of this incident. A few hours after entering housing, Morelle was placed with another detainee, Ulysses Molina. *Id.* While in the cell, Molina assaulted Morelle. Ex. 95, 96. Morelle suffered a broken jaw and other injuries including PTSD and anxiety. *Id.*

As only one officer was watching the pod of cells, she was not fully observing Morelle's cell to prevent the assault. Ex. 94. As stated in the incident report, the assault occurred in a known "blind spot" of the cell. Ex. 95. Officer Cutler, who was the officer in the pod control center, testified that assaults routinely occurred in that area and officers often found detainees in their beds, having already been assaulted without the officers noticing. Ex. 97 at 17:13-18:6, 27:7-28:14. In fact, because Morelle's cell was a blind spot, officers relied on other detainees who could see the blind spot to alert officers if something was amiss. *Id.*

This observation issue was compounded by the policy, training, and practice of officers to simply make their face-to-face observations by looking through the window in the pod control center and scanning the QR code inside the office instead of entering the cell and physically looking at each detainee. *Id.* at 25:3-13. This was a common policy that the Jail was cited for by TCJS, and is against correctional practices as it impedes the ability to notice and deter assaults. Ex. 11, 94, 121. As stated in the TCJS report from February 2023, "[s]taff were observed conducting face-to-face observations from the control stations due to insufficient availability of rovers . . . jailers documenting the required visual observation of inmates by scanning QR codes that were located within the housing control station . . . and inspection staff does not believe that the officer is able to visually observe every inmate, face-to-face, that is assigned to the housing area." Ex. 11. As stated by Plaintiff's expert, this is a major issue that leads to increased violence as the best deterrence of detainee assaults is officer presence within the cells. Ex. 121.  This also causes other issues because it impedes officers' ability to react appropriately. Ex. 121.

Officer Cutler confirmed that the floor was short staffed because there was only one rover available to respond. Ex. 97 at 19-20. There is no indication on how long the rover took to respond to the assault and regardless of their staffing they clearly did not prevent the assault.

The violence Morelle faced is not an isolated incident but is exemplary of the constant threat of substantial physical harm to all detainees in the Harris County Jail – this constitutes a condition of the Jail. This risk of violence is "longstanding, pervasive,

well-documented, [and] expressly noted by prison officials." *United States v. Hinds Cnty. Bd. of Supervisors*, 128 F.4th 616, 627 (5th 2024).

As early as 2009 in the Department of Justice's Report on the Jail, Harris County was made aware that they did not have sufficient protocols and policies in place to control a violent detainee population leading to violence. Ex. 1. In 2021, TCJS informed Harris County that the overpopulation and understaffing of the Jail led to a rapid increase of detainee-on-detainee violence which was a result of the policies of the jail. Ex. 7. Sheriff Gonzalez recognized this violence in a speech before his election. Doc. No. 122 at 73 n.4.

From 2018 to present, Sheriff Gonzalez has acknowledged the rapid and growing violence in the Jail by compiling monthly reports and statistics showing the number of detainee-on-detainee assaults. Ex. 26. Since 2018, Harris County Jail has had 56,907 detainee assaults. Ex. 26. This is alarming because, despite Harris County comprising only 7.8% of the state's jail population, it experiences more assaults than all other Texas county jails *combined* for the same time period. Ex. 26. For example, in January 2023, Harris County had 665 assaults accounting for 52% of the assaults in Texas. Ex. 26. Dallas, Travis, and Tarrant counties whose jails accounted for 19% of the jail population had only eight assaults, accounting for .6% of the assaults for the state. Ex. 26. Plaintiffs' injuries are exemplary of the Jail's prolific and uncontrolled violence, which has led to detainee deaths and serious bodily injuries. Ex. 26, 29. Harris County has done nothing to stop the violence as their only solution is to respond after the assault occurred.

Plaintiffs have also provided examples of specific incidents that have happened to other detainees and to other Plaintiffs themselves. *See* Ex. 30, 31-42, 95, 100-101. For

example, Fred Harris was placed in a holding cell with another detainee who was a known violent offender. Ex. 39-40. The other detainee attacked and killed Harris on video, and it took the officers several minutes to respond. *Id.* John Coote was placed into a cell and was assaulted for several minutes by multiple detainees – officers failed to respond for several minutes because the Jail was understaffed. Ex. 31-32. Coote suffered severe injuries as a result. *Id.* Evan Lee was assaulted numerous times and was forced to fight other detainees to protect himself from gangs. Ex. 33. Lee passed away from his injuries caused by an unobserved assault. Ex. 33. Zachery Zepeda was attacked and knocked out by another detainee. Ex. 34-35. Similarly, Michael Griego was placed in the same mental health pod as many violent offenders who had a history of attacking other detainees when he was assaulted and killed by a known violent detainee. Ex. 36. No officer witnessed or stopped the assault. *Id.*

These are just a few of the examples of assaults in the Jail; however, this is more than enough evidence to show that the Jail has a culture of violence that poses a substantial threat of serious harm to all its detainees.

Plaintiff's correctional expert, Lenard Vare, identified many of these issues in his report after reviewing thousands of pages of documents, reports, Sheriff Gonzalez's statements, and video footage. Ex. 84, 94. Mr. Vare found that Harris County by and through the Sheriff has known or should have known of the violence in the Jail and has consistently failed to provide adequate supervision, safety, and security for detainees and has knowingly disregarded the dangers of inmate assaults. Ex. 84, 94. These prolific dangers were exacerbated by the lack of supervision, training, and observation by officers

as well Jail understaffing and overcrowding. Ex. 84, 94. Moreover, the department has continuously failed to investigate and rectify the issues. Ex. 84, 94. Harris County has not taken any reasonable steps to address these long-standing problems that cause systemic deficiencies and an unreasonably dangerous condition for detainees. Ex. 84, 94.

## IV.    Argument and Authorities

### A.    Summary judgment standard.

Summary judgment is proper when no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013). The Court must resolve all reasonable doubts, and draw all reasonable inferences, in favor of the nonmovant—*i.e.*, Mr. Lockhart. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If "reasonable minds could differ" on "the import of the evidence," the Court must deny the summary judgment motion. *Anderson*, 477 U.S. at 250. The movant bears the burden of identifying for the Court the portions of the record the movant believes demonstrate the absence of a genuine issue of material fact. *See Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). A fact is considered material if its resolution could affect the outcome of the claims at issue. *See Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020).

### B.    There is a genuine issue of material fact regarding Morelle's conditions of confinement claim.

Morelle claims that his Fourteenth Amendment Constitutional rights to be protected from harm caused by other inmates and to be free from excessive force while

detained by a state actor have been violated by the conditions of his confinement in the Harris County Jail and by Harris County's failure to properly train and supervise its detention personnel. Harris County's known, pervasive, and problematic detention center policies allowed and fostered the circumstances leading to Morelle's injuries. Consequently, Morelle has asserted *Monell* claims against Harris County under § 1983.

To state a valid § 1983 claim, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). Harris County's motion for summary judgment attacks the first of these elements—*i.e.*, whether the conduct of its personnel violated Morelle's constitutional rights. It did.

The City is liable "if it . . . causes a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Ordinarily, official municipal policies are contained in promulgated policy statements, ordinances, or regulations. *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). But a policy may also be evidenced by a custom, even if such custom has not received formal approval. *Id*. This occurs when a widespread practice is so common as to constitute a custom that fairly represents municipal policy. *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018). Therefore, municipal liability under Section 1983 requires proof of three elements: (1) a policy; (2) promulgated by a final policymaker; (3) that is a moving force behind the violation of the constitutional right. *Monell*, 436 U.S. at 694.

In the context of *Monell* liability for constitutional violations against detainees, the cause of the constitutional violation is classified as either a condition of confinement or as an episodic act or omission. *Garza v. City of Donna,* 922 F.3d 626, 632 (5th Cir. 2019). Conditions of confinement claims involve "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644 (5th Cir. 1996).

Therefore, a condition of confinement "is usually the manifestation of an explicit policy or restriction," however, it can also be "an unstated or de facto policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 645). In contrast, for claims based on a particular act or omission of one or more officials, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

In a conditions-of-confinement claim, a plaintiff need not show deliberate indifference on the part of the municipality. *Duvall v. Dallas Cnty., Tex.*, 631 F.3d 203, 207 (5th Cir. 2011). Rather, the plaintiff need only show that the unconstitutional conditions have no reasonable relationship to a legitimate governmental interest. *Id.*

When the state incarcerates an individual, either as punishment after criminal conviction, or as a pre-trial detention, it restricts his ability to fend for himself, thus entitling him to state provision of certain basic human needs regarding safety. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 638–39 (5th Cir. 1996). "Pretrial detainees are entitled to

protection from harm as well as needed medical care . . . ." *Id.* at 641. Harris County violated Morelle's right to protection by failing to protect Morelle from his fellow inmate.

Defendant misstates the law that when an individual actor is involved then the case, there cannot be a condition of confinement. Doc. No. 205 at 5. This Court, in its Order on the Motion to Dismiss, already rejected this argument and that decision was subsequently reinforced by the Fifth Circuit. Doc. No. 51 at 17; *Cope v. Coleman Cnty.*, No. 23-10414, 2024 U.S. App. LEXIS 15549, at *12, 22 n.14 (5th Cir. June 26, 2024) ("One fundamental problem with that argument is that it assumes an otherwise valid conditions claim—i.e., one alleging that the conditions alone are sufficient to cause the harm—cannot survive if an individual's actions also contributed to the alleged harm. This court has never said that").

Defendant includes a throw-away argument that overcrowding and understaffing cannot be an unconstitutional condition of confinement. Doc. No. 205 at 5. Their own argument and the case they rely on cut against this argument as overcrowding and understaffing can be an unconstitutional condition of confinement and the case cited only requires causation between the condition and the injury. *See Shepherd*, 591 F.3d at 453 (holding that understaffing was a condition of confinement); *Hinds Cnty.*, 128 F.4th at 627-30. The Court also rejected this argument in the Order on the Motion to Dismiss, finding that understaffing and overcrowding is a condition and policy. Doc. No. 51 at 24-26.

1. **A genuine issue of material fact exists regarding Morelle's conditions of confinement claim as it relates to Harris County's failure to protect him from other detainees.**

"It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. Texas,* 473 F.3d 586, 592 (5th Cir. 2006). Prison officials must guard against current threats, as well as sufficiently imminent dangers that may cause harm in the future. *Horton v. Cockrell,* 70 F.3d 397, 400-01 (5th Cir. 1995). In its Motion for Summary Judgment, Harris County argues that Morelle's conditions of confinement claim must fail because it only neglected to protect him against one fellow detainee instead of seven as previously thought and because "[t]here is no evidence to suggest that [the] Detention Officer[s] had reason to believe that Morelle—who had just arrived at the jail— was in imminent danger from Molina." Doc. 205, ¶¶ 27, 33. In short, Harris County contends it is entitled to summary judgment because Morelle cannot show deliberate indifference on the part of its Detention Officers. *See* Doc. 205, ¶¶ 30–34.

However, in a conditions-of-confinement claim, a plaintiff need not show deliberate indifference by the municipality. *Duvall v. Dallas Cnty., Tex.,* 631 F.3d 203, 207 (5th Cir. 2011). He need only show that the unconstitutional conditions have no reasonable relationship to a legitimate governmental interest. *Id.* This "reasonable relationship test" is the functional equivalent of the deliberate indifference standard used in episodic-act-or-omission cases. *Id.* (citing *Scott v. Moore,* 114 F.3d 51, 54 (5th Cir. 1997) (en banc)); *see also Bell v. Wolfish,* 441 U.S. 520, 539 (1976) ("[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court

permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.").

Harris County correctly states that prison officials are liable where they demonstrate subjective deliberate indifference to a substantial risk of serious harm. *See Hare v. City of Corinth,* 74 F.3d 633, 643 (5th Cir. 1996). Deliberate indifference is more than mere negligence and requires that the jail official (1) be subjectively aware that the detainee faces a substantial risk of serious harm, and (2) disregards that risk by failing to take reasonable measures to alleviate it. *See Farmer v. Brennan,* 511 U.S. 825, 847 (1994); *Hare,* 74 F.3d at 648. To satisfy this requirement, a "claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer,* 511 U.S. at 842.

"Whether a [jail] official had the requisite knowledge of a substantial risk is **a question of fact** . . . ." *Id.* (emphasis added). This can be demonstrated in the usual ways, including inferences from circumstantial evidence — meaning that fact finders could conclude that a jail officer knew of a substantial risk from the very fact that the risk was obvious. *Id.* For example, if there is evidence that a substantial risk of detainee attacks is longstanding, pervasive, well-documented, or has been expressly noted by jail officials in the past, and the circumstances suggest that the jail officer (which includes Sheriff Gonzalez) has been exposed to information concerning the risk, such evidence can be sufficient to permit a trier of fact to find that the jail officer had actual knowledge of the risk. *Id.* at 842–43; *see also Oliver v. Gusman,* 611 F. Supp. 3d 290, 298-99 (E.D. La. 2020)

(finding constitutional violation adequately alleged where complaint asserted that DOJ findings letters and Jail Monitor reports demonstrated that risk of inmate attacks were "longstanding, pervasive, [and] well-documented," risk of attack was exacerbated by officers' failure to supervise inmates and respond to requests for help, and that officers must have known of risk as they would have been exposed to documents in the course of official duties).

A jail officer also could not claim to not be deliberately indifferent by arguing that, while he may have been aware of an obvious, substantial risk to detainee safety, he did not know that the plaintiff was especially likely to be assaulted by the specific prisoner who eventually committed the assault *Farmer,* 511 U.S. at 843; *see also Hinojosa v. Livingston,* 807 F.3d 657, 668 (5th Cir. 2015); *Oliver,* 611 F. Supp. 3d at 299–300. "[I]t does not matter whether the . . . [detainee] faces an excessive risk of attack for reasons personal to him or because all [detainees] in his situation face such a risk." *Farmer,* 511 U.S. at 843. If jail officers were aware that detainee assaults were common and uncontrolled, it would be irrelevant to liability whether the jail officers could not guess beforehand precisely who would attack whom. *See id.* In short, the law does not require the specificity Harris County would impose on Morelle's claim.

Two additional cases illustrate this principle that when the jail has a condition of rampant detainee-on-detainee violence a plaintiff need only show the extensive nature of this violence to illustrate a constitutional violation and unconstitutional condition of confinement. *Hinds Cnty.*, 128 F.4th at 626-30; *Alberti v. Klevenhagen*, 790 F.2d 1220, 1224–27 (5th Cir. 1986). In *Hinds Cnty.*, the County jail was found to have a rampant history of

detainee violence in conjunction with systemic staffing issues that was sufficient to find that the County was deliberately indifferent to detainee safety. *Hinds Cnty.*, 128 F.4th at 626-30. The Court specifically found that seventy-seven assaults in a four-month period was sufficient to illustrate the "unchecked prisoner-on-prisoner violence" in violation of the Constitution. *Id.* at 628. The Court noted that the jail's observation failures aided the rampant violence. *Id.* at 629.

In *Alberti*, the Fifth Circuit analyzed injunctive relief imposed by the District Court on the Harris County Jail due to its rampant violence. 790 F.2d at 1224-27. The Court upheld the District Court's findings that the Jail had a condition of rampant violence constituting "a continuous pattern of deprivations which clearly reach constitutional dimensions." *Id.* at 1224 (quotations omitted). The Fifth Circuit noted that the Jail had 1,200 acts of violence reported by inmates each year. *Id.* at 1225–26. The Court held that the violence was coupled with the lack of observation and supervision of the officers with blind spots and times where detainees were left unsupervised. *Id.*

Harris County Jail in July 2023, the month of Morelle's incident, had 654 detainee assaults reported to TCJS. Ex. 26. For 2022, Harris County Jail had 7,910 reported assaults. *Id.* For 2023, Harris County Jail had 8,340 reported assaults accounting for 54% of all assaults in Texas jails. *Id.* These numbers dwarf the numbers that the Fifth Circuit determined was sufficient to establish a pattern of constitutional violations in *Hinds Cnty.* and *Alberti*. *Hinds Cnty.*, 128 F.4th at 626–30 (77); *Alberti*, 790 F.2d at 1224–27 (1,200). Moreover, Plaintiffs' expert opined that the jail has a prolific issue in staffing and observation which increases the violence amongst detainees. Ex. 94.

Here, Harris County argues that it could not possibly have violated Morelle's constitutional right to be protected from detainee violence because: (1) Morelle was physically attacked only by one inmate rather than the seven previously alleged; (2) Harris County had no reason to specifically expect Molina would attack Morelle; and (3) it is possible that Morelle's injuries were caused by unknown Harris County detention officers instead of detainees. [Doc. 205, ¶¶ 27, 33]. But, none of these allegations establish a lack of a constitutional violation because Harris County detention officers owed Morelle a duty of protection from detainee violence, whether from one detainee or several. Any version of events testified to by Morelle still constitutes a violation of his constitutional rights.

As the previously cited case law explains, the relevant inquiry is not whether Harris County personnel had reason to expect that Ulysses Molina, or any other inmate, was about to spring a surprise attack on Tramell Morelle. Rather, the relevant inquiry is whether there was an obvious risk of a similar assault by any detainee on any other detainee. *See Farmer,* 511 U.S. at 843.

The Texas Commission on Jail Standards has repeatedly issued reports and Notices of Noncompliance regarding Harris County's: (1) failure to properly observe detainees; (2) failure to adequately staff its facilities; (3) unremedied tendency to overcrowd its facilities; and (4) repeatedly holding detainees in temporary accommodations for far longer than the 48-hour maximum period. Ex. 2-20. In December 2021, TCJS expressly noted that the inadequate staffing and supervision had a direct correlation in the increase in detainee violence. Ex. 7. Furthermore, detainee-on-detainee

violence – especially violence in the overcrowded and understaffed pods – is a prevalent and well-documented problem in the Harris County Jail. *See* Ex. 24, 28-29; 84, 94.

As shown above in the fact section, Harris County Jail has known of the increasing and disproportionate number of assaults that have occurred in its walls since at least 2009. Ex. 1, 7, 26. After evaluating the thousands of assaults, the TCJS reports, DOJ Reports, and video footage produced in this case, Plaintiff's correctional expert opined that Sheriff Gonzalez has direct knowledge of the prevalent violence in the Jail and the lack of staffing and supervision which has allowed this violence to prosper. Ex. 84, 94. Likewise, this threat of substantial harm was the moving force in Plaintiff's injuries. Ex. 84, 94. The policy of failing to conduct observations and rampant understaffing have a direct impact on the increased risk of harm facing detainees and resulted in the assault on Morelle. *Id.*

The fact that the involved Detention Officers did not anticipate Molina's specific attack on Morelle is irrelevant because, given the conditions of the detention facility, there was an obvious risk of detainee-on-detainee violence in the involved area. Officer Cutler confirmed this by testifying that assaults frequently occurred in the blind area with officers often learning of assaults after they occurred. Ex. 97 at 17:13-18:6, 27:7-28:14. Further, whether Harris County failed to protect Morelle from harm caused by seven fellow inmates or one is irrelevant because it still failed to protect him from such harm.[3]

---

[3] As a point of information, Harris County's assertion that Morelle has admitted "that *he was not assaulted by seven other detainees . . .* he was *involved in an altercation with one other detainee . . .*" is somewhat misleading. Doc. 205, ¶ 27 (emphasis in original). Morelle did admit he only came to blows with Molina. Ex.96 at 48:2–20. But, Molina was by other detainees who appeared ready to come to Molina's aid. Ex. 96 at 48:2–11. As Morelle described it: "[o]nce [Molina] . . . punched me, his homies . . . had his back." Ex. 96 at 48:2–11.

While new information surfaced during Morelle's deposition regarding the possibility of his broken jaw being caused by Harris County *staff* instead of detainees, Morelle ultimately indicated that he did not know for certain whether his broken jaw was caused by his altercation with Molina, or his prior altercation with unknown Detention Officers. Ex. 96 at 47:15–23. Additionally, despite Harris County's unsubstantiated assertion that "the fight [between Morelle and Molina] ended when [the] Detention Officer . . . escorted Morelle out of the cell," Morelle testified that he could not recall what caused the fight to cease. Ex. 96 at 34:25–35:2. Moreover, according to Harris County's own summary judgment evidence, the altercation between Morelle and Molina occurred in a "blind spot," but was observed by Detention Officer Cutler, who did not intervene herself but instead requested a rover. [Doc. 205-4, at 2]. Officer Pescina responded. [Doc. 205-4, at 2]. Officer Pescina "**was the only person on the floor that could respond . . . .**" [Doc. 205-4, at 2]. The report lacks any information to confirm when the fight ceased and does not support Harris County's version of events. Ex. 94.

In light of the record evidence, a genuine issue of material fact exists regarding whether the conditions of his confinement resulted in Harris County violating Morelle's constitutional right to be protected from harm caused by his fellow inmates. Therefore, summary judgment is improper.

### C.     A genuine issue of material fact exists regarding Morelle's failure to train and supervise claims.

It is well-settled that "a municipality's failure to train its police officers can give rise to § 1983 liability." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d

747, 755 (5th Cir. 2009); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 380 (1989). To state a failure to train or supervise claim, a plaintiff must allege that (1) a municipality has adopted inadequate training and supervision policy procedures, (2) acted with deliberate indifference in doing so, and (3) the inadequate policies directly caused the plaintiff's injury. *Sanders– Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *Snow v. City of El Paso, Tex.*, 501 F. Supp. 2d 826, 833 n. 5 (W.D. Tex. 2006).

A court infers deliberate indifference "either from (i) a pattern of constitutional violations or, absent proof of a pattern, from (ii) showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Garza*, 922 F.3d at 637-38 (internal quotation omitted); *see also Gros v. City of Grand Prairie, Tex.*, 34 F. App'x. 150, at *6 (5th Cir. 2002) (per curiam). In particular, a policymaker's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action." *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997) (police may, "in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need."). This pattern may also show that the policymaker's conduct, and not "factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id.* at 407-408.

   1.   **Harris County's failure to train its detention officers led to a violation of Morelle's constitutional right to protection from detainee violence.**

For liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Liability under a failure-to-train theory arises where the officers' assigned duties make "the need for more or different training [] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Harris*, 489 U.S at 390. Even where a municipal training program exists, if it is inadequate, the municipality is subject to liability on a "failure to train" theory. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).

Harris County argues that Morelle failed to identify and explain what part of the Jail's training program is deficient and that Morelle cannot connect any deficient training to a constitutional injury because Harris County officers could not have anticipated the detainee-detainee attack. In relation to the failure to identify the training program, this is a pleading argument not a summary judgment argument. This argument has already been addressed by the Court in denying Defendant's Motion to Dismiss on the failure to train claims. Doc. No. 51. As the Court has held, "Plaintiffs allege several specific training deficiencies. . . . These allegations are suitably specific to identify what training failures exist." Doc. No. 51 at 29. This is more than enough for this stage of the litigation

In relation to the second argument, as discussed above, TCJS has repeatedly issued reports regarding Harris County's: (1) failure to properly observe detainees; (2) failure to

adequately staff its facilities; (3) unremedied tendency to overcrowd its facilities; and (4) repeatedly holding detainees in temporary accommodations for far longer than the 48-hour maximum period – all of which are factors of training related to the condition of detainee violence. Ex. 1-20. Furthermore, detainee-on-detainee violence is a prevalent and well-documented problem in Harris County Jail. Ex. 1-20, 26, 28-29, 31-42, 84, 94. The thousands of assaults identified in the evidence, and samples highlighted by Plaintiffs' expert, illustrate the unconstitutional condition of rampant violence in the Jail that led to the assault on Morelle. *Id.*

The fact that this is a well-known issue obliges Harris County to train on preventing these detainee-on-detainee fights by teaching proper monitoring and protection techniques. Instead, the County consistently allows the Jail to be understaffed, ensuring that its inability to adhere to necessary inmate safety standards. Ex. 1-21, 24, 84, 94, 97. The evidence shows that proper monitoring and protection would have prevented the assault on Morelle. Ex. 94, 97. This inadequate monitoring is a deficiency in Harris County's training policies, and one that ultimately led to Morelle's injuries.

### 2. Harris County's failure to supervise its detention officers led to a violation of Morelle's constitutional right to protection from detainee violence.

The same is true with regard to Morelle's failure to supervise claims. To state a claim for municipal liability on a theory of a failure to supervise, the plaintiff must allege facts showing that (1) the County failed to supervise the officers involved; (2) there is a causal connection between the failure to supervise and the violation of the plaintiff's rights; and (3) it was, or should have been, obvious to municipal policymakers that the

"highly predictable consequence" of not supervising the officers was that the officers would violate the plaintiffs' constitutional rights. *See, e.g., Peterson*, 588 F.3d at 850; *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc). A plaintiff claiming failure to supervise must allege facts showing a pattern of similar violations that would make the need for more or different supervision "obvious." *City of Canton*, 489 U.S. at 390. "Plaintiffs must show that in light of the duties assigned to specific officers or employees the need for more or different [supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Murray v. LeBlanc*, 629 F. Supp. 3d 437, 457 (M.D. La. 2022) (cleaned up).

Harris County misstates the law, citing to case law regarding establishing liability under Section 1983 claims against individual officers. However, Morelle has pled a *Monell* claim, and has not alleged individual actor liability claims.

Harris County argues that Morelle (1) has failed to identify the supervisor who failed to supervise; (2) cannot anchor the failure to supervise to a constitutional violation; and that (3) consequently, there is no evidence to support his claim. Doc. 205. Harris County raises a red herring in arguing that Monelle "has not even identified the supervisor who supposed failure he blames for the sudden attack." There is no such requirement to identify an individual supervisor in the context of a *Monell* claim – the County is the one who has failed to supervise. *See e.g., Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 313 (5th Cir. 2023) (referencing the *City's* failure to supervise its officers). Further, Morelle has tied the failure to supervise to his constitutional violations

– but for the County's failure to supervise the detention officers, such detainee-on-detainee fights would not occur. As identified by Plaintiffs' expert, the Jail lacks an adequate supervision policy to ensure that officers are doing their jobs properly, that they are properly staffed, that they are conducting proper observations, or that they are deterring detainee violence and providing proper medical care. Ex. 84, 94. These failures compound and encourage violence. *Id.* Officers are not disciplined and any investigations conducted into their actions are usually dismissed for administrative reasons, or the Jail allows two-year statute of limitations to pass instead of fully investigating and holding their officers accountable. *Id.*  Plaintiffs have provided more than enough evidence to show a fact issue requiring a denial of Defendant's Motion.

> **D.    Conditions of confinement and failure to train or supervise can establish *Monell* liability even if there is no independent constitutional violation by an employee.**

Moreover, even if the Harris County personnel directly involved did not violate the constitution in their treatment of Morelle, the County is not automatically exonerated. Local governments can be held liable in at least three circumstances: (1) harm is caused by direct actions of the governmental entity itself, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); (2) harm is caused by the entity's policies or customs, *see Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993); and (3) harm is caused by employees for whom the entity has failed to provide adequate training, *see Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018). When the injury is a result of an action of an employee who has not been trained properly, courts apply "rigorous requirements of culpability and causation" — holding a local government

liable if it has been deliberately indifferent to constitutional rights. *Arrington-Bey*, 858 F.3d at 995 (quoting *Bd. of Cnty. Com'rs of Bryan Cnty., Ok. v. Brown*, 520 U.S. 397, 415 (1997)). On the other end of the spectrum, when an act of the municipality itself causes the injury, "fault and causation obviously apply." *Id.* at 994. Likewise, when an injury is caused by the straightforward carrying out of a municipal policy or custom, the determination of causation is easy. *See Garner*, 8 F.3d at 364–65.

An employer is not relieved of its own constitutional violations merely because its employees are not liable. A determination that qualified immunity applies to individual actors does not *ipso facto* relieve the governmental entity for which they worked from liability. *See, e.g., Morgan v. Fairfield Cty., Ohio*, 903 F.3d 553, 565-67 (6th Cir. 2019); *Chew v. Gates*, 27 F.3d 1432, 1439 (9th Cir. 1994); *Newcomb v. City of Troy*, 719 F. Supp. 1408, 1416–17 (E.D. Mich. 1989); *see also Owen v. City of Independence*, 445 U.S. 622, 652 (1980).

The combined conduct of several local government employees acting pursuant to policy may add up to a constitutional violation even if none of the named defendants individually violated the Constitution. *See, e.g., Barrett v. Orange County Human Rights Com'n*, 194 F.3d 341, 350 (2d Cir. 1999); *Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985). When multiple employees act in the same unconstitutional manner, that collective action is indicative of a de facto municipal policy. *Hovis v. Wichita Cnty., Tex.*, No. 3:23-CV-2220-L, 2024 WL 3836559 (N.D. Tex. July 31, 2024), *report and recommendation adopted*, No. 3:23-CV-2220-L, 2024 WL 3841480, at *9 (N.D. Tex. Aug. 15, 2024); *Sims v. City of Jasper, Tex.*, 543 F. Supp. 3d 428, 450 (E.D. Tex. 2021).

Likewise, a municipality's failure to provide adequate jail funding, staffing, or procedures may cause a constitutional violation even if the individual staff members involved are doing their best under untenable circumstances. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) ; *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004); *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985) .

For similar reasons, the government may be liable where the plaintiff's injury results from improper training or procedure even if the individual officer is exonerated. *See Fairley v. Luman*, 281 F.3d 913, 916–18 (9th Cir. 2002); *Rivas v. Freeman*, 940 F.2d 1491, 1495–96 (11th Cir. 1991). Thus, even if this Court were to find that Plaintiff's pleadings were inadequate as to the individual officers, that finding alone would not exonerate the County. Harris County cannot obtain summary judgment without addressing the existence of *Monell* evidence. Because Harris County has failed to do so, summary judgment is improper.

## V.     Conclusion & Prayer

**WHEREFORE, PREMISES CONDSIDERED**, Morelle requests this Court enter an order **denying** Defendant Harris County's Motion for Summary Judgment for Claims by Plaintiff Tramell Morelle, and granting all other relief in law or equity to which Morelle may show himself entitled.

Respectfully submitted,

By: _/s/ Paul A. Grinke_ _____

**Paul A. Grinke**
State Bar No. 24032255
paul@bencrump.com
**Aaron Dekle**
State Bar No. 24100961
aaron@bencrump.com
BEN CRUMP LAW, PLLC
5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 942-0494 – Office
(800) 770-3444 – Facsimile

**Carl L. Evans**
State Bar No. 24056989
cevans@mccathernlaw.com
**Jordan A. Carter**
State Bar No. 24116174
jcarter@mccathernlaw.com
**Noah McCathern**
State Bar No.24118035
nmcathern@mccathernlaw.com
MCCATHERN PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219
(214) 532-2060 – Office

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(888) 988-6688 - Office
(214) 807-1799 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **January 16, 2026**, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to each attorney of record who have consented in writing to accept this notice as service of this document by electronic means.

*/s/ Aaron Dekle*
**Aaron Dekle**