# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| OCTEVIA WAGNER, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:23-CV-02886 |
| | § | |
| HARRIS COUNTY, TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

---

## PLAINTIFF ANTONIO RADCLIFFE'S RESPONSE TO HARRIS COUNTY'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

---

**Paul A. Grinke**
State Bar No. 24032255
paul@bencrump.com
**Aaron Dekle**
State Bar No. 24100961
aaron@bencrump.com
BEN CRUMP LAW, PLLC
5 Cowboys Way, Ste. 300
Frisco, Texas 75034
(972) 942-0494 – Office
(800) 770-3444 – Facsimile

**Carl L. Evans**
State Bar No. 24056989
cevans@mccathernlaw.com
**Jordan A. Carter**
State Bar No. 24116174
jcarter@mccathernlaw.com
**Noah McCathern**
State Bar No.24118035
nmcathern@mccathernlaw.com
MCCATHERN PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219
(214) 532-2060 – Office

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD &
SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000 - Office
(214) 946-8433 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

**Page**

Table of Authorities ...................................................................................................iv

Table of Exhibits ....................................................................................................viii

I.     Introduction ..................................................................................................1

II.    Evidence & Exhibits ....................................................................................2

III.   Factual Background .....................................................................................3

IV.   Argument and Authorities ...........................................................................7

        A.    Summary judgment standard ............................................................7

        B.    A genuine issue of material fact exists regarding whether
             Harris County violated Radcliffe's constitutional rights to be
             protected from harm caused by other detainees and to
             receive adequate medical care.............................................................9

             1.    A genuine issue of material fact exists regarding
                    Radcliffe's conditions of confinement claim as it
                    relates to Harris County's failure to protect him from
                    other detainees...............................................................11

             2.    A genuine issue of material fact exists regarding
                    Radcliffe's conditions of confinement claim as it
                    relates to his inadequate medical care .................................17

        C.    A genuine issue of material fact exists regarding Radcliffe's
             failure to train and failure to supervise claims..............................19

              1.    Failure to act claims in general..............................................19

              2.    Radcliffe's failure to train claim...........................................20

              3.    Radcliffe's failure to supervise claim ...................................22

        D.    Conditions of confinement and failure to train or supervise
             can establish Monell liability even if there is no independent
             constitutional violation by an employee .......................................23

## TABLE OF CONTENTS (cont'd)

**Page**

V.     Conclusion & Prayer ...................................................................................25

Certificate of Service .......................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

*ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.,*
   699 F.3d 832 (5th Cir. 2012) ................................................................8

*Alberti v. Klevenhagen,*
   790 F.2d 1220 (5th Cir. 1986) .........................................................14, 15

*Alvarez v. City of Brownsville,*
   904 F.3d 382 (5th Cir. 2018) ............................................................10

*Anderson v. City of Atlanta,*
   778 F.2d 678 (11th Cir. 1985) ..........................................................24

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ........................................................................7

*Arrington-Bey v. City of Bedford Heights,*
   858 F.3d 988 (6th Cir. 2017), *cert. denied,* 138 S. Ct. 738 (2018).......................23

*Barrett v. Orange County Human Rights Com'n,*
   194 F.3d 341 (2d Cir. 1999) ...............................................................24

*Bell v. Wolfish,*
   441 U.S. 520 (1976)........................................................................12

*Blackmore v. Kalamazoo County,*
   390 F.3d 890 (6th Cir. 2004) ............................................................24

*Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,*
   520 U.S. 397 (1997).......................................................................20

*Cardner v. Home Depot U.S.A., Inc.,*
   561 F. Supp. 2d 640 (E.D. Tex. 2006) ....................................................8

*Chew v. Gates,*
   27 F.3d 1432 (9th Cir. 1994) ...........................................................24

*City of Canton, Ohio v. Harris,*
   489 U.S. 378 (1989).................................................................19, 20, 22

*Cope v. Coleman Cnty.,*
   No. 23-10414, 2024 U.S. App. LEXIS 15549 (5th Cir. June 26, 2024) ..............................11

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Doe v. Taylor Indep. Sch. Dist.,*
   15 F.3d 443 (5th Cir. 1994) (en banc) ................................................................22

*Duvall v. Dallas Cnty., Tex.,*
   631 F.3d 203 (5th Cir. 2011) ................................................................12

*Edwards v. City of Balch Springs, Tex.,*
   70 F.4th 302 (5th Cir. 2023) ................................................................22

*Fairley v. Luman,*
   281 F.3d 913 (9th Cir. 2002) ................................................................24

*Farmer v. Brennan,*
   511 U.S. 825 (1994) ................................................................12, 13, 14, 16

*Garcia v. Salt Lake County,*
   768 F.2d 303 (10th Cir. 1985) ................................................................24

*Garner v. Memphis Police Dep't,*
   8 F.3d 358 (6th Cir. 1993) ................................................................23

*Garza v. City of Donna,*
   922 F.3d 626 (5th Cir. 2019) ................................................................10

*Gomez v. Galman,*
   18 F.4th 769 (5th Cir. 2021) (per curiam) ................................................................9

*Hare v. City of Corinth, Miss.,*
   74 F.3d 633 (5th Cir. 1996) ................................................................10, 11, 12, 13

*Haverda v. Hays County,*
   723 F.3d 586 (5th Cir. 2013) ................................................................7

*Hinojosa v. Livingston,*
   807 F.3d 657 (5th Cir. 2015) ................................................................14

*Horton v. Cockrell,*
   70 F.3d 397 (5th Cir. 1995) ................................................................12

*Hovis v. Wichita Cnty., Tex.,*
   No. 3:23-CV-2220-L, 2024 WL 3836559 (N.D. Tex. July 31, 2024) ................................................................24

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Longoria v. Texas,*
    473 F.3d 586 (5th Cir. 2006) ..................................................................11

*Monell v. Dep't of Soc. Servs. of the City of New York,*
    436 U.S. 658 (1978).....................................................................9, 10, 22, 25

*Morgan v. Fairfield Cty., Ohio,*
    903 F.3d 553 (6th Cir. 2019) ..................................................................24

*Murray v. LeBlanc,*
    629 F. Supp. 3d 437 (M.D. La. 2022)......................................................22

*Newcomb v. City of Troy,*
    719 F. Supp. 1408 (E.D. Mich. 1989)......................................................24

*Oliver v. Gusman,*
    611 F. Supp. 3d 290 (E.D. La. 2020) .................................................13, 14

*Owen v. City of Independence,*
    445 U.S. 622 (1980)................................................................................24

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986)................................................................................23

*Rivas v. Freeman,*
    940 F.2d 1491 (11th Cir. 1991) ..............................................................25

*Roberts v. City of Shreveport,*
    397 F.3d 287 (5th Cir. 2005) ..................................................................20

*Rogers v. Boatright,*
    709 F.3d 403 (5th Cir. 2013) .............................................................17, 19

*Royal Surplus Lines Insurance Company v. Brownsville Independent School District,*
    404 F. Supp. 2d 942 (S.D. Tex. 2005) ......................................................8

*Sanders– Burns v. City of Plano,*
    594 F.3d 366 (5th Cir. 2010) ..................................................................19

*Scott v. Moore,*
    114 F.3d 51 (5th Cir. 1997) ....................................................................10

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Shepherd v. Dallas Cnty.*,
 591 F.3d 445 (5th Cir. 2009) ........................................................................10, 11

*Sims v. City of Jasper, Tex.*,
 543 F. Supp. 3d 428 (E.D. Tex. 2021) ...............................................................24

*Snow v. City of El Paso, Tex.*,
 501 F. Supp. 2d 826 (W.D. Tex. 2006) ..............................................................19

*Taylor v. Dolgencorp of Texas, Inc.*,
 No. 6:18-CV-00179-ADA, 2020 WL 1902540 (W.D. Tex. Jan. 7, 2020)............................8

*Thomas v. Cook Cnty. Sheriff's Dep't*,
 604 F.3d 293 (7th Cir. 2010) ............................................................................24

*Triple Tee Golf, Inc. v. Nike, Inc.*,
 485 F.3d 253 (5th Cir. 2007) ..............................................................................8

*United States v. Hinds Cnty. Bd. of Supervisors*,
 128 F.4th 616 (5th 2024) ................................................................5, 11, 14, 15

*Walker v. Sears, Roebuck & Co.*,
 853 F.2d 355 (5th Cir. 1988) ..............................................................................7

*Webster v. City of Houston*,
 735 F.2d 838 (5th Cir. 1984) ..............................................................................9

*West v. Atkins*,
 487 U.S. 42 (1988).............................................................................................9

*World Wide St. Preachers Fellowship v. Town of Columbia*,
 591 F.3d 747 (5th Cir. 2009) ............................................................................19

*Zarnow v. City of Wichita Falls, Tex.*,
 614 F.3d 161 (5th Cir. 2010) ............................................................................20

## Other Authorities

U.S. CONST. AMEND. XIV....................................................................................9

FED. R. CIV. P. 56(a)...........................................................................................7

## TABLE OF EXHIBITS

Plaintiffs are providing an Omnibus Exhibit List due to the overlapping and intertwined nature of the claims and evidence for the various Motions for Summary Judgment. Plaintiffs incorporate each of these exhibits into the body of the Response as if fully set forth therein. Due to the exhibit size, Plaintiffs will attach an exhibit cover sheet with a link to the exhibits on a share file or similar device that will allow the Court and the parties to access the exhibits.

General

1. DOJ 2009 Report (Wagner 79-102)

2. TCJS Report May 2013-2017 (Wagner 103-183)

3. TCJS Report Dec 2017 (Wagner 184-186)

4. TCJS Report Aug 2018 (Wagner 187-189)

5. TCJS Report Dec 2020 (Wagner 201-207)

6. TCJS Report April 2021 (Wagner 208-210)

7. TCJS Report Nov 2021 (Wagner 211-217)

8. TCJS Report Sept. 2022 (Wagner 224-228)

9. TCJS Report Dec 2022 (Wagner 229-231)

10. TCJS Report April 2023 (Wagner 237-239)

11. TCJS Report Feb. 2023 (Wagner 240-248)

12. TCJS Report Aug. 23, 2023 (Wagner 249-251)

13. TCJS Report Aug 2023 (Wagner 252-261)

14. TCJS Report Feb 2024 (Wagner 263-268)

15. TCJS Report May 23 Remedial Order (Wagner 3246-3247)

16. TCJS Report May 2024 Amend Remedial Order (Wagner 3248-3250)

17. TCJS Report Jan. 2025

18. Harris County Comm. To TCJS Death In Custody (Observation)

19. TCJS Report May 6, 2025

20. TCJS Harris County Second Remedial Order

21. TCJS Report June 2025

22. Harris County's Updated 2024 UOF Policy

23. Eric Morales Personnel File and Investigation

24. KHOU Struck Documentary (Video)

25. KHOU Struck Article

26. TCJS SIR Total Count Files (Compiled)

27. KHOU UOF Incident Report Examples (Compiled)

28. SIR UOF Examples (Compiled)

29. SIR Assault Examples (Compiled)

30. KHOU Assault Examples (Compiled)

31. John Coote Assault Video

32. John Coote Assault Incident Report

33. Evan Lee Assault Texas Rangers Report

34. Zachary Zepeda Assault Video

35. Zachary Zepeda Assault Incident Report

36. Michael Griego Texas Ranger Report and Autopsy Report (Compiled)

37. Kenneth Richard Assault Incident Report

38. Jaquez Moore Assault Incident Report

39. Fred Harris Assault Video

40. Fred Harris Assault Incident Report

41. Rory Ward Assault Investigation Summary and Autopsy Report (Compiled)

42. Kareem Jefferson Assault Incident Report

43. Rory Ward Observation Round Videos Examples

44. Matthew Shelton Observation Round Videos Examples

45. Jacoby Pillow UOF Video

46. Jeremy Garrison UOF Videos and Incident Reports

47. John Coote UOF Video

48. Lenard Vare CV

49. Dr. David Mathis CV

50. Dr. Victor Weedn CV

51. Dr. Vinneth Carvalho CV

52. Officer Mark Garcia Deposition Transcript

53. Officer Mark Garcia Pews Report

54. Officer Mark Garcia Incident History Report

55. Officer Maxim Herman Deposition Transcript

56. Officer Maxim Herman Pews Report

57. Officer Maxim Herman Incident History Report

58. Officer Jin DeGuzman Deposition Transcript

59. Officer Jin DeGuzman Pews Report

60. Officer Jin DeGuzman Incident History Report

Lockhart

61. Lenard Vare Expert Report

62. Dr. David Mathis Expert Report

63. UOF Incident Report (Lockhart)

64. IAD Grievance (Lockhart)

65. Surveillance Footage Inside Pod (Lockhart)

66. Surveillance Footage Outside Pod UOF (Lockhart)

67. Surveillance Footage Entering Hallway (Lockhart)

68. Surveillance Footage Running Down Hallway (Lockhart)

69. Officer Alex Conrad Incident History Report

70. IAD Investigation Officer Alex Conrad

71. Officer Alex Conrad Observation Reprimand

72. Officer Alex Conrad PEWS and IAD Investigation

73. Officer Alex Conrad PEWS Report

74. Harris County Operational Records (Lockhart)

75. Officer Twitty IAD Investigation Report

76. Officer Twitty First Pews Report Notification

77. Officer Twitty Second Pews Report Notification

78. Officer Twitty PEWS Report

79. Officer Twitty Incident History Report

80. Officer Conrad Deposition Transcript

81. Officer Patrick Allen Deposition Transcript

82. Bernard Lockhart Medical Records

83. Officer Bruce Hayes Deposition Transcript

Radcliffe

84. Lenard Vare Expert Report

85. Dr. David Mathis Expert Report

86. Radcliffe Assault Video

87. Radcliffe Incident Report

88. Radcliffe Photo

89. Radcliffe Jail Medical Records

90. Officer Suzana Reskovic Incident Case History

91. Officer Chin Chiu Incident Case History

92. Antonio Radcliffe Deposition Transcript

93. Officer Suzana Reskovic Deposition Transcript

Morelle

94. Lenard Vare's Expert Report

95. Morelle's medical records and incident report

96. Morelle's Deposition Transcript

97. Officer Calyn Cutler Deposition Transcript

Zachery Johnson

98. Lenard Vare Expert Report

99. Dr. Carvalho Expert Report

100.      Zachery Johnson Incident Report and Jail Records

101.      Zachery Johnson Assault Video Footage

102.      Zachery Johnson Operation Records

103.      Zachery Johnson Clinic Records and medical records

Twedt

104.      Lenard Vare Expert Report

105.      Twedt UOF Incident Video Footage

106.      Twedt UOF Incident Report

107.      Twedt Deposition Transcript

108.      Officer Jimmy Poole Pews Report

109.      Officer Jimmy Poole Incident History Report

110.      Officer Andrew Pena Pews Report

111.      Officer Andrew Pena Incident History Report

112.      Officer Jon Vickers-Gilbreath Pews Report

113.      Officer Jon Vickers-Gilbreath Incident History Report

114.      Officer Tyree Simpson Pews Report

115.      Officer Tyree Simpson Incident History Report

116.      Officer Christopher Ortega Pews Report

117.      Officer Christopher Ortega Incident History Report

118.    Officer Thomas Muniz Pews Report

119.    Officer Thomas Muniz Incident History Report

120.    Twedt Medical Records

Kevin Smith

121.    Lenard Vare Expert Report

122.    Dr. Mathis Expert Report

123.    Dr. Weedn Expert Report

124.    Kevin Smith Incident Video Footage

125.    Kevin Smith Observation Rounds Video Footage

126.    Kevin Smith Autopsy Report

127.    Officer Wong Deposition Transcript

128.    Kevin Smith Investigation Summary and Incident Report

129.    Kevin Smith Medical Records

130.    Harris County Observation Records

131.    Harris County Operational Records

**PLAINTIFF ANTONIO RADCLIFEE'S RESPONSE TO HARRIS COUNTY'S**
**MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

COMES NOW, Antonio Radcliffe in the above-referenced cause, and files this, his

response to Defendant Harris County's Motion for Summary Judgment and Brief in

Support [Doc. 203] and would show the Court as follows:

### I.    Introduction

On March 7, 2023, Antonio Radcliffe was booked into Harris County Jail. A few

weeks after his initial booking, Radcliffe was given the role of prison trustee. In this role,

Radcliffe was tasked with serving meals to his fellow detainees during their initial intake

process. Radcliffe was acting in this capacity on May 18, 2023, when conditions created

by Harris County's policies and procedures enabled a new detainee – Joseph Thompson,

a known violent criminal who still had his ankle monitor on – to attack Radcliffe,

unprovoked. Radcliffe lost a tooth and suffered a broken jaw, requiring surgery as a

result of this attack. This attack is part of the condition of violence within the Jail that

places each detainee at substantial risk of serious bodily injury and threat of harm.

Despite telling Harris County medical staff that his jaw felt dislocated and that he

was in excruciating pain, Radcliffe was simply given a pill and ushered back to work

where he waited for two hours before being allowed to return for X-rays. He was then

sent back to work before finally getting sent to the hospital for his broken jaw. Despite

the Jail staff knowing of his surgery and injuries and the need for follow-up medical care,

the staff failed to provide proper and reasonable follow-up care for Radcliffe's pain. Their

failure to provide medical care illustrates their indifference to the needs of detainees and caused Radcliffe to have prolonged and continuing jaw pain.

In its summary judgment motion, Harris County presents the Court with three primary arguments: (1) it could not have violated Radcliffe's right to protection from other detainees because its personnel had no reason to expect Thompson would attack Radcliffe; (2) it could not have violated Radcliffe's right to adequate medical care because Radcliffe eventually received medical care and his complaints regarding his treatment are trivial; and (3) Radcliffe's failure to train and supervise claims must fail because (a) he did not identify the defective training, the officers who were not supervised, which supervisor failed to supervise, and (b) Radcliffe failed to connect the allegedly defective training and supervision to a constitutional violation. However, the record evidence raises a genuine issue of material fact regarding each of Radcliffe's claims, and therefore the Court should deny Harris County's motion for summary judgment.

## II.    Evidence & Exhibits

As the Court is aware, this case is still in the middle of discovery. This case also contains unique circumstances with limited access to key witnesses and limited communications with specific parties and ongoing criminal and administrative investigations which have impeded discovery. Plaintiffs have attached to this Response the exhibits and evidence identified in the Table of Exhibits which provide fact questions raised by Defendant's arguments. Plaintiffs anticipate receiving more supporting

evidence including the inspection of the jail, the deposition of Sheriff Gonzalez, additional depositions of officers, and additional Jail records which continue to trickle in.

### III.     Factual Background

On March 7, 2023, Antonio Radcliffe was booked into Harris County Jail. Because of his cooperation and good behavior, Radcliffe became a trustee in the Joint Processing Center (JPC). The JPC is the area where new detainees are housed and processed collectively in the same rooms regardless of their gang affiliation, threat level, criminal history, or gender. Although detainees are not supposed to be in the processing part of the Jail for longer than 48 hours, the Jail has been cited numerous times by TCJS for failing to process detainees timely or efficiently. Ex. 2-21. This resulted in the Texas Attorney General issuing a Second Remedial Order requiring new policies and training on the processing of detainees. Ex. 20. Notably, the main issue with processing detainees is due to the overcrowding and understaffing of the Jail. Ex. 84.

As Officer Suzana Reskovic testified, the Jail does not have a process of flagging detainees who are potential threats and have a history of violence. Ex. 90: 13, 14-16. Instead, everyone is placed in the same large waiting room with minimal officers present regardless of classification level. *Id.*, Ex. 84. This failure in classification has also been identified multiple times by TCJS. Ex. 2-20. The JPC waiting room contains hundreds of detainees of all backgrounds and the County has no way of flagging whether someone is a violent threat. Officer Reskovic also testified that she had witnessed several other assaults in the JPC which is consistent with the sample of incident reports showing hundreds of assaults in the JPC over a limited period of time. Ex. 29-30, 90.

On May 18, 2023, Radcliffe was working in the JPC waiting area on the second floor handing out lunches. Ex. 86, 87. The floor contained several hundred detainees. Ex. 86. Despite the number of detainees, the floor contained only a couple officers who were rarely paying attention, moving in and out of the room, or behind a desk. Ex. 86. Also on the floor was Joseph Thompson who was a new detainee who had already gone through a couple parts of the intake process. Ex. 84, 87. Harris County knew or should have known that Thompson had a violent history of extreme conduct including prior attacks on officers outside of the Jail. Ex. 84. Thompson was wearing an ankle monitor at the time, indicating that he was a prior criminal offender. Ex. 84. However, due to its understaffing and overcrowded nature and policies and practices of placing detainees in the same cells regardless of threat level, the Hail placed Thompson in the same waiting area with all of the other detainees - including Radcliffe. *Id.*

As Radcliffe was standing in the restricted trustee area, Thompson, in view of a detention officer, walked into the restricted area and punched Radcliffe in the face, breaking his jaw. Ex. 86, 87, 90. Although some officers responded after the fight began, no officer prevented the assault or stopped Thompson from entering the restricted area. *Id.*, Ex. 92.

Despite the obvious injury, Radcliffe was given a pill by the clinic and sent back to work. Ex. 92. Two hours later Radcliffe had an x-ray done on his jaw but was sent back to work again. *Id.* Only after several hours had passed did the Jail finally send him to the hospital for surgery. *Id.* When Radcliffe returned, the Jail failed to provide him adequate follow-up medical care, which resulted in his jaw continually hurting and preventing it

from healing properly. Ex. 85. The Jail violated numerous standards and policies by failing to ensure that Radcliffe received proper treatment for his injuries. *Id.* Radcliffe still suffers from jaw pain because of the Jail's failure to provide adequate care. Ex. 92.

The violence Radcliffe faced is not an isolated incident but is a constant threat of substantial physical harm to all detainees in the Harris County Jail, constituting a condition of the Jail. This risk of violence is "longstanding, pervasive, well-documented, [and] expressly noted by prison officials." *United States v. Hinds Cnty. Bd. of Supervisors*, 128 F.4th 616, 627 (5th 2024).

As early as 2009 in the Department of Justice's Report on the Jail, Harris County was made aware that they did not have sufficient protocols and policies in place to control a violent detainee population leading to violence. Ex. 1. In 2021, TCJS informed Harris County that the overpopulation and understaffing of the Jail led to a rapid increase of detainee-on-detainee violence which was a result of the policies of the jail. Ex. 7. Sheriff Gonzalez in a speech before his election recognized this violence. Doc.122 at 73 n.4.

From 2018 to present, Sheriff Gonzalez has acknowledged the rapid and growing violence in the Jail by compiling monthly reports and statistics showing the number of detainee-on-detainee assaults. Ex. 26. Since 2018, Harris County Jail has had 56,907 detainee assaults. Ex. 26. This is alarming because, despite Harris County comprising only 7.8% of the state's jail population, it experiences more assaults than all other Texas county jails *combined* for the same time period. Ex. 26. Plaintiffs' injuries are exemplary of the Jail's prolific and uncontrolled violence, which has led to detainee deaths and serious bodily injuries. Ex. 29. Harris County has done nothing to stop the violence as their only

solution is to respond after the assault occurred. This is unfeasible as Officer Cutler testified that many times officers would enter a cell and find a detainee in their bunk who was bleeding and suffering an injury from an unobserved assault. Ex. 97 at 27:7-28:14.

Plaintiffs have also provided examples of specific incidents that have happened to other detainees and to other Plaintiffs themselves. *See* Ex. 30, 31-42, 95, 100-101. For example, Fred Harris was placed in a holding cell with another detainee who was a known violent offender. Ex. 39-40. The other detainee attacked and killed Harris on video, and it took the officers several minutes to respond. *Id.* John Coote was placed into a cell and was assaulted for several minutes by multiple detainees. Ex. 31-32. Evan Lee was assaulted numerous times and was forced to fight other detainees to protect himself from gangs. Ex. 33. Lee passed away from his injuries caused by an assault that officers never observed. Ex. 33. Zachery Zepeda was attacked and knocked out by another detainee. Ex. 34-35. Similarly, Michael Griego was placed in the same mental health pod as many violent offenders who had a history of attacking other detainees and was assaulted and killed by another detainee. Ex. 36. No officer witnessed or stopped the assault. *Id.*

Radcliffe testified that fights occurred all the time in the JPC, specifically remembering 10-15 fights in a few months. Ex. 92 at 59:1-11, 60:5-18. The laissez faire approach to detainee assaults is illustrated in Radcliffe's own testimony that officers were sending the video of the assault around in their group chats or on social media and laughing about it. Ex. 92 at 25. These are just a few examples of the assaults in the Jail; however, this is more than enough evidence to raise a fact issue regarding whether the Jail has a culture of violence that poses a substantial threat of serious harm to its detainees.

Plaintiff's correctional expert, Lenard Vare, identified many of these issues in his report after reviewing thousands of pages of documents, reports, Sheriff Gonzalez's statements, and video footage. Ex. 84. Mr. Vare found that Harris County by and through the Sheriff has known or should have known of the violence in the Jail and has consistently failed to provide adequate supervision, safety, and security for detainees and has knowingly disregarded the dangers of inmate assaults. Ex. 84. These prolific dangers were exacerbated by the lack of supervision, training, and officer observation as well as Jail understaffing and overcrowding. Ex. 84. Moreover, the department has continuously failed to investigate and rectify the issues. Ex. 84. Over the years of records reviewed, Harris County has not taken any reasonable steps to address these problems causing systemic deficiencies and unreasonably dangerous conditions for detainees. Ex. 84.

## IV.    Argument and Authorities

### A.    Summary judgment standard.

Summary judgment is proper when no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013). The Court must resolve all reasonable doubts, and draw all reasonable inferences, in favor of the nonmovant—*i.e.*, Mr. Radcliffe. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If "reasonable minds could differ," the Court must deny the summary judgment motion. *Anderson*, 477 U.S. at 250. The movant bears the burden of identifying for the Court the

portions of the record the movant believes demonstrate the absence of a genuine issue of material fact. *See Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007).

There is no federal analog to Texas's no-evidence summary judgment motion. *Taylor v. Dolgencorp of Texas, Inc.*, No. 6:18-CV-00179-ADA, 2020 WL 1902540, at *2 (W.D. Tex. Jan. 7, 2020) (citing *BB Energy LP v. Devon Energy Prod. Co. LP*, No. 3:07-CV-0723-O, 2008 WL 2164583, at *12 (N.D. Tex. May 23, 2008); *Cardner v. Home Depot U.S.A., Inc.*, 561 F. Supp. 2d 640, 643 (E.D. Tex. 2006); *Royal Surplus Lines Insurance Company v. Brownsville Independent School District*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005). Thus, in seeking summary judgment on a "no evidence" basis, the burden remains with the *movant* to disprove or show that there is no evidence to support an element of the claim. *Catrett*, 477 U.S. 317, 323-24. Only after the movant satisfies its burden of proof must the non-movant come forward with specific facts that, if true, establish the existence of a genuine issue. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).

Because the evidence in this case establishes a genuine issue of material fact regarding Radcliffe's claims against Harris County, summary judgment is improper.[1]

---

[1] Defendant makes several arguments attacking the pleadings. The Second Amended Complaint was solely to address the capacity of the parties and not to conform the pleadings with the evidence discovered at that point, which was minimum. Plaintiffs anticipate seeking leave to amend the pleadings to conform with the evidence as discovery is ongoing. At the time of many of the pleadings, Plaintiffs did not have access to all of the information now revealed during discovery. Due to the size of the complaint and to save the Court and the Parties' resources, Plaintiffs were anticipating filing one motion for leave and amended complaint rather than filing a new one every time there is a difference to address based on new discovery.

**B.    A genuine issue of material fact exists regarding whether Harris County violated Radcliffe's constitutional rights to be protected from harm caused by other detainees and to receive adequate medical care.**

Radcliffe claims that his Fourteenth Amendment Constitutional rights to be protected from harm caused by other inmates and to receive adequate medical care while detained by a state actor have been violated by the conditions of his confinement in the Harris County Jail and by Harris County's failure to properly train and supervise its personnel. Harris County's known, pervasive, and problematic policies allowed and fostered the circumstances leading to Radcliffe's injuries. Consequently, Radcliffe asserted *Monell* claims against Harris County under § 1983.

To state a valid § 1983 claim, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). Harris County's motion for summary judgment attacks the first of these elements—*i.e.*, whether the conduct of its personnel violated Radcliffe's constitutional rights. It did.

The County is liable "if it . . . causes a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978). Ordinarily, official municipal policies are contained in duly promulgated policy statements, ordinances, or regulations. *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984). A policy may also be evidenced by a custom, even if such custom has not received formal approval. *Id*. This occurs when a widespread practice is so common as to

constitute a custom that fairly represents municipal policy. *Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018). Therefore, municipal liability under Section 1983 requires proof of three elements: (1) a policy; (2) promulgated by a final policymaker; (3) that is a moving force behind the violation of the constitutional right. *Monell*, 436 U.S. at 694.

For *Monell* liability for constitutional violations against detainees, the cause of the constitutional violation is classified as either a condition of confinement or as an episodic act or omission. *Garza v. City of Donna,* 922 F.3d 626, 632 (5th Cir. 2019). Conditions of confinement claims involve "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644 (5th Cir. 1996). Therefore, a condition of confinement "is usually the manifestation of an explicit policy or restriction," however, it can also be "an unstated or de facto policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare*, 74 F.3d at 645). In contrast, for claims based on a particular act or omission of one or more officials, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

When the state incarcerates an individual, it restricts that person's ability to fend for themselves, thus entitling that person to state provision of certain basic human needs regarding their medical care and safety. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 638–39 (5th Cir. 1996). In short, "pretrial detainees are entitled to protection from harm as well

as needed medical care . . . ." *Id.* at 641. Harris County compounded its failure to protect Radcliffe from his fellow inmate by also failing to provide adequate medical care.

Defendant misstates the law that when an individual actor is involved then the case cannot be a condition of confinement. Doc.203 at 9. This Court, in its Order on the Motion to Dismiss, already rejected this argument and that decision was subsequently reinforced by the Fifth Circuit. Doc.51 at 17; *Cope v. Coleman Cnty.*, No. 23-10414, 2024 U.S. App. LEXIS 15549, at *12, 22 n.14 (5th Cir. June 26, 2024) ("One fundamental problem with that argument is that it assumes an otherwise valid conditions claim—i.e., one alleging that the conditions alone are sufficient to cause the harm—cannot survive if an individual's actions also contributed to the alleged harm. This court has never said that").

Defendant includes a throw-away argument that overcrowding and understaffing cannot be an unconstitutional condition of confinement. Doc.203 at 9. Their own argument and the case they rely on cut against this argument as overcrowding and understaffing can be an unconstitutional condition of confinement and the case cited only requires causation between the condition and the injury. *See Shepherd*, 591 F.3d at 453 (holding that understaffing was a condition of confinement); *Hinds Cnty.*, 128 F.4th at 627-30. The Court also rejected this argument in the Order on the Motion to Dismiss finding that understaffing and overcrowding is a condition and policy. Doc.51 at 24-26.

### 1. A genuine issue of material fact exists regarding Radcliffe's conditions of confinement claim as it relates to Harris County's failure to protect him from other detainees.

"It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. Texas,* 473 F.3d

586, 592 (5th Cir. 2006). Prison officials must guard against current threats, as well as sufficiently imminent dangers that may cause harm in the future. *Horton v. Cockrell*, 70 F.3d 397, 400-01 (5th Cir. 1995). In its Motion for Summary Judgment, Harris County argues that Radcliffe's conditions of confinement claim must fail because Radcliffe "cannot show that [the] officers had cause to believe a threat was imminent or that they failed to intervene once an altercation began . . . ." [Doc. 203, ¶ 43]. More specifically, Harris County argues that because their officers did not know that Thompson would attack Radcliffe that they were not deliberately indifferent. [*See* Doc. 203, ¶¶ 37–43].

However, in a conditions-of-confinement claim, a plaintiff need not show deliberate indifference on the part of the municipality. *Duvall v. Dallas Cnty., Tex.,* 631 F.3d 203, 207 (5th Cir. 2011). For a conditions-of-confinement claim, the plaintiff need only show that the unconstitutional conditions have no reasonable relationship to a legitimate governmental interest. *Id.* This "reasonable relationship test" is the functional equivalent of the deliberate indifference standard employed in episodic-act-or-omission cases. *Id.* (citing *Scott v. Moore,* 114 F.3d 51, 54 (5th Cir. 1997) (en banc)); *see also Bell v. Wolfish,* 441 U.S. 520, 539 (1976).

Harris County correctly states that prison officials are liable when they demonstrate subjective deliberate indifference to a substantial risk of serious harm. *See Hare v. City of Corinth,* 74 F.3d 633, 643 (5th Cir. 1996). Deliberate indifference is more than mere negligence and requires that the jail official (1) be subjectively aware that the detainee faces a substantial risk of serious harm, and (2) disregards that risk by failing to take reasonable measures to alleviate it. *See Farmer v. Brennan,* 511 U.S. 825, 847 (1994);

*Hare,* 74 F.3d at 648. To satisfy this requirement, a "claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer,* 511 U.S. at 842.

"Whether a [jail] official had the requisite knowledge of a substantial risk is **<u>a question of fact</u>** . . . ." *Id.* (emphasis added). This can be demonstrated in the usual ways, including inferences from circumstantial evidence — meaning that fact finder could conclude that a jail officer knew of a substantial risk from the very fact that the risk was obvious. *Id.* For example, if there is evidence that a substantial risk of detainee attacks is longstanding, pervasive, well-documented, or has been expressly noted by jail officials in the past, and the circumstances suggest that the jail officer has been exposed to information concerning the risk, such evidence can be sufficient to permit a trier of fact to find that the jail officer had actual knowledge of the risk. *Id.* at 842–43; *see also Oliver v. Gusman,* 611 F. Supp. 3d 290, 298-99 (E.D. La. 2020) (finding constitutional violation adequately alleged where complaint asserted that DOJ findings letters and Jail Monitor reports demonstrated that risk of inmate attacks were "longstanding, pervasive, [and] well-documented," risk of attack was exacerbated by officers' failure to supervise inmates and respond to requests for help, and that officers must have known of risk as they would have been exposed to documents in the course of official duties).

A jail officer also could not claim to not be deliberately indifferent by arguing that, while he may have been aware of an obvious, substantial risk to detainee safety, he did not know that the plaintiff was especially likely to be assaulted by the specific prisoner

who eventually committed the assault *Farmer,* 511 U.S. at 843; *see also Hinojosa v. Livingston,* 807 F.3d 657, 668 (5th Cir. 2015); *Oliver,* 611 F. Supp. 3d at 299–300. "[I]t does not matter whether the . . . [detainee] faces an excessive risk of attack for reasons personal to him or because all [detainees] in his situation face such a risk." *Farmer,* 511 U.S. at 843. If jail officers were aware that detainee assaults were common and uncontrolled, it would be irrelevant to liability whether the jail officers could not guess beforehand precisely who would attack whom. *See id.* In short, the law does not require the specificity Harris County would impose on Radcliffe's claim.

Two additional cases illustrate this principle that when the jail has a condition of rampant detainee-on-detainee violence a plaintiff need only show the extensive nature of this violence to illustrate a constitutional violation and unconstitutional condition of confinement. *Hinds Cnty.*, 128 F.4th at 626-30; *Alberti v. Klevenhagen*, 790 F.2d 1220, 1224–27 (5th Cir. 1986). In *Hinds Cnty.*, the County jail was found to have a rampant history of detainee violence in conjunction with systemic staffing issues that was sufficient to find that the County was deliberately indifferent to detainee safety. *Hinds Cnty.*, 128 F.4th at 626-30. The Court specifically found that seventy-seven assaults in a four-month period was sufficient to illustrate the "unchecked prisoner-on-prisoner violence" in violation of the Constitution. *Id.* at 628. The Court specifically noted that the jail had a failure in observation which aided the rampant violence. *Id.* at 629.

In *Alberti*, the Fifth Circuit was analyzing injunctive relief imposed by the District Court on the Harris County Jail, the same jail at issue in this case, due to its rampant violence. 790 F.2d at 1224-27. The Court specifically upheld the findings of the District

Court that the Jail had a condition of rampant violence that constitute "a continuous pattern of deprivations which clearly reach constitutional dimensions." *Id.* at 1224 (quotations omitted). The Fifth Circuit specifically noted that the Jail had 1,200 acts of violence reported by inmates each year. *Id.* at 1225–26. The Court also noted that the violence was coupled with the lack of observation and supervision of the officers with blind spots and times where detainees were left unsupervised. *Id.*

Notably, Harris County Jail in May 2023, the month of Radcliffe's incident, had 803 detainee assaults reported to TCJS. Ex. 26. For 2022, Harris County Jail had 7,910 reported assaults. *Id.* Both of these numbers dwarf the numbers that the Fifth Circuit determined was sufficient to establish a pattern of constitutional violations in *Hinds Cnty.* and *Alberti. Hinds Cnty.*, 128 F.4th at 626–30; *Alberti*, 790 F.2d at 1224–27. Moreover, Plaintiffs' expert specifically opined that the jail has a prolific issue in staffing and observation which increases the violence amongst detainees. Ex. 84.

In contradiction to the above authority, Harris County argues that it could not have possibly violated Radcliffe's constitutional right to be protected from detainee-violence because: (1) the involved-officers could not have expected that Joseph Thompsn would "sucker-punch" Antonio Radcliffe; (2) Radcliffe admitted to not having experienced or witnessed a similar event in his three weeks as a prison-trustee; and (3) officers responded promptly. *See* Doc. 203, ¶¶ 1, 19, 36–43. However, as previously cited case law explains, the relevant inquiry is not whether Harris County personnel had reason to expect that Joseph Thompson would "sucker-punch" Antonio Radcliffe. Rather, the relevant inquiry is whether there was an obvious risk of such detainee-on-detainee

assaults. *See Farmer,* 511 U.S. at 843. Defendant cannot avoid liability simply because it "could not guess beforehand precisely who would attack whom." *Id.* at 844.

The Texas Commission on Jail Standards has repeatedly issued reports and Notices of Noncompliance regarding Harris County's: (1) failure to properly observe detainees; (2) failure to adequately staff its facilities; (3) unremedied tendency to overcrowd its facilities; and (4) repeatedly holding detainees in temporary accommodations for far longer than the 48-hour maximum period. Ex. 2-20. In December 2021, TCJS expressly noted that the inadequate staffing and supervision had a direct correlation in the increase in detainee violence. Ex. 7. Furthermore, detainee-on-detainee violence – especially violence in the overcrowded and understaffed intake area – is a prevalent and well-documented problem in Harris County detention facilities. *See* Ex. 24, 28-29; 93 at 37:4-10.

As shown above in the fact section, Harris County Jail has known of the increasing and disproportionate number of assaults that have occurred in its walls since 2009. Ex. 1, 7, 26. After evaluating the thousands of assaults, the TCJS reports, DOJ Reports, and video footage produced in this case, Plaintiff's correctional expert opined that Sheriff Gonzalez has direct knowledge of the prevalent violence in the Jail and the lack of staffing and supervision which has allowed this violence to prosper. Ex. 84. Likewise, this threat of substantial harm was the moving force in Plaintiff's injuries. Ex. 84. The policy of failing to separate known dangerous detainees like Thompson from the general population increased the likelihood and foreseeability of harm to the detainees in the same room. *Id.*

Consequently, the fact that the directly involved detention officers did not anticipate Thompson's specific attack on Radcliffe is irrelevant because, given the conditions of the detention facility, there was an obvious risk of detainee-on-detainee violence. In light of the record evidence, a genuine issue of material fact exists regarding whether Harris County violated Radcliffe's constitutional right to be protected from harm caused by his fellow inmates. Therefore, summary judgment is improper.

> **2. A genuine issue of material fact exists regarding Radcliffe's conditions of confinement claim as it relates to his inadequate medical care.**

Harris County appears to argue that because Radcliffe eventually received medical care, he could not have suffered a constitutional injury regarding his medical treatment. [Doc. 203, ¶¶ 44–49]. As a Harris County detainee, Radcliffe had a constitutional right to *adequate* medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013) (citing *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)). An inmate's right to adequate medical care is violated when prison personnel engage in conduct that "evince[s] a wanton disregard for serious medical needs." *Id* at 410 (quoting *Easter*, 467 F.3d at 463). Harris County personnel repeatedly did just that.

According to Harris County's own evidence, Thompson struck Radcliffe with enough force to send him sprawling to the floor and knock out a tooth. Doc. 203-4, at 4; Doc. 203-7, at 7. During his subsequent appointment at the Jail clinic, Radcliffe rated his pain as ten out of ten and informed medical personnel that he believed his jaw was out of place. Doc. 203-7, at 7. Although Harris County describes photos of Radcliffe following the altercation as showing only "minor . . . injuries," pronounced swelling and bleeding

is plainly visible in the pictures. Doc. 203, ¶47; Doc. 203-6, at 1–3, 5. Despite his statements that "something was wrong with [his] jaw," his excruciating pain, and the visible injury to his face and jaw, Radcliffe was forced to wait *two hours* before X-rays of his jaw were taken and he was sent back to work in the interim. Ex. 92 45:2–4, 50:7–21. It was another several hours later before Radcliffe was sent to the hospital for his broken jaw. Ex. 92.

Before the surgery and during recovery, Radcliffe was understandably unable to eat solid food. Ex. 92 at 53:18–19, 54:2–20. Harris County repeatedly failed to ensure that Radcliffe received adequate nutrition during his convalescence. *See* Ex. 92 at Dep. 53:18–19, 54:2–20. He repeatedly informed clinic staff of this, but his words went unheeded. *See* Ex. 92 at 53:18–19, 54:2–20.

The most egregious failure to provide medical care arose after Radcliffe's surgery. After the surgery, despite many of his complaints and the standard care needed to recover from jaw surgery and the ongoing jaw pain that he had and the surgeons order for follow-up care, Harris County has produced no evidence showing that he ever received adequate follow-up care. Ex. 85. Dr. Mathis, Plaintiff's correctional medical expert, opined that the failure to provide appropriate follow-up care with specialists was a systemic failure to meet correctional standards including the standards stated by the DOJ in its 2009 report. Ex. 85. Notably, the Jail failed to have any internal system to ensure that detainees were receiving follow-up care or that they were receiving proper care. *Id.* This is the same issue addressed in the 2009 DOJ Report, multiple TCJS notices of non-compliance, and resulted in the Remedial Orders from the Attorney General's office requiring new policies and training for officers to ensure detainees are receiving the

proper medical care. Ex. 1-20, 85. Radcliffe's ongoing jaw pain and limitations is directly related to the Jail's failure to provide adequate medical care. Ex. 85.

Harris County's contention that "Radcliffe's primary complaint about the medical care he received was that he did not receive soup," at best, paints an incomplete picture of the circumstances, and does not disguise the fact that the evidence arguably indicates Harris County personnel demonstrated a wanton disregard for Radcliffe's serious medical needs. *Rogers*, 709 F.3d at 410 (citing *Easter*, 467 F.3d at 463). [Doc. 203, ¶ 48].

Because the above-cited evidence raises at least a genuine issue of material fact regarding Radcliffe's condition of confinement claim as it relates to his medical treatment, summary judgment is improper.

### C. A genuine issue of material fact exists regarding Radcliffe's failure to train and failure to supervise claims.

#### 1. Failure to act claims in general.

It is well-settled that "a municipality's failure to train its police officers can give rise to § 1983 liability." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 380 (1989). To state a failure to train or supervise claim, a plaintiff must allege that (1) a municipality has adopted inadequate training and supervision policy procedures, (2) acted with deliberate indifference in doing so, and (3) the inadequate policies directly caused the plaintiff's injury. *Sanders– Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010); *Snow v. City of El Paso, Tex.*, 501 F. Supp. 2d 826, 833 n. 5 (W.D. Tex. 2006).

A policymaker's "continued adherence to an approach that they know or should

know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action." *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997). This pattern may also show that the policymaker's conduct, and not "factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Id.* at 407-408.

### 2.    Radcliffe's failure to train claim.

For liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective. *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). Liability under a failure-to-train theory arises where the officers' assigned duties make "the need for more or different training [] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Harris*, 489 U.S at 390. Even where a municipal training program exists, if it is inadequate, the municipality is subject to liability on a "failure to train" theory. *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).

Harris County argues that Radcliffe failed to identify and explain what part of the Jail's training program is deficient and that he cannot connect any deficient training to a constitutional injury because Harris County officers could not have anticipated the detainee-detainee attack. In relation to the failure to identify the training program, this is a pleading argument not a summary judgment argument. This argument has already been addressed by the Court in denying Defendant's Motion to Dismiss on the failure to train claims. Doc.51. As the Court has held, "Plaintiffs allege several specific training

deficiencies. . . . These allegations are suitably specific to identify what training failures exist." Doc.51 at 29. This is more than enough for this stage of the litigation

As discussed above, TCJS has repeatedly issued reports regarding Harris County's: (1) failure to properly observe detainees; (2) failure to adequately staff its facilities; (3) unremedied tendency to overcrowd its facilities; and (4) repeatedly holding detainees in temporary accommodations for far longer than the 48-hour maximum period which are all factors of training that are related to the condition of detainee violence. Ex. 1-20. Furthermore, detainee-on-detainee violence is a prevalent and well-documented problem in Harris County Jail. Ex. 1-20, 26, 28-29, 31-42, 84.

Because this is a well-known issue, Harris County is obligated to train on preventing these detainee fights by teaching proper monitoring and protection. Instead, the County consistently allowed the Jail to be understaffed, ensuring that it would be unable to adhere to the standards necessary to ensure inmate safety. Ex. 84. The evidence shows that proper monitoring and protection would have prevented Radcliffe's injuries which is in fact one of the reasons why the Attorney General's remedial order requires Harris County to conduct new training and policies on supervision, staffing, and observation. Ex. 20, 84. This inadequate monitoring and staffing is a deficiency in Harris County's training policies, and one that ultimately led to Radcliffe's injuries.

Likewise, the failure to properly train detention officers led to the failure to obtain timely and proper initial and follow-up care for Radcliffe. Ex. 85. This again has been a consistent area of failure noted by TCJS and DOJ which has led to the Remedial Order requiring training on these areas. Ex. 20, 85.

### 3.    Radcliffe's failure to supervise claim.

The same is true with regard to Radcliffe's failure to supervise claims. To state a claim for municipal liability on a theory of a failure to supervise, the plaintiff must allege facts showing that (1) the County failed to supervise the officers involved; (2) there is a causal connection between the failure to supervise and the violation of the plaintiff's rights; and (3) it was, or should have been, obvious to municipal policymakers that the "highly predictable consequence" of not supervising the officers was that the officers would violate the plaintiffs' constitutional rights. *See, e.g., Peterson*, 588 F.3d at 850; *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc). As with a claim for failure to train, a plaintiff claiming a failure to supervise must allege facts showing a pattern of similar violations that would make the need for more or different supervision "obvious." *City of Canton*, 489 U.S. at 390. "Plaintiffs must show that in light of the duties assigned to specific officers or employees the need for more or different [supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Murray v. LeBlanc*, 629 F. Supp. 3d 437, 457 (M.D. La. 2022) (cleaned up).

Harris County argues that Radcliffe (1) has failed to identify the supervisor who failed to supervise; (2) cannot anchor the failure to supervise to a constitutional violation; (3) consequently, there is no evidence to support his claim. Harris County raises red herrings in arguing that Radcliffe "has not even identified the supervisor who supposed failure he blames for the sudden attack." There is no such requirement in the context of a *Monell* claim – the County is the one who has failed to supervise. *See e.g., Edwards v. City*

*of Balch Springs, Tex.*, 70 F.4th 302, 313 (5th Cir. 2023). Radcliffe has tied the failure to supervise to his constitutional violations – but for the County's failure to supervise the detention officers, such detainee-on-detainee fights would not occur, and detainees such as Radcliffe would receive adequate medical care. Ex. 84, 85. As identified by Plaintiffs' expert, the Jail lacks an adequate supervision policy to ensure that officers are doing their jobs properly, that they are properly staffed, that they are conducting proper observations, or that they are deterring detainee violence and providing proper medical care. Ex. 84. These failures compound and encourage violence. *Id.* Officers are not disciplined and any investigations conducted into their actions are usually dismissed for administrative reasons, or Jail allows the two-year statute of limitations to pass instead of fully investigating and holding their officers accountable. *Id.* Plaintiffs have provided more than enough evidence to show a fact issue requiring a denial of Defendant's Motion.

    **D.**    **Conditions of confinement and failure to train or supervise can establish Monell liability even if there is no independent constitutional violation by an employee.**

Even if the Harris County personnel directly involved did not violate the constitution in their treatment of Radcliffe, the County is not automatically exonerated. Local governments can be held liable in at least three circumstances: (1) harm is caused by direct actions of the governmental entity itself, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); (2) harm is caused by the entity's policies or customs, *see Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993); and (3) harm is caused by employees for whom the entity has failed to provide adequate training, *see Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018).

An employer is not relieved of its own constitutional violations merely because its employees are not liable. A determination that qualified immunity applies to individual actors does not *ipso facto* relieve the governmental entity for which they worked from liability. *See, e.g., Morgan v. Fairfield Cty., Ohio*, 903 F.3d 553, 565-67 (6th Cir. 2019); *Chew v. Gates*, 27 F.3d 1432, 1439 (9th Cir. 1994); *Newcomb v. City of Troy*, 719 F. Supp. 1408, 1416–17 (E.D. Mich. 1989); *see also Owen v. City of Independence*, 445 U.S. 622, 652 (1980).

The combined conduct of several local government employees acting pursuant to policy may add up to a constitutional violation even if none of the named defendants individually violated the Constitution. *See, e.g., Barrett v. Orange County Human Rights Com'n*, 194 F.3d 341, 350 (2d Cir. 1999); *Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985). After all, when multiple employees act in the same unconstitutional manner, that collective action is indicative of a de facto policy. *Hovis v. Wichita Cnty., Tex.*, No. 3:23-CV-2220-L, 2024 WL 3836559 (N.D. Tex. July 31, 2024), *report and recommendation adopted*, No. 3:23-CV-2220-L, 2024 WL 3841480, at *9 (N.D. Tex. Aug. 15, 2024); *Sims v. City of Jasper, Tex.*, 543 F. Supp. 3d 428, 450 (E.D. Tex. 2021).

Likewise, a municipality's failure to provide adequate jail funding, staffing, or procedures may cause a constitutional violation even if the individual staff members involved are doing their best under untenable circumstances. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) ; *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004); *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985).

A local government may be liable where the plaintiff's injury results from improper training or procedure even if the individual officer is exonerated. *See Fairley v.*

*Luman*, 281 F.3d 913, 916–18 (9th Cir. 2002); *Rivas v. Freeman*, 940 F.2d 1491, 1495–96 (11th Cir. 1991). Thus, even if this Court were to find that Plaintiff's pleadings were inadequate for the individual jail officers, that finding alone would not exonerate the County. Harris County cannot obtain summary judgment without addressing the existence of *Monell* evidence. Because Harris County has failed to do so, summary judgment is improper.

## V.    Conclusion & Prayer

**WHEREFORE, PREMISES CONSIDERED**, Radcliffe requests this Court enter an Order **denying** Defendant Harris County's Motion for Summary Judgment for Claims by Plaintiff Antonio Radclife, and to all other relief in law or equity to which Radcliffe may show himself entitled.

Respectfully submitted,

By: _/s/ Paul A. Grinke_

    **Paul A. Grinke**
    State Bar No. 24032255
    paul@bencrump.com
    **Aaron Dekle**
    State Bar No. 24100961
    aaron@bencrump.com
    BEN CRUMP LAW, PLLC
    5 Cowboys Way, Suite 300
    Frisco, Texas 75034
    (972) 942-0494 – Office
    (800) 770-3444 – Facsimile

    **Carl L. Evans**
    State Bar No. 24056989
    cevans@mccathernlaw.com
    **Jordan A. Carter**
    State Bar No. 24116174
    jcarter@mccathernlaw.com

**Noah McCathern**
State Bar No.24118035
nmcathern@mccathernlaw.com
MCCATHERN PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219
(214) 532-2060 – Office

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(888) 988-6688 - Office
(214) 807-1799 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on **January 16, 2026**, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to each attorney of record who have consented in writing to accept this notice as service of this document by electronic means.

_/s/ Aaron Dekle_
**Aaron Dekle**