IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OCTEVIA WAGNER, et al. | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:23-CV-02886 |
| | § | |
| HARRIS COUNTY, TEXAS, | § | |
| | § | |
| *Defendant.* | § | |

---

## PLAINTIFF KEVIN LEON SMITH'S RESPONSE TO HARRIS COUNTY'S RULE 56 CELOTEX MOTION FOR SUMMARY JUDGMENT AND MOTION TO SEVER

---

**Paul A. Grinke**
State Bar No. 24032255
paul@bencrump.com
**Aaron Dekle**
State Bar No. 24100961
aaron@bencrump.com
BEN CRUMP LAW, PLLC
5 Cowboys Way, Ste. 300
Frisco, Texas 75034
(972) 942-0494 – Office
(800) 770-3444 – Facsimile

**Carl L. Evans**
State Bar No. 24056989
cevans@mccathernlaw.com
**Jordan A. Carter**
State Bar No. 24116174
jcarter@mccathernlaw.com
**Noah McCathern**
State Bar No.24118035
nmcathern@mccathernlaw.com
MCCATHERN PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219
(214) 532-2060 – Office

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD &
SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(214) 946-8000 - Office
(214) 946-8433 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................... iii

Table of Exhibits ........................................................................................................... vi

I.      Introduction and Facts ......................................................................................... 1

II.     Evidence & Exhibits ............................................................................................. 2

III.    Factual Background .............................................................................................. 3

IV.     Argument & Authorities ...................................................................................... 7

        A.      The summary judgment standard ........................................................... 7

        B.      There are genuine issues of material fact regarding KLS's
                conditions of confinement and episodic acts claims ........................... 9

                1.      Conditions and confinement claims in general ....................... 9

                2.      Episodic acts claims in general ................................................ 10

                3.      There is a genuine issue of material fact regarding
                        whether KLS died due to an unconstitutional
                        condition of confinement and lack of medical care due
                        to overcrowding, understaffing and lack of
                        observation ................................................................................. 11

        C.      KLS does not allege that Jail staff failed to protect him from
                harm from third parties or other detainees .......................................... 16

        D.      Conditions of confinement and failure to train or supervise
                can establish *Monell* liability even if there is no independent
                constitutional violation by an employee .............................................. 17

V.      Conclusion & Prayer ........................................................................................... 19

Certificate of Service .................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.,*
   699 F.3d 832 (5th Cir. 2012) ................................................................8

*Anderson v. City of Atlanta,*
   778 F.2d 678 (11th Cir. 1985) ............................................................18

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ........................................................................7, 8

*Arrington-Bey v. City of Bedford Heights,*
   858 F.3d 988 (6th Cir. 2017), *cert. denied,* 138 S. Ct. 738 (2018)........................17

*Barrett v. Orange County Human Rights Com'n,*
   194 F.3d 341 (2d Cir. 1999) ...............................................................18

*BB Energy LP v. Devon Energy Prod. Co. LP,*
   No. 3:07-CV-0723-O, 2008 WL 2164583 (N.D. Tex. May 23, 2008) ..................................8

*Bd. of Cnty. Com'rs of Bryan Cnty., Ok. v. Brown,*
   520 U.S. 397 (1997)........................................................................17

*Blackmore v. Kalamazoo County,*
   390 F.3d 890 (6th Cir. 2004) ..............................................................18

*Bolton v. City of Dallas, Tex.,*
   541 F.3d 545 (5th Cir. 2008) (per curiam) ........................................................10

*Cardner v. Home Depot U.S.A., Inc.,*
   561 F. Supp. 2d 640 (E.D. Tex. 2006) .................................................8

*Celotex Corp. v Catrett,*
   477 U.S. 317 (1986)........................................................................8

*Chew v. Gates,*
   27 F.3d 1432 (9th Cir. 1994) ..............................................................18

*City of Canton, Ohio v. Harris,*
   489 U.S. 378 (1989).......................................................................11

*Dyer v. Houston,*
   964 F.3d 374 (5th Cir. 2020) ..............................................................8

# TABLE OF AUTHORITIES [cont'd]

**Cases**                                                                    **Page(s)**

*Easter v. Powell,*
    467 F.3d 459 (5th Cir. 2006) ................................................................12

*Fairley v. Luman,*
    281 F.3d 913 (9th Cir. 2002) ...............................................................19

*Garcia v. Salt Lake County,*
    768 F.2d 303 (10th Cir. 1985) .............................................................18

*Garner v. Memphis Police Dep't,*
    8 F.3d 358 (6th Cir. 1993) ...........................................................17, 18

*Garza v. City of Donna,*
    922 F.3d 626 (5th Cir. 2019) ........................................................10, 11

*Hare v. City of Corinth, Miss.,*
    74 F.3d 633 (5th Cir. 1996) .......................................................9, 10, 12

*Haverda v. Hays County,*
    723 F.3d 586 (5th Cir. 2013) .................................................................8

*Estate of Henson,*
    795 F.3d at 463.....................................................................................10

*Hovis v. Wichita Cnty., Tex.,*
    No. 3:23-CV-2220-L, 2024 WL 3836559 (N.D. Tex. July 31, 2024)..................................18

*James v. Harris County,*
    577 F.3d 612 (5th Cir. 2009) ...............................................................11

*Lee v. Valdez,*
    No. CIV.A.3:07-CV-1298-D, 2009 WL 1406244 (N.D. Tex. May 20, 2009) .........13, 14, 16

*Morgan v. Fairfield Cty., Ohio,*
    903 F.3d 553 (6th Cir. 2019) ...............................................................18

*Newcomb v. City of Troy,*
    719 F. Supp. 1408 (E.D. Mich. 1989).................................................18

*Owen v. City of Independence,*
    445 U.S. 622 (1980)..............................................................................18

# TABLE OF AUTHORITIES [cont'd]

**Cases**                                                                          **Page(s)**

*Palo v. Dallas Cnty.*,
  No. CIV.A. 305CV0527-D, 2007 WL 2140590 (N.D. Tex. July 26, 2007)..........................9

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986).................................................................................................11, 17

*Rivas v. Freeman*,
  940 F.2d 1491 (11th Cir. 1991) ............................................................................19

*Rogers v. Boatright*,
  709 F.3d 403 (5th Cir. 2013) ................................................................................12

*Royal Surplus Lines Insurance Company v. Brownsville Independent School
  District*,
  404 F. Supp. 2d 942 (S.D. Tex. 2005) ..................................................................8

*Shepherd v. Dallas Cnty.*,
  591 F.3d 445 (5th Cir. 2009) ................................................................................10

*Sims v. City of Jasper, Tex.*,
  543 F. Supp. 3d 428 (E.D. Tex. 2021) ..................................................................18

*Taylor v. Dolgencorp of Texas, Inc.*,
  No. 6:18-CV-00179-ADA, 2020 WL 1902540 (W.D. Tex. Jan. 7, 2020)............................8

*Thomas v. Cook Cnty. Sheriff's Dep't*,
  604 F.3d 293 (7th Cir. 2010) ................................................................................18

*Triple Tee Golf, Inc. v. Nike, Inc.*,
  485 F.3d 253 (5th Cir. 2007) ................................................................................8

*Walker v. Sears, Roebuck & Co.*,
  853 F.2d 355 (5th Cir. 1988) ................................................................................8

## Other Authorities

U.S. CONST. AMEND XIV .........................................................................................9

FED. R. CIV. P. 56(a)............................................................................................1, 7

**TABLE OF EXHIBITS**

Plaintiffs are providing an Omnibus Exhibit List due to the overlapping and intertwined nature of the claims and evidence for the various Motions for Summary Judgment. Plaintiffs incorporate each of these exhibits into the body of the Response as if fully set forth therein. Due to the exhibit size, Plaintiffs will attach an exhibit cover sheet with a link to the exhibits on a share file or similar device that will allow the Court and the parties to access the exhibits.

General

1. DOJ 2009 Report (Wagner 79-102)

2. TCJS Report May 2013-2017 (Wagner 103-183)

3. TCJS Report Dec 2017 (Wagner 184-186)

4. TCJS Report Aug 2018 (Wagner 187-189)

5. TCJS Report Dec 2020 (Wagner 201-207)

6. TCJS Report April 2021 (Wagner 208-210)

7. TCJS Report Nov 2021 (Wagner 211-217)

8. TCJS Report Sept. 2022 (Wagner 224-228)

9. TCJS Report Dec 2022 (Wagner 229-231)

10. TCJS Report April 2023 (Wagner 237-239)

11. TCJS Report Feb. 2023 (Wagner 240-248)

12. TCJS Report Aug. 23, 2023 (Wagner 249-251)

13. TCJS Report Aug 2023 (Wagner 252-261)

14. TCJS Report Feb 2024 (Wagner 263-268)

15. TCJS Report May 23 Remedial Order (Wagner 3246-3247)

16. TCJS Report May 2024 Amend Remedial Order (Wagner 3248-3250)

17. TCJS Report Jan. 2025

18. Harris County Comm. To TCJS Death In Custody (Observation)

19. TCJS Report May 6, 2025

20. TCJS Harris County Second Remedial Order

21. TCJS Report June 2025

22. Harris County's Updated 2024 UOF Policy

23. Eric Morales Personnel File and Investigation

24. KHOU Struck Documentary (Video)

25. KHOU Struck Article

26. TCJS SIR Total Count Files (Compiled)

27. KHOU UOF Incident Report Examples (Compiled)

28. SIR UOF Examples (Compiled)

29. SIR Assault Examples (Compiled)

30. KHOU Assault Examples (Compiled)

31. John Coote Assault Video

32. John Coote Assault Incident Report

33. Evan Lee Assault Texas Rangers Report

34. Zachary Zepeda Assault Video

35. Zachary Zepeda Assault Incident Report

36. Michael Griego Texas Ranger Report and Autopsy Report (Compiled)

37. Kenneth Richard Assault Incident Report

38. Jaquez Moore Assault Incident Report

39. Fred Harris Assault Video

40. Fred Harris Assault Incident Report

41. Rory Ward Assault Investigation Summary and Autopsy Report (Compiled)

42. Kareem Jefferson Assault Incident Report

43. Rory Ward Observation Round Videos Examples

44. Matthew Shelton Observation Round Videos Examples

45. Jacoby Pillow UOF Video

46. Jeremy Garrison UOF Videos and Incident Reports

47. John Coote UOF Video

48. Lenard Vare CV

49. Dr. David Mathis CV

50. Dr. Victor Weedn CV

51. Dr. Vinneth Carvalho CV

52. Officer Mark Garcia Deposition Transcript

53. Officer Mark Garcia Pews Report

54. Officer Mark Garcia Incident History Report

55. Officer Maxim Herman Deposition Transcript

56. Officer Maxim Herman Pews Report

57. Officer Maxim Herman Incident History Report

58. Officer Jin DeGuzman Deposition Transcript

59. Officer Jin DeGuzman Pews Report

60. Officer Jin DeGuzman Incident History Report

Lockhart

61. Lenard Vare Expert Report

62. Dr. David Mathis Expert Report

63. UOF Incident Report (Lockhart)

64. IAD Grievance (Lockhart)

65. Surveillance Footage Inside Pod (Lockhart)

66. Surveillance Footage Outside Pod UOF (Lockhart)

67. Surveillance Footage Entering Hallway (Lockhart)

68. Surveillance Footage Running Down Hallway (Lockhart)

69. Officer Alex Conrad Incident History Report

70. IAD Investigation Officer Alex Conrad

71. Officer Alex Conrad Observation Reprimand

72. Officer Alex Conrad PEWS and IAD Investigation

73. Officer Alex Conrad PEWS Report

74. Harris County Operational Records (Lockhart)

75. Officer Twitty IAD Investigation Report

76. Officer Twitty First Pews Report Notification

77. Officer Twitty Second Pews Report Notification

78. Officer Twitty PEWS Report

79. Officer Twitty Incident History Report

80. Officer Conrad Deposition Transcript

81. Officer Patrick Allen Deposition Transcript

82. Bernard Lockhart Medical Records

83. Officer Bruce Hayes Deposition Transcript

Radcliffe

84. Lenard Vare Expert Report

85. Dr. David Mathis Expert Report

86. Radcliffe Assault Video

87. Radcliffe Incident Report

88. Radcliffe Photo

89. Radcliffe Jail Medical Records

90. Officer Suzana Reskovic Incident Case History

91. Officer Chin Chiu Incident Case History

92. Antonio Radcliffe Deposition Transcript

93. Officer Suzana Reskovic Deposition Transcript

Morelle

94. Lenard Vare's Expert Report

95. Morelle's medical records and incident report

96. Morelle's Deposition Transcript

97. Officer Calyn Cutler Deposition Transcript

Zachery Johnson

98. Lenard Vare Expert Report

99. Dr. Carvalho Expert Report

100.      Zachery Johnson Incident Report and Jail Records

101.      Zachery Johnson Assault Video Footage

102.      Zachery Johnson Operation Records

103.      Zachery Johnson Clinic Records and medical records

Twedt

104.      Lenard Vare Expert Report

105.      Twedt UOF Incident Video Footage

106.      Twedt UOF Incident Report

107.      Twedt Deposition Transcript

108.      Officer Jimmy Poole Pews Report

109.      Officer Jimmy Poole Incident History Report

110.      Officer Andrew Pena Pews Report

111.      Officer Andrew Pena Incident History Report

112.      Officer Jon Vickers-Gilbreath Pews Report

113.      Officer Jon Vickers-Gilbreath Incident History Report

114.      Officer Tyree Simpson Pews Report

115.      Officer Tyree Simpson Incident History Report

116.      Officer Christopher Ortega Pews Report

117.      Officer Christopher Ortega Incident History Report

118.    Officer Thomas Muniz Pews Report

119.    Officer Thomas Muniz Incident History Report

120.    Twedt Medical Records

Kevin Smith

121.    Lenard Vare Expert Report

122.    Dr. Mathis Expert Report

123.    Dr. Weedn Expert Report

124.    Kevin Smith Incident Video Footage

125.    Kevin Smith Observation Rounds Video Footage

126.    Kevin Smith Autopsy Report

127.    Officer Wong Deposition Transcript

128.    Kevin Smith Investigation Summary and Incident Report

129.    Kevin Smith Medical Records

130.    Harris County Observation Records

131.    Harris County Operational Records

<u>**PLAINTIFF KEVIN LEON SMITH'S RESPONSE TO**
**HARRIS COUNTY'S RULE 56 CELOTEX MOTION FOR**
**SUMMARY JUDGMENT AND MOTION TO SEVER**</u>

COMES NOW, Kevin Leon Smith ("KLS[1]") in the above-referenced cause, and files this, his response to Defendant Harris County's Rule 56 Celotex Motion for Summary Judgment and Motion to Sever [Dkt. 260] and would show the Court as follows:

## I.    Introduction and Facts

On July 1, 2022, KLS was booked into the Harris County Jail with known medical conditions. Despite this knowledge, the County failed to ensure that KLS received his medications and proper treatment, as well as relevant diagnostic testing as needed. As stated by Defendant's own evidence, KLS was classified as assaultive which should have placed him in housing requiring 30 minute observations; however, KLS was placed in standard cells with 60 minute observations.

On January 31, 2023, KLS was in his cell when he suffered labored breathing, went unresponsive, and suffered a cardiac arrest. The detention officers were not properly monitoring the cells, as they had failed to conduct any face-to-face required observations in the two hours leading up to this incident including only a few minutes before he went unresponsive. Instead, officers had to be informed of his condition by other inmates. Then, instead of immediately providing medical care, the detention officers (1) stood around in the cell not providing any CPR or applying the AED, (2) deliberately wasted time trying to decide to put on gloves or not, (3) waited until the medical staff arrived

---

[1] Because there is another Plaintiff who shares the same last name, Kevin Smith will be referred to by his initials to prevent any confusion.

before deciding to take him off of his bunk, (4) despite the fact that KLS's fingers, lips, and face were turning blue, did not begin to perform chest compressions until KLS was taken by stretcher to the elevator over 20 minutes after knowing that he was unresponsive, and (5) did not use the AED on KLS. As a result of their deliberate indifference and failure to provide timely and appropriate medical care, KLS died that day. If the officers had conducted proper face-to-face observations, they would have noticed KLS's condition and could have rendered aid saving his life, but instead the officers falsified their observations and failed to render timely medical aid once they entered the cell resulting in his death.

In its summary judgment motion, Harris County argues that KLS did not suffer a constitutional injury because: (1) there is no evidence that he was denied medical care, (2) there is no evidence that the Jail staff failed to protect KLS from harm, (3) there is no evidence of a policy violation by Jail staff, and (4) there is no evidence to support a claim for relief under a conditions of confinement or episodic acts theory. Harris County's arguments have no merit, and the Court should deny the motion for summary judgment as to KLS's claims.

## II.    Evidence & Exhibits

As the Court is aware, this case is still in the middle of discovery. This case also contains unique circumstances with limited access to key witnesses and limited communications with specific parties and ongoing criminal and administrative investigations which have impeded discovery. Plaintiffs have attached to this Response the exhibits and evidence identified in the Table of Exhibits which provide fact questions

raised by Defendant's arguments. Plaintiffs anticipate receiving more supporting evidence including the inspection of the jail, the deposition of Sheriff Gonzalez, additional depositions of officers, and additional Jail records which continue to trickle in.

### III.    Factual Background

On July 1, 2022, Kevin Smith was booked in the Harris County Jail. Def. Ex. 1.B & III. Although KLS had known medical and mental conditions and a criminal classification that required him to be assigned to cells that had the minimum 30 minute observation rounds, KLS was placed in general population subject to 60 minute observation rounds. *Id.*, Ex. 7, 121–23, 130.

On January 31, 2023, KLS was located in a general population cell. Ex. 121-23, 125-28. Unlike other cells in the Jail, the video footage shows that this cell was not connected to the pod control center meaning that no officer in the pod control center could look through a window and see into the cell. Ex. 124-125. Instead, officers would have to leave the pod control center and walk to windows in the hallway or at the door of the pod to see in. *Id.* KLS was last known alive at 8:24 a.m. when the officers conducted count. Ex. 125, 130. Officers were supposed to do observation rounds every 60 minutes for that cell. Ex. 130. TCJS establishes the standards for minimum observation requirements and requires that officers conduct face-to-face observations of each detainee assessing their physical, mental, and emotional well-being during each round. *See* Ex. 2-20. To be conducted properly, the officer cannot conduct the round from inside the control center, through video review, or by looking through the window. *Id.*, Ex. 81 at 27:1-28:6, 29:18-30:15, Ex. 83 at 44:12-19, Ex. 127 at 27:8-28:3, 29:7-18, 35:22-36:3, 48-49, 58:4-17, Ex. 121.

Officers have agreed that only looking through a window or relying on video footage is inappropriate because they cannot assess each detainee and there are blind spots that are not visible. Ex. 81 at 27:1-28:6, 29:18-30:15, Ex. 83 at 44:12-19, Ex. 127 at 27:8-28:3, 29:7-18, 35:22-36:3, 48-49, 58:4-17, Ex. 121.

Although Defendant's documentation claims that rounds were done at 9:13 a.m. and 10:05 a.m., the video footage establishes that these reports are demonstrably false. Ex. 121, 125, 130. As the videos show, at no point during any of those times does an officer enter the cell or even pass in front of the cell's window to conduct a round. Ex. 125. If the officer had entered the cell and conducted a proper round, they would have noticed KLS's labored breathing and medical condition especially at the 10:05 a.m. round and could have prevented his death. Ex. 121-123, 125. Instead, the only way that officers learned of KLS's medical emergency was from the report of the detainees which is consistent with the training and policies of the Jail. Ex. 124, 81 at 51-52. These detainees were not CPR trained and were not trained to recognize medical needs of detainees, yet that is who the officers rely upon to report medical emergencies. The lack of observation was an additional aspect of the failure to provide medical care.

Around 10:19 a.m. was when a detainee pressed the intercom to get the officers' attention. Ex. 124-125. The officers finally responded and entered the cell. Ex. 124. However, the officers stood around for several minutes despite KLS being unresponsive and turning blue. Ex. 121-123, 124. The officers should have been immediately taking KLS off of his bunk and beginning CPR. Ex. 121-123. The officers did no such thing. Plaintiffs' correctional experts and forensic pathologist provide a great summary of the inactions of

the officers, the actions they were supposed to take in response to the medical emergency, and the ultimate cause of KLS's death. Ex. 121-123. As established in these reports, this incident illustrated the rampant lack of training and medical care that officers in the Jail provide detainees which ultimately increased the risk of serious injury or death and caused KLS's death. *Id.*

The officers stood around KLS until medical arrived and then spent several more minutes taking him off of his bunk which was hindered by the overcrowded nature of the cell. Ex. 121-123. The officers should have immediately applied an AED, but failed to do so. *Id.* Almost twenty minutes after the incident began, did an officer finally begin attempting CPR even if it was incorrect. *Id.* As stated in the expert reports, the lack of medical care and observations leading up to his medical emergency ultimately caused KLS's death as his cause of death was treatable and preventable. *Id.* Sergeant Wong in reviewing the incident testified that the observations and medical response of the officers were done within the training and policies of the Harris County Jail establish both the existence of the condition and policy and the causation between the policy and the officers' actions or inactions. Ex. 127 at 35, 38-39, 65-66.

The lack of observation and supervision which impedes the provision of medical care that occurred in KLS's incident was not a one-time event. Instead, as summarized in Plaintiffs' experts' reports, this is a recurring pattern of deliberate indifference to the lives and well-being of detainees within the Jail. Ex. 121-122. Sheriff Gonzalez and the leaders of the Jail have been aware of this situation and the correlation with the understaffing

and overcrowded nature of the Jail for years prior to KLS's death which is also seen in the injuries and deaths of other Plaintiffs and detainees.

For example, since as early as December 2017, TCJS has provided numerous notices of non-compliance finding that Harris County failed to properly staff their Jail which led to failures in observations and failed to ensure that observations were actually done timely and face-to-face. Ex. 3-20. TCJS expressly found systemic observation issues on multiple occasions with records showing delays in observations anywhere from 77 minutes to 464 minutes after they were to have occurred. *Id.* Many of these failures were identified due to the lack of staff. *Id.* In the inspection of the jail a few weeks after KLS's death, TCJS expressly found that officers were not conducting proper face-to-face observations because they were only scanning the QR codes from within the pod control centers without actually assessing the individual detainees face-to-face. Ex. 11. This is the same training and policies that the officers were using during KLS's event. Ex. 81 at 27-30, 51-52, Ex 83 at 44, Ex. 97 at 25, Ex. 127 at 27-28:3, 29, 32-33, 48-49, 58, Ex. 121.

The rampant nature of this lack of medical care and observations that Harris County has refused to reasonably address has resulted in the Texas Attorney General issuing a Second Remedial Order requiring new policies and new training for all officers on conducting observations and providing medical care to detainees. Ex. 20. As recently as January 2025, Harris County implicitly admits that it had a failure in policy and training on conducting observations because it issued to TCJS a new training bulletin that actually laid out how to do observations including assessing the physical, emotional, and mental well-being of each detainee. Ex. 18. As noted in their depositions, the officers have

never seen this training bulletin, had never received any written training on how to conduct observations, and were trained to conduct observations by simply scanning the QR codes within the pod control center. Ex. 81 at 27-30, 37-38, 48-49, 51-52, Ex. 97 at 25, Ex. 127 at 27-28:3, 29, 32-33, 48-49, 58, 59, 65-66, 67, Ex. 121.

Not only are these failures in medical care and observation brought to Harris County's attention through TCJS reports and their own training, but the comparators and other Plaintiffs also show that this is a systemic issue. For example, in the Robert Wayne Fore, Matthew Shelton, William Barrett, Rory Ward, and Kristin Smith cases, officers routinely stated that they conducted observation rounds when in fact they would bounce from QR code to QR code without actually conducting a face-to-face observation. Ex. 43-44, 121. Plaintiff-Intervenor Ana Garcia's Response to the Motion for Summary Judgment provides even more examples of these failures in observation and the direct correlation to the injuries or death of the detainee which is incorporated as if fully stated herein. Dkt. 243. "The County's failure to implement meaningful corrective action, despite repeated state citations, regulatory warnings, and numerous similar incidents, demonstrates a sustained pattern of deliberate indifference at the policymaking level." Ex. 121 at 43.

## IV.    Argument and Authorities

### A.    The summary judgment standard.

Summary judgment is proper when no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*see Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013). The Court must resolve all reasonable doubts, and draw all reasonable inferences, in favor of the nonmovant—*i.e.*, Mr. Lockhart. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). If "reasonable minds could differ" on "the import of the evidence," the Court must deny the summary judgment motion. *Anderson*, 477 U.S. at 250. The movant bears the burden of identifying for the Court the portions of the record the movant believes demonstrate the absence of a genuine issue of material fact. *See Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). A fact is considered material if its resolution could affect the outcome of the claims at issue. *See Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020).

There is no federal analog to Texas's no-evidence summary judgment motion. *Taylor v. Dolgencorp of Texas, Inc.*, No. 6:18-CV-00179-ADA, 2020 WL 1902540, at *2 (W.D. Tex. Jan. 7, 2020) (citing *BB Energy LP v. Devon Energy Prod. Co. LP*, No. 3:07-CV-0723-O, 2008 WL 2164583, at *12 (N.D. Tex. May 23, 2008) ("A no-evidence motion for summary judgment, however, is a pleading that may be filed in state court, but not federal court."); *Cardner v. Home Depot U.S.A., Inc.*, 561 F. Supp. 2d 640, 643 (E.D. Tex. 2006); *Royal Surplus Lines Insurance Company v. Brownsville Independent School District*, 404 F. Supp. 2d 942, 948 (S.D. Tex. 2005). Thus, in seeking summary judgment on a "no evidence" basis, the burden remains with the *movant* to disprove or show that there is no evidence to support an element of the claim against the movant on which the nonmovant bears the ultimate burden of proof at trial. *Celotex Corp. v Catrett*, 477 U.S. 317, 323-24 (1986). Only after the movant satisfies its burden of proof must the non-movant come forward with specific facts that, if true, establish the existence of a genuine issue for trial. *ACE Am. Ins. Co. v.*

*Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).

Because the evidence in this case establishes a genuine issue of material fact with regard to the Kevin Smith's claims against the Harris County, summary judgment is improper.

**B.    There are genuine issues of material fact regarding KLS's conditions of confinement and episodic acts claim.**

**1.    Conditions of confinement claims in general.**

When the state incarcerates an individual, either as punishment after criminal conviction, or as a pre-trial detention, it restricts that person's ability to fend for themselves, thus entitling that person to state provision of certain basic human needs regarding their medical care and safety. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 638–39 (5th Cir. 1996). In short, "pretrial detainees are entitled to protection from harm as well as needed medical care . . . ." *Id.* at 641. While the state has a recognized interest in the incarceration of pretrial detainees and in ensuring order is maintained within a detention center, the Fourteenth Amendment prohibits punitive treatment of a pretrial detainee because there has not yet been an adjudication of guilt. *Palo v. Dallas Cnty.*, No. CIV.A. 305CV0527-D, 2007 WL 2140590, at *1–2 (N.D. Tex. July 26, 2007).

"In a § 1983 condition of confinement case, the pretrial detainee attacks the general conditions, practices, rules, or restrictions of pretrial confinement . . . ." *Id.* at *3. A court faced with a condition of confinement claim must evaluate whether the complained of conditions of pre-trial detention are imposed for punitive purposes or are merely incidental and reasonably related to a different legitimate government purpose. *Id.* To

prevail on a conditions of confinement claim, a pre-trial detainee "is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish . . . ." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). A condition is often the manifestation of an explicit policy, but it also can reflect an "unstated or *de facto* policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials . . . .'" *Id.* (citing *Hare*, 74 F.3d at 645).

### 2. Episodic acts claims in general.

Although this Court has rejected Defendant's argument that these claims are solely episodic act or omission claims, Plaintiff is permitted to plead both claims in the alternative. Unlike a conditions-of-confinement claim, an episodic-acts-or-omissions claim "faults specific jail officials for their acts or omissions." *Estate of Henson*, 795 F.3d at 463 (quoting *Shepherd*, 591 F.3d at 452). For liability to attach, "the municipality must cause the constitutional tort, which occurs when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (per curiam) (quoting *Monell*, 436 U.S. at 694) (cleaned up). This requires a showing that (1) that the municipal employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019). And while "deliberate indifference entails something more than mere negligence,

the cases are also clear that it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 634-35. The Fifth Circuit has clarified that there is no proof requirement that officials *subjectively intend* that the harm occur. *Id.* at 636.

Harris County had an unwritten and widespread practice, *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009), of (1) failing to provide medical care and medications for medical needs and injuries incurred while in the Jail, (2) failing to provide proper observation and monitoring to provide timely medical care, (3) and the continuous overcrowding and understaffing of the Jail which impeded access to medical care.

Additionally, although KLS has separately raised failure to train and failure to supervise claims that are not challenged by the County on summary judgment [Doc. 20 at ¶¶ 1079, 1162-1164], a failure to train can also form the basis of a policy or custom allegation in an episodic acts claim. *Garza*, 922 F.3d at 637 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–91 (1989). It can also be a decision to adopt a course of action to handle a particular situation, if made by an authorized decisionmaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986). Moreover, by failing to address the failure to train and supervise claims, Defendant's motion is better titled a partial motion for summary judgment.

### 3. There is a genuine issue of material fact regarding whether KLS died due to an unconstitutional condition of confinement and lack of medical care due to overcrowding, understaffing and lack of observation.

As an initial matter, Harris County seems to argue that the fact that KLS died from "natural causes" somehow establishes their lack of fault in his death. Doc. 260. But, the

fact that KLS ultimately died from natural causes does not mean that his death was not preventable, or that he was not entitled to medical care from Jail staff in the events preceding his death. Ex. 121-123. Indeed, the evidence shows that had he received timely and appropriate medical care, his death could have been prevented. *Id.* His cause of death has nothing to do with the medical care that he was entitled to receive – Jail staff are not allowed to sit on their hands, watch a detainee die, and then argue that his death was due to "natural causes" and therefore inevitable as a way to avoid liability.

Although Defendant has included a lot subsections in their arguments, all of their arguments can be boiled down to a single contention that KLS did not suffer a constitutional injury.  Doc. 260. Notably, Defendant's arguments seem to ignore the actual claims made in the Complaint by not actually addressing the failure to observe and understaffing and overcrowding condition claims that are also the basis of Plaintiffs' claims.  Doc. 260. These claims alone satisfy each element of the § 1983 claims and are an independent basis for denying summary judgment.

As a Harris County detainee, KLS had a right to *adequate* medical care while detained. *Rogers v. Boatright*, 709 F.3d 403 (5th Cir. 2013) (citing *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006)). An inmate's right to adequate medical care is violated when prison personnel engage in conduct that "evince[s] a wanton disregard for serious medical needs." *Id* at 410 (quoting *Easter*, 467 F.3d at 463). Additionally, because detainees are unable to fend for themselves and take care of their basic needs failing to properly supervise and monitor detainees can also constitute a basis for a constitutional violation. *See Hare*, 74 F.3d at 638–39;  Doc. 51. This makes sense in light of this case because

detainees experiencing medical emergencies rely upon the awareness of the officers in charge of them to ensure that they get medical care. Ex. 121-123.

Here, Harris County appears to argue that KLS's conditions of confinement and episodic acts claims regarding inadequate medical treatment must fail because KLS had access to, and received medical care, while he was detained.   Doc. 260. This is a misrepresentation of KLS's claims and the facts at issue. Harris County's argument that KLS received medical care from time to time while he was detained completely ignores the actual claim at issue – that KLS was specifically denied medical care during a medical emergency, that Jail staff sat around, delayed providing the necessary care to save his life, refused to provide adequate life-saving care, failed to conduct adequate observations prior to him going unresponsive, and ultimately let KLS die. Ex. 121-124, 128. The fact that he received some degree of medical care in other instances is irrelevant. The claim at issue is the inadequate care he received immediately preceding his death, and the County does not properly move for summary judgment or even address this issue.

In an analogous case, *Lee v. Valdez*, Sims, a sixty-year-old woman suffering from paranoid schizophrenia, was waiting trial at the Dallas Jail. *Lee v. Valdez*, No. CIV.A.3:07-CV-1298-D, 2009 WL 1406244, at *1–2 (N.D. Tex. May 20, 2009). Despite knowledge of her diagnosis, the jail placed Sims in the general population section, where she suffered a seizure in her cell. *Id.* at *2. Sims asked to visit the nurse but needed to change her clothes first because she had soiled them. *Id.* While changing, Sims collapsed on her bed and was unable to intelligibly respond to guard's verbal prompts. *Id.* Sims was not taken to the infirmary, nor was medical care summoned, and she died a few hours later. *Id.* The Dallas

Jail moved for summary judgment, arguing there was no evidence that Sims received inadequate medical care as a result of the conditions of her confinement. *Id.* at *7. In response, Simm's family submitted DOJ and HMA reports concluding that the jail violated inmates' constitutional rights to medical care. *Id.* at *9. Accordingly, a genuine issue of material fact existed regarding whether Sims was deprived of adequate medical care due to the conditions of her confinement. *Id.*

Here, the record evidence shows that Harris County knew KLS had medical issues that required proper medication, housing, classification, observation, care, and diagnostic treatment. Ex. 121-123, 128-129. When KLS returned to the Jail at the beginning of January 2023, the evidence shows that even though he was supposed to be medically evaluated before being housed, KLS was housed without being evaluated or being provided a new inhaler for his asthma. Ex. 129 at 776. His medical records also allege that he refused chronic care follow-ups; however, the records do not provide any indication for the basis for the refusal or if he was educated on the risks and need for treatment. *Id.* Harris County implicitly recognizes this gross lapse in care in finding that they needed to change their policies and retrain their officers. *Id.*

On the day of the incident, the officers pursuant to their policy and training failed to conduct multiple face-to-face observations including one that would have found KLS 14 minutes before detainees finally informed the staff. Ex. 121-125, 130. Specifically, the records falsely show that the officers conducted a round at 10:05 a.m.; however, when viewing the video, no officer even passes in front of the window of the cell at anytime before or after that time. Ex. 121, 125, 130. Outside of count, the other observations were

likewise falsified as officers never entered the cell to assess the physical, emotional, and mental health of each individual detainee. *Id.* Defendant's sole reliance on the falsified records to claim that they conducted adequate observations shows their paper-thin position that reinforces the existence of a policy of failing to observe detainees as these records are rarely accurate.

KLS was also improperly classified and housed in general population instead of being housed in 30 minute observation pods. Ex. 121; Def. Ex. III. This directly impeded his access to adequate medical care. Ex. 121.

Then, when KLS suffered a medical emergency, medical care was delayed and inadequate. Ex. 121-123. Specifically, the officers had no urgency and stood around talking for several minutes while KLS was turning blue in front of them. Ex. 121-124, 128. The officers should have begun CPR and AED shocks as soon as they entered the cell and saw that KLS was unresponsive and removed him from his bunk; however, the officers did not begin CPR until many minutes later when they were finally in the elevator. *Id.* The incident exemplifies the gross inadequacies in the training and policies of the Jail as the need for CPR and AED use was obvious however the officers stood around lost on what to do. *Id.* Medical experts agree that KLS would have survived or had a much higher chance of survival of this treatable condition if the officers had begun CPR and AED shocks as soon as the officers entered the cell and even a few minutes after. Ex. 122-123. These are systemic issues in the Jail.

These deficient and problematic policies and procedures have been the subject of reports issued by the DOJ and the Texas Commission on Jail Standards for the better part

of two decades. Ex. 1-21, 121-122. TCJS even noted that the actions that the officers said were correct for KLS's case were against jail standards specifically conducting observations by simply scanning QR codes in the pod control center without ever stopping and making a face-to-face observation of each detainee. Ex. 3-21. These issues have continued for so long that the Texas Attorney General's Remedial Order is requiring Harris County to change their policies, training, and to increase their staffing to address the lack of observation and provision of medical care. Ex. 20. Officers have expressly testified that the observations and actions of the officers in relation to KLS and other similar incidents were in accordance with the training and policies of the Jail. Ex. 81, 97, 127; Doc. 243. The Plaintiffs and Comparators identified in this case have likewise exhibited that officers as part of their training and policies do not conduct face-to-face observations due to staffing issues, timing, and because they only have to scan the QR codes to meet the Jail's standards. Ex. 43-44, 83, 121; Doc. 243.

Harris County itself has implicitly recognized their inadequate training and policies on failure to train by having to change their policies and issuing a new training bulletin on actually conducting face-to-face observations even though no officers have actually seen this bulletin. Ex. 18, 81, 97, 121, 127. Some officers even admitted that if the training bulletin had been provided to them and actually trained on prior to KLS's death that they would have done things differently. *See* Ex. 127 at 54.

Moreover, the Jail's highly documented understaffing and overcrowding impeded these observations, made the officers unable to perform properly, and impeded the provision of medical care. Ex. 1-21, 121-123. As in *Lee*, this evidence raises a genuine issue

of material fact regarding whether Harris County's deprivation of medical care, failure to observe, and understaffing and overcrowding of the Jail deprived Plaintiff of his constitutional rights – i.e. his life. Consequently, summary judgment is improper.

**C.    KLS does not allege that Jail staff failed to protect him from harm from third parties or other detainees.**

Harris County also argues that there is no evidence that Jail staff failed to protect KLS from harm from third parties. But, KLS does not allege that he was harmed by any third party or detainee while he was in the Harris County jail. As such, this argument is not a basis for summary judgment. Instead, Defendant's argument seems to ask the Court to convert the conditions claims – i.e. failure to observe, failure to provide medical care, and understaffing and overcrowding – into a failure to protect claim to add in the deliberate indifference element.  Doc. 260. This Court should reject this argument again as it has already determined that Plaintiffs' claims constitute conditions of confinement which do not require a showing of deliberate indifference.  Doc. 51.

**D.    Conditions of confinement and failure to train or supervise can establish *Monell* liability even if there is no independent constitutional violation by an employee.**

Moreover, even if the Harris County personnel directly involved did not violate the constitution in their treatment of KLS, the County is not automatically exonerated. Local governments can be held liable in at least three circumstances: (1) harm is caused by direct actions of the governmental entity itself, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); (2) harm is caused by the entity's policies or customs, *see Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993); and (3) harm is caused by employees

for whom the entity has failed to provide adequate training, *see Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 995 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018). When the injury is a result of an action of an employee who has not been trained properly, courts apply "rigorous requirements of culpability and causation" — holding a local government liable if it has been deliberately indifferent to constitutional rights. *Arrington-Bey*, 858 F.3d at 995 (quoting *Bd. of Cnty. Com'rs of Bryan Cnty., Ok. v. Brown*, 520 U.S. 397, 415 (1997)). On the other end of the spectrum, when an act of the municipality itself causes the injury, "fault and causation obviously apply." *Id*. at 994. Likewise, when an injury is caused by the straightforward carrying out of a municipal policy or custom, the determination of causation is easy. *See Garner*, 8 F.3d at 364–65.

An employer is not relieved of its own constitutional violations merely because its employees are not liable. A determination that qualified immunity applies to individual actors does not *ipso facto* relieve the governmental entity for which they worked from liability. *See, e.g., Morgan v. Fairfield Cty., Ohio*, 903 F.3d 553, 565-67 (6th Cir. 2019); *Chew v. Gates*, 27 F.3d 1432, 1439 (9th Cir. 1994); *Newcomb v. City of Troy*, 719 F. Supp. 1408, 1416–17 (E.D. Mich. 1989); *see also Owen v. City of Independence*, 445 U.S. 622, 652 (1980).

The combined conduct of several local government employees acting pursuant to policy may add up to a constitutional violation even if none of the named defendants individually violated the Constitution. *See, e.g., Barrett v. Orange County Human Rights Com'n*, 194 F.3d 341, 350 (2d Cir. 1999); *Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir. 1985). After all, when multiple employees act in the same unconstitutional manner, that collective action is indicative of a de facto municipal policy. *Hovis v. Wichita Cnty.*,

*Tex.*, No. 3:23-CV-2220-L, 2024 WL 3836559 (N.D. Tex. July 31, 2024), *report and recommendation adopted*, No. 3:23-CV-2220-L, 2024 WL 3841480, at *9 (N.D. Tex. Aug. 15, 2024); *Sims v. City of Jasper, Tex.*, 543 F. Supp. 3d 428, 450 (E.D. Tex. 2021).

Likewise, a municipality's failure to provide adequate jail funding, staffing, or procedures may cause a constitutional violation even if the individual staff members involved are doing their best under untenable circumstances. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) ; *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004); *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985) .

For similar reasons, the government may be liable where the plaintiff's injury results from improper training or procedure even if the individual officer is exonerated. *See Fairley v. Luman*, 281 F.3d 913, 916–18 (9th Cir. 2002); *Rivas v. Freeman*, 940 F.2d 1491, 1495–96 (11th Cir. 1991). Thus, even if this Court were to find that Plaintiff's pleadings were inadequate as to the individual officers, that finding alone would not exonerate the County. Harris County cannot obtain summary judgment without addressing the existence of *Monell* evidence. Because Harris County has failed to do so, summary judgment is improper.

## V.    Conclusion & Prayer

**WHEREFORE, PREMISES CONDSIDERED,** Plaintiff requests this Court enter an order denying Defendant Harris County's Motion for Summary Judgment for Claims by Inmate Kevin Leon Smith, and granting all other relief in law or equity to which Plaintiff may show himself entitled.

Respectfully submitted,

By: _/s/ Paul A. Grinke_

**Paul A. Grinke**
State Bar No. 24032255
paul@bencrump.com
**Aaron Dekle**
State Bar No. 24100961
aaron@bencrump.com
BEN CRUMP LAW, PLLC
5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 942-0494 – Office
(800) 770-3444 – Facsimile

**Carl L. Evans**
State Bar No. 24056989
cevans@mccathernlaw.com
**Jordan A. Carter**
State Bar No. 24116174
jcarter@mccathernlaw.com
**Noah McCathern**
State Bar No.24118035
nmcathern@mccathernlaw.com
MCCATHERN PLLC
3710 Rawlins St., Suite 1600
Dallas, Texas 75219
(214) 532-2060 – Office

**Thad D. Spalding**
State Bar No. 00791708
tspalding@dpslawgroup.com
**Shelby J. White**
State Bar No. 24084086
swhite@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
P.O. Box 224626
Dallas, Texas 75222
(888) 988-6688 - Office
(214) 807-1799 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **January 16, 2026**, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to each attorney of record who have consented in writing to accept this notice as service of this document by electronic means.

*/s/ Aaron Dekle*
**Aaron Dekle**
