**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **OCTEVIA WAGNER, ET. AL.,** | § | |
| **Plaintiffs** | § | |
| | § | |
| **Vs** | § | |
| | § | |
| **HARRIS COUNTY, TEXAS** | § | **Civil Action No. 4:23-CV-02886** |
| **Defendant** | § | |
| | § | |
| **AND** | § | |
| | § | |
| **ANA GARCIA AND CHANDRA JENKINS,** | § | |
| **Plaintiff – Intervenors** | § | |

**DEFENDANT HARRIS COUNTY'S RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION TO REMOVE CONFIDENTIALITY DESIGNATION
FROM DOCUMENTS PRODUCED IN DISCOVERY**
================================================================

MAY IT PLEASE THE COURT:

NOW COMES DEFENDANT HARRIS COUNTY and submits this Response in Opposition to Plaintiffs' Motion Remove the Confidentiality Designation from Defendant's Document Production (#270).

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................ 1

I. PROCEDURAL BACKGROUND ......................................................................... 3

A.   The Steps Leading To The Entry Of The Protective Order Were Reasoned And Well Considered By The Parties And Ultimately By The Court. ............................. 3

B.   Defendant Has Relied On The Provisions Of Protective Order For Over Fifteen Months To Facilitate And Streamline Document Discovery. ................................ 5

C.   Complaints About The Confidentiality Designation Did Not Begin Until October 2025, A Year After Document Production Commenced. .................................... 6

II. SUMMARY OF THE RESPONSE ...................................................................... 8

III. STRUCTURE OF THE DOCUMENT PRODUCTION ........................................ 8

A.   Overview Of The Structure Of The Document Production ................................. 8

B.   Overview Of The Exhibits Submitted In Support Of Plaintiffs' Motion To De-Designate ................................................................................................... 9

Medical Records Of Inmates ........................................................................... 9

Autopsy Records (Including Photographs Of Body Dissections)...................... 9

Criminal History Records ............................................................................... 9

Outside Law Agency Investigations [Tx Rangers / HPD]................................ 9

Internal Affairs Investigations ........................................................................ 9

Certain HR Records Of Detention Officers .................................................... 9

Operational Records – Daily Work Schedules ................................................ 9

Operational Records – Detention Command SOPs ......................................... 9

IV. ARGUMENTS & AUTHORITIES GENERALLY ............................................... 10

A.    The Public Does Not Have An Unfettered Right Of Access To Documents
      Produced In Discovery Nor Does Plaintiffs' Counsel Have A Right To
      Transfer Discovery In This Case To Their Other Cases Or To Provide It To
      Other Litigants. .................................................................................................. 10

B.    The Court Had Good Cause To Enter Protective Order #80 And The Order
      Accomplishes The Purposes For Which It Was Designed. ................................. 11

C.    Defendant's Application Of Confidentiality Tags On Document Discovery
      Was In Good Faith, Has A Basis In Law, And Falls Within The Scope Of
      Protective Order #80. ......................................................................................... 12

V. CONFIDENTIALITY PROVISIONS APPLICABLE TO DOCUMENT
CATEGORIES.............................................................................................................. 13

A.    The Jail Records Are Not Limited To The Plaintiffs, But Instead Reveal
      Information About Hundreds Of Other Current And Former Detainees Of The
      Harris County Jail. ............................................................................................. 13

B.    The Public Would Not Have A Right To Records Produced In This Pending
      Lawsuit By Harris County While Litigation Related To Documents Remains
      Pending. .............................................................................................................. 13

C.    All Medical Records Pertaining To An Inmate Qualify For The
      Confidentiality Designation And Disclosure To Third Parties Are Prohibited. ... 14

D.    All Criminal History Records Pertaining To An Inmate Qualify For The
      Confidentiality Designation And May Be From Disclosure To Third Parties. ..... 15

E.    Criminal Case Investigative Packets Sent To Or Received From Outside Law
      Agencies Qualify For Confidentiality Designation And May Be Restricted
      Disclosure To Third Parties. ............................................................................... 16

F.    Internal Affairs Investigations Qualify As Confidential And May Be
      Restricted From Disclosure To Third Parties. .................................................... 16

G.    HR RECORDS PERTAINING TO TRAINING [PERSONAL STATUS
      REPORT [PSTs], PEWS REPORTS, AND INCIDENT HISTORY

REPORTS QUALIFY FOR THE CONFIDENTIALITY DESIGNATION
AND MAY BE RESTRICTED. ................................................................. 17

H.    Autopsy Reports Including Underlying Photographs Of The Dissection Of
Decedent's Body Qualify For The Confidentiality Designation And Are
Properly Restricted From Dissemination To Third Parties............................... 19

I.    CJC SOP Policies Are Properly Qualify As Confidential And May
Legitimately Be Restricted From Distribution Beyond Their Use In This Case
Under Protective Order #80. .......................................................................... 20

V. MISCELLANEOUS ARGUMENTS REQUESTING DE-DESIGNATION......................... 21

A.    Plaintiffs' Contention That They Can Not File Appropriate Responses To
Defendant's Dispositive Motions Because The Confidentiality Designation Is
Overbroad And Has No Merit.......................................................................... 21

B.    Documents Inadvertently Left Untagged As Confidential Does Not Give
Plaintiffs Grounds To Set Aside The Protective Order #80 Or To Share
Documents With Third Persons. ..................................................................... 21

C.    Production Of Documents Produced Under A Prior Public Information Act
Does Not Foreclose Or Preclude The Labeling Of Those Same Documents As
Confidential In The Instant Case. ................................................................... 22

VI. MOTION FOR PROTECTION............................................................................. 22

CONCLUSION & PRAYER ...................................................................................... 23

==========================================================

## I. PROCEDURAL BACKGROUND

**A.    The Steps Leading To The Entry Of The Protective Order Were Reasoned And Well Considered By The Parties And Ultimately By The Court.**

1.    At or near the time that undersigned defense counsel entered an appearance in this case (ECF #52, #53; 6/6/2024), DEFENDANT filed a Motion for Protective Order. *See ECF #74 (7/25/2026).*

2.    A review of the nature of the case as a Section 1983 jail case, along with review of the live complaint consisting of 279 pages, approximately 29 Plaintiffs, 14 of which were custodial deaths, and numerous wrongful death alleged statutory beneficiaries easily forecasted that large volume of documents and materials likely to be generated in the case. The Harris County Jail Facility is a 10,000 bed facility and falls within the top five largest county detention facilities in the country.

3.      It was apparent from the pleadings alone that the document discovery would likely consist of jail records, medical records, law enforcement records, and jail policy materials as to which a Protective Order would be justified.

4.      DEFENDANT filed a Motion for Protective Order after conferring with Plaintiffs' Counsel about entry of a protective order. *See   #74 Defendant's Motion for Protective Order (filed 7/25/2024).* DEFENDANT's initial Motion (ECF #74) captures DEFENDANT's concerns and reasons for the need for a protective order, which is succinctly expressed in paragraph 5 of the Motion:

> 5.      To protect the integrity of the records discovery process, DEFENDANT HARRIS COUNTY therefore hereby requests the entry of an appropriate Confidentiality and Protective Order that will protect the interests of the Harris County Jail Operations, the interests of individual detainees identified and named in the jail records, as well as the interests of those Detention Officers named in the jail records as persons with knowledge of facts and information pertaining to each clam made in this litigation
>
> *See ECF #74 Defendant's Motion for Protective Order at p. 2.*

5.      DEFENDANT conferred with Plaintiffs' Counsel over a proposed protective order. Plaintiffs' Counsel had advised that there was no "hard objection" to entry of an order" but no final agreement could be reached on the details of the Order.  *See ECF #74 at para. 2.* Thus, DEFENDANTS submitted its Proposed Order.

6.      Shortly thereafter, the Court entered an Order requiring the parties to further confer regarding the specifics of a protective order, to "make all possible efforts to agree on the terms of a joint protective order" and to submit a proposed order no later than August 15, 2024. *See ECF #75.* Order #75 further required the parties to submit points of disagreement if no full agreement could be reached. *See ECF #75.*

7.      Respective counsel then engaged in further negotiations over the scope of an appropriate protective order, and on 8/15/2024 filed a Joint Motion for entry of a Proposed Order. The Proposed Order identified disputed points. *See ECF #77 – Joint Motion, with Proposed Order (including disputed points).*

8.      On September 12, 2024, the Court heard arguments on the Joint Motion (ECF #77), including the disputed points. The Minute Entry in the Docket Sheet reflects that the Court granted the Joint Motion and accepted Defendant's Proposed Provisions for Paragraphs 5, 6, and 9 for the reasons stated on the record. *See Wagner Docket Sheet, Minute Entry dated 9/12/2024.*

9.      The Court then entered a final Protective Order #80 granting Joint Motion #77 and incorporating the rulings reflected in the Minute Entry to paragraphs #5, #6 and #9. *See ECF #80 Protective Order; see also Docket Sheet Entries dated 9/12/2024.*

10.     The Court's Protective Order #80 reflects a discovery management model that balances the competing interests of the parties, and which falls within the authority of the District Court. *See ECF #80 Protective Order.* It applies to all parties, it establishes a mechanism to facilitate the exchange of discovery and most importantly, it makes clear that discovery exchange is for the purpose of the prosecution or defense of the civil lawsuit and for no other purpose. *See ECF #80 Protective Order at p. 3, para. 9.*

**B.      Defendant Has Relied On The Provisions Of Protective Order For Over Fifteen Months To Facilitate And Streamline Document Discovery.**

11.     Since the entry of Protective Order #80, DEFENDANT has been responding to and producing voluminous pages of documents responsive to document production requests, most of it consisting of jail records pertaining to the Plaintiffs and Intervenors as well as medical records also pertaining to the Plaintiffs. A copy of the Index to Document Production is attached. *See Exhibit A – Index to Document Production (filed 9/12/2024).*

12.     Reliance on Order #80 and the ability to forego redaction concerns allowed Harris County to produce to Plaintiffs' counsel the approximately 845 gigabytes of documents and videos that have been produced so far in this case. The file size of the production is indicative of *millions* of pages of documents and dozens of hours of video that, absent the protective order, the County would have had to have combed through to apply redactions.

13.     Either as a consequence of further negotiated agreements and / or court rulings, DEFENDANT has produced additional documents. And given the nature of the documents, DEFENDANT has deployed the use of the Confidentiality designation to restrict the utilization of the materials produced to the Court and the litigations, other than for materials that were already clearly in the public domain.

14.     Significantly, though there have been several discovery-related motions filed and argued since the Court issued the Protective Order in September 2024, neither Plaintiffs (nor Intervenors) have raised a complaint against the Confidentiality designation.

**C.**     **Complaints About The Confidentiality Designation Did Not Begin Until October 2025, A Year After Document Production Commenced.**

15.     In early October 2025, about a year after the initial sets of document discovery started to be produced, Plaintiffs' Counsel raised for the first time a challenge to the utilization of the confidentiality designation.  *See ECF Exhibit #270.1 Email Exchange Between Counsel (emphasis added).*

16.     Prior to this date, the only related issue discussed between Counsel was whether attorneys who were not attorneys of record in this case would be provided access to the Sharefile portal that Defense Counsel had set up to transmit and track document production.

17.     Defense Counsel advised Plaintiffs' counsel that only Attorneys of Record (and their legal support staff) to whom Protective Order #80 applied would be given access to the Wagner Document Production Sharefile portal. This prompted the filing of a Notice of Appearance by attorneys from other law firms other than the Ben Crump Law Firm, including Carl Evans, Jordan Carter, Alizabeth Guillot, Noah McCathern with McCathern Shokouhi Evans, PLLC, and Thad Spalding and Shelby White with Durham, Pittard & Spalding, LLP.  *See Docket Sheet ECF Nos. #95, #115, 137 – Notices of Appearance.*

18.     When Defense Counsel asked, in response to Plaintiff Counsel's complaint, what obstacles to written discovery Plaintiffs were facing, the response was that the defense had the burden of explaining "<u>why these documents are to be kept out of **the public's purview**</u>." *See ECF Exhibit #270.1 Email Exchange Between Counsel (emphasis added).*

19.     It appears then that Plaintiffs' position is Counsel should be able to freely disseminate the vast document production in this lawsuit the general public, even though the litigation is active and still in the discovery phase.

20.     Moreover, in their Motion to De-Designate, Plaintiffs go a step further and freely admit the following reasons for the Motion:

> Defendant's "arrangement" is an abuse of the discovery process by <u>impeding the information available for Plaintiffs' to be able to coordinate and collaborate with additional parties, other Plaintiffs' attorneys who have similar claims</u>, and impedes the use of these documents in filings, hearings, and depositions and cuts against the whole purpose of the public nature of federal claims. Instead, Defendant is attempting to hide this information from the public and even other litigants because they know that this will expose their longstanding constitutional violations and will permit claims to be decided based on the merits and not jurisdictional or procedural arguments that Harris County has relied on to oppose these claims.

*See ECF #270 Motion to De-Designate at p. 11 (emphasis added).*

21.    And here is reflected probably the main reason this Motion to De-Designate is now being raised for the first time – a desire to share the written discovery in other similar cases involving other cooperating attorneys working in coordination with the Ben Crump law firm.

22.    To be sure, DEFENDANT requests that the Court take judicial notice of the fact that Plaintiffs' counsel in this Wagner Lawsuit are also counsel of record in two other cases pending in the Houston Division. In these other cases, Plaintiffs assert similar claims against the Harris County Jail albeit on behalf of a distinct set of jail inmates. Two that have been brought to undersigned counsel's attention are:

*Terry, Jr. et. al. v Harris County, Case No. 4:24-cv-3068 (USDC Houston Div.)(Hon. David Hittner, Presiding); and*

*Chavez – Sandoval, et. al. v. Harris County, Case No. 4:24-cv-03072 (USDC Houston Div)(Hon. Lee H. Rosenthal Presiding).*

23.    In both of these cases, counsel from the Ben Crump Law Offices serve as Plaintiffs' counsel. There may be, and likely are, other similar jail lawsuits like these being worked up by counsel working in association with counsel in this Wagner lawsuit. It appears that Intervenor Deqon Buford's counsel, the Shariff law firm has other claims against the Harris County Jail stating similar claims as  well.

24.    A review of the Docket Report for these other two cases cited above reflects that these are in dissimilar stages of development. They each have different outside retained defense counsel. Undersigned counsel is not involved in these cases but has been made aware of them by the County Attorney's Office.

25.    The point to be made here is that what Plaintiffs' Counsel apparently wants to accomplish by this frontal attack on Protective Order #80 is to carry over the document production provided in this case to use in these other cases – even though these cases are not only being defended by different defense counsel but are being presided over by two different U.S. District Judges in this Division.

26.    The abuse here is not DEFENDANT's desire to restrict the use of documents produced to this case – that is standard practice. Rather, the abuse is in Plaintiffs' counsel's desire to have the Court sanction unrestrained sharing of discovery content without the knowledge or participation

of either the assigned defense counsel in the other cases or, more importantly, without the knowledge or participation of the Presiding Judges in the other cases.

## II. SUMMARY OF THE RESPONSE

27.     Nowhere in Plaintiffs' Motion to De-Designate does Counsel complain about how the confidentiality designation restricted Plaintiffs (or Intervenors) prosecution of this case. If anything, as more fully elaborated on below, the application of the confidentiality designation has made it possible to produce unredacted materials to Opposing Counsel for more complete review of substantive content.

28.     In addition, Plaintiffs' statement of the legal principle – that the public has a right to the materials produced – is simply flat wrong. There is no unbridled right of the Plaintiffs to have discovery material produced in active litigation made available to the public, as will be more fully addressed below.

29.     Moreover, seeking to remove the guard-rails that limit the document production in this case under a Protective Order so that the same document production can be carried over to other lawsuits which Plaintiffs' Counsel is prosecuting against Harris County – and acting is if DEFENDANT and its counsel is engaged in some nefarious cover-up plot – is not consonant with a Court's and a Judge's management of the discovery processes in the case.

30.     Regardless of Plaintiffs' desire to share discovery material with outside third parties or to use it themselves in other cases, there are in fact confidentiality provisions that apply to the majority of documents produced in this litigation, as more fully discussed below.

31.     And even if the Court determines that individual instances of confidentiality designations are mis-applied, this does not warrant the wholesale retraction of Protective Order #80, as Plaintiffs request and pray for.

32.     Finally, regardless of whether the Court orders certain confidentiality designation to be removed, DEFENDANTs request the entry of an Order prohibiting Plaintiffs' counsel from taking documents produced in this case and carrying it over wholesale into other cases in this District and this Division in which Plaintiffs are prosecuting cases.

## III. STRUCTURE OF THE DOCUMENT PRODUCTION

### A.     Overview Of The Structure Of The Document Production

33.     The document production provided in this case, which is voluminous, is entirely digitized and paperless. It has been produced to counsel of record by uploading it to a secure Sharefile portal

maintained by defense counsel. Access to this Sharefile portal has been made available to all Counsel of Record and their legal support staff. It is also available to the Court via the Court's Case Manager – for the convenience of the Court if needed.

34.     The materials can be viewed and downloaded to a user's local drives. Large documents can also be downloaded to a local drive. Video content, which is digitally large, can be downloaded as well.

35.     The discovery materials are produced in the same format in which it is received, but organized into binders to facilitate indexing, labeling, and page numbering. This labeling is distinguished from the native content by being applied in the color RED. This includes the Confidentiality designations, which are always at the top of the pages.

36.     Attached to this Response is one of the latest versions of the document production that has been completed in this case.  *See Exhibit 1 – Index to Document Production.*

**B.     Overview Of The Exhibits Submitted In Support Of Plaintiffs' Motion To De-Designate.**

37.     A review of the Exhibits that Plaintiff has selected in support of their Motion to De-Designate is included in Plaintiffs' Motion and will not be repeated here.

38.     Some of Plaintiff's Exhibits are filed. Others, because of size must be accessed via OneDrive portal link to ascertain their contents.

39.     The Exhibits fall into one or more of the following broad categories in Order of importance for confidentiality purposes:

> **Medical Records Of Inmates**
>
> **Autopsy Records (Including Photographs Of Body Dissections)**
>
> **Criminal History Records**
>
> **Outside Law Agency Investigations [Tx Rangers / HPD]**
>
> **Internal Affairs Investigations**
>
> **Certain HR Records Of Detention Officers**
>
> **Operational Records – Daily Work Schedules**
>
> **Operational Records – Detention Command SOPs**

40.     The confidentiality provisions applicable to these categories of records is discussed in more detail below.

## IV. ARGUMENTS & AUTHORITIES GENERALLY

**A.    The Public Does Not Have An Unfettered Right Of Access To Documents Produced In Discovery Nor Does Plaintiffs' Counsel Have A Right To Transfer Discovery In This Case To Their Other Cases Or To Provide It To Other Litigants.**

41.    A district court has broad discretion when fashioning protective orders. *See In re Alexander Grant & Co. Litigation,* 820 F.2d 352, 357 (11TH Cit. 1987).

42.    In complex litigation, where document by document review of discovery materials would be time-consuming and impractical, a district court may find good cause and issue a protective order pursuant to Rule 26(c), FRCP. *See In re Alexander,* 820 F.2d at 357.

43.    A District Court has authority to protect the legitimate interests that defendants have in keeping materials covered by a protective order out of public hands, even when non-parties seek access to those materials. *See generally Dorsett v County of Nassau*, 289 F.R.D. 54, 74 (USDC ED NY 2012).

44.    Protective orders serve essential functions in civil adjudications, including the protection of the party's privacy and property rights *See Seattle Times Co.*, 467 U.S. at 34-35 (acknowledging that it is legitimate to limit the dissemination of discovery materials that may be discoverable but may never be introduced as exhibits at trial. *See In re Zyprexa Injunction,* 474 F.Supp.2d 385, 414 (USDC EDNY 2007)(citing treatises and authorities); *see also June Medical Services LLC v Phillips*, 22 F.4[TH] 512, 521 (5TH Cir. 2022).

45.    Courts have upheld provisions in a protective order that prohibit the use of discovery content from use in any other litigation proceedings.  *See Wolters Kluwer Financial Services, Inc., v. Scivantage,* Cause No. 07 CV 2352 (HB), 2007 WL 1498114,at *7  (S.D.N.Y. 2007)*(citing On Command Video Corp. v. Lodgenet Entertainment Corp.,* 976 F.Supp. 917, 920-22 (N.D.Cal. 1997) (where plaintiffs in federal court commenced lawsuit against same defendant in state court and used protected information, Court found plaintiffs in contempt, stating, "The purpose of the Order is to limit the use of confidential information to this case. By using such information to file a separate lawsuit in another forum, plaintiff violated the plain terms of the Protective Order."); *In re Biovail Corp. Securities Litigation,* 2007 WL 259933, at *2 (S.D.N.Y. 2007) (where Defendants in federal litigation filed separate complaint in state court that included protected information provided by third-party pursuant to federal litigation, Court restrained Defendants from using any protected material and ordered Defendants to produce all documents to third-party and redact any pleading in any court that contained the protected information); *Poliquin v. Garden Way,* 154

F.R.D. 29, 32 (D. Me. 1994) (where plaintiff's attorney gave confidential deposition transcript to co-counsel litigating against same defendant in state court, Court directed attorney to destroy documents, noting, although "counsel in any other action against Defendant is free to initiate discovery anew...." plaintiff's counsel was not allowed to use specific depositions produced in reliance on the Protective Order.))

46.    Relevant here, courts have even held that even if the same attorneys represent parties in multiple cases, this does not allow for counsel to use discovery produced in one case to be used in a different case. *See Poliquin v Garden Way, Inc.*, 154 F.R.D. 29, 31 (1994); *see also Pacific Gas & Electric Co. v United States*, 79 Fed.Cl. 744 (2007)(restrictions on use of discovery materials even after entry of final judgment in remain enforceable and violations are sanctionable.

47.    Courts can accommodate competing interests by placing intervening parties under the same use and disclosure restrictions contained in the original protective order. *See Dorsett*, 289  F.R.D. 54 (USDC ED NY 2012). A protective order restricting dissemination of confidential materials produced in discovery does not violate parties' speech rights, as parties do not have a First Amendment right of access to information made available only for purposes of trying a suit. *See Dorsett,* 28 F.R.D. at 67 (citing *Seattle Ties Co. v Rhinehart*,  467 U.S. 20 (1984); *see also Doe v Archdiocese of New Orleans*, 2023 WL 4420251 at p. 3 (USDC ED La. 2023)(a news agency has no First Amendment right of access to pretrial information produced in the context of civil discovery and a court restrict its dissemination via a protective order).

48.    Even the Federal Rules of Civil Procedure make clear that discovery materials are generally not made available to the public.  *See Rule 5, FRCP(d)(1)(A)( disclosures under Rule 26(a)(1) or (2) and the following discovery requests and responses must not be filed until they are used in the proceeding or the court orders filing).*

49.    Courts have upheld provisions in a protective order that prohibit the use of discovery content from use in any other litigation proceedings.  *See Wolters v Kluwer Financial Services, Inc.,* 2007 WL 1498114, headnote 7  (USDC SDNY 2007)*(citing cases).*

**B.    The Court Had Good Cause To Enter Protective Order #80 And The Order Accomplishes The Purposes For Which It Was Designed.**

50.    The Court had good cause to enter the Protective Order #80, and the Order accomplishes the purposes for which it was designed.

51.     As explained in the procedural history above, the Court relied initially on the negotiations between the Parties to fashion a Protective Order acceptable to both sides. As to disputed points, the Court held a hearing and made rules on disputed points. The result was Protective Order #80.

52.     There should be no dispute that the Court had good cause to enter Protective Order #80.

53.     Protective Order #80 also accomplishes the purposes for which it was designed, which is to maximize the open exchange of enormous amounts of document discovery and to minimize the burdens of redaction.

54.     Plaintiffs have benefitted greatly from the document production that has been provided to date, with minimal redactions, and subject only the material being restricted for use by the parties and the Court in this case.

55.     The complaint that Plaintiffs have is twofold. First, Plaintiffs want to circulate the material to third persons – presumably through media and social media – and outside the confines of the extant litigation. This serves no purpose to the prosecution and defense of this case. Plaintiffs apparently believe it serves there purposes somehow. But it undermines DEFENDANTS entitlement to defend the claims on the merits in a court of law.

56.     Secondly, Plaintiffs want to use the discovery materials produced in this case for use in other cases that counsel is prosecuting – cases which are under the jurisdiction, management, and control of other Judges.

**C.     Defendant's Application Of Confidentiality Tags On Document Discovery Was In Good Faith, Has A Basis In Law, And Falls Within The Scope Of Protective Order #80.**

57.     The application of the "Confidentiality" tag on the various categories of written discovery produced in this litigation reasonably falls within the scope of Protective Order #80.

58.     Protective Order #80 provides in paragraph 2 that.

> 2. Each party and disclosing nonparty shall have the right to designate as confidential and subject to this Protective Order any information, document, or portion of any documents produced by it in this civil litigation that has not been made public and that the disclosing party reasonably and in good faith believes contains or comprises confidential information, including: (a) investigative files in an ongoing criminal investigation; (b) information that would reveal the identity of confidential informants, or (c) sensitive personal information such as an individual's social security number, home address or medical records, protected health information, health care information, proprietary information, or other confidential, technical, business, or financial information.

## V. CONFIDENTIALITY PROVISIONS APPLICABLE
## TO DOCUMENT CATEGORIES

**A.    The Jail Records Are Not Limited To The Plaintiffs, But Instead Reveal Information About Hundreds Of Other Current And Former Detainees Of The Harris County Jail.**

59.    In considering Plaintiffs' request that all of the produced documents be available to the public and other litigants, it is necessary to advise the Court that the expansive discovery that has been permitted in this case has given Plaintiffs access to records that involve hundreds of other detainees. Yet, Plaintiffs offer no explanation as to how their request can be squared with the qualified constitutionally recognized rights of privacy apply to persons in custody. *See Levin v Board of Education of City of Chicago*, 470 F.Supp. 835, 840-41 (N.D. ILL. – Eastern Div. 2007)(recognizing constitutionally protected right of privacy in medical records; citing cases)

60.    For example, the Fifth Circuit has recognized that a jail inmate states a non-frivolous claim based on a breach of a constitutional right of privacy in personal medical records shared with other inmates that revealed a positive HIV and Hepatitis B diagnosis. *See Alfred v Corrections Corp. of America*, 437 Fed. App'x 281 (5th Cir. 2011). Beyond just medical records of detainees, the production in this case contains a vast amount of information regarding detainees that have been accused of committing crimes in jail, information about detainees who have been crime victims in jail, information about who cooperated with law enforcement in jail and who did not, videos capturing people in the jail during intimate activities, like sitting on a toilet or wiping themselves clean after using the toilet.

61.    They seemingly ask that they be permitted to publicize these records without the consent of the persons depicted in the hundreds of thousands of pages of documents or dozens of hours of video and no doubt would fault the County should a non-consenting detainee bring forth a claim. Plaintiffs simply do not have any legitimate use for this material outside of prosecuting their claims.

**B.    The Public Would Not Have A Right To Records Produced In This Pending Lawsuit By Harris County While Litigation Related To Documents Remains Pending.**

62.    Given Plaintiff Counsel's contention that the public has a right of access to the documents produced in discovery in this case, it is appropriate to ask whether any member of the public could request a copy of these materials produced in discovery and be entitled to receive them. They could not. The records produced in this litigation are not subject to disclosure under the Texas

Government Code. *See* Tex. Gov't Code §552.103(a). The public records produced in this pending litigation could all legitimately be withheld from disclosure in a response to a request for disclosure by any third person under the litigation exception to the Open Records Act. *See §552.103, Tex. Gov't Code – Litigation Exception.*

63.    There is no question that the Open Records Act applies to Harris County, nor is there any question that the records produced in discovery to counsel of record are public records. There is also no question that all of the records that Plaintiffs seek to de-designate as confidential are nevertheless, records produced in pending litigation pursuant to discovery requests.

64.    Should any of the records produced in discovery be requested by a member of the public, Harris County would have the right to submit a withholding requests to the Office of the Attorney General on the grounds that the records are the subject of pending litigation to wit:

> (c) Information relating to litigation involving a governmental body or an officer or employee of a governmental body is excepted from disclosure under Subsection (a) only if the litigation is pending or reasonably anticipated on the date that the requestor applies to the officer for public information for access to or duplication of the information.
>
> *Section 552.103(c), Texas Gov't Code*

65.    The purpose of this provision is to prevent the use of the Open Records Act as a way of avoiding the rules of discovery applicable to litigation. *See Thomas v Cornyn, 71 S.W.3d 473, 487 (Tex.App. – Austin 2002, no pet.).*

66.    Plaintiffs urge their Motion to De-Designate on the ground that the public has a right to the records. But should a member of the public actually request disclosure of these records, DEFENDANT has a valid statutory basis upon which to perfect a withholding request to the Attorney General.

**C.    All <u>Medical Records</u> Pertaining To An Inmate Qualify For The Confidentiality Designation And Disclosure To Third Parties Are Prohibited.**

67.    All medical records pertaining to an inmate qualify for the Confidentiality designation under one or more statutes. Medical records must be withheld in response to public information requests as per Section 552.101, TGC, which incorporates by reference the confidentiality provisions of state and federal law. *See §552.101, TGC.*

68.    With respect to records that are covered by Section 552.101, TGC, a corresponding provision provides for criminal penalties if a person distributes information considered

confidential under this provision.  *See §552.352(a), TGC (distribution or misuse of confidential information..*

69.     More specifically, under state law, Section 159.002(b), Occupations Code; *see also Abbott v Texas State Board of Pharmacy*, 391 S.W.3d 253, 258 (Tex. App. – Austin 2012); see also ORD No. 681 at pp. 16-17.

70.     Under federal law, medical records are protected under HIPAA and associated Privacy Act provision. Inmates do not forfeit their right to privacy of these records. *See 42 USC §1320d, et. seq.; see also 45 CFR Parts 160 & 164.*

71.     In addition, qualified constitutionally recognized rights of privacy apply to persons in custody. *See Levin v Board of Education of City of Chicago, 470 F.Supp. 835, 840-41 (N.D. ILL. – Eastern Div. 2007)(recognizing constitutionally protected right of privacy in medical records; citing cases).*

72.     In the Fifth Circuit, a panel of Judges has recognized that a jail inmate states a non-frivolous claim based on a breach of a constitutional right of privacy in personal medical records shared with other inmates that revealed a positive HIV and Hepatitis B diagnosis.  *See Alfred v Corrections Corp. of America,* 437 Fed.Appx 281 (5th Cir. 2011).

73.     Consequently, the DEFENDANT's application of the confidentiality designation on <u>all medical records</u> is not only  reasonable and appropriate, but mandatory.

**D.     All <u>Criminal History Records</u> Pertaining To An Inmate Qualify For The Confidentiality Designation And May Be From Disclosure To Third Parties.**

74.     CRIMINAL HISTORY RECORDS, also known as NCIC / TCIC / AFIS records are restricted by law and cannot be freely shared with non-law enforcement agencies. Here, the records are produced as part of the discovery process and are labeled confidential under Protective Order #80 to preclude their distribution and use beyond the needs of this instant lawsuit.

75.     The confidentiality provisions are derived from 28 USCA §534 together with the Privacy Act codified at 5 USCA §552a. The regulatory framework pertaining to the use and dissemination of criminal history record information is codified at 28 CFR §20.33.

76.     Criminal History records are typically contained in the Jail Records binders, and the Investigative Records sent to and received from the outside law enforcement agencies who investigate custodial deaths in the jail. The maintenance of criminal history records serve a

legitimate penological purpose and are properly restricted from circulation beyond their utilization in the prosecution and defense of <u>this</u> case.

**E.**    **<u>Criminal Case Investigative Packets</u> Sent To Or Received From Outside Law Agencies Qualify For Confidentiality Designation And May Be Restricted Disclosure To Third Parties.**

77.    Included in the production of all custodial deaths pertaining to the Plaintiff group in this lawsuit are the criminal case investigative materials compiled by the HCSO and forwarded to an outside law enforcement agency for criminal investigation. Also included is the completed criminal case investigation by the outside law enforcement agency, in whole or in part.

78.    Section 552.108, TGC provides an exception from disclosure for law enforcement investigations. It covers information held by law enforcement pertaining to the detection, investigation, or prosecution of crime if the release would interfere with the detection, investigation, or prosecution of a crime. *See §552.108, TGC.* Significantly, Section 108 protects from disclosure internal notes and records maintained for internal use even if the investigation did not result in conviction or deferred adjudication. *See §552.108(b)(2), TGC; see also City of Carrollton v Paxton,* 490 S.W.3d 187 (Tex.App. – Austin 2016)(applying statutory provision against specific facts).

79.    Here, DEFENDANT seeks to restrict the dissemination to outside third persons of the investigative materials sent to and received from outside law enforcement agencies in furtherance of the investigation of possible criminal conduct pertaining to an inmate who died while in custody of the County jail while this civil case is in active litigation.

80.    For this reason, application of the confidentiality provision to restrict the dissemination of this law enforcement investigative content to persons or parties outside of <u>this</u> pending lawsuit is justified.

**F.**    **<u>Internal Affairs Investigations</u> Qualify As Confidential And May Be Restricted From Disclosure To Third Parties.**

81.    DEFENDANT has produced a large number of Internal Affairs investigative files under the confidentiality tag as per Protective Order #80. Internal Affairs records typically contain excerpts of other records, such as medical, that would be covered by a separate confidentiality provision.

82.    Texas law provides for the confidentiality of IA files for peace officers who are covered by civil service laws. Section 143.189(g), TLGC creates a restriction on release of any information

contained in the department file, which contains internal affairs information, as opposed to the personnel file, which is more generic. *See §143.089(g), TLGC; see also In re Jobe, 42 S.W.3d 174 (2001).* Similar provisions apply in Texas for law enforcement personnel employed by municipalities whose population exceeds one million. *See §143.1214, TLGC – Records Related to Disciplinary Actions or Charges of Misconduct.*

83.    The foregoing provisions exist in state law and apply to law enforcement personnel covered by civil service law applicable to municipalities. They serve as grounds upon which internal affairs investigations can be withheld in response to public information requests for these records. *See §552.108, Gov't Code (withholding of internal affairs materials as per state law); see also Harris v State, 2001 WL 1346085 (Tex. App. El Paso 2001)(criminal case appeal discussing confidentiality of internal affairs materials vis-à-vis criminal defendant's Brady rights of disclosure of exculpatory information).* In *Harris v State,* the Court conducted an on-camera inspection and determined that there was no Brady material in the otherwise protected IA files of the police officer. *Id.*

84.    Here, the IA files in question pertain to individual law enforcement employees of the Harris County Sheriff's Office. These law enforcement personnel, which includes detention personnel, are also covered by civil service under a Civil Service Commission created under Chapter 158, TLGC. *See Chapter 158, TLGC.* Chapter 158, TLGC specifically provides that the "commission may adopt or use as a guide any civil service law or rule of the U.S., Texas, or a political subdivision of the State to the extent promotes the purposes of the civil service system and serves the needs of the county. *See §185.009(b), TLGC.*

85.    Nevertheless, DEFENDANT has produced IA files of numerous detention officers in a largely unredacted format, but with the confidentiality tag to restrict use of these materials to the discovery phase of this case.

86.    This approach is consistent with the presumption of open discovery under federal law but nevertheless balancing the interests of individual officers and of the HCSO.

**G.    HR RECORDS PERTAINING TO TRAINING [PERSONAL STATUS REPORT [PSTs], PEWS REPORTS, AND INCIDENT HISTORY REPORTS QUALIFY FOR THE CONFIDENTIALITY DESIGNATION AND MAY BE RESTRICTED.**

87.    As per Agreed Order #213, entered on 8/7/2025, DEFENDANTS are required to produce three categories of HR records pertaining to Detention Officers who have been identified as

persons with knowledge of relevant facts as to one or more of the Plaintiff claims. *See ECF # 213 -Agreed Order on Doc Production.*

88.    The three categories of HR records to be produced are 1. PEWS records; 2. TCOLE training records; and 3. Incident History Reports.

89.    Detention Officers (aka Jailors or Corrections Officers) are regulated and must be licensed by the Texas Commission on Law Enforcement [TCOLE]. There are both statutory and regulatory requirements pertaining to the maintenance of employment records, licensing requirements, maintenance of personnel records, training records, and misconduct investigations. And there are confidentiality provisions that apply.

90.    Under Subchapter J. Employment Records and Preemployment Procedure, Chapter 1701 pertaining to law enforcement personnel (which includes jailors), has a general confidentiality provision providing that all information submitted to the commission under Subchapter J is confidential and not subject to disclosure under Chapter 552, Government Code, unless the person resigned or was terminated due to substantiated incidents of excessive force or violations of law other than traffic offenses. *See Texas Occupations Code §1701.454(a) – Confidentiality.*

91.    DEFENDANT has produced records under Agreed Order #213 pertaining to over 300 jail guard personnel. Most remain active employees in good standing with HCSO and the HCSO maintains their records in compliance with TCOLE requirements.

92.    Also under Subchapter J. Employment Records and Preemployment Procedure, a law enforcement agency "may not release any information contained in a license holder's personnel file to any other agency or person requesting information unless required by law. *See Texas Occupations Code §4535(c).*

93.    Here, DEFENDANT has produced PEWS reports and Incident History Reports pertaining to jail guards who have knowledge of facts in reliance on Protective Order #80.

94.    Under Subchapter E. Public Interest Information & Complaint Procedure, State Law specifically protects from disclosure the TCOLE Training Records, formally known as Personal Service Reports (PSRs) under the provisions of Texas Occupations Code §1701.205 – Officer Personal Service Reports. The user information collected and maintained by TCOLE is confidential and not subject to disclosure under Chapter 552, Government Code, except as required to comply with a court order.

95.    The PSR reports, pertaining to the jail personnel identified in Agreed Order #213, have been produced in discovery unredacted and in reliance on the confidentiality designations allowed by Protective Order #80.

96.    In addition to the foregoing, Section 552.1175, TGC establishes procedures and allows the automatic withholding of personal information of law enforcement officers, including county jailors, consisting of home address, DOB, SSN. *See §552.1175(a.2, b, & f).*

     a.    Earlier productions of certain personnel files redacted personal content to the extent it existed in the documents, as well as applied a confidentiality label.

**H.**    **<u>Autopsy Reports</u> Including Underlying Photographs Of The Dissection Of Decedent's Body Qualify For The Confidentiality Designation And Are Properly Restricted From Dissemination To Third Parties.**

97.    DEFENDANT has produced autopsy reports pertaining to Plaintiffs who died while in a custodial status or whose death is alleged to be related to the decedent's custodial status. These are comprised of a cover document, consisting of an external examination, an internal examination (requiring an incision allowing for access to the thoracic and abdominal cavities of the body, inspection of the organs (including removal, weighing, and examination for disease, damage, etc.), examination of the brain, laboratory tests of blood, tissues, fluids, toxicology and histology, and final documentation and reporting.

98.    All of the autopsy materials produced in this case involve inmates who died while in custody or shortly thereafter release from custody. The materials reasonably qualify as not only medical records but also as records pertaining to a criminal investigation and can be withheld on those grounds from a public information request.

99.    In addition, with respect to the autopsy materials documenting the dissection of the decedent inmate's body, which includes highly graphic photographs of the deceased, the law recognizes privacy interests of third parties too – victims, family members, – which justify restrictions on dissemination of this content.  *See United States v Carriles,* 654 F.Supp.2d 557, 566 (W.D. Tex. 2009)(the government may seek to protect the privacy interests of nonparties). Family members are non-parties.

100.    Plaintiffs already have full access to these materials. The confidentiality tags applied under Protective Order #80 does not prejudice their ability to prosecute the case. Plaintiffs desire to disseminate this material into the social media stream, or to use it in other lawsuit against DEFENANT is properly restricted.

I.    **CJC SOP Policies Are Properly Qualify As Confidential And May Legitimately Be Restricted From Distribution Beyond Their Use In This Case Under Protective Order #80.**

101.    DEFENDANT requests that the Court take judicial notice of the fact that a Google search of the "Harris County Sheriff's Office – Department Manual" takes one to page displaying the HCSO Department Policies ( www.hcsopolicy.com ). Anyone with access to the internet can view these materials. What is not displayed to the general public is a page containing the jail administrator's internal operating procedures – referenced as SOPs. Access to Detention Command SOPs is reserved to HCSO Administration and Detention Command Personnel. Access to these materials requires an approved internet access login name and password.

102.    DEFENDANT has a legitimate security interest in protecting its internal SOPs pertaining to Detention Command administration. The U.S. Supreme Court has acknowledged this. *See Thornburgh v Abbott,* 490 U.S. 401, 415 (1989)(noting it is "beyond question" that jails have a legitimate interests in protecting security concerns in the policies they adopt; balancing interests).

103.    DEFENDANT has produced a pdf binder containing the Detention Command SOPs. *See Exh. 1 – Index to Doc Production, Folder – Detention Command Policies & Procedures*. These are labeled as Confidential to assure that they are not disseminated to the general public, as Plaintiffs wish to do.

104.    Here, a complete unredacted set of these policies has been provided to counsel of record for use in <u>this</u> case. DEFENDANT has legitimate security reasons for restricting the dissemination of these policies to the public generally or for use in other litigation to which the operations of the jail are in question. *See Fourhorn v Denver County,* 261 F.R.D. 564, 569 (D. Colorado 2009)(balancing interests and fashioning relief).

105.    Plaintiffs have full unredacted use of the Detention Command SOPs for use in this case and application of the confidentiality tag serves the purpose of restricting that use to this case. There is no good reason to remove it; nor should Plaintiffs' be allowed to circulate the SOP to the general public nor be allowed to use them in other pending litigation against the Harris County Jail.

## V. MISCELLANEOUS ARGUMENTS
## REQUESTING DE-DESIGNATION

**A.    Plaintiffs' Contention That They Can Not File Appropriate Responses To Defendant's Dispositive Motions Because The Confidentiality Designation Is Overbroad And Has No Merit.**

106.    Plaintiffs contention that they cannot properly file MSJ responses to DEFENDANT's MSJ because of the overly broad confidentiality designation precludes the filing of documents as counter-exhibits has no merit.

107.    Plaintiffs completely ignore that fact that the Court e-filing system has a built in option of filing MSJ exhibits as "restricted attachments" thereby making the Exhibits available to the attorneys of record and the Court and its staff, but not to anyone else with an ECF / PACER account who is not an attorney of record in the file. This feature, which undersigned counsel has used in other cases and in other Divisions within the U.S. Southern District is different from filing documents under seal – which is a more involved and cumbersome procedure.  There are no documents filed under Seal in this case. But yes, DEFENDANT's MSJ filing have a combination of Exhibits some of which are filed unrestricted and some of which are filed as "restricted attachments" – limiting their use to the parties and the Court.

108.    This filing feature – freely available to anyone who understands the federal court filing system, is available to Plaintiffs as well. Moreover, this technological feature is an appropriate tool that allows for the appropriate balancing of interests during the pretrial and discovery phase of the case.

**B.    Documents Inadvertently Left Untagged As Confidential Does Not Give Plaintiffs Grounds To Set Aside The Protective Order #80 Or To Share Documents With Third Persons.**

109.    Plaintiffs attach as exhibits copies of certain documents that do not have the confidentiality tag while other similar documents do carry it. It is not clear whether these are documents were obtained from some other source or whether they were inadvertently left untagged by Defense Counsel's legal team.

110.    Regardless, these are not grounds to de-designate documents that have been designated as confidential, nor is it a ground to allow unregulated import of documents produced in this case into other cases against Harris County.

**C.     Production Of Documents Produced Under A Prior Public Information Act Does Not Foreclose Or Preclude The Labeling Of Those Same Documents As Confidential In The Instant Case.**

111.    It appears that in anticipation of the present litigation, the HCSO received from a local news media outlet (KHOU) a PIR (Public Information Act) request for internal reports relating to Use of Force (UOF) reports maintained by the Jail Administration. In response to the PIR the HCSO produced thousands of redacted records to <u>that</u> requestor. The Requestor then utilized this content to create a new media report on use of force incidents in the County Jail. The expose was entitled "Strike".

112.    Plaintiffs then, in the context of this case, requested a copy of the materials produced to the Requestor, which were quite voluminous. Production of these materials to KHOU, a private company, did not render these materials accessible to the general public beyond what KHOU chose to report. Whether Plaintiffs' counsel was able to secure a copy of the materials that the County provided to KHOU is unknown.

113.    Regardless, DEFENDANT produced the materials under the confidentiality tag to preserve DEFENDANTs defense rights and privileges in this litigation. At a minimum, the litigation or anticipated litigation provision recognized in Chapter 552, Gov't Code and. *See §552.103, Gov't Code  – Litigation Exception.*

114.    Moreover, the DEFENDANT's prior handling of and ultimate response to a PIR is not binding on the COUNTY as a DEFENDANT in this litigation. As a general rule, each PIR must be evaluated and assessed on its own terms. Especially with respect to discretionary withholding requests, the omission of a withholding request in one PIR for certain materials does not waive the Respondent's ability to later assert a withholding request in response to a PIR for the same materials.  *See §552.301, Gov't Code.*

## VI. MOTION FOR PROTECTION

115.    Plaintiffs appear to take the position that if the Court determines that records produced in discovery do not qualify for the confidentiality designation, then they are free to disseminate the documents produced freely to unknown third persons and / or share the documents with other lawyers who are currently prosecuting similar cases against Harris County or who seek to do so.

116.    In effect, Plaintiffs seek to establish a library of materials from which they or others who wish to make claims against Harris County can draw content.

117.    To be clear, DEFENDANT's defense of the Protective Order #80 restrictions on dissemination is directed to *the discovery stage* of the lawsuit. DEFENDANT understands that when the lawsuit reaches *the adjudicative stage*, the point at which content will likely enter the court record, a different treatment of the party Exhibits to be utilized at trial is going to be warranted.  Those issues are not yet ripe for decision, but likely will be at the point where the parties have to identify their Exhibits for trial. Whether any exhibits continue under some level of restriction after entry of a judgment in this case is another question that is premature at this stage of the proceedings.

### CONCLUSION & PRAYER

THEREFORE, for the foregoing reasons, DEFENDANT HARRIS COUNTY requests that the Court deny the relief request by Plaintiffs in the Motion to De-Designate Confidentiality Tags (ECF #270) in its entirety. DEFENDANT further requests that the Court make clear that discovery materials shall remain within the confines of use by the Parties and the Court only during the discovery phase, that the documents produced not be shared to persons or parties outside of the Attorneys of Record and their legal support staff, and associated experts and court reporters. DEFENDANT requests that the Court make clear that documents produced in this case shall not be transferred or imported for use in any other proceeding against Harris County without the specific leave of this Court for good cause shown.

SIGNED on the 3rd day of FEBUARY 2026.

Respectfully submitted,

By:    *Ricardo J. Navarro*
RICARDO J. NAVARRO
State Bar No. 14829100
So. Dist. Id No. 5953
rjnavarro@rampagelaw.com

**DENTON NAVARRO RODRIGUEZ**
**BERNAL SANTEE & ZECH, P.C.**
549 Egret Bay Blvd., Ste. 200
League City, Texas 77573
832.632.2102 (O)
832.632.3124 (F)

Defendant Harris County's Response in Opposition
& Motion to Enforce Protective Order                                              -23-

**COUNSEL FOR DEFENDANT**
**HARRIS COUNTY, TEXAS**

**CERTIFICATE OF SERVICE**

I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process referenced in the Federal Rules of Civil Procedure on all attorneys of record in this case on the 3rd day of FEBUARY 2026, to wit:

Aaron Dekle                              Email: aaron@bencrump.com
Paul Ashley Grinke                       Email: paul@bencrump.com
BEN CRUMP LAW FIRM
ATTORNEYS FOR PLAINTIFFS


Carl Lenford Evans, Jr.                  Email: cevans@mccathernlaw.com
Noah L. McCathern                        Email: nmccathern@mccathernlaw.com
Jordan A. Carter                         Email: jcarter@mccathernlaw.com
Alizabeth A. Guillot                     Email: aguillot@mccathernlaw.com
McCathern Law Firm
ATTORNEYS FOR PLAINTIFFS


Thad D. Spalding                         Email: tspalding@dpslawgroup.com
Shelby J. White                          Email: swhite@dpslawgroup.com
Durham, Pittard & Spalding, LLP
ATTORNEYS FOR PLAINTIFFS


Mohammed Obaid Shariff                   Email: mshariff@sharifflawfirm.com;
Kevin M. Acevedo-Carlson                 Email: kacevedo@sharifflawfirm.com
Russell Ross                             Email: rross@sharifflawfirm.com
Shariff Law Firm                         Email: eservice@sharifflwfirm.com
SHARIFF LAW FIRM
ATTORNEY FOR INTERVENOR ANA GARCIA
  & KEVIN SANCHEZ TREJO

Taylor McCray Hunter                     Email: taylor@thehunterlaw.com
Kevin Green                              Email: kevin@consumerjusticecenter.com
Thomas Lyons Jr.                         Email: tommy@consumerjusticecenter.com
Andi Weber                               Email: andi@consumerjusticecenter.com
ATTORNEY FOR INTERVENOR
CHANDRA JENKINS & DEQON BUFORD


                         _Ricardo J. Navarro_
                         RICARDO J. NAVARRO