**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **OCTEVIA WAGNER, ET. AL.** | § | |
| **Plaintiffs** | § | |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-CV-02886** |
| | § | |
| **HARRIS COUNTY, TEXAS** | § | |
| **Defendant** | § | |
| | § | |
| **AND** | § | |
| | § | |
| **ANA GARCIA AND CHANDRA JENKINS,** | § | |
| **Plaintiff – Intervenors** | § | |

**DEFENDANT HARRIS COUNTY'S RESPONSE TO THE
WAGNER PLAINTIFF'S SECOND MOTION TO COMPEL [ECF #314]**
========================================================================

MAY IT PLEASE THE COURT:

NOW COMES DEFENDANT HARRIS COUNTY, TEXAS, and files this Response to the Wagner Plaintiffs Second Motion to Compel (ECF #314).

**I. TABLE OF CONTENTS**

I. TABLE OF CONTENTS ............................................................................................... 1

I. SUMMARY OF THIS RESPONSE.......................................................................... 2

II. SUMMARY OF THE WRITTEN DISCOVERY ..................................................... 2

III. EXHIBITS TO RESPONSE ...................................................................................... 4

III. RESPONSE & ARGUMENTS................................................................................... 4

    A. The Deposition of the Sheriff Gonzalez ............................................................ 4

    B. Pot-Pouri Of Alleged Failures To Produce Content Under A Second Set Of
       RFPs...................................................................................................................... 4

    C. Unredacted Investigation Files by HPD and Texas Rangers (2nd RFP #144)..... 5

    D. Continuing Complaint About Production of Documents Held by Harris Health
       and Harris Center. ............................................................................................... 7

      1.     Continuing Issue Over Independent Legal Authority of Harris Health and
              Harris Center ............................................................................................ 8

      2.     Underlying Legal Nature of Harris Health ............................................... 9

3.     Underlying Legal Authority of Harris Center............................................................ 9

E. Observation & Operational Records for Comparators........................................................ 10

F. Settlement Agreement Materials........................................................................................ 11

G. UOF Reports; KHOU Doc Productions; And Underlying Serious Incident Reports ....................................................................................................................... 12

1.     UOF Reports Responsive to TPIA Request from KHOU .................................. 12

2.     Records Underlying SIR Monthly Counts to TCJS............................................ 13

H. Explanation re Video Content Produced............................................................................ 14

I. Observations Video Training Materials.............................................................................. 14

J. AED Maintenance Logs [RFP #132].................................................................................. 14

K. Alleged Personal Jail Facility Recordings Held By Individual Officers ......................... 15

L. Unspecified Resignation Letters ....................................................................................... 15

M. Request For Fees And Counter-Request For Fees. ........................................................... 16

CONCLUSION & PRAYER................................................................................................... 16

=======================================================

## I. SUMMARY OF THIS RESPONSE

1.     This Second Motion to Compel is largely a further rehash of discovery disputes that have been previously raised and previously resolved either by agreement or by a ruling of the Court.

2.     To demonstrate this, DEFENDANT will address each of the points raised in Plaintiff's Second Motion to Compel listed from #A to #M.

## II. SUMMARY OF THE WRITTEN DISCOVERY

3.     Listed below is a chronological listing of the written discovery served by Plaintiff and portions of which are the subject of this Second Motion to Compel

a.   **2024-0812** Wagner Plaintiffs First Set of RFPs to Defendant HC **(#1 thru #139)**(served 8/12/2024)

1)   Defendants Objection & Responses to First RFPs (#1 thru #139)(served 11/5/2024)

2)   Defendants Responses to Plaintiffs' Deficiency Letter (served 12/27/2024)

b.   **2025-0815** Wagner Plaintiffs Second Set of RFPs to Defendant HC **(#138 thru#210** (served 8/15/2025)

1)   2025-0915 Defendant's Objections & Responses to Second RFPs (#138 to #210) (served 9/15/2025)

Defendant Harris County's Response to Wagner Plaintiff's
Second Motion to Compel [ECF #314]                                                                     -2-

2) 2026-0123 Plaintiffs Second Deficiency Notice Letter (dtd 1/23/2026)

3) **2026-0219** Defendant's First Amended Objections & Responses to Second RFP (#138 to #210) responding to Second Deficiency Notice Letter (2/19/2026)(attached as Exhibit B)

4. Listed below is a chronological summary of the Motions to Compel filed by the Plaintiffs and Intervenors and the Hearings held by the Court:

a. **1/27/2025** Motion to Compel by Intervenor Ana Garcia (ECF #113)

1) 2/18/2025 Response by Harris County in Opposition to MTC by Garcia (ECF #117)

2) 4/2/2025 Notice of Setting on ECF #113 for **4/9/2025** (See ECF #128). See Hearing Transcript for 4/9/2025 hearing.

b. **4/9/2025** – Minute Entry by Court regarding discovery issues. Hearing recessed and set for continuation on **4/23/2025**.

c. **4/18/2025  First Motion to Compel filed by Wagner Plaintiffs (ECF #130)**

1) Response by Defendant Harris County to Wagner Plaintiff First Motion to Compel (ECF #132).

d. 4/23/2025  Notice Resetting Hearing of 4/9/2025 to **5/2/2025** (ECF #134)

e. **5/2/2025**   Minute Entry Hearing held on **5/2/2025** (ECF #113). Arguments heard on discovery issues presented by parties and agreements reached as to each. Transcript on file with the Court.

f. **6/23/2025** Motion Hearing on various motions (ECF #130, #132, and #140) set for **7/31/2025** (ECF #178).

g. **7/25/2026** Motion to Compel by Ana Garcia (ECF #199).

h. **7/31/2026** Minute Entry for hearing held on 7/31/2026 on ECF #130 and ECF #132. Parties ordered to confer and submit proposed order outlining agreement and indicating motions resolved by agreement. Transcript on file with the Court.

i. **8/4/2025**   Amended Motion by Ana Garcia (ECF #211). Filed while Agreed Order on 7/31/2025 hearing was circulating for signatures.

j. **8/7/2025**   Order on Agreement Entered at Hearing Held on 7/31/2025 and specifying that Motion ECF #113, #130, #173, #192, #197, #199*, and #200 were resolved. [*199 incorporated via correction as per ECF #319]

k. **4/13/2026** Wagner Plaintiffs' Second Motion to Compel against Defendant Harris County (ECF #314).

l. **5/26/2026** – Defendant's Response to Second Motion to Compel.

Defendant Harris County's Response to Wagner Plaintiff's
Second Motion to Compel [ECF #314]                                                                -3-

### III. EXHIBITS TO RESPONSE

5.      The following Exhibits are appended to this Response as an aid to the Court. References to Court Orders are made to the ECF # and are hereby incorporated by reference. References to hearing transcripts and Court Orders already on file with the Court are not included as Exhibits to avoid redundancy.  Defendant request that the Court take judicial notice of the contents of its file.

6.      Documents attached as Exhibits consist primarily of responses to written discovery that are not already on file with the Court, to wit:

> EXH. A – Index to Defendant's Document Production (Updated to 5/25/2026)
>
> EXH. B – Plaintiffs Second RFPs to Defendant (Nos 138 to 210) (served 8/15/2025) and Defendant's First Amended Objections and Responses (served 2/19/2026).
>
> EXH. C – Rule 45 Subpoenas to Harris Health (re Jacoby Pillow Records)(sample)
>
> EXH. D – Article IX, Section 4, Texas Constitution
>
> EXH. E – CJC 105 Prohibited Personal Items
>
> EXH. F – TX Government Code 511.020 Serious Incident Reports

### III. RESPONSE & ARGUMENTS

**A.      <u>The Deposition of the Sheriff Gonzalez</u>**

7.      This point has been resolved. The Parties have agreed in principle to produce Sheriff Gonzalez for deposition on July 16, 2026, by agreement.

**B.      <u>Pot-Pouri Of Alleged Failures To Produce Content Under A Second Set Of RFPs.</u>**

8.      The RFPs referenced under Section B are all contained in Plaintiffs Second Set of RFPs to Defendant Harris County served on 8/15/2025.  *See Exhibit B – Plaintiffs Second RFPs & Defendant's Responses (Nos 138 to 210).*

9.      Defendant responded to this Second Set of RFPs (Nos. #138 to #210) on 9/15/2025. Plaintiffs' then sent a Deficiency Notice Letter dated 1/23/2026.

10.     Defendant responded to the Deficiency Notice Letter dated 1/23/2026 by filing a First Amended Set of Objections and Responses to Plaintiff's Second Set of RFPs (Nos. #138 to #210). *See Exhibit B – Defendant's First Amended Objections & Responses to Plaintiffs.*

11.     The Second Motion to Compel, which was served on Defendant a week after the entry of the Agreed Order (ECF #213) last summer resuscitates in different form and phrasing a similar set

of RFPs that were the subject of the Court Hearing held on July 31, 2025 and of earlier hearings as well.

12.    For instance, ECF #213 specifically provided that with respect to production pertaining to Detention Officers, would be delimited by two primary criteria. First, the list of officers as to whom documents would be sought would be limited to those who were listed as witnesses to the underlying incidents that were the subject of Plaintiffs complaints. Second, as to that list of witnesses, the personnel records to be produced would be limited to 1. PEWS Reports; 2. TCOLE training files; and 3. Incident History Reports. *See Agreed Order #213 at para. 2.*

13.    The Order specifically provides that HR files of officers identified shall not be produced in the absence of a further agreement. *Id.* Yet, Plaintiffs complain that Defendants have not produced HR files. Defendants have produced additional IA files and UOF investigations that appear in either the PEWS reports or in the Incident History Reports if the subject matter relates the claims made. Yet Plaintiffs make a renewed demand for HR content that was resolved at the hearing on 7/31/2025 and by Agreed Order #213.

14.    Plaintiffs' complaint under this point is bombastic, overtly vague, and short on facts about specific individuals. As framed, it evidences Plaintiffs refusal to abide by the terms of the Agreed Order #213 and insistence on continuing to churn up complaints that have, frankly, already been resolved.

15.    Plaintiffs cannot say that when specific issues about the contents of individual reports about specific individual detention officers have been discussed, that Defendant has not been responsive to those specifics. This vaguely stated complaint should be denied.

16.    The contents of the materials produced to date can be viewed at Defendant's Document Production portal in the Subfolder designated as 15. HR Content As Per Agreed Order ECF #213 at the following link:

https://rampage-rgv.sharefile.com/f/fodfd466-15b4-4a54-be2e-70a9a7d8e337

17.    A copy of a current Index to Document Production is also hereby provided to the Court. *See Exhibit A – Index to Document Production.*

**C.    Unredacted Investigation Files by HPD and Texas Rangers (2nd RFP #144).**
       **1. New Spin On Prior Production Requests.**

18.    This is a rehash of RFP contained in the Plaintiffs First Set of RFPs to Defendant, which was the subject of Motion to Compel #130, which was resolved at the 7/31/2025 hearing.

19.    2nd RFP #144 was previously submitted as RFPs in the First Set of RFPs, to wit:

RFP NO 79. Produce all material and documents exchanged between Harris County Jail, the Harris County Sheriff's Office and the Texas Rangers since January 1, 2017, related to all inmate deaths at the Jail. [Plaintiffs' First RFP to Defendant]

RFP NO 82. Produce the criminal file and investigation reports pertaining to the deaths or injuries of any detainees including but not limited to Jaquaree Simmons, Jacoby Pillow, Robert Terry, Ramon Thomas, Bryan Johnson, and Adael Garcia

RFP NO 117. Produce all investigative reports including any internal investigations or investigations by the Texas Rangers or another law enforcement agency on whether the use of force was justified and in line with standard practices and any death investigation reports that may exist involving the Plaintiffs.

RFP NO 120. Produce all material, documents and communications pertaining to the investigation of the deaths of all deceased detainees named in Plaintiffs' most recent Complaint.

20.    As to the Plaintiffs' First Set of RFPs (Nos. #1 to #139), these were the subject of Plaintiffs' First Motion to Compel (ECF #130) filed on 4/18/2025. It was the subject of hearings held on 7/31/2025 and again on 5/2/2026. (See Docket Sheet Minute Entries). Agreed Order ECF #213 provides that discovery issues pertaining to ECF #130, Plaintiffs' First Motion to Compel, are resolved. *See ECF #130 at p.2.*

21.    Yet, one week after Agreed Order #213 is entered, Plaintiffs served a Second Set of RFPs containing RFPs that essentially resurrect RFPs that were supposedly already resolved.

22.    As to RFP #144, Defendant has submitted a response. *See Exh. B – RFP #144.*

**2. Redacted Docs Received From TXR And HPD Can Not Be Unredacted By Defendant.**

23.    With the custodial death cases, as to which an independent investigation by an outside law enforcement agency is mandated, Defendant has produced the investigative packet sent out to either the Texas Ranger or to the Houston Police Department. This is true for all of the Plaintiff cases. As to packets sent out, no redactions have been applied or have been sparingly applied.

24.    Defendant has also produced copies of investigative case files sent back to the HCSO when the outside investigation is complete. The case files returned to the HSCO after completion of the outside agency investigation do contain redactions. But these redactions are applied by the outside law enforcement agency, not by Defendant or Defendant's counsel. Copies of case files that are returned to the HCSO have been produced in the state in which they are received.

Defendant Harris County's Response to Wagner Plaintiff's
Second Motion to Compel [ECF #314]                                    -6-

### 3. Agreed Upon Comparator Jail Records Have Been Produced

25.     As reflected in the Index to Document Production, Jail Records pertaining to Comparators listed in the Complaint have been produced as early as November 2024 through May 2025.

26.     More specifically, as to Comparators, Defendant has produced the following categories of records pertaining to Comparators: 1. Jail Records; 2. Autopsy Records; 3. Jail Video; 4. Recorded Phone Calls.

27.     Moreover, with respect to the records of Comparators, if there are references in the extant production to other content that pertains to one or more of the claims of the Plaintiff group, such as UOF incidents, or failure to protect claims, this material has also been produced. For example, this is the case with Comparator Jaquaree Simmons, where additional content was produced because it related to a UOF incident.

28.     Significantly, this complaint about a deficiency in the Comparator records was not incorporated into the negotiations over the scope of discovery held at the hearing on 7/31/2025 and which culminated in the Order on Agreement entered at the Hearing on Plaintiffs' Motion to Compel Discovery from Defendant Harris County, Texas (ECF #213).

29.     Now, under the guise that "unredacted" Texas Ranger or Houston Police Department records have not been produced, Plaintiffs raise an issue that was already on the table at the hearing held on 7/31/2025 and which was, presumably, resolved by Agreed Order #213.

**D.      Continuing Complaint About Production of Documents Held by Harris Health and Harris Center.**

30.     Plaintiffs' raise once again a legal point that was previously resolved in an earlier discovery dispute, which has to do with the status of the entities known as Harris Health and as Harris Center as separate legal entities from Harris County and the Harris County Sheriff's Office. *See Hearing Transcript for 4/9/2025 at pp. 12 – 16.*

31.     The issue surrounding the level of access that Defendant's Counsel has to the records of Harris Health and Harris Center was resolved at the hearing held on April 9, 2025, in response to a Motion to Compel filed by Intervenor Ana Garcia. Present at the hearing was Plaintiffs' counsel who participated in the discussion. *See Hearing Transcript for 4/9/2025 at pp. 10 – 11.* Now, a year later, the Wagner Plaintiffs raise this same complaint again.

32.     This is an example of the tag-teaming that Plaintiffs and Intervenors have been engaging in with the discovery process. One party raises a complaint and a Motion. The other stands by and even participates in the hearing. The issue is then re-asserted by the other party at a different time and in a slightly different context. So even though this issue about the independent legal status of Harris Health and Harris Center was addressed and resolved as early as 4/9/2025, the Wagner Plaintiffs now raise it again in their Second Motion to Compel.

33.     This even though Plaintiffs are well aware that Defendant's own access to Plaintiff's medical records (outside of those generated under the Interlocal Agreement) have to be obtained by Subpoena. *See Exhibit C - Sample Rule 45 Subpoena to Harris Health.* Plaintiffs are aware of this because securing the records requires a medical authorization from Plaintiffs and in the case of decedents, requires a death certificate as well. In addition, Harris Health requires a Statement of Assurance that the Subpoenaed documents are in furtherance of an active litigation file. *See Exhibit B.* Moreover, Defendant must pay Harris Health for the costs of producing medical records responsive to the Subpoena, *and* the records must then be produced to Plaintiffs' counsel as discovery supplementation. *See Exhibit C.*

### 1.     Continuing Issue Over Independent Legal Authority of Harris Health and Harris Center

34.     Despite this knowledge, Plaintiffs now urge this Motion to Compel point once again. Plaintiffs point to the Interlocal Agreements between Harris County and Harris Health and also between Harris County and Harris Center as proof that the entities are one in the same. If anything, the existence of a contract for the provision of health care services by Harris Health to the inmate population held in the custody of the Sheriff and the provision of mental health services by the Harris Center, a different public health organization, is proof that Harris County has contracted for the provision of services with two different entities.

35.     The Sheriff, and by extension Harris County, has a duty to provide for the need of prisoners remanded to the custody of the Sheriff by the Courts, but the manner and method by which this is accomplished is not specified.

36.     By contracting for medical and behavioral health services, the Sheriff is able to satisfy the requirement to meet the medical and mental health needs of the inmate population. This does not mean that Sheriff, or by extension the Sheriff's legal representatives, have full and complete access

to the medical and mental health care records of jailed inmates beyond what is contractually shared with the Sheriff's Office.

37.     Plaintiffs' representation that "Harris County *oversees and funds* both Harris Health and the Harris Center" (p.19 of 30) is patently wrong and reflects a serious misunderstanding of the nature of these two organizations. Plaintiffs have either forgotten about or are deliberately indifferent to the discussion of this issue at the Hearing held on April 9, 2025.

### 2.     Underlying Legal Nature of Harris Health

38.     To further address the issue on the merits, the underlying authorization of Harris Health, a public hospital, has its origins under Art. IX of the Texas Constitution. Art. IX, Section 4 authorizes counties to establish countywide hospital districts to furnish medical care of indigent populations.  Art. IX, Section 9 & 11 provide constitutional mechanisms for creation of public hospital districts through voter approval. *See Texas Constitution, Art. IX, section 4, 9 & 11.*

39.     An Article IX hospital district created under a constitutional enabling act, which is what Harris Health is, is a legal entity with power to levy and collect taxes.  *See Art., IX, Sec. 4, Texas Constitution (Exhibit D); see also Bexar County Hospital District v Crosby,* 320 S.W.2d 247 (Tex. Civ. App. – San Antonio, 1958), *aff'd in part, rev'd in part* 327 S.W.2d 445 (Tex. 1959)(addressing independent legal status of a hospital district and scope of legal authority).

40.     The daily operational framework, management guidelines, and funding sources are contained in the Texas Health & Safety Code, Subtitle D.  *See Texas Health & Safety Code, chapter 281, 285, 286, and 288.* Under these constitutional and statutory authorities, hospital districts can form contracts, joint ventures, partnerships, issue bonds, level property taxes, etc. *Id.*

### 3.     Underlying Legal Authority of Harris Center

41.     A similar arrangement applies to a mental health authority such as the Harris Center. The source authority exists as an agency of the State of Texas under the provisions of Chapter 534, Texas Health & Safety Code.  Chapter 534, which grants the Executive Commissioner of the Texas Health & Human Services Commission (HHSC) the authority to delegate duties to local entities known as Local Mental Health Authorities (LMHA's) and Local Behavioral Health Authorities (LBHA's). – here, the Harris Center. *See Section 534.001, et. seq.*

42.     The operational rules and authorities LMHA's and LBHA's are further elaborated in the Texas Administrative Code, Title 26, Part 1, Chapters 301, et. seq.

43.     For a primer on the form, structure, and legal authority of a Local Mental Health Authority or Local Behavioral Health Authority, see the Texas Health & Human Services website at:

https://www.hhs.texas.gov/providers/behavioral-health-services-providers-programs/local-mental-behavioral-health-authorities

44.     For details about the local services provided by Harris Center, see the website at:

https://www.theharriscenter.org/about

45.     Defendant Harris County requests that the Court take judicial notice of the Texas Constitutional provisions and the associated statutory and regulatory provisions codified under the Texas Health & Safety Code establishing the independent legal and operational authority of both Harris Health and Harris Center as distinct entities from Harris County, Texas.

### E.     <u>Observation & Operational Records for Comparators.</u>

46.     As yet another manifestation of how Plaintiffs and Intervenors continue to recycle and reurge discovery issues that have been previously resolved, Plaintiffs contend that they do not have the Observations records for all the Comparators. Significantly, Plaintiffs admit that this issue has been open since the First Motion to Compel (2nd MTC at p.20). The First Motion to Compel filed by Wagner Plaintiffs was on 4/18/2025 (1st MTC, ECF #130). Significantly, Agreed Order #213 resolved this First MTC. *See Agreed Order #213 (listing ECF #130 as resolved).*

47.     In an abundance of caution, Defendant hereby incorporates under this Point the same response elaborated on above under Point C – ostensibly a point about not having received unredacted law enforcement records.

48.     The prior explanation as applied to Point C bears repeating, to wit, as reflected in the Index to Document Production, Jail Records pertaining to Comparators listed in the Complaint have been produced as early as November 2024 through May 2025, as reflected in the Sharefile Portal.

49.     More specifically, as to Comparators, Defendant has produced the following categories of records pertaining to Comparators: 1. Jail Records; 2. Autopsy Records; 3. Jail Video; 4. Recorded Phone Calls.

50.     Moreover, with respect to the records of Comparators, if there are references in the extant production to other content that pertains to one or more of the claims of the Plaintiff group, such as UOF incidents, or failure to protect claims, this material has also been produced. For example, this is the case with Comparator Jaquaree Simmons, where additional content was produced because it related to a UOF incident.

51.    Significantly, this complaint about a deficiency in the Comparator records was not incorporated into the negotiations over the scope of discovery held at the hearing on 7/31/2025 and which culminated in the Order on Agreement Entered at the Hearing on Plaintiffs' Motion to Compel Discovery from Defendant Harris County, Texas (ECF #213).

52.    Now, under the guise that "unredacted" Texas Ranger or Houston Police Department records have not been produced, Plaintiffs raise an issue that was already on the table at the hearing held on 7/31/2025 and which was, presumably, resolved by Agreed Order #213.

53.    Plaintiffs insistence on raising once again issues that were previously resolved under Order #213 should not now be allowed again and again.

**F.    <u>Settlement Agreement Materials</u>**

54.    The topic of production of Settlement Agreements was taken up a Motion to Compel hearing held on 5/2/2025. *See Minute Entry for 5/2/2025; see also Transcript of Hearing (submitted as Document #211.15 to Garcia's Motion to Compel filed 8/4/2026 (ECF #211).*

55.    In that hearing, Counsel for Kevin Sanchez Trejo, sought production of Settlement Agreements. *See ECF 211.15 Hearing Transcript of 5/2/2025 at pp. 39 through 43.* At this hearing, the issue was production of settlement agreements from prior cases. The issue was limited to production of the Settlement Agreements themselves. There was no mention of production of the underlying litigation file out of which the Settlement Agreement arose. *Id.*

56.    Consistent with the Court's ruling at this hearing, Defendant thereafter ascertained that the Office of the County Attorney held copies of Settlement Agreements from past cases. These were obtained and produced via the SF portal on 6/21/2026.



1. 2020-1001 Doe Fully Executed Settlement Agreement
2. 2021-0510 Lefave Settlement Agreement and Release
3. 2021-0511 Taylor Settlement Agreement
4. 2021-0624 Henderson Settlement Release Vincent 61821-Signed
5. 2021-0907 Bartee Executed Release
6. 2021-1102 Phillip Fully Executed Release.Settlement Agreement
7. 2022-0525 Flores Settlement
8. 2023-0721 Baughman Fully Executed Settlement Agreement
9. 2024-1218 Spicer_Settlement Release Agreement (Signed)

57.　　As other Settlement Agreements have become known, these have been produced as well.

58.　　With the exception of Natividad Flores and Terry Goodwin, none of the persons named in these Settlement Agreements are listed as either Plaintiffs or as Comparators in either the Plaintiffs' or the Intervenor's live complaint.

59.　　Defendant will make an inquiry into the extent to which records equivalent to what has been produced for Comparators exist and depending on the answer to this inquiry will discuss the matter further with Plaintiffs' counsel before the necessity of a hearing.

**G.　　UOF Reports; KHOU Doc Productions; And Underlying Serious Incident Reports**

60.　　This point conflates two different and unrelated document production requests. First, UOF reports produced to the media company KHOU in response to Public Information Act requests; Second, Plaintiff complains the underlying reports pertaining to the Serious Incident Report counts filed with the Texas Commission on Jail Standards (TCJS) are incomplete. Defendant has met its obligations to produce the materials responsive to the RFPS.

**1.　　UOF Reports Responsive to TPIA Request from KHOU**

61.　　With respect to the UOF reports produced to KHOU in response to a Texas Public Information Act (TPIA) Request to the HCSO.

62.　　Defendant obtained a copy of these materials from HCSO Legal. A copy of the materials produced to KHOU are contained in a separate subfolder entitled "12. UOF Reports to KHOU". Because of the substantial number of these materials, they were broken up into segments covering

Fiscal Years 2020 through 2024. This was done consistent with the requirement of Agreed Order #213, paragraph 1.

63.    Plaintiff complains that "pages are missing' but make no effort to identify from which reports pages are ostensibly missing. Defendant produced the materials as they were produced to KHOU. If Plaintiff believes pages are missing form some reports, Plaintiff should be able to ascertain the document or incident number off of the extant pages of the report and convey that information to defense counsel.  This would allow defense counsel to follow up with HCSO Legal to ascertain if there are in fact pages missing from a particular report.

### 2.    Records Underlying SIR Monthly Counts to TCJS

64.    Separate and apart form the UOF reports produced to KHOU, Defendant agreed to produce the documents underlying certain of the statutorily required monthly SIR count to TCJS that fall within specified categories.  *See ECF #213, para. 3; see also, Section 511.020 Texas Gov't Code (attached as Exhibit F).*

65.    The agreed upon categories are the following: 1. Suicides; 3. Deaths in Custody; 5. Assaults; 6. Sexual Assaults and 8. Use of Force Bodily Injury. *See Exh. F – Texas Gov't Code Section 511.020 (mandatory reports to TCJS).*

66.    Because of the sheer volume of these reports, the negotiated production schedule specified a multi-month production of the underlying reports for each fiscal year for which Defendant agreed to produce reports – FY 2018 through FY 2023.

67.    These underlying reports were produced timely on a monthly schedule. Defendant met its agreed upon obligations for production of this material.

| | | | |
|---|---|---|---|
| 📁 FY 2018 | 26 MB | 9/2/25 | |
| 📁 FY 2019 | 36 MB | 9/30/25 | A. Gonzales |
| 📁 FY 2020 | 2 GB | 11/14/25 | A. Gonzales |
| 📁 FY 2021 | 4 GB | 12/1/25 | |
| 📁 FY 2022 | 3 GB | 12/31/25 | A. Gonzales |
| 📁 FY 2023 | 3 GB | 1/30/26 | A. Gonzales |

68.    Plaintiffs complain that the digital platform utilized for the production was not what they expected. However, the touchstone here was to produce the reports that served as the underlying counts to the monthly SIR counts owed to TCJS under Section 511.020, TGC.

Defendant Harris County's Response to Wagner Plaintiff's
Second Motion to Compel [ECF #314]                                    -13-

69.     The production of the underlying counts utilized the digital platform applicable to the nature of the SIR count. For content in earlier years, such as for FY 2018, the data existed in a spreadsheet format only. Therefore it was produced in the spreadsheet format.

**H.     Explanation re Video Content Produced**

70.     Defendant has produced video content as to each case in which video content exists. In cases where video content does not exist, Defendant has responded that there is no video content responsive to the request. Plaintiff has also queried why some video content has audio capability and why some does not.

71.     Defendant is not aware of any obligation to provide a detailed explanation, in response to an RFP as to why there is no video content responsive to a particular RFP, or to provide an explanation in the context of an RFP response, as to why some video content has audio capability and some does not.

72.     Nor is Defendant aware of any Interrogatory that queries on this subject matter that requires a response from an appropriate spokesperson for the Defendant.

**I.     Observation Video Training Materials**

73.     Based on information and belief formed after reasonable inquiry, there is no <u>video training media</u> documents responsive to this request. Available training materials have been uploaded to the production SF.

**J.     AED Maintenance Logs [RFP #132]**

74.     This issue is another example of how Plaintiffs continue to recycle and regurgitate the same discovery issues over and over again.

75.     Plaintiffs' RFP #132 was originally served on 8/12/2024. Defendant objected to it on 11/5/2024. Plaintiff sent a Deficiency Notice on 11/18/2024. Defendant responded to the Deficiency Notice on 12/27/2024.

76.     Plaintiff filed a Motion to Compel for the first time on this RFP on 4/18/2026 **(ECF #130)**. Defendant filed a response to the Motion to Compel on 5/9/2025 (ECF #149). Defendant's position as to RFP 132 remained constant – there is no issues pertaining to the availability of an AED device as to any of the claims.

77.     The Court held a Motion Hearing on 4/9/2024 (ECF #142) and again on 5/2/2025 (Minute Entry dated 5/2/2025) but this item was not on the docket. , and again on 7/31/2026 (5/2/2025).

Defendant Harris County's Response to Wagner Plaintiff's
Second Motion to Compel [ECF #314]                                                    -14-

78.     After the hearing on 7/31/2026, the Court entered Agreed Court Order #213. Agreed Order #213 specifically provides the Order #213 resolved a number of pending discovery disputes, including but not limited to ECF #130 – which contains RFP #132.

79.     Consequently, Plaintiffs had previously stipulated that the discovery dispute as to Motion to Compel (ECF #130) was resolved at the hearing on 7/31/2026. Yet, now, nine months later, Plaintiff once again assert that the discovery dispute as to RFP #131 remains open.

**K.     Alleged Personal Jail Facility Recordings Held By Individual Officers**

80.     Plaintiffs request production of recordings made on the personal cell phones of individual Detention Officers. Such a practice is strictly prohibited by the Detention Command, and any Detention Officer utilizing a personal cell phone or other recording device within the Jail Facility is subject to discipline. On this point, Defendant refers the Court to SOP CJC 105 – Prohibited Personal Items, attached as Exhibit E.

81.     Aside from the fact that Plaintiffs do not identify any individual Detention Officer who allegedly has personal recordings, the existence of such materials for personal use amounts to contraband. In essence, given the prohibition applicable to Detention Officers to have personal recordings of incidents or events within the jail facility, Defendant does not have any materials to produce.

**L.     Unspecified Resignation Letters**

82.     Plaintiff does not make any specific reference to RFP under Point L. A search of the Second Set of RFPs does not identify Detention Officers who submitted resignation letters.

83.     A review of the Second Motion to Compel does not reflect the identity of Officers who resigned out of concerns about "the conditions of the Jail".

84.     A review of the HR files produced reflects that the HR records of Jose A. Valdiviez were produced a year ago on 6/18/2025 but the HR file does not reflect that Valdiviez resigned.

85.     If Plaintiffs provide the identity of Detention Officers who allegedly resigned out of personal concerns about their safety at work, Defendant will further pursue a review of their HR files. Vague, broadly worded allegations that are short on facts and which seek to shift the burden of research on to the Defendant do not trigger an obligation to respond.

**M.      Request For Fees And Counter-Request For Fees.**

86.     For the reasons specified above, Plaintiffs request for fees should be denied. Defendant has articulated and explained to the Court the basis of its position as to each of the points raised in this Motion. As to some, the Parties have legitimate disputes. As to others, Defendant's could just as easily contend that Plaintiffs are unreasonably churning the discovery wheel.

87.     Defendant makes its own request for an attorney fees award on the following points raised by Plaintiffs: A, B, C, D, F, G, K, and L. These were previously resolved, redundant, or have no merit.

<strong>CONCLUSION & PRAYER</strong>

Therefore, based on the foregoing reasons, DEFENDANT HARRIS COUNTY requests that the Court deny the relief requested in Plaintiffs' Second Motion to Compel (ECF #314), including the request for attorney fees.

DEFENDANT makes its own request for Attorney fees for time expended in responding to certain points urged by Plaintiffs, specifically: Points A, B, C, D, F, G, K, and L, which were either previously resolved, or which have no merit.

SIGNED on the 26TH day of MAY 2022.[1]

Respectfully submitted,

By:     *Ricardo J. Navarro*
RICARDO J. NAVARRO
State Bar No. 14829100
So. Dist. ID No. 5953
rjnavarro@rampagelaw.com

KELLY R. ALBIN
State Bar No. 24086079
So. Dist. ID No. 3792304
kralbin@rampagelaw.com

**DENTON NAVARRO RODRIGUEZ
BERNAL SANTEE & ZECH, P.C.**
549 N. Egret Bay Blvd., Suite 200
League City, Texas 77573

---

[1] Monday, May 25, 2026 being a federal holiday, this Response is filed on the next business day as per Rule 4, FRCP.

Defendant Harris County's Response to Wagner Plaintiff's
Second Motion to Compel [ECF #314]                                              -16-

Telephone: (832) 632-2102
Facsimile: (832) 632-2132
**ATTORNEYS FOR DEFENDANT**
**HARRIS COUNTY, TEXAS**

**CERTIFICATE OF SERVICE**

I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process referenced in the Federal Rules of Civil Procedure on all attorneys of record in this case on the 26TH day of APRIL 2026, to wit:

Benjamin L. Crump                    Email: court@bencrump.com
Paul Ashley Grinke                   Email: paul@bencrump.com
Aaron Dekle                          Email: aaron@bencrump.com
ATTORNEYS FOR PLAINTIFFS

Carl Lenford Evans, Jr.              Email: cevans@mccathernlaw.com
Noah L. Cathern
Jordan A. Carter
Alizabeth A. Guillot
McCathern Law Firm
ATTORNEYS FOR PLAINTIFFS

Mohammed Obaid Shariff              Email: mshariff@sharifflawfirm.com;
Russell Ross                        Email: rross@sharifflawfirm.com
Shariff Law Firm                    Email: eservice@sharifflwfirm.com
SHARIFF LAW FIRM
ATTORNEY FOR INTERVENOR ANA GARCIA
  & KEVIN SANCHEZ TREJO

Taylor McCray Hunter               Email: taylor@thehunterlaw.com
Kevin Green                        Email: kevin@consumerjusticecenter.com
Thomas Lyons Jr.                   Email: tommy@consumerjusticecenter.com
Andi Weber                         Email: andi@consumerjusticecenter.com
ATTORNEY FOR INTERVENOR CHANDRA JENKINS
  & DEQON BUFORD

*Ricardo J. Navarro*
RICARDO J. NAVARRO
KELLY R. ALBIN

Defendant Harris County's Response to Wagner Plaintiff's
Second Motion to Compel [ECF #314]                                    -17-