**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **OCTEVIA WAGNER, ET. AL.**<br>**Plaintiffs** | §<br>§<br>§<br>§ | |
| **v.** | § | **Civil Action No. 4:23-CV-02886** |
| **HARRIS COUNTY, TEXAS**<br>**Defendant** | §<br>§<br>§<br>§ | |
| **AND** | §<br>§ | |
| **ANA GARCIA AND CHANDRA JENKINS,**<br>**Plaintiff – Intervenors** | §<br>§ | |

**DEFENDANT HARRIS COUNTY'S OMNIBUS REPLY TO PLAINTIFFS' AND INTERVENORS' RESPONSES TO DEFENDANT'S MONELL MOTION FOR SUMMARY JUDGMENT [ECF #406]**

==============================================================

COMES NOW DEFENDANT HARRIS COUNTY and files this Omnibus Reply to Plaintiffs' and Intervenor's Responses to Defendant's *Monell* Motion for Summary Judgment #406.

1. In response to Defendant's single *Monell* MSJ, Plaintiffs and Intervenors elected to file separate Responses. *See* ECF #427; *see also* ECF #442; ECF #451. Intervenor Garcia's Initial Response was stricken, and she has since filed an Amended Response. *See* ECF #427, 453.

2. For good measure, and to avoid page limitations, Plaintiffs and Intervenors also filed dilatory and collateral challenges. Intervenor Garcia, joined by the others, filed a Motion to Strike the revised *Monell* MSJ for not complying with line spacing. *See* ECF #415. Intervenor Garcia filed a Rule 56(d) Motion to Deny Defendant's *Monell* MSJ on the ground that she needs more written discovery. *See* ECF #425. *Wagner* Plaintiffs filed a stand-alone Motion objecting to Defendant's Exhibit in Support of the *Monell* MSJ. *See* ECF #452.

3. Further, the three Responses overlap in the following ways: (1) All responses assert an alleged de facto policy of understaffing, overcrowding, and failure to monitor; (2) All responses assert an alleged de facto policy of excessive force; (3) All responses assert an alleged de facto policy inadequate medical care; (4) All responses assert an alleged failure to protect and culture of violence; and (5) All responses assert an alleged de facto policy of failure to train and supervise.

4. The Omnibus Reply will not address the collateral and dilatory motions as those will get their own Responses and Replies.

## II. ARGUMENT & AUTHORITIES

### A. Plaintiffs' Inappropriately Direct the Court To A Private File Link Where They Expect the Court to Root About for Evidence to Survive Summary Judgment.

5. As an initial matter, Plaintiffs have failed to properly supply the Court with evidence in support of their Responses, nor have Plaintiffs or Intervenors pointed the Court to specific evidence to support any particular proposition. For instance, Plaintiffs argue that the officers' observation rounds are routinely inadequate and that performing inadequate rounds is a "longstanding, accepted practice." Doc. 451, p. 3. In support of the conclusory statement, Plaintiffs direct the Court to "Ex. 2-21, 43, 44, 61, 84, 94, 98, 99, 104, 121-123, 125, 132-136, 142, 148, 150-151, 157-166, 168, 178-181, 188-198, 200-203, 213-216, 231, 255, 261, 272, 273, 276, 293; []Ex. 80, 83, 97, 127, 167, 169, 170-173, 176, 199, 227, 228, 234, 248-250, 288, 302, 307, 309, 312, 314, 315, 317-319, 32…Ex. 43, 44, 80, 83, 97, 125, 127, 167, 169, 170-173, 175, 176, 181, 188-199, 227, 228, 234, 248-250, 255, 261, 293, 302, 307, 309, 312, 314, 315, 317-319, 322," **without a single indication as to where, exactly, the Court (of the County, for that matter) is supposed to be looking within these exhibits**. *Id*. Some of the exhibits are hundreds of pages long; for example, **Exhibit 148 is over 800 pages**.

6. As Judge Brown has said in a sister court, **"That won't do. The nonmovant's burden is to point to specific evidence raising a genuine issue of fact."** *George v. Abbott*, Cause No. 3:24-cv-12, 2025 WL 1685239, at *3 (S.D. Tex. June 16, 2025) (citing *Ragas v. Tenn. Gas Pipeline Co*., 136 F.3d 455, 458 (5th Cir. 1998) ("The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.").

7. Just as Judge Brown "refuse[d] to 'sift through' the thousands of pages [the party] attaches to his response 'in search of evidence to support' his position," so, too, should this Court. *Id*. (citation omitted). "Indeed, judges are neither 'ferrets' nor 'pigs, hunting for truffles buried in the record.'" *Id*. (quoting *Nicholas Acoustics & Specialty Co. v. H&M Constr. Co., Inc*., 695 F.2d 839, 846–47 (5th Cir. 1983); *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (citation omitted)). Based on the merits of the County's motion and Plaintiffs' complete failure to "identify specific evidence in the record and to articulate the precise manner in which that evidence supports [their] claims," Harris County's *Monell* Motion for Summary Judgment should be granted.

**B. Plaintiffs and Intervenors offer no evidence that raises a genuine dispute of material fact regarding a policy of understaffing, overcrowding, or inadequate monitoring.**

8. Even if the Court were to consider Plaintiffs' and Intervenors' arguments in the absence of any properly filed and cited evidence, they are misguided in several regards.

9. First, Plaintiffs and Intervenors posit that somewhere in their heap of exhibits there is evidence of a practice of understaffing and that understaffing is, itself, an unconstitutional condition of confinement. As to whether the County has an actual policy of understaffing, Plaintiffs seem to aver that even if the County assigns enough officers to each floor to meet the State's staffing parameters, emergencies that require officers' attention could cause the staffing

to drop below the State's threshold, therefore, the Jail has a policy of understaffing. Doc. 451, p.13 ("Defendant claims it avoids a *de facto* understaffing policy by verifying inmate counts twice daily and using overtime and staff reassignments as needed. Dkt. 406 ¶¶ 11-18, 76-83. But a sufficient count on paper at shift start does not mean the Jail has enough staff to safely care for each detainee, Ex. 11, 20, and the thousands of incident reports and officer depositions show officers routinely pulled from their floor—for clinic runs, medical emergencies, or fights—without replacement, dropping coverage below the state standard.").

10. The problem is that **Plaintiffs fail to point the Court so a single incident where this actually happened**. Instead, they simply point the Court to "thousands of incident[s]" where officers took an inmate to the medical clinic or responded to an issue or emergency, but they make no effort to show that during those "thousands of incident[s]" staffing fell below the minimum. And, certainly, they have not identified a single instance in which a Plaintiff was injured while an officer or officers responded to an issue, leaving the floor "understaffed."

11. In contrast, Harris County has cited specific written policy documents pertaining to staffing, along with documents made on specific days, for specific floors, that relate to specific Plaintiffs to demonstrate that not only is the County's policy to provide adequate staffing, but, also, that the practice follows the policy. The Daily Watch Schedules, for instance, are a day-to-day reflection of the staffing policy, and show only a handful of instances where the staffing dipped below the state minimum. Exh. 23; see also ECF #406 at ¶¶ 88-89. This evidence is not a "red herring" simply because it is inconsistent with Plaintiffs and Intervenors misplaced theory.

12. Their argument about overcrowding fares no better. In fact, faced with undisputed evidence that the Jail maintains a population below its capacity and was below capacity during the relevant time, Plaintiffs pivot and make a halfhearted argument that the Jail was overcrowded **even if the population was within its design capacity**. *See* Doc. 451, p. 13-14.

13. And, again, Plaintiffs' reliance on generalized exhibits without specific cites to the record is the same as providing no evidence. *See James v. Harris Cnty*., 577 F.3d 612, 619 (5th Cir. 2009) (granting summary judgment because Plaintiff failed to provide evidence of a direct causal link).

14. As to the second part of their argument—that staffing alone can, itself, constitute a constitutional violation, they are flat wrong that this is the law. There must be an underlying injury. This is a cornerstone of *Monell;* not mere dicta, as Plaintiffs and Intervenors suggest.

15. Finally, Plaintiffs and Intervenors do not demonstrate causation based on an alleged de facto policy of failure to observe and monitor. Notably, Plaintiffs and Intervenors ignore the millions of timely rounds and the camera modernization while failing to link any alleged observation lapse to a punitive purpose or to the specific injuries at issue. Exh. 24 - Smith Aff.; *see also* Ex. 29 - Ferguson Aff.]; Exh. 18 – Stewart Expert Report at pp. 19-22. Instead, they urge that isolated instances of misconduct establishes a de facto policy. *See Osborne v. Harris Cnty., Tex.,* 97 F. Supp. 3d 911, 939 (S.D. Tex. 2015) ("Furthermore, a 'handful' of instances do not constitute a pervasive custom or practice."). Even if it were true that several officers acted inappropriately, Plaintiffs and Intervenors do not put forth evidence tying such abuse to specific instances, which is required under *Monell*. As such, Harris County is entitled to judgment as a matter of law.

**C. Plaintiffs and Intervenors identify no competent summary judgment evidence that the Jail maintained a policy or custom of excessive force.**

16. Plaintiffs make generalized assertions of "institutionalized" excessive force unsupported by plaintiff-specific proof of a County policy as the moving force behind such instances. As stated in its Motion, the Plaintiffs only provide 16 use-of-force incidents involving 11 of the 29

Plaintiffs and eight comparator incidents over the course of nine years. ECF 122 ¶¶616-652, 665-674, 692-707, 731-742, 754-764, 777-785, 874-890.

17. In an attempt to salvage their position, Plaintiffs assert that there were hundreds of unidentified incidents of excessive force from 2020 to 2024. *See* ECF #451. However, Plaintiffs' and Intervenors' characterization of other incidents as "excessive force" does not make it so. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Moreover, their position is not advanced simply by painting a bleak picture, wholly unsupported by the record, that other cities and counties with comparable populations have less instances of force. As propounded by the Jail's expert, Plaintiff relies on self-reported TCJS statistics, which are open to interpretation concerning excessive force and can easily be skewed depending on the city or county. Exh. 18 – Stewart Expert Report at pp 8-9.

18. Finally, contrary to what Plaintiffs assert, the Jail has not ratified excessive force, but, instead, had addressed policy violations and disciplined officers for misconduct. Exhs. 18, 28 - Expert Report of Sean Stewart and Tschudy Aff.

19. Plaintiffs also continuously assert excessive force as a condition of confinement claim. Their reliance on *Moore* in their Response highlights the very misunderstanding about how Section 1983 cases work that has plagued this entire case. *Moore* does not state, contrary to Plaintiffs' claim, that excessive force cases may be brought as conditions claim. Instead, the Court's discussion of "deliberate indifference" in *Moore* is an obvious telltale that the Court was utilizing the episodic acts framework, a signature of which is whether there is deliberate indifference. *See Moore v. LaSalle Management Co*., 41 F.4th 493 (5th Cir. 2022).

20. In sum, Plaintiffs and Intervenors have failed to point the Court to evidence of this supposed policy of excessive force, nor have they directed the Court to binding precedent that allows excessive force to be brought as a condition of confinement.

**D. Plaintiffs and Intervenors fail to raise a genuine dispute of material fact as to any policy or custom of inadequate medical care.**

21. Next, there is no dispute of material fact that the County's policy is to meet the basic medical needs of those in its custody. *See* Exhs. 2-13; *see also* Exhs. 18 & 19- Stewart and Dr. Eskew Expert Reports. In fact, a review of the Medical Summaries Binder provided by the Defendant demonstrates that all Plaintiffs and Intervenors received medications, assessments, and/or medical treatment while in Jail. Said another way, not a single Plaintiff or Intervenor went without medical care, which was delivered based on a complex system implemented by the County through contracts with Harris Health Systems and Harris Center—experts in their respective delivery of treatment.

22. Notably, Plaintiffs and Intervenors do not dispute that the Medical Summaries Binder demonstrates that they received medical care and medications when needed. *See generally* ECF #442; ECF #451; ECF #453. Rather, they focus on "some care after the fact does not mean that the Jail provided adequate medical care prior to the incident or after the incident." ECF #451. However, the Medical Summaries along with the written policies of the Jail and various testimonies of the Plaintiffs demonstrate that Plaintiffs and Intervenors much more than just after the fact care. Exh. 20 - Medical Summaries Binder; *see also* Exh. 32 – Lockhart Depo; Exh. 33 – Radcliffe Depo.

**E. Plaintiffs and Intervenors fail to raise a genuine dispute of material fact as to any policy or custom of an alleged "culture of violence" or a failure to protect.**

23. Plaintiffs and Intervenors also reassert a culture of violence that was allegedly present in the Jail. However, the record evidence shows repeated instances of officers responding to

emergencies as their training and governing policies require. Because the conditions Plaintiffs rely on never existed, their failure-to-protect claim has no factual foundation and cannot create a genuine dispute of material fact. Moreover, as Defendant's expert states, "Harris County and/or Sheriff Gonzalez maintain a detainee disciplinary system designed to encourage appropriate behavior while individuals are in custody." Exh. 18 – Stewart Expert Report at p. 55. This disciplinary system is maintained in accordance with TCJS standards. *Id.* Additionally, if an incident rises to criminal activity the Special Investigation Unit (SIU) presents the case to the district attorney's office for possible prosecution. *Id.* This plan, along with the referral of possible criminal cases, demonstrates that the Jail was indifferent to the protection of inmates or an alleged culture of violence.

24. Nor can Intervenor Jenkins rely on PREA compliance and its alleged applicability to Buford to establish a *Monell* policy or custom of a failure to protect. *See* ECF #442. Intervenor Jenkins identifies the absence of a PREA Compliance Manager and then assumes the vacancy caused Buford's assault. *See id.* This an assumption based of Intervenor Jenkins' flawed interpretation of the evidence, not evidence of causation. Even assuming that Intervenor Jenkins is correct and the position was vacant, the question is whether the absence of the position resulted in a specific failure to protect Buford and whether the failure caused the injury. Intervenor Jenkins does not provide any evidence of such causation or link. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) ("a plaintiff must . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights."). Rather, the evidence demonstrates that the Jail specifically had a plan to house inmates separately and as stated above, if there was a crime committed would report such crime to the district attorney. At most, Intervenor Jenkins

only identifies an administrative deficiency, not the moving force behind an alleged unconstitutional policy or custom.

25. As stated above, Plaintiffs and Intervenors attempt to manufacture a genuine issue of material fact regarding a condition of encouraging violence fails. They have not pointed the Court to records defeating the competent record evidence reflecting the Jail's policy to mitigate and limit violence in a custodial setting. As a result, the County is entitled to judgment as a matter of law as to whether there was a culture of violence that was the cause of any of the Plaintiffs' or Intervenors' injuries.

**F. Plaintiffs and Intervenors fail to raise a genuine dispute of material fact as to any failure to train or supervise policy or custom as required by *Monell*.**

26. Plaintiffs' failure to train argument is that the Jail has unconstitutional conditions of failing to provide medical care, excessive force, encouraging inmate violence, and failing to observe inmates, therefore, the Jail has inadequate training on providing medical care, user of force, and protecting and monitoring detainees. This circular argument fails for two reasons: First if this were a true conditions case—which it is not—failure to train would be an inapplicable theory of liability because the condition would exist without the misstep of an individual. Second, Plaintiffs and Intervenors have still failed to point out in what way a particular training program is insufficient. The record establishes that Harris County provides training on each challenged subject, including use of force, delivery of medical care, and measures to protect inmates from harm. *See* Exh. 18 – Stewart Expert Report at Ops. 12-15; Exh. 25 – Gonzalez Aff.; Exh. 25.1 – Use of Force Content.

27. Plaintiffs and Intervenors offer nothing to identify "specific deficient training" or specifically connect some training deficiency to a particular injury. Nor have they bothered to cite evidence to show that the County was deliberately indifferent to a risk of harm by

maintaining the training program in the record. At best, Plaintiffs and Intervenors point to a handful of errors by Jail staff. However, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989).

28. Finally, Plaintiffs' and Intervenors' response regarding a failure to supervise is similarly unavailing. Plaintiffs and Intervenors still put forth no facts supporting failure to supervise, only conclusory blame. In fact, the evidence by the County shows the opposite. *See* Exh. 18 – Stewart Expert Report at p. 6. Harris County is entitled to summary judgment on all claims.

**G. Intervenors Rule 56(a) Argument and Policymaker Notice Argument also fail.**

29. The Intervenors' argument concerning policymaker notice also fails because, much like their previous arguments, they must demonstrate a specific policy choice by the final policymaker to their injuries. The reliance on TCJS notices and aggregate events does not establish that the Sheriff adopted or maintained an unconstitutional policy as the moving force behind any particular incident.

30. Finally, the Jail has provided evidence in accordance with FRCP 56(a) that demonstrates no genuine disputes of material fact and shows the instances where Intervenors provide little or no evidence, which is far from conclusory. *See generally* ECF #406.

**CONCLUSION & PRAYER**

THEREFORE, for the further reasons specified above, Defendant Harris County requests and prays that the Court take up the issues presented in the revised Monell MSJ (#406) on their merits and grant summary judgment. Finally, Defendant requests such further and additional relief at law or in equity that the Court determines to be fair and reasonable.

SIGNED on the 25th day of SEPTEMBER 2026.

Respectfully submitted,

By: *Kelly R. Albin*

KELLY R. ALBIN
State Bar No. 24086079
So. Dist. ID No. 3792304
kralbin@rampagelaw.com

RICARDO J. NAVARRO
State Bar No. 14829100
So. Dist. ID No. 5953
rjnavarro@rampagelaw.com

**DENTON NAVARRO RODRIGUEZ BERNAL SANTEE & ZECH, P.C.**
549 N. Egret Bay Blvd., Suite 200
League City, Texas 77573
Telephone: (832) 632-2102
Facsimile: (832) 632-2132

**ATTORNEYS FOR DEFENDANT HARRIS COUNTY, TEXAS**

## CERTIFICATE OF SERVICE

I certify that a true copy of this document has been served in accordance with one or more of the authorized methods for service of process referenced in the Federal Rules of Civil Procedure on all attorneys of record in this case on the 25[TH] day of SEPTEMBER 2026 to wit:

Paul Ashley Grinke — Email: paul@bencrump.com
Aaron Dekle — Email: aaron@bencrump.com
BEN CRUMP LAW FIRM
ATTORNEYS FOR PLAINTIFFS

Carl Lenford Evans, Jr. — Email: cevans@mccathernlaw.com
Noah L. McCathern — Email: nmccathern@mccathernlaw.com
MCCATHERN LAW FIRM
ATTORNEYS FOR PLAINTIFFS

Thad D. Spalding — Email: tspalding@dpslawgroup.com
Shelby J. White — Email: swhite@dpslawgroup.com
DURHAM, PITTARD & SPALDING, LLP
ATTORNEYS FOR PLAINTIFFS

Mohammed Obaid Shariff Email: mshariff@shariflawfirm.com;
Russell Ross Email: rross@sharifflawfirm.com
Shariff Law Firm Email: eservice@shariffwfirm.com
SHARIFF LAW FIRM
ATTORNEY FOR INTERVENOR ANA GARCIA
& KEVIN SANCHEZ TREJO

Taylor McCray Hunter Email: taylor@thehunterlaw.com
Kevin Green Email: kevin@consumerjusticecenter.com
Thomas Lyons Jr. Email: tommy@consumerjusticecenter.com
Andi Weber Email: andi@consumerjusticecenter.com
ATTORNEY FOR INTERVENOR
CHANDRA JENKINS & DEQON BUFORD

*Kelly R. Albin*
RICARDO J. NAVARRO
KELLY R. ALBIN