United States District Court
Southern District of Texas
ENTERED
November 02, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **OCTEVIA WAGNER,** ***et al.*** *Plaintiffs* | § | |
| | § | |
| | § | |
| | § | |
| **V.** | § | **CIVIL CASE NO. 4:23-cv-02886** |
| | § | |
| **HARRIS COUNTY, TEXAS,** *Defendant*, | § | |
| | § | |
| | § | |
| **and** | § | |
| **ANA GARCIA and CHANDRA JENKINS,** *Plaintiff-Intervenors* | | |

**MEMORANDUM & ORDER**

Before the Court are two Motions to Compel. Plaintiff-Intervenor Ana Garcia brings a Third Motion to Compel Written Discovery (ECF No. 241) and Plaintiffs bring a Second Motion to Compel (ECF No. 314). After considering both Motions, all responses and replies, parties' oral arguments, and the applicable law, the Court concludes that Motions should be **GRANTED IN PART AND DENIED IN PART.** The ensuing memorandum addresses each of the discovery disputes outlined in both Motions.

## I. INTRODUCTION

This action arises out of a series of incidents that occurred in the Harris County Jail resulting in the death or serious injury of 29 detainees.[1] Following a hearing on July 31, 2025 on

[1] The Court set forth more fully the facts material to this case in the Memorandum and Order of March 28, 2025. *See* ECF No. 120 at 2.

Plaintiffs' First Motion to Compel Discovery from Defendant Harris County, Texas (ECF No. 130), the Court entered an agreed order (hereinafter "Agreed Order") on discovery. ECF No. 213. The agreement reflected Parties' agreement on the following:

1. Defendant would produce materials previously produced to KHOU following a Texas Public Information Act request, as well as the communications and documents that KHOU put forward when making its request;
2. Plaintiffs would provide a list of officers that witnessed or participated in Plaintiffs' and Plaintiff-Intervenors' incidents. In response, Defendant would produce the PEWS records, TCOLE training files, and incident history reports for those officers;
3. Defendant would produce the reports underlying the Serious Incident Report Counts spanning from January 2018 through December 2023. *See* ECF No. 213.

The Order also resolved existing motions "solely in relation to the arguments raised therein concerning the scope of other similar incident[2] discovery under *Monell*." *Id.* at 2-3. However, during the July 31, 2025 hearing, Parties made statements on the record which indicated their differing understandings of the Agreed Order. While Defendants expressed the belief that the agreement was sufficient for Plaintiffs and Plaintiff-Intervenors to collect the information

[2] For the purposes of *Monell* discovery, "similar incidents" can refer to, but are not limited to, other incidents of alleged officer misconduct which establish a connection between Plaintiff-Intervenor and Plaintiffs' injuries and Harris County's training, supervision, and medical care policies. *See, e.g.*, *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) ("A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy. Where prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body . . . ." (internal citations omitted).

necessary to substantiate their *Monell* claims, Plaintiffs reserved their right to raise additional discovery requests if they required more information.

In the ensuing year, Parties filed additional Motions to Compel after reviewing discovery materials produced in response to the Agreed Order. *See, e.g.*, ECF No. 241; ECF No. 314. On July 24, 2026, the Court held a hearing on Plaintiff-Intervenor Garcia's Second Motion to Compel and Plaintiffs' Third Motion to Compel to determine the extent to which the Agreed Order allowed or barred additional *Monell* discovery.

## II. LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides:

> "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

Further, parties may move for an order compelling the discovery materials that are "within the scope of discovery and have been requested but not received." *See Crosswhite v. Lexington Ins. Co.*, 321 Fed. App'x 365, 368 (5th Cir. 2009) (citing FED. R. CIV. P. 37(a)). Generally, the party resisting a motion to compel bears the burden of demonstrating "specifically" how each request for production or interrogatory "is not relevant or how each request is overly broad, burdensome, or oppressive." *O'Bryant v. Walgreen Co.*, 802 F. App'x 826, 833 (5th Cir. 2020) (quoting *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)); *Kleppinger v. Texas Dep't of Transportation*, No. CV L-10-124, 2012 WL 12893652, at *2 (S.D. Tex. Mar. 12, 2012) (same).

In § 1983 *Monell* cases, moving parties must establish that pattern of officer misconduct "is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *See Peterson*, 588 F.3d at 850 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). "Courts addressing discovery-related disputes . . . routinely recognize that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff had sued only one of the individuals directly involved in the alleged deprivation of rights given the heavy burden on that claim." *Lou v. Lopinto*, No. cv 21-80, 2022 WL 1447554, at *9 (E.D. La. Mar. 24, 2022); *Estevis v. City of Laredo*, 5:22-cv-22, 2023 WL 9319061, at *3 (S.D. Tex. Mar. 31, 2023). "In carrying that burden, evidence of prior similar incidents is relevant because they can demonstrate that a municipality had knowledge, be it actual or constructive, or that a pattern of behavior was so widespread that the municipality had a custom authorizing or encouraging such conduct." *Estevis*, 2023 WL 9319061, at *3; *Henderson v. Anderson*, H-09-548, 2011 WL 13182873, at *4 (S.D. Tex. Feb. 15, 2011), *aff'd*, 463 F. App'x 247 (5th Cir. 2012) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).

## III. <u>DISCUSSION</u>

As an initial matter, the Court must address a disagreement between Parties regarding the scope of the Agreed Order. While Defendants contend that the Agreed Order precluded Plaintiffs and Plaintiff-Intervenors from requesting additional materials to support their *Monell* claims, Plaintiffs and Plaintiff-Intervenors expressly reserved the right to engage in further *Monell* discovery.

The Court does not interpret the Agreed Order as a complete bar to additional *Monell* discovery, the scope of which is often very broad in *Monell* cases. However, the Court does not view it necessary to allow significantly more discovery than it has already authorized, particularly in the categories expressly settled between Parties in their Agreed Order. Accordingly, the ensuing order addresses specific discovery requests with this understanding.

*A. Plaintiff-Intervenor Garcia's Requests for Production of Employment Files for Officers on Floors Where Sanchez-Trejo-Trejo Was Housed (ECF No. 241) is* **DENIED.**

Plaintiff-Intervenor Garcia moves to compel Defendant to produce employment files for the officers who worked on floors where Mr. Sanchez-Trejo was housed between December 30, 2021 and February 12, 2022. *See* ECF No. 241 ¶¶ 36-38; ECF No. 241-3 at 7-9. The requested employment files include "complaints, Internal Affairs files, disciplinary findings, and training records." ECF No. 241-3 at 7. In total, these RFPs request the employment files of 105 employees.

Relevant to this discussion, the Agreed Order required Plaintiffs and Plaintiff-Intervenors to "provide a list of officers that, according to the incident report or related investigative materials, witnessed or participated in each of the" incidents. ECF No. 213 ¶ 2. While Defendant contends that the County needs to provide only the employment files of the ten (10) detention officers working on the day Sanchez-Trejo died, Garcia contends that, because she pleads a denial of medical care claim, the employment records of all officers who worked on Sanchez-Trejo's floor contributed to the circumstances leading up to his death. *See* ECF No. 241 ¶ 37.

To justify this request, Plaintiff-Intervenor relies on an internal complaint from August 13, 2021 which stated, *inter alia*, that the Sheriff's Office received "an email complaint from Nurse Brandi Hawkins in regard to not having rovers to issue medication" and that the supervising

Sergeant "was aware of this issue and failed to act." *Id.* ¶ 38. Plaintiff-Intervenor asserts that the requested employment files "will likely have the same or similar information." *Id.* ¶ 38.

Defendant, however, states that "[t]he materials sought by Intervenor . . . are so overbroad that they will not reasonably lead to the discovery of more relevant evidence. The scope of materials negotiated for production in Agreed Order #213 are much more likely to do so . . . ." ECF No. 252 ¶ 28. Additionally, Defendant denies that Sanchez-Trejo's death was caused by a breach of the constitutional duty to provide medical care. *Id.* ¶ 27.

Discovery with regards to a *Monell* claim that alleges a systematic denial of medical care can extend broadly to include information about patterns of the failure to provide care to multiple patients with a variety of medical issues. *See, e.g.*, *Gilbert v. Harris Cnty., TX*, 25-421, 2026 WL 2913061, at *4 (W.D. La. Sep. 28, 2026) (citing *Est. of Cross by & through Bauder v. Turn Key Health Clinics, LLC*, No. 1:22-cv-03143-SKC-SBP, 2024 WL 4444446, at *9 (D. Colo. Oct. 8, 2024)). However, a request for all files related to employees who worked on the floors where Sanchez-Trejo was housed "encompasses a large array of possible information, not all of which is reasonably calculated to lead to the discovery of admissible evidence." *Ford v. Cain*, 15-136-SDD-EWD, 2016 WL 7471633, at *3 (M.D. La. Dec. 27, 2016) (denying motion to compel production of all complaints regarding inadequate medical care because the request was overly broad and burdensome).

The Agreed Order required Plaintiff-Intervenor to identify officers who "witnessed or participated in each of the" incidents. *See* ECF No. 213 ¶ 2. Although Plaintiff-Intervenor Garcia correctly states that a claim for denial of medical care will necessarily implicate incidents of mistreatment that occurred before the day of Sanchez-Trejo's death, she has not adequately

demonstrated that the employment files of *all* officers who worked on his floors will produce relevant information to that effect. That officers worked on the same floor as Sanchez-Trejo does not necessarily mean that they interacted with him, nor does it mean that they witnessed or participated in the denial of medical care during the specified time period. Unless Plaintiff-Intervenor is able to identify specific dates that Sanchez-Trejo was denied medical care, or specific officers who certainly interacted with him, the request is unlikely to lead to the discovery of relevant evidence. *Compare Lafleur v. Leglue*, 16-254-BAJ-RLB, 2017 WL 2960541, at *6 (M.D. La. July 11, 2017) (authorizing discovery tied to specific instances of the denial of medical care), *with Ford*, 2016 WL 7471633, at *3 (denying discovery that was untethered to any specific incidents).

Although Plaintiff-Intervenor Garcia identified a specific complaint from August 13, 2021, which expresses concerns with the provision of medical care in Harris County Jail, she has not indicated whether officers' entire employment files will necessarily include similar information. As the employment files contain a wide variety of documents, including internal complaints, disciplinary records, training materials, and other information, it is likely that compelling the discovery of these files would produce a broader array of information than that which is required to support her denial of medical care claims.

Accordingly, Plaintiff-Intervenor's motion to compel the employee files of all the officers working on the floors Sanchez-Trejo was housed is hereby **DENIED.**

*B. Plaintiff-Intervenor Garcia and Plaintiffs' Request for Documents Given to the Texas Rangers and Houston Police Department (ECF No. 241-3 RFP No. 75-76; ECF No. 314-1 RFP No. 144) are* **GRANTED.**

Plaintiff-Intervenor Garcia and Plaintiffs request unredacted investigation files created by the Texas Rangers Houston Police Department (HPD) which examine thirty-nine specifically-listed inmates who died in custody. ECF No. 241 ¶39; ECF No. 241-3 at 11-12. Plaintiffs request those files related to each Plaintiff and Comparator that can help her prove her *Monell* claims. Plaintiff-Intervenor Garcia attests that "Defendant has produced only portions of these files, many of which are heavily redacted." ECF No. 314 at 12; ECF No. 314-1 at 6.

Defendant objects to these requests, claiming that these RFPs "essentially resurrect" issues that were supposed to be resolved by the Agreed Order. *See* ECF No. 350 ¶¶ 21, 26-28. As discussed, the Court does not agree that all discovery disputes were resolved by the Agreed Order. *See supra* Section III. The text of the agreed order does not specifically name the investigation files produced by the Texas Rangers and HPD as a settled matter. Therefore, it is appropriate to fully consider this request.

"[E]vidence of prior similar incidents is relevant because they can demonstrate that a municipality had knowledge, be it actual or constructive, or that a pattern of behavior was so widespread that the municipality had a custom authorizing or encouraging such conduct." *Estevis*, 2023 WL 9319061, at *3; *see also Peterson*, 588 F.3d at 850. With regards to Plaintiff-Intervenor's request for the law enforcement files related to the specifically-listed inmates, the investigative files are relevant and proportional to the broad scope of Plaintiff-Intervenor's *Monell* claims. *See id.*; FED. R. CIV. P. 26(b)(1).

Similarly, evidence of investigations into identified Comparators, or other inmates who experienced similar instances of officer mistreatment, will be relevant to Plaintiffs' *Monell* claims. *See Estevis*, 2023 WL 9319061, at *3; FED. R. CIV. P. 26(b)(1). However, Defendant further

objects to Plaintiffs' requests, stating that the redactions in the files that have already been produced for Plaintiffs were completed by the Texas Rangers and HPD, not by Defendant or its counsel. ECF No. 350 ¶ 24. As such, Defendant is unable to provide unredacted files. *Id.* However, Harris County has legal control over the HPD and Texas Rangers and can request that information from the agency.

Therefore, Plaintiff-Intervenor Garcia's motion to compel the documents responsive to RFP No. 75-76 is **GRANTED** and Plaintiffs' motion to compel the documents responsive to RFP No. 144 is **GRANTED.**

*C. Plaintiff-Intervenor Garcia's Request for Offender Management System Information (ECF No. 241) is* **GRANTED.**

Plaintiff-Intervenor Garcia requests Offender Management System (OMS) files which include, but are not limited to, the "overview and classification, housing, keep separates, status, incidents, and inmate request tabs" for sixty-eight specified inmates. ECF No. 241-3 at 12-13. By requesting these documents, Plaintiff-Intervenor seeks to find "if suicide risks were properly housed or whether these inmates were involved in other incidents where their inmate requests for medical attention was [*sic.*] denied." ECF No. 241 ¶ 40.

Defendant has not responded directly to this request outside of its blanket assertion that the Agreed Order resolved all outstanding *Monell* discovery issues. *See* ECF No. 252. As discussed, *supra* Section III, this argument is unavailing. Plaintiff-Intervenor's request for OMS files is not included in Parties' stipulations in the Agreed Order and is relevant to her *Monell* claims regarding Defendant's systemic treatment of prisoners. *See Lou*, 2022 WL 1447554, at *9. Further, there is

no indication that the request would be "overly broad, burdensome, or oppressive." *O'Bryant*, 802 F. App'x at 833.

As such, Plaintiff-Intervenor's request for the specified OMS files is **GRANTED.**

*D. Plaintiff-Intervenor Garcia's Request for Whistleblower Complaints About the Improper Observation Custom and Conditions at the Jail (ECF No. 241) is* **DENIED.**

Plaintiff-Intervenor Garcia requests "each and every inmate incident report that Defendant generated from ten (10) years prior to the Kevin Sanchez incident up to the date of trial." In requesting this, Plaintiff-Intervenor Garcia seeks to obtain those reports where officers raised concerns about inmate observation practices, including understaffing, and jail conditions. *See* ECF No. 241 ¶ 41; ECF No. 241-3 at 17. Plaintiff-Intervenor states that "these incident reports, [in] which Detention Officers . . . speak openly and freely about understaffing issues, would yield discoverable information as to the custom[s]" of the jail. ECF No. 241 ¶ 41. Defendant has not raised any specific objections to this request outside of its blanket assertion that Plaintiff-Intervenor is barred from requesting additional *Monell* discovery. *See* ECF No. 252. This is unavailing.

The whistleblower and incident reports from the past ten years could certainly be probative as to Plaintiff-Intervenor's *Monell* claims, as such reports could produce evidence of other incidents that can establish a pattern of misconduct. *See Estevis*, 2023 WL 9319061, at *3; *Henderson*, 2011 WL 13182873, at *4. Nevertheless, the request is not proportional to the needs of the case. *See* FED. R. CIV. P. 26(b)(1). Even in a *Monell* case, the scope of discovery is not without limits. If Defendant were to provide *all* incident reports produced in the last ten (10) years, the evidentiary record would likely be inundated with information that is not necessarily tied to

the specific whistleblower reports Plaintiff-Intervenor seeks to uncover. Even if Defendant were only to provide those records which deal directly with whistleblower complaints, it would take a long time to review each report from the last ten years to determine which ones would be relevant. Therefore, the request is both overbroad and unduly burdensome. *See* Fed R. Civ. P. 26(b)(1); *O'Bryant*, 802 F. App'x at 833.

Accordingly, Plaintiff-Intervenor's motion to compel incident reports is **DENIED.**

*E. Plaintiff-Intervenor's Request for Production of Paper Grievances (ECF No. 241) is* **DENIED.**

Plaintiff-Intervenor Garcia requests "any and all inmate grievances submitted to [Harris County] from 2018 up to the date of trial," investigation files that were generated as a result of these grievances, and all documents showing the results or outcomes of these grievances. *See* ECF No. 241 ¶ 42; ECF No. 241-3 at 18. Plaintiff-Intervenor contends that the paper grievances "are needed in order to identify those incidents in which inmates made medical requests by paper but were denied." ECF No. 241 ¶ 42. Defendant raises only its blanket objection to additional *Monell* discovery. *See* ECF No. 252. The Court will consider the merits of this request.

As with Plaintiff-Intervenor's request for incident reports, her request for paper inmate grievances is overbroad. Although some paper grievances will certainly generate some complaints related to the inadequate provision of medical care, requesting *all* grievances submitted since 2018 will likely flood the record with irrelevant information. It would additionally require significant time and effort for Defendant to review all grievances from the past eight years to determine which ones provide responsive evidence to Plaintiff-Intervenor's denial of medical care claim. *See* Fed R. Civ. P. 26(b)(1).

Therefore, Plaintiff-Intervenor's request for all paper grievances since 2018 is **DENIED.**

*F. Plaintiff-Intervenor Garcia's Request for Documents Related to Specifically Enumerated Incidents (ECF No. 241) is* **GRANTED.**

Plaintiff-Intervenor Garcia requests documents related to specifically-identified Comparator incidents. These documents include, but are not limited to, settlement agreements, use of force reports, incident reports, investigation documents, medical rcords, inmate care complaitns, inmate kiosk requests, paper grievances, observation system logs, videos of the incident, the inmate's housing history, the applicable daily watch schedule, the functional capacity report for the time of the incident, and the OMS records associated with the inmate. *See* 241-3 at 19-51. In total, she requests the documents of about sixty Comparators. *See id.* Defendant provides its standard response alleging that the Agreed Order precludes any additional *Monell* discovery. ECF No. 252.

"[E]vidence of prior similar incidents is relevant because they can demonstrate that a municipality had knowledge, be it actual or constructive, or that a pattern of behavior was so widespread that the municipality had a custom authorizing or encouraging such conduct." *Estevis*, 2023 WL 9319061, at *3; *Henderson*, 2011 WL 13182873, at *4. Plaintiff-Intervenor's request for this information is therefore relevant to her *Monell* claims. Further, the request is consistent with the terms of the Agreed Order, which required Plaintiff-Intervenor to identify specific officers and individuals for whom relevant documents should be produced. *See* ECF 213.

Therefore, Plaintiff-Intervenor's request for documents related to specifically enumerated incidents is hereby **GRANTED.**

*G. Plaintiff-Intervenor Garcia's Request for Training Materials (ECF No. 241) is* **GRANTED.**

Plaintiff-Intervenor Garcia seeks training materials in Harris County's possession related to "the minimum standards for running a jail[,]" providing medical services, spotting drug overdoses in jails, and notices regarding suicide prevention training. *See* ECF No. 241-3 at 51-52. Defendant provides its standard response alleging that the Agreed Order precludes any additional *Monell* discovery. ECF No. 252.

To support a failure-to-train claim, a plaintiff must identify specific defects in a training program or official policy that led to a violation of the party's constitutional rights. *See, e.g.*, *Quinn v. Guerrero*, 863 F.3d 353, 365 (5th Cir. 2017); *Hutcheson v. Dallas Cnty., Texas*, 994 F.3d 447, 482 (5th Cir. 2021) (citing *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 179 L.Ed.2d 417 (2011)). Given the high burden of proof for these claims, the scope of relevant and proportional discovery will extend broadly. *See Estevis*, 2023 WL 931061, at *3.

Plaintiff-Intervenor's request for training materials related to the operation of the jail, provision of medical care, and prevention of suicide and overdoses are directly relevant and proportional to the needs of her failure-to-train claims. Moreover, the request is not foreclosed by the Agreed Order. Although the Agreed Order sought to settle discovery suits regarding individual officers' training files, it did not include an agreement about the training materials themselves. *See* ECF No. 213.

Therefore, Plaintiff-Intervenor's request for training materials is **GRANTED.**

*H. Plaintiffs' Request for Documents, Reports, Reports, PEWS Records, IAD Records, Jail Records, HR Files, and Video Footage for Additional Incidents involving Plaintiffs, Named Comparators, and Other Comparable Incidents that Plaintiffs Specifically Identified as Existing and Within Harris County's Possession, Custody, and Control (ECF No. 314) is* **GRANTED IN PART AND DENIED IN PART.**

Plaintiffs request voluminous records regarding incidents between plaintiffs, named Comparators, and specified officers. ECF No. 314 at 8. Defendant objects to this "pot-pouri" of requests, claiming that Plaintiffs have revived several discovery requests that were already dealt with by the Agreed Order. *See* 350 at 4-5.

The Agreed Order states in relevant part:

> "Defendant shall have until September 30, 2025, to produce all (1) PEWS records, (2) TCOLE training file, and (3) Incident History Reports for the officers listed by Plaintiffs' and Plaintiff-Intervenors, as described above. Defendant shall not produce HR files of officers identified unless and until further agreements are reached by the parties. After Plaintiffs and Plaintiff-Intervenors have reviewed the produced PEWS records, TCOLE/training records, and Incident History Reports, Plaintiffs and Plaintiff-Intervenors will identify underlying incidents and request further information, the production of which shall be discussed and agreed upon by the parties, to the extent possible. ECF No. 213 at 2.

Therefore, it seems that Parties anticipated that Plaintiffs would "request further information" after reviewing the documents Defendant provided. *Id.* Plaintiffs' request, which identifies specific incidents and the officers with knowledge of the incidents are associated, thereby largely complies with the text of the Agreed Order. *See id.*

One set of requested records, however, warrants further scrutiny. Because the Agreed Order states that "Defendant shall not produce HR files of officers identified unless and until further agreements are reached by the parties[,]" it is apparent to the Court that Parties intended to treat HR files differently. Thus, Plaintiffs' request for HR files should be excepted from the requests for other records.

Accordingly, Plaintiffs' request for PEWS records, IAD records, jail records, and video footage for additional incidents involving Plaintiffs, named Comparators, and other specifically-identified other comparable incidents is **GRANTED.** However, Plaintiffs' request for HR files is **DENIED.**

*I. Plaintiffs' Request for Documents and Information from Harris Health and the Harris Center (ECF No. 314) is* **GRANTED CONDITIONALLY.**

Plaintiffs request "specific policies, practices, records, investigation records, and death reviews" pertaining to Harris Health and Harris Center's work in the Jail. ECF No. 314 at 14. Harris County Jail partners with Harris Health to provide medical services, and Harris Center to provide behavioral health services, to inmates. Plaintiffs allege that the records of both Harris Health and Harris Center are within the "possession, custody, and control" of Defendant Harris County, and therefore within the scope of discovery. *Id.*; *see also* FED. R. CIV. P. 26(b)(1); *Shell Global Solutions (US) Inc. v. RMS Engineering, Inc.*, 4:09-cv-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011) (Ellison, J.). In support to this proposition, Plaintiffs state that "Harris County oversees and funds" both organizations, an Interlocal Agreement between the health organizations and the county "requires Harris Health to get policies and practices approved by Sheriff Gonzalez[,]" and "Harris Health and Harris Center's employees in the jail are subject to the training and control of the Harris County Sheriff's Office and are paid by the County itself." ECF No. 314 at 14.

Defendant denies that it has legal authority over Harris Health and Harris Center. For this reason, Defendant asserts that it does not have possession, control, or custody of the requested documents. To determine the validity of this statement, it is necessary to address the organizations separately.

Harris Health is a public hospital which was established under Art. IX of the Texas Constitution. The Texas State Constitution authorizes counties to establish countywide hospital districts to furnish medical care of indigent populations. *See* TEX. CONST. art. IX, § 4 "[S]uch Hospital District[s] shall assume full responsibility for providing medical and hospital care to needy inhabitants of the county, and thereafter *such county and cities therein shall not levy any other tax for hospital purposes* . . . ." *See id.*; *Bexas Cnty. Hosp. Dist. v. Crosby*, 320 S.W.2d 247, 249-50 (Tex. Civ. App. – San Antonio 1958), *aff'd in part, rev'd in part* 327 S.W.2d 445 (Tex. 1959). The text of this constitutional provision implies that, because the public hospitals established by Art. IX, § 4 have the power to levy and collect taxes independently of the cities and counties within which they are situated, they are independent legal entities. Courts have treated these hospitals as legally separate from counties in several contexts. *See, e.g.*, *Bexas Cnty. Hosp. Dist.*, 320 S.W.2d 247 (treating funds collected by hospital district as separate from funds collected by counties and cities to fund county-run hospitals); *Laje v. R. E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982) (finding that, unlike local government entities, which are considered "an arm of the state," the relationship between the Texas government and public hospitals is "simply too attenuated to support an extension of Eleventh Amendment immunity.").

However, this does not answer the question of whether Harris County retains functional possession, custody, or control of inmates' medical records held by Harris Health. "'[D]ocuments are considered to be under a party's control for discovery purposes when that party has the rights, authority, or practical ability to obtain the documents from a nonparty to the suit.'" *Shell Global Solutions (US) Inc.*, 2011 WL 3418396, at *2 (quoting *Bank of N.Y. v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y. 1997)); *Mir v. L-3 Communications Integrated Sys., L.P.*, 319 F.R.D. 220, 230 (N.D. Tex. 2016) ("Rule 34 is broadly construed and documents within

a party's control are subject to discovery, even if owned by a nonparty.") (internal citations omitted).

Here, Harris County and Harris Health have entered into an Interlocal Agreement (ILA) to govern the provision of health services to inmates. *See* ECF No. 314-11. The ILA recognizes and accounts for the fact that Harris County and Harris Health are separately organized entities under the laws of the state of Texas. *See id.* at 4 (stating the ILA "is entered by and between Harris County . . . a body corporate and politic under the laws of the State of Texas . . . and . . . Harris Health . . . a political subdivision of the State of Texas . . . ."). Nevertheless, the ILA states: "The [Harris County] Sheriff is the legal custodian and owner of all medical records; however, for the term of the Agreement, Harris Health is the delegated custodian and will create and maintain new medical records for detainees and update active medical records for detainees." *Id.* at 10. This provision indicates that, even if Harris County, through the Sheriff, does not directly possess the records Plaintiffs request, they have a legal right to them. That Defendant has a "legal right or practical ability to obtain the materials" from Harris Health indicates that it is in constructive possession, control, and custody of the records. *See Mir*, 319 F.R.D. at 230.

Harris Center similarly acts as an independent agency from Harris County. Organized as an agency of the State of Texas under Chapter 534 of the Texas Health & Safety Code, Harris Center is a publicly-funded institution that contracts with Harris County to provide mental health and behavioral health services to inmates. *See* ECF No. 350 ¶ 41. Unlike Harris Health, Harris Center is not subject to the Interlocal Agreement with the County. *See* 314-11 at 4. Rather, Harris Center acts as a contractor that works directly with Harris Health to provide care to inmates. *Id.* at 10 (explaining that records held in custody by Harris Health may be made available to Harris Center employees). Therefore, there is no indication that the Harris County Sheriff retains legal

control over the Center's documents. *See Goodyear Tire & Rubber Company v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54 (E.D. La. 2024).

Accordingly, Plaintiff's request for documents and information from Harris Health is **GRANTED.** Defendant is hereby **ORDERED** to request the specified documents from Harris Health and file an advisory with the Court by **[DATE]** indicating when said documents will be made available to Plaintiffs.[3] However, Plaintiff's request for documents and information from Harris Center is **DENIED.**

*J. Plaintiffs' Request for Observation Records and Operational Records for Each Comparator Incident and for the Joint Processing Center (ECF No. 314) is* **GRANTED.**

Plaintiffs have requested "all of the observation records, operational records, and the videos of the observation rounds for each Comparator incident and Plaintiff." ECF No. 314 at 15. Defendant alleges, and Plaintiffs concede, that most of the observation round sheets have been produced for Plaintiffs already. *Id.*; ECF No. 350 at 10. However, Plaintiffs allege that Defendant has not yet produced the records for the named Comparators in the lawsuit.

Plaintiffs originally raised this issue in their first Motion to Compel (ECF No. 130)—Defendant restates its argument that the Agreed Order forecloses additional *Monell* discovery and specifically points to Paragraph 4 which "resolves at the time [among other Motions, ECF No. 130] in relation to the arguments raised therein concerning the scope of other similar incident discovery under *Monell*." *See* ECF No. 213 ¶ 4. However, as stated in Paragraph 5 of the Agreed

[3] The Court is aware that Plaintiffs have requested much of this information from Harris Health directly through a third-party subpoena, and that Harris Health filed a Motion for a Protective Order on October 21, 2026. *See* ECF No. 469. Because this Motion is not yet fully briefed, the Court declines to reach the issue.

Order, "Plaintiffs only agree to suspend the consideration of the remaining issues in their Motion to Compel (ECF #130) *that are not covered by this agreement at a later time.*" *See id.* ¶ 5 (emphasis added). Although Defendant was opposed to further discovery, the language of the Agreed Order does not expressly foreclose additional discovery requests that were not squarely resolved, even if Plaintiffs already raised them in their first Motion to Compel.

This particular request is both relevant and proportional to the needs of the case. *See* FED. R. CIV. P. 26(b)(1). One of Plaintiffs' central claims for most incidents center around a lack of observation and monitoring. *See* ECF No. 314 at 15. In order to substantiate their claims that observations were improperly conducted and to show that Comparators experienced similar incidents, this information will be necessary for Plaintiffs. *See id.*; *Estevis*, 2023 WL 9319061, at *3 (finding discovery of Comparator incidents highly relevant).

Therefore, Plaintiffs' request for observation records, operational records, and videos of Comparators is **GRANTED.**

*K. Plaintiffs' Request for Settlement Materials (ECF No. 314) is* **GRANTED.**

Plaintiffs requested case documents, expert reports, and settlement materials for each case in which a settlement agreement has been produced, and for identified Comparators and officers who have sued Harris County. ECF No. 314 at 16. Defendant stated in its response that it has provided settlement materials relevant to Plaintiffs' claims already and continues to do so as discovery reveals more settlement documents. ECF No. 350 ¶¶ 54-57. However, Plaintiffs insist that they are entitled not only to the settlement agreements relevant to their claims, but to the Comparators. *See* ECF No. 314 at 16. Moreover, Plaintiffs state they are entitled to the expert

reports, petitioner, deposition transcripts, observation records, jail records, staffing schedules, or discovery materials in other identified cases. *Id.*

Prior lawsuit materials are discoverable in *Monell* cases. *E.g.*, *Estevis*, 2023 WL 9319061, at *7. While Courts can limit the scope of such requests if they are facially broad, Plaintiffs' request is limited by its terms to lawsuits filed by identified Comparators. *See* ECF No. 314-1 at 10; *cf.* *Estevis*, 2023 WL 9319061, at *7 (limiting scope of overbroad request for production).

Accordingly, Plaintiffs' request for prior lawsuit materials is **GRANTED.**

*L. Plaintiffs' Request for Defendant to Produce Missing Pages and Complete Records from use of Force Reports and KHOU-Related Documents and for Defendant to Produce Underlying Serious Incident Reports (ECF No. 314) is* **GRANTED IN PART AND DENIED IN PART.**

Pursuant to the Agreed Order, Defendant was supposed to produce all documents pertaining to use of force which it provided to KHOU during the station's investigation into jail conditions. ECF No. 213 ¶ 2. However, Plaintiffs allege that there are missing files and pages. ECF No. 314 at 17. Plaintiffs also note that the Agreed Order required Defendant to produce communications and documents it received from KHOU in the course of the investigation as well, but Defendant allegedly has not done so. *Id.* at 17-18. Defendant responds that it produced all the materials in the same format in which they were provided to KHOU and that this should satisfy its obligation under the Agreed Order. ECF No. 350 ¶ 62. Further, Defendant states that, if Plaintiffs believe that pages are missing from the KHOU reports, they need to identify the relevant documents from which the pages are ostensibly missing. *See id.* ¶ 63.

Because Parties already agreed to this challenged discovery through the Agreed Order, Plaintiffs' renewed request is **GRANTED.** Plaintiffs are **ORDERED** to identify specific missing

files and pages by **November 16, 2026**. Thereafter, Defendants are **ORDERED** to produce the identified files by **November 30, 2026.**

Plaintiffs also assert that Defendant failed to comply with its obligation in the Agreed Order to produce Serious Incident Reports. *See* 314 at 18. Specifically, Plaintiffs state that the format in which the Serious Incident Reports were ultimately conveyed to Plaintiffs differed from the sample reports that Defendant showed the Court and that certain information was missing. *Id.* Defendant concedes that the formats of the Serious Incident Reports vary but explains that the relevant data was kept in different forms at different times. *See* ECF No. 350 ¶ 69. Parties are required to conduct diligent searches to determine whether responsive records are available. *See, e.g.*, *Matter of Cenac Towing Co., LLC*, 2026 WL 2333191, at *5 (E.D. La. Aug. 12, 2026); *Mir*, 319 F.R.D. at 227. Therefore, if Defendant kept record of underlying serious incident reports in different formats, they are not required to produce new documents which conform all of the responsive records to the style Plaintiffs requested. However, to the extent that the various formats of these reports do not contain the exact information that Plaintiffs requested through these specific RFPs, Defendant must search to see if responsive records have been kept in alternative formats.

Therefore, Defendant is **ORDERED** to search its databases for the information in the differently-formatted serious incident reports that Plaintiffs allege are missing and file an advisory with the Court by **November 16, 2026,** indicating whether that information is available. If the information is available, Plaintiffs' request for these records will be **GRANTED**.

*M. Plaintiffs' Request for Explanations Regarding Missing Videos (ECF No. 314) is* **GRANTED.**

Plaintiffs have requested video footage of several specified incidents for which Defendant denied that footage existed. ECF No. 314 at 19. Nevertheless, Defendant has subsequently sent some of the videos which it previously stated did not exist. *Id.* Plaintiffs have reiterated a request for all available videos and, if there are no videos for certain incidents, they request a "thorough explanation of why video footage was not preserved." *Id.* at 20. Defendant objects to this request, stating that it "is not aware of any obligation to provide a detailed explanation[.]" However, as this is unlikely to pose a great burden on Defendant, the Court sees little harm in requiring Defendant to explain why certain videos are missing.

Accordingly, Plaintiffs' request for explanations about missing video footage is **GRANTED.**

*N. Plaintiffs' Request for Observation Videographic Training Materials (ECF No. 314) is* **DENIED.**

Plaintiffs request video training materials for observation rounds used by Harris County Jail, but Defendant states that "there is no video training media documents responsive to this request." *See* ECF No. 314 at 20; ECF No. 350 ¶ 73. Because Plaintiffs do not identify any evidence which would suggest that such videos do exist, and because Defendant is not required to prepare new documents to answer a discovery request, the Court will not compel Defendant to produce responsive documents. *See Mir*, 319 F.R.D. at 227. Therefore, Plaintiffs' request is **DENIED.**

*O. Plaintiffs' Request for AED Maintenance Logs and Supporting Documentation (ECF No. 314) is* **GRANTED.**

Plaintiffs request the maintenance logs for automated external defibrillators (AEDs) and information concerning the staff members who are responsible for their maintenance. ECF No. 314 at 20. Defendants argue that, because Plaintiffs previously raised this request, the Agreed Order forecloses the claim now. *See* ECF No. 350 ¶ 78. However, as previously stated, the Agreed Order only resolves the specified categories of records that Parties agreed to. *See* ECF No. 213 ¶ 2.

This "information is directly relevant to Plaintiffs' claims regarding Defendant's failure to provide adequate medical care to detainees in medical emergencies especially since many of the cases involve officers failing to use AEDs . . . ." ECF No. 314 at 20-21.

Therefore, Plaintiffs' Requests for AED Logs is **GRANTED.**

*P. Plaintiffs' Request for Communications and Records in the Possessions of Individual Officers (ECF No. 314) is* **GRANTED IN PART AND DENIED IN PART.**

Plaintiffs request individual officers' communications, records, and videos pertaining to Plaintiffs and Comparators' incidents within the Jail. *See id.* at 21. This request encompasses "documents, videos, and communications to and from individual officers in the Jail . . . include[ing] any text messages between officers, group chats, social media messages, and videos from officers' cell phones, emails, or social media accounts that relate to any of the incidents that are the subject of this case." *Id.* Plaintiffs identify specific use-of-force incidents on July 25, 2023, for which video footage and communications are available, but otherwise broadly request documents surrounding each of Plaintiffs and Comparators' incidents. *Id.* Plaintiffs contend that, because these officers are agents and employees of Defendant, their personal documents fall within its possession, custody, and control. *Id.*

Defendant states that there are no such records within its possession. Because the production of recordings on officers' personal devices is a strictly prohibited practice at Harris County jail, "the existence of such materials for personal use amounts to contraband." *See* ECF No. 350 ¶ 81. Additionally, because Plaintiffs have not identified any specific officers who might retain these records on their personal devices, Defendant is unable to access any personal videos. *Id.*

The Court credits the notion that Defendant might not know which, if any, officers created personal records of each incident specified by Plaintiffs and Comparators if the practice itself is banned. Although videos of each incident would be highly relevant to Plaintiffs' claims, it would pose a high burden for Defendant to review the personal files of each of its officers. *See* FED. R. CIV. P. 26(b)(1); *O'Bryant*, 802 F. App'x at 833. However, where Plaintiffs have specifically found that officers improperly made videographic records of Jail incidents, such as the incident that occurred on or around July 25, 2023, Defendant should be able to identify officers who were involved in, or present to witness, the incidents and obtain their personal files for the purposes of discovery. *See* ECF No. 314 at 21.

Accordingly, Plaintiffs' request for individual officers' personal videos is **GRANTED IN PART AND DENIED IN PART.** Defendant is **ORDERED** to produce responsive records related to the July 25, 2023 incident. However, Defendant need not produce officers' personal videos which illustrate incidents that Plaintiffs have not specifically identified.

*Q. Plaintiffs' Request for Jail Officers and Employees' Resignation Letters and Complaints Pertaining to the Conditions of the Jail (ECF No. 314) is* **GRANTED.**

Having reviewed similar files in related prison condition cases, Plaintiffs request complaints and resignation letters from Harris County Jail officers and employees which criticize "the conditions of the Jail that they were working in and how that has impacted their ability to provide safe services to the detainees." *See* ECF No. 314 at 22. Defendant does not dispute that the request would be relevant to Plaintiffs' claims; however, it contends that Plaintiff must identify specific officers for whom they seek complaints or resignation letters. *See* ECF No. 350 ¶ 85.

However, as Plaintiffs identify, the Party in receipt of a discovery request is required to conduct diligent searches to determine whether responsive records are available. *See, e.g.*, *Matter of Cenac Towing Co., LLC*, 2026 WL 2333191, at *5 n.23 (E.D. La. Aug. 12, 2026); *Mir*, 319 F.R.D. at 227; ECF No. 364 at 10 ("Defendant is the entity responsible for conducting a diligent search for responsive information."). Although Plaintiffs have not identified specific officers for whom they seek responsive records, they have limited their search for complaints to those that directly pertained to prison conditions. *See* ECF No. 314 at 22. This provides a workable parameter to guide Defendant's diligent review of its own records without becoming overly burdensome. *Cf. Lafleur*, 2017 WL 2960541, at *6 (requiring *Monell* discovery claim to be tethered to particular incidents or types of incidents).

Accordingly, Plaintiffs' request for resignation letters and complaints raised by Jail officers and employees is **GRANTED.**

*R. Plaintiffs' Request for Attorney's Fees (ECF No. 314) is* **DENIED** *and Defendant's Request for Attorney's Fees (ECF No. 350) is* **DENIED.**

Both Plaintiffs and Defendant request attorneys' fees related to Plaintiffs' Second Motion to Compel. Plaintiffs allege that "Defendant has no substantial justification for its continued refusal to produce the discovery requested "and uses the Agreed Order in bad faith "as a shield against

additional discovery." ECF No. 314 at 23. Defendant, conversely, accuses Plaintiffs of "unreasonably churning the discovery wheel" by reiterating discovery requests which had already been resolved by the Agreed Order. *See* ECF No. 350 ¶ 86.

As the Court has discussed throughout this opinion, there was clear disagreement between Parties regarding the scope of the Agreed Order. Relying on the belief that they had reserved the right to request additional *Monell* discovery, Plaintiffs requested more information after its initial review of discovery materials. Similarly, relying on the belief that the Agreed Order foreclosed all foregoing discovery, Defendant objected to each of these requests. The Court determines that neither Party acted in bad faith by relying on a clearly-identified misunderstanding.

Accordingly, both Plaintiffs' and Defendant's request for attorneys' fees are **DENIED**.

## IV. CONCLUSION

For these reasons, Plaintiff-Intervenor Garcia's Third Motion to Compel (ECF No. 241) is **GRANTED IN PART AND DENIED IN PART** and Plaintiffs' Second Motion to Compel (ECF No. 314) is **GRANTED IN PART AND DENIED IN PART.**

Signed at Houston, Texas on November 2, 2026.

Keith P. Ellison
United States District Judge